## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 (Subchapter V) |
| ALECTO HEALTHCARE SERVICES LLC, a Delaware limited liability company,[1] | Case No. 23-10787 (JKS) |
| Debtor. | **Hearing Date: August 10, 2023 at 11:00 a.m. (ET)** |
| | **Re: D.I. 7, 85, 86 & 87** |

**SUPPLEMENTAL DECLARATION OF MICHAEL SARRAO IN SUPPORT OF THE MOTION OF THE DEBTOR FOR AN ORDER UNDER SECTIONS §§105(a), 363(b), 363(c), and 503(b) OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6003 AUTHORIZING DEBTOR TO (A) ASSUME EXISTING INSURANCE POLICIES; AND (B) PAY ALL OBLIGATIONS IN RESPECT THEREOF**

I, Michael Sarrao, declare and state as follows:

1.     I am the Executive Vice President, General Counsel, and Secretary for Alecto Healthcare Services LLC, a Delaware limited liability company (the "Debtor") that has filed a voluntary petition under Chapter 11, Subchapter V of title 11 of the United States Code, commencing this Chapter 11 case.

2.     The facts set forth in this Declaration are based upon my personal knowledge, my review of the relevant documents, information provided to me or verified by the Debtor's counsel, and my personal opinion based upon my experience, knowledge, and information provided to me. I am authorized to submit this Declaration on behalf of the Debtor, and if called upon to testify, I would testify competently to the facts set forth in this Declaration.

3.     I submit this Declaration in support of the *Motion of the Debtor for an Order Under Sections 105(a), 363(c), and 503(b) of the Bankruptcy Code and Federal Rule of Bankruptcy*

---

[1] The last four digits of the Debtor's federal tax identification number are 9723. The Debtor's address is 101 N. Brand Boulevard, Suite 1780, Glendale, CA 91203.

1

*Procedure 6003 Authorizing Debtor to (a) Maintain Existing Insurance Policies; and (b) Pay all Obligations in Respect Thereof* (the "Motion") [Dkt. No. 7] and in response to the objections filed by the Reed Action Judgment Creditors [Dkt. No. 86] and the Subchapter V Trustee [Dkt. No. 85] (collectively, the "Objections"). All capitalized terms not otherwise defined herein shall have the meaning set forth in the Motion.

4.      In the ordinary course of business, the Debtor maintains numerous insurance policies providing coverage for the Debtor and its subsidiaries (the "Insurance Policies"). The Debtor pays for the premiums (the "Insurance Premiums") for the Insurance Policies and records the amount allocated to each subsidiary as an intercompany receivable. Historically, the Debtor's subsidiaries have largely been unable to reimburse the Debtor for their portions of the Insurance Premiums provided, however, that the amounts attributable to Olympia Health Care, LLC have reduced the intercompany payable owed by the Debtor to Olympia Health Care, LLC. Attached hereto as **Exhibit "A"** is a table listing each of the  Insurance Policies and the percentage allocation of the Insurance Premiums attributable to each of its subsidiaries.

5.       The Debtor and each of its subsidiaries (other than Alecto Healthcare Services Sherman LLC, Sherman/Grayson Sponsor, LLC, Sherman/Grayson Hospital, LLC, Sherman MD Provider, Inc., and Sherman Anesthesia, Inc., all of which are located in Texas) are insured under a 3-year extended reporting period policy for the period of 8/1/22 to 8/1/25 for professional and general liability claims for which the premium was fully paid upon issuance of the policy.

6.      The Debtor is actively working to reduce its annual insurance expense. Attached hereto as **Exhibit "B"** is a table listing: (1) each of the Insurance Policies; (2) the portion of the premium amounts allocated to the Debtor and each of its subsidiaries for the applicable policy period; and (3) the premiums for the short extensions of the policy period to accommodate the

proposed sale discussed below.

7.      The Debtor's indirect subsidiary Sherman/Grayson Hospital, LLC ("Sherman/Grayson"), the debtor in bankruptcy case number 23-10810-JKS, is seeking approval of a private sale of substantially all of its assets. If such sale gets approved, the Insurance Premiums will significantly decrease as the Debtor will no longer need to maintain the Insurance Policies attributable to Sherman/Grayson and can reduce coverage on Insurance Policies that benefit Sherman/Grayson. For example, the Debtor will submit  applications for its D&O/Employment Practices/Fiduciary & Crime this week for the period commencing 9/1/23 and for its property and auto insurance policies for the period commending 9/1/23 and expects that the premium for such policies to be substantially reduced. The Debtor expects that the sale of Sherman/Grayson will reduce the Debtor's annual insurance expense from approximately $1,300,000 to $575,000 in Year 1 (9/1/23 to 8/31/24) to $346,992 in Year 2 (9/1/24 to 8/31/24) and $346,992 in Year 3 (9/1/24 to 8/31/24).  Attached hereto as **Exhibit "C"** is a copy of the Debtor's insurance projections from September 1, 2023 through August 31, 2026.  The projected costs for Year 1 include: (1) the remaining premium financing payments for the months of September 2023, October 2023, and November 2023 as these payments are required; and (2) the current D&O/Employment Practices/Fiduciary & Crime will provide coverage for claims arising out of events prior to September 1, 2023 and the existence of such coverage will reduce the premium costs for the new D&O/Employment Practices/Fiduciary & Crime policy for periods after September 1, 2023.  *See,* Exhibit B and Exhibit C.

