IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ALECTO HEALTHCARE SERVICES LLC, | Case No. 23-10787 (JKS) |
| | Re: D.I. 67 & 68 |
| Debtor. | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' APPLICATION TO EMPLOY THE ROSNER LAW GROUP LLC AND SHULMAN BASTIAN FRIEDMAN & BUI LLP (D.I. 67 & 68)**

Andrew R. Vara, United States Trustee for Regions 3 and 9 (the "U.S. Trustee"), through his undersigned counsel, hereby files this objection (the "Objection") to the *Application for Entry of an Order Authorizing the Retention and Employment of Shulman Bastian Friedman & Bui LLP as Bankruptcy Counsel to the Debtor Nunc Pro Tunc to the Petition Date* ( Alecto D.I. 67),[1] and *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of The Rosner Law Group LLC as Delaware Counsel to the Debtor Nunc Pro Tunc to the Petition Date* (D.I. Alecto 68) (the "Applications"). In support of this Objection, the U.S. Trustee states as follows:

**PRELIMINARY STATEMENT**

1. Due to their continuing representation of Sherman/Grayson Hospital, LLC ("Sherman" or the "Sherman Debtor"), an entity against which Alecto Healthcare Services,

---

[1] All citations to the docket in (i) Alecto Healthcare Services LLC, Case No. 23-10787 (JKS) shall be cited as "Alecto D.I. __" and (ii) Sherman/Grayson Hospital, LLC, Case No. 23-10810 (JKS) shall be cited as "Sherman D.I. __."

LLC ("Alecto" or the "Alecto Debtor") has a claim for more than $60 million, Shulman Bastian Friedman & Bui ("Shulman") and The Rosner Law Group ("Rosner") represent interests adverse to the estate and, as such, are not eligible to be retained under Section 327(a) of the Bankruptcy Code. The Applications should be denied.

## JURISDICTION & STANDING

2.     Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this objection.

3.     Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing"); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4.     Specifically, the U.S. Trustee is charged with "monitoring retention applications filed under section 327 of title 11 and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications." 28 U.S.C. § 586(a)(3)(I). Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Applications and the issues raised in this Objection.

## BACKGROUND

5.     On June 16, 2023 (the "Alecto Petition Date"), the Alecto Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code, which initiated *Alecto Healthcare Services, LLC,* Case No. 23-10787 (JKS) (the "Alecto Bankruptcy").

6. On June 20, 2023, Jami B. Nimeroff was appointed as the Subchapter V Trustee in the Alecto Bankruptcy. No other trustee or examiner has been appointed in the Alecto Bankruptcy. No creditors' committee has been appointed in the Alecto Bankruptcy.

7. On June 23, 2023 (the "Sherman Petition Date"), the Sherman Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, which initiated *Sherman/Grayson Hospital, LLC,* Case No. 23-10810 (JKS) (the "Sherman Bankruptcy").

8. Alecto Healthcare Services Sherman LLC ("Sherman Parent") is the parent company of Sherman. The Alecto Debtor owns an 80 % membership interest in Sherman Parent. The bankruptcy cases of Alecto and Sherman are not being jointly administered. Despite Alecto's indirect ownership interest in Sherman, whose case is not proceeding under Subchapter V, Alecto asserts that it qualifies for Subchapter V. *See*, 11 U.S.C. § 1182.

9. On July 12, 2023, which was 26 days after the Alecto Petition Date, the Alecto Debtor filed the Applications.

10. On July 20, 2023, which was 27 days after the Sherman Petition Date, the Sherman Debtor filed applications to retain Shulman and Rosner (the "Sherman Applications;" Sherman D.I. 75 & 76).

11. It is unclear when Shulman or Rosner were retained to represent either Alecto or Sherman. The Alecto Debtor's Statement of Financial Affairs ("Alecto Statements;" Alecto D.I. 49 at Attachment No. 11) reveal that Shulman represented Alecto at least as early as December 2022. The Alecto Statements reflect only a single payment to Rosner during the year preceding the filing, in June of 2023. *Id.*

12. The Sherman Debtor's Statement of Financial Affairs ("Sherman Statements;" Sherman D.I. 87 at Attachment No. 11) indicates that Sherman retained Shulman and Rosner the day prior to the Sherman Petition Date.

