**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 (Subchapter V) |
| | ) Case No. 23-10787 (JKS) |
| Alecto Healthcare Services LLC, [1] | ) |
| | ) **Objection Deadline: TBD** |
| Debtors | ) **Hearing Date: TBD** |

**MOTION OF THE REED ACTION JUDGMENT CREDITORS FOR
ENTRY OF AN ORDER APPOINTING AN OFFICIAL COMMITTEE
OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. § 1102(a)(3)**

The Reed Action Judgment Creditors, by and through undersigned counsel, move this Honorable Court for the entry of an order, pursuant to 11 U.S.C. § 1102(a)(3), appointing an Official Committee of Unsecured Creditors in this Subchapter V case. In support of their Motion, the Reed Action Judgment Creditors respectfully state as follows:

**Preliminary Statement**

1.      Michael Sarrao, the Debtor's Executive Vice-President and First Day Declarant, stated that "the Debtor filed for bankruptcy relief to stay enforcement of the Reed Judgment and all outstanding litigation in order to propose a path forward that will enable the Debtor to continue operating while providing for fair and equitable treatment of all parties in interest." D.I. 3, ¶32. Yet in the months leading up to the bankruptcy filing, the Debtor transferred millions to support its affiliated entity, Sherman/Grayson Hospital, LLC ("Sherman/Grayson"), which subsequently filed its own bankruptcy petition, but which case is *not* being jointly administered with the Alecto case. Both Debtors have been represented by the same counsel and share the same management team.

---

[1] The last four digits of the Debtor's federal tax identification number is 9723. The Debtor's address is 101 N Brand Boulevard, Suite 1920, Glendale, CA 91203.

2. The Insurance Motion (D.I. 7), the Alecto Debtor's status as a creditor of Sherman/Grayson, and the overlay of intercompany claims in any broader resolution of these cases has exposed the conflicts which the Debtor's management team and proposed counsel have in meeting their fiduciary duties to the creditors of both entities. While a Creditor's Committee has been formed in the Sherman/Grayson case, cause exists to form a creditors committee in this case, so that the Alecto creditors have adequate representation relevant to key case issues.

3. In particular, potentially significant causes of action against affiliates and insiders constitute valuable assets for distribution to unsecured creditors, but are not likely to be pursued by Debtor's management. A creditors committee is essential for the investigation and prosecution of these claims for the benefit of unsecured creditors. In addition, intercompany claims constitute the vast majority of the Debtor's scheduled general unsecured claims. If a creditors committee is not appointed, the Debtor's insiders and conflicted counsel will be left to propose a plan of reorganization that must address claims they control, with no input from unsecured creditors. This Court should direct the appointment of a creditors committee so that unsecured creditors will have a meaningful seat at the table for appropriate plan negotiations.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The Reed Action Judgment Creditors consent to the entry of a final order or judgment in this matter by the Court if it is determined that absent consent the Court cannot enter final orders or judgments consistent with Article III of the U.S. Constitution.

6.      The statutory predicate for the relief requested in this Motion is Section 1102(a)(3) of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

### Background

**A.  The Judgment.**

7.      The Reed Judgment Creditors obtained summary judgment against Alecto Healthcare Services, LLC ("Alecto" or the 'Debtor") and its subsidiary, Alecto Healthcare Services Wheeling, LLC, in September 2022.  A Judgment Order was entered on November 28, 2022, awarding damages, including the attorneys' fees and costs, in the amount of $3,169,745.72.  The judgment was not appealed and is a final order. Alecto's schedules (D.I. 48) list the Reed Action Judgment Creditors with a claim in the undisputed amount of this judgment.

**B.  The Related Bankruptcy Proceedings.**

8.      Alecto Healthcare Services, LLC (the "Debtor" or "Alecto") filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on June 16, 2023.  Sherman/Garyson Hospital, LLC an affiliate of the Debtor, filed its own voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court on June 23, 2023 (Case No. 23-10810-JKS).

