**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE:<br><br>ALECTO HEALTHCARE SERVICES LLC,<br>a Delaware limited liability company,[1]<br><br>Debtor. | Chapter 11 (Subchapter V)<br><br>Case No. 23-10787 (JKS)<br><br>Re: D.I. 67 & 68 |

**FIRST SUPPLEMENTAL DECLARATION OF MICHAEL SARRAO IN SUPPORT OF: (I) APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF SHULMAN BASTIAN FRIEDMAN & BUI LLP AS BANKRUPTCY COUNSEL TO THE DEBTOR NUNC PRO TUNC TO THE PETITION DATE THROUGH AUGUST 14, 2023, AND (II) APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF THE ROSNER LAW GROUP LLC AS DELAWARE BANKRUPTCY COUNSEL TO THE DEBTOR NUNC PRO TUNC TO THE PETITION DATE THROUGH AUGUST 14, 2023**

I, Michael Sarrao, declare and state as follows:

1. I am the Executive Vice President, General Counsel, and Secretary for Alecto Healthcare Services LLC, a Delaware limited liability company ("Alecto") that has filed a voluntary petition under Chapter 11, Subchapter V of title 11 of the United States Code, commencing this Chapter 11 case (the "Alecto Case").

2. I am also the Executive Vice President and Secretary for Sherman/Grayson Hospital, LLC, a Delaware limited liability company ("Sherman/Grayson") that has filed a voluntary petition under Chapter 11 of title 11 of the United States Code, commencing Case No. 23-10810 (JKS) (the "Sherman/Grayson Case"). Alecto and Sherman/Grayson shall collectively be referred to as the "Debtors."

---

[1] The last four digits of the Debtor's federal tax identification number are 9723. The Debtor's address is 101 N. Brand Boulevard, Suite 1780, Glendale, CA 91203.

3. The facts set forth in this Declaration are based upon my personal knowledge, my review of the relevant documents, information provided to me or verified by counsel, and my personal opinion based upon my experience, knowledge, and information provided to me. I am authorized to submit this Declaration on behalf of Alecto, and if called upon to testify, I would testify competently to the facts set forth in this Declaration.

4. I submit this Declaration in support of: (I) *Application for Entry of an Order Authorizing the Retention and Employment of Shulman Bastian Friedman & Bui LLP[2] as Bankruptcy Counsel to the Debtor Nunc Pro Tunc to the Petition Date* [D.I. 67], and (II) *Application for Entry of an Order Authorizing the Retention and Employment of The Rosner Law Group LLC as Delaware Bankruptcy Counsel to the Debtor Nunc Pro Tunc to the Petition Date* [D.I. 68] (collectively, the "Applications").[3]

5. On August 16, 2023, a hearing on the Applications was held in this Court (the "Hearing"). At the Hearing, and in regard to the Alecto retention applications, the Court requested that the parties address: (1) the $15,000 intercompany insurance reimbursement issue (the "Insurance Issue"); (2) the $60,041,067.02 claim related to the intercompany advances made by Alecto to Sherman/Grayson; (3) the $20,000,000 transferred from Alecto to Sherman/Grayson one year prior to the Alecto Petition Date (defined below); and (4) the $1,500,000 in payments from Alecto to Sherman/Grayson ninety days prior to the Alecto Petition Date (collectively, the "Issues"). A true and correct copy of the transcript of the Hearing is attached hereto as **Exhibit "A."**

---

[2] Shulman Bastian Friedman & Bui LLP ("SBFB") and The Rosner Law Group LLC ("Rosner") are collectively referred to as "Counsel."

[3] On August 7, 2023, the Office of the United States Trustee (the "UST") filed an objection to the Applications [D.I. 89]. On or about August 10, 2023, the Debtors and the UST reached a resolution on the UST's objection to the Applications.

