**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 (Subchapter V) |
| | ) Case No. 23-10787 (JKS) |
| Alecto Healthcare Services LLC, | ) |
| | ) **Hearing Date: August 28, 2023 at 10:00 a.m.** |
| Debtors | ) |
| | ) **Related Docket Nos. 100, 127, 128, and 129** |

**REPLY OF THE REED ACTION JUDGMENT CREDITORS IN SUPPORT OF THEIR MOTION FOR ENTRY OF AN ORDER APPOINTING AN OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. § 1102(a)(3)**

The Reed Action Judgment Creditors, by and through undersigned counsel, submit this reply in support of their *Motion for Entry of an Order Appointing an Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. § 1102(a)(3)* [D.I. 100]. In support of their Motion and this Reply, the Reed Action Judgment Creditors respectfully state as follows:

**Preliminary Statement**

1. The Reed Action Judgment Creditors brought this motion in the face of the Debtor's persistent pattern of transferring large sums to its affiliated entities, rather than paying its own creditors. The Debtor has confirmed that it transferred $20.8 million to support the Sherman/Grayson Hospital in the one-year period before the petition date, and approximately $2 million in the 90 days before the petition date,[1] while brazenly acknowledging that it did not expect Sherman/Grayson Hospital to be able to repay the amount provided. Sarrao First Supplemental Declaration, D.I. 133, ¶ 37. But the transfer of significant funds to its insolvent subsidiary is not the only conduct at issue which has harmed Alecto's creditors and requires independent review.

---

[1] Mr. Sarrao's First Supplemental Declaration filed on August 23, 2023, identified 6 transfers in the amount of $1,505,426.45 that occurred within the 90-day period, but omits an additional transfer in the amount of $450,000 made on March 30, 2023, as disclosed in Attachment 3 to the SOFA (D.I. 49).

2. Since the Reed Action Judgment Creditors filed their Motion, the Debtor (i) retained new counsel (who entered the case on August 14, 2023, D.I.103), and (ii) had its emergency motion to appoint Mr. Balasiano as an independent director granted on August 16, 2023 (D.I. 118). In connection with its Objection to the Motion, the Debtor also executed a resolution on August 19, 2023, expanding Mr. Balasiano's duties to include authority to investigate potential claims against the Company's affiliates and insiders and to bring claims against them. In the early evening of August 23, 2023, the Debtor also filed a First Supplemental Declaration of Michael Sarrao (D.I. 133) to provide additional information on the intercompany transfers to Sherman/Grayson Hospital and the Debtor's view of the conflicts created by such transfers in the face of Sherman/Grayson Hospital's separate bankruptcy case.

3. The rush to obtain new counsel and appoint an independent director to fix the conflicts created by the significant transfers to an affiliated Debtor while both entities were insolvent does not relieve the need for a creditors committee. As the Reed Action Judgment Creditors currently understand it, any investigation of potential causes of action would be directed by the independent director but conducted by Debtor's counsel, who would also be tasked with bringing such actions. Simply stated, Debtor's counsel cannot run the bankruptcy case under the direction of Mr. Sarrao and Mr. Reddy and at the same time investigate and bring causes of action against other entities they manage and direct, or the ownership trusts they are associated with.

**A. Cause Exists for a Full Investigation of the Debtor's Potential Fraudulent Transfers.**

4. The Debtor is the parent to numerous affiliated entities which together have operated a number of hospitals in the past decade, in some cases in buildings owned by Debtor affiliates. The Debtor serves as the umbrella organization for this enterprise and filed its tax returns on a consolidated basis at the Alecto level. Pre-petition, money flowed from some of these

subsidiaries to the Debtor, and the Debtor distributed money out to some of its subsidiaries. The 2022 tax return attached to the Petition shows gross revenues of the Debtor of $3 million but indicates that its "Intercompany Receivable" grew from $18,894,024 at the start of 2022 to $41,419,161 at year end. [D.I. 1, p. 46][2] The limited information provided in the Debtor's schedules only touch on the extensive transfers that may be relevant to creditor recoveries.[3] The principals of Alecto who permitted these transfers breached their fiduciary duties to Alecto's creditors.

5.  The relevant time period for fraudulent transfer claims is not limited to the one year prior to the petition date. The Reed Action was filed on September 19, 2019, shortly after the closing of the Ohio Valley Medical Center. No disclosure has been made of transfers by the Debtor for the benefit of its members between the filing of that action and June 16, 2022, three months prior to the decision granting summary judgment to the Reed Action plaintiffs (and one year prior to the petition date). Transfers for the benefit of members of an LLC in advance of a judgment are recoverable as fraudulent transfers under section 548 of the Bankruptcy Code and under state law. The Reed Action Judgment Creditors are already aware that the Debtor completed repayment of a loan from Lex Reddy, the principal of its primary member, in January 2022, but do not know the amount and timing of such payments.

