# E<span style="font-variant:small-caps">xhibit</span> J

EFiled: Jan 20 2021 02:19PM EST
Transaction ID 66269699
Case No. N21C-01-146 PRW CCLD

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| LHP HOSPITAL GROUP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. _____(CCLD) |
| ALECTO HEALTHCARE | ) |
| SERVICES LLC AND ALECTO | ) |
| HEALTHCARE SERVICES | ) |
| SHERMAN LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff LHP Hospital Group, Inc. ("LHP"), by and through its undersigned counsel, and as for its Complaint against Defendants Alecto Healthcare Services LLC ("Alecto Parent") and Alecto Healthcare Services Sherman LLC ("Alecto Sherman") (collectively "Defendants"), alleges and states as follows:

### NATURE OF THE ACTION

1. LHP seeks redress for Defendants' failure to honor their guarantor obligation with respect to lease payments on a medical office building located in Sherman, Texas ("the MOB").

2. Defendants' affiliate, Sherman/Grayson Hospital LLC ("Sherman Grayson") became the tenant under five leases covering the MOB effective October 31, 2014. Sherman Grayson has defaulted in its obligations under those leases, and

LHP has been forced to pay the delinquent rent and other charges owing to the building's landlord.

3. Alecto Sherman, however, is contractually obligated under a purchase agreement dated as of September 23, 2014 ("Purchase Agreement") to indemnify and hold LHP harmless for any liabilities related to LHP's guarantees of the MOB leases. Alecto Parent has guaranteed those indemnity obligations pursuant to a guarantee dated as of September 23, 2014 in favor of LHP ("Alecto Parent Guarantee").[1] LHP has made demand upon Defendants to honor their contractual obligations, but they have failed and refused to indemnify and reimburse LHP.

4. To date, LHP has paid $1,909,831.83 in delinquent rent and other charges owing to the building's landlord. LHP now brings this Complaint to recover damages suffered as a direct and proximate result of Defendants' breaches of the operative agreements.

## **PARTIES**

5. LHP is a Delaware corporation formed under the laws of the State of Delaware with its principal place of business located in the State of Tennessee.

6. Defendant Alecto Healthcare Services LLC is a limited liability company formed under the laws of the State of Delaware, with its principal place of

---

[1] True and correct copies of the Purchase Agreement and Alecto Parent Guarantee are attached as Exhibits 1 and 2, respectively.

business, upon information and belief, located in the State of California. Alecto Parent may be served with process by serving The Corporation Trust Company, its registered agent, at Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

7. Defendant Alecto Healthcare Services Sherman LLC is a limited liability company formed under the laws of the State of Delaware, with its principal place of business, upon information and belief, in the State of California. Alecto Sherman may be served with process herein by serving Cogency Global Inc., its registered agent, at 850 New Burton Road, Suite 201, Dover, Delaware 19904.

## **JURSIDCTION AND VENUE**

8. This Court has personal jurisdiction over Alecto Parent and Alecto Sherman because they are limited liability companies organized under the laws of the State of Delaware.

9. Pursuant to Section 12.13 of the Purchase Agreement, Alecto Sherman voluntarily submitted to the exclusive jurisdiction of the courts of the State of Delaware for disputes arising thereunder. Ex. 1 at Section 12.13. Pursuant to Section 8 of the Alecto Parent Guarantee, Alecto Parent submitted to the exclusive jurisdiction of the courts of the State of Delaware for disputes arising thereunder. Ex. 2 at Section 8.

10. This Court has jurisdiction over this dispute pursuant to Article IV, Section 7 of the State of Delaware Constitution and 10 *Del. C.* § 541.

11. Assignment to this Court's Complex Commercial Litigation Division is appropriate because the amount in controversy exceeds $1 million.

## FACTUAL BACKGROUND

12. Altera Highland, LLC ("Altera"), as landlord, and Sherman/Grayson Health System, LLC ("Sherman Grayson System"), as tenant, entered into five (5) lease agreements dated August 21, 2012 relating to: (1) existing, vacant, and shell space of the MOB; (2) the common areas of the MOB occupied by or used by Wilson N. Jones Regional Medical Center f/k/a Texas Health Presbyterian Hospital—WNJ (the "Hospital"); and (3) the ambulatory surgery center located in the MOB. These lease agreements are subtitled Master Lease—Existing Space ("Existing Space Lease"), Existing Physician Suites ("Existing Physician Suite Lease"), Master Lease—Shell Space ("Shell Lease"), Hospital—Occupied Common Areas, ("OCC Lease"), and Ambulatory Surgery Center ("ASC Lease") and are collectively referred to herein as the "Lease Agreements." True and correct copies of the Lease Agreements are attached as Exhibits 3-7 and are incorporated herein by reference.

