## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| ALECTO HEALTHCARE SERVICES LLC,[1] | Case No. 23-10787 (JKS) |
| Debtor. | **Obj. Deadline:  Nov. 22, 2023 at 4:00 p.m.** (extended for the Debtor) |
| | **Re: Docket No. 204** |

### PRELIMINARY RESPONSE OF THE DEBTOR IN OPPOSITION TO THE OBJECTION OF THE REED ACTION JUDGMENT CREDITORS TO DEBTOR'S DESIGNATION OF THIS CASE AS A SUBCHAPTER V CASE AND MOTION TO REVOKE DEBTOR'S DESIGNATION AS A SUBCHAPTER V DEBTOR

The above-captioned debtor (the "Debtor"), by and through its underlying counsel, submits this preliminary response[2] in opposition to the *Objection of the Reed Action Judgment Creditors* (the "Reed Creditors") *to Debtor's Designation of this Case as a Subchapter V Case and Motion to Revoke Debtor's Designation as a Subchapter V Debtor* [Docket No. 204] (the "Reed Pleading"), and in opposition to the Reed Pleading, the Debtor respectfully submits as follows:

### INTRODUCTION

The Reed Creditors' assertions in the Reed Pleading are simply incorrect, as a matter of fact and law, with respect to the amount of non-contingent, undisputed claims against the Debtor as of the Petition Date.  The primary claim that serves as the Reed Creditors' basis for the allegation that the total amount of aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition exceeds $7,500,000 is the claim of LHP Hospital Group, Inc.

---

[1]      The last four digits of the Debtor's federal tax identification number is 9723. The Debtor's address is 101 N Brand Boulevard, Suite 1920, Glendale, CA 91203.

[2]      The Debtor has made repeated requests for certain documents from LHP Hospital Group, Inc., and the Debtor has not thus far received any documents responsive to those requests.  The Debtor also notes that it reserves the right to depose a representative from LHP with respect to the underlying claim, including the underlying amounts and demands made by LHP on account of such claim.   The Debtor expressly reserves its right to supplement this response at any time prior to or at the hearing to consider the Reed Pleading,

("LHP").  LHP's claim (the "LHP Claim") is based upon a guarantee from the Debtor, as subsequently modified by a settlement agreement between the parties, and was, and remains, both contingent and unliquidated.

## BACKGROUND

1.      On June 16, 2023 (the "Petition Date") the Debtor commenced the above-captioned bankruptcy case under subchapter v of Title 11.

2.      On June 30, 2023, the Debtor filed its schedules [Docket No. 48] (the "Schedules"). Since the Petition Date, and prior to the August 15, 2023 general bar date, there have been seventeen proofs of claim filed (each a "Proof of Claim").  A copy of the Schedules and the official claims register are attached hereto as **Exhibit A** (collectively, the "Asserted Claims").  Notably, as set forth on **Exhibit A**, not all of the Asserted Claims are noncontingent, liquidated, and undisputed claims**.**

3.      Other than governmental claims, which are each the subject of ongoing litigation and are therefore contingent and unliquidated, the largest Asserted Claims are the claims of the Reed Creditors (which were listed as a total amount of $3,169,745.72 on the Schedules and $3,275,382.64 in the Proof of Claim filed by the Reed Creditors), and the claim of LHP.  The Debtor does not dispute that the Reed Creditors have a valid claim through a judgment entered by the District Court for the District of West Virginia, but the Debtor does not concede the interest and fees totaling approximately $105,636.92, as set forth in the Proof of Claim.

4.      Since the amount of the LHP Claim and whether the LHP Claim was contingent or unliquidated on the Petition Date are dispositive of the request for relief raised by the Reed Pleading, this response is primarily focused upon the LHP Claim.  However, the Debtor reserves the right to dispute any other Proof of Claim.

**The LHP Claim**

5.      On or about September 23, 2014, Alecto Healthcare Services Sherman LLC, a affiliate of the Debtor (the "Purchaser"), on the one hand, and Sherman/Grayson Health System, LLC (the "Seller") and LHP (collectively, the "Seller Indemnities"), on the other hand, entered into a purchase agreement (the "Purchase Agreement")[3] pursuant to which the Purchaser acquired 100% of the issued and outstanding membership interests of Sherman/Grayson Hospital, LLC, Sherman/Grayson Health Services, LLC and Sherman/Grayson Sponsor, LLC.  In connection with the Purchase Agreement, the Debtor executed a guarantee (the "Guarantee") in favor of the Seller Indemnities pursuant to which the Debtor unconditionally and irrevocably guaranteed to the guaranteed Parties the due and punctual payment, performance and discharge of each and every of Purchaser's obligations under the Purchase Agreement.  A copy of the Purchase Agreement and the Guarantee are attached hereto as **Exhibit B**.

