IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Alecto Healthcare Services LLC, [1] | ) | Case No. 23-10787 (JKS) |
| | ) | |
| Debtor. | ) | **Related Docket Nos. 204 and 226** |

REPLY IN RESPONSE TO PRELIMINARY RESPONSE OF THE
DEBTOR IN OPPOSITION TO THE OBJECTION OF THE REED
ACTION JUDGMENT CREDITORS TO DEBTOR'S DESIGNATION
OF THIS CASE AS A SUBCHAPTER V CASE AND MOTION TO
REVOKE DEBTOR'S DESIGNATION AS A SUBCHAPTER V DEBTOR

The Reed Action Judgment Creditors, by and through undersigned counsel, submit their reply in response to the *Preliminary Response of the Debtor to the Objection of the Reed Action Judgment Creditors to Debtor's Designation of this Case as a Subchapter V Case and Motion to Revoke Debtor's Designation as a Subchapter V Debtor* [Docket No. 226] (the "Response") and respectfully states as follows:

**REPLY**

1. The Debtor's Response does not challenge the legal standard set forth in the Reed Action Judgment Creditors' Objection/Motion that the Debtor bears the burden of proof to establish its eligibility to proceed as a Subchapter V debtor. [Obj./Mot., ¶ 14, citing to *In re Blue, In re Port Arthur Steam Energy, L.P.,* and *In re Fama*]. The Debtor likewise does not challenge the proposition that this Court is not limited to an analysis of the Debtor's schedules to determine its eligibility under subchapter V of the Bankruptcy Code. [Obj./Mot., ¶ 15, citing to *In re Hall, In re Steffans*]. Rather, the debtor focuses almost exclusively on arguing that Claim no. 15-1 filed by LHP Hospital Group ("LHP") in the amount of $3,739,653.77[2] was contingent and unliquidated

---

[1] The last four digits of the Debtor's federal tax identification number is 9723. The Debtor's address is 101 N Brand Boulevard, Suite 1920, Glendale, CA 91203.

[2] A copy of the LHP Claim is attached to the Objection/Motion as Exhibit E.

as of the petition date and cannot count as a debt of the Debtor on the petition date for purposes of determining its eligibility under subchapter V.

2.  LHP's claim arises from a September 23, 2014 transaction whereby Alecto Healthcare Services Sherman LLC, the Debtor's wholly-owned subsidiary ("Purchaser" or "Alecto Sherman") purchased from Sherman/Grayson Health System, LLC (the "Seller") all the membership interests of three entities: Sherman/Grayson Hospital, LLC ("Sherman Grayson Hospital"), Sherman/Grayson Health Services, LLC, and Sherman/Grayson Sponsor, LLC.[3] As part of that transaction, the Debtor, as guarantor, executed a guarantee in favor of LHP, among others, dated September 23, 2014 (the "Guarantee").[4] Pursuant to the Guarantee, the Debor "absolutely, unconditionally and irrevocably guarantees to the Guaranteed Parties the due and punctual payment, performance and discharge of each and every of Purchaser's obligations under the Purchase Agreement." [Guarantee, ¶ 1, Ex. 1, p.1]. The guaranteed obligations include the Purchaser's lease obligations with respect to certain suites in a medical office building located in Sherman, Texas (the "MOB") leased from Altera Highland, LLC (the "Landlord").

3.  Shortly after the execution of the Purchase Agreement, the Seller executed an Assignment and Assumption of Leases for five leases in a medical office building (MOB), assigning them to Sherman Grayson Hospital, with the consent of the Landlord.[5] LHP had previously guaranteed Seller's lease obligations to the Landlord, and the Landlord's consent to the assignment of the leases to Sherman Grayson Hospital was expressly conditioned on not releasing LHP's existing guaranty of these obligations.[6] However, pursuant to Section 9.3(e) of the Purchase

---

[3] The Purchase Agreement is attached to the Debtor's Response as Exhibit B.
[4] A copy of the Guarantee is attached hereto as Exhibit 1.
[5] A copy of the Assignment and Assumption of Leases is attached hereto as Exhibit 2.
[6] A copy of the Landlord's Consent Agreement is attached hereto as Exhibit 3.

