## **EXHIBIT 1**

Blackline

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS COMBINED DISCLOSURE STATEMENT AND PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | Chapter 11 (Subchapter V) |
| ALECTO HEALTHCARE SERVICES LLC., | Case No. 23-10787 (JKS) |
| Debtor.[1] | |

**SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION
PROPOSED BY THE DEBTOR**

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, ~~before deciding how to vote on the Plan~~.  To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

~~IN ADDITION TO CASTING YOUR VOTE~~ THE DEBTOR IS NOT SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN, ~~YOU MAY OBJECT TO CONFIRMATION OF THE PLAN.~~ HOWEVER IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY ~~[OBJECTION DATE/TIME], 2023~~ JANUARY 24, 2024 AT 4:00 P.M. (EASTERN TIME) ("Plan Objection Deadline").

~~YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [DEADLINE], 2023. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:~~

~~Alecto Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602~~

A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR ~~NOVEMBER 15~~ FEBRUARY 6, ~~2023 AT 11:00~~ 2024 AT 10:00 A.M. IN COURTROOM NO. 6 AT THE U.S. BANKRUPTCY COURT, DISTRICT OF DELAWARE, 824 N.

---

[1] The last four digits of the Debtor's federal tax identification number are 9723. The Debtor's address is 101 N Brand Boulevard, Suite 1920, Glendale, CA 91203.

**MARKET STREET, WILMINGTON, DELAWARE 19801.**

**YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN. YOU SHOULD CONSIDER DISCUSSING THIS DOCUMENT WITH AN ATTORNEY.**

Dated: ~~October 9~~December 19, 2023                    **MORRIS JAMES LLP**

/s/ *Jeffrey R. Waxman*
Jeffrey R. Waxman (DE Bar No. 4159)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Tel: (302) 888-6800
Fax: (302) 571-1750
E-mail: jwaxman@morrisjames.com
E-mail: bkeilson@morrisjames.com

*Counsel to the Debtor and Debtor in Possession*

2

# TABLE OF CONTENTS

Page

**SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION**...........................................1

**ARTICLE I - DEFINITIONS** ....................................................................................................1

**ARTICLE II - SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS** .....5

**ARTICLE III - HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR** ..........6

1. Nature of the Debtor's Business. ...................................................................................6
2. History of Business Operations of the Debtor. ..............................................................7
3. Filing of the Debtor's Chapter 11 Case. .......................................................................8
4. Legal Structure and Ownership. ...................................................................................8
5. Events Leading to the Filing of the Bankruptcy Case. ...................................................8
6. The Debtor's Assets and Liabilities. ............................................................................10
7. Current and Historical Financial Conditions. ...............................................................11
8. Significant Events During the Bankruptcy Case. ..........................................................11
9. Projected Recovery of Avoidable Transfers Against Insiders. ......................................15

**ARTICLE IV - THE PLAN** ....................................................................................................17

1. Unclassified Claims. ....................................................................................................19
   a. Administrative Expenses .......................................................................................19
   b. Post-Confirmation Professional Fee Claims ..........................................................20
   c. Priority Tax Claims. ..............................................................................................21
2. Classes of Claims and Equity Interests. .......................................................................21
   a. Classes of Other Priority Claims. ..........................................................................21
   b. Class of Priority Non-Tax Claims. .........................................................................21
   c. Class of Secured Claims. .......................................................................................22
   d. Class of General Unsecured Claims. ......................................................................23
   e. Class of Equity Interest Holders. ...........................................................................23
3. Treatment of Claims and Claims Objections. ...............................................................24
   a. Allowance of Claims .............................................................................................24
   b. Claims Administration Responsibilities .................................................................24
   c. Estimation of Claims. ............................................................................................25
   d. Adjustment to Claims ............................................................................................25
   e. Disallowance of Claims .........................................................................................25

i

  f. Amendments to Claims ................................................................................26

  g. De Minimis Distributions ...........................................................................26

  h. No Distributions Pending Allowance ..........................................................26

  i. Duplicative Claims .....................................................................................26

 4. Treatment of Executory Contracts and Unexpired Leases. .................................26

 5. Means for Implementation and Funding of the Plan..........................................28

 6. Payments. ......................................................................................................28

  a. Responsibility for Making Payments............................................................28

  b. Disputed Claims.........................................................................................29

  c. Unclaimed Payments. .................................................................................29

  d. Payment Dates and Locations......................................................................29

  e. Undeliverable Distribution Reserve.............................................................30

  f. Tax Requirements. ......................................................................................30

 7. Post-Confirmation Management and Insiders Retained by the Debtor.................30

 8. Preservation of Causes of Action. ...................................................................31

 9. Tax Consequences of the Plan.........................................................................31

**ARTICLE V - FEASIBILITY OF PLAN** ...............................................................**32**

 1. Ability to Initially Fund Plan..........................................................................32

 2. Ability to Make Plan Payments And Operate Without Further Reorganization. ...............32

**ARTICLE VI - LIQUIDATION ANALYSIS** ...........................................................**33**

**ARTICLE VII - DISCHARGE, RELEASES AND INJUNCTIONS** ...........................**33**

 1. Discharge.......................................................................................................33

 2. Debtor Releases.............................................................................................33

 3. Exculpation and Limitation of Liability.............................................................33

 4. Injunction.......................................................................................................34

 5. Remedies Upon Default. .................................................................................35

**ARTICLE VIII - GENERAL PROVISIONS** ............................................................**35**

 1. Title to Assets. ..............................................................................................35

 2. Binding Effect. ..............................................................................................35

 3. Severability....................................................................................................35

 4. Retention of Jurisdiction by the Bankruptcy Court. ..........................................35

 5. Headings.......................................................................................................36

 6. Successors and Assigns. .................................................................................36

16291449/3
16452692/2

7.  No Fourteen Day Stay. ...................................................................................36

8.  Incorporation of Agreements Entered Into by the Debtor. ..................................36

9.  Modification  of  Plan. ........................................................................................37

10. Reservation of Rights. ........................................................................................37

11. Filing of Notice of Substantial Consummation ...................................................37

12. Post-Effective Date Service List .........................................................................37

13. Changes in Rates Not Subject to Regulatory Commission Approval. .................37

14. Final Decree. ......................................................................................................38

**ARTICLE IX - CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE.............38**

1.  Conditions Precedent to Confirmation. ..............................................................38

2.  Conditions Precedent to the Effective Date. .......................................................38

3.  Waiver of Conditions. .........................................................................................39

4.  Effect of Failure of Conditions. ..........................................................................39

5.  Filing of Notice of the Effective Date. ................................................................39

**ARTICLE X - EXHIBITS .............................................................................................39**

1.  Rules of Interpretation. .......................................................................................39

2.  Computation of Time. .........................................................................................40

3.  Governing Law. ..................................................................................................40

4.  Reference to Monetary Figures. ..........................................................................41

5.  Controlling Document. ........................................................................................41

16291449/3
16452692/2

## ARTICLE I - DEFINITIONS

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in the Plan. The definitions that follow that are found in the Bankruptcy Code are for convenience of reference only, and are superseded by the definitions found in the Bankruptcy Code.

1. **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Bankruptcy Code and allowed under § 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent owed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

2. **Administrative Tax Claim**: Any tax incurred pursuant to § 503(b)(1)(B) of the Code.

3. **Allowed:** With respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the applicable Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court a proof of claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Bankruptcy Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Bankruptcy Court; provided that, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or if such an objection is so interposed, such Claim shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Equity Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes. "Allow" and "Allowing" shall have correlative meanings.

4. **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of

1

any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

5.     **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.

6.     **Avoidance Actions**: Any and all avoidance, recovery, subordination, or other claims, actions, or remedies which any of the Debtor, the Estate, or other appropriate parties in interest have asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law.

7.     ~~**Ballot:** The form approved by the Bankruptcy Court and distributed to each Holder of an impaired Claim or Equity Interest that is entitled to vote on the Plan by which such parties may indicate acceptance or rejection of the Plan.~~

<u>7.</u>     ~~8.~~**Bankruptcy Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11 of the United States Code.

<u>8.</u>     ~~9.~~**Bankruptcy Court**: The United States Bankruptcy Court for the District of Delaware.

<u>9.</u>     ~~10.~~**Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

<u>10.</u>     ~~11.~~**Bar Date:** August 15, 2023, the date by which Proofs of Claim are required to be filed by Creditors.

<u>11.</u>     ~~12.~~**Business Day**: Any day of the year, other than a Saturday or Sunday, on which national banking institutions in Wilmington, Delaware are open to the public for conducting business and are not required or authorized by Law to close.

<u>12.</u>     ~~13.~~**Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

<u>13.</u>     ~~14.~~**Causes of Action**: All Claims, actions, causes of action, choses in action, Avoidance Actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims of the Debtor and/or the Estate that are or may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date against any entity, based in law or equity, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the

2

Effective Date with respect to matters arising on or before the Effective Date.  For the avoidance of doubt, Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; and (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

14.  ~~15.~~ **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which Alecto Healthcare Services LLC is the debtor in possession, Case No. 23-10787.

15.  ~~16.~~ **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

16.  ~~17.~~ **Claims Objection Bar Date:** The last day for objecting to a Claim, which shall be the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed or extended by the Court, the Debtor or the Reorganized Debtor, or by an order of the Bankruptcy Court for objecting to Claims.

17.  ~~18.~~ **Claims Register**: The register of Claims maintained by the Bankruptcy Court.

18.  ~~19.~~ **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

19.  ~~20.~~ **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

20.  ~~21.~~ **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be theentry of the Final Order vacating such stay or the date on which such stay expires and is nolonger in effect.

21.  ~~22.~~ **Confirmation Hearing**: The hearing to be held on November 15, 2023 at 11:00 a.m. (ET) to consider confirmation of the Plan.

22.  ~~23.~~ **Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

23.  ~~24.~~ **Creditor**: Any person who has a Claim against the Debtor that arose on or

3

before the Petition Date.

24. ~~25.~~**Debtor** and **Debtor-in-Possession**: Alecto Healthcare Services LLC, the debtor in possession in this Chapter 11 Case.

25. ~~26.~~**Disputed Claim:** Any claim against the Debtor pursuant to § 502 of the BankruptcyCode that is not yet Allowed.

26. ~~27.~~**Distribution**: The property required by the Plan to be distributed to the holders of Allowed Claims.

27. ~~28.~~**Effective Date**: The first Business Day following the date upon which (a) the Confirmation Date has occurred, or (b) the Confirmation Order is a Final Order, unless, at the Debtor's option, the Debtor desires the Plan go effective regardless of any pending appeal, so long as no stay pending appeal has been granted.

28. ~~29.~~**Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

29. ~~30.~~**Equity Interest**: An ownership interest in the Debtor.

30. ~~31.~~**Estate:** The estate of the Debtor created on the Petition Date by Section 541 of the Bankruptcy Code.

31. ~~32.~~**Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

32. ~~33.~~**File, Filed** or **Filing**: File, filed, or filing in the Chapter 11 Case with the Bankruptcy Court, including with respect to the filing of a Proof of Claim or proof of Equity Interest.

33. ~~34.~~**Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no noticeof appeal has been filed.

34. ~~35.~~**General Unsecured Claim:** any Claim other than: (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Secured Claim; (d) a Priority Tax Claim; (e) an Other Priority Claim; or (f) an Equity Interest.

35. ~~36.~~**Governmental Unit**: As defined by 11 U.S.C. § 101(27), the term "governmental unit" means the United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

36. ~~37.~~**Holder**: an Entity holding a Claim or Equity Interest, as applicable.

4

37.    38.**Other Priority Claim:** Any Claim entitled to priority in payment under Sections 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code.

38.    39.**Petition Date**: June 16, 2023, the date the chapter 11 petition for relief was filed.

39.    40.**Plan**: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

40.    41.**Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

41.    42.**Professional**: A person or Entity employed pursuant to a Final Order in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

42.    43.**Professional Fee Claims**: A Claim of a Professional for professional services rendered or costs incurred on or after the Petition Date through the Effective Date.

43.    44.**Proof of Claim**: A proof of Claim Filed in the Chapter 11 Case.

44.    45.**Released Parties:** All of the following, and in each case in its capacity as such: (a) the officers and managers of the Debtor; (b) the Debtor's Professionals, and (d) with respect to each of the foregoing Persons in clauses (a) through (b), such Entities' respective predecessors, successors and assigns, provided, however, that notwithstanding the foregoing, and for the avoidance of doubt, nothing herein shall release any Causes of Action of the Debtor or the Estate against any of the Debtor's representatives that did not serve in such capacity on or after the Petition Date.

45.    46.**Reorganized Debtor**: The Debtor after the Effective Date.

46.    47.**Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets [Docket Nos. 48 and 49].

47.    48.**Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

48.    49.**Subchapter v Trustee**: Jami Nimeroff, the Subchapter V trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. § 1183(b), the Plan, or the order confirming the Plan.

49.    50.**United States Trustee Fees**:  All fees due under 28 U.S.C. § 1930.

## **ARTICLE II - SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

The Plan is a reorganization Plan. The Plan will be funded with available Cash on hand on

5

16291449/3
16452692/2

the Effective Date and the Debtor's projected disposable income generated by the ongoing operations of the Debtor. For a period of three (3) years, the Debtor will contribute (i) its entire projected disposable income, in an aggregate amount of no less than $635,549, (ii) any residual value received by the Debtor on account of the Debtor's direct and indirect subsidiaries including the claim filed in the bankruptcy case of Sherman/Grayson Hospital, LLC, and (iii) the proceeds of any Cause of Action, including any settlement proceeds received on account of such claims. Such amounts will be used to fund Distributions provided under the Plan on an annual basis.

The chart below reflects the proposed treatment of Allowed Claims and Equity Interests under the Plan:

- o Allowed Administrative Claims will be paid on a monthly pro rata basis, until such claims are paid in full or, alternatively, upon such other terms as may be agreed upon by the holder of the Claim and the Debtor.

- o Allowed Priority Tax Claims, if any, will be paid in full on the Effective Date. It is anticipated that that there will be no Priority Tax Claims owed.

- o Allowed Priority Non-Tax Claims, if any, will be paid in full on the Effective Date. It is anticipated that that there will be no Priority Non-Tax Claims owed.

- o Allowed Secured Claims, if any, will be paid in accordance with the existing loan documents or other agreements with the Debtor that existed prior to the Petition Date which govern the payment of Debtor's obligations to the holder of the Allowed Secured Claim. Each holder of an Allowed Secured Claim shall retain its lien on its collateral in the same validity and priority as it held prior to the Petition Date until the Allowed Secured Claim amount has been paid. Alternatively, the Allowed Secured Claim amount shall be paid in full through a sale of the collateral or other means, withouts penalty or premium.

- o Allowed General Unsecured Claims will be paid the Debtor's projected disposable income on a pro rata basis, after payment of all Allowed Administrative Claims, Allowed Priority Tax Claims, if any, Allowed Priority Non-Tax Claims, if any, and Allowed Secured Claims. Pro rata Distributions will be made to Holders of Allowed General Unsecured Claims on an annual basis with the first Distribution to be made twelve months after the Effective Date.

- o Upon entry of the Confirmation Order, all existing Equity Interests in the Debtor shall be retained.

## ARTICLE III - HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

### 1.    Nature of the Debtor's Business.

The Debtor was formed in 2012 to serve as a holding company for healthcare-related entities.

In the ordinary course of business, the Debtor's employees provide management services through the Debtor's subsidiaries and are engaged in the winddown of hospitals formerly operated by the Debtor's subsidiaries. The winddown of such hospitals consists of responding to requests

for patient records and services provided, completing various regulatory requirements, and assisting in the defense of certain litigation matters. An organizational chart of the Debtor and its subsidiaries is attached hereto as **Exhibit A**.

>    2.    **History of Business Operations of the Debtor.**

Historically, the Debtor formed various subsidiaries for the purposes of (a) acquiring distressed acute care hospitals; (b) operating acute care hospitals; (c) providing management services to acute care hospitals that are not owned by the Debtor or its subsidiaries; and (d) owning and operating businesses affiliated with acute care hospitals operated by the Debtor's subsidiaries.

At its peak, the Debtor's subsidiaries operated five (5) acute care hospitals across the country, the Debtor provided management services to an acute care hospital owned by an unrelated third-party, and one of the Debtor's subsidiaries provided management services to an acute care hospital owned by an unrelated third-party.

As of the Petition Date, the Debtor had an ownership interest in two operating subsidiaries, Sherman/Grayson Hospital, LLC ("Sherman/Grayson") and Alecto Healthcare Services Hayward LLC ("Alecto Hayward")

As of the Petition Date, however, the Debtor's primary source of income relates to the services it provides through its Employees to its subsidiary Alecto Hayward. Alecto Hayward is a party to an Amended Management Services Agreement with Hayward Sisters Hospital dba St. Rose Hospital ("St. Rose") pursuant to which Alecto Hayward provides management services to St. Rose in exchange for a management services fee equal to 3.75% of St. Rose's net revenue with the net revenue being subject to certain adjustments (the "Management Services Fee"). Such management services include the provision of qualified individuals to serve as the Chief Executive Officer and Chief Financial Officer of St. Rose. Alecto Hayward's contract with St. Rose currently runs through May 2025, subject to renewal for an additional period of 2 years. The contract can be terminated without cause on 365 days advance written notice.

To facilitate Alecto Hayward's provision of management services, the Debtor provides its Employees to Alecto Hayward to fulfill Alecto Hayward's responsibilities under the management services agreement including having two of its Employees serve as the Chief Executive Officer and Chief Financial Officer of St. Rose. In return, Alecto Hayward pays a portion of the Management Services Fee each month to the Debtor. The Debtor also receives reimbursement from St. Rose for certain expenses primarily related to the Debtor's Employees other than those who serve as the CEO and CFO that provide services at St. Rose.

Sherman/Grayson is the operator of Wilson N. Jones Regional Medical Center ("WNJ"), a 207-bed acute care hospital located in Sherman, Texas. Sherman has a population of around 45,000 people and is located within Grayson County, Texas which is approximately 75 miles from Dallas, Texas. Among other things, WNJ contains an emergency department, medical surgical units, an intensive care unit, and a behavioral health unit. As discussed below, Sherman/Grayson filed for Chapter 11 relief in Case No. 23-10810 and the Sherman Sale Order (defined below) provides for the sale of substantially all of Sherman/Grayson's assets.

Sherman/Grayson has faced significant financial challenges both during and after the COVID-19 pandemic. As a result of such challenges, during the year prior to filing, Sherman/Grayson was operating at a loss of over $1 million per month.

**3.** **Filing of the Debtor's Chapter 11 Case.**

On June 16, 2023, the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy case. On the Petition Date, the Debtor filed the Declaration of Michael Sarrao, Executive Vice President General Counsel, and Secretary of the Debtor, in Support of First Day Motions [Docket No. 3] (the "Sarrao Declaration"). A copy of the Sarrao Declaration is incorporated as if fully set forth herein.[2]

On June 20, 2023, the Jami Nimeroff was appointed as the Subchapter v Trustee in the Chapter 11 Case.

**4.** **Legal Structure and Ownership.**

The Debtor is a Delaware limited liability company.

The following entities and individuals hold ownership interests in the Debtor:

| Name of Entity/Individual | % of Ownership |
|---|---|
| The Reddy Investment Trust | 60.08% |
| The Krissman Family Trust | 10.60% |
| The Sarrao Family Trust | 7.42% |
| The Jeyakumar Inter-Vivos Trust | 3.5% |
| The Hayes Irrevocable Trust | 3.80% |
| Steven Kay | 5.3% |
| Matthew Williams | 5.30% |
| Aman Dhuper | 2.50% |
| Comstock Investment Trust | 1.50% |

**5.** **Events Leading to the Filing of the Bankruptcy Case.**

The hospitals acquired by the Debtor's subsidiaries were independent community hospitals that were in some form of financial distress when they were acquired by the Debtor's subsidiaries and faced stiff competition (and in some cases, unfair competition) from nearby hospitals. Despite the best efforts of the Debtor and its subsidiaries, the hospitals acquired by the Debtor's subsidiaries continued to suffer from financial distress which ultimately resulted in two (2) of the

---

[2]      A copy of all pleadings in the Chapter 11 Case are available for a fee on the Bankruptcy Court's website, https://ecf.deb.uscourts.gov/.

16291449/3
16452692/2

hospitals closing in 2019 and one (1) hospital closing in March 2020.

After the closure of the three (3) hospitals described above, the remaining hospitals were faced with significant financial challenges associated with the COVID-19 pandemic including decreased revenue and out of control costs. The significant adverse effect of the pandemic forced one of the Debtor's subsidiaries to sell the real estate associated with an acute care hospital in 2021 to pay off secured lenders and satisfy other priority claims.

The closure of each of these hospitals placed a significant financial burden on the Debtor as the Debtor has been forced to spend time and resources on the winddown of the operations of each of these hospitals and litigate claims by parties seeking to hold the Debtor liable for the debts of its subsidiaries.