8.      The Debtor further anticipates that its insurance expense will reduce to approximately $347,000 by September 2024 because the projected costs for Year 1 (9/1/23 to 8/31/24) include the remaining premium financing payments for the months of September 2023,

October 2023, and November 2023 as these payments are required and the current D&O/Employment Practices/Fiduciary & Crime policy will provide coverage for claims arising out of events prior to September 1, 2023 and the existence of such coverage will reduce the premium costs for the new D&O/Employment Practices/Fiduciary & Crime policy for periods after September 1, 2023.  These payments will end in November 2023 and the monthly cost for the months of December 2023 to August 2024 will not include these payments.

9.      Both Objections assert that the Debtor must be reimbursed by the interim manager of Sherman/Grayson for the Insurance Premiums paid from the Debtor's petition date of June 16, 2023 through present. However, pursuant to the interim management agreement (the "Interim Management Agreement") between Sherman/Grayson and the interim manager, the interim manager is only responsible for funding shortfalls in revenue to pay operating costs arising on or after June 21, 2023.[2] Consequently, the Debtor can only seek insurance reimbursements relating to Sherman/Grayson from the interim manager for Insurance Premiums arising on or after June 21, 2023. The amount of Insurance Premiums paid on behalf of Sherman/Grayson between June 16, 2023 and June 21, 2023 is $14,527.06. *See,* Exhibit C. Since June 21, 2023, Sherman/Grayson has directly paid for the $1,602.44 premium associated with the 1-month extension of the Environmental Pollution/UST policy and will pay directly the $14,557.22 premium associated with the one-month extension of the PL/GL Excess Policy relating only to Sherman/Grayson such that the total amount to be directly paid by Sherman/Grayson will be $16,159.66.

10.     The Debtor needs to pay Insurance Premiums relating to the Insurance Policies in the total amount of $99,589.72 on or before August 31, 2023 and the Debtor will receive

---

[2] On August 3, 2023, the Court entered an order in the Sherman/Grayson case authorizing Sherman/Grayson to assume the Interim Management Agreement [Sherman/Grayson Dkt. No. 119].

reimbursement of $55,715.46 from Sherman/Grayson under the Interim Management Agreement. The $99,589.72 consists of: (a) the premium financing payment due for the month of August 2023 for the D&O/Employment Practices/Fiduciary & Crime policy ($74,379.70); (b) the premium for August 2023 for the extension of the All Risks Property policy ($15,000); (c) the premium for August 2023 for the Cyber Liability policy ($3,986.11); and (d) the premium for the 45-day extension of the Cyber Liability policy ($6,223.91). Attached hereto as **Exhibit "D"** is a list of upcoming Insurance Premiums that need to be paid by the Debtor.

11.     It is critical that the Debtor be able to continue to pay for the Insurance Premiums in the ordinary course of business. First, the Debtor relies on its officers to conduct its business and to provide the services which generate revenue for the Debtor. The D&O/Employment Practices/Fiduciary & Crime policy provides coverage for the Debtor, its subsidiaries, and their officers and managers against claims that are covered under the policy and could be asserted against them. Without this policy, the individual officers are unlikely to continue serving in their roles as officers for Debtor and its subsidiaries and the ability for Debtor and its subsidiaries to generate revenue would be adversely affected if these officers did not continue serving in their roles. If the sale of Sherman/Grayson's assets is approved and completed, the current D&O/Employment Practices/Fiduciary & Crime policy will convert to a tail policy and provide coverage for claims arising out of events on or before September 1, 2023 which will allow the Debtor to secure a new D&O/Employment Practices/Fiduciary & Crime policy only for claims arising out of events occurring on or after September 1, 2023 which will substantially reduce the costs of the new policy. The existence of the current policy is a critical element to the substantial cost savings for the new policy. Second, cyber incidents and attacks by malicious actors against healthcare systems are on the rise as reflected by recent reports of an attack on a 17-hospital system

and the Cyber Liability policy is critical to insure against the costs and losses associated with such incidents.  Third, as an employer in the State of California, the Debtor is required to maintain workers compensation insurance.  Fourth, the Debtor's office lease requires the Debtor to maintain property insurance.  Finally, auto insurance is mandated by law.

12.     Based on my conversations with the Debtor's insurance broker, my experience during the past 15 years securing insurance for hospitals that are part of health systems, and my review of the various statute of limitations in states where subsidiaries formerly operated hospitals, it is my understanding that the removal of the Debtor's subsidiaries other than Sherman/Grayson under the various Insurance Policies will not result in any meaningful reduction in Insurance Premiums given the amount of time that has passed since the subsidiaries operated hospitals or had employees.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of  the United States, that the foregoing statements are true and correct.


 Dated:  August 7, 2023                           /s/ Michael Sarrao
                                                 Michael Sarrao