13. The Sherman Debtor's Schedules of Assets and Liabilities ("Sherman Schedules;" Sherman D.I. 86 at 3.13) list an undisputed, non-contingent, liquidated claim owed to the Alecto Debtor in the amount of $60,186,975.93.

14. The Sherman Applications disclose that Alecto transferred $20,979,030.11 to the Sherman Debtor within one year of the Sherman Petition Date. *See*, Declarations attached to the Sherman Applications.

15. The Alecto Applications do not disclose the amount of the transfers, noting only that "[Alecto] Debtor has loaned substantial funds to Sherman [Debtor]". *See* Declarations attached to the Alecto Applications. Moreover, the Alecto Debtor's Statements do not disclose the full $20,979,030.11 in payments made to the Sherman Debtor.

16. The Alecto Debtor's Statements do reflect payment to the Sherman Debtor during the 90 days immediately preceding the Petition Date, as follows:

| | |
|---|---|
| 3/30/2023 | $450,000 |
| 3/30/2023 | $650,000 |
| 4/14/2023 | $100,000 |
| 4/27/2023 | $190,000 |
| 5/25/2023 | $75,000 |

17. The Alecto Debtor also has paid for the insurance programs that benefit Sherman, including payments made pursuant to interim orders entered by this Court. Alecto D.I. 29 & 76. The Subchapter V Trustee did not object to the entry of the interim orders "because it was her understanding that all sums authorized by this Court and paid by the

4

[Alecto] Debtor on behalf of the [Sherman Debtor] would ultimately be reimbursed to the [Alecto Debtor]." The Subchapter V Trustee was subsequently informed that the Alecto Debtor will only be reimbursed for insurance payments made by the Alecto Debtor on behalf of the Sherman Debtor for the allocated insurance costs incurred on and after June 23, 2023. Alecto D.I. 85.

18. The Official Committee of Unsecured Creditors of the Sherman Debtor has entered their appearance in the Alecto case. (D.I. 66). The Alecto Debtor is by far the largest unsecured creditor in the Sherman Bankruptcy, holding $60,186,975.93 of the $83,071,669.23 (or more than 70%) of the claims included on the Sherman Schedule F.

19. The Sherman Debtor has sought to sell substantially all of its assets through a private sale to a buyer that is a strategic purchaser and active in the hospital space. *See e.g.,* Sherman D.I. 60, which is the sale motion, at paragraph 35(d) ("The Buyer has experienced operators that have previously acquired distressed hospitals like WNJ [*i.e.* the Sherman Debtor] . . ."). The sale includes releases by Sherman and its affiliates (which include Alecto) of all claims they may hold against the purchaser and its affiliates, which means through the proposed sale in the Sherman Bankruptcy, Alecto will be releasing all claims it holds against purchaser and an expansive list of related parties, including unidentified affiliates that are operators in the hospital market space. Alecto is providing these releases for minimal, if any, consideration.

## ARGUMENT

20. The Application should be denied because Shulman and Rosner each represent interests adverse to the Alecto Debtor's bankruptcy estate and, by extension, each has a disqualifying conflict of interest.

21. Section 327(a) of the Bankruptcy Code provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327.

22. Section 327(a) "restricts retention of lawyers and other professionals to those who do not hold or represent an interest adverse to the estate and are disinterested." *In re Congoleum Corp.*, 426 F.3d 675, 688-89 (3d Cir. 2005); *see In re American Home Mortgage Holdings, Inc.*, 411 B.R. 169, 175-76 (Bankr. D. Del. 2008) (under Section 327(a), a debtor in possession may employ only those professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons.").

23. The Bankruptcy Code does not define "adverse interest." *See In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994). In the context of Section 327(a), the Court may consider an interest adverse to the estate "when counsel has 'a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant.'" *In re First Jersey Securities, Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) (quoting *In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996)). An adverse interest "includes any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (citation, quotation marks omitted). Interests are not adverse "merely because it is possible to conceive a set of circumstances under which they might clash." *In re Leslie Fay Companies, Inc.*, 175 B.R. at 532.

24. Section 327(c) of the Bankruptcy Code provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is an objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c). Under Sections 327(a) and (c), the Court: must disqualify an attorney with an actual conflict of interest, may disqualify an attorney with a potential conflict of interest, and may not disqualify an attorney based on the appearance of a conflict alone. *See In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998).