**C.  The Debtor's Prepetition Transfers to Affiliates and Insiders.**

9.      The Debtor's Schedules (D.I. 48) and Statement of Financial Affairs (D.I. 49), and the testimony of Debtor's representative Mr. Sarrao at the 341 meeting held on July 25, 2023, make clear that Alecto routinely provided large sums to its affiliates and subsidiaries, without an expectation of receiving repayment of these amounts.  For years, Alecto has plainly been supporting the hospitals operated by its subsidiaries at a deficit until such hospitals were sold, and continues to do so with the Sherman/Grayson Hospital, which is now in its own bankruptcy case. *See e.g.,* Shulman Declaration, D.I. 67-2, ¶ 17 ("I am informed and believe that since 2014, the

3

Debtor has loaned substantial funds to Sherman/Grayson that have not been, and except to a very limited degree are unable to be, paid back.") [2]

10.    Attachment 3 to the SOFA (D.I. 49) shows that Alecto transferred $1.46 million to Sherman/Grayson Hospital to support its operations in the 90 days before the petition date.[3] Comments from the office of the U.S. Trustee at the 341 Meeting indicate that Alecto may have transferred up to $21 million to Sherman/Grayson Hospital in the 1 year prior to the filing. Sherman/Grayson's Schedules (D.I. 86 in Case No. 23-10810-JKS) indicate that Alecto has an unsecured claim against Sherman/Grayson in the amount of $60,186,975.93. Alecto has confirmed that claim.[4]

11.    As the Court is aware, Alecto has also been paying the insurance for all of its affiliated entities, and Sherman/Grayson is the largest beneficiary of these payments.[5] Sherman/Grayson Hospital has proposed a private sale of its primary asset (the hospital) in its bankruptcy case, which if approved will leave little recovery for any of its creditors, including Alecto. Given that Alecto's officers and directors and its counsel are involved in both bankruptcy proceedings, they have long known that the transfers to Sherman/Grayson are fraudulent transfers depriving Alecto's creditors of a full recovery, and yet have continued to make these transfers routinely.

---

[2] Mr. Sarrao's 341 meeting testimony provided insight into the reason why Alecto may have supported its subsidiaries at a huge loss since it began acquiring hospitals in 2012: the Net Operating Losses generated by these entities were utilized by and benefitted Alecto's shareholders, including investment trusts associated with its management team.

[3] A summary of the transfers to Sherman/Grayson shown on Attachment 3 is attached hereto as **Exhibit A**.

[4] *See* Application for Entry of an Order Authorizing the Retention and Appointment of Steven Balasiano as Independent Director/Manager *Nunc Pro Tunc* [D.I. No. 93] at ¶ 6.

[5] *See* Supplemental Declaration of Michael Sarrao, D.I. 88, ¶4 and Ex. A.

12.     Alecto's SOFA reports that it earned gross revenues of approximately $3.5 million in 2021 and 2022, and $1.56 million through the first five months of 2023. The source of this revenue is a monthly management services fee that Alecto receives for services it provides in connection its subsidiary Alecto Hayward's contract to provide staffing for the St. Rose Hospital in Hayward, California. Mr. Sarrao confirmed at the 341 meeting that Alecto's fee with respect to services provided to the St. Rose Hospital averages $300,000 per month, and the contract term extends for the next two years, with an additional two-year option. However, as noted above, the Debtor's filings indicate that pre-petition, Alecto had been diverting the significant funds available to it to Sherman/Grayson. The Reed Judgment creditors received nothing.

**D.   Alecto's potential causes of action against its affiliates and insiders.**

13.     The practice and pattern of transfers to Sherman/Grayson and other affiliates gives rise to: (1) fraudulent transfer claims, based on the transfer of funds to subsidiaries or affiliates while insolvent prior to the bankruptcy filing, and (2) potential breach of fiduciary duty claims against Alecto's officers and Board of Directors for improperly directing the transfer of funds to affiliates that should have been used to satisfy Alecto's creditors. Neither of these sets of claims is likely to be pursued by the Debtor or its counsel on behalf of the Alecto bankruptcy estate, given that Alecto's management may be potential defendants.

14.     In addition, at the hearing on August 10, 2013, counsel for the Debtor announced that a tentative settlement had been reached with the Sherman/Grayson Creditors Committee to apparently resolve the "Alecto" claim, which threatens to overwhelm any recovery that unsecured creditors of the Sherman/Grayson Debtor would otherwise receive. Debtor's counsel's role in any such negotiation is irretrievably conflicted. A creditors committee is necessary to adequately

represent the interests of Alecto's creditors with respect to any purported compromise of claims belonging to the Alecto Debtor.