6. As set forth in further detail below, neither Alecto nor Sherman/Grayson perceived that an actual conflict existed by virtue of the representation by Counsel of both Debtors. Prior to June 21, 2023, the Debtors did not know if Sherman/Grayson would file for bankruptcy relief. Accordingly, prior to June 21, 2023, the Debtors did not seek advice from Counsel regarding the Issues. Even after Sherman/Grayson executed the APA (defined below) for the sale of substantially all of its assets (the "Assets"), and the decision was made to consummate said sale through a chapter 11 process, the Debtors did not expect there would be any recovery for unsecured creditors in the Sherman/Grayson Case. Therefore, I did not ask Counsel about the Issues because the Debtors believed that Alecto's claims against Sherman/Grayson were worthless and any potential conflicts were rendered moot.

**Relevant Background**

7. Alecto filed its voluntary petition for relief under Chapter 11 of title 11 of the United States Code on June 16, 2023 (the "Alecto Petition Date"). At the time of the Alecto Petition Date, the Debtors were actively seeking to dispose of the Wilson N. Jones Medical Center (the "Hospital") operated by Sherman/Grayson. However, the situation was fluid and it was unclear if Sherman/Grayson would file for bankruptcy relief or be able to conduct a sale of its assets prior to entering into the asset purchase agreement ("APA") and interim management agreement ("IMA") with AHS Sherman, LLC ("AHS-Sherman")[4] on June 21, 2023. Consequently, prior to the Alecto Petition Date, no advice was sought or obtained by the Debtors regarding the Issues.

8. Alecto's and Sherman/Grayson's interest were aligned in seeking a buyer for the

---

[4] References to "AHS-Sherman" shall include AHS-Sherman's ultimate parent company American Healthcare Systems Co, LLC.

assets (primarily the Hospital) of Sherman/Grayson. If Sherman/Grayson was unable to sell its assets, Sherman/Grayson would have been forced to cease operations and immediately shut down the Hospital, leaving approximately four-hundred healthcare workers unemployed and the Sherman, Texas community with diminished access to healthcare. Thereafter, Alecto would have been tasked with the winddown of the Hospital. I have personal experience in the winddown process, having taken four hospitals through that process over the past four years. Such winddown process would be extremely costly to Alecto. First, Alecto would be forced to spend substantial money on the winddown process and the shutdown of the Hospital. For example, Alecto would be liable for the costs of transferring patients and the costs of keeping the Hospital open while doing so. Second, Alecto's employees would need to devote significant time to dealing with any issues related to the closure of the Hospital at the expense of devoting their time to Alecto's other business operations. Finally, Alecto would need to deal with all regulatory issues and/or litigation resulting from the closure of the Hospital.  Based upon my experience, these issues can take years to resolve.

9. On November 3, 2022, Laxman Reddy and I met with SBFB to discuss bankruptcy options for Alecto in light of the legal action *Reed, et. al. v. Alecto Healthcare Services LLC, et. al.* in United States District Court for Northern District of West Virginia, Civil Action No. 5:19-cv-263 (the "Reed Action"). At the time of this meeting, there was no contemplation that Sherman/Grayson would conduct a sale of its assets or file for bankruptcy relief. We did not seek, and were not provided, advice regarding any of the Issues.

10. From November 2022 to February 2023, SBFB was involved in settlement discussions with the creditors in the Reed Action which included the provision of a draft petition. No advice was sought or obtained from SBFB regarding the Issues in the drafting of the draft

petition.

11.     In or about February 2023, interest began to increase in acquiring the assets of Sherman/Grayson. Consequently, on February 9, 2023, I met with SBFB to understand what would be involved in a potential bankruptcy sale process for Sherman/Grayson. At this meeting, I did not seek, nor was I provided advice, on the Issues.

12.     On or about May 16, 2023, Sherman/Grayson judgment creditor Medley, Inc. ("Medley") filed a writ of garnishment in the District Court of Grayson County, Texas against Sherman/Grayson's bank accounts. At that time, I sought the assistance of SBFB to help reach a resolution with Medley and to prepare an emergency petition in the event that a resolution could not be reached with Medley. On or about May 24, 2023, Sherman/Grayson and Medley entered into a forbearance agreement (the "Forbearance Agreement") whereby Medley agreed to forbear from collection until and including June 25, 2023 (the "Forbearance Period").