6.  As noted in the Motion, the Debtor reported gross revenues of $1.5 million in the first five months of 2023, the result of management fees the Debtor earns at an average of $300,000

---

[2] See Statement 11 on page 27 of the 2022 tax return. A copy of the tax return is attached hereto as Exhibit A.

[3] The members' form K-1s show increases in loss attributable to the members' capital accounts in the total amount of nearly $34.5 million (D.I. 1, p. 24 of 119). Mr. Sarrao testified at the 341 meeting that the NOLs generated by these losses were a benefit to Alecto's members. Undersigned counsel has attempted to obtain a transcript of the 341 meeting, but its vendor has indicated that the file it obtained from the UST's office was corrupted and could not be processed.

per month. Yet the fact that the Debtor transferred more than $2 million to Sherman/Grayson Hospital in the 90 days prior to the petition date (and $20.1 million in the year prior to the petition date) demonstrates that the Debtor has undisclosed sources of funding well in excess of the management fees it receives.

7. The Debtor stands at the crossroads of a network of entities, ensuring that large sums flowed to ailing subsidiaries, but that none goes to its judgment creditors. The Motion seeks a forensic investigation of the flow of funds through the Debtor's network, managed by a creditors committee. The changes hastily implemented by the Debtor do not intend to provide creditors with either visibility on the transfers or the funds that may be subject to claims, or an adequate mechanism to appropriately pursue them.

8. The statutory deadline for the Debtor to file a plan in this case is September 14, 2023. While the Debtor's receipt of monthly management fees would appear to provide the potential for a modest recovery by creditors in the case, much more significant recoveries may be available from the pursuit of fraudulent transfer claims. This makes the issue of the appropriate investigation and pursuit of such claims a central issue in the case that needs to be addressed promptly.

9. The Debtor's argument that the Reed Action Judgment Creditor have not shown cause for the appointment of a creditors committee because the cases cited in the Motion are not on point with the situation here is frivolous. The Debtor's argument is, in essence, that cause is limited to situations presented in the dearth of caselaw discussion the appointment of a creditors committee in Subchapter V cases. Courts in this district have generally found that "'Cause'" is not defined in the Bankruptcy Code. Cause is a flexible concept, is fact intensive, and is to be determined on a case-by-case basis upon consideration of the totality of the circumstances." *See*

*In re Scarborough-St. James Corporation*, 535 B.R. 60, 67 (Bankr. D. Del. 2015).  As set forth more fully in the Motion, cause exists to appoint a committee because the Debtor cannot propose an adequate remedy for the deliberate acts and possible breaches of fiduciary duties by its management in preferring is own affiliates to its creditors, both while insolvent and in an effort to avoid its creditors prior to the entry of judgment against it.

10. The appointment of an independent director may be an adequate remedy for the conflict as between the Debtor and Sherman/Grayson Hospital with respect to any proposed settlement of the Debtor's claim against Sherman/Grayson Hospital.  It is not an adequate remedy for the Debtor's intentional evasion of its own creditors by deliberately transferring funds to its subsidiaries which it knew would not be repaid.  A debtor that has engaged in wrongdoing with respect to its creditors should not have sole control over the investigation and correcting of that conduct in a vacuum, outside of the review of its creditors.  Yet that is what the Debtor contends is a solution to its deliberate avoidance of obligations to its non-favored creditors.

11. The need for an investigation of potential fraudulent transfer claims by an entity that does not report to the Debtor is is particularly true in a subchapter V case, where the members of the Debtor stand to retain their membership interests and continue operating their business without paying their creditors in full.  In addition, to the extent that the plan filed by the Debtor proposes any treatment or resolution of such causes of action, the extent of the transfers and the potential value of such claims will need to be evaluated and disclosed.  Appointment of a creditors committee will ensure that the investigation of these claims moves forward promptly and that the Debtor and its creditors are on equal footing with respect to their evaluation, as they are in non-subchapter V cases.

**Conclusion**

WHEREFORE, for the foregoing reasons, the Reed Action Judgment Creditors respectfully request that this Honorable Court order the appointment of an official committee of unsecured creditors and grant to the Reed Action Judgment Creditors such other and further relief as is just and proper.

Date: August 24, 2023
Wilmington, DE

SULLIVAN · HAZELTINE · ALLINSON LLC

 /s/ William D. Sullivan
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
        whazeltine@sha-llc.com

-and-

Colten L. Fleu, Esq.
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Tel: (304) 326-0188
Email:  colten@msjlaw.org

-and-

John Stember, Esq.
Maureen Davidson-Welling, Esq.
Stember Cohn & Davidson-Welling, LLC
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
Tel: 412-338-1445
Email: jstember@stembercohn.com
        mdavidsonwelling@stembercohn.com

*Attorneys for the Reed Action Judgment Creditors*