13. By the terms of the Lease Agreements, Altera leased to Sherman Grayson System the "Leased Premises," including (1) existing, vacant, and shell space of the MOB; (2) the common areas of the MOB occupied by or used by the

Hospital; and (3) the ambulatory surgery center located in the MOB. The Leased Premises also specifically includes Suites 100A, 100B, 100C, 100D, 100E, 130, 200, 210, 310, 315, 330, 340, 350, 400, 410, 415, 430, 445, 500, 510, and 545 in the MOB. The physical address of the Leased Premises is 300 N. Highland Drive, Sherman, Texas.

14. As an inducement for Altera to enter into the Lease Agreements, LHP executed five separate guarantees in favor of Altera, true and correct copies of which are attached as Exhibits 8-12 and incorporated herein by reference (the "LHP Guarantees"). Under the terms of the LHP Guarantees, LHP guaranteed to Altera "the full prompt and timely payment …of all amounts to be paid…by Tenant" under the Lease Agreements.

15. Sherman Grayson System, as assignor, and Sherman Grayson, as assignee, subsequently executed an Assignment and Assumption of Leases dated October 31, 2014 ("Assignment"), a true and correct copy of which is attached as Exhibit 13 and incorporated herein by reference. Pursuant to the Assignment, Sherman Grayson System assigned its interest as tenant under each of the Lease Agreements to Sherman Grayson. Altera, as landlord, consented to the Assignment and executed (along with Sherman Grayson System and Sherman Grayson) a Consent Agreement dated October 31, 2014 ("Consent Agreement"), a true and correct copy of which is attached as Exhibit 14 and incorporated herein by reference.

Under the terms of the Consent Agreement, LHP agreed that its obligations under the LHP Guarantees applied to Sherman Grayson's obligations under the Lease Agreements. Sherman Grayson occupied the Leased Premises as the tenant from October 31, 2014 through October 31, 2020.

16. As part of the transaction underlying the execution of the Consent Agreement, Alecto Sherman executed the Purchase Agreement dated as of September 23, 2014. Under Section 6.9 of the Purchase Agreement, Alecto Sherman agreed that it would use its "commercially reasonable efforts to cause…LHP to be fully and finally released from any obligations under the …[Lease Agreements]." Alecto Sherman further agreed in Section 9.3 of the Purchase Agreement that it would "indemnify and hold harmless…[LHP]…from and against any Damages actually incurred by [LHP] as a result of…any breach of the covenants or agreements made herein by [Alecto Sherman]…and…any liabilities related to the MOB in respect of…LHP's guarantees of the …[Lease Agreements]." Ex. 1.

17. Finally, Alecto Parent, as part of the transaction underlying the execution of the Consent Agreement, executed the Alecto Parent Guarantee dated as of September 23, 2014 in favor of LHP. Under the terms of the Alecto Parent Guarantee, Alecto Parent agreed that it would guarantee to LHP "the due and punctual payment, performance, and discharge…of each and every of [Alecto Sherman's] obligations under the Purchase Agreement" which includes "attorney

fees and costs, which [LHP] shall incur in enforcing or preserving any rights under th[e] Guarantee." Ex. 2 at Section 1.

18. The terms of the Lease Agreements require Sherman Grayson to pay Base Rent (as defined in the Lease Agreements) to Altera in monthly installments in the amounts of: (1) $12.05 per RSF[2] (subject to adjustments as provided in Sections 3.1 and 15.6) with respect to the portion of the Leased Premises covered by the Existing Space Lease; (2) $12.05 per RSF (subject to adjustments as provided in Section 3.1) with respect to the portion of the Leased Premises covered by the Existing Physician Suite Lease; (3) $12.05 per RSF (subject to adjustments as provided in Sections 3.1 and 15.6) with respect to the portion of the Leased Premises covered by the Shell Lease; (4) $12.05 per RSF (subject to adjustments as provided in Section 3.1) with respect to the portion of the Leased Premises covered by the OCC Lease; and (5) $22.55 per RSF (subject to adjustments as provided in Section 3.1) with respect to the portion of the Leased Premises covered by the ASC Lease.