6.      On or about January 20, 2021, LHP filed a complaint against the Purchaser and the Debtor (collectively with Alecto Sherman, the "Alecto Defendants"),  in the Superior Court of the State of Delaware, captioned *LHP Hospital Group, Inc. v. Alecto Healthcare Services Sherman LLC and Alecto Healthcare Services LLC*, C.A. No. N21C-01-146 PRW (CCLD) (the "Delaware Action"), and on July 21, 2020, LHP filed a Petition against Sherman/Grayson in the 59th Judicial District Court, Grayson County, Texas, captioned *LHP Hospital Group, Inc. v. Sherman/Grayson Hospital, LLC*, No. CV-20-0944 (the "Texas Action").  In the Delaware Action, LHP sought damages from the Alecto Defendants in the amount of $4,638,137.90 (the "Current Damages"),

---

[3]      LHP Hospital Group, Inc., and Texas Health Resources were each parties to the Purchase Agreement solely with respect to Section 612.and Article IX only.

16412904/2

and in the Texas Action, LHP seeks recovery of a portion of the Current Damages from Sherman/Grayson Hospital, LLC ("Sherman/Grayson") arising from an alleged breach of contract.

7.    On February 16, 2022, LHP and the Alecto Defendants and Sherman/Grayson entered into a settlement agreement (the "Settlement Agreement"). A copy of the Settlement Agreement is attached hereto as **Exhibit C**.

8.    Among other things, the Settlement Agreement agreed to a settlement of claims in the Delaware Action and the Texas Action for a total payment of $625,000.  In exchange for the settlement payment, LHP on its behalf and the behalf of other related parties agreed, among other things, not to pursue the Alecto Defendants and other related parties, including Sherman/Grayson, for any amounts arising out of, or relating in any manner directly or indirectly to (i) the Current Damages in the Delaware Action, or (ii) that LHP has, or may have had, against Sherman/Grayson arising out of or relating in any manner directly or indirectly to the Current Damages in the Texas Action.  Settlement Agreement, ¶ 3.  Any future expenses due and owing to LHP, including the future indemnification obligations of the Debtor to LHP under Paragraph 6 of the Settlement Agreement, were expressly excluded from LHP's release.

9.    Paragraph 6 of the Settlement Agreement provides, in relevant part, as follows:

Future Expenses – Alecto Defendants. The Alecto Defendants acknowledge and agree that, absent a resolution with Altera, LHP may continue to accrue expenses in connection with the MOB (as defined below), including without limitation in connection with the Lease Agreements (as defined in the Complaint in the Delaware Action) and the Ground Lease Agreement entered effective as of August 21, 2012 between Sherman/Grayson and Altera ("Ground Lease"). Accordingly, the Alecto Defendants agree to the following procedure for payment of Future Expenses:

a.    LHP shall make written demand upon the Alecto Defendants for a specified amount in accordance with the forbearance schedule set forth in Paragraph 8;

b.    The Alecto Defendants shall make payment of the specific amount within fifteen (15) days of such demand;

4

c.  To the extent the Alecto Defendants dispute the amount specified in the demand and/or are unable to make such payment, LHP shall be entitled to the entry of a judgment by confession, pursuant to 10 Del. C. 2306, in the form of [Exhibit C to the Settlement Agreement]; and

d.  The only matter that the Alecto Defendants may contest in connection with such proceeding is the computation and payment of the principal, interest, fees, and costs of the judgment; all other defenses are hereby expressly waived and disclaimed by the Alecto Defendants, including but not limited to, prior material breach, failure to mitigate, unclean hands, off-set, and failure to state a claim.

e.  In the event that the Alecto Defendants contest the amount owed or assert that they cannot pay the amount owed, they shall produce to LHP a copy of the most recent audited financial statements for both entities, or in the event audited financial statements are not available, a copy of the unaudited financial statements for each entity.

11.  Further, paragraph 8 of the Settlement Agreement, titled "Forbearance on Demand for Future Expenses," provides as follows:

LHP agrees not to make demand for future expenses, whether against the Alecto Defendants or Sherman/Grayson (or if necessary, commence a proceeding pursuant to Section 2306 for a judgment by confession) until the expiration of one (1) year from the Effective Date. Thereafter, LHP may only seek payment of Future Expenses every six months from the date of the last payment or entry of a confessed judgment, whichever is applicable.