Agreement, Alecto Sherman as the Purchaser was required to indemnify LHP and the Seller for any labilities related to these leases.  Accordingly, the Debtor's unconditional guaranty of Alecto Sherman's obligations under the Purchase Agreement included a guaranty of LHP's existing obligations to the Landlord under the leases.

4. Debtor's argument that its obligations under its Guarantee were conditional on the petition date ignores the plain terms of the Guarantee.  Paragraph 2(a) of the Guarantee provides that "[t]his Guarantee is an unconditional guarantee of payment and performance and not of collection." [Guarantee ¶ 2(a), Ex. 1, p.1].  Paragraph 2(b) of the Guarantee provides that "[t]he Guarantor agrees that the Obligations of the Guarantor hereunder shall not be released or discharged, in whole or in part, or otherwise affected by (i) *the failure of the Guaranteed Parties to assert any claim or demand* or to enforce any right or remedy against, or to join Purchaser to any suit arising under this Guarantee or the Obligations of, Purchaser or any other Person interested in the transactions contemplated by the Purchase Agreement…." *(emphasis supplied)*. *Id.*  That paragraph further provides as follows:

> *The Guarantor waives promptness, diligence, notice of the acceptance of this Guarantee and of the Obligations, presentment, demand for payment*, *notice of non-performance, default*, dishonor and protest, notice of any Obligations incurred and all other notices of any kind (except for notices to be provided pursuant to this Guarantee or to Purchaser and its counsel in accordance with the Purchase Agreement), all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar applicable Law now or hereafter in effect, any right to require the marshalling of assets of Purchaser or any other Person interested in the transactions contemplated by the Purchase Agreement, and all suretyship defenses generally.

*Id.,* p.2 *(emphasis supplied).*

5. The Guarantee is governed by and construed in accordance with the internal laws of the State of Delaware.  *Id., ¶ 8, p. 5.*

**A. LHP's Claim was not contingent as of the Petition Date**

6.      In Delaware, an unconditional guaranty is one "whereby the guarantor agrees to pay or perform a contract on default of the principal without limitation." *Fanatics Retail Group (Dreams), LLC v. Truax*, 2020 WL 7042873 at * 3, Noreika, J. (D. Del. Dec. 1, 2020), citing to *Ajax Rubber Co. v. Gam,* 151 A. 828, 830 (Del. Super. 1923)(quotation omitted). Such a guaranty constitutes "an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform." *Id.* (quotation omitted). And "there is no limitation on the right of the creditor to bring an action directly against the guarantor when the principal commits a default. *Id.*; *accord In re Total Containment, Inc.*, 906 F. Supp. 1427, 1430 (D. Colo. 1995); *Ajax Rubber Co. v. Gam, supra* (stating that in an absolute guaranty, 'the liability of the guarantor is fixed by the failure of the principal debtor to pay at maturity')." *Fanatics Retail, supra* at *3. The *Ajax* court held that the guarantor's obligations under the guaranty were absolute because it was a guaranty of payment, not collection. *Ajax Rubber Company v. Gam*, 151 A. 828, 830 (Del. Super. 1923). "[W]here the guaranty is one of payment and not one of collectability, [] it is not necessary for the plaintiff to allege and prove diligence on the part of a creditor against the principal debtor." *Id.*

7.      Here, the Debtor's Guarantee is absolute because it is "an unconditional guarantee of payment and performance and not of collection." [Guarantee ¶ 2(a), Ex. 1, p.1]. As a result, LHP had an absolute, non-contingent right to payment for all past due lease obligations not paid by Sherman Grayson Hospital as of the Petition Date. LHP's proof of claim constitutes a demand for payment of the accrued liquidated and noncontingent lease obligations which remain in place, and for which the Debtor continues to accrue further obligations going forward.