As of the Petition Date, the Debtor's subsidiaries continued to operate only one hospital, which has subsequently filed for bankruptcy. However, this hospital has faced, and continues to face, significant financial challenges as a result of the pandemic and has not been able to recover financially. In the two years immediately prior to the Petition Date, the Debtor made significant investments in the form of advances to and the payment of expenses on behalf of Sherman/Grayson in an effort to ensure that this hospital could continue operating as a going concern thereby maximizing the value of the subsidiary while meeting the healthcare needs of the community and avoiding additional costs and expense to Debtor if the hospital was to close. Additionally, the Debtor was a guarantor on Sherman/Grayson's lease with MPT of Sherman-Alecto, LLC, which required that (a) Sherman/Grayson maintain its insurance, and in the event that Sherman/Grayson's insurance lapsed, such lapse would be an event of default for which the Debtor would be liable for under the guaranty as obligations under the lease, and (b) that Sherman/Grayson indemnify MPT of Sherman-Alecto, LLC was required to purchase an office building for more than $10 Million pursuant to the terms of a ground lease which may require MPT of Sherman-Alecto, LLC as the ground lessor, to purchase the office building if a healthcare facility is not operated at the location of Wilson N. Jones Regional Medical Center for twelve (12) consecutive months and Sherman/Grayson's failure to perform would constitute an event of default for which the Debtor would be liable for under the guaranty. Accordingly, the Debtor provided significant advances to Sherman/Grayson's during the two (2) years immediately prior to the Petition Date which placed a financial burden on the Debtor and has resulted in a significant decrease in the Debtor's liquidity.

The pandemic further affected patient volumes and revenue at St. Rose which resulted in decreases in the Management Services Fee paid to Alecto Hayward since the fee is based on a percentage of net revenue.

While the Debtor has been able to maintain the business operations outlined above, on May 11, 2023, a judgment was entered against the Debtor in the amount of $2,686,357.11 in plus interest and fees in the legal action *Reed, et. al. v. Alecto Healthcare Services LLC, et. al.* in United States District Court for Northern District of West Virginia, Civil Action No. 5:19-cv-263 (the "Reed Judgment"). On June 1, 2023, the plaintiffs (the "Reed Creditors") in this action obtained a writ of execution against the Debtor in the total amount of $3,242,498.77.

16291449/3
16452692/2

Enforcement of the Reed Judgment against the Debtor would cause a liquidity crisis whereby the Debtor will no longer be able to pay the expenses necessary to continue to operate

### 6.      The Debtor's Assets and Liabilities.

The Debtor's assets and liabilities are detailed in the Schedules filed on June 30, 2022 [Docket Nos. 48 and 49] (the "Schedules").

By operation of General Order of the Delaware Bankruptcy Court dated September 14, 2020, the deadline for all parties other than governmental entities to the file a proof of claims was August 15, 2023, and the deadline for governmental entities to the file a proof of claims was set for December 13, 2013.  A copy of the claims register maintained by the Bankruptcy Court and the Schedules  are attached hereto as **Exhibit B.**

Additionally, on March 9, 2023, the United States commenced a civil suit against the Debtor, seven of its direct or indirect subsidiaries and three individuals to recover approximately $14,211,115 in alleged overpayments made to Defendant Olympia Health Care, LLC by the Centers for Medicare and Medicaid Services, part of the Department of Health and Human Services, in 2005 (Civil Action No. 2:23-cv-01783).  The Debtor was named as a defendant because it allegedly controlled Olympia during the relevant period.  The Debtor does not believe that it (or any of the defendants) has any liability to the United States for the alleged overpayments.

On the Petition Date, the Debtor had two operating subsidiaries:  (i) Sherman/Grayson which, as discussed below, filed its own voluntary Chapter 11 bankruptcy during which its assets were sold and the Debtor may realize some value on account of its claim, and (ii) Alecto Hayward.  The projected income and expenses of the Debtor for the next three years is attached hereto as **Exhibit C**.

The Debtor also some miscellaneous assets, including a vehicle and office furniture and equipment.  The Debtor does not expect that, if the Chapter 11 case were to convert to Chapter 7 that these miscellaneous assets would generate much money, if any.

In addition to those two entities, the Debtor may realize some value from other direct and indirect subsidiaries but which may have some remnant value.

Alecto Healthcare Services Fairmont LLC ("Alecto Fairmont"), may have residual income due from West Virginia Medicaid of as much as $3 million[3] and from Medicare of as much as $2.8 Million if Alecto Fairmont's appeals related to Medicare's denial of Alecto Fairmont's requests for a Volume Decrease Adjustment of $1,406,332 for 2016 and $1,408,524 for 2017 are successful.  The Debtor cannot predict the likelihood or timing for recovery related to these appeals.  Before the any payment can be upstreamed to the Debtor, Alecto Fairmont will need to pay all of the liabilities to its own creditors, which include certain outstanding trade claims, payroll taxes, and the payment of certain liabilities related to Alecto Fairmont's withdrawal from a multi-employer

---

[3]       This money due to Alecto Fairmount has been outstanding for more than two years and it is unclear how much or when such amounts will be paid.

pension plan sponsored by the Retail, Wholesale and Department Store International Union and Industry Benefit and Pension Funds, which may be as much as $20 million and Alecto Fairmont's contingent liability as a member of the control group with respect to a defined benefit pension plan sponsored by Alecto Healthcare Services Ohio Valley LLC (the "Alecto Ohio Valley Pension Plan"). The Debtor anticipates that that the liabilities of Alecto Fairmount will significantly exceed any of its residual assets.

Alecto Healthcare Services Wheeling, LLC, an indirect subsidiary of the Debtor, may have some residual income due from West Virginia Medicaid of as much as $900,000, but it also has significant liabilities, including the Reed Creditor's judgment and other judgments entered against it. Those liabilities include payroll taxes, judgments, and contingent liabilities associated with the Alecto Ohio Valley Pension Plan . The Debtor anticipates that that the liabilities of Alecto Wheeling will significant exceed any of its residual assets.

Sunrise MOB Holdings, LLC ("Sunrise MOB"), a direct subsidiary, is also an indirect parent of Plaza Medical Office Building, LLC ("Plaza"). Plaza recently received $3 million from an indemnity reserve from a sale of certain of its real estate assets. Even though Plaza received these funds, it has contingent liabilities as a member of the control group with respect to the withdrawal liability of Alecto Fairmont, which may be as much as $20 million, and as a member of the control group with respect to the Alecto Ohio Valley Pension Plan. Accordingly, the Debtor does not anticipate that its interest in either Sunrise MOB or Plaza will have any value for the benefit of the Debtor's creditors

### 7.    Current and Historical Financial Conditions.

In 2021, gross revenues were approximately $3,426,000 with net loss of approximately $810,000; and in 2022, gross revenues were approximately $3,559,929 with net profit of approximately $135,767.

In 2023, through May 31, 2023, gross revenues were $1,559,149.56 with net income of $84,474.62.

Since the Petition Date, the Debtor has filed monthly operating reports reflecting the Debtor's ongoing finances [Docket Nos 83 and 122].

### 8.    Significant Events During the Bankruptcy Case.

A.    First Day Motions and Orders

On or about the Petition Date, the Debtor filed certain motions and applications seeking relief from the Bankruptcy Court designed to minimize the potential disruption of the Chapter 11 filing on the Debtor's business affairs and facilitate the orderly administration of the Chapter 11 Case. On, or shortly after the Petition Date, the Bankruptcy Court entered various orders. The final hearing on the below motions is set for July 14, 2023. These include:

(a)    Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Payment of Certain Prepetition Employee Claims, Including Wages and Salaries, (II) Authorizing Payment of

Certain Employee Benefits and Confirming Right to Continue Employee Benefits on Postpetition Basis, (III) Authorizing Payment of Reimbursement to Employees for Prepetition Expenses, (IV) Authorizing Payment of Withholding and Payroll-Related Taxes, (V) Authorizing Payment of Prepetition Claims Owing to Administrators and Third Party Providers, and (VI) Allowing Banks to Honor Prepetition Checks and Fund Transfers for Authorized Payments [Docket No. 4]. On June 20, 2023, the Bankruptcy Court entered an Interim Order granting the motion [Docket No. 26].

(b)    Motion Pursuant to Sections 105 and 366 of the Bankruptcy Code for Entry of Interim and Final Orders (I) Prohibiting Utility Companies from Altering, Refusing or Discontinuing Services to, or Discriminating Against, the Debtor, (II) Determining that the Utility Companies are Adequately Assured of Postpetition Payment and (III) Establishing Procedures for Resolving Requests for Additional Adequate Assurance [Docket No. 5]. On June 20, 2023, the Bankruptcy Court entered an Interim Order granting the motion [Docket No. 27].

(c)    Debtor's Motion for Interim and Final Orders Authorizing: (I) Maintenance of Existing Bank Accounts, (II) Continued Use of Existing Cash Management System, and (III) Continued Use of Business Forms Pursuant to 11 U.S.C. §§ 105, 345, 363, 364, 503, 1107 and 1108 of the Bankruptcy Code [Docket No. 6]. On June 20, 2023, the Bankruptcy Court entered an Interim Order granting the motion [Docket No. 28].

(d)    Motion of the Debtor for an Order Under Sections §§105(a), 363(b), 363(c), and 503(b) of the Bankruptcy Code and Federal Rule Of Bankruptcy Procedure 6003 Authorizing Debtor to (A) Maintain Existing Insurance Policies; and (B) Pay All Obligations in Respect Thereof [Docket No. 7]. On June 20, 2023, the Bankruptcy Court entered an Interim Order granting the motion [Docket No. 29].

B.    Retention of Professionals

During the Chapter 11 Case, the Bankruptcy Court entered various orders authorizing the employment of various professionals to assist with the conduct and administration of the Chapter 11 Case and reorganization efforts, including but not limited to the following:

a.    On July 7, 2023, the Debtor filed (i) an application for entry of an order authorizing the retention and employment of Shulman Bastian Friedman & Bui LLP as bankruptcy counsel to the Debtor *nunc pro tunc* to the Petition Date [Docket No. 67], and (ii) an Application for Entry of an Order Authorizing the Retention and Employment of The Rosner Law Group LLC as Delaware counsel to the Debtor *nunc pro tunc* to the Petition Date [Docket No. 68] (collectively, the "Shulman/Rosner Applications"). On August 7, 2023, the United States Trustee filed an objection to the Shulman/Rosner Applications [Docket No. 89] (the "UST Objection"), and based upon the UST Objection as well as comments made by the Court at the July 13, 2023 hearing to consider the Shulman/Rosner Applications, the Debtor and Sherman/Grayson elected to have substitute counsel for the Debtor.

On August 16, 2023, the Court held a hearing on the Application at which the Court requested additional evidentiary support. On August 23, 2023, the Debtor filed the First

12

Supplemental Declaration of Michael Sarrao in support of the Shulman/Rosner Applications [Docket No. 133], and on August 24, 2023, the Debtor filed the Second Supplemental Declaration of Michael Sarrao in support of the Shulman/Rosner Applications [Docket No 136].  On August 28, 2023, the Court held a hearing on the Application..  Based on the record at the Hearing, the Court approved the Application subject to certain revisions, and on August 31, 2023, this Court entered an Orders approving the Shulman/Rosner Applications *nunc pro tunc* to the Petition Date through and including August 2, 2023 [Docket Nos. 146 and 147].

b.      Due to the possibility of a perceived conflict due to potential claims against the Debtors' insiders, on August 9, 2023, the Debtor filed an application to employ Steven Balasiano as independent director/manager to the Debtor *nunc pro tunc*, to August 4, 2023 [Docket No. 93] (the "Balasiano Application").  The purpose of Mr. Balasiano's retention was to make decisions on behalf of the Debtor related to: (i) the Claim of Alecto against Sherman/Grayson arising from intercompany advances made by the Debtor to Sherman/Grayson and certain expenses paid by the Debtor on behalf of Sherman/Grayson, including any settlement of the Alecto Claim; and (ii) potential estate claims against the Debtor's insiders, and (iii) any other conflict that may arise as and between the Debtor and Sherman/Grayson/ On August 16, 2023, the Bankruptcy Court entered an Order approving the Balasiano Application [Docket No. 118].

c.      On August 16, 2023, the Debtor filed an Application to Employ Morris James as counsel to the Debtor *nunc pro tunc*, to August 11, 2023  [Docket No. 115] (the "Morris James Application").  On September 1, 2023, the Bankruptcy Court entered an Order approving the Morris James Application [Docket No. 149].

d.      On August 27, 2023, the Debtor filed an Application to Employ Gould Consulting Services as Forensic Investigation Consultant to the Debtor, *nunc pro tunc*, to August 25, 2023 [Docket No. 138].

C.      Filing of the Sherman/Grayson Bankruptcy Case

On June 23, 2023, Sherman/Grayson, one of the Debtor's remaining two operating subsidiaries, filed for Chapter 11 relief in the United States Bankruptcy Court for the District of Delaware at Case No. 23-10810 (the "Sherman Bankruptcy Case").  When Sherman/Grayson filed its bankruptcy petition, the Debtor was the largest creditor of Sherman/Grayson, with a general claim of approximately $60.1 million.

On July 5, 2023, Sherman/Grayson filed a Motion for Entry of an Order (I) Authorizing the Private Sale of Substantially All Assets Free And Clear of All Liens, Claims, Encumbrances and Other Interests, (II) Authorizing the Assumption and Assignment Of Executory Contracts and Unexpired Leases, and (III) Granting Other Related Relief [Docket No. 60] (the "Sherman Sale Motion").  By and through the Sherman Sale Motion, the Debtor sought to sell its substantially all of its assets to AHS Sherman, LLC (the "Purchaser") for $100,000 in cash, plus the assumption of certain liabilities.  Significantly, the Purchaser also agreed to fund all of the Debtor's operations and other administrative obligations of the hospital and its bankruptcy case, including estate professional fees irrespective of whether the closing is ultimately consummated.  Prior to the hearing to consider the Sherman Sale Motion, the Official Committee of Unsecured Creditors of

13

Sherman/Grayson (the "Sherman Committee") entered into a term sheet with the Purchaser by and through which the Purchaser agreed to fund $250,000 to be placed into an escrow account to be held solely for the benefit of general unsecured creditors (the "Sherman GUC Fund"). Additionally, the term sheet between the Purchaser and the Sherman Committee provided that the Debtor would release all claims against the Sherman/Grayson estate and the Debtor would not participate in any distribution from the Sherman GUC Fund. On August 15, 2023, the Debtor filed a limited objection and reservation of rights with respect to the Sale Motion to address the Debtor's right to participate in the Sherman GUC Fund. At the hearing to consider the Sherman Sale Motion, the Debtor again expressly reserved its rights with respect to the proceeds of the sale and the waiver of any right of the Debtor. The Sherman Committee announced that it would file a motion under Bankruptcy Rule 9019 for approval of the term sheet, including the waiver of the Debtor's right to a distribution from the Sherman GUC Fund. The Committee has not yet filed the motion for approval of the settlement. On August 31, 2023, the Bankruptcy Court entered an Order approving the Sale Motion [Docket No. 167] (the "Sherman Sale Order"). The sale has not closed as Sherman/Grayson and the Purchaser attempt to address the regulatory issues.

Significantly, the Debtor has been paying certain expenses of Sherman/Grayson, including its insurance. By virtue of the Sherman Sale Order, the Debtor has received repayment on account of the costs of insurance on behalf of Sherman/Grayson for the prorated month of June and for July that were paid by the Debtor. The Debtor expects that the Purchaser will continue to provide funds to Sherman/Grayson so that it will continue to remit payment to the Debtor until the sale closes.

Additionally, at a hearing on August 16, 2023, the Bankruptcy Court orally granted a request by Sherman/Grayson to remit payment to the Debtor on account of certain insurance obligations for the benefit of Sherman/Grayson under the doctrine of necessity. An Order granting the request has not yet been entered.

As set forth above, as part of the sale to the Purchaser, the Sherman Committee negotiated to provide that the Purchaser would fund $250,000 to be placed into an escrow account to be held solely for the benefit of general unsecured creditors. Based solely upon the schedules filed by Sherman/Grayson, the Debtor's unsecured claim is approximately 75% of all unsecured claims. Notably, the Sherman Committee has asserted that the Debtor has liability to Sherman/Grayson on account of avoidable transfers in an amount up to $150,000, and therefore the Debtor is not entitled to a distribution by operation of 11 U.S.C. § 502(d). The Debtor does not agree with the Sherman Committee's analysis, and barring settlement, the Debtor will likely object to any motion filed by Sherman/Grayson or the Sherman Committee which would deny the Debtor's right to any distribution from the Sherman GUC Fund..

D.    Motion for Appointment of an Official Committee of Unsecured Creditors

On August 11, 2023, the Reed Creditors filed a motion to Appoint Creditors' Committee [Docket No. 100] (the "Committee Appointment Motion"). Another creditor, Snyder Brothers, Inc., filed a joinder to the Committee Appointment Motion [Docket No. 111]. On August 22, 2023, the Debtor filed an objection to the Committee Appointment Motion [Docket No. 127], and the United States Trustee filed a statement in response to the Committee Appointment Motion

14

[Docket No. 128].

On August 28, 2023, the Court conducted an evidentiary hearing to consider the Committee Appointment Motion and objection thereto. At the conclusion of the hearing, the Court denied the Committee Appointment Motion, and ruled that the Debtor did not have to provide work product to creditors or the Subchapter v Trustee. On September 11, 2023, the Court entered an Order denying the Committee Appointment Motion [Docket No. 152].

E.      Reed Creditors' Motion for Revoke Designation of the Bankruptcy Case under Subchapter V

On November 2, 2023, the Reed Action Judgment Creditors filed a pleading titled "Objection of the Reed Action Judgment Creditors to Debtor's Designation of This Case as a Subchapter V Case and Motion to Revoke Debtor's Designation as a Subchapter V Debtor" (the "Designation Motion") [Docket No. 204]. By and through the Designation Motion, the Reed Creditors sought to revoke the Debtor's designation as a subchapter v debtor based upon the amount of noncontingent and liquidated claims against the Debtor as of the Petition Date. On November 22, 2023, the Debtor filed a response in opposition to the Designation Motion [Docket No. 226], and on November 27, 2023, the Reed Creditors filed a reply in support of the Designation Motion [Docket No. 227].

On November 29, 2023, the Court conducted an evidentiary hearing to consider the Designation Motion and objection thereto, and on December 1, 2023, the Court issued its bench decision in which it denied the Designation Motion.

On December 18, 2023, the Reed Creditors filed a notice of appeal of the Court's decision to deny the Designation Motion.

### 9.    Projected Recovery of Avoidable Transfers Against Insiders

A forensic investigation is defined by the scope of the engagement and/or issues in question and may include the analysis of entire sets of data based on the focus of the investigation.[4] The Debtor requested that Gould Consulting Services ("GCS") conduct a forensic analysis of cash transactions into and out of the Debtor's bank accounts to identify a) cash payments and loans to, or for the benefit of, officers, director, shareholders, and related-parties ("Insiders"), and b) potentially voidable transfers to Insiders, if any. Since its retention on August 25, 2023, GCS received approximately 1,950 documents during the course of our examination has performed the following analyses:[5]

---

[4]      Forensic investigations are iterative, meaning that the analytical techniques used are not performed in isolation since observations made using one technique generally provide insight into other areas of the investigation.

[5]      The scope of work performed by GCS did not include, among others, a) verification of trade accounts receivable or payable, b) examination of deposits into Alecto bank accounts and the source of such deposits unless discussed herein, c) analysis of vendor invoices and related

1.      Reviewed certain filings with the Bankruptcy Court.

2.      Conducted interviews with Michael Sarrao, Alecto's Executive Vice President, General Counsel and Secretary and Matt Williams, Alecto's Chief Financial Officer.

3.      Analyzed cash sources and uses based on the analysis, categorization, and summarization of 1,296 bank statements containing 116,850 transactions included in 26 bank accounts held by Alecto and certain of its Affiliates for the four (4) year Examination Period June 17, 2019, through June 30, 2023, as discussed below.

    a.      Bank statements were received for the Examination Period for the following entities:

        i.      Alecto Healthcare Services LLC (3 accounts)

        ii.     Alecto Healthcare Services Hayward LLC (1 account)

        iii.    Sherman/Grayson Hospital LLC (7 accounts)

        iv.     Sherman MD Provider, Inc., a subsidiary of Alecto Sherman (5 accounts)

        v.      Sherman Anesthesia, Inc., a subsidiary of Alecto Sherman (2 accounts)

        vi.     Olympia Health Care LLC (6 accounts)

        vii.    Plaza Medical Office Building LLC (2 accounts)

    b.      Identified deposits, payments made by check, direct debit, internal transfer, or wire transfer, and categorized the data by transaction category and payee, if

---

payments, d) analysis of copies of checks, e) identification of payees by ACH or check described in the bank statements as preauthorized debits, identification of payees by ACH or check where no name was identified, or the transaction listed as, or included in, a journal entry, f) detailed examination of invoices and funding request packages used to allocate funds to Affiliates, nor g) examination of email and other internal data/documents unless discussed herein.

While GCS examined transfers into and out of the Alecto bank accounts to CNH Finance and Affiliates and traced the recording of such transfers into Alecto's general ledger, GCS did not reconcile the Affiliates' intercompany accounts.

GCS did not perform an audit, review or compilation as those terms are defined in the AICPA's Statements on Standards for Accounting and Review Services or generally accepted auditing standards.

16291449/3
16452692/2

identified in the bank statements.

c.   Electronically tied Alecto payments by check and ACH Transfer (Bill Payment) to Alecto's general ledger to identify payees.

d.   Traced advances from the CNH Revolving Facility per electronic statements into Alecto's primary disbursement account *3874 and subsequent transfers from Alecto's account *3874 to bank accounts held by Affiliates.

e.   Tied advances to Affiliates per bank statements to the LOC Reconciliations, calculated estimated over/under advances to Affiliates, and sampled the recording of such transactions in Alecto's general ledger.

f.   Calculated total advances retained by Alecto for operating expenses and other purposes and tied to Alecto bank statements.

g.   Analyzed transfers to/from accounts not included in lists of Alecto and/or Affiliate held accounts.