25. The Bankruptcy Code does not define actual conflict of interest. *See In re Pillowtex, Inc.*, 304 F.3d 246, 251 (3d Cir. 2002). The term has been given meaning through case-by-case evaluations of particular fact patterns. *See id.* An actual conflict of interest may exist where counsel represents "'two presently competing and adverse interests,' while a potential conflict occurs where the competition 'may become active if certain contingencies arise.'" *In re Granite Partners, L.P.*, 219 B.R. at 33 (quoting *In re American Printers & Lithographers, Inc.*, 148 B.R. 862, 866 (Bankr. N.D. Ill. 1992)); *see also In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016) ("An actual conflict of interest is 'an active competition between two interests, in which one interest can only be served at the expense of the other.'" (quoting cases)). Whether a conflict is actual or potential is within the discretion of the Court. *See In re Woodworkers Warehouse, Inc.*, 303 B.R. 740, 742 (Bankr. D. Del. 2004).

26. The Court should generally disapprove retentions involving a potential conflict of interest. *See In re BH & P, Inc.*, 949 F.2d 1300, 1316 (3d Cir. 1991); *see also In re Woodworkers Warehouse, Inc.*, 303 B.R. at 742 ("In most instances a potential conflict should be the basis for disqualification[.]")(citing *Marvel*, 140 F.3d at 476). The Court should permit

retention despite a potential conflict of interest only if every competent professional in the field is already employed in the case, or if the likelihood that the potential conflict will become actual is remote and there are "particularly compelling" reasons to approve the retention. *See In re BH & P, Inc.*, 949 F.2d at 1316 ("We do not find error in the bankruptcy court's articulation of the standard governing conflict of interest applicable to professionals.").

27. "The requirements of section 327 cannot be taken lightly, for they 'serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *In re Leslie Fay Companies, Inc.*, 175 B.R. at 532 (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)). "Having to divide one's allegiance between two clients is what Section 327 attempts to prevent." *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002) (quoting *In re Roger J. Au & Son Inc.*, 101 B.R. 502, 505 (Bankr. N.D. Ohio 1989)).

28. Shulman and Rosner represents interests adverse to the bankruptcy estates. First, Shulman and Rosner cannot fairly and fully advise regarding treatment of Alecto's claim in the Sherman Bankruptcy, including any compromise of such claim, because they sit on both sides of the table. Alecto has not even appeared in the Sherman Bankruptcy, notwithstanding its outsized claim. It is implausible that Alecto, a creditor owed more than $60 million and that itself is in bankruptcy and in dire need of funds, would not take any action in the Sherman Bankruptcy if the parties did not share counsel. *See In re Leslie Fay Companies, Inc.,* 175 B.R. at 533 ("if it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate"). Moreover, the Sherman Committee has entered its appearance in

the Alecto Debtor cases. Based on the insider nature of the claims, the Sherman Committee may seek to subordinate the claims, seek to recharacterize the claims as equity, or otherwise seek to disallow the claims. Such action by the Sherman Committee would inure to the benefit of the Sherman Bankruptcy estate at the expense of the Alecto Bankruptcy estate, again demonstrating that Shulman and Rosner are conflicted.

29. Second, the Alecto Debtor has sought court approval of payment of insurance premiums that benefited the Sherman Debtor, representing that such payments would be repaid. Counsel is now taking the position that such payments can only be partially repaid.

30. Third, the Sherman Debtor has negotiated a sale agreement that contains releases of claims held by the Alecto Debtor against a third party. *See*, APA at Sherman D.I. 60.[2]

31. Further, Shulman and Rosner seek to represent the Alecto Debtor, who is an insider creditor of another debtor, who they also seek to represent. This represents an adverse interest because the Shulman Debtor has a duty, if a purpose would be served, to "object to the allowance of any claim that is improper[.]" 11 U.S.C. §§ 1106(a)(1), 1107(a), and 704(a)(5). If the Alecto Debtor's claims are allowed, and not subordinated or recharacterized, they will tend to diminish the value of the estate by lowering the amount funds available for distribution to other similarly-situated creditors.