15. Finally, in a case where intercompany transfers predominate, a creditors committee is essential to the negotiation of the provisions of a plan. Of the 26 scheduled claims in the total amount of $85,496,898.04, three claims in the total amount of $69,462,633.22 are intercompany claims and another claim for Sherman/Grayson is scheduled as contingent, disputed and unliquidated. In addition, there are three scheduled claims for insiders for expense reimbursement in the total amount of $32,844.97. Without a creditors committee, the remaining unsecured creditors will be left to pay their own freight to insert themselves into the plan process for a plan that will otherwise be negotiated wholly by insiders who hold claims or manage affiliates that hold claims.[6]

## **Argument**

16. Appointment of a creditor's committee in a subchapter V case is permitted for cause. 11 U.S.C. § 1102(a)(3) ("Unless the court for cause orders otherwise, a committee of creditors may not be appointed in a small business case or a case under subchapter V of this chapter."); *In re Wildwood Villages, LLC*, Case No. 3:20-bk-02569-RCT, 2021 WL 1784408 at *4, Colton, J. (Bankr. M.D. Fla. May 4, 2021) ("While true that creditor committees are disfavored in Subchapter V cases, the statute permits a bankruptcy court to use its discretion and appoint a creditors committee in an appropriate case.").

17. Congress could have eliminated the option of appointing a committee in a Subchapter V case, but it did not. Instead, it conditioned the relief available upon a showing of

---

[6] Undersigned counsel has advised the subchapter V trustee of the Reed Action Judgment Creditors' intent to seek the appointment of a creditors committee, and has had an initial discussion with her regarding their considerations and concerns with respect to a potential plan.

6

cause. While the Bankruptcy Code does not define what constitutes "cause" to appoint a committee of unsecured creditors in a Subchapter V case, a creditors' committee is warranted in a Subchapter V case if a committee "will improve recoveries to creditors, will assist in the prompt resolution of this case, and is necessary to provide effective oversight of the Debtors." *In re Bonert,* 619 B.R. 248, 253-254 (Bankr. C.D. Cal. 2020); *see also In re Sharity Ministries, Inc.,* Case No. 21-11001, Transcript of August 9, 2021 Hearing at p. 60 (JTD) (Bankr. D. Del. Aug. 9, 2021) [D.I. No. 130] (Court appointed a member committee in a Subchapter V case, *sua sponte*, noting that "it is important that those members have a voice in how they are going to be treated without individual members having to incur the costs of doing so."). A copy of the Transcript is attached hereto as **Exhibit B**.

18. Here, cause exists to support the appointment of a creditors' committee, due to the Debtor's regular and ongoing transfers to its insolvent subsidiaries, despite its receipt of revenues which could have been used to pay its undisputed creditors. The Debtor's management is hopelessly conflicted because they serve as management for entities on both sides of the fraudulent transfers, and because individually they have benefitted from the continuing losses incurred by the Alecto enterprise. Debtor's counsel is similarly conflicted because they have been advising the Debtor regarding bankruptcy matters for almost a year, during which massive intercompany transfers continued to occur, to the detriment of Alecto's creditors.

19. The extent of the intercompany transfers that have regularly disposed of Alecto's assets to Alecto's insiders and affiliates rather than Alecto's creditors merits an investigation by a forensic accountant to determine the full extent of and the potential recoverability of such transfers. This work is routinely handled by financial advisors to creditors' committees. As such, the appointment of a creditors committee is essential to helping creditors overcome the inherent

conflicts that the Debtor and its principals have and to enable creditors to obtain a meaningful recovery.

20. At present, there does not appear to be any management personnel or any professionals who are fulfilling their fiduciary obligations to Alecto's creditors. In fact, Mr. Sarrao is the Executive Vice President for both Alecto and Sherman/Grayson. While the intercompany transfers may not continue further post-petition, the Insurance Motion effectively provided for such transfers without a repayment requirement, and the nature and extent of the pre-petition transfers remain a point of conflict and are unlikely to be pursued by Alecto. A creditors committee could ensure that no further post-petition transfers are made and bring appropriate review of intercompany claims into the plan process, all of which could well improve recoveries for unsecured creditors. Accordingly, the Reed Judgment Creditors respectfully request the appointment of a creditors committee in this case.

## Conclusion

WHEREFORE, for the foregoing reasons, the Reed Action Judgment Creditors respectfully request that this Honorable Court enter an order, in substantially the form attached hereto as **Exhibit C** ordering the appointment of an official committee of unsecured creditors and grant to the Reed Action Judgment Creditors such other and further relief as is just and proper.

Date:  August 11, 2023
       Wilmington, DE

SULLIVAN · HAZELTINE · ALLINSON LLC

 /s/ William D. Sullivan
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
       whazeltine@sha-llc.com

-and-

Colten L. Fleu, Esq.
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Tel: (304) 326-0188
Email: colten@msjlaw.org

-and-

John Stember, Esq.
Maureen Davidson-Welling, Esq.
Stember Cohn & Davidson-Welling, LLC
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
Tel: 412-338-1445
Email: jstember@stembercohn.com
　　　　mdavidsonwelling@stembercohn.com

*Attorneys for the Reed Action Judgment Creditors*