13.     At the time of entering into the Forbearance Agreement with Medley, it was understood that the Debtors would continue their efforts to identify a purchaser for the Assets and file for bankruptcy relief for Sherman/Grayson prior to the expiration of the Forbearance Period if a purchaser was identified and an agreement was reached with the purchaser to acquire the Assets.

14.     On May 31, 2023, I began discussions with AHS-Sherman regarding a potential sale of the Assets and on June 5, 2023, I circulated drafts of the APA and IMA to AHS-Sherman. I drafted such documents myself without the assistance of Counsel.

15.     On June 12, 2023, AHS-Sherman first advised the Debtors that AHS-Sherman was prepared to purchase the Assets subject to certain terms and conditions.  One of the conditions set by AHS-Sherman was that Alecto and Sherman/Grayson would need to fund

Sherman/Grayson's payroll due on June 23, 2023 because AHS-Sherman was unwilling to fund Sherman/Grayson's payroll due on June 23, 2023. Without the ability to fund such payroll, the Debtors would not be able to effectuate the sale of the Assets to AHS-Sherman. As of the Alecto Petition Date, the Debtors did not have the funding necessary to meet the June 23, 2023 payroll and, as such, did not know if Sherman/Grayson would file for bankruptcy relief.

16. On June 16, 2023, SBFB and I had a call with MPT of Sherman-Alecto, LLC's ("MPT") counsel to explain the tentative agreement with AHS-Sherman and the funding that was required to meet payroll. Absent funding from MPT, Sherman/Grayson was likely to close the Hospital and potentially file for relief under Chapter 7 of the Bankruptcy Code because neither Alecto nor Sherman/Grayson had the funding necessary to meet the June 23, 2023 payroll and such funding was a condition precedent to AHS-Sherman's willingness to acquire the Hospital.

17. On June 19, 2023, MPT agreed to provide the necessary funding and circulated a "Restructuring Term Sheet" which reflected the integrated transaction of the APA, IMA, and DIP financing. All three transactions needed to be completed in order to effectuate the sale of the Assets to AHS-Sherman. The Restructuring Term Sheet did not contemplate any distributions to Sherman/Grayson's unsecured creditors.

18. On June 21, 2023, the Restructuring Term Sheet, APA and IMA were entered into between Sherman/Grayson, MPT and AHS-Sherman.[5]

19. On June 23, 2023, Sherman/Grayson filed its petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code (the "Sherman/Grayson Petition Date").

---

[5] Although the APA is dated June 19, 2023, it did not become effective until June 21, 2023 when the Restructuring Term Sheet was executed.

**The Insurance Issue**

20.     Prior to the Alecto Petition Date, Alecto never sought nor obtained advice regarding the Insurance Issue from Counsel.

21.     In the ordinary course of business, Alecto maintains numerous insurance policies providing coverage for Alecto and its subsidiaries (each, an "Insurance Policy" and collectively, the "Insurance Policies"). Alecto pays for the premiums (the "Insurance Premiums") for the Insurance Policies and records the amount allocated to each subsidiary as an intercompany receivable. These Insurance Policies are not severable.[6] This means Alecto must pay the entire Insurance Premium for the entire Insurance Policy or risk losing coverage for itself. Historically, Alecto's subsidiaries have largely been unable to reimburse Alecto for their portions of the Insurance Premiums.

22.     At the time of the Alecto Petition Date and the filing of Alecto's insurance motion [D.I. 7] (the "Insurance Motion"), Alecto had no expectation that Sherman/Grayson would be able to reimburse Alecto for its share of the Insurance Premiums. The Insurance Motion was filed to maintain the status quo and to ensure that Alecto could maintain the Insurance Policies and pay all obligations in respect thereof.