19. Section 3.2(1) of the Lease Agreements further requires Sherman Grayson to pay Altera a Pro Rata Share of Operating Expenses (as defined in the Lease Agreements) on a monthly basis at the same time as the Base Rent. Exs. 3-7.

---

[2] As defined by the Lease Agreements, RSF "means the rentable square feet in the Premises, Building or other area in question, as determined by an architect using ANSI/BOMA Standards."

20. Section 3.4 of the Lease Agreements further provides that if Altera does not receive Base Rent or the Pro Rata Share of Operating Expenses on or before the 5th day of the calendar month when the payments are due, Sherman Grayson must pay a Late Charge (as defined in the Lease Agreements) of $100 plus interest on all unpaid amounts to accrue at a rate of six percent (6%) per annum from the first day payment is due. Exs. 3-7.

21. Upon information and belief, Sherman Grayson did not pay Altera the full monthly payment of Base Rent for May 1, 2020 ($132,291.59 past due and payable), the full monthly Pro Rata Share of Operating Expenses for May 1, 2020 ($71,917.93 past due and payable), or the full amount of Late Charges for April and May 2020 ($3,097.53 past due and payable). A true and correct copy of a letter from Altera to Sherman Grayson dated May 14, 2020 demanding payment is attached as Exhibit 15 and is incorporated herein by reference.

22. Upon information and belief, Sherman Grayson did not pay Altera the full monthly payment of Base Rent, the full monthly Pro Rata Share of Operating Expenses, the full amount of Late Charges, and additional charges due under the Lease Agreements for subsequent months. Sherman Grayson thus defaulted under the terms of the Lease Agreements by failing to timely pay the above obligations. Altera subsequently sued Sherman Grayson in the Texas state courts for possession of the Leased Premises. Upon information and belief, Sherman Grayson has

consented to the abandonment of the Leased Premises to Altera and has released possession of the Leased Premises to Altera.

23. As a result of Sherman Grayson's defaults under the Lease Agreements, Altera made a demand on LHP for the payment of the past due sums due under the Lease Agreements and threatened to sue LHP if such payments were not made. True and correct copies of correspondence from Altera to LHP evidencing such demands are attached as Exhibits 16 and 17 and incorporated herein by reference. After Sherman Grayson continued its defaults under the Lease Agreements, Altera filed suit against Sherman Grayson and LHP in an action styled *Altera Highland, LLC v Sherman/Grayson Hospital, LLC and LHP Hospital Group, Inc.*, Cause No. CV-20-1381 in the 59th Judicial District Court of Grayson County, Texas. Altera dismissed that suit after LHP paid the amounts then due and delinquent under the Lease Agreements.

24. As a result of Sherman Grayson's defaults under the Lease Agreements and Alecto Sherman's breaches of the Purchase Agreement, LHP has been required to pay Altera the following sums as of January 13, 2021:

| Months Paid | Amount |
|---|---|
| May 2020, June 2020, July 2020 | $633,881.96 |
| August 2020, September 2020, October 2020 | $801,415.09 |
| November 2020 | $208,178.26 |
| December 2020 | $208,178.26 |
| January 2021 | $58,178.26 |

9

25. LHP has made demand on Alecto Sherman and Alecto Parent for reimbursement of and indemnification in connection with such payments to Altera, but Defendants have failed and refused to provide such reimbursement and indemnification. A true and correct copy of LHP's most recent demand to Defendants is attached as Exhibit 18 and incorporated herein by reference.