12.  On or about February 24, 2022, the Debtor timely remitted payment of $625,000 to satisfy its obligation. As of the Petition Date, LHP had not made any demand for future expenses pursuant to Section 6 of the Settlement Agreement. Accordingly, on the Petition Date, the Debtor scheduled LHP's claim in the amount of $0 and listed the LHP Claim as both contingent and unliquidated.

13.  On June 28, 2023 (approximately two weeks after the Petition Date), LHP sent a letter to the Purchaser making a formal demand pursuant to Paragraph 6 of the Settlement Agreement for the payment of $3,708,475.62. A copy of the demand is attached hereto as **Exhibit D.** This amount allegedly represents the amount paid by LHP to Altera Highland for expenses in connection with the MOB after February 17, 2022. Further, in its June 28, 2023 letter, LHP made

16412904/2

demand for payment of the amount within 15 days.  The June 28, 2023 letter specifically stated

that LHP is not making demand under the Agreement or otherwise on the Debtor or

Sherman/Grayson, and LHP cited the respective filings for bankruptcy relief.

14.    On or about August 14, 2023, LHP filed a Proof of Claim docketed as Proof of

Claim No. 15 in the amount of $3,739,653.77.

15.    The Debtor has requested that LHP provide an itemization of the amounts due, and

a copy of all demands that LHP made on account of its alleged claim.  To date, LHP has not

provided the Debtor with any documents responsive to its request.

## BASIS FOR DENIAL OF RELIEF

16.    11 U.S.C. § 1182(1) provides, in relevant part, as follows:

(1) Debtor—The term "debtor" . . . . subject to subparagraph (B),[4] means a person
engaged in commercial or business activities (including any affiliate of such person
that is also a <u>debtor</u> under this title and excluding a person whose primary activity
is the business of owning single asset real estate) that has aggregate noncontingent
liquidated secured and unsecured debts **as of the date of the filing of the petition**
or the date of the order for relief **in an amount not more than $7,500,000
(excluding debts owed to 1 or more affiliates or insiders)** not less than 50 percent
of which arose from the commercial or business activities of the <u>debtor</u>;

(emphasis added).

17.    Determining whether a debtor is eligible under subchapter v requires an analysis

similar that taken by courts faced with the issue of whether a debtor is eligible to be a Chapter 13

debtor under 11 U.S.C. § 109(e).  As a preliminary matter, at least one court has held that "if a

claim is either contingent or unliquidated *on the petition date* the debtor is eligible" for Chapter

13. *Matter of McGovern*, 122 B.R. 712, 714 (Bankr. N.D. Ind. 1989) (emphasis added).  Further,

if there is a dispute as to the amount or contingency of a claim, courts may be more likely to allow

---

[4]    The provisions of 11 U.S.C. § 1182(1)(B) are inapplicable in this case.

16412904/2

the classification of the claims on the schedules stand.  As the Sixth Circuit explained, to resolve issues of eligibility for Chapter 13 bankruptcy under 11 U.S.C.A. § 109(e), a Bankruptcy Court should rely primarily upon the debtor's bankruptcy schedules rather than a hearing.  <u>In re Pearson</u>, 773 F.2d 751, 756 (6th Cir. 1985).  Section 109(e) provides that the eligibility computation is based on the petition date and says nothing about computing eligibility after a hearing on the merits of creditors' claims.  <u>Id</u>.  Furthermore, the fact that evidence must be taken to determine the amount of a particular claim indicates that until the time of the hearing the claim was unliquidated and therefore no bar to Chapter 13 eligibility.  <u>Id</u>.

18.     The issue immediately before the Court is whether, as of the Petition Date, the total amount of noncontingent, liquidated debts of the Debtor exceeded $7,500,000 (excluding debts to insiders).  If the LHP Claim is either contingent or unliquidated, it does not count toward the threshold.  Based upon the facts and the law, the noncontingent and liquidated claims of the Debtor on the Petition Date were significantly less than the $7,500,000 threshold for subchapter v eligibility.

**A.     On the Petition Date, the LHP Claim was contingent.**

19.     As a prefatory matter, the term "contingent" is not defined in the Bankruptcy Code; however, if a word is not statutorily defined, then the courts are bound to start with the common law meaning of the term.  A court's analysis of statutory text is disciplined by the "fundamental canon" that "words will be interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute." <u>Perrin v. United States</u>, 444 U.S. 37, 42 (1979).