8. The Debtor's argument that the demand requirement in paragraph 6 of the Settlement Agreement transforms the Debtor's absolute and unconditional guaranty into a contingent obligation is misplaced. The Debtor's guaranty of payment of the monthly lease obligations became fixed and unconditional each month when Sherman Grayson Hospital, the Assignee for the leases, and Alecto Sherman, the Purchaser, defaulted on payment of the monthly lease obligations. The demand requirement in the Settlement Agreement provides a procedure for Debtor's payment of its guaranty obligations short of LHP's confessed judgment right, but does not make LHP's right to payment contingent.

9. A plain reading of paragraph 6(b) of the Settlement Agreement demonstrates the limited nature of the demand requirement, which simply gives the Debtor a 15-day window to avoid the filing of a confessed judgment against it.  Under that procedure: (i) LHP must make a demand of the amount due; (ii) the Debtor must make payment <u>of the requested amount</u> within fifteen days after demand; (iii) LHP is entitled to judgment by confession if the Debtor fails to pay <u>or disputes the demand amount</u>; and (iv) the only matter that the Debtor may contest in connection in the judgment by confession proceeding is the computation and payment of the principal, interest, fees, and costs of the judgment.  [Settlement Agreement ¶ 6.b, p.3, Ex. C to Debtor's Response]. Under the Settlement Agreement, the Debtor expressly waived any right to contest its liability for the rent obligations.  This demonstrates that its guaranty obligations are not contingent.  In addition, the inclusion in paragraph 8 of the Settlement Agreement of an initial one-year forbearance period (now expired) and subsequent 6-month forbearance terms does not change the fixing of the Debtor's monthly obligations; these provisions only impact the timing of when those obligations can be pursued outside of bankruptcy.

10. The Debtor also argues that LHP's claim is contingent upon "whether the underlying obligor remitted payments of the amounts…." [Response, ¶ 25]. This argument is specious. The Debtor has not alleged that Sherman Grayson Hospital, the Assignee under the leases, or Sherman Alecto, a guarantor of the lease obligations under the Purchase Agreement, has made any payments. LHP's claim filed in the amount of $3,739,635.77 constitutes *prima facie* evidence that no such payments have been received, regardless of the Debtor's asserted lack of knowledge of whether its wholly-owned subsidiaries made such payments.[7] Moreover, if Sherman Grayson Hospital or Alecto Sherman had paid the lease obligations as of the Petition, LHP's claim would be disputed, not contingent.

### B. LHP's claim was liquidated as of the Petition Date

11. As the Debtor acknowledges, a claim is liquidated (i) if it is subject to ready determination and precision in computation of the amount due [(Objection ¶ 28 (citing *In re Mitchell*, 255 B.R. 246, 360 (Bankr. D. Mass 2000)] and (ii) "if the amount due can be readily ascertained either by reference to an agreement or by simple mathematics." [Objection ¶ 28 (quoting *In re Jordan*, 166 B.R. 201. 202 (Bankr. D. Me. 1994)]. *See also In re Hall*, 650 B.R. 595 at 599 (Bankr. M.D. Fla 2023) (" '[C]ourts have generally held that a debt is liquidated if its amount is readily and precisely determinable, where the claim is determinable by reference to an agreement.' *United States v. May,* 211 B.R. 991, 996 (citing *Collier on Bankruptcy,* 15th Ed. at 1109.06[2][c] (March 1997)). Ordinarily, debts of a contractual nature are 'subject to ready determination and precision in computation of the amount due' and, therefore, are considered

---

[7] Michael Sarrao has served as the Debtor's Executive Vice President, General Counsel and Secretary since January 1, 2013. [D.I. 3]. He has also served as the Executive Vice President for Sherman/Grayson Hospital LLC since November 1, 2014. [Case No. 23-10810 JKS, D.I. 3, ¶ 3].

liquidated, even if subject to substantial dispute. *Barcal v. Laughline (In re Barcal)*, 213 B.R. 1008, 1014 (B.A.P. 8th Cir. 1997)."