4.   Examined Alecto's general ledger, including 1,208 separate disbursements by check, ACH, or wire transfer to identify payments to, or for the benefit of, Insiders, of $10,000 or more, if any.

5.   Examined Alecto's year end payroll records for the years 2020 – 2022 and the 6-month period ended June 16, 2023, to identify payments to Insiders.

6.   Analyzed cash flows into/out of the credit facility utilized under the 2018 Promissory Note and payoff by Plaza MOB.

7.   Examined supporting documentation for interest payments related to the Plaza MOB Loan.

8.   Analyzed cash flows and certain closing documents, including settlement and funds flow statements, related to the June 20, 2019 Plaza MOB Refinance and the 2021 UCLA Asset Sale.

After conducting its forensic analysis, GCS presented its report to Mr. Balasiano and conferred with Mr. Balasiano in order to provide Mr. Balasiano an opportunity to ask any questions or raise any issues with respect to the estate's potential claims against the Insiders. A copy of GCS report is attached hereto as **Exhibit D**. At the conclusion of the conference, Mr. Balasiano determined that the estate does not have any valid claims against the Insiders for avoidable transfers.

## **ARTICLE IV - THE PLAN**

The Plan must describe how Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For

16291449/3
16452692/2

example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Bankruptcy Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Creditors are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

Pursuant to section 1191(b) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan even if no impaired Class of Claims votes to accept the Plan.  Specifically, section 1191(b) of the Bankruptcy Code provides that the Plan may be confirmed if the applicable requirements of section 1129(a) are satisfied, other than sections 1129(a)(8), (10), and (15), if the Bankruptcy Court finds that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each Class of Claims or Equity Interests that is impaired under, and has not accepted, the Plan. Thus, the Plan may be confirmed even if no impaired Class votes to accept the Plan, the Debtor reserves the right to assert that the Plan satisfies these requirements and can nevertheless be confirmed..

18

Based upon the foregoing, and based upon the statements of counsel for the Reed Creditors stating that they will object to confirmation and indicating that the Reed Creditors will not vote to support the Plan, the Debtor has elected to proceed without soliciting votes of creditors, and will seek approval of the Plan pursuant to Section 1191 of the Bankruptcy Code.

1.      **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, ~~and holders of such Claims do not vote on the Plan. They~~ however they may, however, object if, in their view, their treatment under the Plan does not comply with~~that~~ required by the Bankruptcy Code. As such, the Plan does not place the following Claims in any class:

a.      **Administrative Expenses**

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Effective Date will be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Creditor or Bankruptcy Court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

- If the Debtor continues to operate in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

- Administrative Expenses also include any post-petition fees and expenses allowed to Professionals, including the allowed claim of the Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 Case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

16291449/3
16452692/2

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | $0.00 (All amounts paid on ongoing basis) | Payment through the Plan as follows:  Payment in full on the Effective Date. |
| Administrative Tax Claims | $0.00 | The Debtor does not expect any but if there are any Administrative Tax Claims, payment through the Plan as follows: Payment in full on the Effective Date, except to the extent otherwise agreed to by the Debtor and the Claimant. |
| United States Trustee fees | $2,500 | Payment through the Plan as follows: Payment in full on the Effective Date. |
| Professional Fee Claims, including the fees of the Independent Director as approved by the Bankruptcy Court | $500,000 $700,000 | After Bankruptcy Court approval, Payment through the Plan as follows: Payment in full. |
| Subchapter V Trustee | $50,000 | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows: Payment in full. |
| **TOTAL** | **$552,500 $752,500** | |

### b.    Post-Confirmation Professional Fee Claims

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtor shall, in the ordinary course of business and without any further notice to, or action, order, or approval of, the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business

20

without any further notice to, or action, order, or approval of, the Bankruptcy Court.

### c.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Bankruptcy Code. Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor agrees to a less favorable treatment, pursuant to section 1129(a)(9) of the Bankruptcy Code, each Holder of such Allowed Priority Tax Claim shall receive the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter).

The Debtor anticipates that there will be no Priority Tax Claims.

### 2.    Classes of Claims and Equity Interests.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### a.    Classes of Other Priority Claims

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Bankruptcy Code are required to be placed in classes.  The Bankruptcy Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim.  However, a class of holders of such Claims may vote to accept different treatment.

It is anticipated that there will be no Other Priority Claims owed. In the event that there are Other Priority Claims owed, such claims will be paid in full on the Effective Date.

### b.    Class of Priority Non-Tax Claims

16291449/3
16452692/2

| Class | Plan Treatment | ~~Voting Status~~ | Estimated Claim Pool /Projected Recovery |
|-------|----------------|----------------|------------------------------------------|
| 1 | Priority Non-Tax Claims. Each Holder of an Allowed Priority Non-Tax Claim at the option of the Reorganized Debtor shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment which the Reorganized Debtor and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing. | ~~Unimpaired; Not entitled to vote (deemed to accept Plan)~~ | Approx. $0<br><br>Recovery: 100% |

       **c.**    <u>**Class of Secured Claims.**</u>

Allowed Secured Claims are Claims secured by property of the Estate (or that are subject to setoff) to the extent allowed as secured Claimsunder § 506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The Debtor does not believe that there are any secured Claims as the Debtor does not have any assets that are currently encumbered by security interests, and any party that previously had a security interest in the Debtor's assets is entitled to a general Unsecured Claim due have unsecured deficiency Claim, however in the event that a Holder of an Allowed secured Claim has a valid security interest such Holder of an Allowed secured Claim at the option of the Reorganized Debtor shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed secured claim: (A) return of the collateral securing such Allowed Secured Claim; or (B) Cash equal to the amount of such Allowed Secured Claim; or (C) such other treatment which the Reorganized Debtor and the Holder of such secured Claim have agreed upon in writing.

| Class | Plan Treatment | ~~Voting Status~~ | Estimated Claim Pool /Projected Recovery |
|-------|----------------|-------------------|------------------------------------------|
| 2 | <u>Secured Claims</u>.  Each Holder of an Allowed secured Claim, shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed secured Claim: (A) return of the collateral securing such Allowed Secured Claim; or (B) Cash equal to the amount of such Allowed Secured Claim; or (C) such other treatment which the Reorganized Debtor and the Holder of such secured Claim have agreed upon in writing. | ~~Unimpaired; Not entitled to vote (deemed to accept Plan)~~ | Approx. $0<br><br>Recovery: 100% |

    **d.**    <u>**Class of General Unsecured Claims.**</u>

General Unsecured Claims are not secured by property of the Estate and are not entitled to priority under § 507(a) of the Bankruptcy Code.

| Class | Plan Treatment | ~~Voting Status~~ | Estimated Claim Pool /Projected Recovery |
|-------|----------------|-------------------|------------------------------------------|
| 3 | After payment in full of all Allowed Administrative Claims, all Allowed Priority Claims in full, and Allowed Secured Claims (if any), Allowed General Unsecured Claims will be paid the Debtor's projected disposable income on a pro rata basis. Pro rata Distributions will be made to Holders of Allowed General Unsecured Claims on an annual basis with the first Distribution to be made twelve months after the Effective Date. | ~~Yes. Holders of Allowed Class 3 Claims are impaired and entitled to vote to accept or reject the Plan~~ | Approx. **$11,000,000**<br><br>Recovery: ~~2.5~~3% - ~~4~~10% |

    **e.**    <u>**Class of Equity Interest Holders.**</u>

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest)in the Debtor.  The following chart sets forth the Plan's proposed treatment of the class of Equity Interest holders:

| Class | Plan Treatment | ~~Voting Status~~ | Estimated Claim Pool /Projected Recovery |
|-------|----------------|-------------------|------------------------------------------|
| 4 | Equity Interest Holders in Class 4 will retain their equity ownership interest in the Debtor. | ~~Holders of Class 4 Equity Interests are unimpaired and not entitled to vote to accept or reject the Plan. Holders of Class 4 Claims are deemed to have accepted the Plan~~ | Unimpaired |

**3.**    **Treatment of Claims and Claims Objections.**

The Debtor or the Reorganized Debtor, as applicable, and the Subchapter v Trustee may object to the amount or validity of any Claim by the Claims Objection Bar Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. Nothing in this Section shall in any way limit the Trustee's rights to object to Claims as provided for in the Bankruptcy Code.

**a.**    **Allowance of Claims**

After the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had with respect to any Claim immediately before the Effective Date. Further, the Reorganized Debtor shall succeed to the right to any objection to a Claim pending on the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

**b.**    **Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtor

16291449/3
16452692/2

shall have the sole authority to File and prosecute objections to Claims, and the Reorganized Debtor shall have the sole authority to: (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; and (2) from and after the Effective Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent the Reorganized Debtor elects to withdraw any such objection, or the Debtor and the Creditor elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court.  For the avoidance of doubt, nothing set forth herein shall limit in any way the Trustee's rights to object to Claims as provided for in the Bankruptcy Code.

### c.    Estimation of Claims

Before, on, or after the Effective Date, the Debtor or the Reorganized Debtor may (but is not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been disallowed, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtor, or the Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim, unless otherwise ordered by the Bankruptcy Court.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### d.    Adjustment to Claims

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register after the Debtor or the Reorganized Debtor, as applicable, files a notice of satisfaction with the Bankruptcy Court and serves such notice of satisfaction on the affected Claimant on ten (10) days' negative notice if no objection having been filed.  If an objection is filed to the notice of satisfaction, an evidentiary hearing will be scheduled before the Bankruptcy Court.

### e.    Disallowance of Claims

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor

16291449/3
16452692/2

by that Entity have been turned over or paid to the Debtor or the Reorganized Debtor. All Proofs of Claim Filed on account of an indemnification obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to, or action, order, or approval of, the Bankruptcy Court.

**f.    Amendments to Claims**

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor. Unless such prior authorization is granted, any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court to the maximum extent provided by applicable law.

**g.    De Minimis Distributions**

If any Distribution under the Plan to the Holder of an Allowed Claim would be less than $25.00, the Reorganized Debtor may withhold such distribution until a final distribution is made to such Holder. If any final Distribution under the Plan to the Holder of an Allowed Claim would be less than $25.00, the Reorganized Debtor may cancel such distribution. Any unclaimed Distributions pursuant to this Section shall be treated as unclaimed property under Article IV(6)(f) of the Plan.

**h.    No Distributions Pending Allowance**

If an objection to a Claim or portion thereof is Filed, no payment or Distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtor. Any distribution to be made on account of such Claim shall be reserved by the Reorganized Debtor, pending Allowance or Disallowance of the Claim that is the subject of an objection. In the event that a Claim is Disallowed in whole or in part, the Debtor will make Distributions to the Holder of the Claim on account of the Allowed portion of the Claim, and the balance will be distributed on a pro rata basis to Holders of Allowed Claims

**i.    Duplicative Claims**

If a Class 3 Creditor filed duplicate Proofs of Claim, the earlier filed Proof of Claim will be deemed Disallowed without the need for any further motion, objection or Bankruptcy Court order, such that the Class 3 Creditor receives only one payment under the Plan based on the later filed Proof of Claim.

**4.    Treatment of Executory Contracts and Unexpired Leases.**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its

26

Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply:

☒ Assumption of Executory Contracts.

The Executory Contracts shown on **Exhibit E** shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations undersuch contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

The Debtor shall give any party to an Executory Contract that the Debtor seeks to assume fourteen (14) days' notice of the Debtor's intent to assume such Executory Contract along with a proposed cure of any defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

Unless otherwise provided in the Plan, each Executory Contract that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract, and Executory Contracts related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract, or the validity, priority, or amount of any Claims that may arise in connection therewith.

☒ Rejection of Executory Contracts.

The Executory Contracts shown on **Exhibit F** shall be rejected by the Debtor.

Except for the Executory Contracts and Unexpired Leases being assumed in Exhibit E, the Debtor rejects the remaining Executory Contracts and Unexpired Leases listed in the Debtor's Schedule G on file with the Court, including but not limited to those listed in Exhibit F.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as a General Unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

Neither the exclusion nor inclusion of any Executory Contract on Exhibits E or F, nor

27

anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or that the Debtor or Reorganized Debtor has any liability thereunder.

Further, it is important to note that contracts between the Debtor and non-debtor parties that are included on Exhibits E or F may not be executory. The inclusion of contracts is premised upon the inclusion of those contracts in the Debtor's Schedules. **In the event, and to the extent, that any party objects to the inclusion and proposed treatment of a contract as proposed herein, the party must timely file an objection to such treatment. Absent such any objection, all contracts listed on Exhibits E and F will be treated as set forth herein.**

## 5.  Means for Implementation and Funding of the Plan.

The Plan will be funded by: (1) the Debtor's projected disposable income ($848,049) generated by the Debtor's post-confirmation operations, and (2) $25,000 provided by certain of the Released Parties. The Debtor expects to have approximately $170,000 in combined cash on hand and accounts receivable on the Effective Date, however the cash and accounts receivable will not be available for distribution to creditors under the Chapter 11 Plan as these amounts are necessary for payment of incurred and ongoing expenses (and which would otherwise be administrative expenses) and are already included in the calculus of disposable income in Year 1. The Debtor or the Reorganized Debtor, as applicable, will have all the rights and duties to implement the provisions of the Plan, including the right to make Distributions to Creditors provided for under this Plan.

On the Effective Date of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equity Interests except as provided in the Plan, to the Reorganized Debtor and all funds not expressly provided for in Plan will remain property of the Estate. The Debtor expects to have sufficient Cash on hand to make the payments required on the Effective Date.

## 6.  Payments.

### a.  Responsibility for Making Payments.

Prior to the Effective date, the Debtor shall remit all payments due for United States Trustee Fees. Upon the Effective Date, the Reorganized Debtor shall make all Plan Distributions to Creditors in accordance with the terms of the Plan.

The Reorganized Debtor shall only be required to act and make Distributions in accordance with the terms of the Plan. Except on account of gross negligence, fraud, illegality or willful misconduct, the Reorganized Debtor shall have no (i) liability to any party for actions taken in accordance with the Plan or in reasonable reliance upon information provided to it in accordance with the Plan, or (ii) obligation or liability for Distributions under the Plan to any party who does not hold a Claim against the Debtor on any date on which a Distribution is made or who does not otherwise comply with the terms of the Plan.

16291449/3
16452692/2

Any required payments to the Holders of Allowed Claims or Equity Interests shall be made by the Reorganized Debtor: (a) in U.S. dollars by check, draft or warrant, drawn on a domestic bank by first-class mail (or by other equivalent or superior means as determined by the Reorganized Debtor), or (b) by wire transfer from a domestic bank.

      **b.**     <u>**Disputed Claims.**</u>

Notwithstanding anything herein to the contrary: (a) no Distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable), and (b) unless agreed otherwise by the Reorganized Debtor, no Distribution shall be made to any Entity that holds both an Allowed Claim and a Disputed Claim until such Entity's Disputed Claims have been resolved by settlement or Final Order.

      **c.**     <u>**Unclaimed Payments.**</u>

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable or unclaimed distribution within 180 days after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against the Debtor, the Estate, the Reorganized Debtor, or its properties or assets. In such cases, any Cash or other property held by the Reorganized Debtor in the Undeliverable Distribution Reserve for distribution on account of such claims for undeliverable or unclaimed distributions, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, shall become the property of the Reorganized Debtor, notwithstanding any federal or state escheat laws to the contrary, and shall promptly be transferred to the Reorganized Debtor to be distributed according to the priority set forth in the Plan without any further action or order of the Bankruptcy Court.

      **d.**     <u>**Payment Dates and Locations.**</u>

Distributions shall be made by the Reorganized Debtor twice a year, and such Distributions shall be on a pro rata basis to Holders of Allowed Claims based upon their priority. Accordingly, the first Distributions shall be remitted on a pro rata basis to Holders of Allowed Administrative Expenses (including United States Trustee Fees) until all Allowed Administrative Expenses are paid in full. Once Allowed Administrative Expenses have been paid in full, the Reorganized Debtor shall remit payments on a pro rata basis to Holders of Allowed Priority Claims until all Allowed Priority Claims are paid in full, including interest to the extent applicable. Once Allowed Priority Expenses have been paid in full, the Reorganized Debtor shall remit payment on a pro rata basis to Holders of general unsecured claims. After each Distribution, the Reorganized Debtor shall provide the Subchapter v Trustee a list of parties to whom payments were remitted.

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made as set forth on the latest date of the following documents: (a) to the address of payment set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed; (b) at the

16291449/3
16452692/2

addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related Proof of Claim and prior to the Effective Date; and (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Debtor and Reorganized Debtor have not received a written notice of a change of address prior to the Effective Date.

The Reorganized Debtor shall make one attempt to make the Distributions contemplated hereunder in accordance with the procedures set forth herein. The Reorganized Debtor, in its sole discretion may, but shall have no obligation to, attempt to locate Holders of undeliverable distributions. Any Distributions returned to the Reorganized Debtor as undeliverable or otherwise shall remain in the possession of the Reorganized Debtor until such time as a Distribution becomes deliverable, and no further Distributions shall be made to such Holder unless such Holder notifies the Reorganized Debtor of its then current address.

Nothing contained in this Plan shall constitute a waiver or release by the Reorganized Debtor of any rights in respect of legal and equitable objections, defenses, setoffs, or recoupment. To the extent permitted by applicable law, the Reorganized Debtor may, but shall not be required to, set off or recoup against any Claim and the payments or other Distributions to be made under the Plan in respect of such Claim, claims of any nature whatsoever that arose before the Petition Date that the Estate, or the Reorganized Debtor may have against the Holder of such Claim or Equity Interest.

### e. <u>Undeliverable Distribution Reserve.</u>

If a Distribution to any Holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable or is otherwise unclaimed, such Distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such Holder until such time as such distribution becomes deliverable or is claimed or is deemed to have been forfeited.

### f. <u>Tax Requirements.</u>

Notwithstanding any other provision of the Plan, each Holder of an Allowed Claim that has received a Distribution under the Plan shall have responsibility for the satisfaction or payment of any tax obligation imposed by any Governmental Unit, including income, withholding and other tax obligation, on account of such Distribution. The Reorganized Debtor reserves the right to allocate and distribute all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and similar encumbrances.

### 7. <u>Post-Confirmation Management and Insiders Retained by the Debtor.</u>

The managers and officers of the Debtor immediately prior to the Effective Date shall serve as the initial managers and officers of the Debtor on and after the Effective Date. Each off the managers and officers being retained are insiders of the Debtor. The post-confirmation officers and managers of the Debtor, and their compensation, shall be as follows:

16291449/3
16452692/2

| Name | Position | Compensation |
|---|---|---|
| **Laxman Reddy** | **President & CEO** | **$750,000** |
| **Matt Williams** | **CFO** | **$300,000** |
| **Michael Sarrao** | **EVP & General Counsel** | **$0**[6] |

### 8.    Preservation of Causes of Action.

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, including the Claims and Causes of Action specifically discussed in Article 5 of the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (including all Avoidance Actions), whether arising before or after the Petition Date, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in the Reorganized Debtor's sole discretion.  No Entity may rely on the absence of a specific reference in the Plan to any Cause of Action against it as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against it.  The Debtor or the Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or pursuant to a Bankruptcy Court order, the Debtor or Reorganized Debtor, as applicable, expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation.  In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtor.  The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court.

### 9.    Tax Consequences of the Plan.

***Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their***

---

[6] Mr. Sarrao is not paid compensation other than: (1) medical, dental and vision insurance (approximate value of $33,000); and (2) certain expense reimbursements.

16291449/3
16452692/2

***Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.***

There may be a number of material income tax considerations, risks and uncertainties associated with the implementation of the Plan.  The Debtor does not offer an opinion as to any federal, state, local or other tax consequences to Holders of Claims and Equity Interests as a result of the confirmation of the Plan.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS OR OTHER PLAN RECIPIENTS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## <u>ARTICLE V - FEASIBILITY OF PLAN</u>

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### 1.    <u>Ability to Initially Fund Plan.</u>

The Debtor believes that it will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

### 2.    <u>Ability to Make Plan Payments And Operate Without Further Reorganization.</u>

For a period of three (3) years, the Debtor will contribute its entire projected disposable income, in an aggregate amount of $635,549, plus (ii) any residual value received by the Reorganized Debtor on account of the Debtor's direct and indirect subsidiaries including the claim filed in the bankruptcy case of Sherman/Grayson Hospital, LLC, and (iii) the proceeds of any Cause of Action, including any settlement of such claims, to fund distributions under the Plan on an annual basis. Once a year, the Debtor shall file a certified statement about money received by the Debtor on account of its interest from direct and indirect affiliates.[7] Further, to the extent that the Independent Director determines that there are any valid Causes of Action, the Debtor may create a liquidating trust with an independent third party to pursue such claims with all costs of pursuing such claim(s) coming from the Debtor's projected disposable income that would

---

[7]    In accordance with applicable non-bankruptcy law, any amounts received by the Debtor's direct or indirect subsidiaries must first be paid to those subsidiaries' creditors and Debtor's direct and indirect subsidiaries must maintain adequate reserves to address contingent liabilities before such money can be transferred to the Debtor as a distribution on account of the Debtor's equity interest.