---

[2] Section 11.3 of APA (emphasis added):

> Effective as of the Closing, each **Seller Party hereby releases and causes each of its Affiliates to release Purchaser** from any and all Liabilities, in all circumstances arising prior to Closing, that any Seller Party or its Affiliates and all such Persons' respective successors and assigns, have or may have against any of the Purchaser; provided, that the foregoing shall not release any rights under this Agreement and other agreements contemplated hereby which expressly survive Closing. **Each member of the Purchaser Group that is not a Party shall be considered an express intended third-party beneficiary of this Agreement with respect to any rights of release provided herein.**

9

32. Fifth, the Sherman Applications disclose that Alecto transferred $20,979,030.11 to the Sherman Debtor within one year of the Sherman Petition Date. Section 547 of the Bankruptcy Code provides a one-year lookback period for insider transfers. Consequently, the Alecto Debtor appears to have a *prima facie* claim that such transfers to the Sherman Debtor were preferential. As the Third Circuit specifically stated in *Pillowtex*: "[t]he receipt of a preference by a creditor thus creates a conflict with unpaid creditors, whose share of the remaining assets is diminished by the payment." *In re Pillowtex, Inc.*, 304 F.3d 246, 252 (3d Cir. 2002).[3]

33. Shulman and Rosner have also represented the Alecto Debtor in their motions seeking approval to pay insurance premiums on behalf of the Shulman Debtor, while simultaneously representing the Shulman Debtor. Despite making representations that such payments would be reimbursed, Shulman and Rosner are now asserting that full payment would violate the automatic stay in the Sherman Bankruptcy.

34. Finally, given the relationship between Alecto and Sherman, there are numerous potential conflicts that are likely to ripen into actual conflicts. Alecto likely has claims against Shulman for fraudulent transfers, and may have claims against various officers and directors for breaches of fiduciary duties. There may be conflicting claims on insurance proceeds. Further, it is unclear if payments made on behalf of Alecto for prepetition legal services provided by Shulman and Rosner were for services provided to Sherman, including for services relating to the negotiation of the proposed private sale agreement.

---

[3] To the extent there was no antecedent debt satisfied by such transfers, they create claims and conflicts on grounds other than *Pillowtex* (e.g. fraudulent conveyance under 11 U.S.C. § 548) and are thus still disqualifying.

35. For these reasons, Shulman and Alecto represent competing economic interests tending to diminish the value of the Debtors' bankruptcy estates, or tending to create a potential or actual dispute in which the bankruptcy estate is a rival claimant. *See In re First Jersey Sec., Inc.*, 180 F.3d at 509. Shulman and Alecto represent interests adverse to the estates and have a disqualifying, actual conflict of interest.

36. Put simply, "[i]t is a conflict of interest to represent a debtor and an owner of the debtor." *In re Wiley Brown & Assocs., LLC*, 2006 Bankr. LEXIS 1975, at *11 (Bankr. M.D.N.C. Aug. 14, 2006). Moreover, "[a]n attorney cannot simultaneously represent a debtor and a creditor of the debtor." *Id.* at *14. Shulman and Rosner represent Sherman, which is both an indirect subsidiary of the Alecto Debtor and an entity that owes a substantial amount to Alecto. That is a disabling conflict of interest that cannot be cured, and retention must not be approved.

37. Even if this conflict of interest were potential, it should still result in disqualification. Potential conflicts are generally disqualifying. *See In re BH & P, Inc.*, 949 F.3d at 1316. The Court should permit retention despite a potential conflict only if every competent professional in the field is already employed in the case, or if the likelihood that the potential conflict will become actual is remote and there are "particularly compelling" reasons to approve the retention. *See id.* Here, there is no showing that every competent law firm is already employed in this case. Nor is there a showing that the conflict (to the extent it is still only potential) becoming actual is remote, for the reasons stated herein.

## **CONCLUSION**

38. The U.S. Trustee reserves any and all rights, remedies and obligations to complement, supplement, augment, alter and/or modify this objection, file an appropriate motion

or conduct any and all discovery as may be deemed necessary or as may be required, and to assert such other grounds as may become apparent upon further factual discovery.

      WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Applications and grant such other relief as the Court deems appropriate and just.

Dated: August 7, 2023
      Wilmington, DE

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE,**
**REGIONS 3 & 9**

By: */s/ Linda J. Casey*
    Linda J. Casey
    Trial Attorney
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491 (Phone)
    (302) 573-6497 (Fax)
    Linda.Casey@usdoj.gov