23.     Until June 20, 2023, the date of Alecto's first day hearing, Alecto and Counsel were unaware of any issues relating to the Insurance Policies or the Insurance Motion. Prior to the hearing, SBFB alerted me that Jami Nimeroff, Alecto's subchapter v trustee, had inquired whether Alecto's insurance policies covered Alecto's subsidiaries. At that time, I advised Counsel

---

[6] There are three policies which are specific to Sherman/Grayson: (a) the Excess PL/GL Policy which is specific to Texas exposures; (b) the Environmental Pollution policy which provides coverage for the underground storage tank at the Hospital and (c) the Texas Non-Subscriber Employer's Indemnity Policy which is specific to Texas employees. Alecto is also a named insured under each of these policies. Each of these policies are required under Sherman/Grayson's lease with MPT and Alecto has guaranteed Sherman/Grayson's performance under the lease.

that: (1) except for the three (3) policies specific to Texas, the Insurance Policies cover all of Alecto's subsidiaries; (2) the subsidiaries have not reimbursed Alecto for such amounts because of a lack of funds; (3) the Insurance Policies were necessary to protect Alecto from indemnity claims by its subsidiaries; and (4) in my business judgment, the payment of the Insurance Premiums was in the best interest of Alecto and its estate notwithstanding the subsidiaries inability to repay the portion of the Insurance Premiums allocable to their coverage.

24. Until the IMA was entered into on June 21, 2023, Alecto never had any expectation of being reimbursed by Sherman/Grayson for the Insurance Premiums and never sought advice from Counsel regarding such reimbursement.

25. Immediately prior to the Initial Debtor Interview scheduled for July 7, 2023, I first discussed with Counsel whether Alecto could seek reimbursement for the Insurance Premiums from AHS-Sherman. Pursuant to the IMA, AHS-Sherman was responsible for Sherman/Grayson's insurance costs beginning on June 21, 2023.

26. I do not believe that an actual conflict existed arising from Counsels' representation of both Debtors related to the Insurance Issue as there was no practical avenue for Alecto to be reimbursed by Sherman/Grayson for the Insurance Premiums arising between the Alecto Petition Date and June 21, 2023. Prior to June 21, 2023, Sherman/Grayson lacked sufficient funds to reimburse Alecto for the Insurance Premiums. I believed that Alecto would have a prepetition claim in the Sherman/Grayson Case for the Insurance Premiums arising between the Alecto Petition Date and June 21, 2023. Moreover, pursuant to the IMA, AHS-Sherman has the right to utilize all of the Hospital's revenues to pay the on-going costs of running the Hospital. In my business judgment, the payment of the Insurance Premiums was in the best interest of Alecto and its estate notwithstanding the subsidiaries inability to repay the portion of

the Insurance Premium allocable to their coverage. Alecto needed to maintain its own insurance and the most economical and practical means to accomplish that was to pay the Insurance Premiums. In addition, Sherman/Grayson's lease with MPT required it to maintain the Insurance Policies and Alecto guaranteed Sherman/Grayson's obligations under the lease.

### The Intercompany Advances

27. Alecto, through a subsidiary, acquired Sherman/Grayson on or about October 31, 2014. Since 2014, Alecto has loaned substantial funds to Sherman/Grayson that have not been, and except to a very limited degree are unable to be, paid back. Such advances were made to allow Sherman/Grayson to meet the healthcare needs of its community and attempt a financial recovery. From 2014 until the Alecto Petition Date, Alecto advanced approximately $60,041,067.02 to Sherman/Grayson in the form of cash transfers and the payment of certain expenses on behalf of Sherman/Grayson (the "Advances").

28. As advancing funds to its subsidiaries was Alecto's general business practice, the Debtors never sought nor obtained advice from Counsel regarding the Advances prior to the Alecto Petition Date and Sherman/Grayson Petition Date.