## COUNT I

### BREACH OF CONTRACT BY ALECTO SHERMAN

26. LHP incorporates the preceding paragraphs as if fully set forth herein.

27. The Purchase Agreement is a valid, existing, and enforceable contract between Alecto Sherman and LHP. All conditions precedent to LHP's rights to enforce such contract and to recover thereunder have been fulfilled or have occurred. Alecto Sherman has breached the Purchase Agreement, by, among other things, failing and refusing to use commercially reasonable efforts to cause LHP to be fully and finally released from any obligations under the Lease Agreements and by failing and refusing to indemnify and hold LHP harmless from and against (1) the damages incurred by LHP as a result of the breach of the covenants or agreements made in the Purchase Agreement by Alecto Sherman and (2) liabilities related to the MOB in respect of LHP's guarantees of the Lease Agreements. LHP has been damaged by such breaches in an amount equal to at least $1,909,831.83 as of the date of the filing

of this action and may suffer additional and continuing damages as the result of subsequent breaches of the Purchase Agreement by Alecto Sherman.

## COUNT II

### BREACH OF CONTRACT BY ALECTO PARENT

28. LHP incorporates the preceding paragraphs as if fully set forth herein.

29. The Alecto Parent Guarantee is a valid, existing, and enforceable contract between Alecto Parent and LHP. All conditions precedent to LHP's rights to enforce such contract and to recover thereunder have been fulfilled or have occurred. Alecto Parent has breached the Alecto Parent Guarantee, by, among other things, failing and refusing to guarantee and pay to LHP the due and punctual payment, performance, and discharge of Alecto Sherman's obligations under the Purchase Agreement. LHP has been damaged by such breaches in an amount equal to at least $1,909,831.83 as of the date of the filing of this action and may suffer additional and continuing damages as the result of subsequent breaches of the Alecto Parent Guarantee by Alecto Parent.

## COUNT III

### ATTORNEYS' FEES AND EXPENSES

30. LHP incorporates the preceding paragraphs as if fully set forth herein.

31. Section 9.3 of the Purchase Agreement provides that Alecto Sherman, as purchaser shall indemnify LHP against "any Damages" resulting from the events

identified in Section 9.3(a)-(e). The Purchase Agreement defines "Damages" as "any and all losses, damages, claims, costs, fines, fees, penalties, interest obligations and deficiencies (including, without limitation, reasonable attorney's fees and other expenses of litigation)." Ex. 13 at p. 3.

33. The Alecto Parent Guarantee provides:

> [Alecto Parent] hereby absolutely, unconditionally and irrevocably guarantees to the Guaranteed Parties [including LHP] the due and punctual payment, performance and discharge of each and every of Purchaser's obligations under the Purchase Agreement (together with any reasonable and documented out-of-pocket fees and expenses, including attorney fees and costs, which the Guaranteed Parties shall incur in enforcing or preserving any rights under this Guarantee if the obligations hereunder are not paid by the Guarantor [Alecto Parent] when due as required herein or if this Guarantee is enforced by suit or through bankruptcy court or other judicial proceedings whatsoever, the "Obligations").

33. LHP has been required to retain the undersigned counsel to protect and enforce its rights under the agreements. LHP consequently has incurred and will continue to incur reasonable and necessary attorneys' fees, other fees, and costs.

34. Defendants are liable for such fees and costs under the provisions of the Purchase Agreement, Alecto Parent Guarantee, and applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, LHP respectfully requests that the Court enter an order and judgment for LHP and against Defendants granting the following relief:

(1) Awarding LHP money damages for Alecto Sherman's breaches of the Purchase Agreement in an amount to be determined at trial;

(2) Awarding LHP money damages for Alecto Parent's breaches of the Alecto Parent Guarantee in an amount to be determined at trial;

(3) Awarding LHP its costs and expenses incurred in enforcing its indemnification rights, including its attorneys' fees and costs in this litigation; and

(4) Granting LHP such other further relief as the Court deems just and proper.

|  |  |
|---|---|
| | POTTER ANDERSON & CORROON LLP |
| | By: */s/ Peter J. Walsh, Jr.* |
| OF COUNSEL: | Peter J. Walsh, Jr. (No. 2437) |
| | Clarissa R. Chenoweth-Shook (No. 5728) |
| Benjamin H. Hathaway | Hercules Plaza, Sixth Floor |
| RICHARDS RODRIGUEZ & SKEITH, LLP | 1313 North Market Street |
| | P.O. Box 1150 |
| 816 Congress Avenue, Suite 1200 | Wilmington, DE 19801 |
| Austin, TX 78701 | (302) 984-6000 |
| (512) 391-8256 | |
| | *Attorneys for Plaintiff LHP Hospital Group, Inc.* |
| Dated: January 20, 2021 | |

7003835