20.     The Bankruptcy Code does not define "contingent," and therefore the Court's analysis is dictated by the common meaning of the term.  Black's Law Dictionary defines "contingent" as, "1. Possible; uncertain; unpredictable <the trust was contingent, and the

7

contingency never occurred>. 2. Dependent on something that might or might not happen in the future; conditional <her acceptance of the position was contingent upon the firm's agreeing to guarantee her husband a position as well>" <u>See</u> CONTINGENT, Black's Law Dictionary (11th ed. 2019). Black's Law Dictionary defines a "contingent claim" as "[a] claim that has not yet accrued and is dependent on some future event that may never happen." <u>See</u> CLAIM, Black's Law Dictionary (11th ed. 2019).  This is consistent with the interpretation of courts that have examined whether a claim is contingent, and concluded that contingent claims are those in which a debtor will be required to pay only upon the occurrence of a future event triggering the debtor's liability. <u>See</u>, <u>e.g.</u>, <u>In re Parks</u>, 281 B.R. 899, 901-02 (Bankr. E.D. Mich.2002); <u>In re Highland Group, Inc.</u>, 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992).

21.     Guaranteed obligations are considered contingent obligations. "[A] contingent obligation, <u>such as a guaranty</u>, arises when it is legally binding, not when the guarantor actually makes good on its promise by paying the party who obtained the guaranty. 5 COLLIER ON BANKRUPTCY P 548.03 (16th 2023) (emphasis added); <u>see also In re Oconee Reg'l Health Sys., Inc.</u>, 621 B.R. 64, 73 (Bankr. M.D. Ga. 2020) ("A guarantor is a contingent creditor because it has "a potential claim for reimbursement against the debtor if it defaults on a loan and the guarantor[ ] [has] to satisfy the debt."); <u>In re Davis</u>, 2016 WL 11696269, at *20 (Bankr. W.D. Tenn. June 15, 2016) ("Because a guarantor is entitled to reimbursement or subrogation from the primary obligor when he pays a guaranteed obligation, courts readily find guarantors to be creditors holding contingent claims under the Bankruptcy Code."); <u>In re Slamdunk Enterprises, Inc.</u>, 2021 WL 389081, at *16 (Bankr. E.D. Tex. Jan. 29, 2021) (same); <u>Kapela v. Newman</u>, 649 F.2d 887, 890 (1st Cir. 1981) (recognizing that guarantors of a loan are "contingent creditor[s]" because they obtain a claim for reimbursement as they pay money to the lender on the basis of their guaranty).

22.     Questions of contingency are not determined upon whether the creditor may extract full repayment from the debtor immediately, but rather if they had a "right to payment" or a "right to an equitable remedy" at the time the debtor filed its petition. In re Cox, 2016 WL 5854214, at *3 (Bankr. E.D. Wash. Oct. 6, 2016). "A debt is deemed contingent if liability relies on a future extrinsic event which may never occur." In re Parking Mgmt., Inc., 620 B.R. 544, 552 (Bankr. D. Md. 2020). "Noncontingent debts are those where 'all events necessary to give rise to liability take place prior to filing the petition.'" Id. Against this backdrop, courts have found that a guarantor's contingent claim arises "from the moment of the execution of the guaranty." In re Helen Gallagher Enterprises, Inc., 126 B.R. 997, 1000 (Bankr. C.D. Ill. 1991); see also In re Oconee Reg'l Health Sys., Inc., 621 B.R. 64, 73 (Bankr. M.D. Ga. 2020) (same).

23.     Courts typically find that claims arising from guaranties become noncontingent and liquidated only if and when the triggering event that gives rise to the liability occurs prepetition. See, e.g., In re Stebbins, 2015 WL 792095, at *4 (Bankr. E.D.N.Y. Feb. 24, 2015) ("If the triggering event that gives rise to the liability in questions occurs prepetition, the debt is no longer contingent; rather, it is noncontingent as of the petition date."); see also In re Mazzeo, 131 F.3d 295, 303 (2d Cir. 1997) (acknowledging that if guarantor's obligation is triggered prepetition the debt is not contingent at the filing of the petition).

24.     The distinction between contingent and noncontingent, and the timing of when a claim pursuant to a guarantee becomes noncontingent is important, and in fact outcome determinative of whether the Debtor's designation as a subchapter v debtor is appropriate. If a claim remains contingent on the petition date, the fact that it may become noncontingent after the petition date does not have any impact on a debtor's designation at the time of filing the bankruptcy petition. As the Court noted in Parking Mgmt., "postpetition events should not be considered in

determining eligibility."  620 B.R. at 554 (analogizing whether a debtor qualifies as a chapter 13 debtor to whether a debtor qualifies as a subchapter v debtor).  "Opening up eligibility determinations to post-petition events, even if deemed to apply retroactively, is contrary to the purpose and spirit of Subchapter v, and could nullify the very benefits it is intended to convey." Id.  ("Not only does this approach meet the statutory directive to determine debt limits as they exist as of the date of the filing, but it has the very real benefit of providing certainty to the process.").