12.  Here, LHP's claim can be readily determined by reference to the terms of applicable leases, including the amount of rent reserved, late fees and interest. If the Debtor disagrees with LHP's calculation of the amount due, LHP's claim is disputed but not unliquidated.

13.  Nonetheless, the Debtor argues that "the amount of [LHP's] claim was not specified or determined as of the Petition Date, and given that LHP still has not provided any basis for its claim, it still isn't)." [Response at 11]. This studiously ignores the Debtor's obligations in evaluating its liabilities.  On June 30, 2023, the Debtor filed its schedules, and stated that their obligation to LHP on the petition date were contingent and unliquidated.  Two days earlier, on June 28, 2023, LHP issued its demand letter to Alecto Sherman that LHP was owed $3,708,475.62 under Alecto Sherman's Purchaser guarantee for the period from February 17, 2022 forward, which period was not covered by the Settlement Agreement.  On August 14, 2023, LHP filed its claim against the Debtor in the slightly higher amount of $3,739,635.77, again setting forth the amount that was due to LHP from the Debtor at the Petition Date.  The Debtor's professed ignorance of the amount owed on the petition date does not make the claim unliquidated or contingent.  There is nothing that the debtor can point to between the petition date and LHP's filing of its proof of claim that caused the claim to move from unliquidated and contingent to liquidated and noncontingent, as the amounts asserted had already accrued as of the Petition Date.  The Settlement Agreement recognizes that Sherman Grayson Hospital's nonpayment of the rent is the trigger for LHP's obligations to Alterra, and the Debtor's obligations to LHP, where it states: "LHP's obligation to pay Altera expenses only occurs after Sherman/Grayson fails to meet its obligations." [Settlement Agreement, ¶ 6, p. 4].

14. In *In re Macedon Consulting Inc.*, 652 B.R. 480 (Bankr. E.D. Va. 2023), in evaluating a debtor's eligibility for subchapter V, the Court rejected the Debtor's argument that future obligations under leases that were entered prepetition could be considered contingent. There, the Court found that the full amount of payments due through the end of the leases was to be considered as due and owing as of the petition date, and the Bankruptcy Code's potential cap on rejection damages did not apply because it relied on an event (rejection) that necessarily occurred post-petition. Applied to this case, the *Macedon Consulting* case would permit LHP to assert a claim in excess of its claim asserted in this case. More significantly, however, the analysis of the Debtor's obligations on the Petition Date under its prepetition agreements must be properly analyzed at the time the motion is heard. In conducting its subchapter V analysis of the obligations through the Petition Date, the *Macedon Consulting* Court rejected the Debtor's scheduled damage amount; other Courts have similarly stated that what a Debtor believes it owes on the petition date is not relevant to the analysis. *In re Hall*, 650 BR 595, 600 (Bankr. M. D. Fla. 2023). This Court should do the same.

## CONCLUSION

WHEREFORE, for the foregoing reasons and the reasons set forth in the Motion, the Reed Action Judgment Creditors respectfully request that the Court enter an order, in the form substantially in the form attached as Exhibit L to the Motion:

(i)   Finding that the Debtor is not eligible to be a Subchapter V debtor;

(ii)  Revoking the Debtor's subchapter V designation; and

(iii) Granting such other relief as is just and proper.

Date: November 27, 2023
Wilmington, DE

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
whazeltine@sha-llc.com

Colten L. Fleu, Esq.
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Tel: (304) 326-0188
Email: colten@msjlaw.org

John Stember, Esq.
Maureen Davidson-Welling, Esq.
Stember Cohn & Davidson-Welling, LLC
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
Tel: 412-338-1445
Email: jstember@stembercohn.com
mdavidsonwelling@stembercohn.com

*Attorneys for the Reed Action Judgment Creditors*