16291449/3
16452692/2

otherwise be distributions on account of Allowed Claims.

The Debtor will have sufficient operating income to make such payments as indicated in the projections attached hereto as **Exhibit A.**

## ARTICLE VI  - LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Creditors and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit G.**

## ARTICLE VII - DISCHARGE, RELEASES AND INJUNCTIONS

1. **Discharge.**

Assuming the Plan is consensual, pursuant to section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt imposed by this Plan or to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed under section 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by the Debtor after the order for relief under the Bankruptcy Code, the Court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of the Bankruptcy Code, and all other debt allowed under section 503 of the Bankruptcy Code and provided for in this Plan, except any debt – (1) on which the last payment is due after the first 3 years of the Plan, or such other time not to exceed 5 years fixed by the Court; or (2) if applicable, of the kind specified in section 523(a) of the Bankruptcy Code.

2. **Debtor Releases.**

Subject to the occurrence of the Effective Date, and in consideration of the services provided and a total of $25,000 to be remitted by certain of the Debtor's insiders, on the Effective Date, the Debtor and its Estate shall release, waive, and discharge unconditionally the Released Parties from any and all claims, causes of action, and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event or other occurrence: in connection with or arising from the Debtor's Chapter 11 Case, the pursuit of confirmation of the Plan, the Consummation thereof, the administration thereof or the property to be distributed thereunder; provided, that the foregoing shall not operate as a waiver of or release from any causes of action resulting from the willful misconduct, actual fraud, or gross negligence

3. **Exculpation and Limitation of Liability.**

16291449/3
16452692/2

Except as otherwise specifically provided in the Plan, no Released Party shall have or incur, and each Released Party is hereby released and exculpated from any Cause of Action arising between the Petition Date and the Effective Date related to any act or omission in connection with, relating to, or arising out of: (i) the Chapter 11 Case, (ii) the Plan, or any contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, (iii) the pursuit of Confirmation, (iv) the administration and implementation of the Plan, or (v) the distribution of property under the Plan or any other related agreement.  The Released Parties have, and upon closing of the Chapter 11 Case or the Effective Date shall be deemed to have, with respect to all actions arising on or after the Petition Date, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan; provided that in no event shall anything in this Article 5.3 be construed as a release of any person's gross negligence, fraud, or willful misconduct, each as determined by a Final Order.

## 4. __Injunction.__

Except with respect to the obligations arising under the Plan or the Confirmation Order, and except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities that held, hold, or may hold claims or interests that have been discharged, released or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Released Parties on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any lien or encumbrance of any kind against the Released Parties or the property of the Released Parties on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Released Parties or against the property of the Released Parties on account of or in connection with or with respect to any such claims or interests unless the Released Parties has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that the Released Parties asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE PROPERTY TO BE DISTRIBUTED PURSUANT TO THIS PLAN ANY OTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE

16291449/3
16452692/2

THAT OCCURRED BEFORE THE EFFECTIVE DATE.

**5.    Remedies Upon Default.**

The Debtor expects to be able to make all payments under the Plan.  In the event of a default, however, pursuant to § 1191(c)(3) of the Bankruptcy Code, if the Reorganized Debtor defaults in payments under the Plan, the affected creditor shall notify the Reorganized Debtor, who shall have fifteen (15) days to cure the default. If the Reorganized Debtor does not cure within the 15 days, the creditor may file a notice of the default with the Bankruptcy Court and request a hearing to consider appropriate remedies.

## ARTICLE VIII - GENERAL PROVISIONS

**1.    Title to Assets**

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the Estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

 If a plan is confirmed under § 1191(b), property of the Estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the Estate.

**2.    Binding Effect**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**3.    Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**4.    Retention of Jurisdiction by the Bankruptcy Court**

The Bankruptcy Court shall retain jurisdiction of this case with regard to all matters to the fullest extent allowed pursuant to applicable law, including the following: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan and to remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order;

16291449/3
16452692/2

(ii) to rule on any modification of the Plan proposed under § 1193; (iii) to hear and allow all applications for compensation to Professionals and other Administrative Expenses; (iv) to allow, disallow, determine, liquidate, classify or establish the priority or secured or unsecured status of or estimate any Claim or Equity Interest; (v) to ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan; (vi) to determine any and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan, including without limitation any motions for the rejection, assumption or assumption and assignment of any Executory Contract; (vii) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan or any entity's obligations in connection with the Plan, or to defend any of the rights, benefits, Estate property transferred, created, or otherwise provided or confirmed by the Plan or the Confirmation Order or to recover damages or other relief for violations thereof; (viii) to consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor and the Estate; (ix) to decide or resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters, or grant or deny any applications involving the Debtor, or the Estate that may be pending on the Effective Date or that may be brought by the Debtor or the Reorganized Debtor, and to enter and enforce any default judgment on any of the foregoing; (x) to decide issues concerning the federal or state tax liability of the Debtor which may arise in connection with the confirmation of the Plan, including but not limited to the issuance of Form 1099s (or similar forms); (xi) to interpret and enforce any orders entered by the Bankruptcy Court in the Chapter 11 Case; (xii) to enforce the release, exculpation and injunction provisions contained in Article 5 herein; and (xiii) to enter an order closing the Chapter 11 Case when all matters contemplating the use of such retained jurisdiction have been resolved and satisfied.

### 5. __Headings__

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6. __Successors and Assigns__

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### 7. __No Fourteen Day Stay__

Notwithstanding the requirements set forth by Federal Rules of Bankruptcy Procedure, Rules 3020(e), 6004(h), and 6006(d), the Debtor has the right to elect for the Plan to go effective upon entry of the Confirmation Order so long as no stay is in place.

### 8. __Incorporation of Agreements Entered Into by the Debtor__

The Debtor may enter into certain agreements or stipulations with certain Creditors regarding the treatment of their Claim so long as such agreements or stipulations do not violate the Bankruptcy Code. The Plan may be amended to reflect such agreements or stipulations. Such

16291449/3
16452692/2

amendments shall not reopen any notice or objection periods regarding the Plan.

**9.      Modification  of  Plan**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). ~~However, the Bankruptcy Court may require additional items including revoting on the Plan.~~

If the Plan is confirmed under § 1191(a), the Debtor may also seek to modify the  Plan  at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under § 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Effective Date, or such longer time not to exceed 5 years as fixed by the Bankruptcy Court and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**10.      Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

**11.      Filing of Notice of Substantial Consummation**

Not later than fourteen (14) days after the Plan of is substantially consummated, the Debtor shall file with the Bankruptcy Court and serve upon the Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation.

**12.      Post-Effective Date Service List**

Pursuant to Bankruptcy Rule 2002 and any applicable Local Rule, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee, counsel to the Debtors, counsel for the Liquidating Trustee, and all persons on the Bankruptcy Rule 2002 service list.  With the exception of the Debtors, Cerberus, and the U.S. Trustee, any Person desiring to remain on the Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Liquidating Trustee within thirty (30) days subsequent to the Effective Date.  Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. **Persons who do not file a request for continued service within thirty (30) days subsequent to the Effective Date shall be removed from the Bankruptcy Rule 2002 service list.**

**13.      Changes in Rates Not Subject to Regulatory Commission Approval**

The Debtor is not subject to governmental regulatory approval of rate. The Debtor is not regulated by a governmental commission.

### 14.    Final Decree

Unless otherwise ordered by the Bankruptcy Court, once the Estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Reorganized Debtor or other party in interest shall file a motion with the Bankruptcy Court to obtain a final decree to close the case.

## ARTICLE IX - CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

### 1.    Conditions Precedent to Confirmation.

It shall be a condition to Confirmation hereof that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Article 7.3:

(a)    The Plan and the Confirmation Order shall be in a form and substance reasonably acceptable to the Debtor.

### 2.    Conditions Precedent to the Effective Date.

It shall be a condition to the Effective Date that the following provisions, terms and conditions shall have been satisfied or waived pursuant to Article 7.3:

(a)    All of the schedules, documents, supplements and exhibits to the Plan shall have been filed in form and substance reasonably acceptable to the Debtor.

(b)    The Bankruptcy Court shall have entered a Final Order, in form and substance reasonably acceptable to the Debtor confirming the Plan pursuant to section 1191 of the Bankruptcy Code.

(c)    All authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained.

(d)    No order of a court shall have been entered and remain in effect restraining the Debtor from consummating the Plan and the transactions contemplated therein, and the Confirmation Order shall be in full force and effect.

(e)    All actions, documents, certificates and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws, and are in form and substance acceptable to the Debtors.

16291449/3
16452692/2

3.    **Waiver of Conditions.**

The conditions to Confirmation of the Plan and to the occurrence of the Effective Date set forth in this Article 7 may be waived at any time by the Debtor.

4.    **Effect of Failure of Conditions.**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (i) constitute a waiver or release of any claims by or Claims against the Debtor or any of the Released Parties; (ii) prejudice in any manner the rights of the Debtor, any Holders of a Claim or Equity Interest or any other entity; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtor, any Creditors  or Equity Interest Holders or any other entity in any respect.  In addition, the Debtor and all Holders of Claims against or Equity Interests in the Debtor shall be restored to the status quo as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred.

5.    **Filing of Notice of the Effective Date.**

On the Effective Date or as shortly thereafter as reasonably practicable, the Debtor shall file a notice of the Effective Date with the Bankruptcy Court.

## ARTICLE X - EXHIBITS

The following documents accompany the Plan:

| Attached | Description | Exhibit |
|---|---|---|
| X | Organizational Chart | A |
| X | Claims Register and Schedules | B |
| X | Projected Income and Expenses | C |
| X | Report of Gould Consulting Services | D |
| X | Executory Contracts and Unexpired Leases to be Assumed | E |
| X | Executory Contracts and Unexpired Leases to be Rejected | F |
| X | Liquidation Analysis | G |

## ARTICLE XI - RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

1.    **Rules of Interpretation.**

39

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim or Equity Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (13) any immaterial effectuating provisions may be interpreted by the Debtor, the Reorganized Debtor, or the Trustee in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity; and (14) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

## 2. **Computation of Time.**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

## 3. **Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of California, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control);

*provided* that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the state of incorporation or formation of the Debtor or Reorganized Debtor, as applicable.

      **4.**      **<u>Reference to Monetary Figures.</u>**

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

      **5.**      **<u>Controlling Document.</u>**

In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

Dated: ~~October 9~~December 19, 2023        **MORRIS JAMES LLP**

                          /s/ *Jeffrey R. Waxman*
                          Jeffrey R. Waxman (DE Bar No. 4159)
                          Brya M. Keilson (DE Bar No. 4643)
                          500 Delaware Avenue, Suite 1500
                          Wilmington, DE 19801
                          Tel: (302) 888-6800
                          Fax: (302) 571-1750
                          E-mail: jwaxman@morrisjames.com
                          E-mail: bkeilson@morrisjames.com

                          *Counsel to the Debtor and Debtor in Possession*

16291449/3
16452692/2

## **EXHIBIT B**

Schedules and Claims Register

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | Chapter 11 (Subchapter V) |
| ALECTO HEALTHCARE SERVICES LLC,[1] | Case No. 23-10787-JKS |
| Debtor. | |

**SCHEDULES OF ASSETS AND LIABILITIES FOR**
**ALECTO HEALTHCARE SERVICES LLC (CASE NO. 23-10787-JKS)**

---

[1]  The last four digits of the Debtor's federal tax identification number are 9723. The Debtor's address is 101 N Brand Boulevard, Suite 1920, Glendale, CA 91203.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 - Subchapter V |
| ALECTO HEALTHCARE SERVICES LLC, | Case No. 23-10787-JKS |
| Debtor | |

## GLOBAL NOTES, METHODOLOGY, AND SPECIFIC DISCLOSURES REGARDING THE DEBTOR'S SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

### Introduction

These *Global Notes, Methodology, and Specific Disclosures Regarding the Debtor's Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") qualify, are incorporated by reference in, and comprise an integral part of, the Schedules of Assets and Liabilities (collectively, the "Schedules") and the Statements of Financial Affairs (collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") filed by Alecto Healthcare Services LLC ("Debtor" or the "Company") in the above-captioned case filed under Chapter 11, Subchapter V, of title of the United States Code (the "Case") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Schedules and Statements were prepared pursuant to § 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure by management of the Debtor, with the assistance of the Debtor's advisors, and are unaudited.

In preparing the Schedules and Statements, the Debtor relied on financial data derived from its books and records that was available at the time of such preparation. The Debtor's Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled to the financial statements of the Debtor. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment. The Schedules and Statements reflect the Debtor's reasonable best efforts to report the assets and liabilities of the Debtor. While the Debtor's management has made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances, based on information available at the time of preparation, subsequent information or discovery may result in material changes to these Schedules and Statements. As a result, inadvertent errors or omissions may exist, and there can be no assurance that these Schedules and Statements are complete.

The Debtor reserves all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to (a) amend the Schedules and Statements with respect to a claim (as defined in § 101(5) of the Bankruptcy Code) description, designation, or Debtor against which the claim is asserted, (b) dispute or otherwise assert offsets or defenses to any claim reflected in the Schedules and

1

Statements as to amount, liability, priority, status, or classification, (c) subsequently designate any claim as "disputed," "contingent," or "unliquidated," or (d) object to the extent, validity, enforceability, priority, or avoidability of any claim. Any failure to designate a claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such claim or amount is not "disputed," "contingent," or "unliquidated." Listing a claim does not constitute an admission of liability by the Debtor against which the claim is listed or against the Debtor. Nothing contained in the Schedules and Statements shall constitute a waiver of any right of the Debtor or an admission with respect to its Chapter 11 Case (including, but not limited to, issues involving claims, substantive consolidation, defenses, equitable subordination, characterization or re-characterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers). Any specific reservation of rights contained elsewhere in these Global Notes does not limit in any respect the foregoing reservation of rights.

The Debtor and its agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and will not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtor and its agents, attorneys and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or recategorized. In no event will the Debtor or its agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtor or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtor or its agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Schedules and Statements have been signed by Laxman Reddy, President and Chief Executive Officer of the Debtor. Accordingly, in reviewing and signing the Schedules and Statements, Mr. Reddy necessarily relied upon the efforts, statements, and representations of the Debtor and its staff and other personnel and professionals. Mr. Reddy has not (and could not have) personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses.

These Global Notes should be referred to and considered in connection with any review of the Schedules and Statements.[1] Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits,

or attachments.  In the event that the Schedules and Statements differ from the Global Notes, the Global Notes shall control.

*Neither the Schedules and Statements, nor the Global Notes, should be relied upon by any persons for information relating to current or future financial conditions, events, or performance of the Debtor.*

## Global Notes and Overview of Methodology

**Description of Case and Information Date**

On June 16, 2023 (the "Petition Date"), the Debtor filed a voluntary petition with this Bankruptcy Court for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code.  The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Case is being administered pursuant to Bankruptcy Rule 1015(b).  No creditors' committee has been appointed in this case.  Other than the appointed Subchapter V Trustee, no trustee or examiner has been appointed.  Except as otherwise noted, the information set forth herein is provided as of the close of business on the Petition Date.

**Basis of Presentation**

These Schedules and Statements reflect the assets and liabilities of the Debtor, except where otherwise indicated.  Information contained in the Schedules and Statements has been derived from the Debtor's books and records and historical financial statements.

These Schedules and Statements represent the Debtor's good faith attempt to comply with the requirements of the Bankruptcy Code and Bankruptcy Rules using commercially reasonable efforts and resources available and are subject to further review and potential adjustment.

**Amendment of Schedules and Statements**

While reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist.  The Debtor reserves all rights to amend and/or supplement the Schedules and Statements from time to time as is necessary or appropriate.

## General Notes Applicable to Schedules and Statements

1. **Recharacterization**.  The Debtor has made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.  The Debtor reserves all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

2.     **Claim Designations**.  Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtor that such claim or amount is not "contingent," "unliquidated," or "disputed."  The Debtor reserves all rights to dispute, or to assert offsets or defenses to, any claim reflected on its Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed."  Moreover, the Debtor reserves all rights to amend its Schedules and Statements as necessary and appropriate.  Listing a claim does not constitute an admission of liability by the Debtor.

3.     **Unliquidated Claim Amounts**.  Claim amounts that could not be readily quantified by the Debtor are scheduled as "unliquidated."

4.     **Unknown Amounts**.  The description of an amount as "unknown" is not intended to reflect upon the materiality of such amount.

5.     **Court Orders**.  Pursuant to certain orders of the Bankruptcy Court entered in the Debtor's Chapter 11 Case entered on or about June 20, 2023 (the "<u>First Day Orders</u>"), the Debtor was authorized (but not directed) to pay, among other things, certain prepetition claims of employees, insurers, and taxing authorities.  Accordingly, these liabilities may have been or may be satisfied in accordance with such orders and therefore may not be listed in the Schedules and Statements.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtor reserves all rights to amend or supplement its Schedules and Statements.

6.     **Other Paid Claims**.  To the extent the Debtor has reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Debtor's Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Bankruptcy Court approval.  To the extent the Debtor pays any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtor reserves all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

7.     **Liabilities**.  The Debtor has sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtor reserves the right to modify, amend, or supplement the Schedules and Statements as it deems appropriate in this regard.

8.     **Excluded Assets and Liabilities**.  The Debtor may have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation, accrued salaries and employee benefit accruals.  In addition, and as set forth above, the Debtor may have excluded amounts for which the Debtor has been granted authority to pay pursuant to a First Day Order or other order that may be entered by the Bankruptcy Court.  The Debtor may also have excluded rejection damage claims of counterparties to executory

contracts and unexpired leases that may be rejected (if any), to the extent such damage claims exist. Also, certain immaterial assets and liabilities may have been excluded.

9.      **Confidential or Sensitive Information**.  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or concerns for the privacy of an individual based on the Health Insurance Portability and Accountability Act of 1996 or otherwise.  The alterations will be limited to only what is necessary to protect the Debtor or third party.  In some instances, the redacted information may be available upon request.

10.      **Leases**.  The Debtor may not have included in the Schedules and Statements the future obligations of any capital or operating leases.  To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule F of the Schedules. Nothing in the Schedules or Statements (including, without limitation the failure to list leased property or equipment as owned property or equipment) is, or shall be construed as, an admission as to the determination of legal status of any lease (including whether any lease is a true lease or financing arrangement), and the Debtor reserves all rights with respect to such issues.

11.      **Guarantees and Other Secondary Liability Claims**.  The Debtor has used reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "Guarantees") in each of its executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements.  However, certain Guarantees embedded in the Debtor's executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted.  Thus, the Debtor reserves all rights to amend the Schedules to the extent that additional Guarantees are identified.

12.      **Executory Contracts**.  Although the Debtor has made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtor may have inadvertently failed to do so.  Accordingly, the Debtor reserves all rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

13.      **Estimates**.  To prepare and file the Schedules as close to the Petition Date as possible, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities.  The Debtor reserves all rights to amend the reported amounts of assets and liability to reflect changes in those estimates or assumptions.

14.      **Fiscal Year**.  The Debtor's fiscal year ends on December 31.

15.      **Property and Equipment**.  Unless otherwise indicated, owned property and equipment are stated at net book value.  The Debtor may lease furniture, fixtures, and equipment from certain third-party lessors. Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtor reserves all of its rights with respect to same.

16.      **Credits and Adjustments**.  The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtor's books

and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtor. The Debtor reserves all rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

17. **Insiders**. In the circumstance where the Schedules and Statements require information regarding "insiders" the Debtor has included information with respect to the individuals the Debtor believes are included in the definition of "insider" set forth in § 101(31) of the Bankruptcy Code during the relevant time periods. Such individuals may no longer serve in such capacities. The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for: (1) the purposes of determining (a) control of the Debtor; (b) the extent to which any individual exercised management responsibilities or functions; (c) corporate decision-making authority over the Debtor; or (d) whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability, or (2) any other purpose.

18. **Totals**. All totals that are included in the Schedules and Statements represent totals of all known and estimated amounts that are included in the Schedules and Statements. To the extent there are unknown, disputed, contingent, unliquidated, or otherwise undetermined amounts, the actual total may be materially different than the listed total. The description of an amount as "unknown", "disputed", "contingent", "unliquidated", or "undetermined" is not intended to reflect upon the materiality of such amount.

19. **Exclusions.** The Debtor may have excluded certain categories of assets and liabilities from the Schedules and Statements, including accrued liabilities such as accrued salaries and employee benefits (including accrued personal time off) and accrued accounts payable, as well as assets with a net book value of zero. Other non-material assets and liabilities may have also been excluded.

## <u>Specific Notes Regarding the Schedules and Statements</u>

**Specific Notes Regarding the Statements**

1. **Gross Revenue**. Amounts listed for gross revenue in the Part 1 of the Statements from the beginning of the fiscal year to just before the Petition Date reflect gross revenue from the Debtor's business for the period of January 1, 2023 through and including the Petition Date.

2. **90 Day Payments.** The dates set forth in the "Dates of Payment" column relate to one of the following: (a) the date of a wire transfer; (b) the date of an "ACH" payment; or (c) the date that a check was issued. Item 3 includes any disbursement or other transfer made by the Debtor within 90 days before the Petition Date except for those made to insiders (which payments appear in response to Item 4).

3. **Insider Payments**. The Debtor made reasonable, good faith efforts to list all material payments made to or for the benefit of insiders with one year before the filing of the case.