29. While Alecto filed its petition on June 16, 2023, the petition only identified payments made to Sherman/Grayson in the ninety (90) days prior to the Alecto Petition Date. Further, while Alecto filed its Statement of Financial Affairs on June 30, 2023 [D.I. 49], Alecto did not include transfers to Alecto's subsidiaries because I believed that the term "insiders" included Alecto's members, officers, and shareholders and did not include Alecto's subsidiaries.[7]

30. The Advances first became an issue while preparing responses to the UST's initial

---

[7] At the telephonic meeting of creditors held on July 25, 2023, the UST requested that Alecto amend its schedules to include transfers to Alecto's subsidiaries.

document request for Sherman/Grayson on July 5, 2023. In response to request number 9, I provided to SBFB a copy of Sherman/Grayson's trial balance which disclosed the $60,041,067.02 owed by Sherman/Grayson to Alecto. This is the first time I discussed the amount and scope of the Advances with Counsel.

31. At this point, I did not anticipate that the Advances would give rise to any actual conflicts. Although the APA was entered into on June 19, 2023, the Debtors did not anticipate that there would be any distribution to unsecured creditors in the Sherman/Grayson Case. Accordingly, Alecto believed that its claims against Sherman/Grayson were worthless as Alecto did not anticipate receiving anything from the Sherman/Grayson Case.

32. On or about July 22, 2023, I was advised by AHS-Sherman that the Official Committee of Unsecured Creditors in the Sherman/Grayson Case (the "Committee") sought a settlement payment from AHS-Sherman in exchange for the Committee withdrawing its potential objection to the proposed sale of the Assets.

33. On or around August 3, 2023, I was advised by SBFB that the Committee offered to resolve its potential objection to the sale motion in the Sherman/Grayson Case [Sherman/Grayson Case; D.I. 60] in exchange for: (1) a $250,000.00 total cash settlement distribution to general unsecured creditors in the Sherman/Grayson Case; and (2) Alecto waiving its claims against Sherman/Grayson. I was advised by SBFB that it could not provide advice to Alecto regarding the waiver of its claims against Sherman/Grayson.

34. I am informed and believe that Counsel advised the Committee that Counsel could not provide advice to Alecto regarding the waiver of its claims against Sherman/Grayson.

35. After receiving the settlement demand from the Committee, Counsel and I discussed whether to appoint an independent director at Alecto to evaluate the Advances and the

Insurance Issue. On August 7, 2023, the board of managers of Alecto approved a resolution to appoint Steven Balasiano as an independent director and on August 9, 2023, Alecto filed its *Application for Entry of an Order Authorizing the Retention and Employment of Steven Balasiano as Independent Director/Manager Nunc Pro Tunc* [D.I. 93]. Alecto entered into this resolution and filed this application to have an independent director make decisions on behalf of Alecto for any inter-debtor disputes.

36. I do not believe that there was any actual conflict arising from Counsels' representations of both Alecto and Sherman/Grayson prior to the Committee's settlement demand that Alecto waive its claim against Sherman/Grayson.

**Transfers within Ninety Days and One Year Before the Alecto Petition Date**

37. In the year prior to the Alecto Petition Date, Alecto transferred $20,797,030.11 to Sherman/Grayson to fund operating expenses, including payroll. In the ninety (90) days prior to the Alecto Petition Date, Alecto made the following transfers to Sherman/Grayson to fund operating expenses: (1) 3/30/2023: $650,000.00; (2) 4/18/2023: $100,000; (3) 4/27/2023: $190,000.00; (4) 5/25/2023: $75,000.00; (5) 6/8/2023: $411,426.45; and (6) 6/14/2023: $79,000.00 (collectively, the "Transfers").

38. The $60,041,067.02 worth of Advances are inclusive of the Transfers.

39. At the time each of the Transfers were made, Alecto did not seek, nor obtain, advice from Counsel regarding the Transfers. The Transfers were made by Alecto to Sherman/Grayson to help fund operating and payroll expenses and allow efforts to secure a purchaser for the Hospital to continue so that Alecto could avoid the costs and liabilities associated with shutting down the Hospital. The Transfers were made in the ordinary course of Alecto's business.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States, that the foregoing statements are true and correct.

Dated: August 23, 2023

/s/ 
Michael Sarrao