25.    Here, there is no question that the Debtor had an obligation under the Guarantee, as modified by the Settlement Agreement, however that obligation for reimbursement of expenses remained contingent as of the Petition Date.  Specifically, even getting beyond whether there is actually any amount due (which is a contingency by itself and for which the Debtor still has not received any proof), the Debtor's obligation is contingent on two separate things: (i) whether the underlying obligor remitted payment of the amounts, and (ii) LHP making demand as required by the Settlement Agreement.  Here, the Debtor did not even learn of LHP's assertion of a right to any amount under the Guarantee until almost two weeks after the Petition Date, and the Debtor expressly reserves its right to object to the LHP Claim on any basis, including whether LHP received any payment on account of the amount allegedly due.

26.    Based upon the foregoing, the LHP Claim was contingent as of the Petition Date.

**B.    On the Petition Date, the LHP Claim was not liquidated.**

27.    Similar to the analysis of whether a claim is contingent (above), the terms "liquidated" and "unliquidated" are not defined in the Bankruptcy Code, so the Court's analysis should be dictated by the common meaning.  The common definition of unliquidated is "[n]ot previously specified or determined." See UNLIQUIDATED, Black's Law Dictionary (11th ed. 2019). An unliquidated claim is similarly defined as, "[a] claim in which the amount owed has not

been determined." *See* CLAIM, Black's Law Dictionary (11th ed. 2019). "An unliquidated claim is a 'claim in which the amount owed has not been determined'" <u>In re RNI Wind Down Corp.</u>, 369 B.R. 174, 183 (Bankr. D. Del. 2007) (internal citations omitted). Terms such "liquidated" and "unliquidated" typically "refer to a claim's value (and the size of the corresponding debt) and the ease with which that value can be ascertained." <u>In re Mazzeo</u>, 131 F.3d 295, 304 (2d Cir. 1997). If the value of a particular claim depends upon "a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated." <u>Id</u>. (quoting <u>United States v, Verdunn</u>, 89 F.3d 799, 802 (11th Cir. 1996)).

28.    When consider whether or not a claims is an unliquidated, courts appear to take the knowability of claims take into account in determining whether or not they are liquidated.  If a claim is subject to ready determination and precision in computation of the amount due, it is generally viewed as liquidated. <u>See</u>, <u>e.g.</u>, <u>In re Mitchell</u>, 255 B.R. 246, 360 (Bankr. D. Mass 2000) (internal citations omitted).  Further, a claim is liquidated "if the amount due can be readily ascertained either by reference to an agreement or by simple mathematics." <u>In re Jordan</u>, 166 B.R. 201. 202 (Bankr. D. Me. 1994); <u>In re Vaughn</u>, 276 B.R. 323, 326 (Bankr. D.N.H. 2002) (Where a debtor was able to determine the value of the ongoing contract dispute claims against him based on the bargain he had struck and other amounts listed on his schedules, the value was liquidated for the purposes of determining his Chapter 13 eligibility).

29.    Again, there is no question that the Debtor had <u>an</u> obligation to LHP under the Guarantee, as modified by the Settlement Agreement, however the <u>amount</u> of that claim was not specified or determined as of the Petition Date (and given that LHP still has not provided any basis for its claim, it still isn't).  Accordingly, LHP Claim was contingent as of the Petition Date.

30.    Given the foregoing, the LHP Claim cannot be considered as when determining the amount of the Debtor's debts as a noncontingent liquidated debt as of the Petition Date for purposes of determining the Debtor's eligibility 11 U.S.C. § 1182(1), and accordingly, the Debtor's debt as of the Petition Date is below the $7,500,000 limit.  Therefore, the relief sought by the Reed Pleading should be denied.

WHEREFORE, the Debtor respectfully requests that the Court (i) deny relief sought by and through the Reed Pleading and (ii) grant to the Debtor such other and further relief as is just and proper.

Dated: November 22, 2023

**MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*
Jeffrey R. Waxman (DE Bar No. 4159)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: bkeilson@morrisjames.com

*Counsel to the Debtor and Debtor in Possession*