However, it would be unduly burdensome to determine the amount of certain employee benefits provided to insiders by the Debtor, which include, among other things, the employer portion of health insurance premiums. Moreover, the payment of such amounts was authorized by the Employee Wage Order (as defined herein). The Debtor believes that the expenses underlying any employee reimbursements were incurred for the benefit of the Debtor, and not insiders.

4.      **Property held for another.**   The Debtor has made reasonable efforts to account for property held for another by relying on the Debtor's books and records.

**Specific Notes Regarding Schedule A/B**

1.      **Bank Account Balances**.  In the event of any conflict between the Debtor's *Motion for Interim and Final Orders Authorizing (I) Maintenance of Existing Bank Accounts, (II) Continued Use of Existing Cash Management System, and (III) Continued Use of Business Forms Pursuant to 11 U.S.C. §§ 105, 345, 363, 364, 503, 1107 and 1108 of the Bankruptcy Code* [Docket No. 6] and the Statements and Schedules, the information contained in the Statements and Schedules shall control.

2.      **Prepayments**.  Certain prepayments reflected on the Debtor's balance sheet may not be included because the vendor to which they relate has fully performed the related services and the Debtor has no claims against these vendors.

3.      The Debtor does not believe that the note receivable from Olympia Healthcare, LLC (an indirect subsidiary of the Debtor) is collectible.

4.      The $2,000,000 referenced in Part II, Item 75 is a setoff defense and is not an affirmative claim.

**Specific Notes Regarding Schedule E/F**

1.      **Creditors Holding Priority Unsecured Claims**. The listing of any claim on Schedule E/F does not constitute an admission by the Debtor that such claim is entitled to priority treatment under § 507 of the Bankruptcy Code.  The Debtor reserves all rights to dispute the amount and/or the priority status of any claim on any basis at any time.

The Bankruptcy Court entered the *Interim Order (I) Authorizing Payment of Certain Prepetition Employee Claims, Including Wages and Salaries, (II) Authorizing Payment of Certain Employee Benefits and Confirming right to Continue Employee Benefits on Postpetition Basis, (III) Authorizing Payment of Reimbursement to Employees for Prepetition Expenses, (IV) Authorizing Payment of Withholding and Payroll-Related Taxes, (V) Authorizing Payment of Prepetition Claims Owing to Administrators and Third Party Providers and (VI) Allowing Banks to Honor Prepetition Checks and Fund Transfers for Authorized Payments* [Docket No.26], granting authority to the Debtor to pay certain prepetition employee wage and other obligations in the ordinary course (the "Wage Order").  Pursuant to the Wage Order, the Bankruptcy Court granted the Debtor authority to pay or honor certain prepetition obligations for employee wages, payroll deductions, employee benefits, and other benefits and fees.  The Debtor has not listed on Schedule E/F any wage or employment-related obligations owed to non-insiders for which the Debtor has been granted authority to pay pursuant to the Employee Wage Order or other order that

may be entered by the Bankruptcy Court. The Debtor believes that all such claims have been, or will be, satisfied in the ordinary course during this case pursuant to the authority granted in the Employee Wage Order or other order that may be entered by the Bankruptcy Court. Likewise, the Debtor has not listed on Statement, Question 3, any transfers to non-insider employees on account of wages or employment-related obligations for which the Debtor has been granted authority to pay pursuant to the Employee Wage Order or other order that may be entered by the Bankruptcy Court.

> **2.**      **Creditors Holding Non-Priority General Unsecured Claims.**

- Horizon Real Estate Holdings, LLC is an affiliate of the Debtor.

- Olympia Healthcare LLC is an affiliate of the Debtor.

- Plaza Medical Office Building, LLC is an affiliate of the Debtor.

**Specific Notes Regarding Schedule G**

1.      The Debtor's books and records may not be complete with respect to all unexpired leases and/or executory contracts to which they are a party and that were pending as of the Petition Date. In particular, the Debtor may be party to agreements and understanding that are "oral" or "verbal" in nature; while the Debtor has made reasonable efforts to identify these agreements and disclose them in the Schedules, there may be some that are not yet known or identified. Certain of the executory contracts and unexpired leases listed on Schedule G may contain renewal options, guarantees of payment, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties, and obligations are not separately set forth on Schedule G or Schedule B. Omission of a contract, lease or other agreement from Schedule G does not constitute an admission that such omitted contract, lease or agreement is not an executory contract or unexpired lease. The Debtor hereby reserves all of its rights to (i) dispute the validity, status, or enforceability of any contract, agreement or lease set forth in Schedule G and (ii) amend or supplement such Schedule as necessary.

**Specific Notes Regarding Attachment No. 8 to Schedule A/B**

1.      Certain of the insurance policies provide insurance coverage to affiliates of the Debtor and the Debtor reserves the right to seek reimbursement of an allocated share of such premiums from such affiliates, as appropriate.

* * * * * * *

Fill in this information to identify the case and this filing:

Debtor Name __Alecto Healthcare Services LLC__
__a Delaware limited liability company__

United States Bankruptcy Court for the: _____ District of __Delaware__
(State)

Case number (If known): __23-10787-JKS__

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☑ *Schedule H: Codebtors* (Official Form 206H)

☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* _____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐ *Other document that requires a declaration* _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __6/30/2023__                    ✗ /s/ Laxman Reddy
MM / DD / YYYY                             Signature of individual signing on behalf of debtor

                                          __Laxman Reddy__
                                          Printed name

                                          __President and Chief Executive Officer__
                                          Position or relationship to debtor

**Fill in this information to identify the case:**

Debtor name Alecto Healthcare Services LLC a Delaware limited liability company

United States Bankruptcy Court for the: _____ District of Delaware
(State)

Case number (If known): 23-10787-JKS _____

☐ Check if this is an amended filing

## Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals                                    12/15

---

### Part 1:    Summary of Assets

1. *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B* ...................................................................................  $ _____ 0.00

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*....................................................................................  $ 3,523,846.62

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B* .....................................................................................  $ 3,523,846.62

---

### Part 2:    Summary of Liabilities

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*...............................  $ 712,846.79

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F* ....................................  $ _____ 0.00

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F* .........................  + $ 85,496,898.04

4. **Total liabilities**...................................................................................................................  $ 86,209,744.83
   Lines 2 + 3a + 3b

---

<table>
<tr><td colspan="2"><b>Fill in this information to identify the case:</b></td></tr>
<tr><td>Debtor name</td><td>Alecto Healthcare Services LLC a Delaware limited liability company</td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>_____ District of <u>Delaware</u><br/>(State)</td></tr>
<tr><td>Case number (If known):</td><td><u>23-10787-JKS</u></td></tr>
</table>

☐ Check if this is an amended filing

## Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property

**12/15**

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1: Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No. Go to Part 2.
   ☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2. **Cash on hand** — $_____

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

   | | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
   |---|---|---|---|---|
   | 3.1. | See Attachment No. 3 | _____ | ___ ___ ___ ___ | $_____ 2.61 |
   | 3.2. | | | | $_____ |

4. **Other cash equivalents** *(Identify all)*

   | | | |
   |---|---|---|
   | 4.1. | See Attachment No. 3 | $_____ 5,493.56 |
   | 4.2. | | $_____ |

5. **Total of Part 1** — $_____ 5,496.17

   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

### Part 2: Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

   ☐ No. Go to Part 3.
   ☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. Deposits, including security deposits and utility deposits

   Description, including name of holder of deposit

   | | | |
   |---|---|---|
   | 7.1. | NTT America, Inc. – Deposit for Sublease of Office Space Suite 1780 | $ 28,925.00 |
   | 7.2. | Pacific Global Investment Management Company - deposit for sublease Suite 1920 | $ 12,592.80 |

Debtor  Alecto Healthcare Services LLC a Delaware limited liability company  Case number *(if known)*  23-10787-JKS
Name

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1. See Attachment No. 8 _____ $_____1,305,994.29

8.2. _____ $_____

9. **Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81. | $_____1,347,512.09

## Part 3: Accounts receivable

10. **Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.

☑ Yes. Fill in the information below.

|  |  | Current value of debtor's interest |
|---|---|---|
| 11. **Accounts receivable** | | |
| 11a. 90 days old or less: | $1,960,598.88 – $1,960,598.88 = ........→ | $_____0.00 |
| | face amount       doubtful or uncollectible accounts | |
| 11b. Over 90 days old: | $94,531,482.75 – $94,531,482.75 = ........→ | $_____0.00 |
| | face amount       doubtful or uncollectible accounts | |

12. **Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82. | $_____0.00

## Part 4: Investments

13. **Does the debtor own any investments?**

☐ No. Go to Part 5.

☑ Yes. Fill in the information below.

|  | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

14. **Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

14.1. _____ _____ $_____

14.2. _____ _____ $_____

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                                    % of ownership:

15.1. See Attachment No. 15 _____ _____% _____ $_____120,000.00

15.2._____ _____% _____ $_____

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1._____ _____ $_____

16.2._____ _____ $_____

17. **Total of Part 4**

Add lines 14 through 16. Copy the total to line 83. | $_____120,000.00

| Debtor | Alecto Healthcare Services LLC a Delaware limited liability company | Case number *(if known)* 23-10787-JKS |
|---|---|---|
| | Name | |

---

| Part 5: | **Inventory, excluding agriculture assets** |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.

☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |
| **20. Work in progress** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |
| **21. Finished goods, including goods held for resale** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |
| **22. Other inventory or supplies** | | | | |
| _____ | MM / DD / YYYY | $_____ | _____ | $_____ |

**23. Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.

$_____ 0.00

**24. Is any of the property listed in Part 5 perishable?**

☐ No

☐ Yes

**25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value _____ Valuation method_____ Current value_____

**26. Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No

☐ Yes

---

| Part 6: | **Farming and fishing-related assets (other than titled motor vehicles and land)** |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops—either planted or harvested** | | | |
| _____ | $_____ | _____ | $_____ |
| **29. Farm animals** *Examples*: Livestock, poultry, farm-raised fish | | | |
| _____ | $_____ | _____ | $_____ |
| **30. Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| _____ | $_____ | _____ | $_____ |
| **31. Farm and fishing supplies, chemicals, and feed** | | | |
| _____ | $_____ | _____ | $_____ |
| **32. Other farming and fishing-related property not already listed in Part 6** | | | |
| _____ | $_____ | _____ | $_____ |

---

Debtor  Alecto Healthcare Services LLC a Delaware limited liability company
Name

Case number *(if known)* 23-10787-JKS

33. **Total of Part 6.**

Add lines 28 through 32. Copy the total to line 85.

$ 0.00

34. **Is the debtor a member of an agricultural cooperative?**

☐ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

☐ No

☐ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value $_____ Valuation method _____ Current value $_____

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No

☐ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No

☐ Yes

| **Part 7:** | **Office furniture, fixtures, and equipment; and collectibles** |
|---|---|

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** Reception Desk | $ 4,838.56 | Cost | $ 4,838.36 |
| 40. **Office fixtures** | $ | | $ |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** Computer Equipment | $ 25,000.00 | Cost | $ 25,000.00 |
| 42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 | $ | | $ |
| 42.2 | $ | | $ |
| 42.3 | $ | | $ |

43. **Total of Part 7.**

Add lines 39 through 42. Copy the total to line 86.

$ 29,838.36

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

☑ No

☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☑ No

☐ Yes

Debtor   Alecto Healthcare Services LLC a Delaware limited liability company   Case number *(if known)*   23-10787-JKS
Name

| Part 8: | Machinery, equipment, and vehicles |

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.

☑ Yes. Fill in the information below.

| General description<br><br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

47.1 2017 Toyota Highlander VIN 5TDBZRFHIH5452189 — $ 21,000.00 — (Kelly Blue Book) FMV — $ 21,000.00

47.2 _____ $_____ _____ $_____

47.3 _____ $_____ _____ $_____

47.4 _____ $_____ _____ $_____

48. **Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

48.1 _____ $_____ _____ $_____

48.2 _____ $_____ _____ $_____

49. **Aircraft and accessories**

49.1 _____ $_____ _____ $_____

49.2 _____ $_____ _____ $_____

50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

_____ $_____ _____ $_____

51. **Total of Part 8.**

Add lines 47 through 50. Copy the total to line 87.

$ 21,000.00

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

☑ No

☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☑ No

☐ Yes

Debtor  Alecto Healthcare Services LLC a Delaware limited liability company

Name

Case number (if known)  23-10787-JKS

---

**Part 9:**  **Real property**

54. **Does the debtor own or lease any real property?**
   - ☐ No. Go to Part 10.
   - ☑ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 101 N. Brand, Ste 1920, Glendale, CA | Sublease Interest | $ 0.00 | Debtor Opinion | $ 0.00 |
| 55.2 | | $ | | $ |
| 55.3 | | $ | | $ |
| 55.4 | | $ | | $ |
| 55.5 | | $ | | $ |
| 55.6 | | $ | | $ |

56. **Total of Part 9.**                                                                                                                $ 0.00
   Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

57. **Is a depreciation schedule available for any of the property listed in Part 9?**
   - ☑ No
   - ☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
   - ☑ No
   - ☐ Yes

---

**Part 10:**  **Intangibles and intellectual property**

59. **Does the debtor have any interests in intangibles or intellectual property?**
   - ☐ No. Go to Part 11.
   - ☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets** | $ | | $ |
| 61. **Internet domain names and websites**<br>  www.alectohealthcare.com | $ 0.00 | Debtor Opinion | $ 0.00 |
| 62. **Licenses, franchises, and royalties** | $ | | $ |
| 63. **Customer lists, mailing lists, or other compilations** | $ | | $ |
| 64. **Other intangibles, or intellectual property** | $ | | $ |
| 65. **Goodwill** | $ | | $ |

66. **Total of Part 10.**                                                                                                              $ 0.00
   Add lines 60 through 65. Copy the total to line 89.

---

| Debtor | Alecto Healthcare Services LLC a Delaware limited liability company | Case number *(if known)* | 23-10787-JKS |
|---|---|---|---|
| | Name | | |

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)?

☑ No

☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☑ No

☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☑ No

☐ Yes

## Part 11:  All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No. Go to Part 12.

☑ Yes. Fill in the information below.

| | | | **Current value of debtor's interest** |
|---|---|---|---|

71. **Notes receivable**

Description (include name of obligor)

Olympia Health Care, LLC      8,944,477.81 – 8,944,477.81 = → $ _____ 0.00

Total face amount    doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

_____  Tax year _____  $_____
_____  Tax year _____  $_____
_____  Tax year _____  $_____

73. **Interests in insurance policies or annuities**

_____  $_____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

_____  $_____

Nature of claim  _____

Amount requested  $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

See Attachment No. 75  $ _____ 2,000,000.00

Nature of claim  _____

Amount requested  $_____

76. **Trusts, equitable or future interests in property**

_____  $_____

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

_____  $_____
_____  $_____

78. **Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90.  $ _____ 2,000,000.00

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☑ No

☐ Yes

| Debtor | Alecto Healthcare Services LLC a Delaware limited liability company | Case number *(if known)* | 23-10787-JKS |
|---|---|---|---|
| | Name | | |

---

**Part 12:    Summary**

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $ 5,496.17 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $ 1,347,512.09 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $ 0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $ 120,000.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $ 0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $ 0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $ 29,838.36 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $ 21,000.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* . ............................................➔ | | $ 0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $ 0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $ 2,000,000.00 | |
| 91. **Total.** Add lines 80 through 90 for each column. ............................91a. | $ 3,523,846.62 | 91b. $ 0.00 |

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. ..........................................    $ 3,523,846.62

**In re Alecto Healthcare Services LLC**
**Attachment No. 3 to Schedule A/B**
**[Part 1, Item 3 – Checking, savings, money market or financial brokerage accounts]**

| Name of Bank | Account Number | Description | Balance | |
|---|---|---|---|---|
| City National Bank | x3784 | Credit Line Activity | $0.00 | |
| City National Bank | x6065 | A/P | $0.00 | ** |
| City National Bank | x6508 | Payroll | $2.61 | |
| | | Total | $2.61 | |

** Debtor has a check in the amount of $5,493.56 that, subject to Court approval, will be deposited into its x6065 account on Tuesday June 20, 2023.

In re Alecto Healthcare Services LLC
Attachment No. 8 to Schedule A/B
[Part 2, Item 8 – Prepayments]

**Alecto Healthcare Services LLC**
**Prepaid Balance Detail**
**As of 05/31/2023**

**A) Prepaid Business Insurance**

| Insurance Type | Insurance Carrier | Beg Date | End Date | Premiums & Fees Paid/Financed | Premiums & Fees Expensed to Date | Prepaid as of 05/31/23 |
|---|---|---|---|---|---|---|
| 1) Directors & Officers | National Union Fire Insurance Co. 28 Liberty Street, New York, New York 10005; 2) RSUI Indemnity Company, 945 East Paces Ferry Road, Suite 1800, Atlanta, Georgia 30376 | 1/31/2023 | 1/31/2024 | $892,556.40 | $297,516.40 | $595,040.00 |
| 2) Comprehensive Employers Indemnity (TX Non-Subscribe) | Old Republic Union Insurance Co. 307 N. Michigan Avenue, Chicago, IL 60601 | 3/31/2023 | 3/31/2024 | $33,827.82 | $5,637.82 | $28,190.00 |
| 3) Workers Compensation | StarNet Insurance Company, 9301 Innovation Drive, Suite 200, Manassa, VA 20110 | 4/1/2023 | 4/1/2024 | $16,048.00 | $2,678.00 | $13,370.00 |
| 4) Automobile | Vantapro Specialty Insurance Co.; 199 Water Street, New York, NY 10038 | 6/1/2023 | 6/1/2024 | $2,921.76 | $0.00 | $0.00 |
| 5) Excess Medical Professional/General Liability | Magmutual Professional Security Ins Co; P.O. Box 52979, Atlanta, Georgia 30355 | 8/1/2022 | 8/1/2023 | $175,685.58 | $146,405.58 | $29,280.00 |
| 6) "All Risks" Property incl Boiler & Machinery & Flood, excluding CA EM | American Home Assurance Co; 175 Water Street, New York, New York 10038 | 7/1/2022 | 9/30/2023 | $201,399.48 | $157,116.19 | $44,283.29 |
| 7) Environmental Pollution/Storage Tank Liability - WNJ | Ironshore Specialty Insurance Co., 175 Berkeley Street, Boston, MA 02116 | 8/1/2022 | 8/1/2023 | $19,224.12 | $16,024.12 | $3,200.00 |
| 8) Cyber Liability | Coalition Insurance Solutions, 1160 Battery Street, Suite 350, San Francisco, CA 94111 | 8/14/2022 | 8/14/2023 | $48,334.42 | $38,412.42 | $9,922.00 |
| 9) 3 Year Extended Reporting Period Excess Medical Professional/General Liability Coverage for Non TX Exposures | Endurance American Specialty Ins. Co.; 16052 Swingley Ridge Road, Suite 130, St. Louis, Missouri 63017 | 8/1/2022 | 8/1/2025 | $844,558.56 | $234,599.56 | $609,959.00 |
| **Total Prepaid Business Insurance** | | | | | | **$1,333,244.29** |

**B) Prepaid Employee Health Insurance Benefits**

| | |
|---|---|
| Anthem Blue Cross -Health Insurance Premiums | $0.00 |
| Unum Life Insurance Company of America - Life Insurance Premiums | $0.00 |
| MetLife Ins - Vision & Dental Insurance Premiums | $0.00 |
| **Total Prepaid Employee Health Insurance Benefits** | **$0.00** |

**C) Other Prepaids**

| | | | | | | |
|---|---|---|---|---|---|---|
| MS Office 365 & Outlook  Accounts | Go Daddy | 12/1/2022 | 11/30/2023 | $5,405.28 | $2,705.28 | $2,700.00 |
| **Total Other Prepaids** | | | | | | **$2,700.00** |

**Total Prepaids**          **$1,335,944.29**

**Ending GL Balance**          **$1,306,005.41**

**In re Alecto Healthcare Services LLC**
**Attachment No. 15 to Schedule A/B**
**[Part 4, Item 15 – Non-publicly traded stock and interests in**
**incorporated and unincorporated businesses, including any**
**interest in an LLC, partnership, or joint venture]**

| Name of Entity | % of Ownership | Valuation Method Used for Current Value | Current Value of Debtor's Interest |
|---|---|---|---|
| Alecto Healthcare Services Hayward, LLC (provides management services to non-profit hospital) | 100% | Debtor's Opinion | $100,000.00 |
| Alecto Healthcare Services Los Angeles, LLC (investment vehicle to hold interests in two LLCs) | 100% | Debtor's Opinion | $0.00 |
| Alecto Healthcare Services Fairmont, LLC (currently in wind down of business and maintaining medical | 100% | Debtor's Opinion | $10,000.00 |
| Acceleron Services, LLC (no business operations - never engaged in business) | 100% | Debtor's Opinion | $0.00 |
| United Medical Management, LLC (no business operations - never engaged in business) | 100% | Debtor's Opinion | $0.00 |
| Sunrise MOB Holdings, LLC (investment vehicle to hold interest in one LLC) | 100% | Debtor's Opinion | $10,000.00 |
| Alecto Healthcare Services Sherman, LLC (investment vehicle that holds interest in three LLCs) | 80% | Debtor's Opinion | $0.00 |
| Alecto Healthcare Services Ohio Valley, LLC (investment vehicle that holds interest in two LLCs and sponser of a defined beneft pension plan) | 100% | Debtor's Opinion | $0.00 |
| Alecto Healthcare Services Real Estate Holdings, LLC (no business operations - never engaged in business) | 100% | Debtor's Opinion | $0.00 |
| M/C Healthcare, LLC (no active operations) | 100% | Debtor's Opinion | $0.00 |
| | | Total | $120,000.00 |

**In re Alecto Healthcare Services LLC**
**Attachment No. 75 to Schedule A/B**
**[Part 11, Item 75 – Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to setoff claims]**


In <u>United States of America v. Olympia Health Care, LLC, et. al.</u>, Olympia Health Care, LLC alleges that the claims asserted by the United States of America on behalf of the Centers for Medicare and Medicaid Services (CMS) against Olympia Health Care, LLC are subject to setoff based on Olympia Health Care, LLC's claims that it has overpaid the amounts due under a settlement reached by Olympia Health Care, LLC and CMS.  The claims against Debtor are derivative of the claims against Olympia Health Care, LLC and as such, the Debtor should receive the benefit of any set off.

Contingent Value $2,000,000.00

**Fill in this information to identify the case:**

Debtor name **Alecto Healthcare Services LLC,**
    **a Delaware limited liability company**

United States Bankruptcy Court for the: District of **Delaware**

Case number (*If known*): **23-10787-JKS**

☐ Check if this is an amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with the debtor's other schedules.  Debtor has nothing else to report on this form
   ☒ Yes. Fill in all of the information below.

| Part 1: | List Creditors Who Have Secured Claims |
| --- | --- |

2. **List in alphabetical order all creditors who have secured claims.**
   **If a creditor has more than one secured claim, list the creditor separately for each claim.**

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral | Column B<br>Value of collateral that supports this claim |
| --- | --- | --- | --- |
| **2.1  Creditor's name**<br><br>**Cardinal Health 110, LLC**<br>**c/o Porter Wright Morris &**<br>**Arthur LLC**<br><br>**Creditor's mailing address**<br><br>**Attn Allen Carter Esq**<br>**41 South High Street, Suite 2900**<br>**Columbus, Ohio 43215**<br><br>**Creditor's email address, if known**<br><br>**Date debt was incurred  Various**<br><br>**Last four digits of account number** | Describe debtor's property that is subject to a lien and describe the lien<br><br>**Master Agreement with Alecto Healthcare Services LLC.  Pharmaceuticals and Supplies provided to subsidiary hospitals**<br>**UCC filed 3/12/2020, filing number 2020 1831975**<br>**Collateral: All prescription pharmaceutical products, over-the-counter pharmaceutical products, nutritional supplements, first-aid, health and beauty products, home health care products and equipment, medical and surgical supplies, medical products and inventory, general merchandise and supplies, sundries, and any other products supplied by secured party.  Note: Debtor has never received any products from the Cardinal Health 110 LLC and none of its cash is the result of proceeds from any of products** | $285,229.79 | $ |
| **Do multiple creditors have an interest in the same property?**<br>☐ No.<br>☐ Yes.  Specify each creditor, including this creditor, and its relative priority | **Is the creditor an insider or related party?**<br>☒ No.<br>☐ Yes.<br><br>**Is anyone else liable on this claim?**<br>☒ No.<br>☐ Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*<br><br>***As of the petition filing date, the claim is:***<br>Check all that apply<br>☐ Contingent.<br>☒ Unliquidated<br>☐ Disputed | | |

Debtor **Alecto Healthcare Services LLC a Delaware limited liability company**    Case number *(if known)* 23-10787-JKS

| | | Column A **Amount of claim** Do not deduct the value of collateral | Column B Value of collateral that supports this claim |
|---|---|---|---|

**2.2    Creditor's name**

**MPT of Fairmont-Alecto Hospital, LLC; MPT of Fairmont – Alecto, LLC, MPT of Wheeling – Alecto Hospital, LLC, and MPT of Martins Ferry – Alecto Hospital, LLC c/o Medical Properties Trust, Inc.**

**Creditor's mailing address**

**Attn Larry Portal, SVP Attn Legal Department 1000 Urban Center Drive, Suite 501 Birmingham, AL 35242**

**Creditor's email address, if known**

**Date debt was incurred  Various**

**Last four digits of account number**

**Do multiple creditors have an interest in the same property?**
☒No.
☐Yes.  Specify each creditor, including this creditor, and its relative priority

Describe debtor's property that is subject to a lien and describe the lien

**Contingent claim based on guarantee under Master Lease Agreement with Alecto Healthcare Services Fairmont LLC. UCC filed 9/19/2014, filing number 2014 3774312, continuation filed 3/27/2019, filing number 2019 2109119.  Note: No fees were ever paid or will be paid by Alecto Healthcare Services Fairmont LLC to Debor under the agreement and none of Debtor's cash is the result of any such fees.**

**Is the creditor an insider or related party?**
☒No.
☐Yes.

**Is anyone else liable on this claim?**
☐No.
☒Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*

*As of the petition filing date, the claim is:*
Check all that apply
☒ Contingent.
☐ Unliquidated
☐ Disputed

$      .00      $

---

**2.3    Creditor's name**

**MPT of Los Angeles LP and MPT of Olympia LLC c/o Medical Properties Trust, Inc.**

**Creditor's mailing address**

**Attn Larry Portal, SVP Attn Legal Department 1000 Urban Center Drive, Suite 501 Birmingham, AL 35242**

**Creditor's email address, if known**

**Date debt was incurred  Various**

**Last four digits of account number**

**Do multiple creditors have an interest in the same property?**
☒No.
☐Yes.  Specify each creditor, including this creditor, and its relative priority

Describe debtor's property that is subject to a lien and describe the lien

**Contingent claim based on guarantee under Master Lease Agreement with Alecto Healthcare Services Fairmont LLC. UCC filed 12/31/2013, filing number 2013 5184842, continuation filed 7/2/2018, filing number 2018 4541369.  Note: No fees were ever paid or will be paid by Olympia Health Care, LLC to Debtor under the agreement and none of Debtor's cash is the result of any such fees.**

**Is the creditor an insider or related party?**
☒No.
☐Yes.

**Is anyone else liable on this claim?**
☒No.
☐Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*

*As of the petition filing date, the claim is:*
Check all that apply
☒ Contingent.
☐ Unliquidated
☐ Disputed

$      .00      $

---

Official Form 206D              **Schedule D: Creditors Who Have Claims Secured by Property**

Debtor __Alecto Healthcare Services LLC a Delaware limited liability company__    Case number *(if known)* 23-10787-JKS

|  | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|
| **2.4   Creditor's name**<br><br>**MPT of Sherman-Alecto Hospital, LLC; MPT of Sherman – Alecto, LLC**<br>**MPT of Los Angeles LP**<br>**c/o Medical Properties Trust, Inc.**<br><br>Creditor's mailing address<br><br>**Attn Larry Portal, SVP**<br>**Attn Legal Department**<br>**1000 Urban Center Drive, Suite 501**<br>**Birmingham, AL 35242**<br><br>Creditor's email address, if known<br><br>Date debt was incurred **Various**<br><br>Last four digits of account number<br><br>Do multiple creditors have an interest in the same property?<br>☒No.<br>☐Yes. Specify each creditor, including this creditor, and its relative priority | Describe debtor's property that is subject to a lien and describe the lien<br><br>**Contingent claim based on guarantee re Sherman/Grayson Hospital, LLC obligations to MPT of Sherman-Alecto, LLC for Capital Reserve Deposits.**<br>**UCC filed 10/31/2014, filing number : 2014 4400537; continuation filed 6/10/2019, filing number 2019 3988941.  Note: No fees were ever or will be paid by by Sherman/Grayson Hospital, LLC to Debtor under the agreement and none of Debtor's cash is the result of any such fees,**<br><br>Is the creditor an insider or related party?<br>☒No.<br>☐Yes.<br><br>Is anyone else liable on this claim?<br>☐No.<br>☒Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*<br><br>*As of the petition filing date, the claim is:*<br>Check all that apply<br>☒ Contingent.<br>☐ Unliquidated<br>☐ Disputed | $427,617.00 | $ |
| **2.5   Creditor's name**<br><br>**MPT of Martins Ferry – Alecto Hospital, LLC; MPT of Wheeling – Alecto Hospital, LLC; MPT of Martins Ferry-Alecto, LLC; and MPT of Wheeling-Alecto Hospital, LLC**<br>**c/o Medical Properties Trust, Inc.**<br><br>Creditor's mailing address<br><br>**Attn Larry Portal, SVP**<br>**Attn Legal Department**<br>**1000 Urban Center Drive, Suite 501**<br>**Birmingham, AL 35242**<br><br>Creditor's email address, if known<br><br>Date debt was incurred **Various**<br><br>Last four digits of account number<br><br>Do multiple creditors have an interest in the same property?<br>☒No.<br>☐Yes. Specify each creditor, including this creditor, and its relative priority | Describe debtor's property that is subject to a lien and describe the lien<br><br>**Contingent claim based on guarantee re under Master Lease Agreement with Alecto Healthcare Services Wheeling LLC and Alecto Healthcare Services Martin's Ferry LLC**<br>**UCC filed 6/6/2017, filing number 2017 3713317 , continuation filed 4/26/2022.  Note: No fees were ever paid or will be paid by Alecto Healthcare Services Wheeling LLC, and Alecto Healthcare Services Martins Ferry LLC to Debtor under agreement and none of Debtor's cash is the result of any such fees.**<br><br>Is the creditor an insider or related party?<br>☒No.<br>☐Yes.<br><br>Is anyone else liable on this claim?<br>☐No.<br>☒Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*<br><br>*As of the petition filing date, the claim is:*<br>Check all that apply<br>☒ Contingent.<br>☐ Unliquidated<br>☐ Disputed | $     .00 | $ |

Debtor   **Alecto Healthcare Services LLC a Delaware limited liability company**      Case number *(if known)* 23-10787-JKS

---

3.   **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional**      **$712,846.79**
     **Page, if any**

**Fill in this information to identify the case:**

Debtor name **Alecto Healthcare Services LLC,**
**a Delaware limited liability company**

United States Bankruptcy Court for the: District of **Delaware**

Case number (If known): **23-10787-JKS**

☐ Check if this is an amended filing

## Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims

**12/15**

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:** | **List Creditors With PRIORITY Unsecured Claims**

1. **Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).**
   ☐ No. Go to Part 2.
   ☒ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.**

| | Total claim | Priority amount |
|---|---|---|

| **2.1 Priority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | **Notice Purposes** | $ |
|---|---|---|---|
| **California Franchise Tax Board Bankruptcy Section, MS: A-340 PO Box 2952 Sacramento, CA 95812-2952**<br><br>Date or dates debt was incurred<br><br>Last four digits of account number<br><br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a)(8) | Check all that apply<br>☐ Contingent.<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim**<br><br>**Is the claim subject to setoff?**<br>☐ No.<br>☐ Yes. | | |

| **2.2 Priority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | **Notice Purposes** | $ |
|---|---|---|---|
| **California Department of Tax and Fee Administration PO Box 942879 Sacramento, CA 94279-0001**<br><br>Date or dates debt was incurred<br><br>Last four digits of account number<br><br>Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | Check all that apply<br>☐ Contingent.<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim**<br><br>**Is the claim subject to setoff?**<br>☐ No.<br>☐ Yes. | | |

Debtor  **Alecto Healthcare Services LLC, a Delaware limited liability company**   Case number *(if known)* **23-10787-JKS**

| | Total claim | Priority amount |
|---|---|---|

| | | |
|---|---|---|
| **2.3   Priority creditor's name and mailing address** <br><br> **Employment Development Dept** <br> **Bankruptcy Group MIC 92E** <br> **PO Box 826880** <br> **Sacramento, CA 94280-0001** <br><br> **Date or dates debt was incurred** <br><br> **Last four digits of account number** <br><br> **Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a)(8)** | *As of the petition filing date, the claim is:* <br> Check all that apply <br> ☐ Contingent. <br> ☐ Unliquidated <br> ☐ Disputed <br><br> **Basis for the claim** <br><br> **Is the claim subject to setoff?** <br> ☐ No. <br> ☐ Yes. | **Notice Purposes**   $ |
| **2.4   Priority creditor's name and mailing address** <br><br> **Internal Revenue Service** <br> **PO Box 7346** <br> **Philadelphia, PA 19101-7346** <br><br> **Date or dates debt was incurred** <br><br> **Last four digits of account number** <br><br> **Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)** | *As of the petition filing date, the claim is:* <br> Check all that apply <br> ☐ Contingent. <br> ☐ Unliquidated <br> ☐ Disputed <br><br> **Basis for the claim** <br><br> **Is the claim subject to setoff?** <br> ☐ No. <br> ☐ Yes. | **Notice Purposes**   $ |
| **2.5   Priority creditor's name and mailing address** <br><br> **Los Angeles County Tax Collector** <br> **PO Box 54110** <br> **Los Angeles, CA 90054** <br><br> **Date or dates debt was incurred** <br><br> **Last four digits of account number** <br><br> **Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8)** | *As of the petition filing date, the claim is:* <br> Check all that apply <br> ☐ Contingent. <br> ☐ Unliquidated <br> ☐ Disputed <br><br> **Basis for the claim** <br><br> **Is the claim subject to setoff?** <br> ☐ No. <br> ☐ Yes. | **Notice Purposes**   $ |

Debtor  **Alecto Healthcare Services LLC, a Delaware limited liability company**     Case number (if known) **23-10787-JKS**

| **Part 2:** | **List Creditors With NONPRIORITY Unsecured Claims** |
| --- | --- |

3.   List in alphabetical order all creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority
     unsecured claims, fill out and attach the Additional Page of Part 2.

|  | Amount of claim |
| --- | --- |

| **3.1   Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | $3,399.68 |
| --- | --- | --- |
| **American Express**<br>**Attn President or Manager Agent**<br>**PO Box 0001**<br>**Los Angeles, CA 90096** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed |  |
| Date or dates debt was incurred  **5/31/2023 (bill date)** | **Basis for the claim   Expense Reimbursement -**<br>**Lex Reddy** |  |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes |  |

| **3.2   Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | $14,478.05 |
| --- | --- | --- |
| **Anthem Blue Cross**<br>**Attn President or Manager Agent**<br>**PO Box 51011**<br>**Los Angeles, CA 90051** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed |  |
| Date or dates debt was incurred  **6/2/2023** | **Basis for the claim   Employee Health Benefits** |  |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes |  |

| **3.3   Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | $70,000.00 |
| --- | --- | --- |
| **AON Risk Consultants**<br>**Attn L Joe Galusha, President**<br>**22922 Network Place**<br>**Chicago, IL 60673** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed |  |
| Date or dates debt was incurred  **11/15/18 & 12/13/18** | **Basis for the claim   Actuarial Services - 2018** |  |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes |  |

| **3.4   Nonpriority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | $ 203.30 |
| --- | --- | --- |
| **AT&T**<br>**Attn President or Manager Agent**<br>**PO Box 5014**<br>**Carol Stream, IL 60197** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed |  |
| Date or dates debt was incurred  **6/1/2023** | **Basis for the claim   Internet Services** |  |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes |  |

Debtor  **Alecto Healthcare Services LLC, a Delaware limited liability company**      Case number *(if known)* **23-10787-JKS**

| | Amount of claim |
|---|---|

| | | |
|---|---|---|
| 3.5   **Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $ 195.00 |
| **Bcal 101 North Brand Property LLC**<br>**Attn President or Manager Agent**<br>**200 State Street 5th Floor**<br>**Boston, MA 02109** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  **5/31/2023** | Basis for the claim   **Miscellaneous Building Charge** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.6   **Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $81,318.11 |
| **Cardinal Health 200, LLC**<br>**c/o Porter Wright Morris & Arthur LLC**<br>**Attn Allen Carter Esq**<br>**41 South High Street, Suite 2900**<br>**Columbus, Ohio 43215** | Check all that apply<br>☐ Contingent<br>☒ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  **Various** | Basis for the claim   **Master Agreement with Alecto Healthcare Services LLC. Pharmaceuticals and Supplies provided to subsbdiary hospitals** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.7   **Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $3,966.10 |
| **Combined Group Insurance Services**<br>**Attn President or Manager Agent**<br>**14785 Preston Road Suite 350**<br>**Dallas, TX 75254** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  **5/31/2023** | Basis for the claim   **Texas Non-Subscriber Audit** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.8   **Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $5,455.68 |
| **Evangeline Douglas**<br>**19951 Octillo Way**<br>**Apple Valley, CA 92308** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  **5/31/2023** | Basis for the claim   **Expense Reimbursement** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.9   **Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $76,137.36 |
| **First Insurance Funding**<br>**Attn President or Manager Agent**<br>**450 Skokie Boulevard Suite 1000**<br>**Northbrook, IL 60062** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  **6/1/2023** | Basis for the claim   **Insurance Premium Financing** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor **Alecto Healthcare Services LLC, a Delaware limited liability company**    Case number *(if known)* **23-10787-JKS**

| | | Amount of claim |
|---|---|---|

| | | |
|---|---|---|
| **3.10**   Nonpriority creditor's name and mailing address<br><br>**GRM Information Management Services of San Francisco LLC**<br>**Attn President or Manager Agent**<br>**41099 Boyce Road**<br>**Fremont, CA 94538**<br><br>Date or dates debt was incurred  **Various**<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   Records Storage**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | $2,149.85 |
| **3.11**   Nonpriority creditor's name and mailing address<br><br>**Horizon Real Estate Holdings, LLC**<br>**Attn President or Manager Agent**<br>**101 N. Brand Boulevard, Suite 1920**<br>**Glendale, CA 91203**<br><br>Date or dates debt was incurred<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☒ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   Affiliate/Intercompany payable**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | $23,504,535.00 |
| **3.12**   Nonpriority creditor's name and mailing address<br><br>**Konica Minolta Premier Finance**<br>**Attn President or Manager Agent**<br>**PO Box 41602**<br>**Philadelphia, PA 19101-1602**<br><br>Date or dates debt was incurred  **6/1/2023**<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   Copier**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | $ 779.66 |
| **3.13**   Nonpriority creditor's name and mailing address<br><br>**LHP Hospital Group Inc**<br>**c/o Ardent Health Services**<br>**Attn President or Manager Agent**<br>**Attn Legal Department**<br>**One Burton Hills Blvd Suite 250**<br>**Nashville, TN 37215**<br><br>Date or dates debt was incurred<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☒ Contingent<br>☒ Unliquidated<br>☒ Disputed<br><br>**Basis for the claim   Potential claims related to Debtor's guarantee of certain indemnification obligations of a subsidary and settlement agreement with creditor**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | **Unknown** |
| **3.14**   Nonpriority creditor's name and mailing address<br><br>**Los Angeles County Treasurer and Tax Collector**<br>**PO Box 54110**<br>**Los Angeles, CA 90054**<br><br>Date or dates debt was incurred<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   Notice Purposes**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | $   .00 |

Debtor  **Alecto Healthcare Services LLC, a Delaware limited liability company**       Case number (if known) 23-10787-JKS

|  | Amount of claim |
|---|---|

| | | |
|---|---|---|
| 3.15   **Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $28,213.35 |
| **Michael Sarrao** <br> **22431 Antonio Parkway, Suite B160-457** <br> **Rancho Santa Margarita, CA 92688** | Check all that apply <br> ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| Date or dates debt was incurred  **4/30/2023 (bill date)** | **Basis for the claim   Expense Reimbursement** | |
| Last four digits of account number | Is the claim subject to setoff? <br> ☒No. <br> ☐Yes | |
| 3.16   **Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $31,666.88 |
| **Moss Adams LLP** <br> **Attn President or Manager Agent** <br> **2040 Main Street Suite 900** <br> **Irvine, CA 92614** | Check all that apply <br> ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| Date or dates debt was incurred | **Basis for the claim   Tax Preparation Services** | |
| Last four digits of account number | Is the claim subject to setoff? <br> ☒No. <br> ☐Yes | |
| 3.17   **Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $ 872.57 |
| **New Horizon Communications** <br> **Attn President or Manager Agent** <br> **PO Box 981073** <br> **Boston, MA 02298-1073** | Check all that apply <br> ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| Date or dates debt was incurred  **6/1/2023** | **Basis for the claim   Internet Services** | |
| Last four digits of account number | Is the claim subject to setoff? <br> ☒No. <br> ☐Yes | |
| 3.18   **Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $37,823.00 |
| **Olshan Frome Wolosky LLP** <br> **Attn Thomas J Fleming Esq** <br> **1325 Avenue of the Americas** <br> **New York, NY 10019** | Check all that apply <br> ☐ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| Date or dates debt was incurred  **Various** | **Basis for the claim   Legal Fees - ERISA Counsel** | |
| Last four digits of account number | Is the claim subject to setoff? <br> ☒No. <br> ☐Yes | |
| 3.19   **Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $37,874,526.12 |
| **Olympia Health Care, LLC** <br> **Attn President or Manager Agent** <br> **101 N. Brand Boulevard, Suite 1920** <br> **Glendale, CA 91203** | Check all that apply <br> ☒ Contingent <br> ☐ Unliquidated <br> ☐ Disputed | |
| Date or dates debt was incurred | **Basis for the claim   Affiliate/Intercompany payable** | |
| Last four digits of account number | Is the claim subject to setoff? <br> ☒No. <br> ☐Yes | |

Debtor  **Alecto Healthcare Services LLC, a Delaware limited liability company**     Case number *(if known)* **23-10787-JKS**

| | Amount of claim |
|---|---|

| | | |
|---|---|---|
| **3.20**  Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,888.00 |
| **Panch Jeyakumar MD**<br>**2248 Pieper Lane**<br>**Tustin, CA 92792** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  **5/31/2023** | **Basis for the claim   Expense Reimbursement** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.21**  Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $3,169,745.72 |
| **Plaintiffs in Reed v. Alecto [Keith Reed, Elizabeth Schenkel, Emily Wines, Mark Garan and August Ullum and Represented Class**<br>**c/o Laura Davidson & Bren Pompomio**<br>**Mountain State Justice, Inc.**<br>**1217 Quarrier Street**<br>**Charleston, WV 25301** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   WARN Act Class Action** | |
| Date or dates debt was incurred  **11/28/2022** | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| Last four digits of account number | | |
| **3.22**  Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $8,083,572.10 |
| **Plaza Medical Office Building, LLC**<br>**Attn President or Manager Agent**<br>**101 N. Brand Boulevard, Suite 1920**<br>**Glendale, CA 91203** | Check all that apply<br>☒ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred | **Basis for the claim   Affiliate/Intercompany payable** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.23**  Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | **Unknown** |
| **Sherman/Grayson Health System, LLC**<br>**c/o Ardent Health Services**<br>**Attn President or Manager Agent**<br>**Attn Legal Department**<br>**One Burton Hills Blvd Suite 250**<br>**Nashville, TN 37215** | Check all that apply<br>☒ Contingent<br>☒ Unliquidated<br>☒ Disputed<br><br>**Basis for the claim   Potential claims related to Debtor's guarantee of certain indemnification obligations of a subsidary and settlement agreement with creditor** | |
| Date or dates debt was incurred | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| Last four digits of account number | | |

Debtor   **Alecto Healthcare Services LLC, a Delaware limited liability company**       Case number *(if known)* **23-10787-JKS**

| | | Amount of claim |
|---|---|---|
| **3.24   Nonpriority creditor's name and mailing address**<br><br>**Sylvia Ventura**<br>**4742 Ambrazzi Drive**<br>**Cypress, CA 90630**<br><br>Date or dates debt was incurred  **5/31/2023 (bill date)**<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   Expense Reimbursement**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | $2,743.62 |
| **3.25   Nonpriority creditor's name and mailing address**<br><br>**Symphony Risk Solutions LLC**<br>**Attn President or Manager Agent**<br>**2425 N Central Expressway Suite 900**<br>**Richardson, TX 75080**<br><br>Date or dates debt was incurred  **6/1/2023**<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   Insurance Premiums**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | $23,031.10 |
| **3.26   Nonpriority creditor's name and mailing address**<br><br>**United States of America**<br>**Brian M Boynton, Principal Deputy Assit Atty General**<br>**Ruth A Harvey, Director**<br>**Michale J Quinn, Senior Litigation Counsel**<br>**John R Kresse and T. Dietrich Hill, Trial Attys**<br><br>**United States Department of Justice**<br>**Civil Division, Commerical Litigation Branch**<br>**1100 L Street NW, 7th Floor**<br>**Box 875, Ben Franklin Station**<br>**Washington, DC 20044-9875**<br><br>Date or dates debt was incurred<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☒ Contingent<br>☒ Unliquidated<br>☒ Disputed<br><br>**Basis for the claim   Lawsuit:  United States of America v. Olympia Health Care, LLC, Alecto Healthcare Services, LLC et al., United States District Court for the Central District of California Case No. 2:23-cv-01783 (complaint asserts amount owed as of 2/28/2023, principal of $11,059,170.17 plus $1,421,027.62 in interest and interest continues to accrue at 10% per annum)**<br><br>**Is the claim subject to setoff?**<br>☐No.<br>☒Yes | $12,480,197.79 |

| | | |
|---|---|---|
| | **Total** | **$85,496,898.04** |

Debtor   Alecto Healthcare Services LLC, a Delaware limited liability company          Case number (if known) 23-10787-JKS

| Part 3: | List Others to Be Notified About Unsecured Claims |

4.  List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 an 2, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and mailing address | On which line in Part 1 or 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| **4.1**<br>**Timothy Cogan**<br>**Cassidy Cogan Shapell & Voeglin, LC**<br>**1413 Eoff Street**<br>**Wheeling, WV 26003** | Line **3.21**<br>**re Plaintiffs in Reed v. Alecto**<br>☐ Not listed. Explain | |
| **4.2**<br>**Maureen Davidson-Welling**<br>**Stember Cohn & Davidson-Welling**<br>**425 First Avenue, 7th Floor**<br>**Pittsburgh, PA 15219** | Line **3.21**<br>**re Plaintiffs in Reed v. Alecto**<br>☐ Not listed. Explain | |
| **4.3**<br>**F. Alex Risovich**<br>**Risovich Law Offices, PLLC**<br>**3023 Pennsylvania Avenue**<br>**Weirton, WV 26062** | Line **3.21**<br>**re Plaintiffs in Reed v. Alecto**<br>☐ Not listed. Explain | |
| **4.4**<br>**AON Risk Consultants Inc**<br>**Attn L Joe Galusha, President**<br>**200 E. Randolph St**<br>**Chicago, IL 60601** | Line **3.3**<br>**re AON Risk Consultants Inc**<br>☐ Not listed. Explain | |
| **4.5**<br>**Civil Process Clerk**<br>**United States Attorney's Office**<br>**Federal Building Room 7516**<br>**300 North Los Angeles, Street**<br>**Los Angeles, CA 90012** | Line **3.26**<br>**re United States of America**<br>☐ Not listed. Explain | |
| **4.6**<br>**Attorney General**<br>**United States Department of Justice**<br>**Ben Franklin Station**<br>**PO Box 683**<br>**Washington, DC 20044** | Line **3.26**<br>**re United States of America**<br>☐ Not listed. Explain | |
| **4.7** | Line<br>☐ Not listed. Explain | |

Official Form 206E/F                    Schedule E/F: Creditors Who Have Unsecured Claims

Debtor  Alecto Healthcare Services LLC, a Delaware limited liability company     Case number *(if known)* **23-10787-JKS**

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---|---|

**5.** **Add the amounts of priority and nonpriority unsecured claims.**

| | | | Total of claim amounts |
|---|---|---|---|
| **5a.** **Total claims from Part 1** | *5a.* | | **$0.00** |
| **5b.** **Total claims from Part 2** | *5b.* + | | **$85,496,898.04** |
| **5c.** **Total of Parts 1 and 2** Lines 5a + 5b = 5c. | *5c.* | | **$85,496,898.04** |

**Fill in this information to identify the case:**

Debtor name __Alecto Healthcare Services LLC__
__a Delaware limited liability company__

United States Bankruptcy Court for the: _____ District of __Delaware__
(State)

Case number (If known): __23-10787-JKS__   Chapter __11__

☐ Check if this is an amended filing

## Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases

12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with |
|---|---|

**2.1** State what the contract or lease is for and the nature of the debtor's interest    See Schedule G Attachment

State the term remaining

List the contract number of any government contract

**2.2** State what the contract or lease is for and the nature of the debtor's interest

State the term remaining

List the contract number of any government contract

**2.3** State what the contract or lease is for and the nature of the debtor's interest

State the term remaining

List the contract number of any government contract

**2.4** State what the contract or lease is for and the nature of the debtor's interest

State the term remaining

List the contract number of any government contract

**2.5** State what the contract or lease is for and the nature of the debtor's interest

State the term remaining

List the contract number of any government contract

**In re Alecto Healthcare Services LLC**
**Attachment to Schedule  G – Executory Contracts and Unexpired Leases**

|  | List All Contracts and Unexpired Leases | Name and Mailing Address of All Other Parties with Whom the Debtor Has an Executory Contract or Unexpired Lease |
|---|---|---|
| 2.1 | Master Agreement with Alecto Healthcare Services LLC. Pharmaceuticals and Supplies provided to subsbdiary hospitals | Cardinal Health 110, LLC<br>c/o Porter Wright Morris & Arthur LLC<br>41 South High Street, Suite 2900<br>Columbus, Ohio 43215 |
| 2.2 | Master Agreement with Alecto Healthcare Services LLC. Pharmaceuticals and Supplies provided to subsbdiary hospitals | Cardinal Health 200, LLC<br>c/o Porter Wright Morris & Arthur LLC<br>41 South High Street, Suite 2900<br>Columbus, Ohio 43215 |
| 2.3 | Commercial Insurance Premium Finance and Security Agreement (Quote No. x0380) for Policy No. x8117  - Property Insurance | Bank Direct Capital Finance<br>150 North Field Drive, Suite 190<br>Lake Forest, IL 60045 |
| 2.4 | Commercial Insurance Premium Finance and Security Agreement (Quote No. x2606) for Policy No. x1701 – Extending Reporting Professional Liability Policy | Bank Direct Capital Finance<br>150 North Field Drive, Suite 190<br>Lake Forest, IL 60045 |
| 2.5 | Commercial Insurance Premium Finance and Security Agreement (Quote No. 45720646 for Policy No. 02-462-55-24, 02-462-55-22, NHS703822 | Stetson Insurance Funding, LLC<br>6450 Transit Road<br>Depeur, NY 14043 |
| 2.6 | Medical Insurance Benefits | Anthem Blue Cross<br>PO Box 51011<br>Los Angeles, CA 90051 |
| 2.7 | Dental and Vision Insurance Benefits | Met Life<br>811 Main Street, 7th Floor<br>Kansas City, MO 64105 |
| 2.8 | Life Insurance Benefits | Unum<br>655 N. Central, Suite 900<br>Glendale, CA 91203 |

**In re Alecto Healthcare Services LLC**
**Attachment to Schedule  G – Executory Contracts and Unexpired Leases**

| | List All Contracts and Unexpired Leases | Name and Mailing Address of All Other Parties with Whom the Debtor Has an Executory Contract or Unexpired Lease |
|---|---|---|
| 2.9 | Insurance<br>Directors & Officers<br>Employment Practices<br>Fiduciary & Crime - Primary Layer<br>Term: 1/31/2023 - 1/31/2024<br>Policy No.: 02-462-55-16 | National Union Fire Insurance Co<br>28 Liberty Street<br>New York, NY 10005 |
| 2.10 | Insurance<br>Excess Directors & Officers<br>Employment Practices<br>Term: 1/31/2023 - 1/31/2024<br>Policy No. NHS 703822 | RSUI Indemnity Company<br>945 East Paces Ferry Road Suite 1800<br>Atlanta, GA 30376 |
| 2.11 | Insurance<br>Excess Directors & Officers<br>Employment Practices<br>Term: 1/31/2023 - 1/31/2024<br>Policy No. 02-462-55-24 | National Union Fire Insurance Co<br>28 Liberty Street<br>New York, NY 10005 |
| 2.12 | Insurance<br>Comprehensive Employer Indemnity<br>Term: 3/1/2023 - 3/31/2024<br>Policy No. ORNSOL000039-01 | Old Republic Union Insurance Co<br>307 N Michigan Avenue<br>Chicago, IL 60601 |
| 2.13 | Insurance<br>Workers Compensation<br>Term: 4/1/2023 - 41/2024<br>Policy No. BNUWC0153849 | StarNet Insurance Company<br>9301 Innovation Drive Suite 200<br>Manassa, VA 20110 |
| 2.14 | Insurance<br>Automobile<br>Term: 6/1/2023 - 6/1/2024<br>Policiy No. 5087-0849-02 | Vantapro Specialty Insurance Co<br>199 Water Street<br>New York, NY 10038 |

**In re Alecto Healthcare Services LLC**
**Attachment to Schedule  G – Executory Contracts and Unexpired Leases**

| | List All Contracts and Unexpired Leases | Name and Mailing Address of All Other Parties with Whom the Debtor Has an Executory Contract or Unexpired Lease |
|---|---|---|
| 2.15 | Insurance<br>"All Risks" Property incl Boiler & Machinery & Flood, excluding CA EM<br>Term: 7/1/2022 – 7/1/2023<br>Policy No. 018258117 | American Home Asssurance Co<br>175 Water Street<br>New York, NY 10038 |
| 2.16 | Insurance<br>Excess Medical Professional<br>General Liability for TX (WNJ) Exposure Only<br>Term: 8//1/2022 - 8/1/2023<br>Policy No. HUL 09114235 | Magmutual Professional Security Ins Co<br>PO Box 52979<br>Atlanta, GA 30355 |
| 2.17 | Insurance<br>Environmental Pollution<br>Storage Tank Liability - WNJ<br>Term: 8/1/2022 - 8/1/2023<br>Policy No. PSPIUSCBM76002 | Ironshore Specialty Insurance Co<br>175 Berkeley Street<br>Boston, MA 02116 |
| 2.18 | Insurance<br>Cyber Liability<br>Term: 8/1/42022 - 8/14/2023<br>Policy No. C-4LPY-047551-CYBER-2002 | Coalition Insurance Solutions<br>  Arch Specialty - 45%<br>  Fireman's Fund - 25%<br>  Ascot Specialty - 25%<br>  North Amercian Capacity - 5% |
| 2.19 | Insurance<br>3 Year Extended Reporting Period Excess Medical Professional General Liability Coverage for Non TX Exposures<br>Term: 8/1/2022 - 8/1/2025<br>Policy No. x1701 | Endurance American Specialty Ins Co<br>16052 Swingley Ridge Road Suite 130<br>St Louis, MO 63017 |
| 2.20 | Sublease dated 1/31/2023<br>Approximately 2,862 square feet of office space located at 101 N. Brand Boulevard, Suite 1920, Glendale, CA 91203 | Pacific Global Investment Management Group<br>Attn: SVP<br>101 N. Brand Blvd., Suite 1950<br>Glendale, CA 91203 |

**In re Alecto Healthcare Services LLC**
**Attachment to Schedule  G – Executory Contracts and Unexpired Leases**

| | List All Contracts and Unexpired Leases | Name and Mailing Address of All Other Parties with Whom the Debtor Has an Executory Contract or Unexpired Lease |
|---|---|---|
| 2.21 | Prime Vendor Agreement - Distribution Agreement for Pharmaceuticals dated 6/1/2016<br>First Amendment dated 12/5/2016<br>Second Amendment dated 3/7/2017<br>Third Amendment dated 6/20/2017 | Cardinal Health 110, LLC and Cardinal Health, Inc.<br>c/o Porter Wright Morris & Arthur LLC<br>41 South High Street, Suite 2900<br>Columbus, Ohio 43215 |
| 2.22 | Guaranty dated 10/31/2014<br>Guarantee re Sherman/Grayson Hospital, LLC obligations to MPT of Sherman-Alecto, LLC for Capital Reserve Deposits | MPT of Sherman-Alecto Hospital, LLC<br>Attn Larry Portal, SVP<br>Attn Legal Department<br>1000 Urban Center Drive, Suite 501<br>Birmingham, AL 35242 |
| 2.23 | Guaranty dated 9/19/2014<br>Guarantee re past due rent under Master Lease Agreement with Alecto Healthcare Services Fairmont LLC | MPT of Fairmont-Alecto Hospital, LLC<br>Attn Larry Portal, SVP<br>Attn Legal Department<br>1000 Urban Center Drive, Suite 501<br>Birmingham, AL 35242 |
| 2.24 | Guaranty dated 6/1/2017<br>Guarantee re past due rent under Master Lease Agreement with Alecto Healthcare Services Wheeling LLC and Alecto Healthcare Services Martin's Ferry LLC | MPT of Wheeling-Alecto Hospital, LLC  MPT of Martins Ferry-Alecto Hospital, LLC<br>Attn Larry Portal, SVP<br>Attn Legal Department<br>1000 Urban Center Drive, Suite 501<br>Birmingham, AL 35242 |
| 2.25 | Guaranty dated 9/23/2014 | Sherman/Grayson Health System, LLC<br>LHP Hospital Group, Inc.<br>c/o Ardent Health Services<br>Attn Legal Department<br>One Burton Hills Boulevard Suite 250<br>Nashville, TN 37215 |

**In re Alecto Healthcare Services LLC**
**Attachment to Schedule  G – Executory Contracts and Unexpired Leases**

|  | List All Contracts and Unexpired Leases | Name and Mailing Address of All Other Parties with Whom the Debtor Has an Executory Contract or Unexpired Lease |
|---|---|---|
| 2.26 | Record Storage and Data Agreement dated 2/1/2023 | GRM Information Management of San Francisco, LLC<br>40199 Boyce Road<br>Fremont, CA 94538 |
|  |  |  |

**Fill in this information to identify the case:**

Debtor name  Alecto Healthcare Services LLC
_a Delaware limited liability company_

United States Bankruptcy Court for the: _____  District of  Delaware
(State)

Case number (If known):  23-10787-JKS

☐ Check if this is an amended filing

## Official Form 206H

## Schedule H: Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Does the debtor have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, _Schedules D-G_.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: Codebtor | | Column 2: Creditor | |
|---|---|---|---|
| **Name** | **Mailing address** | **Name** | Check all schedules that apply: |
| See Schedule H Attachment | | | |
| 2.1 _____ | Street _____ <br> _____ <br> City     State     ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |
| 2.2 _____ | Street _____ <br> _____ <br> City     State     ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |
| 2.3 _____ | Street _____ <br> _____ <br> City     State     ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |
| 2.4 _____ | Street _____ <br> _____ <br> City     State     ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |
| 2.5 _____ | Street _____ <br> _____ <br> City     State     ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |
| 2.6 _____ | Street _____ <br> _____ <br> City     State     ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |

**In re Alecto Healthcare Services LLC**
**Attachment to Schedule  H - Co-Debtors**

| Co-Debtor Name and Address | Creditor |
|---|---|
| Alecto Healthcare Services Wheeling LLC dba Ohio Valley Medical Group OVMC Physicians 101 N Brand Boulevard Suite 1920 Glendale, CA 91203 | Plaintiffs in Reed v. Alecto<br><br>Schedules that apply:<br>Schedule D ☐<br>Schedule E/F ☒<br>Schedule G ☐ |
| Sherman/Grayson Hospital LLC 500 N Highland Ave Sherman, TX 75092 | MPT of Sherman-Alecto Hospital, LLC c/o Medical Properties Trust, Inc.<br><br>Schedules that apply:<br>Schedule D ☒<br>Schedule E/F ☐<br>Schedule G ☐ |
| Alecto Healthcare Services Wheeling LLC 101 N Brand Boulevard Suite 1920 Glendale, CA 91203 | MPT of Wheeling-Alecto Hospital, LLC c/o Medical Properties Trust, Inc.<br><br>Schedules that apply:<br>Schedule D ☒<br>Schedule E/F ☐<br>Schedule G ☐ |
| Alecto Healthcare Services Martin's Ferry LLC 101 N Brand Boulevard Suite 1920 Glendale, CA 91203 | MPT of Wheeling-Alecto Hospital, LLC c/o Medical Properties Trust, Inc.<br><br>Schedules that apply:<br>Schedule D ☒<br>Schedule E/F ☐<br>Schedule G ☐ |

**In re Alecto Healthcare Services LLC**
**Attachment to Schedule  H - Co-Debtors**

| Co-Debtor Name and Address | Creditor |
|---|---|
| Alecto Healthcare Services Fairmont LLC<br>101 N Brand Boulevard Suite 1920<br>Glendale, CA 91203 | MPT of Fairmont-Alecto Hospital, LLC<br>c/o Medical Properties Trust, Inc.<br><br>Schedules that apply:<br>　Schedule D　☒<br>　Schedule E/F　☐<br>　Schedule G　☐ |
| Olympia Health Care, LLC<br>Attn President or Manager Agent<br>101 N. Brand Boulevard Suite 1920<br>Glendale, CA 91203 | United States of America<br><br>Schedules that apply:<br>　Schedule D　☐<br>　Schedule E/F　☒<br>　Schedule G　☐ |
| MPT of Los Angeles, LP<br>c/o Medical Properties Trust, Inc.<br>Attn Larry Portal, SVP<br>Attn Legal Department<br>1000 Urban Center Drive, Suite 501<br>Birmingham, AL 35242 | United States of America<br><br>Schedules that apply:<br>　Schedule D　☐<br>　Schedule E/F　☒<br>　Schedule G　☐ |
| MPT of Olympia, LLC<br>c/o Medical Properties Trust, Inc.<br>Attn Larry Portal, SVP<br>Attn Legal Department<br>1000 Urban Center Drive, Suite 501<br>Birmingham, AL 35242 | United States of America<br><br>Schedules that apply:<br>　Schedule D　☐<br>　Schedule E/F　☒<br>　Schedule G　☐ |

**In re Alecto Healthcare Services LLC**
**Attachment to Schedule  H - Co-Debtors**

| Co-Debtor Name and Address | Creditor |
|---|---|
| MPT Operating Partnership, L.P.<br>c/o Medical Properties Trust, Inc.<br>Attn Larry Portal, SVP<br>Attn Legal Department<br>1000 Urban Center Drive, Suite 501<br>Birmingham, AL 35242 | United States of America<br><br>Schedules that apply:<br>　Schedule D　☐<br>　Schedule E/F　☒<br>　Schedule G　☐ |
| Medical Properties Trust, Inc.<br>c/o Medical Properties Trust, Inc.<br>Attn Larry Portal, SVP<br>Attn Legal Department<br>1000 Urban Center Drive, Suite 501<br>Birmingham, AL 35242 | United States of America<br><br>Schedules that apply:<br>　Schedule D　☐<br>　Schedule E/F　☒<br>　Schedule G　☐ |
| Sherman/Grayson Hospital LLC<br>500 N Highland Ave<br>Sherman, TX 75092 | United States of America<br><br>Schedules that apply:<br>　Schedule D　☐<br>　Schedule E/F　☒<br>　Schedule G　☐ |
| Alecto Healthcare Services Sherman LLC<br>101 N Brand Blvd Suite 1920<br>Glendale, CA 91203 | United States of America<br><br>Schedules that apply:<br>　Schedule D　☐<br>　Schedule E/F　☒<br>　Schedule G　☐ |
| Laxman Reddy<br>c/o 101 N. Brand Boulevard Suite 1920<br>Glendale, CA 91203 | United States of America<br><br>Schedules that apply:<br>　Schedule D　☐<br>　Schedule E/F　☒<br>　Schedule G　☐ |

**In re Alecto Healthcare Services LLC**
**Attachment to Schedule  H - Co-Debtors**

| Co-Debtor Name and Address | Creditor |
|---|---|
| Matthew Williams<br>c/o 101 N. Brand Boulevard Suite 1920<br>Glendale, CA 91203 | United States of America<br><br>Schedules that apply:<br>    Schedule D    ☐<br>    Schedule E/F    ☒<br>    Schedule G    ☐ |
| Jeremy Redin<br>28372 Steel Lane<br>Valencia, CA 91354 | United States of America<br><br>Schedules that apply:<br>    Schedule D    ☐<br>    Schedule E/F    ☒<br>    Schedule G    ☐ |
| Sherman/Grayson Hospital LLC<br>500 N. Highland Avenue<br>Sherman, Texas 75092 | LHP Hosptial Group, Inc.<br>c/o Ardent Health Services<br><br>Schedules that apply:<br>    Schedule D    ☐<br>    Schedule E/F    ☒<br>    Schedule G    ☐ |
| Sherman/Grayson Hospital LLC<br>500 N. Highland Avenue<br>Sherman, Texas 75092 | Sherman/Grayson Health Systems LLC<br>c/o Ardent Health Services<br><br>Schedules that apply:<br>    Schedule D    ☐<br>    Schedule E/F    ☒<br>    Schedule G    ☐ |

**In re Alecto Healthcare Services LLC**
**Attachment to Schedule  H - Co-Debtors**

| Co-Debtor Name and Address | Creditor |
|---|---|
| Alecto Healthcare Services Sherman LLC<br>c/o 101 N. Brand Boulevard Suite 1920<br>Glendale, California 91203 | LHP Hosptial Group, Inc.<br>c/o Ardent Health Services<br><br>Schedules that apply:<br>    Schedule D      ☐<br>    Schedule E/F    ☒<br>    Schedule G      ☐ |
| Alecto Healthcare Services Sherman LLC<br>c/o 101 N. Brand Boulevard Suite 1920<br>Glendale, California 91203 | Sherman/Grayson Health Systems LLC<br>c/o Ardent Health Services<br><br>Schedules that apply:<br>    Schedule D      ☐<br>    Schedule E/F    ☒<br>    Schedule G      ☐ |

# Claims Activity Report

## U.S. Bankruptcy Court -- District of Delaware

## Report Period: 6/16/2023 - 12/19/2023

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $6115.93 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | Priority claimed: $5605.05 | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **1** | | Filed by: Creditor |
| Filed: 07/07/2023 | | Entered by: BJM |
| Entered: 07/07/2023 | | Status: Withdraw **187** |
| Amends No: | | Last date to file claims: 08/15/2023 |
| | | Last date to file (Govt): 12/13/2023 |

Creditor name/address: Uline, 12575 Uline Dive, Pleasant Prairie, WI 53158

Description: Goods Sold
Remarks: 3060

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $0.00 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **2** | | Filed by: Creditor |
| Filed: 07/19/2023 | | Entered by: EPOC Filer |
| Entered: 07/19/2023 | | Status: |
| Amends No: | | Last date to file claims: 08/15/2023 |
| | | Last date to file (Govt): 12/13/2023 |

Creditor name/address: Ironshore Specialty Insurance Company, 175 Berkeley Street, Boston, MA 02116
Remarks: Account Number (last 4 digits):3301 Filer Comment: Contingent and unliquidated

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $160551.00 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | Priority claimed: $160551.00 | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **3** | | Filed by: Creditor |
| Filed: 07/21/2023 | | Entered by: BJM |
| Entered: 07/21/2023 | | Status: |
| Amends No: | | Last date to file claims: 08/15/2023 |
| | | Last date to file (Govt): 12/13/2023 |

Creditor name/address: Department of the Treasury, Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $419842.62 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **4** | | Filed by: Creditor |
| **Attachment 1** | | Entered by: EPOC Filer |
| Filed: 07/27/2023 | | Status: |
| Entered: 07/27/2023 | | Last date to file claims: 08/15/2023 |
| Amends No: | | Last date to file (Govt): 12/13/2023 |

Creditor name/address: Cardinal Health 110, LLC, 7000 Cardinal Place, Dublin, OH 43017

Case: 23-10787-JKS
Title: Alecto Healthcare Services LLC
Office: 1
Claim No: **5**
**Attachment 1**
Filed: 07/27/2023
Entered: 07/27/2023
Amends No:

Amount claimed: $119695.80

Chapter: 11
Judge: Stickles
Trustee: Nimeroff
Filed by: Creditor
Entered by: EPOC Filer
Status:
Last date to file claims: 08/15/2023
Last date to file (Govt): 12/13/2023

Creditor name/address: Cardinal Health 200, LLC, 7000 Cardinal Place, Dublin, OH 43017

---

Case: 23-10787-JKS
Title: Alecto Healthcare Services LLC
Office: 1
Claim No: **6**
Filed: 08/01/2023
Entered: 08/01/2023
Amends No:

No amounts claimed

Chapter: 11
Judge: Stickles
Trustee: Nimeroff
Filed by: Creditor
Entered by: BJM
Status:
Last date to file claims: 08/15/2023
Last date to file (Govt): 12/13/2023

Creditor name/address: U.S. Department of Labor, Julie A. Su, U.S. Secretary of Labor, EBSA - Attn: Padilla, 35 N. Lake Ave., Suite 300, Pasadena, CA 91101
Description: No Claim Amount Listed
Remarks: Possible Violations of ERISA/8324

---

Case: 23-10787-JKS
Title: Alecto Healthcare Services LLC
Office: 1
Claim No: **7**
Filed: 08/01/2023
Entered: 08/01/2023
Amends No:

No amounts claimed

Chapter: 11
Judge: Stickles
Trustee: Nimeroff
Filed by: Creditor
Entered by: BJM
Status:
Last date to file claims: 08/15/2023
Last date to file (Govt): 12/13/2023

Creditor name/address: U.S. Department of Labor, Julie A. Su, U.S. Secretary of Labor, EBSA - Attn: Padilla, 35 N. Lake Ave., Suite 300, Pasadena, CA 91101
Description: No Claim Amount Listed
Remarks: Possible Violations of ERISA/8325

---

Case: 23-10787-JKS
Title: Alecto Healthcare Services LLC
Office: 1
Claim No: **8**
**Attachment 1**
Filed: 08/01/2023
Entered: 08/01/2023
Amends No:

Amount claimed: $700.00
Priority claimed: $700.00

Chapter: 11
Judge: Stickles
Trustee: Nimeroff
Filed by: Creditor
Entered by: EPOC Filer
Status:
Last date to file claims: 08/15/2023
Last date to file (Govt): 12/13/2023

Creditor name/address: California Franchise Tax Board, Bankruptcy Section MS A-340, PO Box 2952, Sacramento, CA 95812-2952
Remarks: Account Number (last 4 digits):0349

---

Case: 23-10787-JKS
Title: Alecto Healthcare Services LLC
Office: 1
Claim No: **9**

No amounts claimed

Chapter: 11
Judge: Stickles
Trustee: Nimeroff
Filed by: Creditor

**Attachment 1**
**Attachment 2**
**Attachment 3**
Filed: 08/12/2023
Entered: 08/12/2023
Amends No:

Entered by: EPOC Filer
Status:
Last date to file claims: 08/15/2023
Last date to file (Govt): 12/13/2023

Creditor name/address: MPT of Sherman-Alecto, LLC and affiliates, Medical Properties Trust, Inc., 425 Park Avenue, 36th Floor, New York, NY 10022

Remarks: Filer Comment: Unliquidated (see attachment)

---

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $7313.70 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **10** | | Filed by: Creditor |
| **Attachment 1** | | Entered by: EPOC Filer |
| **Attachment 2** | | Status: |
| Filed: 08/14/2023 | | Last date to file claims: 08/15/2023 |
| Entered: 08/14/2023 | | Last date to file (Govt): 12/13/2023 |
| Amends No: | | |

Creditor name/address: De Lage Landen Financial Services, 1111 Old eagle School Road, Wayne, PA 19087

Remarks: Account Number (last 4 digits):8050

---

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $1065047.00 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **11** | | Filed by: Creditor |
| **Statement In Support** | | Entered by: S. Thomas |
| Filed: 08/14/2023 | | Status: |
| Entered: 08/14/2023 | | Last date to file claims: 08/15/2023 |
| Amends No: | | Last date to file (Govt): 12/13/2023 |

Creditor name/address: Pension Benefit Guaranty Corporation

Description: Statutory Liability to the Alecto Healthcare Services Ohio Valley LLC Pension Pension Plan for unpaid minimum funding contributions under 26 U.S.C. §§ 412 and 430, 29 U.S.C. §§ 1082, 1342 and 1362(c). See attached statement.

---

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $1845012.00 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **12** | | Filed by: Creditor |
| **Statement in Support** | | Entered by: S. Thomas |
| Filed: 08/14/2023 | | Status: |
| Entered: 08/14/2023 | | Last date to file claims: 08/15/2023 |
| Amends No: | | Last date to file (Govt): 12/13/2023 |

Creditor name/address: Pension Benefit Guaranty Corporation

Description: Statutory Liability under 29 U.S.C. § 1362 and 1368 for unfunded benefit liabilities of the Alecto Healthcare Services Ohio Valley LLC Pension Pension Plan. See attached statement.

---

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $0.00 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | Priority claimed: $0.00 | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **13** | | Filed by: Creditor |
| **Statement in Support** | | Entered by: S. Thomas |
| Filed: 08/14/2023 | | Status: |
| Entered: 08/14/2023 | | Last date to file claims: 08/15/2023 |
| Amends No: | | |

Creditor name/address: Pension Benefit Guaranty Corporation

Description: Statutory Liability under 29 U.S.C. § 1307 on account of the Alecto Healthcare Services Ohio Valley LLC Pension Plan. See attached statement.

Remarks: Unliquidated priority and total amounts claimed

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $173848.49 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **14** | | Filed by: Creditor |
| Filed: 08/14/2023 | | Entered by: R.W. Riley |
| Entered: 08/14/2023 | | Status: |
| Amends No: | | Last date to file claims: 08/15/2023 |
| | | Last date to file (Govt): 12/13/2023 |

Creditor name/address: Snyder Brothers, Inc., c/o Ronald W. Crouch, Counsel of Record, Whiteford Taylor & Preston, LLP, 11 Stanwix St., Suite 1400, Pittsburgh, PA 15222

Description: Judgment entered against subsidiary for goods sold (Neutural Gas)

Remarks: Fraudulent Transfer/Alter Ego - See Attached Consent Judgment and Statement

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $3739635.77 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **15** | | Filed by: Creditor |
| **Summary of Claim and Supporting Documentation** | | Entered by: E.J Taube |
| Filed: 08/14/2023 | | Status: |
| Entered: 08/14/2023 | | Last date to file claims: 08/15/2023 |
| Amends No: | | Last date to file (Govt): 12/13/2023 |

Creditor name/address: LHP Hospital Group, Inc., c/o Saul Ewing, LLP, Attn: Mark Minuti, 1201 N. Market St., Suite 2300, Wilmington, DE 19801

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $5107726.81 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **15** | | Filed by: Creditor |
| **Attachment 1** | | Entered by: EPOC Filer |
| Filed: 12/15/2023 | | Status: |
| Entered: 12/15/2023 | | Last date to file claims: 08/15/2023 |
| Amends No: 15 | | Last date to file (Govt): 12/13/2023 |

Creditor name/address: LHP Hospital Group, Inc., c/o Saul Ewing, LLP, Attn: Mark Minuti, 1201 N. Market St., Suite 2300, Wilmington, DE 19801

| | | |
|---|---|---|
| Case: 23-10787-JKS | Amount claimed: $0.00 | Chapter: 11 |
| Title: Alecto Healthcare Services LLC | | Judge: Stickles |
| Office: 1 | | Trustee: Nimeroff |
| Claim No: **16** | | Filed by: Creditor |
| **POC Attachment** | | Entered by: D. Burgagni |
| **Policy List** | | Status: |
| Filed: 08/15/2023 | | Last date to file claims: 08/15/2023 |
| Entered: 08/15/2023 | | Last date to file (Govt): 12/13/2023 |
| Amends No: | | |

Creditor name/address: AIG Property Casualty, Inc., Kevin J. Larner, Esq., Authorized Representative, 28 Liberty Street, Floor 22, New York, NY 10005

Description: Unliquidated

Case: 23-10787-JKS
Title: Alecto Healthcare Services LLC
Office: 1
Claim No: **17**
**Attachment 1**
Filed: 08/15/2023
Entered: 08/15/2023
Amends No:

Amount claimed: $93110.57

Chapter: 11
Judge: Stickles
Trustee: Nimeroff
Filed by: Creditor
Entered by: EPOC Filer
Status:
Last date to file claims: 08/15/2023
Last date to file (Govt): 12/13/2023

Creditor name/address: Health Carousel Travel Network, LLC, 455 Delta Avenue, Suite 108, Cincinnati, OH 45226

Case: 23-10787-JKS
Title: Alecto Healthcare Services LLC
Office: 1
Claim No: **18**
Filed: 08/15/2023
Entered: 08/15/2023
Amends No:

Amount claimed: $245307.00

Chapter: 11
Judge: Stickles
Trustee: Nimeroff
Filed by: Creditor
Entered by: EPOC Filer
Status:
Last date to file claims: 08/15/2023
Last date to file (Govt): 12/13/2023

Creditor name/address: Alecto Health Care Services Ohio Valley LLC, HP, Kamaljit Bains, EBSA Investigator, 1835 Market Street, 21st Floor-Mailstop EBSA/21, Philadelphia, PA 19103

Case: 23-10787-JKS
Title: Alecto Healthcare Services LLC
Office: 1
Claim No: **18**
**Attachment 1**
Filed: 08/23/2023
Entered: 08/23/2023
Amends No: 18

Amount claimed: $245307.00

Chapter: 11
Judge: Stickles
Trustee: Nimeroff
Filed by: Creditor
Entered by: EPOC Filer
Status:
Last date to file claims: 08/15/2023
Last date to file (Govt): 12/13/2023

Creditor name/address: Alecto Health Care Services Ohio Valley LLC, HP, Kamaljit Bains, EBSA Investigator, 1835 Market Street, 21st Floor-Mailstop EBSA/21, Philadelphia, PA 19103

Case: 23-10787-JKS
Title: Alecto Healthcare Services LLC
Office: 1
Claim No: **19**
**Attachment 1**
Filed: 08/15/2023
Entered: 08/15/2023
Amends No:

Amount claimed: $3275382.64

Chapter: 11
Judge: Stickles
Trustee: Nimeroff
Filed by: Creditor
Entered by: EPOC Filer
Status:
Last date to file claims: 08/15/2023
Last date to file (Govt): 12/13/2023

Creditor name/address: Reed Action Judgment Creditors, Bren J. Pomponio, 1217 Quarrier Street, Charleston, WV 25301
Remarks: Filer Comment: See addendum

Case: 23-10787-JKS
Title: Alecto Healthcare Services LLC
Office: 1
Claim No: **20**
**Attachment 1**
Filed: 08/15/2023

Amount claimed: $53157.76

Chapter: 11
Judge: Stickles
Trustee: Nimeroff
Filed by: Creditor
Entered by: EPOC Filer
Status:

Entered: 08/15/2023
Amends No:

Last date to file claims: 08/15/2023
Last date to file (Govt): 12/13/2023

Creditor name/address: Michael Best & Friedrich LLP, c/o Justin M. Mertz, 790 N. Water St., Ste. 2500, Milwaukee, WI 53202
Remarks: Account Number (last 4 digits):0995

Case: 23-10787-JKS
Title: Alecto Healthcare Services LLC
Office: 1
Claim No: **21**
**Exhibit Exhibit A**
**Exhibit Exhibit B**
**Exhibit Exhibit C**
Filed: 12/13/2023
Entered: 12/13/2023
Amends No:

Amount claimed: $29126600.90

Chapter: 11
Judge: Stickles
Trustee: Nimeroff
Filed by: Creditor
Entered by: L.Victoria Lerman
Status:
Last date to file claims: 08/15/2023
Last date to file (Govt): 12/13/2023

Creditor name/address: Centers for Medicare & Medicaid Services, U.S. Dep, 7500 Security Blvd., Baltimore, MD 21244

|  |  |
|---|---|
| **Claim entries selected: 23** | |
| Selection Criteria | |
| **Run date and time:** | Tue Dec 19 18:36:53 2023 |
| **By:** | Jeffrey R. Waxman |
| **Chapter:** | All |
| **Office:** | All |
| **Creditor name:** | All |
| **Case:** | 1:23-bk-10787 |
| **Trustee:** | All |
| **Sort key1:** | Case Number |
| **Sort key2:** | Claim Number |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 12/19/2023 18:36:53 | | | |
| **PACER Login:** | jwaxmanpacerng | **Client Code:** | 142408.0001 |
| **Description:** | Claims Activity Report | **Search Criteria:** | 23-10787-JKS Office: All Ch: All Creditor: All From: 6/16/2023 To: 12/19/2023 |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

## **EXHIBIT G**

Liquidation Analysis

**Alecto Healthcare**
**LIQUIDATION**
**ANALYSIS**
**as of October 4, 2023**

| | CHAPTER 11 | CHAPTER 7 |
|---|---|---|
| Cash and Accounts Receivable [1] | | $ 170,000 |
| Year 1 disposable income [2] | ~~$242,214.00~~ $ 339,163.00 | $ - |
| Year 2 disposable income [2] | ~~$228,937.00~~ $ 533,763.00 | $ - |
| Year 3 disposable income [2] | ~~$164,398.00~~ $ 489,332.00 | $ - |
| Other assets [3] | | |
| Distributions from subsidiaries [4] | $ 187,500.00 | $ 187,500.00 |
| Furniture and Equipment [5] | $ - | $29,838.36 |
| Vehicles [6] | | ~~$21,000.00~~ |
| Causes of Action [7] | $ 25,000 | $ - |
| **Total Assets** | ~~$848,049~~ $ 1,574,758 | $ 408,338 |
| | | |
| Postconfirmation attorneys fees [8] | ~~$40,000.00~~ $ 150,000.00 | |
| Chapter 7 Trustee Fee [9] | | $16,000.00 |
| Chapter 7 Trustee Counsel [10] | | $75,000.00 |
| **Total Fees** | ~~$40,000~~ $ 150,000 | $ 91,000 |
| | | |
| **Available for Payment of Claims** | ~~$808,049~~ $ 1,424,758 | $ 317,338 |

NOTES

(1) - The Debtor estimates that as of the Effective Date, the estate will have $170,000 of cash and accounts receivable. Note that the amounts depends upon the timing of payments made/received, and is the estimate is premised upon an Effective Date of December 7, 2023. Note that this amount is not available for distribution to creditors under the Chapter 11 Plan as these amounts are necessary for payment of incurred and ongoing expenses (and which would otherwise be administrative expenses)  and

16309830/1

are already included in the calculus of disposable income in Year 1.

(2) - See Projected Income and Expenses attached as Exhibit C to Plan.  In the event of liquidation, the Debtor's estate  would not receive any income received from the Debtor's subsdiary, Alecto Healthcare Services Hayward LLC, on account of services provided to St. Rose Hospital.

(3) - This is intended to include all other assets of the Debtor available for distribution to creditors.

(4) - This includes distributions expected to be received from the estate of Sherman/Grayson Hospital, LLC on account of the Debtor's claim,  which may be the subject of a compromise.   As more fully set forth in the Plan, the Debtor does not believe,  based upon the assets and liabilities of other direct and indirect subsidiaries of the Debtor, that there will be any value to be received by the Debtor on account of its interests in those entities.

(5) - See Schedule A.39 and A.41.

(6) - See Schedule A.47.

(7) - See the report attached as Exhibit D to the Plan. As more fully set forth therein, as determined by the Independent Director, the insiders have no liability for avoidable transfers.  Notwithstanding the foregoing, the insiders have agreed to provide the estate  with $25,000 for the benefit of creditors in order to get releases from the estate. The insiders have not agreed to remit any payment to the estate in the event that the case converts to Chapter 7.

(8) - The Debtor ~~does not believe that there will be signficant~~ anticipates that after confirmation, the estate will continue to incurr signfiicant fees in connection with the Reed Creditors' appeal(s).  Further, there may be other matters left to address after confirmation, although the Debtor may object to certain claims,  and other matters necessary to administer the estate prior to closing the bankruptcy case.

(9) - See 11 U.S.C. S 326.

(10) - The primarily differences between the professional fees of the reorganized debtors and those of a Chapter 7 trustee include the following: (i) the need for the Chapter 7 Trustee and its counsel to become familiar with the underlying facts of the case, (ii) the need to prepare for and attend a 341 meeting, (iii) the preparation and filing of retention  application(s) for the Chapter 7 Trustee's professionals, and (iv) other costs which would not be necessary for a confirmed Chapter 11 case.