# EXHIBIT 1 - Part 1

## Expert Report

# McCutcheon LLC

February 18, 2024

Mr. Jeff Waxman
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801-1494

Privileged and Confidential

I have been retained by Morris James LLP to provide an expert opinion on the level of compensation for Laxman Reddy as chief executive officer of Hayward Sisters Hospital d/b/a St. Rose Hospital ("St. Rose"). Specifically, I have been asked to assess the reasonableness of the annual compensation provided by Alecto Healthcare Services ("Alecto") for his services as CEO for St. Rose. My opinions in this report are based on the materials I have reviewed, the research I have conducted, and my education, knowledge, training, and experience in compensation and related issues.

Qualifications

I received a bachelor's degree in business from Michigan State University in 1979, and a master's degree from the same institution in Labor and Industrial Relations in 1981. For the majority of my 41-year career I have been involved in the design and administration of compensation arrangements. I have been responsible for determining competitive pay levels for four different Fortune 500 companies (Hughes Aircraft/Raytheon, Coca-Cola Enterprises, Macy's, Barnett Banks/Bank of America and CSX Corporation.) In 2004 I founded McCutcheon, LLC, a boutique consulting firm providing executive compensation consulting services. In 2007 I co-founded Board Advisory, LLC, a boutique firm focused solely on executive compensation consulting services. I am currently a managing director of Board Advisory, Inc. A curriculum vitae is attached as an appendix to this document.

Since 2004 the bulk of my income has been derived from consulting with boards of directors on executive pay and succession issues, including the determination of appropriate pay levels for chief executive officers and other executive officers. Over that period of time I have conducted well over 300 studies of executive pay levels specific to client organizations. My clients include public, private mutual and non-profit organizations, ranging in size from several hundred to well over a hundred thousand employees, in a wide range of industries.

I have provided expert reports and related services on an occasional basis for the past twenty years. Expert witness-related revenue is generally less than 5% of my annual earnings.

Background on Reddy

Laxman Reddy has over 35 years of senior executive experience in hospital management and 25 years of experience as a CEO. He has served as the CEO of Alecto since 2012 and from 2012-2016 and again from 2022-2024 served as the CEO of St. Rose. He has prior CEO experience at Prime Healthcare Services.

Reddy has a bachelor of commerce degree with honors from Osmania University, a bachelor's degree in business administration from California Baptist University, and a master's degree in business administration from California State University, San Bernardino and a master's degree in healthcare administration from California State University, San Bernardino.

It is my opinion Reddy has the education, experience and prior success in the role of CEO of a hospital or other healthcare services provider to establish that he is fully qualified to serve as CEO of St. Rose.

jeff@mccutcheon-llc.com 202-713-9022 904-306-0907

Reddy Compensation Arrangement

Reddy is not directly employed by St. Rose. Alecto provides his services to St. Rose under a management services agreement (MSA) approved by St. Rose's board of directors and with the consent of the California Attorney General. I understand Mr. Reddy's primary role is to serve as the CEO of St. Rose and its affiliates and that he spends at least 40 hours per week performing those functions. Further, that St. Rose has a lean management team and Mr. Reddy supports various department managers with the operations of their departments, he addresses daily operational issues at the hospital, and raises funds to support the hospital operations.

The St. Rose MSA and outsourced CEO structure is not unique. Private equity funds will frequently place executives, including CEOs, in a portfolio company under a services agreement while retaining them on the private equity firm's payroll. Distressed companies may also find the MSA to be an advantageous approach to retaining a CEO. The role of the CEO does not change because of the MSA. In fact, there should be no difference in the role of the CEO whether they are a direct employee or employed through an MSA. All available information indicates Reddy reports to a board of directors and is responsible for all facets of leadership of the company typically entrusted to the chief executive.

Reddy is paid $750,000 per year. The pay level has been consistently maintained for the past 8 years, as presented below in Exhibit 1 (Payroll Register Total). For purposes of comparison to not-for-profit peer CEOs reporting compensation on an IRS Form 990, had St. Rose employed him directly Reddy's compensation would be reported on Part VII, Section A as $727,500 in W2 income (column D or E on Form 990), and $22,500 in "other income" representing pre-tax contributions to a company-sponsored retirement plan (Code D, W2 History, below). The two figures together on the 990 would equal the intended annual compensation of $750,000.

Exhibit 1: Laxman Reddy
W-2 Pay Reporting History and Payroll History

| | W2 History, by Box/Code | | | Payroll Register |
|---|---|---|---|---|
| Year | Box1 | Box 5[1] | Code D | Total[2] |
| 2023 | $720,166 | $742,666 | $22,500 | $750,000 |
| 2022 | $722,502 | $743,002 | $20,500 | $750,000 |
| 2021 | $753,001 | $772,501 | $19,500 | $778,846 |
| 2020 | $730,500 | $750,000 | $19,500 | $750,000 |
| 2019 | $731,000 | $750,000 | $19,000 | $750,000 |
| 2018 | $731,500 | $750,000 | $18,500 | $750,000 |
| 2017 | $732,000 | $750,000 | $18,000 | $750,000 |
| 2016 | $732,000 | $750,000 | $18,000 | $750,000 |
| 2015 | $712,000 | $730,000 | $18,000 | $730,000 |

[1] Note that the W2 will typically vary from the payroll register in the sense that non-cash benefits may constitute imputed income. For example, employee life insurance is not considered a taxable benefit except to the extent the death benefit exceeds $50,000.

[2] Reddy compensation has been unchanged since 2016. On an inflation-adjusted basis his pay decreased since 2016 from $750,000 to $576,126 (-30.2%). Source: Bureau of Labor Statistics, https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexhistorical_us_table.htm.

Note that Reddy's pay is established on a pay-period basis with an assumed 26 pay periods per year. In 2021 there were 27 pay periods rather than 26 pay periods, resulting in a higher W2 income.

Methodology

CEO compensation is scrutinized by investors, proxy advisors, employees, customers and government functions. The Securities and Exchange Commission has established substantial disclosure rules for public companies, highlighting this scrutiny. As a result, to demonstrate the reasonableness of an executive's compensation nearly all public companies and most larger private companies, including not-for-profits and mutuals, will benchmark their CEO compensation to peer organizations.

For purposes of establishing a reasonable range of compensation for a CEO of St. Rose I used standard practices widely accepted by public and private boards of directors, activist investors and other investor groups in determining chief executive compensation. I constructed a peer group of similar-sized non-for-profit hospitals in California to determine the competitive pay levels offered by similar organizations. For purposes of objectively selecting peer hospitals, I relied upon California hospital information provided through CauseIQ[3]. Using CauseIQ's database, I selected all California hospitals and hospital systems with revenue between $30,000,000 and $250,000,000 in annual revenue. From that group I found 16 hospitals or hospital systems in California reporting data on their CEO. This 16-organization peer group formed the basis of my peer analysis and is presented below as Exhibit 2.

Exhibit 2: California Peer Hospitals
Revenue of $30M to $250M

| Year Reported | Organization | Revenue |
|---|---|---|
| 2021 | Adventist Mendocino | $58,743,999 |
| 2021 | Barton Healthcare System | $232,763,134 |
| 2021 | Beverly Community Hospital | $174,666,870 |
| 2020 | CFHS Holdings | $139,933,345 |
| 2021 | Community Health Systems Inc | $32,270,645 |
| 2020 | Loma Linda University Health | $32,959,438 |
| 2021 | Madera Community Hospital | $104,389,786 |
| 2021 | Ole Health | $45,557,345 |
| 2021 | Orthopaedic Institute for Children | $66,783,859 |
| 2021 | Ridgecrest Regional Hospital | $146,960,539 |
| 2022 | SAC Health System | $102,072,340 |
| 2021 | San Gorgonio Memorial Hospital | $71,265,024 |
| 2021 | Sharp Coranado Hospital | $155,844,207 |
| 2021 | Siskiyou Hospital Inc. | $114,338,891 |
| 2021 | Sutter Coast Hospital | $108,347,570 |
| 2021 | USC Verdugo Hills Hospital | $153,682,979 |
| | 25th Percentile | $64,773,894 |
| | Median | $106,368,678 |
| | 75th Percentile | $148,641,149 |
| | St. Rose | $123,555,837 |
| | St. Rose Rank | 62.4% |

[3] Cause IQ provides web-based information and tools to help accounting firms, nonprofits, technology companies, consulting firms, financial services firms, fundraising companies, and other providers grow their nonprofit client base, research organizations, and find funding. See https://www.causeiq.com/.

I also considered data provided by commercial executive compensation surveys tailored to healthcare. These surveys combine data from CEOs of independent not-for-profit organizations as well as individual hospital CEOs operating within a large corporate structure. The benefit of the commercial survey data is that it provides a baseline for understanding general characteristics of hospital CEO pay in both for-profit, not-for-profit and subsidiary arrangements. This data serves as a broad validation of peer data analysis, although not necessarily as accurate a match to the St. Rose CEO role. For purposes of this analysis the WTW Health Care Executive Survey Report[4] was used. This survey is well known and well accepted within the health care industry. WTW is a publicly held global consulting firm that conducts extensive wage and salary surveys. WTW was formed by the merger of three long-time pay & benefits/insurance consulting firms that have merged over the past several decades.

For both the commercial survey analysis and the peer pay analysis, all data was adjusted to a common date of January 1, 2024. This adjustment was at an annual rate of 5%, consistent with the long-term executive pay escalation rate[5].

Lastly, I considered the variation attributable to the bias of local cost of living and local cost of labor between geographies within the state of California and compared to (indexed to) the national average. For this calculation I relied upon commercial data from the Economic Research Institute[6]. The purpose of this analysis is to explain the regional factors impacting actual pay. The cost of living for several communities including Hayward, California was calculated specifically for a person earning $750,000 per year in Hayward, California. The cost of living is important in understanding the relative pay required to attract and retain executives within a specific geographic area. The cost of labor was similarly calculated to explain regional differences observed in similar roles for executives earning $750,000 per year in Hayward, California. The cost of living and the cost of labor will often diverge, although typically not by a wide margin.

## CEO Compensation

Contemporary hospital CEO compensation arrangements consist of an annual salary and in some limited instances, a performance bonus. For executives in for-profit health care corporations, executive compensation may include equity in the parent company. For non-profits, CEO compensation is reported on an IRS Form 990. Compensation is reported in terms of W2 income as well as non-W2 income such as qualified and non-qualified salary deferral plans. Depending on the organization, the qualified savings plans may take the form of 401k or 403(b) employee savings plan. Non-qualified savings plans are typically only available to senior executives and also serve to reduce W2 income in the year earned.

Hospital CEO compensation generally corresponds to the size of the hospital. Larger hospitals will typically pay more than smaller hospitals, as a general proxy for the complexity and impact of the role. While the size of the organization can be measured many ways, such as the number of beds or the number of employees, the generally accepted measure of size is hospital revenue. In calculating compensation of peer hospitals, the most common method is to identify a group of peers in terms of business (hospital health care) and size (other hospitals with revenue ranging from 50% of the target hospital revenue to 200% of the target hospital's revenue). In addition, an accepted and common technique to smooth the data uses a statistical adjustment where a predicted pay is calculated for the target hospital using a log-

---

[4] 2022 Health Care Executive Survey Report — United States, Total Annual Compensation Report, Single Regression by Revenue Responsibility (IW). See https://www.wtwco.com/en-us/solutions/products/salary-surveys.
[5] See Economic Policy Institute long-term CEO pay study at https://www.epi.org/publication/ceo-pay-in-2022/ .
[6] ERI Economic Research Institute was founded over 30 years ago to provide compensation applications for private and public organizations. ERI compiles the most robust salary, cost of living, and executive compensation survey data available, with updated market data for more than 1,100 industry sectors. See https://www.erieri.com/abouteri.

regression of peer pay and peer revenue[7]. From the median data provided by the survey regression equation, a 25th percentile and a 75th percentile of peer pay was calculated using a survey-provided standard error[8].

Both for-profit and non-profit hospital CEO pay is reflected in commercial surveys. In my assessment I considered the WTW 2022 Health Care Executive Survey Report. This survey provides the ability to calculate a predicted distribution of compensation for hospital CEOs based on the revenue of the institution.

Findings

California peer data was found to clearly support a total pay level of $750,000 per year for the CEO role of St. Rose. It is my opinion the $750,000 in annual compensation provided to Reddy approximates or is below the median compensation for a California hospital the size of St. Rose. My conclusion is based on the following.

St. Rose is slightly larger than the median of the 16-hospital peer group in terms of revenue, and Reddy's compensation is also just slightly above the median of this same group (Exhibit 3, below). Moreover, when applying statistical smoothing using the log-regression technique described above, we find Reddy's pay is actually lower than that of the peers (see Predicted Pay, below). In other words, once adjusted for the revenue of St. Rose, Reddy's compensation is 5.7% less than that of peers.[9].

Exhibit 3: Peer Group CEO Compensation
California Hospitals with Revenue of $30M to $250M

| Organization | Revenue | W2 Pay | Total Pay |
|---|---|---|---|
| 25th Percentile | $64,773,894 | $507,857 | $572,512 |
| Median | $106,368,678 | $661,604 | $727,448 |
| 75th Percentile | $148,641,149 | $841,430 | $879,015 |
| St. Rose CEO (Reddy) | $123,555,837 | $727,500 | $750,000 |
| St. Rose Percentile Rank | 62.4% | 65.7% | 57.3% |
| St. Rose Predicted Pay (Revenue) | | | $795,390 |
| Reddy Pay v. Predicted Pay | | | -5.7% |

[7] The log regression technique is the most wide-accepted method for statistically adjusting pay data from different sized companies to establish a predicted pay level for a target company. It is based on the formula LN(y)=m*LN(x) + b, where y is the compensation, m is the slope of the line, b is the intercept. The use of natural log generally results in a higher correlation and a more useful explanation of the relationship of pay to company size. For instance, the doubling of revenue (size) is often only associated with a 15% change in CEO compensation.

[8] Standard error of the estimate is provided by WTW in their survey. A 25th percentile is calculated using the formula [25th percentile = (1 + Std Error)^-0.675)*median pay] and the 75th percentile pay level is calculated from the formula [75th percentile = (1 + Std Error)^0.675)*median pay]. 0.675 standard deviations from the median approximates the quartiles under a normal distribution.

The peer group data is also presented graphically in Exhibit 4, below.

Exhibit 4: Peer California Non-Profit Hospital
CEO Pay by Revenue

Revenue in $000,000s

The peer revenue range of $30M to $250M provides a statistically valid group, particularly with a median revenue of $106M, reasonably close to that of St. Rose. Looking at Exhibit 5, below, a narrower subset of this peer group is presented, selecting only the 13 hospitals with revenue between $70M and $155M (between 48% of St Rose revenue and 126% of St. Rose revenue). Again, we find a similar result.

Exhibit 5: Subset of Hospital Peer CEOs
Revenue of $65M to $155M

| Organization | CEO Name | Revenue | W2 Pay | Total Pay |
|---|---|---|---|---|
| CFHS Holdings | Jeffrey Smith | $139,933,345 | $2,025,736 | $2,092,284 |
| Madera Community Hospital | Karen Paolinelli | $104,389,786 | $396,534 | $399,731 |
| Orthopaedic Institute for Children | Anthony Scaduto | $66,783,859 | $909,578 | $931,013 |
| Ridgecrest Regional Hospital | James Suver | $146,960,539 | $713,644 | $744,761 |
| SAC Health System | Jason Lohr | $102,072,340 | $398,449 | $469,813 |
| San Gorgonio Memorial Hospital | Steve Barrow | $71,265,024 | $577,857 | $606,744 |
| Sharp Coranado Hospital | Susan Stone | $155,844,207 | $839,560 | $862,070 |
| Siskiyou Hospital Inc. | Jonathan Andus | $114,338,891 | $566,643 | $640,283 |
| Sutter Coast Hospital | Mitch Hanna | $108,347,570 | $847,040 | $929,851 |
| USC Verdugo Hills Hospital | Armand Dorian | $153,682,979 | $729,740 | $791,136 |
| | 25th Percentile | $102,651,702 | $569,446 | $615,129 |
| | Median | $111,343,231 | $721,692 | $767,949 |
| | 75th Percentile | $145,203,741 | $845,170 | $912,906 |
| St. Rose | Laxman Reddy | $123,555,837 | $750,000 | $750,000 |
| | Percentile Rank v Peers | 59.5% | 57.6% | 45.6% |
| | Reddy Pay v. Peer Median | | | -2.3% |

Again, the peer group data from the subset is presented graphically in Exhibit 6, below.

Exhibit 6: Subset of Peer Non-Profit Hospital CEO Pay
by Revenue, $65M to $155M

Revenue in $000,000s

Independent of the direct, by-individual reporting through peer Form 990's, survey data further establishes Reddy's compensation as reasonable and appropriate. As described above, the WTW Health Care survey includes non-profit and for-profit hospital CEOs, including subsidiary hospital CEOs employed by large hospital holding companies. This larger dataset reflects a national population of hospital CEOs, and further establishes Reddy's compensation as reasonable for St. Rose. As presented below in Exhibit 7, based upon accepted statistical techniques we can infer that Reddy's compensation is at the 59th percentile of the larger survey population. This analysis ignores the typically higher wages found in the broad San Francisco area and presents only the national average of all hospital CEOs in the survey.

Exhibit 7: CEO Compensation
Log Regression on Revenue
2022 WTW Health Care Executive Survey Report

| | Inferred Pay Distribution | | | |
|---|---|---|---|---|
| | 25th | Median | 75th | R-Square |
| Salary | $465,453 | $615,144 | $812,975 | 40.9% |
| Total Pay | $477,786 | $671,528 | $943,831 | 46.9% |
| Laxman Reddy | | $750,000 | | |
| Inferred Percentile | | 59th | | |

Cost of Living and Cost of Labor

The bay area of California, including the city of Hayward, is recognized as a high cost of living region. It is similarly understood that wages are generally higher in this region to compensate for the living expenses. This data is quantified by the Economic Research Institute (ERI) to allow the calculation of the overall wage bias (cost of labor) for a specific area at a specific income level. The cost of labor is calculated by ERI by income level to more accurately reflect overall living expenses and pay bias unique to each specific income level.

A comparison of several California regional biases to the national index of 100 shows the degree to which many California communities have both higher cost of living and higher wages (Exhibit 8, below).

Exhibit 8: Impact of Cost of Living and
Cost of Labor in Selected California Cities
$750,000 per Year Income Level

| Geography | Cost of Labor | Cost of Living |
|---|---|---|
| National Average | 100.0% | 100.0% |
| Hayward | 114.5% | 116.9% |
| San Francisco | 119.3% | 130.5% |
| Napa | 108.6% | 117.2% |
| Redlands | 105.5% | 112.8% |
| Santa Barbara | 107.3% | 119.6% |
| Fresno | 103.6% | 116.8% |
| Sacramento | 104.8% | 112.9% |

Based on the ERI calculations for an executive earning $671,528 annually (the median from the national WTW survey) based on nationwide averages, we can calculate the effective median earnings for the same hypothetical individual in Hayward, California. Adjusting for the regional wage bias, Reddy's benchmark revenue-adjusted compensation is presented below in Exhibit 9, projecting his existing compensation to be at the 48th percentile.

Exhibit 9: CEO Compensation
With Cost-of-Labor Adjustment (114.5%) for Hayward, CA
2022 WTW Health Care Executive Survey Report

| | Inferred Pay Distribution | | |
|---|---|---|---|
| | 25th | Median | 75th |
| Salary | $532,944 | $704,340 | $930,856 |
| Total Pay | $547,065 | $768,900 | $1,080,686 |
| | | | |
| Laxman Reddy Total Pay | | $750,000 | |
| Inferred Percentile Rank[10] | | 48th | |

[10] Inferred percentile rank is calculated by an accepted statistical technique using the Z-table. In this instance Reddy's compensation was calculated as 0.05 standard deviations below the median. The Z-table value corresponding to 0.05 standard deviations below the median is the 48th percentile (rounded).

Conclusion

The $750,000 annual compensation for Laxman Reddy is reasonable. It is below what I would expect for a fully seasoned CEO operating a $123M revenue hospital in Hayward, California. My opinion is informed by an analysis using standard practices for executive compensation analysis.

The findings are clear.

1. Using an objective 16-hospital California peer group, Reddy's salary is 3% above the median of the sample (57th percentile) and 5.7% below the median when considering an accepted statistical adjustment for size (revenue).
2. Viewing a smaller subset of the peer group, including only those organizations with revenue between $65M and $155M (46% below to 26% above St. Rose's revenue), we find a similar result. Reddy's compensation is 2.3% below the median of the subset of peers, even though the revenue of St. Rose is more than 11% higher than the median of the subset.
3. National survey data further supports that Reddy's compensation is within a reasonable range of the national median, with Reddy's approximating the 59th percentile compared to national data.
4. When the national data is adjusted for regional bias, Reddy's compensation is actually 2.5% below the median, approximating the 48th percentile.

It should not be the intent of any executive compensation arrangement to use peer compensation levels as a floor or a ceiling for compensation opportunity. Each executive brings a unique set of skills and experience, and each executive will realize a different level of performance. That said, without any extenuating or unique factors influencing the executive relationship such as a very junior CEO or a very successful CEO nearing retirement, we generally see organizations attempting to target their compensation arrangements within the middle 50% of their peer group (e.g., between the 25th and the 75th percentiles of the peer group). There is nothing in my review to indicate Reddy's role or the St. Rose organization to be so different as to expect compensation outside of normal practice. This leads me to conclude the current CEO compensation arrangement is reasonable and clearly within normal practice.

-------

Jeff McCutcheon
McCutcheon, LLC
February 18, 2024

Appendix – McCutcheon CV

# Jeff McCutcheon
# CV

Corporate Work History

1983-1988 Hughes Aircraft Company: HR generalist for five years for Hughes Aircraft Company, including serving in a senior compensation analyst role and in a labor relations role for the 7,000-employee missile systems plant-site.

1988-1992 Coca-Cola Enterprises: Led compensation function for Coca-Cola Enterprises (CCE) after IPO. Addressed HR-related due diligence issues in purchase and sale of regional bottling franchises across the US, Canada and the Virgin Islands. Developed and implemented sales and incentive arrangements across the botting system to help integrate disparate bottling companies, including developing executive incentive and stock programs and a broad-based employee stock option program.

1992-1996 Federated Department Stores / Macy's: Led compensation function for retailer. Developed retail sales incentive programs as well as merchant, operations and executive incentive programs for retailer emerging from bankruptcy protection. Negotiated executive employment contracts with approximately 100 executives and senior business leaders around the world and led due diligence efforts relating to executive liabilities for acquisitions (e.g., Macy's, Broadway Southwest, the Joseph Horne Company, Broadway Southwest/I.Magnin). Involved in identifying change in control liabilities associated with target companies. Primary liaison with Board of Directors as it related to executive and board compensation.

1996-1998 Barnett Banks, Inc.: Served as HR executive at $40B super-regional bank responsible for executive and employee compensation & benefits, HR accounting & payroll, HR strategy, as well as ancillary administrative functions. Served as HR expert on acquisitions, executive incentives, and sales/retail incentives. Served as a fiduciary on the Company's pension investment committee. Primary liaison with Board of Directors as it related to executive and board compensation. Developed a $600M trust arrangement to protect certain executive and employee benefits in the event of a change in control and later served on a six-person deal team to sell the bank in 1997. Achieved a deal price of 4.1x book value, the highest price ever achieved for a large bank within the US.

1998-2000 Sibson & Company: Served as senior advisor in management consulting firm specializing in employee compensation arrangements. Served as expert in executive incentive arrangements and change in control situations. Client projects included the failed Zion's/First Security merger, Nortel/Bay Networks merger, the St. Joe Company / Florida East Coast Railroad split and subsequent formation of EPIC, a fiber network company based on using railroad right-or-way.

2000-2004 CSX Corporation: Served as the senior Human Resources executive responsible for global compensation & benefits, HR accounting, HR strategy, as well as ancillary administrative functions. Served on team in sale on non-core assets such as Horizon Lines ($300M sale to Carlyle Group), CSX Logistics ($150M sale to TNT NV), and CSX World Terminals ($2.1B sale to Dubai Ports World). Developed process to unwind complex legacy executive pay programs involving deferred tax and accounting liabilities. Restructured executive pay programs and employee sales incentives. Named SVP of the HR organization and served on the board of directors of a captive fiber optics company (CSX Fiber Networks), on the board of directors of the Indiana Railroad, and served as a fiduciary on the $2.1B Conrail pension investment committee.

Appendix – McCutcheon CV (continued)

2004-2007 Independent Advisor: Assisted in the confirmation process for John Snow as the 73rd Secretary of the US Treasury; Conducted independent consulting projects including serving as an Advisor to Snow.

2007-2023 Board Advisory, LLC: Co-founded Board Advisory as the first executive pay consultancy focused solely on serving Boards of Directors and investor groups. The range of engagements include establishing acceptable executive pay levels, design of incentives and employment agreement terms, design of enterprise incentives, support on IPO/spin-off, mergers and acquisitions (due diligence) and SEC disclosure, and CEO succession.

Education

Bachelor's degree in business administration (1979) from Michigan State University.

Master's degree in labor and industrial relations (1981) from Michigan State University.

Expert Witness

Expert projection of executive career earnings of CEO resulting from defamation (2023).

Expert analysis of CEO compensation level in bankruptcy claim involving craft brewery chain (2023).

Expert report on executive career earnings and value of US cabinet appointment in criminal case involving banker and presidential advisor (2019-2022, DOJ SDNY, US v Stephen M. Calk).

Expert report and testimony at arbitration on change in control practices and interpretation of typical agreement terms (2019-2020, Arnold & Porter).

Expert report on pay levels and CEO career earnings in wrongful death claim (2016, Rogers Towers).

Expert report and FINRA testimony addressing sales incentive terms in multiple change-of control cases relating to $2B in deferred sales commissions in the Merrill Lynch/Bank of America merger (2010-2011, Shumaker Loop & Kendrick).

Other

Trustee and Treasurer, Okefenokee Swamp Park, Inc., a 501(c)(3) not-for-profit nature center with a passion for immersive learning about all things surrounding the Okefenokee Swamp, the nation's largest blackwater swamp. Led 2021 acquisition of Folkston, GA concession from US Fish & Wildlife Service. Now involved in bid for UNESCO World Heritage Site designation. Learn more at https://okeswamp.org/about-us/ .

Board member and Chief Financial Officer, Working Drones, Inc. /dba Apellix. Investor and advisor to startup technology company developing autonomous industrial aerial robots using a heavy-lift rotary-wing drone platform (https://apellix.com ).

Appendix – Peer Pay Details

Peer Group Results[11]
California Peer Hospital CEO Pay
Revenue of $30M to $250M

| Organization | CEO | Revenue | Direct Pay | Total Direct Pay[12] |
|---|---|---|---|---|
| Adventist Mendocino | Interim | $58,743,999 | $628,809 | $710,135 |
| Barton Healthcare System | Clinton Purvance | $232,763,134 | $1,267,937 | $1,328,658 |
| Beverly Community Hosp | Alice Cheng Fache | $174,666,870 | $544,326 | $671,786 |
| CFHS Holdings | Jeffrey Smith | $139,933,345 | $2,025,736 | $2,092,284 |
| Community Health Sys | Loti Holeman | $32,270,645 | $288,174 | $322,459 |
| Loma Linda Univ Health | Richart Hart | $32,959,438 | $694,400 | $753,503 |
| Madera Community Hosp | Karen Paolinelli | $104,389,786 | $396,534 | $399,731 |
| Ole Health | Alicia Hardy | $45,557,345 | $367,108 | $393,757 |
| Orthopaedic Inst for Child. | Anthony Scaduto | $66,783,859 | $909,578 | $931,013 |
| Ridgecrest Regional Hosp | James Suver | $146,960,539 | $713,644 | $744,761 |
| SAC Health System | Jason Lohr | $102,072,340 | $398,449 | $469,813 |
| San Gorgonio Mem Hosp | Steve Barrow | $71,265,024 | $577,857 | $606,744 |
| Sharp Coranado Hosp | Susan Stone | $155,844,207 | $839,560 | $862,070 |
| Siskiyou Hospital Inc. | Jonathan Andus | $114,338,891 | $566,643 | $640,283 |
| Sutter Coast Hospital | Mitch Hanna | $108,347,570 | $847,040 | $929,851 |
| USC Verdugo Hills Hosp | Armand Dorian | $153,682,979 | $729,740 | $791,136 |
| | 25th Percentile | $64,773,894 | $507,857 | $572,512 |
| | Median | $106,368,678 | $661,604 | $727,448 |
| | 75th Percentile | $148,641,149 | $841,430 | $879,015 |
| St. Rose | Laxman Reddy | $123,555,837 | $727,500 | $750,000 |
| | Percentile Rank | 62.4% | 65.7% | 57.3% |
| | Predicted Pay (Revenue) | | | $795,390 |

[11] All data obtained through publicly filed IRS Form 990s filed in 2022 and 2023. Pay data is adjusted to January 1, 2024, using the long-term annual wage inflation rate of 5%. For additional insight into the 5% annual CEO wage inflation rate see Economic Policy Institute long-term CEO pay study at https://www.epi.org/publication/ceo-pay-in-2022/.

[12] The difference between W2 pay and total pay is most often contributions to 401(k) or 401(b) plans, which are deducted from W2 income (pre-tax contributions) and not taxed until paid out. Total pay is used in the analysis since it captures the amount paid by the organization, not the amount taxed to the employee in the current year.

Appendix – Sources

IRS Form 990s, see https://www.irs.gov/forms-pubs/about-form-990 . Public information reported by CauseIQ. See https://www.causeiq.com/ . CauseIQ was also used to select California peer hospitals based on revenue.

2022 Health Care Executive Survey Report — United States, Total Annual Compensation Report, Single Regression by Revenue Responsibility (IW). Produced by WTW. See https://www.wtwco.com/en-us/solutions/products/salary-surveys for more detail.

ERI Economic Research Institute, Geographic Assessor, https://www.erieri.com/geographicassessor
Cause IQ. See https://www.causeiq.com/. Cause IQ provides web-based information and tools to help accounting firms, nonprofits, technology companies, consulting firms, financial services firms, fundraising companies, and other providers grow their nonprofit client base, research organizations, and find funding. Their online tool was used for screening and creating a California peer group of hospitals.

Josh Bivens and Jori Kandra,"CEO pay slightly declined in 2022", Economic Policy Institute, September 21, 2023, https://www.epi.org/publication/ceo-pay-in-2022/#full-report

Inflation data obtained from the Bureau of Labor Statistics, https://www.bls.gov/regions/mid-atlantic/data/consumerpriceindexhistorical_us_table.htm.

# **APPENDIX**

## Compendium of Sources

**Table Of Contents**

1. Economic Policy Institute Article – CEO pay Slightly declined in 2022
2. Form 990 - CFHS Holdings Inc
3. Form 990 - Ole Health
4. Form 990 - Madera Community Hospital
5. Form 990 - Community Health Systems Inc
6. Form 990 - San Gorgonio Memorial Hospital
7. Form 990 - Sac Health System
8. Form 990 - Adventist Health Mendocino Coast
9. Form 990 - USC Verdugo Hills Hospital
10. Form 990 - Siskiyou Hospital Inc dba Fairchild Medical Center
11. Form 990 - Sutter Coast Hospital
12. Form 990 - Barton Healthcare System
13. Form 990 - Sharp Coronado Hospital Healthcare Center
14. Form 990 - Orthopaedic Hospital
15. Form 990 - Beverly Community Hospital Association
16. Form 990 - Ridgecrest Regional Hospital
17. Form 990 - Loma Linda University Health
18. Us Bureau of Labor Statistics Consumer Price Index

TAB 1

Economic Policy Institute

# CEO pay slightly declined in 2022

## But it has soared 1,209.2% since 1978 compared with a 15.3% rise in typical workers' pay

**Report** • By Josh Bivens and Jori Kandra • September 21, 2023

Overview

# CEO pay slightly declined in 2022

## But it has soared 1,209.2% since 1978 compared with a 15.3% rise in typical workers' pay

**Summary:** CEO pay dipped in 2022 but remains enormous compared with the pay of other workers. CEOs are granted massive compensation packages by corporate boards because of their bargaining power, not because of their skills. CEOs' exorbitant payouts have far outpaced the pay of typical workers over decades.

EPI
CEO pay slightly declined in 2022
By Josh Bivens and Jori Kandra
September 21, 2023

**Read the full report**
epi.org/273381

### Key findings

- CEO pay is linked strongly to the stock market—and market declines in 2022 led to an uncharacteristic dip in CEO pay.
- Cumulatively, however, from 1978–2022, top CEO compensation shot up 1,209.2% compared with a 15.3% increase in a typical worker's compensation.
- In 2022, CEOs were paid 344 times as much as a typical worker in contrast to 1965 when they were paid 21 times as much as a typical worker.
- To illustrate just how distorted CEO pay increases have gotten: In 2021, CEOs made nearly eight times as much as the top 0.1% of wage earners in the U.S.

### Why this matters

Exorbitant CEO pay is not just a symbolic issue—it has contributed to rising inequality. CEOs are getting paid more because of their leverage over corporate boards, not because of contributions they make to their firms. Escalating CEO pay in recent decades has likely pulled up the pay of other top earners. This concentration of earnings at the top leaves fewer gains for ordinary workers.

### How to fix it

Policies that limit CEOs' ability to collude with corporate boards to extract excessive compensation are needed to prevent the U.S. from becoming a winner-take-all society. These policies could include reinstating higher income tax rates at the very top, using tax policy to incentivize lower CEO pay, allowing shareholders to vote on CEO compensation, and using antitrust enforcement and regulation to rein in the market power of the largest firms.

### Charting the problem

CEOs make 344 times as much as typical workers
CEO-to-worker compensation ratio, 1965–2022
Realized CEO compensation
500
400
300
200
100
0
20.7
30.9
60.4
380.9
325.9
344.5
1970
1980
1990
2000
2010
2020
Economic Policy Institute

> The overall economy would suffer no harm if CEOs were paid less (or taxed more), and most workers would see gains.

Economic Policy Institute

View online at epi.org/273381

Chief executive officers (CEOs) of the largest firms in the U.S. earn far more today than they did in the mid-1990s and many times what they earned in the 1960s or 1970s. They also earn far more than the typical worker,[1] and their pay—which relies heavily on stock-related compensation—has grown much more rapidly than a typical worker's pay. Rising CEO pay does not reflect a rising value of skills or contribution to firms' productivity. What has changed over the years is CEOs' use of their power to set their own pay. In economic terms, this means that CEO compensation reflects substantial "rents" (income in excess of actual productivity). This is concerning since the earning power of CEOs has been driving income growth at the very top—a key dynamic in the overall growth of inequality. The silver lining in this otherwise unfortunate trend is that CEO pay can be curtailed without damaging economywide growth.

SECTIONS

1. Measuring CEO compensation • 2
2. Analysis • 5
3. CEO pay is excessive even relative to other extraordinarily privileged actors in the economy • 11
4. The connection between CEO pay and overall inequality • 14
5. Policy recommendations: Reversing the trend • 14

Acknowledgments • 15
About the authors • 16
Notes • 16
References • 17

## Key findings

- **Growth of CEO compensation (1978–2022).** Since CEO pay is mostly stock based, calculating it is not entirely straightforward because the value of stocks is continually changing. We use two measures to give a fuller picture: a backward-looking measure—realized compensation—and a forward-looking measure—granted compensation. Using the realized compensation measure, compensation of the top CEOs shot up 1,209.2% from 1978 to 2022 (adjusting for inflation). Top CEO compensation grew roughly 28.1% faster than stock market growth during this period and far eclipsed the slow 15.3% growth in a typical worker's annual compensation. CEO granted compensation rose 1,046.9% from 1978 to 2022.
- **Changes in the CEO-to-worker compensation ratio (1965–2022).** Using the realized compensation measure, the CEO-to-worker compensation ratio reached 344-to-1 in 2022. This stands in stark contrast to the 21-to-1 ratio in 1965. Most importantly, over the last two decades the ratio has been far higher than at any point in the 1960s, 1970s, 1980s, or early 1990s. Using the CEO granted compensation measure, the CEO-to-worker compensation ratio fell to 221-to-1 in 2022, significantly lower than its peak of 396-to-1 in 2000 but still many times higher than the 45-to-1 ratio

of 1989 or the 15-to-1 ratio of 1965.

- **Changes in the composition of CEO compensation.** The composition of CEO compensation is shifting away from the use of stock options and toward stock awards. In 2006, stock options accounted for just over 70% of stock-related pay in realized CEO compensation. But in 2022, stock options were only 34% with vested stock awards accounting for the rest. Stock-related pay (exercised stock options and vested stock awards) averaged $20.5 million in 2022 and accounted for 81.3% of average realized CEO compensation.

- **Changes in the CEO-to-top-0.1% compensation ratio.** CEO compensation has even been breaking away from that of other very highly paid workers**.** Over the last three decades, compensation grew far faster for CEOs than it did for the top 0.1% of wage earners (those earning more than 99.9% of wage earners). CEO compensation in 2021 (the latest year for which data on top 0.1% wage earners are available) was 7.68 times as high as wages of the top 0.1% of wage earners, a ratio 4.1 points greater than the 3.61-to-1 average CEO-to-top-0.1% ratio over the 1951–1979 period.

- **Implications of the growth of CEO-to-top-0.1% compensation ratio.** The fact that CEO compensation has grown much faster than the pay of the top 0.1% of wage earners indicates that CEO compensation growth does not simply reflect a competitive race for skills (the "market for talent") that would also increase the value of highly paid professionals more generally. Rather, the growing pay differential between CEOs and top 0.1% earners suggests the growth of substantial economic rents (income not related to a corresponding growth of productivity) in CEO compensation. CEO compensation does not appear to reflect the greater productivity of executives but their ability to extract concessions from corporate boards—a power that stems from dysfunctional systems of corporate governance in the United States. But because so much of CEOs' income constitutes economic rent, there would be no adverse impact on the economy's output or on employment if CEOs earned less or were taxed more.

- **Growth of top 0.1% compensation (1979–2021).** Even though CEO compensation grew much faster than the earnings of the top 0.1% of wage earners, that doesn't mean the top 0.1% fared poorly. Quite the contrary. The inflation-adjusted annual earnings of the top 0.1% grew 465% from 1979 to 2021. CEO compensation, however, grew more than 2.5 times as fast!

# Measuring CEO compensation

We focus on the average compensation of CEOs at the 350 largest publicly owned U.S. firms (those firms that sell stock on the open market) by revenue. Our source of data is the S&P Compustat ExecuComp database for the years 1992 to 2022 and survey data published by *The Wall Street Journal* for selected years back to 1965. We maintain the sample size of 350 firms each year when using the Compustat ExecuComp data.[2]

## A note about the Compustat data

It is worth noting some complexity of the Compustat data at the outset. Compustat tracks data (including measures of CEO compensation) for all publicly traded firms in the United States across a range of years (we use it back to 1992 and find it reliable since that year). But public companies sometimes move out of the data universe of publicly traded firms. They might go private, go out of business entirely, or be bought by another firm. When a firm stops being public, it does not simply drop out of the sample from that point on; it is also removed from previous years' samples.

Optimally, we would like the Compustat data to provide information on the largest 350 firms *that were public in a given year.* Instead, the data provide information on the largest 350 firms that were public in a given year *and* that continue to be public according to the most recent data. This explains why some of our data—even for years relatively far in the past—changes with each new iteration of this report.

Further, even the pre-1992 data that we use rely on a procedure that "backcasts" Compustat to pre-1992 data that originate from other sources. Therefore, even the pre-1992 data can change with each successive round of Compustat.

In practice, the degree of change to previous years' data caused by this reshuffling of firms in the Compustat universe is quite small, but it is not zero.

## Two ways of measuring CEO compensation

We use two measures of CEO compensation, one based on compensation as "realized" and the other based on compensation as "granted." Both measures include the same measures of salary, bonuses, and long-term incentive payouts. The difference lies in how each measure treats stock awards and stock options, major components of CEO compensation that change value from when they are first provided, or granted, to when they are realized.

The realized measure of compensation includes the value of stock options when they are actually realized or exercised, capturing the change in value from when the options were granted to when the CEO invokes the options, usually after the stock price has risen and the options values have increased. The realized compensation measure also values stock awards at their value when vested (usually three years after being granted), capturing any change in the stock price as well as additional stock awards provided as part of a performance award.

The granted measure of compensation values stock options and restricted stock awards by their "fair value" when granted. This fair value must be estimated given a number of assumptions about the future path of stock prices, interest rates, and other variables. Compustat estimates of the fair value of options and stock awards as granted are derived from the Black-Scholes model. For details on the construction of these measures and

benchmarking to other studies, see Sabadish and Mishel 2013.

In some sense, realized measures of pay are backward-looking, while granted measures are forward-looking. Realized measures of stock-related pay in 2022 are essentially measuring how much money CEOs were able to bring home based (largely) on the past year's stock options and awards. Granted measures of stock-related pay in 2022 are essentially measuring estimates of how much new options and awards are likely to pay off in future years. Because neither measure perfectly maps onto a measure of how much a CEO "earned" in a single particular year, reporting both can be useful.

# Analysis

## Trends in CEO compensation growth

This section examines several decades of available data to identify historical trends in CEO compensation. Stock-related components have constituted a growing share of total CEO compensation over time. Lately, there has been a shift away from stock options to stock awards—a small sign that perhaps CEO labor markets are getting slightly less dysfunctional on the margins.

### Composition of CEO compensation

Stock-related components of CEO compensation constitute a large and increasing share of total compensation. Realized stock awards and stock options made up 70.2% of total CEO compensation in 2006 ($15.1 million out of $21.6 million) and 81.3% of total compensation ($20.5 million out of $25.2 million) in 2022 (not shown in chart). The growth of these stock-related components from 2006 to 2022 explains over 100% of the total growth in CEO realized compensation over this period.[3] Of the stock-related components of compensation, stock awards make up a growing share, while the share of stock options in CEO compensation packages has decreased over time.

There is a simple logic behind companies' decisions to shift from stock options to stock awards in CEO compensation packages, as Clifford (2017) explains. With stock options, CEOs can make only gains: They realize a gain if their company's stock price rises beyond the price of the initial options granted, and they lose nothing if the stock price falls. The fact that they have nothing to lose—but potentially a lot to gain—might lead options-holding CEOs to take excessive risks to bump up their company's stock price to an unsustainable short-term high.

Stock awards, on the other hand, likely promote better long-term alignment of a CEO's goals with those of shareholders. A stock award has a value when given or vested and can increase or decrease in value as the firm's stock price changes. If stock awards have a lengthy vesting period of three to five years, then the CEO has an interest in lifting the firm's stock price over that period while being mindful to avoid any implosion in the stock price—to maintain the value of what they have. In some sense, the shift from options to awards might represent a small glimmer of hope that CEO labor markets are getting a bit less dysfunctional (though there is obviously a long way to go).

### CEO compensation growth in 2022

Realized CEO compensation (reported in **Table 1**) declined by 14.8%[4] to $25.2 million from 2021 to 2022. This decline was overwhelmingly due to the reduced value of exercised stock options, a decline surely related to broad-based declines in stock prices in 2022.

The granted measure of CEO compensation, which values stock options granted in 2022 (not those exercised), also fell by 12.4%.

## Long-term trends in CEO compensation

Table 1 also presents the longer-term trends in CEO compensation for selected years from 1965 to 2022.[5] Our discussion of longer-term trends focuses mostly on the realized compensation measure of CEO compensation preferred in most economic analyses. In general, CEO compensation follows the movement of the stock market but tends to exceed even the largest stock market gains.

Table 1 allows us to compare CEO compensation with that of a typical worker by showing the average annual compensation (wages and benefits of a full-time, full-year worker) of private-sector production/nonsupervisory workers (a group covering more than 80% of payroll employment; see Gould 2020).

From 1992 onward, the table also identifies the average annual compensation of production/nonsupervisory workers in the key industries of the firms included in the sample. We take this compensation as a proxy for the pay of typical workers in these particular firms and use it to calculate the CEO-to-worker compensation ratio for each firm.

Finally, the table shows inflation-adjusted changes in the stock market, as measured by the Dow Jones Industrial Average and the S&P 500 Index.

CEO compensation (our realized measure) has, in general, risen and fallen along with the S&P 500 Index over the last five and a half decades. But the period from 1965 to 1978 is an exception: Although the stock market fell by roughly half between 1965 and 1978, realized CEO compensation increased by 79.5%.

Typical worker compensation saw relatively strong growth over that period—strong relative to subsequent periods, not relative to CEO pay or the pay of other earners at the top of the wage distribution. Annual worker compensation grew by 20.5% from 1965 to 1978, about a fourth as fast as CEO compensation growth.

Realized CEO compensation grew strongly throughout the 1980s but exploded in the 1990s. It peaked at the end of the stock market bubble in 2000 at about $25.2 million—a 362% increase over just five years earlier in 1995 and a 1,211% increase over 1978. This latter increase exceeded even the growth of the booming stock market between 1978 and 2000 (513.99% for the S&P 500 and 439.98% for the Dow Jones). In stark contrast to both the stock market and CEO compensation, private-sector worker compensation increased just 0.76% from 1978 to 2000.

When the stock market bubble burst in the early 2000s, there was a substantial paring back of CEO compensation. By 2007, however, when the stock market had mostly recovered, realized CEO compensation reached $22.2 million, just $3 million below its 2000 level. However, granted CEO compensation remained down, at $16.8 million in 2007, a substantial $8.3 million fall from the 2000 level.

Table 1

## CEO compensation, CEO-to-worker compensation ratio, and stock prices (2022$), selected years, 1965–2022

| | CEO annual compensation (thousands) | | Private-sector production/ nonsupervisory workers annual compensation (thousands) | | Stock market (indexed to 2022$) | | CEO-to-worker compensation ratio | |
|---|---|---|---|---|---|---|---|---|
| Year(s) | Realized | Granted | All private-sector workers | Workers in the firms' industries* | S&P 500 | Dow Jones | Realized | Granted |
| 1965 | $1,072 | $817 | $48.71 | NA | 715 | 7,387 | 20.7 | 15.4 |
| 1973 | $1,406 | $1,070 | $57.38 | NA | 635 | 5,462 | 23.0 | 17.1 |
| 1978 | $1,926 | $1,466 | $58.68 | NA | 397 | 3,394 | 30.9 | 22.9 |
| 1989 | $3,593 | $2,736 | $56.00 | NA | 740 | 5,753 | 60.4 | 44.7 |
| 1995 | $6,968 | $7,741 | $56.01 | $63.24 | 1,039 | 8,629 | 117.4 | 130.5 |
| 2000 | $25,237 | $25,127 | $59.12 | $68.74 | 2,439 | 18,326 | 380.9 | 395.8 |
| 2007 | $22,195 | $16,824 | $61.54 | $72.34 | 2,096 | 18,699 | 325.9 | 242.0 |
| 2009 | $11,924 | $12,845 | $63.95 | $74.71 | 1,300 | 12,184 | 175.0 | 181.2 |
| 2021 | $29,596 | $19,204 | $68.75 | $78.47 | 4,619 | 36,811 | 389.0 | 254.3 |
| Projected 2022 | $25,210 | $16,814 | $67.68 | $76.96 | 4,099 | 32,897 | 344.3 | 229.0 |
| 2021 FH | $29,568 | $18,674 | $68.70 | $79.20 | 4,619 | 36,811 | 387.2 | 246.5 |
| 2022 FH | $25,186 | $16,350 | $67.70 | $77.00 | 4,099 | 32,897 | 342.8 | 221.2 |
| **Percent change** | | | | | | | **Change in ratio** | |
| 1965–1978 | 79.5% | 79.5% | 20.5% | NA | -44.4% | -54.1% | 10.2 | 7.5 |
| 1978–2000 | 1,210.6% | 1,613.9% | 0.8% | NA | 514.0% | 440.0% | 350.0 | 373.0 |
| 2000–2007 | -12.1% | -33.0% | 4.1% | 5.2% | -14.1% | 2.0% | -55.0 | -153.8 |
| 2007–2009 | -46.3% | -23.7% | 3.9% | 3.3% | -38.0% | -34.8% | -150.9 | -60.9 |
| 2009–2022 | 111.4% | 30.9% | 5.8% | 3.0% | 215.3% | 170.0% | 169.4 | 47.8 |
| 2007–2022 | 13.6% | -0.1% | 10.0% | 6.4% | 95.5% | 75.9% | 18.4 | -13.0 |
| 1978–2022 | 1,209.2% | 1,046.9% | 15.3% | NA | 931.8% | 869.3% | 313.5 | 206.1 |
| 2021–2022 | -14.8% | -12.4% | -1.6% | -1.9% | -11.3% | -10.6% | -44.6 | -25.3 |

* Average annual compensation of the workers in the key industry of the firms in the sample.

**Notes:** Average annual compensation for CEOs at the top 350 U.S. firms ranked by sales is measured in two ways. Both include salary, bonus, and long-term incentive payouts, but the "granted" measure includes the value of stock options and stock awards when they were granted, whereas the "realized" measure captures the value of stock-related components that accrues after options or stock awards are granted by including "stock options exercised" and "vested stock awards." FH = First half. CEO-to-worker compensation ratios are based on averaging specific firm ratios in samples and not the ratio of averages of CEO and worker compensation. Ratios prior to 1992 are constructed as described in the CEO pay series methodology (Sabadish and Mishel 2013).

**Source:** Authors' analysis of data from Compustat's ExecuComp database, the Federal Reserve Economic Data (FRED) database from the Federal Reserve Bank of St. Louis, the Bureau of Labor Statistics' Current Employment Statistics data series, and the Bureau of Economic Analysis NIPA tables.

**Economic Policy Institute**

The stock market decline during the 2008 financial crisis also sent CEO compensation tumbling, as it had in the early 2000s, as realized CEO compensation dropped 46.3% from 2007 to 2009. After 2009, realized CEO compensation resumed an upward trajectory,

growing 111.4% from 2009 to 2022 so that CEO compensation exceeded its previous level from 2007 by 13.6%.

To assess the role of CEO compensation in the overall increase in income and wage inequality of the last four decades, it is best to gauge growth since 1978.[6] For the period from 1978 to 2022, realized CEO compensation increased 1,209.2%—almost 30% faster than stock market growth (depending on the market index used) and substantially faster than the 15.3% growth in the typical worker's compensation over the same period. CEO granted compensation grew 1,046.9% over this period.

## Trends in the CEO-to-worker compensation ratio

Table 1 also presents trends in the ratio of CEO-to-worker compensation, using both measures of CEO compensation. We compute this ratio, which illustrates the increased divergence between CEO and worker pay over time, in two steps:

- The first step is to construct, for each of the 350 largest U.S. firms, the ratio of the CEO's compensation to the annual average compensation of production and nonsupervisory workers in the key industry of the firm (data on the pay of workers at individual firms are not available).[7]
- The second step is to average that ratio across all 350 firms. Note that trends before 1995 are based on the ratio of average top-company CEO pay to the compensation of economywide (not industry-specific) private-sector production/nonsupervisory workers.

The last two columns in Table 1 show the resulting ratio for both measures of CEO pay. The trends are depicted in **Figure A**.

Figure A

## CEOs make 344 times as much as typical workers

CEO-to-worker compensation ratio, 1965–2022

**Notes:** Average annual compensation for CEOs is for CEOs at the top 350 U.S. firms ranked by sales. Typical worker compensation is the average annual compensation (wages and benefits of a full-time, full-year worker) of production/nonsupervisory workers in the industries that the top 350 firms operate in.

**Source:** Authors' analysis of data from Compustat's ExecuComp database, the Bureau of Labor Statistics' Current Employment Statistics data series, and the Bureau of Economic Analysis NIPA tables.

Economic Policy Institute

## How our metric differs from firm-reported metrics

The Securities and Exchange Commission (SEC) now requires publicly owned firms to provide a metric for the ratio of CEO compensation to that of the median worker in a firm, as mandated by the Dodd-Frank financial reform bill of 2010 (SEC 2015). Those ratios differ from the ones in this report in several ways:

- First, because of limitations in data availability, the measure of worker compensation in our ratios reflects workers in a firm's key industry, not workers actually working for the firm. The ratios reported to the SEC will reflect compensation of workers in the specific firm.
- Second, our measure reflects an exclusively domestic workforce; it excludes the compensation of workers in other countries who work for the firm. The ratios reported to the Securities and Exchange Commission may include workers in other countries.
- Third, our metric is based on hourly compensation annualized to reflect a full-time, full-year worker (i.e., multiplying the hourly compensation rate by 2,080 hours). In contrast, the measures firms provide to the SEC can be and

are sometimes based on the actual annual (not annualized) wages of part-year (seasonal) or part-time workers. As a result, comparisons across firms may reflect not only hourly pay differences but also differences in annual or weekly hours worked.

- Fourth, our metric includes both wages and benefits, whereas the SEC metric focuses solely on wages.

- Finally, we use consistent data and methodology to construct our ratios; our ratios are thus comparable across firms and from year to year. The Securities and Exchange Commission allows firms flexibility in how they construct the CEO-to-typical worker pay comparison. This means there is no comparability across firms—and ratios for any given firm may not even be comparable from year to year if the firm changes the metrics it uses.

There is certainly value in the new metrics being provided to the SEC, but the measures we rely on allow us to make appropriate comparisons between firms and across time. More information on the SEC CEO-to-worker compensation ratio and our comparable measure can be found in Mishel and Kandra 2020.

As Table 1 and Figure A show, using the realized measure of CEO compensation, CEOs of major U.S. companies earned 21 times as much as the typical worker in 1965. This ratio grew to 31-to-1 in 1978 and 60-to-1 by 1989. It surged in the 1990s, hitting 381-to-1 in 2000, at the end of the 1990s recovery and at the height of the stock market bubble.[8]

The fall in the stock market after 2000 reduced CEO stock-related pay, such as realized stock options, and caused CEO compensation to tumble in 2002 before beginning to rise again in 2003. Realized CEO compensation recovered to a level of 326 times worker pay by 2007, still below its 2000 level. The financial crisis of 2008 and accompanying stock market decline reduced CEO compensation between 2007 and 2009, and the CEO-to-worker compensation ratio fell in tandem.

Over the 2009–2022 period, another surge in realized CEO compensation brought the ratio to 344-to-1, above its 2007 level. Besides being higher than the value achieved in 2000 at the peak of a stock market bubble, it is, of course, *far* higher than it was in the 1960s, 1970s, 1980s, and the early 1990s.

The pattern using the granted measure of CEO compensation is similar. The CEO-to-worker pay ratio peaked in 2000, at 396-to-1, even higher than the ratio of 381-to-1 with the realized compensation measure. The fall from 2000 to 2007 was steeper than for the other measure, and the CEO-to-worker pay ratio hit 242-to-1 in 2007. The stock market decline during the financial crisis drove the ratio down to 181-to-1 in 2009. The growth in granted CEO compensation over the 2009–2022 period, at just 30.9%, was far less than for realized compensation, so the CEO-to-worker pay ratio recovered to only 229-to-1. This level is far lower than its peak in 2000 but still far greater than the 1995 ratio of 131-to-1, the 1989 ratio of 45-to-1, or the 1965 ratio of 15-to-1.

The extraordinarily high level of the CEO-to-worker compensation ratio reflects the strikingly different trajectory of CEO pay compared with typical worker pay over the past 40 years. On the one hand, there has been very little growth in the compensation of a typical worker since the late 1970s. It has grown just 15.3% over the 44 years from 1978 to 2022, despite a corresponding growth of net economywide productivity of 64.6% (EPI 2022). The 1,437% growth in realized CEO compensation from 1978 (there are no data for 1979) to 2021 far exceeded the growth in productivity, profits, or stock market values in that period.

## CEO pay is excessive even relative to other extraordinarily privileged actors in the economy

This section highlights how out-of-line CEO pay is even compared with the most privileged workers in the U.S. economy—the top 0.1%. CEO compensation has grown a great deal since 1965, but so has the pay of other high-wage earners. To some analysts, this suggests that the dramatic rise in CEO compensation has been driven largely by the demand for the skills of CEOs and other highly paid professionals. In this interpretation, CEO compensation is being set by the market for “skills” or “talent,” not by managerial power or the ability of CEOs to extract economic rents (to claim income in excess of their contribution to actually producing).[9] This explanation lies in contrast to that offered by Bebchuk and Fried (2004) and Clifford (2017) who claim that the long-term increase in CEO pay is a result of managerial power.

The “market for talent” argument is based on the premise that “it is other professionals, too,” not just CEOs, who are seeing a generous rise in pay. The most prominent example of this argument comes from Kaplan (2012a, 2012b). In the prestigious 2012 Martin Feldstein Lecture at the National Bureau of Economic Research, he claims:

> Over the last 20 years, then, public company CEO pay relative to the top 0.1% has remained relatively constant or declined. These patterns are consistent with a competitive market for talent. They are less consistent with managerial power. Other top income groups, not subject to managerial power forces, have seen similar growth in pay. (Kaplan 2012a, 4)

In short, Kaplan is claiming that a stable ratio of CEO pay to top 0.1% pay indicates that market power is not operating uniquely in CEO pay markets. One implication of this is that if the CEO-to-top-0.1% pay ratio is in fact increasing, then the scope for unique exercise of market power in CEO labor markets is large.

We find that this argument that CEO compensation is being set by the generalized market for “skills” does not square with the available data. Bivens and Mishel (2013) address the larger issue of the role of CEO compensation in generating income gains at the very top and conclude that substantial rents are, in fact, embedded in executive pay. According to

Figure B

## CEO compensation relative to top 0.1% earners is much higher than it was in the 1951–1979 period

Ratio of CEO compensation to top 0.1% wages, 1951–2022

**Note:** Wages of top 0.1% of wage earners reflect W-2 annual earnings, which includes the value of exercised stock options and vested stock awards.

**Source:** Authors' analysis of EPI State of Working America Data Library data on top 0.1% wages in Mishel and Kandra 2020 and data on CEO compensation from an extrapolation of Kaplan's (2012b) CEO compensation series.

Economic Policy Institute

Bivens and Mishel (2013), CEO pay gains are not the result of a competitive market for talent but rather reflect the power of CEOs to extract concessions from corporate boards.

To reach this finding, we use Kaplan's series (2012b) on CEO compensation (through 2010 and updated forward using CEO realized compensation) and compare it with the wages of the very highest wage earners in the top 0.1% (reflecting W-2 annual earnings, which include exercised stock options and vested stock awards). We use top wage earners rather than top 0.1% household incomes, as Kaplan did, in order to make the comparisons across earners.[10] The wage benchmark seems the most appropriate because it avoids issues of changing household demographics (such as increases in the number of two-earner households over time) and limits the income to labor income. Our wage benchmark excludes capital income, which is included in household income measures.

**Figure B** compares CEO compensation to top 0.1% earnings ratios back to 1951. In 2021 (the last year available for the top 0.1% data series), this ratio was 7.68, meaning that CEOs made nearly 8 times as much in salary as even the most privileged 0.1% of workers in the economy. This 7.68 ratio in 2021 was about 4.1 points higher than the historical average of 3.61 over the 1951–1979 period. This is a large change, meaning that the relative pay of CEOs *increased* by an amount equal to *the total annual wages of four of these very–high–wage earners*.[11]

The extremely rapid growth of CEO compensation compared with the earnings of the top

0.1% of wage earners does not mean that the top 0.1% fared poorly. In fact, the very highest earners—those in the top 0.1% of all earners—saw their annual earnings (including realized stock options and vested stock awards) grow fantastically, though far less than the compensation of the CEOs of large firms. Top 0.1% annual earnings grew a healthy 465% from 1979 to 2021, though that was just a small fraction of the 1,437% growth of realized CEO compensation achieved between 1978 and 2021 (strict comparability on the year 1979 is not available in the data).

If CEO pay growing far faster than the pay of other high earners is evidence of the presence of rents, as Kaplan suggests, one would conclude that today's top executives are collecting substantial rents, claiming income far in excess of their contribution to producing it. This means that *if CEOs were paid less, there would be no loss of productivity or output in the economy*.

The large discrepancy between the pay of CEOs and other very-high-wage earners also casts doubt on the claim that CEOs are being paid these extraordinary amounts because of their special skills and the market for those skills. It is unlikely that the skills of CEOs of very large firms are so outsized and disconnected from the skills of other high earners that they propel CEOs past most of their cohort in the top one-tenth of 1%. For everyone else, the distribution of skills, as reflected in the overall wage distribution, tends to be much more continuous, so this discontinuity is evidence that factors beyond skills drive the compensation levels of CEOs.

## The stock market and CEO pay

There is normally a tight relationship between overall stock prices and CEO compensation. Some commentators draw on this regularity to claim that CEOs are being paid for their performance since, in the commentators' view, the goal of CEOs is to raise their companies' stock prices.

However, the stock–CEO compensation relationship does not necessarily imply that CEOs are enjoying high and rising pay because their individual productivity is increasing (because they head larger firms, have adopted new technology, or for other reasons). CEO compensation often grows strongly when the overall stock market rises, and individual firms' stock values are swept up in this wake. This is a marketwide phenomenon, not one based in the improved performance of individual firms.

Most CEO pay packages allow pay to rise whenever the firm's stock value rises. In other words, CEOs can cash out stock options regardless of whether the rise in the firm's stock value was exceptional relative to comparable firms in the same industry. Similarly, vested stock awards increase in value when the firm's stock price rises in simple correspondence to a marketwide escalation of stock prices. If corporate taxes are reduced and profits rise accordingly, leading to higher stock prices, is it accurate to say that CEOs have made their firms perform better?

# The connection between CEO pay and overall inequality

Some observers argue that exorbitant CEO compensation is merely a symbolic issue, with no real consequences for the vast majority of workers. On the contrary, the escalation of CEO compensation, and of executive compensation more generally, has likely helped fuel the wider growth of top 1% and top 0.1% incomes, contributing to widespread inequality.

Our data apply to the CEOs of the very largest firms. We presume that these CEOs set the pay standards followed by other executives—of the largest publicly owned firms, of smaller publicly owned firms, of privately owned firms, and of major nonprofit firms (hospitals, universities, charities, etc.). If so, then CEO compensation is indeed a nontrivial driver of top incomes.

High CEO pay reflects economic rents—income that CEOs can skim from the economy not by virtue of their contribution to economic output but by virtue of their powerful position. Clifford (2017) alludes to the fictional town in the radio program *A Prairie Home Companion* in describing the Lake Wobegon world of CEO compensation setting that fuels its growth: Every firm wants to believe its CEO is above average and therefore needs to be correspondingly remunerated. But, in fact, CEO compensation could be reduced across the board, and the economy would not suffer any loss of output.

Another implication of rising pay for CEOs and other executives is that it reflects income that would otherwise have accrued to others instead of being concentrated at the highest level. What these executives earned was not available for broader-based wage growth for other workers (Bivens and Mishel 2013). It is useful, in this context, to note that wages for the bottom 90% would be 25% higher today had wage inequality not increased between 1979 and 2021.[12]

Most of the rise in inequality took the form of redistributing wages away from the bottom 90%. This group's share of total wage income fell from 68.8% in 1979 to 58.5% in 2021. Most of the loss experienced by the bottom 90% went to the top 1%, whose wage share doubled from 7.3% to 14.6% in these same years. And even among this gain going to the top 1%, most of it went to the top 0.1%, who saw their share of overall wage income more than triple from 1.6% to 5.9% between 1979 and 2021. In other words, the bottom 90% had 10.3% of total wage income taken from them between 1979 and 2021, and that about 70% of this loss (7.3 of 10.3 percentage points) went to the top 1%, and 40% (or 4.3 of 10.3 percentage points) went to just the top 0.1%.

# Policy recommendations: Reversing the trend

Several policy options could reverse the trend of excessive executive pay and broaden wage growth. Ideally, tax reforms would be paired with changes in corporate governance:

- Implementing higher marginal income tax rates at the very top would limit rent-seeking behavior and reduce the incentives for executives to push for such high pay.
- Another option is to set corporate tax rates higher for firms that have higher ratios of CEO-to-worker compensation. Clifford (2017) recommends setting a cap on executive compensation and taxing companies on any amount over the cap, similar to the way baseball team payrolls are taxed when salaries exceed a cap. One key consideration in making policies like this work concerns “fissuring”—the practice of spinning off the lower–paid workers in a given firm and using contracted third-party service providers to replace these functions (often rehiring the exact same workers but now no longer as permanent employees of the old firm). Such fissuring would boost firm-specific measures of typical workers’ pay and reduce the CEO-to-worker pay ratio without changing any economic reality. The newly contracted workers would not necessarily see any higher pay, and the CEOs would not need to accept lower pay. This type of fissuring is endemic in the U.S. economy and is a policy barrier to many efforts to constrain specific firms’ behavior through incentives like this.

Baker, Bivens, and Schieder (2019) review policies that would restrain CEO compensation and explain how tax policy and corporate governance reform can work in tandem:

> Tax policy that penalizes corporations for excess CEO-to-worker pay ratios can boost incentives for shareholders to restrain excess pay, [but] to boost the power of shareholders [to restrain pay], fundamental changes to corporate governance have to be made. One key example of such a fundamental change would be to provide worker representation on corporate boards.

Given the vital importance of changing shareholders’ ability to restrain pay (not just their incentive to do so), another policy that could potentially limit executive pay growth is greater use of “say on pay,” which allows a firm’s shareholders to vote on top executives’ compensation.

The CEOs examined in this report head large firms. These firms, almost by definition, enjoy a degree of market power that some studies suggest has grown in recent decades. It seems that CEOs and other executives may have been prime beneficiaries of these firms’ greater market power. Using the tools of antitrust enforcement and regulation would help to restrain these firms’ market power. This would not only promote economic efficiency and competition but might help restrain executive pay as well.

# Acknowledgments

The authors thank the **Stephen M. Silberstein Foundation** for its generous support of this research. **Steven Balsam** has provided useful advice on data construction and interpretation over the years. He is an accounting professor at Temple University and author of *Executive Compensation: An Introduction to Practice and Theory* (2007) and *Equity Compensation: Motivations and Implications* (2013). **Steven Clifford**, author of *The CEO Pay Machine: How It Trashes America and How to Stop It* (2017), has also provided

technical advice. Clifford served as CEO for King Broadcasting Company from 1987 to 1992 and National Mobile Television from 1992 to 2000 and has been a director of 13 public and private companies.

# About the authors

**Josh Bivens** is the chief economist at the Economic Policy Institute. His areas of research include macroeconomics, inequality, social insurance, public investment, and the economics of globalization. Bivens has provided expert insight to a range of institutions and media, including formally testifying numerous times before committees of the U.S. Congress. He has a Ph.D. in economics from the New School for Social Research.

**Jori Kandra** is a research assistant at the Economic Policy Institute. In addition to the CEO pay series, she has worked on the State of Working America 2020 wages report and the domestic workers chartbook, among other EPI publications. She has a bachelor's degree in economics from the University of Texas at Austin.

# Notes

1. For the pay of the typical worker, we use average compensation (wages and salaries plus benefits) of a full-time, full-year production or nonsupervisory worker (a group that makes up about 80% of the private-sector workforce).

2. In earlier reports, our sample for each year was sometimes fewer than 350 firms because some of these large firms did not have the same CEO for most of or all of the year or the compensation data were not yet available. In order to not let changes in sample size affect annual trends, we now examine the top 350 firms with the largest revenues each year for which there are data.

3. Authors' analysis of the Compustat ExecuComp data.

4. Note that while we report executive compensation in millions in the text, and we round numbers to the nearest thousand in Table 1, dollar and percent changes are calculated using unrounded data.

5. We choose which years to present in the table based in part on data availability. Where possible, we choose cyclical peaks (years of low unemployment).

6. A better comparison would be to the low-unemployment year of 1979, but those data are not available.

7. There are a limited number of firms, which existed only for certain years between 1992 and 1996, for which a North American Industry Classification System (NAICS) value is unassigned. This makes it impossible to identify the pay of the workers in the firm's key industry. These firms are therefore not included in the calculation of the CEO-to-worker compensation ratio.

8. As noted earlier, it may seem counterintuitive that the two ratios for 2000 are different from each other when the average CEO compensation is the same. It is important to understand that (as described later in this report) we do not create the ratio from the averages; rather we construct a ratio for each firm and then average the ratios across firms.

9. The managerial power view asserts that CEOs have excessive, noncompetitive influence over the compensation packages they receive. Rent-seeking behavior is the practice of manipulating systems to obtain more than one's fair share of wealth—that is, finding ways to increase one's own gains without actually increasing the productive value one contributes to an organization or to the economy.

10. We thank Steve Kaplan for sharing his CEO compensation series with us (Kaplan 2012b). The series on the income of the top 0.1% of households that Kaplan used is no longer available. Moreover, as we discuss, the appropriate comparison is to other earners, not to households, which could have multiple earners and shifts in the number of earners over time.

11. A one-point rise in the ratio is the equivalent of the average CEO earning an additional amount equal to that of the average earnings of someone in the top 0.1%.

12. This follows from the fact that from 1979 to 2020, annual earnings for the bottom 90% rose by 28.2%, while the average growth across all earners was 48.6% (Mishel and Kandra 2021). That means that the bottom 90% would have seen their earnings grow 20.4 percentage points more over the 1979–2020 period if they had enjoyed average growth (i.e., no increase in inequality, 48.6 less 28.2).

# References

Baker, Dean, Josh Bivens, and Jessica Schieder. 2019. *Reining in CEO Compensation and Curbing the Rise of Inequality*. Economic Policy Institute, June 2019.

Bebchuk, Lucian, and Jesse Fried. 2004. *Pay Without Performance: The Unfulfilled Promise of Executive Remuneration*. Cambridge, Mass.: Harvard Univ. Press.

Bivens, Josh, and Lawrence Mishel. 2013. "The Pay of Corporate Executives and Financial Professionals as Evidence of Rents in Top 1 Percent Incomes." Economic Policy Institute Working Paper no. 296, June 2013.

Bloomberg. 2018. "Where Have All the Public Companies Gone?" April 9, 2018.

Bureau of Economic Analysis (BEA). Various years. National Income and Product Accounts (NIPA) Tables [online data tables]. Tables 6.2C, 6.2D, 6.3C, and 6.3D.

Bureau of Labor Statistics (BLS). Various years. *Employment, Hours, and Earnings—National* [database]. In *Current Employment Statistics* [public data series].

Clifford, Steven. 2017. *The CEO Pay Machine: How It Trashes America and How to Stop It*. New York: Penguin Random House.

Compustat. Various years. *ExecuComp* [commercial database].

Economic Policy Institute (EPI). 2022. "The Productivity–Pay Gap." Economic Policy Institute website, accessed August 29, 2022.

Federal Reserve Bank of St. Louis. Various years. *Federal Reserve Economic Data (FRED)* [database].

Gould, Elise, 2020. "The Labor Market Continues to Improve in 2019 as Women Surpass Men in Payroll Employment, but Wage Growth Slows." *Working Economics Blog* (Economic Policy Institute), January 10, 2020.

Internal Revenue Service (IRS). 2019. "SOI Bulletin Historical Table 12: Number of Business Income Tax Returns, by Size of Business for Income Years, Tax Years 1990–2016, Expanded Version" (data table). Excel file downloadable at https://www.irs.gov/statistics/soi-tax-stats-historical-table-12.

Kaplan, Steven N. 2012a. "Executive Compensation and Corporate Governance in the U.S.: Perceptions, Facts, and Challenges." Martin Feldstein Lecture, National Bureau of Economic Research, Washington, D.C., July 10, 2012.

Kaplan, Steven N. 2012b. "Executive Compensation and Corporate Governance in the U.S.: Perceptions, Facts, and Challenges." National Bureau of Economic Research Working Paper no. 18395, September 2012.

Mishel, Lawrence, Josh Bivens, Elise Gould, and Heidi Shierholz. 2012. *The State of Working America, 12th Edition*. An Economic Policy Institute book. Ithaca, N.Y.: Cornell Univ. Press.

Mishel, Lawrence, and Jori Kandra. 2020. "Wages for the Top 1% Skyrocketed 160% Since 1979 While the Share of Wages for the Bottom 90% Shrunk." *Working Economics Blog* (Economic Policy Institute), December 1, 2020.

Mishel, Lawrence, and Jori Kandra. 2021. "Preliminary Data Show CEO Pay Jumped Nearly 16% in 2020, While Average Worker Compensation Rose 1.8%." *Working Economics Blog* (Economic Policy Institute), May 27, 2021.

Sabadish, Natalie, and Lawrence Mishel. 2013. "Methodology for Measuring CEO Compensation and the Ratio of CEO-to-Worker Compensation, 2012 Data Update." Economic Policy Institute Working Paper no. 298, June 2013.

Securities and Exchange Commission (SEC). 2015. "SEC Adopts Rule for Pay Ratio Disclosure: Rule Implements Dodd-Frank Mandate While Providing Companies with Flexibility to Calculate Pay Ratio." Press release no. 2015-160, August 5, 2015.

TAB 2

Form **990**

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

▶ Do not enter social security numbers on this form as it may be made public.

▶ **Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

Department of the Treasury
Internal Revenue Service

**A For the 2020 calendar year, or tax year beginning 07-01-2020 , and ending 06-30-2021**

**B** Check if applicable:
- ☐ Address change
- ☐ Name change
- ☐ Initial return
- ☐ Final return/terminated
- ☐ Amended return
- ☐ Application pending

**C** Name of organization
CFHS HOLDINGS INC

Doing business as
CEDARS-SINAI MARINA DEL REY HOSPITAL

Number and street (or P.O. box if mail is not delivered to street address)
4650 LINCOLN BLVD

Room/suite

City or town, state or province, country, and ZIP or foreign postal code
MARINA DEL REY, CA 90292

**D Employer identification number**
20-1645949

E Telephone number
(310) 823-8911

**G** Gross receipts $ 139,933,345

**F** Name and address of principal officer:
JEFFREY SMITH
8700 BEVERLY BLVD
LOS ANGELES, CA 90048

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No

**H(b)** Are all subordinates included? ☐ Yes ☐ No

If "No," attach a list. (see instructions)

**H(c)** Group exemption number ▶

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** ▶ WWW.MARINAHOSPITAL.COM

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other ▶

**L** Year of formation: 2004

**M** State of legal domicile: CA

## Part I Summary

*Activities & Governance*

**1** Briefly describe the organization's mission or most significant activities:
TO PROVIDE COMPASSIONATE, HIGH QUALITY HEALTHCARE.

**2** Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| **3** | Number of voting members of the governing body (Part VI, line 1a) | **3** | 6 |
| **4** | Number of independent voting members of the governing body (Part VI, line 1b) | **4** | 4 |
| **5** | Total number of individuals employed in calendar year 2020 (Part V, line 2a) | **5** | 941 |
| **6** | Total number of volunteers (estimate if necessary) | **6** | 4 |
| **7a** | Total unrelated business revenue from Part VIII, column (C), line 12 | **7a** | 0 |
| **b** | Net unrelated business taxable income from Form 990-T, line 39 | **7b** | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| *Revenue* | | | |
| **8** | Contributions and grants (Part VIII, line 1h) | 4,423,504 | 12,790,178 |
| **9** | Program service revenue (Part VIII, line 2g) | 131,327,124 | 126,842,350 |
| **10** | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 0 | 0 |
| **11** | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 365,475 | 300,817 |
| **12** | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 136,116,103 | 139,933,345 |
| *Expenses* | | | |
| **13** | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 150,000 | 175,000 |
| **14** | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| **15** | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 75,343,120 | 78,643,531 |
| **16a** | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| **b** | Total fundraising expenses (Part IX, column (D), line 25) ▶0 | | |
| **17** | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 60,241,138 | 74,389,149 |
| **18** | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 135,734,258 | 153,207,680 |
| **19** | Revenue less expenses. Subtract line 18 from line 12 | 381,845 | -13,274,335 |

| *Net Assets or Fund Balances* | | Beginning of Current Year | End of Year |
|---|---|---|---|
| **20** | Total assets (Part X, line 16) | 147,959,387 | 166,247,571 |
| **21** | Total liabilities (Part X, line 26) | 77,591,471 | 97,636,525 |
| **22** | Net assets or fund balances. Subtract line 21 from line 20 | 70,367,916 | 68,611,046 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

**Sign Here**

▶ Signature of officer — Date: 2022-05-06

▶ NOLLY DAVE-SACHDEV CHIEF FINANCIAL OFFICER
Type or print name and title

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN P00023315 |
|---|---|---|---|---|

Firm's name ▶ ERNST & YOUNG US LLP — Firm's EIN ▶ 34-6565596

Firm's address ▶ 18101 VON KARMAN AVENUE SUITE 1700
IRVINE, CA 92612 — Phone no. (949) 794-2300

May the IRS discuss this return with the preparer shown above? (see instructions) ☑ **Yes** ☐ **No**

**Part III** **Statement of Program Service Accomplishments**

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . ☑

**1** Briefly describe the organization's mission:

* TO PROVIDE COMPASSIONATE, HIGH QUALITY HEALTHCARE FOR RESIDENTS IN MARINA DEL REY AND SURROUNDING BEACH COMMUNITIES AND THE WESTSIDE OF LOS ANGELES.(SEE SCHEDULE O FOR CONTINUATION)(CONTINUED FROM PAGE 2)* TO BE RECOGNIZED FOR MEDICAL EXCELLENCE IN SPINE, ORTHOPEDICS, SURGICAL WEIGHT LOSS, MINIMALLY INVASIVE SURGERY, NON-INVASIVE CARDIOLOGY AND GENERAL ACUTE MEDICAL CARE.

**2** Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code: ) (Expenses $ 116,569,882 including grants of $ 175,000 ) (Revenue $ 127,143,167 )

CFHS HOLDINGS, INC., DOING BUSINESS AS CEDARS-SINAI MARINA DEL REY HOSPITAL ("THE HOSPITAL"), IS A 133-BED NON-PROFIT HOSPITAL. THE HOSPITAL IS FULLY ACCREDITED WITH THE NATIONALLY RECOGNIZED JOINT COMMISSION ON ACCREDITATION OF HEALTHCARE ORGANIZATIONS FOR SAFE AND EFFECTIVE QUALITY CARE ("THE JOINT COMMISSION"). THE HOSPITAL HAS THE FOLLOWING INPATIENT AND OUTPATIENT SERVICES: 24-HOUR EMERGENCY CARE INCLUDING TELESTROKE SERVICES IN COLLABORATION WITH NEUROSURGEONS FROM CEDARS-SINAI MEDICAL CENTER (CSMC), ICU, TELEMETRY, INPATIENT AND OUTPATIENT DIAGNOSTIC SERVICES AND ADVANCED SURGICAL TECHNOLOGY, CAREFULLY PRACTICED UNDER THE SUPERVISION AND SKILLED HANDS OF WORLD-CLASS PHYSICIANS, NURSES AND ALLIED HEALTH CARE PROFESSIONALS.(SEE SCHEDULE O FOR CONTINUATION)(CONTINUED FROM PAGE 2)HOSPITAL SERVICES:-24-HOUR EMERGENCY SERVICES-TELEMEDICINE STROKE PROGRAM IN THE EMERGENCY ROOM-INTENSIVE CARE UNIT-TELEMETRY/MEDICAL SURGICAL UNITS (CARDIAC MONITORED BEDS)-INPATIENT AND OUTPATIENT DIAGNOSTIC SERVICES (LAB, IMAGING, GI, CARDIOLOGY)-OUTPATIENT BARIATRIC CLINIC (THE MARINA WEIGHT LOSS CENTER) (UNLICENSED BY CMS AS OF MAY 2020 DUE TO MOVE ACROSS THE STREET AND OUTSIDE OF HOSPITAL'S PROXIMITY AS PER CDPH STANDARDS)-OUTPATIENT SPINE CLINIC (THE MARINA SPINE CENTER)-MINIMALLY INVASIVE SURGICAL SERVICES (FOR HERNIA, APPENDECTOMY, GALL BLADDER, COLON, ANTI-REFLUX, BARIATRIC, SPINE, TOTAL HIP, TOTAL KNEE CASES), UTILIZING THE DA VINCI ROBOT AND THE MAKO STRYKER ORTHO ROBOT.HOSPITAL STATISTICS:EMPLOYEES: 728PHYSICIANS WITH HOSPITAL PRIVILEGES 312SURGEONS WITH HOSPITAL PRIVILEGES 174NUMBER OF SURGERIES ANNUALLY 2,929NUMBER OF ER VISITS ANNUALLY 30,721PAYOR % - MEDICARE: 31.2%, MEDI-CAL: 6.0%, COMMERCIAL AND MANAGED CARE: 55%, SELF PAY AND OTHER: 7.8%HOSPITAL OPERATIONS:THE HOSPITAL UPGRADED THE CLINICAL ELECTRONIC MEDICAL RECORD SYSTEM AND CONVERTED TO THE EPIC EHR IN MAY OF 2017. THERE WERE CONTINUED ENHANCEMENTS TO THE REPORTING CAPABILITIES IN 2020 AND THE UPGRADED TECHNOLOGY AND REPORTING CAPABILITIES HAVE IMPROVED THE ABILITY OF PHYSICIANS AND CLINICAL STAFF TO VIEW PRIOR VISIT RECORDS, ENHANCE PATIENT SAFETY VIA ALERTS, INCREASE DATA ANALYSIS AND HAS DECREASED THE AMOUNT OF LABOR FOR SCANNING OF PAPER DOCUMENTS AND ANALYSIS OF DATA.COMMUNITY SUPPORT AND ENGAGEMENT HIGHLIGHTS:- OUR TWO OUTPATIENT CLINICS ARE NATIONALLY RECOGNIZED OUTPATIENT CARE CENTERS. THE MARINA SPINE CENTER IS A MULTIDISCIPLINARY CENTER OFFERING COMPREHENSIVE SPINE SERVICES, FROM EVALUATION AND DIAGNOSIS LEADING TO SURGERY AND REHABILITATION. THE MARINA WEIGHT LOSS CENTER (UNLICENSED AS OF MAY 2020) IS ACCREDITATED BY THE METABOLIC AND BARIATRIC SURGERY ACCREDITATION AND QUALITY IMPROVEMENT PROGRAM (MBSAQIP) FOR EXCELLENCE.- CEDARS-SINAI MARINA DEL REY HOSPITAL IS THE ONLY HOSPITAL LOCATED WITHIN LOS ANGELES' 11TH DISTRICT AND IS ACTIVELY INVOLVED AS A COMMUNITY PARTNER. THE HOSPITAL HAS ESTABLISHED KEY PARTNERSHIPS WITH LOCAL ORGANIZATIONS TO REDUCE HEALTH DISPARITIES, IMPROVE ACCESS TO CARE, AND PROMOTION OF OVERALL HEALTH AND WELLBEING FOR VULNERABLE MEMBERS OF OUR COMMUNITY.- THE HOSPITAL LEADERSHIP ENGAGES WITH THE COMMUNITY IN A VARIETY OF WAYS ON A CONSISTENT BASIS. FACILITY STAFF REPRESENT THE HOSPITAL AT THE FOLLOWING LOCAL COMMUNITY EVENTS AND COLLABORATIVES LISTED BELOW. PARTICIPATION HAS BEEN PRIMARILY VIRTUAL DUE TO THE PANDEMIC. *PLAYA VISTA SUNRISE ROTARY CLUB *MAR VISTA FAMILY CENTER *VENICE BOYS AND GIRLS CLUB, VACCINATION CLINICS *VENICE FAMILY CLINIC *VENICE MARINA COUNCIL *DEL REY NEIGHBORHOOD COUNCIL *VENICE NEIGHBORHOOLD COUNCIL - BOARD MEETING *THE PEOPLE CONCERN (FORMERLY OPCC) *ST. JOSEPH CENTER - CES (COORDINATED ENTRY SYSTEM) *LAX COASTAL CHAMBER OF COMMERCE SPECIFIC HOSPITAL STAFF ATTEND MONTHLY OR QUARTERLY MEETINGS IN A VIRTUAL SETTING WHEN AVAILABLE.- CEDARS-SINAI MARINA DEL REY HOSPITAL ADOPTS FAMILIES DURING THE HOLIDAY SEASON THROUGH SEVERAL OF THE ABOVE AGENCIES AND HOSPITAL LEADERSHIP ACTIVELY PARTICIPATES IN OTHER FUND-RAISING COMMUNITY EVENTS THROUGH BOTH MONETARY AND EMPLOYEE SUPPORT.PROGRAM ACCOMPLISHMENTS/DEVELOPMENT:- CEDARS-SINAI MARINA DEL REY HOSPITAL IN COLLABORATION WITH CSMC NEUROLOGY DEPARTMENT HAS BEEN UTILIZING TELEMEDICINE IN THE EMERGENCY ROOM SINCE FEBRUARY 2017 TO SUCCESSFULLY DIAGNOSE STROKE AND EXPEDITE TREATMENT. THE HOSPITAL ALSO STARTED A TELE-ICU/ICU INTENSIVIST PROGRAM WITH PHYSICIANS FROM CSMC IN 2020 IN RESPONSE TO THE HIGHER ACUITY PATIENTS AS A RESULT OF COVID-19. THE HOSPITAL IN COLLABORATION WITH CSMC, IS ALSO SEEKING TO OBTAIN THE AMERICAN HEART/AMERICAN STROKE ASSOCIATION AND THE JOINT COMMISSION PRIMARY STROKE CENTER CERTIFICATION IN 2022.- FURTHER, SPECIALTY PHYSICIANS ARE ROTATING THROUGH A CLINIC ADJACENT TO THE HOSPITAL TO COVER SPECIALTIES NOT PREVIOUSLY OFFERED AT THE HOSPITAL. THESE SERVICES PROVIDED BY CSMC FOUNDATION PHYSICIANS INCLUDE ENT, GYN, CARDIOLOGY, GI, AND NEUROLOGY. THE SPECIALISTS ALTERNATE DAYS OF THE WEEK MAKING FOLLOW-UP APPOINTMENTS EASIER FOR PATIENTS WHO HAVE BEEN SEEN AS INPATIENTS IN THE HOSPITAL. THIS ALSO HELPS REDUCE READMISSIONS AND IS CONVENIENT FOR THE PATIENTS IN THE COMMUNITY.

**4b** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4c** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4d** Other program services (Describe in Schedule O.)
(Expenses $ including grants of $ ) (Revenue $ )

**4e** **Total program service expenses** ▶ 116,569,882

**Part IV Checklist of Required Schedules**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | 1 | Yes | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? | 2 | Yes | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | 3 | | No |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | 4 | | No |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* | 5 | | No |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,*Part I | 6 | | No |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | 7 | | No |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III | 8 | | No |
| 9 | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | 9 | | No |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | 10 | | No |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. | 11a | Yes | |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | 11b | | No |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | 11c | | No |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | 11d | | No |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | 11e | Yes | |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | 11f | Yes | |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | 12a | | No |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | 12b | Yes | |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | 13 | | No |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | 14a | | No |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | 14b | | No |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | 15 | | No |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | 16 | | No |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I*(see instructions) | 17 | | No |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | 18 | | No |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | 19 | | No |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | 20a | Yes | |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | 20b | Yes | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | 21 | Yes | |

**Part IV** **Checklist of Required Schedules** *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | | No |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | Yes | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | 24a | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L,* Part I | 25a | | No |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L,* Part I | 25b | | No |
| 26 | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | 26 | Yes | |
| 27 | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L,*Part III | 27 | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | 28a | | No |
| b | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | 28b | Yes | |
| c | A 35% controlled entity of one or more individuals and/or organizations described in lines 28a or 28b? *If "Yes," complete Schedule L, Part IV* | 28c | Yes | |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | No |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | No |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | No |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | Yes | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | Yes | |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | Yes | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | No |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | No |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. | 38 | Yes | |

**Part V** **Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response or note to any line in this Part V ☐

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable | 1a | 0 | | | |
| b | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable | 1b | 0 | | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | | 1c | Yes | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance** *(continued)*

| | | | | Yes | No |
|---|---|---|---|---|---|
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | 2a 941 | | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | | 2b | Yes | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | | 3a | | No |
| b | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation in Schedule O* | | 3b | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | 4a | | No |
| b | If "Yes," enter the name of the foreign country: ▶ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | 5a | | No |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | 5b | | No |
| c | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | | 5c | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | 6a | | No |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | 6b | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | 7a | | No |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | 7b | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | 7c | | No |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | 7d | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | 7e | | No |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | 7f | | No |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | 7g | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | 7h | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | 8 | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? | | 9a | | |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | 9b | | |
| 10 | **Section 501(c)(7) organizations.** Enter: | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | 10a | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | 10b | | | |
| 11 | **Section 501(c)(12) organizations.** Enter: | | | | |
| a | Gross income from members or shareholders | 11a | | | |
| b | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) | 11b | | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | 12a | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | 12b | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O. | | 13a | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | 13b | | | |
| c | Enter the amount of reserves on hand | 13c | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | | 14a | | No |
| b | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | 14b | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see instructions and file Form 4720, Schedule N. | | 15 | | No |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | 16 | | No |

**Part VI** **Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI . . . ☑

**Section A. Governing Body and Management**

| | | Line | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year — **1a** 6 <br> If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent — **1b** 4 | | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | 2 | | No |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | 3 | | No |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | 4 | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? | 5 | | No |
| 6 | Did the organization have members or stockholders? | 6 | Yes | |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | 7a | Yes | |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | 7b | Yes | |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | |
| a | The governing body? | 8a | Yes | |
| b | Each committee with authority to act on behalf of the governing body? | 8b | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | 9 | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | Line | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? | 10a | | No |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | 11a | Yes | |
| b | Describe in Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | 12a | Yes | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | 12b | Yes | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* | 12c | Yes | |
| 13 | Did the organization have a written whistleblower policy? | 13 | Yes | |
| 14 | Did the organization have a written document retention and destruction policy? | 14 | Yes | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official | 15a | | No |
| b | Other officers or key employees of the organization | 15b | | No |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | 16a | | No |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | 16b | | |

**Section C. Disclosure**

17 List the states with which a copy of this Form 990 is required to be filed ▶ CA

18 Section 6104 requires an organization to make its Form 1023 (or 1024-A if applicable), 990, and 990-T (501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

19 Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

20 State the name, address, and telephone number of the person who possesses the organization's books and records:
▶NOLLY DAVE-SACHDEV 4640 ADMIRALTY WAY SUITE 650 MARINA DEL REY, CA 90292 (310) 823-8911

**Part VII Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position: Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (1) THOMAS M PRISELAC<br>CHAIR | 3.00<br>73.00 | X | | | | | | 0 | 4,777,520 | 1,345,577 |
| (2) STEVEN KREMS MD<br>BOARD MEMBER | 2.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (3) LESLIE VERMUT<br>BOARD MEMBER | 2.00<br>7.00 | X | | | | | | 0 | 0 | 0 |
| (4) THOMAS J WAFER JR<br>BOARD MEMBER | 2.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (5) ROBERT G WATKINS IV MD<br>BOARD MEMBER | 12.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (6) WALTER ZIFKIN<br>BOARD MEMBER | 2.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (7) JEFFREY SMITH MD JD MMM<br>CHIEF EXECUTIVE OFFICER | 3.00<br>61.00 | | | X | | | | 0 | 1,749,907 | 57,487 |
| (8) BRYAN CROFT<br>SECRETARY | 3.00<br>55.00 | | | X | | | | 0 | 1,328,150 | 208,766 |
| (9) NOLLY DAVE-SACHDEV<br>CFO/TREASURER | 50.00<br>0.00 | | | X | | | | 357,302 | 0 | 21,654 |
| (10) JOANNE LAGUNA-KENNEDY<br>CHIEF NURSING OFFICER | 50.00<br>0.00 | | | | X | | | 575,651 | 0 | 34,593 |
| (11) SONIYA GANDHI MD<br>ASSOCIATE CHIEF MEDICAL OFFICER | 40.00<br>0.00 | | | | | X | | 410,802 | 0 | 44,900 |
| (12) DANIELLE GABELE<br>ASSOCIATE CHIEF NURSING OFFICER | 40.00<br>0.00 | | | | | X | | 311,940 | 0 | 14,028 |
| (13) MARGARET MORGAN<br>DIRECTOR OF HUMAN RESOURCE | 40.00<br>0.00 | | | | | X | | 303,798 | 0 | 18,987 |
| (14) SAGAR SABLE<br>EXEC DIRECTOR OF QUALITY & RISK MGMT | 40.00<br>0.00 | | | | | X | | 246,119 | 0 | 12,045 |
| (15) LAUREN AMATO<br>EXEC DIRECTOR OF SUPPORT SERVICES | 40.00<br>0.00 | | | | | X | | 243,629 | 0 | 19,934 |
| | | | | | | | | | | |
| | | | | | | | | | | |

**Part VII** **Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position: Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| | (D) | (E) | (F) |
|---|---|---|---|
| **1b Sub-Total** . . . . . . . . . . . . . . . . ▶ | | | |
| **c Total from continuation sheets to Part VII, Section A** . . . . ▶ | | | |
| **d Total (add lines 1b and 1c)** . . . . . . . . . . . ▶ | 2,449,241 | 7,855,577 | 1,777,971 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 214

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . | 3 | | No |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 | Yes | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization?*If "Yes," complete Schedule J for such person* . . . . . . . . . . | 5 | | No |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| AYA HEALTHCARE INC<br><br>5930 CORNERSTONE CRT W SUITE 300<br>SAN DIEGO, CA 92121 | CONTRACT LABOR HOSPITAL STAFF | 5,436,646 |
| AMBULATORY ANESTHESIA ASSOCIATES INC<br><br>7700 W SUNRISE BLVD PL-24<br>PLANTATION, FL 33322 | CONTRACT LABOR HOSPITAL STAFF | 1,067,650 |
| AURORA LAS ENCINAS LLC<br><br>2900 E DEL MAR BLVD<br>PASADENA, CA 91107 | OUTPATIENT PSYCHIATRIC SERVICES | 979,400 |
| BHC ALHAMBRA HOSPITAL<br><br>4619 N ROSEMEAD BLVD<br>ROSEMEAD, CA 91770 | OUTPATIENT PSYCHIATRIC SERVICES | 867,100 |
| COAST MEDICAL SERVICE INC<br><br>9560 W PICO BLVD<br>LOS ANGELES, CA 90035 | CONTRACT LABOR HOSPITAL STAFF | 594,325 |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ 24

Case 23-10787-JKS Doc 303-1 Filed 02/29/24 Page 47 of 327

**Part VIII Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . . ☐

**Contributions, Gifts, Grants and Other Similar Amounts**

| | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| 1a Federated campaigns | 1a | | | | | |
| b Membership dues | 1b | | | | | |
| c Fundraising events | 1c | | | | | |
| d Related organizations | 1d | | | | | |
| e Government grants (contributions) | 1e | 10,968,850 | | | | |
| f All other contributions, gifts, grants, and similar amounts not included above | 1f | 1,821,328 | | | | |
| g Noncash contributions included in lines 1a - 1f:$ | 1g | | | | | |
| h **Total.** Add lines 1a-1f ▶ | | | 12,790,178 | | | |

**Program Service Revenue**

| | Business Code | (A) | (B) | (C) | (D) |
|---|---|---|---|---|---|
| 2a COMMERCIAL AND MANAGED CARE | 622110 | 76,926,917 | 76,926,917 | | |
| b MEDICARE AND MEDICAL | 622110 | 38,092,697 | 38,092,697 | | |
| c SELF PAY AND OTHERS | 622110 | 11,770,940 | 11,770,940 | | |
| d SUBLEASE INCOME | 531120 | 51,796 | 51,796 | | |
| e | | | | | |
| f All other program service revenue. | | | | | |
| g **Total.** Add lines 2a–2f. ▶ | | 126,842,350 | | | |

**Other Revenue**

| | | | | (A) | (B) | (C) | (D) |
|---|---|---|---|---|---|---|---|
| 3 Investment income (including dividends, interest, and other similar amounts) ▶ | | | | | | | |
| 4 Income from investment of tax-exempt bond proceeds ▶ | | | | | | | |
| 5 Royalties ▶ | | | | | | | |
| | | (i) Real | (ii) Personal | | | | |
| 6a Gross rents | 6a | | | | | | |
| b Less: rental expenses | 6b | | | | | | |
| c Rental income or (loss) | 6c | | | | | | |
| d Net rental income or (loss) ▶ | | | | | | | |
| | | (i) Securities | (ii) Other | | | | |
| 7a Gross amount from sales of assets other than inventory | 7a | | | | | | |
| b Less: cost or other basis and sales expenses | 7b | | | | | | |
| c Gain or (loss) | 7c | | | | | | |
| d Net gain or (loss) ▶ | | | | | | | |
| 8a Gross income from fundraising events (not including $ ______ of contributions reported on line 1c). See Part IV, line 18 | 8a | | | | | | |
| b Less: direct expenses | 8b | | | | | | |
| c Net income or (loss) from fundraising events ▶ | | | | | | | |
| 9a Gross income from gaming activities. See Part IV, line 19 | 9a | | | | | | |
| b Less: direct expenses | 9b | | | | | | |
| c Net income or (loss) from gaming activities ▶ | | | | | | | |
| 10a Gross sales of inventory, less returns and allowances | 10a | | | | | | |
| b Less: cost of goods sold | 10b | | | | | | |
| c Net income or (loss) from sales of inventory ▶ | | | | | | | |

| Miscellaneous Revenue | Business Code | (A) | (B) | (C) | (D) |
|---|---|---|---|---|---|
| 11a OTHER REVENUE | 622110 | 300,817 | 300,817 | | |
| b | | | | | |
| c | | | | | |
| d All other revenue | | | | | |
| e **Total.** Add lines 11a–11d ▶ | | 300,817 | | | |
| 12 **Total revenue.** See instructions ▶ | | 139,933,345 | 127,143,167 | 0 | 0 |

Form 990 (2020) Page **10**

**Part IX Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . ☑

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| 1 Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | 175,000 | 175,000 | | |
| 2 Grants and other assistance to domestic individuals. See Part IV, line 22 | | | | |
| 3 Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. | | | | |
| 4 Benefits paid to or for members | | | | |
| 5 Compensation of current officers, directors, trustees, and key employees | 1,014,289 | 393,624 | 620,665 | |
| 6 Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | 39,481 | | 39,481 | |
| 7 Other salaries and wages | 63,620,199 | 42,888,705 | 20,731,494 | |
| 8 Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | 1,082,189 | 742,145 | 340,044 | |
| 9 Other employee benefits | 8,648,517 | 5,945,286 | 2,703,231 | |
| 10 Payroll taxes | 4,238,856 | 3,233,273 | 1,005,583 | |
| 11 Fees for services (non-employees): | | | | |
| a Management | 2,500,539 | 2,500,539 | | |
| b Legal | 38,966 | | 38,966 | |
| c Accounting | 15,985 | | 15,985 | |
| d Lobbying | | | | |
| e Professional fundraising services. See Part IV, line 17 | | | | |
| f Investment management fees | | | | |
| g Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 29,885,256 | 23,570,523 | 6,314,733 | |
| 12 Advertising and promotion | 180,363 | 51,389 | 128,974 | |
| 13 Office expenses | 3,022,115 | 1,861,916 | 1,160,199 | |
| 14 Information technology | 2,436,136 | 1,933,926 | 502,210 | |
| 15 Royalties | | | | |
| 16 Occupancy | 2,530,465 | 1,456,928 | 1,073,537 | |
| 17 Travel | 85,284 | 62,614 | 22,670 | |
| 18 Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| 19 Conferences, conventions, and meetings | 28,455 | 1,093 | 27,362 | |
| 20 Interest | 4,184 | | 4,184 | |
| 21 Payments to affiliates | 922,694 | 520,224 | 402,470 | |
| 22 Depreciation, depletion, and amortization | 4,304,193 | 3,111,018 | 1,193,175 | |
| 23 Insurance | 727,674 | 515,081 | 212,593 | |
| 24 Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| a MEDICAL SUPPLIES | 12,770,143 | 12,770,143 | | |
| b PROSTHESIS/IMPLANTS | 9,011,628 | 9,011,628 | | |
| c MEDI-CAL PROGRAM FEES | 5,141,638 | 5,141,638 | | |
| d FOOD - PATIENT CARE | 522,782 | 522,782 | | |
| e All other expenses | 260,649 | 160,407 | 100,242 | |
| 25 **Total functional expenses.** Add lines 1 through 24e | 153,207,680 | 116,569,882 | 36,637,798 | 0 |
| 26 **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

**Part X Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . ☐

| Section | Line | Description | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|---|---|
| Assets | 1 | Cash–non-interest-bearing | | | 31,668,535 | 1 | 35,700,686 |
| | 2 | Savings and temporary cash investments | | | 207,743 | 2 | 625,464 |
| | 3 | Pledges and grants receivable, net | | | | 3 | |
| | 4 | Accounts receivable, net | | | 29,702,811 | 4 | 35,028,585 |
| | 5 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | 27,308 | 5 | 17,308 |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | | | 6 | |
| | 7 | Notes and loans receivable, net | | | | 7 | |
| | 8 | Inventories for sale or use | | | 1,170,961 | 8 | 1,203,421 |
| | 9 | Prepaid expenses and deferred charges | | | 749,142 | 9 | 609,275 |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | 10a | 113,966,709 | | | |
| | b | Less: accumulated depreciation | 10b | 23,971,050 | 79,796,311 | 10c | 89,995,659 |
| | 11 | Investments—publicly traded securities | | | | 11 | |
| | 12 | Investments—other securities. See Part IV, line 11 | | | | 12 | |
| | 13 | Investments—program-related. See Part IV, line 11 | | | | 13 | |
| | 14 | Intangible assets | | | | 14 | |
| | 15 | Other assets. See Part IV, line 11 | | | 4,636,576 | 15 | 3,067,173 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) | | | 147,959,387 | 16 | 166,247,571 |
| Liabilities | 17 | Accounts payable and accrued expenses | | | 20,143,252 | 17 | 23,641,320 |
| | 18 | Grants payable | | | | 18 | |
| | 19 | Deferred revenue | | | | 19 | |
| | 20 | Tax-exempt bond liabilities | | | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | | 1,303,244 | 23 | 0 |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | | | 56,144,975 | 25 | 73,995,205 |
| | 26 | **Total liabilities.** Add lines 17 through 25 | | | 77,591,471 | 26 | 97,636,525 |
| Net Assets or Fund Balances | | **Organizations that follow FASB ASC 958, check here ▶ ☑ and complete lines 27, 28, 32, and 33.** | | | | | |
| | 27 | Net assets without donor restrictions | | | 70,367,916 | 27 | 68,611,046 |
| | 28 | Net assets with donor restrictions | | | | 28 | |
| | | **Organizations that do not follow FASB ASC 958, check here ▶ ☐ and complete lines 29 through 33.** | | | | | |
| | 29 | Capital stock or trust principal, or current funds | | | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund | | | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds | | | | 31 | |
| | 32 | Total net assets or fund balances | | | 70,367,916 | 32 | 68,611,046 |
| | 33 | Total liabilities and net assets/fund balances | | | 147,959,387 | 33 | 166,247,571 |

## Part XI Reconcilliation of Net Assets

Check if Schedule O contains a response or note to any line in this Part XI ☑

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 139,933,345 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | 2 | 153,207,680 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | 3 | -13,274,335 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) | 4 | 70,367,916 |
| 5 | Net unrealized gains (losses) on investments | 5 | |
| 6 | Donated services and use of facilities | 6 | |
| 7 | Investment expenses | 7 | |
| 8 | Prior period adjustments | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | 11,517,465 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | 10 | 68,611,046 |

## Part XII Financial Statements and Reporting

Check if Schedule O contains a response or note to any line in this Part XII ☑

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash ☑ Accrual ☐ Other ______<br>If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | 2a | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? | 2b | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☑ Consolidated basis ☐ Both consolidated and separate basis | | | |
| c | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | 2c | Yes | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | 3a | Yes | |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | 3b | Yes | |

| efile GRAPHIC print | Submission Date - 2022-05-06 | DLN: 93493126020952 |
|---|---|---|

**SCHEDULE A (Form 990 or 990EZ)**

Department of the Treasury Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**
**▶ Attach to Form 990 or Form 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**Name of the organization**
CEHS HOLDINGS INC

**Employer identification number**
20-1645949

**Part I Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990 or 990-EZ).)

3 ☑ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)**. (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box in lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ______

g Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 10 above (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | Yes | No | | |
| | | | | | | |
| | | | | | | |
| Total | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 11285F **Schedule A (Form 990 or 990-EZ) 2020**

**Part II** **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** 2020 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") | | | | | | |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| **4** **Total.** Add lines 1 through 3 | | | | | | |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f). | | | | | | |
| **6** **Public support.** Subtract line 5 from line 4. | | | | | | |

**Section B. Total Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** 2020 | **(f)** Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4. | | | | | | |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on. | | | | | | |
| **10** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). | | | | | | |
| **11** **Total support.** Add lines 7 through 10 | | | | | | |

**12** Gross receipts from related activities, etc. (see instructions) . . . . . **12**

**13** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

**14** Public support percentage for 2020 (line 6, column (f) divided by line 11, column (f)) . . . . . **14**

**15** Public support percentage for 2019 Schedule A, Part II, line 14 . . . . . **15**

**16a** **33 1/3% support test—2020.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**b** **33 1/3% support test—2019.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**17a** **10%-facts-and-circumstances test—2020.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**b** **10%-facts-and-circumstances test—2019.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**18** **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . . ▶ ☐

**Part III Support Schedule for Organizations Described in Section 509(a)(2)**

(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** 2020 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . . | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| **c** Add lines 7a and 7b. . | | | | | | |
| **8** **Public support.** (Subtract line 7c from line 6.) | | | | | | |

**Section B. Total Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** 2020 | **(f)** Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6. . . | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| **c** Add lines 10a and 10b. | | | | | | |
| **11** Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on. | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12.). . | | | | | | |

**14** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

| | | | |
|---|---|---|---|
| **15** | Public support percentage for 2020 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . | **15** | |
| **16** | Public support percentage from 2019 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . . | **16** | |

**Section D. Computation of Investment Income Percentage**

| | | | |
|---|---|---|---|
| **17** | Investment income percentage for **2020** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | **17** | |
| **18** | Investment income percentage from **2019** Schedule A, Part III, line 17 . . . . . . . . . . . . . . | **18** | |

**19a** **33 1/3% support tests—2020.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . ▶ ☐

**b** **33 1/3% support tests—2019.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐

**Part IV Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | Line | Yes | No |
|---|---|---|---|---|
| 1 | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | 1 | | |
| 2 | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | 2 | | |
| 3a | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | 3a | | |
| b | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination.* | 3b | | |
| c | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use.* | 3c | | |
| 4a | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | 4a | | |
| b | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | 4b | | |
| c | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | 4c | | |
| 5a | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in **Part VI,** including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | 5a | | |
| b | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | 5b | | |
| c | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | 5c | | |
| 6 | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI.*** | 6 | | |
| 7 | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ) .* | 7 | | |
| 8 | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ).* | 8 | | |
| 9a | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI.*** | 9a | | |
| b | Did one or more disqualified persons (as defined in line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI.*** | 9b | | |
| c | Did a disqualified person (as defined in line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI.*** | 9c | | |
| 10a | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | 10a | | |
| b | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | 10b | | |

**Part IV Supporting Organizations** (continued)

| | | | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described in lines 11b and 11c below, the governing body of a supported organization? | **11a** | | |
| **b** | A family member of a person described in 11a above? | **11b** | | |
| **c** | A 35% controlled entity of a person described in line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in* ***Part VI****.* | **11c** | | |

**Section B. Type I Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in* ***Part VI*** *how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in* ***Part VI*** *how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | **2** | | |

**Section C. Type II Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in* ***Part VI*** *how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** | | |

**Section D. All Type III Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in* ***Part VI*** *how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** | | |
| **3** | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in* ***Part VI*** *the role the organization's supported organizations played in this regard.* | **3** | | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

**1** Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

**a** ☐ The organization satisfied the Activities Test. Complete **line 2** below.

**b** ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.

**c** ☐ The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

**2** Activities Test. **Answer lines 2a and 2b below.**

| | | | Yes | No |
|---|---|---|---|---|
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in* ***Part VI identify those supported organizations and explain*** *how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** | | |
| **b** | Did the activities described in line 2a constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in* ***Part VI*** *the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** | | |
| **3** | Parent of Supported Organizations. **Answer lines 3a and 3b below.** | | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations?*If "Yes" or "No" provide details in* ***Part VI.*** | **3a** | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in* ***Part VI.*** *the role played by the organization in this regard.* | **3b** | | |

## Part V Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations

**1** ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 *(explain in **Part VI**)*. **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| | **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| **1** | Net short-term capital gain | **1** | | |
| **2** | Recoveries of prior-year distributions | **2** | | |
| **3** | Other gross income (see instructions) | **3** | | |
| **4** | Add lines 1 through 3 | **4** | | |
| **5** | Depreciation and depletion | **5** | | |
| **6** | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | **6** | | |
| **7** | Other expenses (see instructions) | **7** | | |
| **8** | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | **8** | | |

| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| **1** | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | **1** | | |
| **a** | Average monthly value of securities | **1a** | | |
| **b** | Average monthly cash balances | **1b** | | |
| **c** | Fair market value of other non-exempt-use assets | **1c** | | |
| **d** | **Total** (add lines 1a, 1b, and 1c) | **1d** | | |
| **e** | **Discount** claimed for blockage or other factors (*explain in detail in **Part VI***): | | | |
| **2** | Acquisition indebtedness applicable to non-exempt use assets | **2** | | |
| **3** | Subtract line 2 from line 1d | **3** | | |
| **4** | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | **4** | | |
| **5** | Net value of non-exempt-use assets (subtract line 4 from line 3) | **5** | | |
| **6** | Multiply line 5 by 0.035 | **6** | | |
| **7** | Recoveries of prior-year distributions | **7** | | |
| **8** | **Minimum Asset Amount** (add line 7 to line 6) | **8** | | |

| | **Section C - Distributable Amount** | | | Current Year |
|---|---|---|---|---|
| **1** | Adjusted net income for prior year (from Section A, line 8, Column A) | **1** | | |
| **2** | Enter 85% of line 1 | **2** | | |
| **3** | Minimum asset amount for prior year (from Section B, line 8, Column A) | **3** | | |
| **4** | Enter greater of line 2 or line 3 | **4** | | |
| **5** | Income tax imposed in prior year | **5** | | |
| **6** | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | **6** | | |

**7** ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Part V** **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** (continued)

| **Section D - Distributions** | | **Current Year** |
|---|---|---|
| **1** Amounts paid to supported organizations to accomplish exempt purposes | **1** | |
| **2** Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | **2** | |
| **3** Administrative expenses paid to accomplish exempt purposes of supported organizations | **3** | |
| **4** Amounts paid to acquire exempt-use assets | **4** | |
| **5** Qualified set-aside amounts (*prior IRS approval required - provide details in* ***Part VI***) | **5** | |
| **6** Other distributions (*describe in* ***Part VI***). See instructions | **6** | |
| **7** **Total annual distributions.** Add lines 1 through 6. | **7** | |
| **8** Distributions to attentive supported organizations to which the organization is responsive (*provide details in* ***Part VI***). See instructions | **8** | |
| **9** Distributable amount for 2020 from Section C, line 6 | **9** | |
| **10** Line 8 amount divided by Line 9 amount | **10** | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** **Excess Distributions** | **(ii)** **Underdistributions Pre-2020** | **(iii)** **Distributable Amount for 2020** |
|---|---|---|---|
| **1** Distributable amount for 2020 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2020 (reasonable cause required-- *explain in* ***Part VI***). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2020: | | | |
| **a** From 2015. . . . . . . | | | |
| **b** From 2016. . . . . . . | | | |
| **c** From 2017. . . . . . . | | | |
| **d** From 2018. . . . . . . | | | |
| **e** From 2019. . . . . . . | | | |
| **f** **Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2020 distributable amount | | | |
| **i** Carryover from 2015 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** Distributions for 2020 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2020 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2020, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **6** Remaining underdistributions for 2020. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **7** **Excess distributions carryover to 2021.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2016. . . . . | | | |
| **b** Excess from 2017. . . . . | | | |
| **c** Excess from 2018. . . . . | | | |
| **d** Excess from 2019. . . . . | | | |
| **e** Excess from 2020. . . . . | | | |

**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions).

**Facts And Circumstances Test**

| Return Reference | Explanation |
| --- | --- |

| efile GRAPHIC print | Submission Date - 2022-05-06 | DLN: 93493126020952 |
|---|---|---|

**SCHEDULE D (Form 990)**

Department of the Treasury Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**Name of the organization**
CFHS HOLDINGS INC

**Employer identification number**
20-1645949

**Part I Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.** Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

**Part II Conservation Easements.** Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)
☐ Preservation of an historically important land area
☐ Protection of natural habitat
☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶

4 Number of states where property subject to conservation easement is located ▶

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

**Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.** Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 ▶ $

(ii) Assets included in Form 990, Part X ▶ $

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 ▶ $

b Assets included in Form 990, Part X ▶ $

**Part III** **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

- **a** ☐ Public exhibition
- **b** ☐ Scholarly research
- **c** ☐ Preservation for future generations
- **d** ☐ Loan or exchange programs
- **e** ☐ Other ..........

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?. . . ☐ **Yes** ☐ **No**

**Part IV** **Escrow and Custodial Arrangements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| **c** Beginning balance | **1c** | |
| **d** Additions during the year | **1d** | |
| **e** Distributions during the year | **1e** | |
| **f** Ending balance | **1f** | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V** **Endowment Funds.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance | | | | | |
| **b** Contributions | | | | | |
| **c** Net investment earnings, gains, and losses | | | | | |
| **d** Grants or scholarships | | | | | |
| **e** Other expenditures for facilities and programs | | | | | |
| **f** Administrative expenses | | | | | |
| **g** End of year balance | | | | | |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a** Board designated or quasi-endowment ▶ ..........

**b** Permanent endowment ▶ ..........

**c** Term endowment ▶ ..........

The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| **(i)** Unrelated organizations | **3a(i)** | | |
| **(ii)** Related organizations | **3a(ii)** | | |
| **b** If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? | **3b** | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI** **Land, Buildings, and Equipment.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land | | 49,160,000 | | 49,160,000 |
| **b** Buildings | | 39,572,652 | 8,236,117 | 31,336,535 |
| **c** Leasehold improvements | | 126,458 | 94,843 | 31,615 |
| **d** Equipment | | 21,819,850 | 12,872,609 | 8,947,241 |
| **e** Other | | 3,287,749 | 2,767,481 | 520,268 |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* ▶ | | | | 89,995,659 |

**Part VII Investments—Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b.See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives | | |
| (2) Closely-held equity interests | | |
| (3)Other | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| (I) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col. (B) line 12.)* ▶ | | |

**Part VIII Investments—Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| (10) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 13.)* ▶ | | |

**Part IX Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| (10) | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* ▶ | |

**Part X Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| 1. (a) Description of liability | (b) Book value |
|---|---|
| (1) Federal income taxes | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 25.)* ▶ | 73,995,205 |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☑

**Part XI Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains (losses) on investments | 2a | | | |
| b | Donated services and use of facilities | 2b | | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | |
| 3 | Subtract line **2e** from line **1** | | | 3 | |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | |
| 5 | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) | | | 5 | |

**Part XII Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | 1 | |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | 2a | | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | |
| 3 | Subtract line **2e** from line **1** | | | 3 | |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | |
| 5 | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) | | | 5 | |

**Part XIII Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| PART X, LINE 2: | THE FOLLOWING STATEMENT IS TAKEN FROM THE CONSOLIDATED AUDITED FINANCIAL STATEMENTS OF CEDARS-SINAI HEALTH SYSTEM THAT INCLUDES CFHS HOLDINGS, INC. THE ORGANIZATION COMPLETED AN ANALYSIS OF ITS TAX POSITIONS, IN ACCORDANCE WITH ASC 740, INCOME TAXES, AND DETERMINED THAT THERE ARE NO UNCERTAIN TAX POSITIONS TAKEN OR EXPECTED TO BE TAKEN. THE ORGANIZATION HAS RECOGNIZED NO INTEREST OR PENALTIES RELATED TO UNCERTAIN TAX POSITIONS. THE ORGANIZATION IS SUBJECT TO ROUTINE AUDITS BY THE TAXING JURISDICTIONS; HOWEVER, THERE ARE CURRENTLY NO AUDITS FOR ANY TAX PERIODS IN PROGRESS. THE ORGANIZATION BELIEVES IT IS NO LONGER SUBJECT TO INCOME TAX EXAMINATIONS FOR YEARS PRIOR TO 2017. |

efile GRAPHIC print | Submission Date - 2022-05-06 | DLN: 93493126020952

**SCHEDULE H (Form 990)**

Department of the Treasury Internal Revenue Service

# Hospitals

▶ Complete if the organization answered "Yes" on Form 990, Part IV, question 20.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990EZ* for instructions and the latest information.

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**Name of the organization**
CFHS HOLDINGS INC

**Employer identification number**
20-1645949

## Part I Financial Assistance and Certain Other Community Benefits at Cost

| | | | Yes | No |
|---|---|---|---|---|
| 1a | Did the organization have a financial assistance policy during the tax year? If "No," skip to question 6a | 1a | Yes | |
| b | If "Yes," was it a written policy? | 1b | Yes | |
| 2 | If the organization had multiple hospital facilities, indicate which of the following best describes application of the financial assistance policy to its various hospital facilities during the tax year.<br>☑ Applied uniformly to all hospital facilities ☐ Applied uniformly to most hospital facilities<br>☐ Generally tailored to individual hospital facilities | | | |
| 3 | Answer the following based on the financial assistance eligibility criteria that applied to the largest number of the organization's patients during the tax year. | | | |
| a | Did the organization use Federal Poverty Guidelines (FPG) as a factor in determining eligibility for providing *free* care? If "Yes," indicate which of the following was the FPG family income limit for eligibility for free care: | 3a | Yes | |
| | ☐ 100% ☐ 150% ☐ 200% ☑ Other 40000.0000000000 % | | | |
| b | Did the organization use FPG as a factor in determining eligibility for providing *discounted* care? If "Yes," indicate which of the following was the family income limit for eligibility for discounted care: | 3b | Yes | |
| | ☐ 200% ☐ 250% ☐ 300% ☐ 350% ☐ 400% ☑ Other 60000.0000000000 % | | | |
| c | If the organization used factors other than FPG in determining eligibility, describe in Part VI the criteria used for determining eligibility for free or discounted care. Include in the description whether the organization used an asset test or other threshold, regardless of income, as a factor in determining eligibility for free or discounted care. | | | |
| 4 | Did the organization's financial assistance policy that applied to the largest number of its patients during the tax year provide for free or discounted care to the "medically indigent"? | 4 | Yes | |
| 5a | Did the organization budget amounts for free or discounted care provided under its financial assistance policy during the tax year? | 5a | Yes | |
| b | If "Yes," did the organization's financial assistance expenses exceed the budgeted amount? | 5b | Yes | |
| c | If "Yes" to line 5b, as a result of budget considerations, was the organization unable to provide free or discounted care to a patient who was eligibile for free or discounted care? | 5c | | No |
| 6a | Did the organization prepare a community benefit report during the tax year? | 6a | Yes | |
| b | If "Yes," did the organization make it available to the public? | 6b | Yes | |
| | Complete the following table using the worksheets provided in the Schedule H instructions. Do not submit these worksheets with the Schedule H. | | | |

**7 Financial Assistance and Certain Other Community Benefits at Cost**

| Financial Assistance and Means-Tested Government Programs | (a) Number of activities or programs (optional) | (b) Persons served (optional) | (c) Total community benefit expense | (d) Direct offsetting revenue | (e) Net community benefit expense | (f) Percent of total expense |
|---|---|---|---|---|---|---|
| a Financial Assistance at cost (from Worksheet 1) | | | 2,179,902 | | 2,179,902 | 1.420 % |
| b Medicaid (from Worksheet 3, column a) | | | 32,024,419 | 17,048,539 | 14,975,880 | 9.780 % |
| c Costs of other means-tested government programs (from Worksheet 3, column b) | | | 789,697 | 525,433 | 264,264 | 0.170 % |
| d **Total** Financial Assistance and Means-Tested Government Programs | | | 34,994,018 | 17,573,972 | 17,420,046 | 11.370 % |
| **Other Benefits** | | | | | | |
| e Community health improvement services and community benefit operations (from Worksheet 4). | | | 232,657 | | 232,657 | 0.150 % |
| f Health professions education (from Worksheet 5) | | | | | | |
| g Subsidized health services (from Worksheet 6) | | | | | | |
| h Research (from Worksheet 7) | | | | | | |
| i Cash and in-kind contributions for community benefit (from Worksheet 8) | | | 175,000 | | 175,000 | 0.110 % |
| j **Total.** Other Benefits | | | 407,657 | | 407,657 | 0.260 % |
| k **Total.** Add lines 7d and 7j | | | 35,401,675 | 17,573,972 | 17,827,703 | 11.630 % |

**Part II Community Building Activities** Complete this table if the organization conducted any community building activities during the tax year, and describe in Part VI how its community building activities promoted the health of the communities it serves.

| | (a) Number of activities or programs (optional) | (b) Persons served (optional) | (c) Total community building expense | (d) Direct offsetting revenue | (e) Net community building expense | (f) Percent of total expense |
|---|---|---|---|---|---|---|
| 1 Physical improvements and housing | | | | | | |
| 2 Economic development | | | | | | |
| 3 Community support | | | | | | |
| 4 Environmental improvements | | | | | | |
| 5 Leadership development and training for community members | | | | | | |
| 6 Coalition building | | | | | | |
| 7 Community health improvement advocacy | | | | | | |
| 8 Workforce development | | | | | | |
| 9 Other | | | | | | |
| 10 Total | | | | | | |

**Part III Bad Debt, Medicare, & Collection Practices**

**Section A. Bad Debt Expense**

| | | | | Yes | No |
|---|---|---|---|---|---|
| 1 | Did the organization report bad debt expense in accordance with Healthcare Financial Management Association Statement No. 15? | | 1 | | No |
| 2 | Enter the amount of the organization's bad debt expense. Explain in Part VI the methodology used by the organization to estimate this amount. | 2 | 7,093,709 | | |
| 3 | Enter the estimated amount of the organization's bad debt expense attributable to patients eligible under the organization's financial assistance policy. Explain in Part VI the methodology used by the organization to estimate this amount and the rationale, if any, for including this portion of bad debt as community benefit. | 3 | 0 | | |
| 4 | Provide in Part VI the text of the footnote to the organization's financial statements that describes bad debt expense or the page number on which this footnote is contained in the attached financial statements. | | | | |

**Section B. Medicare**

| | | | |
|---|---|---|---|
| 5 | Enter total revenue received from Medicare (including DSH and IME) | 5 | 46,614,878 |
| 6 | Enter Medicare allowable costs of care relating to payments on line 5 | 6 | 61,604,561 |
| 7 | Subtract line 6 from line 5. This is the surplus (or shortfall) | 7 | -14,989,683 |

8 Describe in Part VI the extent to which any shortfall reported in line 7 should be treated as community benefit. Also describe in Part VI the costing methodology or source used to determine the amount reported on line 6. Check the box that describes the method used:

☐ Cost accounting system ☐ Cost to charge ratio ☑ Other

**Section C. Collection Practices**

| | | | Yes | No |
|---|---|---|---|---|
| 9a | Did the organization have a written debt collection policy during the tax year? | 9a | Yes | |
| b | If "Yes," did the organization's collection policy that applied to the largest number of its patients during the tax year contain provisions on the collection practices to be followed for patients who are known to qualify for financial assistance? Describe in Part VI | 9b | Yes | |

**Part IV Management Companies and Joint Ventures** (owned 10% or more by officers, directors, trustees, key employees, and physicians—see instructions)

| | (a) Name of entity | (b) Description of primary activity of entity | (c) Organization's profit % or stock ownership % | (d) Officers, directors, trustees, or key employees' profit % or stock ownership % | (e) Physicians' profit % or stock ownership % |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |

**Part V Facility Information**

**Section A. Hospital Facilities**

| | (list in order of size from largest to smallest—see instructions)<br>How many hospital facilities did the organization operate during the tax year? **1**<br>Name, address, primary website address, and state license number (and if a group return, the name and EIN of the subordinate hospital organization that operates the hospital facility) | Licensed hospital | General medical & surgical | Children's hospital | Teaching hospital | Critical access hospital | Research facility | ER–24 hours | ER–other | Other (describe) | Facility reporting group |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | CEDARS-SINAI MARINA DEL REY HOSPITAL<br>4650 LINCOLN BLVD<br>MARINA DEL REY, CA 90292<br>WWW.MARINAHOSPITAL.COM<br>930000096 | X | X | | | | | X | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

**Part V Facility Information** *(continued)*

**Section B. Facility Policies and Practices**

(Complete a separate Section B for each of the hospital facilities or facility reporting groups listed in Part V, Section A)

**Name of hospital facility or letter of facility reporting group** CEDARS-SINAI MARINA DEL REY HOSPITAL

**Line number of hospital facility, or line numbers of hospital facilities in a facility reporting group (from Part V, Section A):** 1

| | | | Yes | No |
|---|---|---|---|---|
| **Community Health Needs Assessment** | | | | |
| 1 | Was the hospital facility first licensed, registered, or similarly recognized by a state as a hospital facility in the current tax year or the immediately preceding tax year? | 1 | | No |
| 2 | Was the hospital facility acquired or placed into service as a tax-exempt hospital in the current tax year or the immediately preceding tax year? If "Yes," provide details of the acquisition in Section C. | 2 | | No |
| 3 | During the tax year or either of the two immediately preceding tax years, did the hospital facility conduct a community health needs assessment (CHNA)? If "No," skip to line 12. | 3 | Yes | |
| | If "Yes," indicate what the CHNA report describes (check all that apply): | | | |
| | a ☑ A definition of the community served by the hospital facility | | | |
| | b ☑ Demographics of the community | | | |
| | c ☑ Existing health care facilities and resources within the community that are available to respond to the health needs of the community | | | |
| | d ☑ How data was obtained | | | |
| | e ☑ The significant health needs of the community | | | |
| | f ☑ Primary and chronic disease needs and other health issues of uninsured persons, low-income persons, and minority groups | | | |
| | g ☑ The process for identifying and prioritizing community health needs and services to meet the community health needs | | | |
| | h ☑ The process for consulting with persons representing the community's interests | | | |
| | i ☑ The impact of any actions taken to address the significant health needs identified in the hospital facility's prior CHNA(s) | | | |
| | j ☑ Other (describe in Section C) | | | |
| 4 | Indicate the tax year the hospital facility last conducted a CHNA: 20 18 | | | |
| 5 | In conducting its most recent CHNA, did the hospital facility take into account input from persons who represent the broad interests of the community served by the hospital facility, including those with special knowledge of or expertise in public health? If "Yes," describe in Section C how the hospital facility took into account input from persons who represent the community, and identify the persons the hospital facility consulted | 5 | Yes | |
| 6 a | Was the hospital facility's CHNA conducted with one or more other hospital facilities? If "Yes," list the other hospital facilities in Section C | 6a | Yes | |
| b | Was the hospital facility's CHNA conducted with one or more organizations other than hospital facilities?" If "Yes," list the other organizations in Section C. | 6b | | No |
| 7 | Did the hospital facility make its CHNA report widely available to the public? | 7 | Yes | |
| | If "Yes," indicate how the CHNA report was made widely available (check all that apply): | | | |
| | a ☑ Hospital facility's website (list url): SEE PART V, PAGE 8 | | | |
| | b ☐ Other website (list url): | | | |
| | c ☑ Made a paper copy available for public inspection without charge at the hospital facility | | | |
| | d ☐ Other (describe in Section C) | | | |
| 8 | Did the hospital facility adopt an implementation strategy to meet the significant community health needs identified through its most recently conducted CHNA? If "No," skip to line 11. | 8 | Yes | |
| 9 | Indicate the tax year the hospital facility last adopted an implementation strategy: 20 18 | | | |
| 10 | Is the hospital facility's most recently adopted implementation strategy posted on a website? | 10 | Yes | |
| a | If "Yes" (list url): SEE PART V, PAGE 8 | | | |
| b | If "No," is the hospital facility's most recently adopted implementation strategy attached to this return? | 10b | | |
| 11 | Describe in Section C how the hospital facility is addressing the significant needs identified in its most recently conducted CHNA and any such needs that are not being addressed together with the reasons why such needs are not being addressed. | | | |
| 12a | Did the organization incur an excise tax under section 4959 for the hospital facility's failure to conduct a CHNA as required by section 501(r)(3)? | 12a | | No |
| b | If "Yes" on line 12a, did the organization file Form 4720 to report the section 4959 excise tax? | 12b | | |
| c | If "Yes" on line 12b, what is the total amount of section 4959 excise tax the organization reported on Form 4720 for all of its hospital facilities? $ | | | |

**Part V Facility Information** *(continued)*

**Financial Assistance Policy (FAP)**

**Name of hospital facility or letter of facility reporting group** CEDARS-SINAI MARINA DEL REY HOSPITAL

| | | | Yes | No |
|---|---|---|---|---|
| | Did the hospital facility have in place during the tax year a written financial assistance policy that: | | | |
| 13 | Explained eligibility criteria for financial assistance, and whether such assistance included free or discounted care? | 13 | Yes | |
| | If "Yes," indicate the eligibility criteria explained in the FAP: | | | |
| a | ☑ Federal poverty guidelines (FPG), with FPG family income limit for eligibility for free care of 400.000000000000 % and FPG family income limit for eligibility for discounted care of 600.000000000000 % | | | |
| b | ☐ Income level other than FPG (describe in Section C) | | | |
| c | ☑ Asset level | | | |
| d | ☑ Medical indigency | | | |
| e | ☑ Insurance status | | | |
| f | ☑ Underinsurance discount | | | |
| g | ☐ Residency | | | |
| h | ☐ Other (describe in Section C) | | | |
| 14 | Explained the basis for calculating amounts charged to patients? | 14 | Yes | |
| 15 | Explained the method for applying for financial assistance? | 15 | Yes | |
| | If "Yes," indicate how the hospital facility's FAP or FAP application form (including accompanying instructions) explained the method for applying for financial assistance (check all that apply): | | | |
| a | ☑ Described the information the hospital facility may require an individual to provide as part of his or her application | | | |
| b | ☑ Described the supporting documentation the hospital facility may require an individual to submit as part of his or her application | | | |
| c | ☑ Provided the contact information of hospital facility staff who can provide an individual with information about the FAP and FAP application process | | | |
| d | ☑ Provided the contact information of nonprofit organizations or government agencies that may be sources of assistance with FAP applications | | | |
| e | ☐ Other (describe in Section C) | | | |
| 16 | Was widely publicized within the community served by the hospital facility? | 16 | Yes | |
| | If "Yes," indicate how the hospital facility publicized the policy (check all that apply): | | | |
| a | ☑ The FAP was widely available on a website (list url): HTTPS://WWW.MARINAHOSPITAL.COM/FINANCIAL-OVERVIEW/ASSISTANCE | | | |
| b | ☑ The FAP application form was widely available on a website (list url): HTTPS://WWW.MARINAHOSPITAL.COM/FINANCIAL-OVERVIEW/ASSISTANCE | | | |
| c | ☑ A plain language summary of the FAP was widely available on a website (list url): HTTPS://WWW.MARINAHOSPITAL.COM/FINANCIAL-OVERVIEW/ASSISTANCE | | | |
| d | ☑ The FAP was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| e | ☑ The FAP application form was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| f | ☑ A plain language summary of the FAP was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| g | ☑ Individuals were notified about the FAP by being offered a paper copy of the plain language summary of the FAP, by receiving a conspicuous written notice about the FAP on their billing statements, and via conspicuous public displays or other measures reasonably calculated to attract patients' attention | | | |
| h | ☑ Notified members of the community who are most likely to require financial assistance about availability of the FAP | | | |
| i | ☑ The FAP, FAP application form, and plain language summary of the FAP were translated into the primary language(s) spoken by LEP populations | | | |
| j | ☐ Other (describe in Section C) | | | |

**Part V Facility Information** *(continued)*

**Billing and Collections**

**Name of hospital facility or letter of facility reporting group** CEDARS-SINAI MARINA DEL REY HOSPITAL

| | | | Yes | No |
|---|---|---|---|---|
| **17** | Did the hospital facility have in place during the tax year a separate billing and collections policy, or a written financial assistance policy (FAP) that explained all of the actions the hospital facility or other authorized party may take upon nonpayment? . . . . . | **17** | Yes | |
| **18** | Check all of the following actions against an individual that were permitted under the hospital facility's policies during the tax year before making reasonable efforts to determine the individual's eligibility under the facility's FAP: | | | |
| | **a** ☐ Reporting to credit agency(ies) | | | |
| | **b** ☐ Selling an individual's debt to another party | | | |
| | **c** ☐ Deferring, denying, or requiring a payment before providing medically necessary care due to nonpayment of a previous bill for care covered under the hospital facility's FAP | | | |
| | **d** ☐ Actions that require a legal or judicial process | | | |
| | **e** ☐ Other similar actions (describe in Section C) | | | |
| | **f** ☑ None of these actions or other similar actions were permitted | | | |
| **19** | Did the hospital facility or other authorized party perform any of the following actions during the tax year before making reasonable efforts to determine the individual's eligibility under the facility's FAP? . . . . . | **19** | | No |
| | If "Yes," check all actions in which the hospital facility or a third party engaged: | | | |
| | **a** ☐ Reporting to credit agency(ies) | | | |
| | **b** ☐ Selling an individual's debt to another party | | | |
| | **c** ☐ Deferring , denying, or requiring a payment before providing medically necessary care due to nonpayment of a previous bill for care covered under the hospital facility's FAP | | | |
| | **d** ☐ Actions that require a legal or judicial process | | | |
| | **e** ☐ Other similar actions (describe in Section C) | | | |
| **20** | Indicate which efforts the hospital facility or other authorized party made before initiating any of the actions listed (whether or not checked) in line 19. (check all that apply): | | | |
| | **a** ☑ Provided a written notice about upcoming ECAs (Extraordinary Collection Action) and a plain language summary of the FAP at least 30 days before initiating those ECAs (if not, describe in Section C) | | | |
| | **b** ☑ Made a reasonable effort to orally notify individuals about the FAP and FAP application process (if not, describe in Section C) | | | |
| | **c** ☑ Processed incomplete and complete FAP applications (if not, describe in Section C) | | | |
| | **d** ☑ Made presumptive eligibility determinations (if not, describe in Section C) | | | |
| | **e** ☐ Other (describe in Section C) | | | |
| | **f** ☐ None of these efforts were made | | | |

**Policy Relating to Emergency Medical Care**

| | | | Yes | No |
|---|---|---|---|---|
| **21** | Did the hospital facility have in place during the tax year a written policy relating to emergency medical care that required the hospital facility to provide, without discrimination, care for emergency medical conditions to individuals regardless of their eligibility under the hospital facility's financial assistance policy? . . . . . | **21** | Yes | |
| | If "No," indicate why: | | | |
| | **a** ☐ The hospital facility did not provide care for any emergency medical conditions | | | |
| | **b** ☐ The hospital facility's policy was not in writing | | | |
| | **c** ☐ The hospital facility limited who was eligible to receive care for emergency medical conditions (describe in Section C) | | | |
| | **d** ☐ Other (describe in Section C) | | | |

**Part V Facility Information** *(continued)*

**Charges to Individuals Eligible for Assistance Under the FAP (FAP-Eligible Individuals)**

**Name of hospital facility or letter of facility reporting group** CEDARS-SINAI MARINA DEL REY HOSPITAL

| | | Yes | No |
|---|---|---|---|
| **22** Indicate how the hospital facility determined, during the tax year, the maximum amounts that can be charged to FAP-eligible individuals for emergency or other medically necessary care. | | | |
| **a** ☐ The hospital facility used a look-back method based on claims allowed by Medicare fee-for-service during a prior 12-month period | | | |
| **b** ☑ The hospital facility used a look-back method based on claims allowed by Medicare fee-for-service and all private health insurers that pay claims to the hospital facility during a prior 12-month period | | | |
| **c** ☐ The hospital facility used a look-back method based on claims allowed by Medicaid, either alone or in combination with Medicare fee-for-service and all private health insurers that pay claims to the hospital facility during a prior 12-month period | | | |
| **d** ☐ The hospital facility used a prospective Medicare or Medicaid method | | | |
| **23** During the tax year, did the hospital facility charge any FAP-eligible individual to whom the hospital facility provided emergency or other medically necessary services more than the amounts generally billed to individuals who had insurance covering such care? | **23** | | No |
| If "Yes," explain in Section C. | | | |
| **24** During the tax year, did the hospital facility charge any FAP-eligible individual an amount equal to the gross charge for any service provided to that individual? | **24** | | No |
| If "Yes," explain in Section C. | | | |

**Part V Facility Information** *(continued)*

**Section C. Supplemental Information for Part V, Section B.** Provide descriptions required for Part V, Section B, lines 2, 3j, 5, 6a, 6b, 7d, 11, 13b, 13h, 15e, 16j, 18e, 19e, 20a, 20b, 20c, 20d, 20e, 21c, 21d, 23, and 24. If applicable, provide separate descriptions for each hospital facility in a facility reporting group, designated by facility reporting group letter and hospital facility line number from Part V, Section A ("A, 1," "A, 4," "B, 2," "B, 3," etc.) and name of hospital facility.

| Form and Line Reference | Explanation |
|---|---|
| CEDARS-SINAI MARINA DEL REY HOSPITAL | PART V, SECTION B, LINE 3J: THE CHNA HELPS TO IDENTIFY THE UNMET HEALTH NEEDS OF THE COMMUNITIES SERVED BY CEDARS-SINAI MARINA DEL REY HOSPITAL AND PROVIDES A FRAMEWORK FOR PRIORITIZING HOW THE HOSPITAL WILL ADDRESS UNMET COMMUNITY NEEDS THROUGH THE PROVISION OF COMMUNITY HEALTH SERVICES.CEDARS-SINAI MARINA DEL REY HOSPITAL'S COMMUNITY HEALTH NEEDS ASSESSMENT FOR JULY 1, 2018 THROUGH JUNE 30, 2021 WAS APPROVED BY ITS GOVERNING BODY ON MAY 29, 2019. COMMUNITY BENEFIT SERVICE AREACEDARS-SINAI MARINA DEL REY HOSPITAL (CSMDRH) IS LOCATED AT 4650 LINCOLN BLVD., MARINA DEL REY, CA, 90292. THE HOSPITAL'S SERVICE AREA ENCOMPASSES EIGHT ZIP CODES IN THE CITIES OF CULVER CITY, MAR VISTA, MARINA DEL REY, PLAYA DEL REY, PLAYA VISTA, SANTA MONICA, VENICE AND WESTCHESTER. PORTIONS OF THE SERVICE AREA ARE SERVED BY LOS ANGELES CITY COUNCIL DISTRICT 11. THE SERVICE AREA IS LOCATED IN LOS ANGELES COUNTY SERVICE PLANNING AREA 5 (SPA 5). CSMDRH TRACKS ZIP CODES OF ORIGIN FOR PATIENT ADMISSIONS. THE SERVICE AREA WAS DETERMINED FROM THE ZIP CODES THAT REFLECT A MAJORITY OF PATIENT ADMISSIONS FROM THE LOCAL GEOGRAPHIC AREA.CEDARS-SINAI MARINA DEL REY'S COMMUNITY BENEFIT SERVICE AREA (CURRENT)THE POPULATION OF THE CEDARS-SINAI MARINA DEL REY HOSPITAL (CSMDRH) SERVICE AREA IS 232,436. FROM 2011 TO 2016, THE POPULATION INCREASED BY 4.4%, HIGHER THAN THE 2.8% INCREASE IN POPULATION COUNTYWIDE.RACE/ETHNICITYTHE POPULATION CHARACTERISTICS FOR CEDARS-SINAI MARINA DEL REY'S COMMUNITY BENEFIT SERVICE AREA (CURRENT) ARE AS FOLLOWS: WHITE (54.2%), HISPANIC/LATINO (21.7%), ASIAN (12.2%), BLACKS/AFRICAN AMERICAN (6.7%), AMERICAN INDIAN/ALASKA NATIVE (.1%), NATIVE HAWAIIAN/PACIFIC ISLANDER (.1%), OTHER (4.9%)AGELESS THAN 18 YEARS (15.2%), 18-24 (9.3%), 25-64 (61.8%), GREATER THAN 65 YEARS (13.7%)GENDERFEMALE (50.4%), MALE (49.6%)CITIZENSHIPIN THE SERVICE AREA, 24% OF THE RESIDENTS ARE FOREIGN BORN, AND 48.3% OF THESE FOREIGN BORN ARE NOT CITIZENS.VETERANS4.1% OF THE RESIDENTS IN THE CSMDRH SERVICE AREA ARE VETERANS.SOCIOECONOMIC STATUSTHE CENSUS BUREAU ANNUALLY UPDATES OFFICIAL POVERTY POPULATION STATISTICS. FOR 2016, THE FEDERAL POVERTY LEVEL (FPL) WAS AN ANNUAL INCOME OF $11,880 FOR ONE PERSON AND $24,300 FOR A FAMILY OF FOUR. AMONG AREA RESIDENTS, 9.8% ARE AT OR BELOW 100% OF THE FEDERAL POVERTY LEVEL (FPL) AND 23.2% ARE AT 200% OF FPL OR BELOW (LOW INCOME). RESIDENTS LIVING BELOW THE POVERTY LINE IN CSMDRH SERVICE AREA (23.2%); LOS ANGELES COUNTY (39.6%)POVERTY LEVELS OF CHILDREN, SENIORS, AND FEMALES HEAD OF HOUSEHOLD WITH CHILDREN IN CSMDRH SERVICE AREA (22.2%); LOS ANGELES COUNTY (38.3%)UNEMPLOYMENTTHE UNEMPLOYMENT RATES OF THOSE CITIES WHOSE RATES WERE REPORTED FOR THE SERVICE AREA RANGE FROM 3.3% IN CULVER CITY TO 4.4% IN SANTA MONICA. LOS ANGELES COUNTY HAS AN UNEMPLOYMENT RATE OF 4.7%.HOUSEHOLDSIN THE SERVICE AREA THERE ARE 104,045 HOUSEHOLDS AND 111,822 HOUSING UNITS. OVER THE LAST FIVE YEARS, THE POPULATION GREW BY 4.4% AND HOUSEHOLDS GREW BY 1.0%. THE AREA LOST HOUSING UNITS FROM 2012 TO 2016 (-0.2%) AND VACANT UNITS DECREASED BY 14.3%. HOME OWNERSHIP ALSO DECREASED, WITH 5.3% FEWER UNITS OCCUPIED BY OWNERS, WHILE RENTER-OCCUPIED UNITS INCREASED BY 5.7%.HOUSEHOLD INCOMETHE MEDIAN HOUSEHOLD INCOME IN THE SERVICE AREA IS $82,364 AND THE AVERAGE HOUSEHOLD INCOME IS $114,757.EDUCATIONAL ATTAINMENTAMONG AREA ADULTS, AGES 25 AND OLDER, ONLY 7.5% LACK A HIGH SCHOOL DIPLOMA. 10.4% OF ADULTS ARE HIGH SCHOOL GRADUATES AND 64% OF AREA ADULTS ARE COLLEGE GRADUATES.DATA COLLECTIONSECONDARY DATASECONDARY DATA WERE COLLECTED FROM A VARIETY OF LOCAL, COUNTY AND STATE SOURCES TO PRESENT COMMUNITY DEMOGRAPHICS, SOCIAL DETERMINANTS OF HEALTH, HEALTH CARE ACCESS, LEADING CAUSES OF DEATH, ACUTE AND CHRONIC DISEASE, HEALTH BEHAVIORS, MENTAL HEALTH, SUBSTANCE USE AND MISUSE, AND PREVENTIVE PRACTICES. WHEN AVAILABLE, DATA SETS ARE PRESENTED IN THE CONTEXT OF LOS ANGELES COUNTY AND CALIFORNIA TO HELP FRAME THE SCOPE OF AN ISSUE AS IT RELATES TO THE BROADER COMMUNITY.SOURCES OF DATA INCLUDE: THE U.S. CENSUS AMERICAN COMMUNITY SURVEY, CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, CALIFORNIA HEALTH INTERVIEW SURVEY, LOS ANGELES COUNTY DEPARTMENT OF PUBLIC HEALTH, THINK HEALTH LA, COUNTY HEALTH RANKINGS, CALIFORNIA DEPARTMENT OF EDUCATION, CALIFORNIA OFFICE OF STATEWIDE HEALTH PLANNING AND DEVELOPMENT AND CALIFORNIA DEPARTMENT OF JUSTICE, AMONG OTHERS.SECONDARY DATA FOR THE SERVICE AREA WERE COLLECTED AND DOCUMENTED IN DATA TABLES WITH NARRATIVE EXPLANATION. THE TABLES PRESENT THE DATA INDICATOR, THE GEOGRAPHIC AREA REPRESENTED, THE DATA MEASUREMENT (E.G. RATE, NUMBER, OR PERCENT), COUNTY AND STATE COMPARISONS (WHEN AVAILABLE), THE DATA SOURCE, DATA YEAR AND AN ELECTRONIC LINK TO THE DATA SOURCE. ANALYSIS OF SECONDARY DATA INCLUDES AN EXAMINATION AND REPORTING OF HEALTH DISPARITIES FOR SOME HEALTH INDICATORS. THE REPORT INCLUDES BENCHMARK COMPARISON DATA THAT MEASURE THE DATA FINDINGS AS COMPARED TO HEALTHY PEOPLE 2020 OBJECTIVES, WHERE APPROPRIATE. HEALTHY PEOPLE 2020 OBJECTIVES ARE A NATIONAL INITIATIVE TO IMPROVE THE PUBLIC'S HEALTH BY PROVIDING MEASURABLE OBJECTIVES AND GOALS THAT ARE APPLICABLE AT NATIONAL, STATE, AND LOCAL LEVELS. SIGNIFICANT HEALTH NEEDS WERE IDENTIFIED FROM SECONDARY DATA USING THE SIZE OF THE PROBLEM (RELATIVE PORTION OF POPULATION AFFLICTED BY THE PROBLEM) AND THE SERIOUSNESS OF THE PROBLEM (IMPACT AT INDIVIDUAL, FAMILY, AND COMMUNITY LEVELS). TO DETERMINE SIZE OR SERIOUSNESS OF THE PROBLEM, THE HEALTH NEED INDICATORS IDENTIFIED IN THE SECONDARY DATA WERE MEASURED AGAINST BENCHMARK DATA; SPECIFICALLY, COUNTY RATES, STATE RATES AND/OR HEALTHY PEOPLE 2020 OBJECTIVES. INDICATORS RELATED TO THE HEALTH NEEDS, WHICH PERFORMED POORLY AGAINST ONE OR MORE OF THESE BENCHMARKS MET THIS CRITERION TO BE CONSIDERED A HEALTH NEED.THE FOLLOWING SIGNIFICANT HEALTH NEEDS WERE DETERMINED:*ACCESS TO HEALTH CARE*ASTHMA*CANCER*DIABETES*HEART DISEASE AND STROKE*HOUSING AND HOMELESSNESS*MENTAL HEALTH*OVERWEIGHT AND OBESITY*PREVENTIVE PRACTICES (SCREENINGS, VACCINES)*SENIOR HEALTH*SUBSTANCE USE AND MISUSETHE LIST OF SIGNIFICANT HEALTH NEEDS INFORMED PRIMARY DATA COLLECTION. THE PRIMARY DATA COLLECTION PROCESS WAS DESIGNED TO VALIDATE SECONDARY DATA FINDINGS, IDENTIFY ADDITIONAL COMMUNITY ISSUES, SOLICIT INFORMATION ON DISPARITIES AMONG SUBPOPULATIONS, ASCERTAIN COMMUNITY ASSETS TO ADDRESS NEEDS AND DISCOVER GAPS IN RESOURCES.ACUTE AND CHRONIC DISEASEDIABETESTHE PERCENT OF ADULTS DIAGNOSED WITH DIABETES IN SERVICE AREA CITIES (WHERE DATA WERE AVAILABLE) AND LA CITY COUNCIL DISTRICT 11 RANGED FROM A LOW OF 5% IN CITY COUNCIL DISTRICT 11 TO A HIGH OF 7% IN CULVER CITY.AMONG ADULTS IN SPA 5, 6.3% HAVE BEEN DIAGNOSED WITH DIABETES, AND 6.9% WITH PRE-DIABETES. FOR ADULTS WITH DIABETES, 74.7% IN SPA 5 FELT VERY CONFIDENT THEY COULD CONTROL THEIR DIABETES, WHILE 7.2% WERE NOT AT ALL CONFIDENT. DIAGNOSES NUMBERS ARE LOWER, AND CONFIDENCE HIGHER, IN SPA 5 THAN IN LOS ANGELES COUNTY.HIGH BLOOD PRESSUREA CO-MORBIDITY FACTOR FOR DIABETES AND HEART DISEASE IS HYPERTENSION (HIGH BLOOD PRESSURE). IN SPA 5, 24.3% OF ADULTS ARE DIAGNOSED WITH HIGH BLOOD PRESSURE. OF THOSE DIAGNOSED WITH HIGH BLOOD PRESSURE, 69.9% REPORTED TAKING MEDICATION TO MANAGE THEIR HIGH BLOOD PRESSURE.IN SPA 5, 27.3% OF LATINO ADULTS INDICATED THEY HAVE HIGH BLOOD PRESSURE; THIS IS HIGHER THAN THE RATES OF HIGH BLOOD PRESSURE REPORTED AMONG LATINOS IN LA COUNTY AND CALIFORNIA. 29.4% OF AFRICAN-AMERICANS, 23.9% OF WHITES, AND 19.9% OF SPA 5 ASIANS REPORTED HIGH BLOOD PRESSURE; THESE RATES ARE LOWER THAN COUNTY AND STATE RATES.HEART DISEASE5.3% OF ADULTS IN SPA 5 REPORTED THEY HAVE BEEN DIAGNOSED WITH HEART DISEASE. AMONG ADULTS DIAGNOSED WITH HEART DISEASE, 88.7% IN SPA 5 WERE GIVEN A MANAGEMENT CARE PLAN BY A HEALTH CARE PROVIDER.SPA 5 HAS HIGHER RATES OF HEART DISEASE AMONG AFRICAN AMERICANS (7.1%) THAN WERE REPORTED IN THE COUNTY AND STATE (5.8%). LOWER RATES OF HEART DISEASE WERE REPORTED BY ASIANS (1.3%) AND LATINOS (1.8%).ASTHMAIN SPA 5, 13.1% OF THE POPULATION HAS BEEN DIAGNOSED WITH ASTHMA, WHICH IS HIGHER THAN THE COUNTY LEVEL (12.4%). AMONG THOSE WITH ASTHMA, 38.8% IN SPA 5 TAKE DAILY MEDICATION TO CONTROL THEIR SYMPTOMS. AMONG YOUTH IN SPA 5, 6.7% HAVE BEEN DIAGNOSED WITH AND CURRENTLY HAVE ASTHMA, AND 23.4% HAD BEEN TO AN ER OR URGENT CARE FOR ASTHMA SYMPTOMS IN THE PAST YEAR.CANCERCANCER INCIDENCE RATES ARE AVAILABLE AT THE COUNTY LEVEL. IN LOS ANGELES COUNTY, CANCER RATES ARE LOWER OVERALL THAN AT THE STATE LEVEL; HOWEVER, THE RATES OF COLORECTAL CANCER (36.3 PER 100,000 PERSONS), UTERINE CANCERS, (25.9 PER 100,000), THYROID CANCER (13.6 PER 100,000 PERSONS), AND OVARIAN CANCER (12.0 PER 100,000) EXCEED THE STATE RATES. |
| CEDARS-SINAI MARINA DEL REY HOSPITAL | PART V, SECTION B, LINE 3J: RATES OF NEWLY DIAGNOSED BREAST CANCER PER 100,000 FEMALES, RANGED FROM A LOW OF 159.6 PER 100,000 WOMEN IN CULVER CITY TO A HIGH OF 186.0 IN CITY COUNCIL DISTRICT 11. THESE RATES OF BREAST CANCER ARE HIGHER THAN THE COUNTY RATE (140.5 CASES PER 100,000 FEMALES).RATES OF NEWLY DIAGNOSED COLON CANCER PER 100,000 PERSONS, RANGED FROM A LOW OF 32.6 PER 100,000 PERSONS IN LA CITY COUNCIL DISTRICT 11 TO A HIGH OF 46.1 PER 100,000 PERSONS IN CULVER CITY. CULVER CITY'S RATE OF COLON CANCER IS HIGHER THAN COUNTY RATES (37.9 PER 100,000 PERSONS).HIVTHE HIV RATE IN LA COUNTY HAS DECREASED SINCE 2007. IN 2015, 90 CASES OF HIV WERE DIAGNOSED IN SPA 5 (14 PER 100,000 PERSONS). THE RATE OF HIV IN 2015 DECREASED SLIGHTLY FROM 2014 IN SPA 5 AND THE COUNTY. RATES OF NEW HIV DIAGNOSES ARE HIGHEST AMONG MALES, YOUNG ADULTS 20-29, AND BLACKS/AFRICAN AMERICANS.IN SPA 5 THE RATE OF PERSONS LIVING WITH HIV IS 378 PER 100,000 PERSONS, WHICH IS BELOW THE COUNTY LEVEL OF 492 PERSONS PER 100,000 LIVING WITH HIV.HEALTH STATUSAMONG THE RESIDENTS IN SPA 5, 10% RATE THEMSELVES AS BEING IN FAIR OR POOR HEALTH, WHICH IS LESS THAN THE COUNTY RATE OF 21.5%.DISABILITYIN SPA 5, 21.5% OF ADULTS REPORTED A PHYSICAL, MENTAL OR EMOTIONAL DISABILITY. THE RATE OF DISABILITY IN THE COUNTY WAS 22.6%. IN LA COUNTY, 14.5% OF CHILDREN WERE REPORTED BY THEIR CARETAKERS TO MEET THE CRITERIA OF HAVING A SPECIAL HEALTH CARE NEED. THIS NEGATIVE METRIC WAS REPORTED TO BE HIGHER IN SPA 5 (20.2%). IT IS SUGGESTED THAT CHILDREN LIVING IN HIGHER SOCIOECONOMIC AREAS ARE EVALUATED FOR SPECIAL NEEDS AT HIGHER RATES.PART V, SECTION B, LINE 3E: THE SIGNIFICANT HEALTH NEEDS ARE A PRIORITIZED DESCRIPTION OF THE SIGNIFICANT HEALTH NEEDS OF THE COMMUNITY AND IDENTIFIED THROUGH THE CHNA. |
| CEDARS-SINAI MARINA DEL REY HOSPITAL | PART V, SECTION B, LINE 5: IN CONDUCTING CEDARS-SINAI MARINA DEL REY HOSPITAL'S MOST RECENT CHNA, THE HOSPITAL FACILITY TOOK INTO ACCOUNT INPUT FROM PERSONS WHO REPRESENT THE BROAD INTERESTS OF THE COMMUNITY SERVED BY THE HOSPITAL FACILITY, INCLUDING THOSE WITH SPECIAL KNOWLEDGE OF OR EXPERTISE IN PUBLIC HEALTH.TARGETED INTERVIEWS WERE USED TO GATHER INFORMATION AND OPINIONS FROM PERSONS WHO REPRESENT THE BROAD INTERESTS OF THE COMMUNITY SERVED BY THE HOSPITAL. INTERVIEWS WERE COMPLETED FROM NOVEMBER 2018 TO JANUARY 2019.INTERVIEWEES INCLUDED REPRESENTATIVES FROM A WIDE RANGE OF COMMUNITY GROUPS AND ORGANIZATIONS FOCUSED ON THE NEEDS OF MEDICALLY UNDERSERVED,LOW-INCOME, AND MINORITY POPULATIONS, AS WELL AS REPRESENTATIVES FROM LOCAL GOVERNMENT AGENCIES, INCLUDING THE LOS ANGELES COUNTY DEPARTMENT OF PUBLIC HEALTH. |
| CEDARS-SINAI MARINA DEL REY HOSPITAL | PART V, SECTION B, LINE 6A: CSMDRH PARTICIPATED IN A COLLABORATIVE PROCESS FOR THE COMMUNITY HEALTH NEEDS ASSESSMENT IN PARTNERSHIP WITH CEDARS-SINAI MEDICAL CENTER, KAISER PERMANENTE WEST LOS ANGELES MEDICAL CENTER, PROVIDENCE SAINT JOHN'S HEALTH CENTER, AND UCLA HEALTH. GIVEN THESE HOSPITAL FACILITIES SHARE AN OVERLAPPING SERVICE AREA, A COLLABORATIVE EFFORT REDUCED REDUNDANCIES AND INCREASED DATA COLLECTION EFFICIENCY.CEDARS-SINAI MARINA DEL REY HOSPITAL:PART V, SECTION B, LINE 7A, CHNA WEBSITE:HTTPS://WWW.MARINAHOSPITAL.COM/ADMINISTRATION/MEDIA/FILES/MDRH-CHNA-2019.PDFCEDARS-SINAI MARINA DEL REY HOSPITAL:PART V, SECTION B, LINE 10A, IMPLEMENTATION STRATEGY WEBSITE:HTTPS://WWW.MARINAHOSPITAL.COM/ADMINISTRATION/MEDIA/FILES/2019-2022-CSMDRH-IMPLEMENTATION-STRATEGY.PDF |
| CEDARS-SINAI MARINA DEL REY HOSPITAL | PART V, SECTION B, LINE 11: ADDRESSING HEALTH FOCUS AREAS IDENTIFIED AND PRIORITIZED IN THE 2019-2022 CHNA: IN FY21, CEDARS-SINAI MARINA DEL REY HOSPITAL ("THE HOSPITAL") ENGAGED IN ACTIVITIES AND PROGRAMS THAT ADDRESSED THE HEALTH FOCUS AREAS PRIORITIZED FROM THE IDENTIFIED HEALTH NEEDS IN THE 2019-2022 CHNA. THE HOSPITAL HAS COMMITTED TO COMMUNITY BENEFIT EFFORTS THAT ADDRESS: 1) ACCESS TO CARE, AND 2) HOMELESSNESS. SELECTED ACTIVITIES AND PROGRAMS THAT HIGHLIGHT THE HOSPITAL'S COMMITMENT TO THE COMMUNITY ARE DETAILED BELOW. FOR FY21 REPORTING, RESPONSES TO COVID-19 NEEDS HAVE BEEN ADDED AS AN ADDITIONAL (THIRD) HEALTH FOCUS AREA.HEALTH FOCUS AREAS:1) ACCESS TO CARE* ACCESSIBILITY: THE HOSPITAL PROVIDED FREE CARE TO PEOPLE WHO EARNED UP TO 400% OF THE FEDERAL POVERTY LEVEL ($103,000 FOR A FAMILY OF FOUR) AND SIGNIFICANTLY DISCOUNTED CARE TO THOSE WHO EARNED UP TO 600% OF THE FEDERAL POVERTY LEVEL ($154,500 FOR A FAMILY OF FOUR). WHILE MORE PEOPLE NOW HAVE INSURANCE COVERAGE THROUGH THE AFFORDABLE CARE ACT AND COVERED CALIFORNIA, MANY COMMERCIAL INSURANCE PLANS CARRY A HIGH DEDUCTIBLE OR COPAY, CAUSING FINANCIAL HARDSHIP FOR PATIENTS. EXPANDED ELIGIBILITY CRITERIA FOR FREE OR DISCOUNTED CARE ENABLED MORE PEOPLE TO RECEIVE FINANCIAL ASSISTANCE. IN ADDITION, ASSISTANCE WAS PROVIDED TO ENROLL LOW-INCOME PERSONS IN HEALTH INSURANCE PROGRAMS.* ACCESS TO CARE: MENTAL HEALTH SERVICES: THE HOSPITAL PARTNERED WITH ALCOTT CENTER FOR MENTAL HEALTH SERVICES, WHICH PROVIDED MENTAL HEALTH SERVICES DURING THE PANDEMIC. PATIENTS IN NEED, MANY OF WHOM WERE PERSONS EXPERIENCING HOMELESSNESS, WERE PROVIDED NO COST OR LOW-COST SERVICES.2) HOMELESSNESS* HOMELESS PATIENT NAVIGATOR PROGRAM: THROUGH OUR PATIENT NAVIGATOR PROGRAM PARTNERSHIP WITH THE PEOPLE CONCERN, ONE OF LOS ANGELES COUNTY'S LARGEST SOCIAL SERVICES AGENCIES PROVIDING EVIDENCE-BASED SOLUTIONS TO THE MULTI-FACETED CHALLENGES FOR PEOPLE EXPERIENCING HOMELESSNESS, THE HOSPITAL SERVED 290 UNIQUE INDIVIDUALS OVER SIX MONTHS. WHILE EACH PATIENT FACED DIFFERENT AND UNIQUE OBSTACLES, COMMON THEMES FOR PATIENTS WERE HOUSING |

**Section C. Supplemental Information for Part V, Section B.** Provide descriptions required for Part V, Section B, lines 2, 3j, 5, 6a, 6b, 7d, 11, 13b, 13h, 15e, 16j, 18e, 19e, 20a, 20b, 20c, 20d, 20e, 21c, 21d, 23, and 24. If applicable, provide separate descriptions for each hospital facility in a facility reporting group, designated by facility reporting group letter and hospital facility line number from Part V, Section A (“A, 1,” “A, 4,” “B, 2,” “B, 3,” etc.) and name of hospital facility.

| Form and Line Reference | Explanation |
|---|---|
| | HOMELESS INDIVIDUALS TO ENTER DETOX PROGRAMS, FIND TEMPORARY AND MORE PERMANENT SHELTER, AND OBTAIN PRESCRIPTION MEDICATIONS THEY NEEDED BUT WOULD OTHERWISE NEVER FILL THEMSELVES. IN ADDITION, PATIENTS WERE SUPPORTED IN OBTAINING APPOINTMENTS WITH MENTAL HEALTH AND PRIMARY CARE PROVIDERS. * HOMELESS PREVENTION SERVICES: THE HOSPITAL PARTNERED WITH THE MAR VISTA FAMILY CENTER TO PROVIDE 81 FAMILIES WITH ENHANCED RENT, UTILITIES AND BILL PAYMENT ASSISTANCE TO PREVENT HOMELESSNESS DURING THE PANDEMIC. IN ADDITION TO FUNDS, THE PROGRAM ENABLED EACH FAMILY TO MEET INDIVIDUALLY WITH CASE MANAGERS TO FINANCIALLY PLAN FOR THEIR FUTURES. IN ADDITION, OVER 100 FAMILIES RECEIVED WEEKLY FOOD PACKAGES FROM THE MAR VISTA FAMILY CENTER'S FOOD PANTRY.* FOOD INSECURITY PREVENTION SERVICES: IN PARTNERSHIP WITH THE BOYS & GIRLS CLUBS OF SANTA MONICA, THE HOSPITAL PROVIDED 424, 30-POUND FOOD BOXES TO 300 FAMILIES AND 1,200 UNDUPLICATED INDIVIDUALS AT THE HOUSING AUTHORITY OF THE CITY OF LOS ANGELES (HACLA) MAR VISTA GARDENS COMMUNITY. EACH BOX WAS FILLED WITH FRESH ORGANIC PRODUCE, GRAINS AND PROTEINS TO ENSURE LOW-INCOME FAMILIES, SENIORS AND THE DISABLED WERE FOOD SECURE AND HAD ACCESSIBLE HEALTHY FOOD OPTIONS DURING THE PANDEMIC.3) ADDITIONAL FY21 FOCUS ON COVID-19* CEDARS-SINAI MOBILE TEAMS HAVE GIVEN MORE THAN 71,000 DOSES OF THE COVID-19 VACCINE TO COMMUNITY MEMBERS, AND THEY'LL CONTINUE THE PROGRAM UNTIL THE PANDEMIC ENDS.* THE HOSPITAL SHIFTED STAFF AND RESOURCES TO ACCOMMODATE NEARLY 500 HOSPITALIZED COVID-19 PATIENTS, 15% OF ALL ADMITTED PATIENTS DURING THE PAST YEAR.* THE HOSPITAL STAFF PROVIDED OVER 70 COVID VACCINATIONS AT A POP-UP CLINIC AT THE BOYS & GIRLS CLUB OF VENICE.HEALTH NEEDS THE HOSPITAL WILL NOT ADDRESS: TAKING EXISTING HOSPITAL AND COMMUNITY RESOURCES INTO CONSIDERATION, THE HOSPITAL HAS NOT INCLUDED THE REMAINING HEALTH NEEDS IDENTIFIED IN THE CHNA IN THE HEALTH FOCUS AREAS FOR THE 2019-2022 IMPLEMENTATION STRATEGY. THOSE NEEDS ARE: CHRONIC DISEASE, OVERWEIGHT AND OBESITY, AND SENIOR HEALTH. THE HOSPITAL HAS DETERMINED THAT THE MOST EFFECTIVE WAYS TO STEWARD COMMUNITY BENEFIT COMMITMENTS IS THROUGH TARGETED PROGRAMS AND SERVICES IN THE HEALTH FOCUS AREAS. IN SOME CASES, NEEDS NOT ADDRESSED IN THE HEALTH FOCUS AREAS ARE BEING ADDRESSED BY TRUSTED PARTNERS AND COMMUNITY-BASED ORGANIZATIONS IN THE REGION. ADDITIONALLY, THE HOSPITAL CONTINUES TO PARTICIPATE IN INITIATIVES TO ADDRESS COMMUNITY HEALTH AND HEALTH-RELATED SOCIAL NEEDS, AND PROVIDE ASSISTANCE WHERE WE CAN MAKE A MEANINGFUL CONTRIBUTION. |

**Part V Facility Information** *(continued)*

**Section D. Other Health Care Facilities That Are Not Licensed, Registered, or Similarly Recognized as a Hospital Facility**

(list in order of size, from largest to smallest)

How many non-hospital health care facilities did the organization operate during the tax year? **3**

| | Name and address | Type of Facility (describe) |
|---|---|---|
| **1** | 1 - CEDARS-SINAI MARINA DEL REY HOSPITAL<br>4658 LINCOLN BLVD<br>MARINA DEL REY, CA 90292 | OUTPATIENT SERVICES - GEN/LAB/RADIOLOGY/MRI/CT SCANNER |
| **2** | 2 - CEDARS-SINAI MARINA DEL REY HOSPITAL<br>4640 ADMIRALTY WAY STE 600<br>MARINA DEL REY, CA 90292 | OUTPATIENT SERVICES - SPINE CENTER |
| **3** | 3 - CEDARS-SINAI MARINA DEL REY HOSPITAL<br>4640 ADMIRALTY WAY STE 901<br>MARINA DEL REY, CA 90292 | OUTPATIENT SERVICES - BARIATRICS CENTER |
| **4** | | |
| **5** | | |
| **6** | | |
| **7** | | |
| **8** | | |
| **9** | | |
| **10** | | |

**Part VI** **Supplemental Information**

Provide the following information.

1 **Required descriptions.** Provide the descriptions required for Part I, lines 3c, 6a, and 7; Part II and Part III, lines 2, 3, 4, 8 and 9b.

2 **Needs assessment.** Describe how the organization assesses the health care needs of the communities it serves, in addition to any CHNAs reported in Part V, Section B.

3 **Patient education of eligibility for assistance.** Describe how the organization informs and educates patients and persons who may be billed for patient care about their eligibility for assistance under federal, state, or local government programs or under the organization's financial assistance policy.

4 **Community information.** Describe the community the organization serves, taking into account the geographic area and demographic constituents it serves.

5 **Promotion of community health.** Provide any other information important to describing how the organization's hospital facilities or other health care facilities further its exempt purpose by promoting the health of the community (e.g., open medical staff, community board, use of surplus funds, etc.).

6 **Affiliated health care system.** If the organization is part of an affiliated health care system, describe the respective roles of the organization and its affiliates in promoting the health of the communities served.

7 **State filing of community benefit report.** If applicable, identify all states with which the organization, or a related organization, files a community benefit report.

| Form and Line Reference | Explanation |
|---|---|
| PART I, LINE 7: | FINANCIAL ASSISTANCE AND MEDI-CAL COSTS AS A PERCENTAGE OF TOTAL HOSPITAL EXPENSES WERE DETERMINED BASED ON THE RATIO OF TOTAL FINANCIAL ASSISTANCE AND MEDI-CAL REVENUE OVER TOTAL CHARGES DURING THE FISCAL YEAR ENDING ON 6/30/2021. |
| PART I, LINE 7, COLUMN (F): | THE BAD DEBT EXPENSE INCLUDED ON FORM 990, PART IX, LINE 25, COLUMN (A), BUT SUBTRACTED FOR PURPOSES OF CALCULATING THE PERCENTAGE IN THIS COLUMN IS $ 55,041. |
| PART III, LINE 2: | AS A RESULT OF THE ADOPTION OF ASC 606, THE HOSPITAL IS REPORTING IMPLICIT PRICE CONCESSIONS, WHICH IS ESTABLISHED BASED ON MANY FACTORS, INCLUDING PAYER MIX, AGE OF RECEIVABLES, HISTORICAL CASH COLLECTION EXPERIENCE, AND OTHER RELEVANT INFORMATION, AND BAD DEBT, WHICH IS DUE TO CREDIT ISSUES NOT ASSESSED AT THE DATE OF SERVICE. |
| PART III, LINE 4: | AUDITED FINANCIAL STATEMENTS - PAGE 13PART III, LINE 6: MEDICARE ALLOWABLE COSTS AS A PERCENTAGE OF TOTAL HOSPITAL EXPENSES WERE DETERMINED BASED ON THE RATIO OF TOTAL MEDICARE REVENUE OVER TOTAL CHARGES DURING THE FISCAL YEAR ENDING ON 6/30/2021. |
| PART III, LINE 8: | IT IS OUR BELIEF THAT ALL OF THE $14,989,683 SHORTFALL SHOULD BE CONSIDERED AS COMMUNITY BENEFIT. THE IRS COMMUNITY BENEFIT STANDARD INCLUDES THE PROVISION OF CARE TO THE ELDERLY AND MEDICARE PATIENTS. MEDICARE SHORTFALLS MUST BE ABSORBED BY THE HOSPITAL IN ORDER TO CONTINUE TREATING THE ELDERLY IN OUR COMMUNITY. THE HOSPITAL PROVIDES CARE REGARDLESS OF THIS SHORTFALL AND THEREBY RELIEVES THE FEDERAL GOVERNMENT OF THE BURDEN OF PAYING THE FULL COST FOR MEDICARE BENEFICIARIES. CARING FOR MEDICARE PATIENTS FULFILLS A COMMUNITY NEED AND RELIEVES A GOVERNMENT BURDEN AS THESE PATIENTS TYPICALLY HAVE LOW AND/OR FIXED INCOMES. MEDICARE DOES NOT PROVIDE SUFFICIENT REIMBURSEMENT TO COVER THE COST OF PROVIDING CARE FOR THESE PATIENTS. |
| PART III, LINE 9B: | REASONABLE EFFORTS BASED ON BILLING STATEMENT NOTIFICATION AND AMOUNTS NOT ELIGIBLE:THE HOSPITAL NOTIFIES PATIENTS OF ITS FINANCIAL ASSISTANCE PROGRAMS BEFORE INITIATING ANY EXTRAORDINARY COLLECTION ACTIONS. THE HOSPITAL REFRAINS FROM INITIATING EXTRAORDINARY COLLECTION ACTIONS FOR AT LEAST 120 DAYS FROM THE DATE THE HOSPITAL BILLS FOR THE CARE IF THE PATIENT HAS NOT SUBMITTED AN APPLICATION OR THE HOSPITAL HAS DETERMINED THE PATIENT IS NOT ELIGIBLE FOR FINANCIAL ASSISTANCE BASED ON THE PATIENT'S APPLICATION.AT LEAST 30 DAYS BEFORE FIRST INITIATING ANY EXTRAORDINARY COLLECTION ACTIONS, THE HOSPITAL PROVIDES THE PATIENT WITH A WRITTEN NOTICE INDICATING FINANCIAL ASSISTANCE IS AVAILABLE, IDENTIFYING THE EXTRAORDINARY COLLECTION ACTION THAT THE HOSPITAL INTENDS TO INITIATE TO OBTAIN PAYMENT, AND STATING A DEADLINE AFTER WHICH SUCH EXTRAORDINARY COLLECTION ACTIONS MAY BE INITIATED (WHICH DATE IS NOT EARLIER THAN 30 DAYS AFTER THE DATE THAT THE WRITTEN NOTICE IS PROVIDED). THE NOTICE INCLUDES A PLAIN LANGUAGE SUMMARY OF THE HOSPITAL'S FINANCIAL ASSISTANCE POLICY.IN ADDITION TO ALL WRITTEN NOTICES, PRIOR TO INITIATING ANY EXTRAORDINARY COLLECTION ACTIONS, THE HOSPITAL MAKES A REASONABLE EFFORT TO VERBALLY NOTIFY THE PATIENT ABOUT THE HOSPITAL'S FINANCIAL ASSISTANCE POLICY AND ABOUT HOW THE PATIENT MAY OBTAIN ASSISTANCE THROUGH THE APPLICATION PROCESS. |
| PART VI, LINE 2: | A COMMUNITY HEALTH NEEDS ASSESSMENT (CHNA) WAS CONDUCTED IN FISCAL YEAR ENDED 6/30/19. SEE NARRATIVE FOR SCHEDULE H, PART V, SECTION B, LINE 3J. |
| PART VI, LINE 3: | THE HOSPITAL PROVIDES THE FOLLOWING NOTICES REGARDING FULL AND PARTIAL FINANCIAL ASSISTANCE FOR THE FINANCIALLY QUALIFIED PATIENTS:A) POSTED SIGNAGE - NOTICE OF THE FINANCIAL ASSISTANCE POLICY IS POSTED IN THE FOLLOWING LOCATIONS: THE EMERGENCY DEPARTMENT, THE ADMITTING DEPARTMENT, CENTRALIZED AND DECENTRALIZED REGISTRATION AREAS AND OTHER OUTPATIENT SETTINGS.B) NOTICES HAND-DELIVERED TO PATIENTS - DURING THE REGISTRATION OR ADMISSION PROCESS (OR OTHERWISE PRIOR TO DISCHARGE), PATIENTS ARE PROVIDED A PLAIN LANGUAGE SUMMARY OF THE FINANCIAL ASSISTANCE POLICY AND CEDARS-SINAI MARINA DEL REY'S FINANCIAL ASSISTANCE PROGRAMS. PATIENTS ARE ASKED TO ACKNOWLEDGE RECEIPT OF THIS VIA AN ELECTRONIC SIGNATURE.C) PATIENT STATEMENT NOTICES - ON THE PATIENT BILLING STATEMENTS, THE HOSPITAL PROVIDES A DESCRIPTION OF ITS FINANCIAL ASSISTANCE POLICY AND PROGRAMS, ALONG WITH INFORMATION ABOUT HOW TO APPLY FOR FINANCIAL ASSISTANCE.PUBLICIZING THE POLICY:THE HOSPITAL WIDELY PUBLICIZES ITS FINANCIAL ASSISTANCE POLICY AND PROGRAMS, INCLUDING DISTRIBUTION TO TARGETED COMMUNITY ORGANIZATIONS, AMONG A VARIETY OF OTHER MEANS, TO ALERT THE HOSPITAL'S COMMUNITY TO THE AVAILABILITY OF FINANCIAL ASSISTANCE. THE FINANCIAL ASSISTANCE POLICY, THEAPPLICATION FORM AND THE PLAIN LANGUAGE SUMMARY ARE AVAILABLE ON THE HOSPITAL'S WEBSITE AT HTTPS://WWW.MARINAHOSPITAL.COM/FINANCIAL-OVERVIEW/ASSISTANCE |
| PART VI, LINE 4: | PLEASE SEE COMMUNITY SERVICE AREA AND DEMOGRAPHICS INFORMATION IN THE NARRATIVE FOR SCHEDULE H, PART V, SECTION B, LINE 3J. IN ADDITION, THERE ARE THREE OTHER HOSPITALS THAT SERVE THE SAME COMMUNITY AS CEDARS-SINAI MARINA DEL REY HOSPITAL. |
| PART VI, LINE 5: | CEDARS-SINAI MARINA DEL REY HOSPITAL IS DRIVEN BY ITS MISSION TO STRIVE TO IMPROVE THE HEALTH STATUS OF THE COMMUNITY BY GIVING BACK TO THE COMMUNITY IN THE FORM OF HEALTH CARE AND OTHER COMMUNITY SERVICES. THE HOSPITAL PROVIDES BOTH QUANTIFIABLE AND NON-QUANTIFIABLE CONTRIBUTIONS TO THE COMMUNITY, SUCH AS INCREASING PARTICIPATION IN LOCAL EFFORTS TO COMBAT HOMELESSNESS IN THE COMMUNITY AND INCURRING UNREIMBURSED COST OF DIRECT MEDICAL CARE FOR THE POOR AND UNDERSERVED OF THE COMMUNITY. IN ADDITION, THE HOSPITAL DISTRIBUTED GRANTS TO THE BOYS AND GIRLS CLUB OF SANTA MONICA INC., MAR VISTA FAMILY CENTER, AND YMCA OF METROPOLITAN LOS ANGELES - CULVER-PALMS FAMILY YMCA BRANCH.THE HOSPITAL IS GOVERNED BY A BOARD OF DIRECTORS THAT IS COMPRISED OF MEMBERS OF THE COMMUNITY. FURTHERMORE, THE COMMUNITIES ARE SERVED BY AN OPEN MEDICAL STAFF. ALSO, ANY SURPLUS FUNDS ARE REINVESTED INTO THE ORGANIZATION TO FURTHER SUPPORT THE COMMUNITY. |
| PART VI, LINE 6: | THE HOSPITAL IS AN AFFILIATE OF CEDARS-SINAI HEALTH SYSTEM. THE 133-BED SURGICAL HOSPITAL IS FULLY ACCREDITED THROUGH THE JOINT COMMISSION FOR SAFE AND EFFECTIVE QUALITY CARE. BY CONCENTRATING FOUR AREAS OF EXPERTISE: SPINE, WEIGHT LOSS, ORTHOPEDICS, AND MINIMALLY INVASIVE SURGERY, THE HOSPITAL IS ABLE TO PROVIDE EXCELLENT CARE IN AN INTIMATE, PERSONAL AND CONVENIENT SETTING.THE HOSPITAL IS COMMITTED TO THE FOLLOWING:* COMMITMENT TO THE COMMUNITY: PROVIDING EXCELLENT AND PROMPT ACUTE MEDICAL SERVICES AND 24/7 EMERGENCY ROOM CARE. * TALENTED CUSTOMER SERVICE-DRIVEN TEAM: BELIEVES KINDNESS IS JUST AS IMPORTANT AS STATE-OF-THE-ART MEDICAL TECHNOLOGY. * NATIONALLY RECOGNIZED PHYSICIANS: RECOGNIZED FOR CLINICAL EXCELLENCE AND DEVOTED TO DELIVERING COMPASSIONATE, RESPONSIVE CARE.THE HOSPITAL'S MISSION:* TO PROVIDE COMPASSIONATE, HIGH QUALITY HEALTHCARE FOR RESIDENTS IN MARINA DEL REY AND SURROUNDING BEACH COMMUNITIES AND THE WESTSIDE OF LOS ANGELES * TO BE RECOGNIZED FOR MEDICAL EXCELLENCE IN SPINE, ORTHOPEDICS, SURGICAL WEIGHT LOSS, MINIMALLY INVASIVE SURGERY, NON-INVASIVE CARDIOLOGY AND GENERAL ACUTE MEDICAL CARE THE HOSPITAL'S BOARD OF DIRECTORS PROVIDES ORGANIZATIONAL LEADERSHIP IN FOSTERING THE COMMITMENT TO COMMUNITY BENEFIT. THE BOARD OF DIRECTORS FUNCTIONS AS AN OVERSIGHT AND POLICY-MAKING BODY FOR THE HOSPITAL'S COMMUNITY BENEFIT COMMITMENTS, EFFORTS AND STRATEGIC ALIGNMENT WITH COMMUNITY NEEDS. DURING THE TAX YEAR, THE HOSPITAL'S COMMUNITY BENEFIT EXPENSE TOTALED $17,827,703 DIVIDED AMONG THE FOLLOWING CATEGORIES:* UNREIMBURSED COST OF DIRECT MEDICAL CARE FOR THE POOR AND UNDERSERVED - $17,420,046 (CHARITY CARE - $2,179,902; UNREIMBURSED COST: CARING FOR MEDI-CAL PATIENTS - $14,975,880; UNREIMBURSED COST: SPECIALTY GOVERNMENT PROGRAMS - $264,264) (EXCLUDES THE UNREIMBURSED COST OF CARING FOR MEDICARE PATIENTS) COMMUNITY BENEFIT PROGRAMS, INCLUDING CHARITABLE DONATIONS - $407,657. |
| PART VI, LINE 7, REPORTS FILED WITH STATES | CA |

efile GRAPHIC print | Submission Date - 2022-05-06 | DLN: 93493126020952

**Note: To capture the full content of this document, please select landscape mode (11" x 8.5") when printing.**

**Schedule I (Form 990)**

Department of the Treasury
Internal Revenue Service

# Grants and Other Assistance to Organizations, Governments and Individuals in the United States

**Complete if the organization answered "Yes," on Form 990, Part IV, line 21 or 22.**
**▶ Attach to Form 990.**
**▶ Go to *www.irs.gov/Form990* for the latest information.**

OMB No. 1545-0047
**2020**
**Open to Public Inspection**

Name of the organization
CFHS HOLDINGS INC

**Employer identification number**
20-1645949

## Part I General Information on Grants and Assistance

1 Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . ☐ Yes ☑ No

2 Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

## Part II Grants and Other Assistance to Domestic Organizations and Domestic Governments.

Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| (a) Name and address of organization or government | (b) EIN | (c) IRC section (if applicable) | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of noncash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) BOYS AND GIRLS CLUB OF SANTA MONICA INC<br>1220 LINCOLN BLVD<br>SANTA MONICA, CA 90401 | 95-1890706 | 501(C)(3) | 25,000 | | | | FOOD INSECURITY GRANT |
| (2) MAR VISTA FAMILY CENTER<br>5075 S SLAUSON AVE<br>CULVER CITY, CA 90230 | 95-2647443 | 501(C)(3) | 50,000 | | | | HOMELESS PREVENTION FUND GRANT |
| (3) YMCA OF METROPOLITAN LOS ANGELES - CULVER-PALMS FAMILY YMCA BRANCH<br>4500 S SEPULVEDA BLVD<br>CULVER CITY, CA 90230 | 95-1644052 | 501(C)(3) | 100,000 | | | | SOCIAL AND EMOTIONAL WELL-BEING PILOT GRANT |

2 Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . . ▶ 3

3 Enter total number of other organizations listed in the line 1 table . . . . ▶ 0

**Part III** **Grants and Other Assistance to Domestic Individuals.** Complete if the organization answered "Yes" on Form 990, Part IV, line 22. Part III can be duplicated if additional space is needed.

| **(a)** Type of grant or assistance | **(b)** Number of recipients | **(c)** Amount of cash grant | **(d)** Amount of noncash assistance | **(e)** Method of valuation (book, FMV, appraisal, other) | **(f)** Description of noncash assistance |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |

**Part IV** **Supplemental Information.** Provide the information required in Part I, line 2; Part III, column (b); and any other additional information.

| **Return Reference** | **Explanation** |
|---|---|
| PART I, LINE 2: | THE ORGANIZATION CONTRIBUTES TO WELL ESTABLISHED EXEMPT ORGANIZATIONS AND RELIES ON THE GOVERNING BODY OF EACH OF THESE ORGANIZATIONS TO ENSURE THAT GRANT FUNDS DONATED TO EACH AND EVERY ORGANIZATION ARE USED FOR PROPER PURPOSES AND NOT OTHERWISE DIVERTED FROM THE INTENDED USE. |

efile GRAPHIC print | Submission Date - 2022-05-06 | DLN: 93493126020952

**Schedule J (Form 990)**

Department of the Treasury Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**▶ Attach to Form 990.**
**▶ Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

Name of the organization
CFHS HOLDINGS INC

**Employer identification number**
20-1645949

## Part I Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropiate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel ☐ Housing allowance or residence for personal use<br>☐ Travel for companions ☐ Payments for business use of personal residence<br>☐ Tax idemnification and gross-up payments ☐ Health or social club dues or initiation fees<br>☐ Discretionary spending account ☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain . . . | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? . . | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☐ Compensation committee ☐ Written employment contract<br>☐ Independent compensation consultant ☐ Compensation survey or study<br>☐ Form 990 of other organizations ☐ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? . . . | **4a** | Yes | |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? . . . | **4b** | Yes | |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? . . .<br>If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | **4c** | | No |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? . . . | **5a** | | No |
| **b** | Any related organization? . . .<br>If "Yes," on line 5a or 5b, describe in Part III. | **5b** | | No |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? . . . | **6a** | | No |
| **b** | Any related organization? . . .<br>If "Yes," on line 6a or 6b, describe in Part III. | **6b** | | No |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III . . . | **7** | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III . . . | **8** | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? . . . | **9** | | |

**Part II Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| **(A)** Name and Title | | **(B)** Breakdown of W-2 and/or 1099-MISC compensation | | | **(C)** Retirement and other deferred compensation | **(D)** Nontaxable benefits | **(E)** Total of columns (B)(i)-(D) | **(F)** Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | **(i)** Base compensation | **(ii)** Bonus & incentive compensation | **(iii)** Other reportable compensation | | | | |
| **1** THOMAS M PRISELAC<br>CHAIR | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 1,937,823 | 1,715,106 | 1,124,591 | 1,319,754 | 25,823 | 6,123,097 | 0 |
| **2** JEFFREY SMITH MD JD MMM<br>CHIEF EXECUTIVE OFFICER | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 960,710 | 494,085 | 295,112 | 12,775 | 44,712 | 1,807,394 | 0 |
| **3** BRYAN CROFT<br>SECRETARY | (i) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | (ii) | 618,041 | 304,317 | 405,792 | 168,046 | 40,720 | 1,536,916 | 91,667 |
| **4** JOANNE LAGUNA-KENNEDY<br>CHIEF NURSING OFFICER | (i) | 420,704 | 154,527 | 420 | 0 | 34,593 | 610,244 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **5** SONIYA GANDHI MD<br>ASSOCIATE CHIEF MEDICAL OFFICER | (i) | 340,883 | 69,499 | 420 | 4,085 | 40,815 | 455,702 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **6** NOLLY DAVE-SACHDEV<br>CFO/TREASURER | (i) | 312,095 | 44,787 | 420 | 8,550 | 13,104 | 378,956 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **7** DANIELLE GABELE<br>ASSOCIATE CHIEF NURSING OFFICER | (i) | 272,555 | 39,127 | 258 | 7,918 | 6,110 | 325,968 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **8** MARGARET MORGAN<br>DIRECTOR OF HUMAN RESOURCE | (i) | 119,140 | 23,185 | 161,473 | 8,550 | 10,437 | 322,785 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **9** LAUREN AMATO<br>EXEC DIRECTOR OF SUPPORT SERVICES | (i) | 217,087 | 26,284 | 258 | 6,581 | 13,353 | 263,563 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **10** SAGAR SABLE<br>EXEC DIRECTOR OF QUALITY & RISK MGMT | (i) | 213,969 | 31,892 | 258 | 4,181 | 7,864 | 258,164 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## Part III Supplemental Information

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| PART I, LINE 3 | THE CEO OF CFHS HOLDINGS, INC.(DBA CEDARS-SINAI MARINA DEL REY HOSPITAL) IS COMPENSATED BY CEDARS-SINAI MEDICAL CENTER, A RELATED TAX-EXEMPT ORGANIZATION. CEDARS-SINAI MEDICAL CENTER USED THE FOLLOWING METHODS IN ESTABLISHING THE CFHS HOLDINGS, INC. CEO'S COMPENSATION: 1) COMPENSATION COMMITTEE; 2) INDEPENDENT COMPENSATION CONSULTANT; 3) WRITTEN EMPLOYMENT CONTRACT; 4) COMPENSATION SURVEY OR STUDY; AND 5) APPROVAL BY THE BOARD OR COMPENSATION COMMITTEE |
| PART I, LINES 4A-B | THERE ARE TWO NONQUALIFIED DEFERRED COMPENSATION PLANS IN WHICH ONE OR MORE OF THE LISTED PERSONS PARTICIPATE. THE FIRST PLAN IS A DEFERRED COMPENSATION PLAN. THIS IS A "GRANDFATHERED" TRADITIONAL DEFINED BENEFIT PLAN (NO NEW PARTICIPANTS HAVE BEEN ADDED SINCE 1986). THE BENEFIT FORMULA IS A PERCENTAGE OF THE HIGHEST FIVE YEARS AVERAGE ANNUAL SALARY TIMES THE NUMBER OF YEARS OF ELIGIBLE SERVICE, WITH A MAXIMUM CREDITED SERVICE OF 30 YEARS. THE SECOND PLAN IS A SUPPLEMENTAL RETIREMENT ALLOWANCE THAT IS PAYABLE DIRECTLY TO THE PARTICIPANTS EACH QUARTER. THE BENEFIT FORMULA FOR THIS PLAN HAS ANNUAL CONTRIBUTIONS THAT ARE EITHER A PERCENTAGE OF SALARY, OR ARE DESIGNED TO FUND A PERCENTAGE OF THE ESTIMATED FINAL 5-YEAR AVERAGE SALARY. CERTAIN INDIVIDUALS ALSO RECEIVED PAYOUTS FROM AMOUNTS ACCRUED IN PRIOR YEARS. IN ADDITION, TWO INDIVIDUAL HAS RETENTION INCENTIVES WHICH HAD CLIFF-VESTING DATES IN 2020. THE FOLLOWING LISTED PERSONS RECEIVED PAYMENTS DURING THE YEAR ENDED DECEMBER 31, 2020 RELATED TO ONE OR BOTH OF THE PLANS REFERENCED ABOVE. THESE PAYMENTS ARE INCLUDED IN SCHEDULE J, PART II AND ARE NOT INCREMENTAL PAYMENTS. IN ADDITION, 1 EMPLOYEE RECEIVED SEVERANCE PAYMENT. 4A: MARGARET MORGAN 161,009 4B: BRYAN CROFT 161,317 THOMAS M. PRISELAC 1,007,563 JEFFREY SMITH, MD, JD, MMM 223,747 |

efile GRAPHIC print | Submission Date - 2022-05-06 | DLN: 93493126020952

**Schedule L (Form 990 or 990-EZ)**

Department of the Treasury Internal Revenue Service

# Transactions with Interested Persons

▶ **Complete if the organization answered "Yes" on Form 990, Part IV, lines 25a, 25b, 26, 27, 28a, 28b, or 28c, or Form 990-EZ, Part V, line 38a or 40b.**
▶ **Attach to Form 990 or Form 990-EZ.**
▶**Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

Name of the organization
CFHS HOLDINGS INC

**Employer identification number**
20-1645949

**Part I** **Excess Benefit Transactions** (section 501(c)(3), section 501(c)(4), and section 501(c)(29) organizations only).
Complete if the organization answered "Yes" on Form 990, Part IV, line 25a or 25b, or Form 990-EZ, Part V, line 40b.

| 1 (a) Name of disqualified person | (b) Relationship between disqualified person and organization | (c) Description of transaction | (d) Corrected? Yes | No |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**2** Enter the amount of tax incurred by the organization managers or disqualified persons during the year under section 4958. . . . ▶ $

**3** Enter the amount of tax, if any, on line 2, above, reimbursed by the organization . . . ▶ $

**Part II** **Loans to and/or From Interested Persons.**
Complete if the organization answered "Yes" on Form 990-EZ, Part V, line 38a, or Form 990, Part IV, line 26; or if the organization reported an amount on Form 990, Part X, line 5, 6, or 22

| (a) Name of interested person | (b) Relationship with organization | (c) Purpose of loan | (d) Loan to or from the organization? | | (e) Original principal amount | (f) Balance due | (g) In default? | | (h) Approved by board or committee? | | (i) Written agreement? | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | To | From | | | Yes | No | Yes | No | Yes | No |
| (1) N DAVE-SACHDEV | OFFICER | EMPLOYEE LOAN | | X | 30,000 | 17,308 | | No | Yes | | Yes | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **Total** . . . ▶ $ | | | | | | 17,308 | | | | | | |

**Part III** **Grants or Assistance Benefiting Interested Persons.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 27.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of assistance | (d) Type of assistance | (e) Purpose of assistance |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 50056A **Schedule L (Form 990 or 990-EZ) 2020**

## Part IV Business Transactions Involving Interested Persons.

Complete if the organization answered "Yes" on Form 990, Part IV, line 28a, 28b, or 28c.

| **(a)** Name of interested person | **(b)** Relationship between interested person and the organization | **(c)** Amount of transaction | **(d)** Description of transaction | **(e)** Sharing of organization's revenues? | |
|---|---|---|---|---|---|
| | | | | **Yes** | **No** |
| (1) ANDREW LAGUNA | PART V NARRATIVE - FAMILY MEMBER OF JOANNE LAGUNA-KENNEDY, A KEY EMPLOYEE | 39,458 | PART V NARRATIVE - COMPENSATION FOR SERVICES | | No |
| (2) WATKINS SPINE INC | PART V NARRATIVE - COMPANY CO-OWNED BY DR. ROBERT WATKINS IV, BOARD MEMBER | 318,240 | PART V NARRATIVE - COMPENSATION FOR SERVICES | | No |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## Part V Supplemental Information

Provide additional information for responses to questions on Schedule L (see instructions).

| **Return Reference** | **Explanation** |
|---|---|

**SCHEDULE O (Form 990 or 990-EZ)**

Department of the Treasury Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**▶ Attach to Form 990 or 990-EZ.**
**▶ Go to www.irs.gov/Form990 for the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

Name of the organization
CFHS HOLDINGS INC

**Employer identification number**
20-1645949

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION A, LINE 6 | CEDARS-SINAI MEDICAL CENTER IS THE SOLE CORPORATE MEMBER OF CFHS HOLDINGS, INC. DOING BUSINESS AS CEDARS-SINAI MARINA DEL REY HOSPITAL. |
| FORM 990, PART VI, SECTION A, LINE 7A | CEDARS-SINAI MEDICAL CENTER, AS THE SOLE CORPORATE MEMBER, ELECTS THE BOARD OF DIRECTORS OF CEDARS-SINAI MARINA DEL REY HOSPITAL. |
| FORM 990, PART VI, SECTION A, LINE 7B | RESERVED RIGHTS OF CEDARS-SINAI MEDICAL CENTER, THE SOLE CORPORATE MEMBER OF CEDARS-SINAI MARINA DEL REY HOSPITAL ("THE HOSPITAL"). THE FOLLOWING ACTIONS MUST BE APPROVED OR ACTED UPON BY CEDARS-SINAI MEDICAL CENTER BEFORE BECOMING EFFECTIVE: (A) ANY AMENDMENT TO THE ARTICLES OF INCORPORATION OR BYLAWS OF THE HOSPITAL; (B) ANY AMENDMENT TO THE HOSPITAL'S PURPOSE OR MISSION; (C) ANY CHANGE IN THE MEMBERSHIP OR MEMBERSHIP POWERS OF THE HOSPITAL OR ITS SUBSIDIARY; (D) HIRING, ELECTING, REMOVING, OR TERMINATING ANY OF THE OFFICERS OF THE HOSPITAL; (E) REMOVAL AND APPOINTMENT OF DIRECTORS OF THE HOSPITAL; (F) CHANGING THE NUMBER OF DIRECTORS ON THE BOARD OF DIRECTORS; (G) SELECTION AND APPOINTMENT OF THE AUDITORS AND LEGAL COUNSEL OF THE HOSPITAL; (H) ANY SALE OR OTHER DISPOSITION OF ALL OR A SUBSTANTIAL PORTION OF THE ASSETS OF THE HOSPITAL; (I) MERGER, CONSOLIDATION, REORGANIZATION, DIVESTITURE, AFFILIATION, LIQUIDATION, OR DISSOLUTION; (J) BORROWING MONEY AND INCURRING INDEBTEDNESS ON BEHALF OF THE HOSPITAL; (K) APPROVING THE HOSPITAL'S ANNUAL OPERATING AND CAPITAL BUDGETS; (L) DECLARING OR CONSENTING TO THE FILING OF PROCEEDINGS TO DECLARE BANKRUPTCY. |
| FORM 990, PART VI, SECTION B, LINE 11B | THE REVIEW OF THE FORM 990 INVOLVES VARIOUS MANAGEMENT PERSONNEL, INCLUDING THE HOSPITAL'S CHIEF FINANCIAL OFFICER, CEDARS-SINAI MEDICAL CENTER'S SENIOR VICE-PRESIDENT/CHIEF FINANCIAL OFFICER AND GENERAL COUNSEL, AND A BIG FOUR ACCOUNTING FIRM. A COMPLETE, UNREDACTED COPY OF THE FORM 990 IS PROVIDED TO ALL MEMBERS OF THE BOARD OF DIRECTORS IN ADVANCE OF FILING, ALLOWING THE ENTIRE BOARD THE OPPORTUNITY TO REVIEW AND ASK QUESTIONS OF MANAGEMENT BEFORE THE FORM 990 IS FILED. |
| FORM 990, PART VI, SECTION B, LINE 12C | THE PURPOSE OF THE CONFLICTS OF INTEREST POLICY IS TO PROTECT THE INTERESTS OF THE HOSPITAL WHEN IT IS CONTEMPLATING ENTERING INTO A TRANSACTION OR ARRANGEMENT THAT MIGHT BENEFIT THE PRIVATE INTEREST OF AN OFFICER OR DIRECTOR OF THE HOSPITAL OR MIGHT RESULT IN A POSSIBLE EXCESS BENEFIT TRANSACTION. THIS POLICY IS INTENDED TO SUPPLEMENT BUT NOT REPLACE ANY APPLICABLE STATE LAWS GOVERNING CONFLICTS OF INTEREST APPLICABLE TO THE HOSPITAL. PROCEDURES: DUTY TO DISCLOSE - IN CONNECTION WITH ANY ACTUAL OR POSSIBLE CONFLICT OF INTEREST, AN INTERESTED PERSON MUST DISCLOSE THE EXISTENCE OF HIS OR HER FINANCIAL INTEREST AND ALL MATERIAL FACTS RELATING THERETO TO THE DIRECTORS AND MEMBERS OF COMMITTEES WITH BOARD DELEGATED POWERS CONSIDERING THE PROPOSED TRANSACTION OR ARRANGEMENT. DETERMINING WHETHER A CONFLICT OF INTEREST EXISTS - AFTER DISCLOSURE OF THE FINANCIAL INTEREST AND ALL MATERIAL FACTS RELATING THERETO, AND AFTER ANY DISCUSSION THEREOF, THE INTERESTED PERSON SHALL LEAVE THE BOARD OR COMMITTEE MEETING WHILE THE FINANCIAL INTEREST IS DISCUSSED AND VOTED UPON. THE REMAINING BOARD OR COMMITTEE MEMBERS SHALL DECIDE IF A CONFLICT OF INTEREST EXISTS. ANNUAL STATEMENTS: EACH DIRECTOR, PRINCIPAL OFFICER AND MEMBER OF A COMMITTEE SHALL ANNUALLY SIGN A STATEMENT WHICH AFFIRMS THAT SUCH PERSON: A) HAS RECEIVED A COPY OF THE CONFLICTS OF INTEREST POLICY, B) HAS READ AND UNDERSTANDS THE POLICY, C) HAS AGREED TO COMPLY WITH THE POLICY, AND D) UNDERSTANDS THE HOSPITAL IS CHARITABLE AND IN ORDER TO MAINTAIN ITS FEDERAL TAX EXEMPTION IT MUST ENGAGE PRIMARILY IN ACTIVITIES WHICH ACCOMPLISH ONE OR MORE OF ITS TAX-EXEMPT PURPOSES. PERIODIC REVIEWS: TO ENSURE THAT THE HOSPITAL OPERATES IN A MANNER CONSISTENT WITH CHARITABLE PURPOSES AND DOES NOT ENGAGE IN ACTIVITIES THAT COULD JEOPARDIZE ITS TAX-EXEMPT STATUS, THE HOSPITAL SHALL CONDUCT PERIODIC REVIEWS OF THE IMPLEMENTATION OF THE POLICY. |
| FORM 990, PART VI, SECTION B, LINE 15 | THE HOSPITAL'S CHIEF EXECUTIVE OFFICER IS COMPENSATED BY THE HOSPITAL'S SOLE CORPORATE MEMBER, CEDARS-SINAI MEDICAL CENTER. THE EXECUTIVE PERSONNEL COMMITTEE OF CEDARS-SINAI MEDICAL CENTER REVIEWS AND APPROVES THE CHIEF EXECUTIVE OFFICER'S COMPENSATION. SINCE THE HOSPITAL DOES NOT COMPENSATE ITS CHIEF EXECUTIVE OFFICER, THE RESPONSE TO THIS QUESTION IS NO, IN ACCORDANCE WITH SPECIFIC INSTRUCTIONS FROM THE INTERNAL REVENUE SERVICE. |
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION'S AUDITED CONSOLIDATED FINANCIAL STATEMENTS ARE ATTACHED TO ITS FORM 990. THE CONFLICT OF INTEREST POLICY AND GOVERNING DOCUMENTS ARE NOT AVAILABLE TO THE PUBLIC. |
| FORM 990, PART IX, LINE 11G | MEDICAL PURCHASED SERVICES: PROGRAM SERVICE EXPENSES 18,358,202. MANAGEMENT AND GENERAL EXPENSES 1,489,217. FUNDRAISING EXPENSES 0. TOTAL EXPENSES 19,847,419. OTHER PURCHASED SERVICES: PROGRAM SERVICE EXPENSES 546,436. MANAGEMENT AND GENERAL EXPENSES 2,145,952. FUNDRAISING EXPENSES 0. TOTAL EXPENSES 2,692,388. REPAIRS AND MAINTENANCE SERVICES: PROGRAM SERVICE EXPENSES 1,819,748. MANAGEMENT AND GENERAL EXPENSES 1,645,691. FUNDRAISING EXPENSES 0. TOTAL EXPENSES 3,465,439. COLLECTION AGENCY SERVICES: PROGRAM SERVICE EXPENSES 0. MANAGEMENT AND GENERAL EXPENSES 801,604. FUNDRAISING EXPENSES 0. TOTAL EXPENSES 801,604. TRANSCRIPTION SERVICES: PROGRAM SERVICE EXPENSES 0. MANAGEMENT AND GENERAL EXPENSES 97,313. FUNDRAISING EXPENSES 0. TOTAL EXPENSES 97,313. LAUNDRY AND UNIFORM SERVICES: PROGRAM SERVICE EXPENSES 487,584. MANAGEMENT AND GENERAL EXPENSES 28,897. FUNDRAISING EXPENSES 0. TOTAL EXPENSES 516,481. BUILDING OPERATING EXPENSES: PROGRAM SERVICE EXPENSES 26,817. MANAGEMENT AND GENERAL EXPENSES 35,226. FUNDRAISING EXPENSES 0. TOTAL EXPENSES 62,043. OTHER PATIENT CARE EXPENSES: PROGRAM SERVICE EXPENSES 2,331,736. MANAGEMENT AND GENERAL EXPENSES 70,833. FUNDRAISING EXPENSES 0. TOTAL EXPENSES 2,402,569. |
| FORM 990, PART XI, LINE 9: | TRANSFER FROM AFFILIATES 11,517,465. |
| FORM 990, PART XII, LINE 2C: | THE HOSPITAL'S FINANCIAL STATEMENTS WERE AUDITED ON A CONSOLIDATED BASIS WITH ITS PARENT FOR FISCAL YEAR ENDED JUNE 30, 2020. THE OVERSIGHT OF THE AUDIT WAS PERFORMED BY ITS PARENT'S AUDIT COMMITTEE. |

efile GRAPHIC print | Submission Date - 2022-05-06 | DLN: 93493126020952

# SCHEDULE R (Form 990)

Department of the Treasury
Internal Revenue Service

## Related Organizations and Unrelated Partnerships

▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

Name of the organization
CFHS HOLDINGS INC

**Employer identification number**
20-1645949

**Part I** **Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II** **Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)**CEDARS-SINAI MEDICAL CENTER<br>8700 BEVERLY BOULEVARD<br>LOS ANGELES, CA 90048<br>95-1644600 | ACUTE-CARE, TEACHING AND RESEARCH HOSPITAL | CA | 501 (C) (3) | LINE 3 | CEDARS-SINAI HEALTH SYSTEM | Yes | |
| **(2)**CALIFORNIA HEART CENTER FOUNDATION<br>15821 VENTURA BLVD STE 520<br>ENCINO, CA 91436<br>95-4772979 | PROMOTE, SUPPORT, AND DEVELOP EDUCATIONAL, AND SCIENTIFIC RESEARCH | CA | 501 (C) (3) | LINE 7 | CEDARS-SINAI MEDICAL CENTER | Yes | |
| **(3)**CEDARS-SINAI MEDICAL CARE FOUNDATION<br>6500 WILSHIRE BLVD 15TH FLOOR<br>LOS ANGELES, CA 90048<br>95-4457756 | PROVISION OF MEDICAL CARE, TEACHING, AND RESEARCH | CA | 501 (C) (3) | LINE 12A, I | CEDARS-SINAI MEDICAL CENTER | Yes | |
| **(4)**KERLAN-JOBE ORTHOPAEDIC FOUNDATION<br>6801 PARK TERRACE STE 500<br>LOS ANGELES, CA 90045<br>95-4707606 | EDUCATION AND RESEARCH RELATED TO ORTHOPEDIC MEDICINE | CA | 501 (C) (3) | LINE 7 | CEDARS-SINAI MEDICAL CARE FOUNDATION | Yes | |
| **(5)**SANTA MONICA ORTHOPAEDIC & SPORTS MED RESEARCH FDN<br>2020 SANTA MONICA BLVD 4TH FL<br>SANTA MONICA, CA 90404<br>95-4789926 | EDUCATION AND RESEARCH RELATED TO ORTHOPEDIC AND NEUROLOGIC CONDITIONS | CA | 501 (C) (3) | PF | CEDARS-SINAI MEDICAL CARE FOUNDATION | Yes | |
| **(6)**CEDARS-SINAI HEALTH SYSTEM<br>8700 BEVERLY BLVD<br>LOS ANGELES, CA 90048<br>30-0990905 | SUPPORT SPECIFIED NONPROFIT HEALTHCARE ORGANIZATIONS | CA | 501 (C) (3) | LINE 12C, III-FI | N/A | | No |
| **(7)**TORRANCE MEMORIAL MEDICAL CENTER HEALTH CARE FOUNDATION<br>3330 LOMITA BLVD<br>TORRANCE, CA 90505<br>95-3528452 | FUNDRAISING | CA | 501 (C) (3) | LINE 7 | TORRANCE HEALTH ASSOCIATION | Yes | |
| **(8)**TORRANCE MEMORIAL MEDICAL CENTER<br>3330 LOMITA BLVD<br>TORRANCE, CA 90505<br>95-1644042 | HEALTH SERVICES | CA | 501 (C) (3) | LINE 3 | TORRANCE HEALTH ASSOCIATION | Yes | |
| **(9)**TORRANCE HEALTH ASSOCIATION<br>3330 LOMITA BLVD<br>TORRANCE, CA 90505<br>33-0073515 | HEALTH SERVICES | CA | 501 (C) (3) | LINE 12B, II | CEDARS-SINAI HEALTH SYSTEM | Yes | |
| **(10)**CEDARS SINAI INTELLECTUAL PROPERTY COMPANY<br>8700 BEVERLY BLVD<br>LOS ANGELES, CA 90048<br>87-1097792 | MANAGEMENT AND LICENSING OF INTELLECTUAL PROPERTY | CA | 501 (C) (3) | 12A, I | CEDARS-SINAI MEDICAL CENTER | Yes | |

**Part III** **Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? Yes | (h) No | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? Yes | (j) No | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **(1)** CS-BH ASC HOLDINGS LLC<br><br>450 N ROXBURY DR STE 602<br>BEVERLY HILLS, CA 90210<br>81-2246488 | HOLDING COMPANY | CA | N/A | | | | | No | | | No | |
| **(2)** ENDOSCOPY CENTER OF SANTA MONICA LLC<br><br>12400 WILSHIRE BLVD STE 100<br>LOS ANGELES, CA 90025<br>11-3652210 | ENDOSCOPIES AND THE RELATED PROCEDURES | CA | N/A | | | | | No | | | No | |
| **(3)** ISS ASC HOLDINGS LLC<br><br>200 N ROBERTSON BLVD 101<br>BEVERLY HILLS, CA 90211<br>47-1890805 | INVESTMENT IN HEALTHCARE SERVICES | CA | N/A | | | | | No | | | No | |
| **(4)** INTERNATIONAL SPINE & ORTHOPEDIC INSTITUTE LLC<br><br>8500 W 110TH ST<br>OVERLAND PARK, KS 66210<br>26-3738893 | SPINE AND ORTHOPEDIC INSTITUTE | DE | N/A | | | | | No | | | No | |
| **(5)** SANTA MONICA IMAGING GROUP LLC<br><br>200 N ROBERTSON BLVD 101<br>BEVERLY HILLS, CA 90211<br>82-0760657 | IMAGING CENTER | CA | N/A | | | | | No | | | No | |
| **(6)** TORRANCE MEMORIAL SURGICAL CENTER LLC I<br><br>23560 CRENSHAW BLVD STE 104<br>TORRANCE, CA 90505<br>46-5259260 | OUTPATIENT SURGICAL SERVICES | CA | N/A | | | | | No | | | No | |
| **(7)** 3565 DEL AMO ASSOCIATES A CALIFORNIA LIMITED PARTNERSHIP<br><br>5017 CARMEN STREET<br>TORRANCE, CA 90503<br>33-0554737 | RENTAL REAL ESTATE | CA | N/A | | | | | No | | | No | |
| **(8)** 90210 ASC VENTURE LLC<br><br>450 N ROXBURY DR STE 602<br>BEVERLY HILLS, CA 90210<br>13-4341801 | AMBULATORY SURGERY CENTER | CA | N/A | | | | | No | | | No | |

**Part IV** **Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? Yes | (i) No |
|---|---|---|---|---|---|---|---|---|---|
| **(1)**CENTINELA FREEMAN HOLDINGS INC<br><br>8700 BEVERLY BLVD STE TSB-290<br>LOS ANGELES, CA 90048<br>59-3811890 | REAL ESTATE HOLDINGS | CA | N/A | C | | | | Yes | |
| **(2)**OPTIMATRIX HEALTH SOLUTIONS INC<br><br>6500 WILSHIRE BLVD 9TH FLOOR<br>LOS ANGELES, CA 90048<br>95-4522779 | INACTIVE | CA | N/A | C | | | | Yes | |
| **(3)**OTOHARMONICS CORPORATION<br><br>PO BOX 272<br>WILMINGTON, DE 19899<br>46-1119421 | INACTIVE | DE | N/A | C | | | | Yes | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**Part V Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

**Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule.

| | | Line | Yes | No |
|---|---|---|---|---|
| **1** | During the tax year, did the orgranization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** | Receipt of **(i)** interest, **(ii)** annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | 1a | | No |
| **b** | Gift, grant, or capital contribution to related organization(s) | 1b | | No |
| **c** | Gift, grant, or capital contribution from related organization(s) | 1c | | No |
| **d** | Loans or loan guarantees to or for related organization(s) | 1d | | No |
| **e** | Loans or loan guarantees by related organization(s) | 1e | | No |
| **f** | Dividends from related organization(s) | 1f | | No |
| **g** | Sale of assets to related organization(s) | 1g | | No |
| **h** | Purchase of assets from related organization(s) | 1h | | No |
| **i** | Exchange of assets with related organization(s) | 1i | | No |
| **j** | Lease of facilities, equipment, or other assets to related organization(s) | 1j | | No |
| **k** | Lease of facilities, equipment, or other assets from related organization(s) | 1k | Yes | |
| **l** | Performance of services or membership or fundraising solicitations for related organization(s) | 1l | | No |
| **m** | Performance of services or membership or fundraising solicitations by related organization(s) | 1m | Yes | |
| **n** | Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | 1n | | No |
| **o** | Sharing of paid employees with related organization(s) | 1o | | No |
| **p** | Reimbursement paid to related organization(s) for expenses | 1p | Yes | |
| **q** | Reimbursement paid by related organization(s) for expenses | 1q | Yes | |
| **r** | Other transfer of cash or property to related organization(s) | 1r | Yes | |
| **s** | Other transfer of cash or property from related organization(s) | 1s | Yes | |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| (a) Name of related organization | (b) Transaction type (a-s) | (c) Amount involved | (d) Method of determining amount involved |
|---|---|---|---|
| **(1)** CENTINELA FREEMAN HOLDINGS INC | K | 922,272 | FAIR MARKET VALUE |
| **(2)** CENTINELA FREEMAN HOLDINGS INC | Q | 63,996 | FAIR MARKET VALUE |
| **(3)** CENTINELA FREEMAN HOLDINGS INC | R | 59,783 | FAIR MARKET VALUE |
| | | | |
| | | | |
| | | | |

**Part VI** **Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| **(a)** Name, address, and EIN of entity | **(b)** Primary activity | **(c)** Legal domicile (state or foreign country) | **(d)** Predominant income (related, unrelated, excluded from tax under sections 512-514) | **(e)** Are all partners section 501(c)(3) organizations? | | **(f)** Share of total income | **(g)** Share of end-of-year assets | **(h)** Disproprtionate allocations? | | **(i)** Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | **(j)** General or managing partner? | | **(k)** Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Yes** | **No** | | | **Yes** | **No** | | **Yes** | **No** | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Schedule R (Form 990) 2020 Page 5

**Part VII** **Supplemental Information**

Provide additional information for responses to questions on Schedule R. (see instructions).

| Return Reference | Explanation |
| --- | --- |

Schedule R (Form 990) 2020

TAB 3

Form **990**

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

▶ Do not enter social security numbers on this form as it may be made public.

▶ **Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Department of the Treasury Internal Revenue Service

**A For the 2021 calendar year, or tax year beginning 07-01-2021 , and ending 06-30-2022**

**B** Check if applicable:
- ☐ Address change
- ☐ Name change
- ☐ Initial return
- ☐ Final return/terminated
- ☐ Amended return
- ☐ Application pending

**C** Name of organization
OLE HEALTH

Doing business as

Number and street (or P.O. box if mail is not delivered to street address) 1141 PEAR TREE LANE 100
Room/suite

City or town, state or province, country, and ZIP or foreign postal code
NAPA, CA 94558

**D Employer identification number**
23-7221695

E Telephone number
(707) 254-1770

**G** Gross receipts $ 45,635,552

**F** Name and address of principal officer:
ALICIA HARDY
1141 PEAR TREE LANE 100
NAPA, CA 94558

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No

**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.

**H(c)** Group exemption number ▶

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** ▶ WWW.OLEHEALTH.ORG

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other ▶

**L** Year of formation: 1972

**M** State of legal domicile: CA

## Part I Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities:
OLE HEALTH IS THE MEDICAL HOME FOR THE COMMUNITY'S UNDERSERVED PATIENTS.

2 Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 18 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 18 |
| 5 | Total number of individuals employed in calendar year 2021 (Part V, line 2a) | 5 | 378 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 18 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7b | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| **Revenue** | | | |
| 8 | Contributions and grants (Part VIII, line 1h) | 16,551,956 | 13,012,362 |
| 9 | Program service revenue (Part VIII, line 2g) | 29,402,943 | 31,382,690 |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 1,733,904 | 984,723 |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 60,160 | 177,570 |
| 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 47,748,963 | 45,557,345 |
| **Expenses** | | | |
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 0 | 5,000 |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 26,047,547 | 31,404,945 |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| b | Total fundraising expenses (Part IX, column (D), line 25) ▶1,386,593 | | |
| 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 13,440,302 | 13,135,018 |
| 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 39,487,849 | 44,544,963 |
| 19 | Revenue less expenses. Subtract line 18 from line 12 | 8,261,114 | 1,012,382 |

| **Net Assets or Fund Balances** | | Beginning of Current Year | End of Year |
|---|---|---|---|
| 20 | Total assets (Part X, line 16) | 53,712,305 | 56,303,054 |
| 21 | Total liabilities (Part X, line 26) | 10,759,458 | 15,554,803 |
| 22 | Net assets or fund balances. Subtract line 21 from line 20 | 42,952,847 | 40,748,251 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

**Sign Here**

Signature of officer — Date 2023-05-11

ALICIA HARDY CEO
Type or print name and title

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| | | 2023-05-11 | | P01262236 |

Firm's name ▶ MOSS ADAMS LLP — Firm's EIN ▶ 91-0189318

Firm's address ▶ 101 SECOND STREET SUITE 900 SAN FRANCISCO, CA 94105 — Phone no. (415) 956-1500

May the IRS discuss this return with the preparer shown above? (see instructions) ☑ Yes ☐ No

**Part III** **Statement of Program Service Accomplishments**

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . ☑

**1** Briefly describe the organization's mission:

OLE HEALTH BUILDS STRONGER COMMUNITIES BY ENSURING HIGH QUALITY, COMPREHENSIVE AND PERSONALIZED CARE FOR EVERYONE WHO LIVES AND WORKS IN THE PLACES WE CALL HOME.

**2** Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code: ) (Expenses $ 20,936,074 including grants of $ 0 ) (Revenue $ 25,759,193 )

OLE HEALTH IS A FEDERALLY QUALIFIED HEALTH CENTER (FQHC), SERVING BOTH NAPA AND SOLANO COUNTIES. WE PROVIDE PRIMARY MEDICAL CARE, INCLUDING PERINATAL AND NUTRITION SERVICES, TO OVER 30,000 PATIENTS PER YEAR. ALL OF THESE SERVICES ARE AVAILABLE AT LITTLE TO NO COST FOR PATIENTS THROUGH THE SLIDING FEE SCALE DISCOUNT PROGRAM.

**4b** (Code: ) (Expenses $ 3,961,077 including grants of $ 0 ) (Revenue $ 3,361,870 )

THE DENTAL SERVICES PROGRAM AT OLE HEALTH PROVIDES AFFORDABLE DENTAL CARE TO APPROXIMATELY 6,000 PATIENTS PER YEAR.

**4c** (Code: ) (Expenses $ 1,855,398 including grants of $ 0 ) (Revenue $ 1,832,990 )

THE MENTAL HEALTH PROGRAM AT OLE HEALTH PROVIDES AFFORDABLE MENTAL HEALTH CARE TO APPROXIMATELY 2,600 PATIENTS PER YEAR.

(Code: ) (Expenses $ 412,078 including grants of $ 5,000 ) (Revenue $ 428,637 )

OLE HEALTH'S COMPREHENSIVE OPTOMETRY SERVICES INCLUDE DIAGNOSIS AND TREATMENT OF THE EYE AND VISUAL SYSTEM, AND A MODERN OPTICAL DISPENSARY FEATURING THE LATEST DESIGNER EYEWEAR TECHNOLOGY. OPTOMETRY SERVICES INCLUDE: EYE AND VISION EXAMS; RED-EYE EXAMS; FRAME SELECTION; AND AN OPTICAL DEPARTMENT.

**4d** Other program services (Describe in Schedule O.)

(Expenses $ 412,078 including grants of $ 5,000 ) (Revenue $ 428,637 )

**4e** **Total program service expenses** ▶ 27,164,627

**Part IV Checklist of Required Schedules**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | **1** | Yes | |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors*? See instructions. | **2** | Yes | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | **3** | | No |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | **4** | Yes | |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19? *If "Yes," complete Schedule C, Part III* | **5** | | No |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,*Part I | **6** | | No |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | **7** | | No |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III | **8** | | No |
| **9** | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | **9** | | No |
| **10** | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | **10** | | No |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. | **11a** | Yes | |
| **b** | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | **11b** | | No |
| **c** | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | **11c** | | No |
| **d** | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | **11d** | Yes | |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | Yes | |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | **11f** | Yes | |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | **12a** | | No |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | Yes | |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | No |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? | **14a** | | No |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | **14b** | | No |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | **15** | | No |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | **16** | | No |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I.* See instructions. | **17** | | No |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | **18** | | No |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | **19** | | No |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | **20a** | | No |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |
| **21** | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | **21** | | No |

**Part IV** **Checklist of Required Schedules** *(continued)*

| | | Line | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | | No |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | Yes | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | 24a | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L,* Part I | 25a | | No |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L,* Part I | 25b | | No |
| 26 | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | 26 | | No |
| 27 | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L,*Part III | 27 | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see the Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | 28a | | No |
| b | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | 28b | | No |
| c | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* | 28c | | No |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | No |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | No |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | No |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | Yes | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | Yes | |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | Yes | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | No |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | No |
| 38 | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. | 38 | Yes | |

**Part V** **Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response or note to any line in this Part V ☐

| | | | | Line | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable | 1a | 42 | | | |
| b | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable | 1b | 0 | | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | | 1c | Yes | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance** *(continued)*

| | | | | Line | Yes | No |
|---|---|---|---|---|---|---|
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | **2a** | 378 | | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file. See instructions. | | | **2b** | Yes | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? | | | **3a** | | No |
| **b** | If "Yes," has it filed a Form 990-T for this year?*If "No" to line 3b, provide an explanation in Schedule O* | | | **3b** | | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | | **4a** | | No |
| **b** | If "Yes," enter the name of the foreign country: ▶ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | | **5a** | | No |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | **5b** | | No |
| **c** | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | | | **5c** | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | | **6a** | | No |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | | **6b** | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | | **7a** | | No |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | | **7b** | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | | **7c** | | No |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year | **7d** | | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | | **7e** | | No |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | | **7f** | | No |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | | **7g** | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | | **7h** | | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | | **8** | | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | | | |
| **a** | Did the sponsoring organization make any taxable distributions under section 4966? | | | **9a** | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | | **9b** | | |
| **10** | **Section 501(c)(7) organizations.** Enter: | | | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 | **10a** | | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | **10b** | | | | |
| **11** | **Section 501(c)(12) organizations.** Enter: | | | | | |
| **a** | Gross income from members or shareholders | **11a** | | | | |
| **b** | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) | **11b** | | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | | **12a** | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | **12b** | | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O. | | | **13a** | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | **13b** | | | | |
| **c** | Enter the amount of reserves on hand | **13c** | | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? | | | **14a** | | No |
| **b** | If "Yes," has it filed a Form 720 to report these payments?*If "No," provide an explanation in Schedule O* | | | **14b** | | |
| **15** | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see the instructions and file Form 4720, Schedule N. | | | **15** | | No |
| **16** | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | | **16** | | No |
| **17** | **Section 501(c)(21) organizations.** Did the trust, any disqualified person, or mine operator engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? If "Yes," complete Form 6069. | | | **17** | | |

**Part VI** **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*
Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . . . ☑

**Section A. Governing Body and Management**

| | | Line | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year — **1a** 18<br>If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent — **1b** 18 | | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | 2 | | No |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | 3 | | No |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | 4 | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? | 5 | | No |
| 6 | Did the organization have members or stockholders? | 6 | | No |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | 7a | | No |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | 7b | | No |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | |
| a | The governing body? | 8a | Yes | |
| b | Each committee with authority to act on behalf of the governing body? | 8b | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | 9 | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | Line | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? | 10a | | No |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | 11a | Yes | |
| b | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | 12a | Yes | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | 12b | Yes | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | 12c | Yes | |
| 13 | Did the organization have a written whistleblower policy? | 13 | Yes | |
| 14 | Did the organization have a written document retention and destruction policy? | 14 | Yes | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official | 15a | Yes | |
| b | Other officers or key employees of the organization | 15b | Yes | |
| | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | 16a | | No |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | 16b | | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed ▶ CA

**18** Section 6104 requires an organization to make its Form 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
▶CINDY JOHNSON 2650 NAPA VALLEY CORPORATE DRIVE NAPA, CA 94558 (707) 254-1770

**Part VII** **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (box 5 of Form W-2, Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position: Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (1) ALICIA HARDY<br>CHIEF EXECUTIVE OFFICER | 38.00<br>2.00 | | | X | | | | 332,978 | 0 | 24,171 |
| (2) TERESA L SHINDER DO FAAP<br>CHIEF MEDICAL OFFICER | 40.00<br>0.00 | | | X | | | | 310,513 | 0 | 18,092 |
| (3) GABRIELA BERMUDEZ MD<br>MEDICAL DIRECTOR, UP VALLEY SITES | 40.00<br>0.00 | | | | | X | | 297,754 | 0 | 20,961 |
| (4) ROSE MACISAAC<br>CFO/COO THROUGH 2/2022 | 31.00<br>9.00 | | | X | | | | 275,658 | 0 | 22,373 |
| (5) JENNIFER ANN WILSON MD<br>FAMILY MEDICINE PHYSICIAN | 36.00<br>0.00 | | | | | X | | 262,273 | 0 | 18,647 |
| (6) HAMED ZAMANI MD<br>FAMILY MEDICINE PHYSICIAN | 40.00<br>0.00 | | | | | X | | 257,525 | 0 | 18,686 |
| (7) ALLISON CRISP DO MPH<br>PEDIATRICIAN | 40.00<br>0.00 | | | | | X | | 261,816 | 0 | 13,365 |
| (8) LYNETTE LEIGHTON MD<br>FAMILY MEDICINE PHYSICIAN | 36.00<br>0.00 | | | | | X | | 263,188 | 0 | 10,813 |
| (9) ANDREW TORGE<br>CHIEF HUMAN RESOURCES OFFICER | 40.00<br>0.00 | | | | X | | | 271,013 | 0 | 1,258 |
| (10) VINCENT FILANOVA DDS<br>CHIEF DENTAL OFFICER THROUGH 3/2022 | 40.00<br>0.00 | | | X | | | | 253,242 | 0 | 14,242 |
| (11) GARY FEDLER<br>CHIEF INFORMATION OFFICER | 40.00<br>0.00 | | | | X | | | 222,864 | 0 | 22,085 |
| (12) SONIA TOLBERT<br>CHIEF DEVELOPMENT OFFICER | 20.00<br>20.00 | | | | X | | | 183,150 | 0 | 5,554 |
| (13) HEMANTA MUNGUR<br>CHIEF FINANCIAL OFFICER START 2/2022 | 31.00<br>9.00 | | | X | | | | 0 | 0 | 0 |
| (14) AISHA AMIN DMD MPH<br>DENTAL DIRECTOR START 4/2022 | 40.00<br>0.00 | | | X | | | | 0 | 0 | 0 |
| (15) PETE RICHMOND<br>CHAIR | 1.00<br>2.00 | X | | X | | | | 0 | 0 | 0 |
| (16) ARTHUR ROOSA<br>VICE CHAIR | 1.00<br>0.00 | X | | X | | | | 0 | 0 | 0 |
| (17) PATRICIA MCFARLAND<br>TREASURER | 1.00<br>0.00 | X | | X | | | | 0 | 0 | 0 |

**Part VII** **Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (18) MADELINE HERNANDEZ<br>SECRETARY | 1.00<br>0.00 | X | | X | | | | 0 | 0 | 0 |
| (19) MAIRA AYALA<br>BOARD MEMBER | 1.00<br>1.00 | X | | | | | | 0 | 0 | 0 |
| (20) JOE CARRILLO<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (21) DEBORAH GOODIN<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (22) RICHARD JONES<br>BOARD MEMBER | 1.00<br>2.00 | X | | | | | | 0 | 0 | 0 |
| (23) BEATRICE LABASTIDA<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (24) BRANDY LANE<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (25) CYNTHIA MACIAS<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (26) MONIN MARTIN<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (27) JO MOORE<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (28) CEPHAS MUGERWA<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (29) BRYAN NAZARIO<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (30) ANNA ROTH<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (31) DAWNIELLE THORNBURGH<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |
| (32) LORI WILSON<br>BOARD MEMBER | 1.00<br>0.00 | X | | | | | | 0 | 0 | 0 |

| | (D) | (E) | (F) |
|---|---|---|---|
| **1b Sub-Total** ▶ | | | |
| **c Total from continuation sheets to Part VII, Section A** ▶ | | | |
| **d Total (add lines 1b and 1c)** ▶ | 3,191,974 | 0 | 190,247 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 60

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* | 3 | | No |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* | 4 | Yes | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization?*If "Yes," complete Schedule J for such person* | 5 | | No |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| FALCON CLEANING & JANITORIAL SERVICES<br><br>675 HEGENBERGER RD 240<br>OAKLAND, CA 94621 | JANITORIAL SERVICES | 283,397 |
| E CLINICAL WORKS LLC<br><br>PO BOX 847950<br>BOSTON, MA 02284 | EHR SOFTWARE/IT SERVICES | 261,657 |
| COMPHEALTH<br><br>PO BOX 972651<br>DALLAS, TX 75397 | CONTRACTED MEDICAL SERVICES | 236,650 |
| FONEMED LLC<br><br>PO BOX 911599<br>DENVER, CO 80291 | TELEHEALTH SERVICES | 235,719 |
| SVT GRUPPE<br><br>PO BOX 270<br>NAPA, CA 94558 | SECURITY SERVICES | 120,534 |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ 5

**Part VIII Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . ☐

**Contributions, gifts, grants, and other similar amounts**

| Line | Description | Box | Amount |
|---|---|---|---|
| 1a | Federated campaigns | 1a | |
| b | Membership dues | 1b | |
| c | Fundraising events | 1c | |
| d | Related organizations | 1d | 2,298,619 |
| e | Government grants (contributions) | 1e | 6,441,893 |
| f | All other contributions, gifts, grants, and similar amounts not included above | 1f | 4,271,850 |
| g | Noncash contributions included in lines 1a - 1f:$ | 1g | |
| h | **Total.** Add lines 1a-1f . . . ▶ | | (A) 13,012,362 |

| Line | Description | Business Code | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| **Program Service Revenue** | | | | | | |
| 2a | NET PATIENT SERV REV | 621400 | 19,756,874 | 19,756,874 | | |
| b | 340B PROGRAM REVENUE | 621400 | 5,465,096 | 5,465,096 | | |
| c | CAPITATION REVENUE | 621400 | 4,460,720 | 4,460,720 | | |
| d | PHC PROVIDER INCENTIVES | 621400 | 1,700,000 | 1,700,000 | | |
| e | | | | | | |
| f | All other program service revenue. | | | | | |
| g | **Total.** Add lines 2a–2f. . . . ▶ | | 31,382,690 | | | |
| **Other Revenue** | | | | | | |
| 3 | Investment income (including dividends, interest, and other similar amounts) ▶ | | 604,191 | | | 604,191 |
| 4 | Income from investment of tax-exempt bond proceeds ▶ | | | | | |
| 5 | Royalties ▶ | | | | | |

| Line | Description | | (i) Real | (ii) Personal |
|---|---|---|---|---|
| 6a | Gross rents | 6a | | |
| b | Less: rental expenses | 6b | | |
| c | Rental income or (loss) | 6c | | |
| d | Net rental income or (loss) . . . ▶ | | | |

| Line | Description | | (i) Securities | (ii) Other |
|---|---|---|---|---|
| 7a | Gross amount from sales of assets other than inventory | 7a | 458,739 | |
| b | Less: cost or other basis and sales expenses | 7b | 0 | 78,207 |
| c | Gain or (loss) | 7c | 458,739 | -78,207 |

| Line | Description | Box | Amount | (A) Total revenue | (B) | (C) | (D) |
|---|---|---|---|---|---|---|---|
| 7d | Net gain or (loss) . . . ▶ | | | 380,532 | | | 380,532 |
| 8a | Gross income from fundraising events (not including $ of contributions reported on line 1c). See Part IV, line 18 | 8a | | | | | |
| b | Less: direct expenses | 8b | | | | | |
| c | Net income or (loss) from fundraising events ▶ | | | | | | |
| 9a | Gross income from gaming activities. See Part IV, line 19 | 9a | | | | | |
| b | Less: direct expenses | 9b | | | | | |
| c | Net income or (loss) from gaming activities ▶ | | | | | | |
| 10a | Gross sales of inventory, less returns and allowances | 10a | | | | | |
| b | Less: cost of goods sold | 10b | | | | | |
| c | Net income or (loss) from sales of inventory ▶ | | | | | | |

| Line | Miscellaneous Revenue | Business Code | (A) Total revenue | (B) | (C) | (D) |
|---|---|---|---|---|---|---|
| 11a | OTHER REVENUE | 900099 | 177,570 | | | 177,570 |
| b | | | | | | |
| c | | | | | | |
| d | All other revenue | | | | | |
| e | **Total.** Add lines 11a–11d ▶ | | 177,570 | | | |
| 12 | **Total revenue.** See instructions ▶ | | 45,557,345 | 31,382,690 | 0 | 1,162,293 |

**Part IX** **Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . ☐

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| 1 Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | 5,000 | 5,000 | | |
| 2 Grants and other assistance to domestic individuals. See Part IV, line 22 | | | | |
| 3 Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. | | | | |
| 4 Benefits paid to or for members | | | | |
| 5 Compensation of current officers, directors, trustees, and key employees | 1,974,350 | 596,090 | 1,172,401 | 205,859 |
| 6 Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| 7 Other salaries and wages | 23,943,531 | 15,100,266 | 8,406,928 | 436,337 |
| 8 Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | 803,290 | 509,082 | 278,331 | 15,877 |
| 9 Other employee benefits | 2,919,243 | 1,678,750 | 1,182,712 | 57,781 |
| 10 Payroll taxes | 1,764,531 | 1,064,656 | 654,209 | 45,666 |
| 11 Fees for services (non-employees): | | | | |
| a Management | | | | |
| b Legal | 21,410 | | 17,572 | 3,838 |
| c Accounting | 206,996 | | 206,996 | |
| d Lobbying | | | | |
| e Professional fundraising services. See Part IV, line 17 | | | | |
| f Investment management fees | 76,769 | | 76,769 | |
| g Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 3,723,148 | 2,692,004 | 934,715 | 96,429 |
| 12 Advertising and promotion | 89,903 | 3,358 | 69,403 | 17,142 |
| 13 Office expenses | 578,200 | 114,800 | 404,606 | 58,794 |
| 14 Information technology | 491,716 | 6,467 | 477,749 | 7,500 |
| 15 Royalties | | | | |
| 16 Occupancy | 2,805,431 | 1,862,574 | 921,370 | 21,487 |
| 17 Travel | 28,089 | 9,709 | 18,372 | 8 |
| 18 Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| 19 Conferences, conventions, and meetings | 114,105 | 92,459 | 20,034 | 1,612 |
| 20 Interest | 50,950 | 42,798 | 8,152 | |
| 21 Payments to affiliates | | | | |
| 22 Depreciation, depletion, and amortization | 542,571 | 446,312 | 85,172 | 11,087 |
| 23 Insurance | 163,151 | | 163,151 | |
| 24 Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| a MEDICAL SUPPLIES | 2,618,231 | 2,540,668 | 77,563 | |
| b EQUIPMENT COSTS | 377,609 | 240,153 | 135,022 | 2,434 |
| c DUES & SUBSCRIPTIONS | 101,629 | 16,412 | 68,155 | 17,062 |
| d STAFF APPRECIATION | 76,101 | 31,390 | 42,496 | 2,215 |
| e All other expenses | 1,069,009 | 111,679 | 571,865 | 385,465 |
| 25 **Total functional expenses.** Add lines 1 through 24e | 44,544,963 | 27,164,627 | 15,993,743 | 1,386,593 |
| 26 **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

**Part X Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . ☐

| | | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|---|
| Assets | 1 | Cash–non-interest-bearing | | 3,968,314 | 1 | 4,677,200 |
| | 2 | Savings and temporary cash investments | | 2,130,064 | 2 | 1,872,828 |
| | 3 | Pledges and grants receivable, net | | 911,920 | 3 | 888,922 |
| | 4 | Accounts receivable, net | | 2,757,895 | 4 | 2,685,254 |
| | 5 | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | 90,000 | 5 | 0 |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | | 6 | |
| | 7 | Notes and loans receivable, net | | 14,621,945 | 7 | 14,774,610 |
| | 8 | Inventories for sale or use | | | 8 | |
| | 9 | Prepaid expenses and deferred charges | | 623,356 | 9 | 661,484 |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | 10a 15,385,697 | | | |
| | b | Less: accumulated depreciation | 10b 6,826,674 | 2,849,461 | 10c | 8,559,023 |
| | 11 | Investments—publicly traded securities | | 21,032,835 | 11 | 17,168,863 |
| | 12 | Investments—other securities. See Part IV, line 11 | | | 12 | |
| | 13 | Investments—program-related. See Part IV, line 11 | | 1,671,588 | 13 | 1,671,588 |
| | 14 | Intangible assets | | | 14 | |
| | 15 | Other assets. See Part IV, line 11 | | 3,054,927 | 15 | 3,343,282 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) | | 53,712,305 | 16 | 56,303,054 |
| Liabilities | 17 | Accounts payable and accrued expenses | | 5,590,568 | 17 | 5,941,715 |
| | 18 | Grants payable | | | 18 | |
| | 19 | Deferred revenue | | 2,416,576 | 19 | 2,522,149 |
| | 20 | Tax-exempt bond liabilities | | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | 0 | 23 | 2,813,372 |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | | 2,752,314 | 25 | 4,277,567 |
| | 26 | **Total liabilities.** Add lines 17 through 25 | | 10,759,458 | 26 | 15,554,803 |
| Net Assets or Fund Balances | | **Organizations that follow FASB ASC 958, check here ▶ ☑ and complete lines 27, 28, 32, and 33.** | | | | |
| | 27 | Net assets without donor restrictions | | 42,441,834 | 27 | 40,405,273 |
| | 28 | Net assets with donor restrictions | | 511,013 | 28 | 342,978 |
| | | **Organizations that do not follow FASB ASC 958, check here ▶ ☐ and complete lines 29 through 33.** | | | | |
| | 29 | Capital stock or trust principal, or current funds | | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund | | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds | | | 31 | |
| | 32 | Total net assets or fund balances | | 42,952,847 | 32 | 40,748,251 |
| | 33 | Total liabilities and net assets/fund balances | | 53,712,305 | 33 | 56,303,054 |

**Part XI Reconcilliation of Net Assets**

Check if Schedule O contains a response or note to any line in this Part XI ☐

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 45,557,345 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | 2 | 44,544,963 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | 3 | 1,012,382 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) | 4 | 42,952,847 |
| 5 | Net unrealized gains (losses) on investments | 5 | -3,200,478 |
| 6 | Donated services and use of facilities | 6 | -16,500 |
| 7 | Investment expenses | 7 | |
| 8 | Prior period adjustments | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | 0 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | 10 | 40,748,251 |

**Part XII Financial Statements and Reporting**

Check if Schedule O contains a response or note to any line in this Part XII ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash ☑ Accrual ☐ Other ______<br>If the organization changed its method of accounting from a prior year or checked "Other," explain on Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | 2a | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? | 2b | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☑ Consolidated basis ☐ Both consolidated and separate basis | | | |
| c | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | 2c | Yes | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | 3a | Yes | |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | 3b | Yes | |

| efile GRAPHIC print | Submission Date - 2023-05-12 | DLN: 93493132070903 |
|---|---|---|

**SCHEDULE A (Form 990)**

Department of the Treasury Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**

▶ **Attach to Form 990 or Form 990-EZ.**

▶ **Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

**Name of the organization**
OLE HEALTH

**Employer identification number**
23-7221695

**Part I** **Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☑ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)**. (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

g Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 10 above (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | Yes | No | | |
| | | | | | | |
| | | | | | | |
| Total | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 11285F **Schedule A (Form 990) 2021**

**Part II** **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2017 | (b) 2018 | (c) 2019 | (d) 2020 | (e) 2021 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") | 6,182,508 | 4,783,286 | 9,502,269 | 16,551,956 | 13,012,362 | 50,032,381 |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| 4 **Total.** Add lines 1 through 3 | 6,182,508 | 4,783,286 | 9,502,269 | 16,551,956 | 13,012,362 | 50,032,381 |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | 4,317,558 |
| 6 **Public support.** Subtract line 5 from line 4. | | | | | | 45,714,823 |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2017 | (b) 2018 | (c) 2019 | (d) 2020 | (e) 2021 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4. | 6,182,508 | 4,783,286 | 9,502,269 | 16,551,956 | 13,012,362 | 50,032,381 |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | 386,116 | 413,870 | 430,270 | 480,969 | 604,191 | 2,315,416 |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on. | | | | | | |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). | 67,528 | 10,583 | 739,428 | 60,160 | 177,570 | 1,055,269 |
| 11 **Total support.** Add lines 7 through 10 | | | | | | 53,403,066 |

12 Gross receipts from related activities, etc. (see instructions) . . . . **12** 136,243,443

13 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

14 Public support percentage for 2021 (line 6, column (f) divided by line 11, column (f)) . . . . **14** 85.600 %

15 Public support percentage for 2020 Schedule A, Part II, line 14 . . . . **15** 85.010 %

16a **33 1/3% support test—2021.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☑

b **33 1/3% support test—2020.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☐

17a **10%-facts-and-circumstances test—2021.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . ▶ ☐

b **10%-facts-and-circumstances test—2020.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . ▶ ☐

**Part III** **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2017 | **(b)** 2018 | **(c)** 2019 | **(d)** 2020 | **(e)** 2021 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . . | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| **c** Add lines 7a and 7b. . | | | | | | |
| **8** **Public support.** (Subtract line 7c from line 6.) | | | | | | |

**Section B. Total Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2017 | **(b)** 2018 | **(c)** 2019 | **(d)** 2020 | **(e)** 2021 | **(f)** Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6. . . | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| **c** Add lines 10a and 10b. | | | | | | |
| **11** Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on. | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12.). . | | | | | | |

**14** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

| | | | |
|---|---|---|---|
| **15** | Public support percentage for 2021 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . | **15** | |
| **16** | Public support percentage from 2020 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . . | **16** | |

**Section D. Computation of Investment Income Percentage**

| | | | |
|---|---|---|---|
| **17** | Investment income percentage for **2021** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | **17** | |
| **18** | Investment income percentage from **2020** Schedule A, Part III, line 17 . . . . . . . . . . . . . . | **18** | |

**19a** **33 1/3% support tests-2021.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . ▶ ☐

**b** **33 1/3% support tests—2020.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐

**Part IV** **Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | Line | Yes | No |
|---|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination.* | **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use.* | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in **Part VI,** including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI.*** | **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990) .* | **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI.*** | **9a** | | |
| **b** | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI.*** | **9b** | | |
| **c** | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI.*** | **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | **10b** | | |

**Part IV** **Supporting Organizations** (continued)

| | | | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | **11a** | | |
| **b** | A family member of a person described on 11a above? | **11b** | | |
| **c** | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in* ***Part VI***. | **11c** | | |

**Section B. Type I Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in* ***Part VI*** *how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in* ***Part VI*** *how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | **2** | | |

**Section C. Type II Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in* ***Part VI*** *how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** | | |

**Section D. All Type III Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in* ***Part VI*** *how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** | | |
| **3** | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in* ***Part VI*** *the role the organization's supported organizations played in this regard.* | **3** | | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

**1** Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

- **a** ☐ The organization satisfied the Activities Test. Complete **line 2** below.
- **b** ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.
- **c** ☐ The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

| | | | Yes | No |
|---|---|---|---|---|
| **2** | Activities Test. **Answer lines 2a and 2b below.** | | | |
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in* ***Part VI identify those supported organizations and explain*** *how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** | | |
| **b** | Did the activities described on line 2a, above constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in* ***Part VI*** *the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** | | |
| **3** | Parent of Supported Organizations. **Answer lines 3a and 3b below.** | | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations?*If "Yes" or "No", provide details in* ***Part VI.*** | **3a** | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in* ***Part VI.*** *the role played by the organization in this regard.* | **3b** | | |

## Part V Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations

**1** ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 *(explain in **Part VI**)*. **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| | **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| **1** | Net short-term capital gain | **1** | | |
| **2** | Recoveries of prior-year distributions | **2** | | |
| **3** | Other gross income (see instructions) | **3** | | |
| **4** | Add lines 1 through 3 | **4** | | |
| **5** | Depreciation and depletion | **5** | | |
| **6** | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | **6** | | |
| **7** | Other expenses (see instructions) | **7** | | |
| **8** | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | **8** | | |

| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| **1** | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | **1** | | |
| **a** | Average monthly value of securities | **1a** | | |
| **b** | Average monthly cash balances | **1b** | | |
| **c** | Fair market value of other non-exempt-use assets | **1c** | | |
| **d** | **Total** (add lines 1a, 1b, and 1c) | **1d** | | |
| **e** | **Discount** claimed for blockage or other factors (*explain in detail in **Part VI***): | | | |
| **2** | Acquisition indebtedness applicable to non-exempt use assets | **2** | | |
| **3** | Subtract line 2 from line 1d | **3** | | |
| **4** | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | **4** | | |
| **5** | Net value of non-exempt-use assets (subtract line 4 from line 3) | **5** | | |
| **6** | Multiply line 5 by 0.035 | **6** | | |
| **7** | Recoveries of prior-year distributions | **7** | | |
| **8** | **Minimum Asset Amount** (add line 7 to line 6) | **8** | | |

| | **Section C - Distributable Amount** | | | Current Year |
|---|---|---|---|---|
| **1** | Adjusted net income for prior year (from Section A, line 8, Column A) | **1** | | |
| **2** | Enter 85% of line 1 | **2** | | |
| **3** | Minimum asset amount for prior year (from Section B, line 8, Column A) | **3** | | |
| **4** | Enter greater of line 2 or line 3 | **4** | | |
| **5** | Income tax imposed in prior year | **5** | | |
| **6** | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | **6** | | |

**7** ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Part V** **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** (continued)

| **Section D - Distributions** | | **Current Year** |
|---|---|---|
| **1** Amounts paid to supported organizations to accomplish exempt purposes | **1** | |
| **2** Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | **2** | |
| **3** Administrative expenses paid to accomplish exempt purposes of supported organizations | **3** | |
| **4** Amounts paid to acquire exempt-use assets | **4** | |
| **5** Qualified set-aside amounts (*prior IRS approval required - provide details in* ***Part VI***) | **5** | |
| **6** Other distributions (*describe in* ***Part VI***). See instructions | **6** | |
| **7** **Total annual distributions.** Add lines 1 through 6. | **7** | |
| **8** Distributions to attentive supported organizations to which the organization is responsive (*provide details in* ***Part VI***). See instructions | **8** | |
| **9** Distributable amount for 2021 from Section C, line 6 | **9** | |
| **10** Line 8 amount divided by Line 9 amount | **10** | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** **Excess Distributions** | **(ii)** **Underdistributions Pre-2021** | **(iii)** **Distributable Amount for 2021** |
|---|---|---|---|
| **1** Distributable amount for 2021 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2021 (reasonable cause required-- *explain in* ***Part VI***). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2021: | | | |
| **a** From 2016. . . . . . . . | | | |
| **b** From 2017. . . . . . . . | | | |
| **c** From 2018. . . . . . . . | | | |
| **d** From 2019. . . . . . . . | | | |
| **e** From 2020. . . . . . . . | | | |
| **f** **Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2021 distributable amount | | | |
| **i** Carryover from 2016 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** Distributions for 2021 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2021 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2021, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **6** Remaining underdistributions for 2021. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **7** **Excess distributions carryover to 2022.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2017. . . . . | | | |
| **b** Excess from 2018. . . . . | | | |
| **c** Excess from 2019. . . . . | | | |
| **d** Excess from 2020. . . . . | | | |
| **e** Excess from 2021. . . . . | | | |

**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions).

**Facts And Circumstances Test**

| Return Reference | Explanation |
| --- | --- |
| SCHEDULE A, PART II, LINE 10, EXPLANATION OF OTHER INCOME: | OTHER INCOME - 2017 AMOUNT: $ 67,528. 2018 AMOUNT: $ 10,583. 2019 AMOUNT: $ 739,428. 2020 AMOUNT: $ 60,160. 2021 AMOUNT: $ 177,570. |

| efile GRAPHIC print | Submission Date - 2023-05-12 | DLN: 93493132070903 |
|---|---|---|

**SCHEDULE C (Form 990)**

Department of the Treasury Internal Revenue Service

# Political Campaign and Lobbying Activities

**For Organizations Exempt From Income Tax Under section 501(c) and section 527**

**▶Complete if the organization is described below. ▶Attach to Form 990 or Form 990-EZ.**
**▶Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

**If the organization answered "Yes" on Form 990, Part IV, Line 3, or Form 990-EZ, Part V, line 46 (Political Campaign Activities), then**

- Section 501(c)(3) organizations: Complete Parts I-A and B. Do not complete Part I-C.
- Section 501(c) (other than section 501(c)(3)) organizations: Complete Parts I-A and C below. Do not complete Part I-B.
- Section 527 organizations: Complete Part I-A only.

**If the organization answered "Yes" on Form 990, Part IV, Line 4, or Form 990-EZ, Part VI, line 47 (Lobbying Activities), then**

- Section 501(c)(3) organizations that have filed Form 5768 (election under section 501(h)): Complete Part II-A. Do not complete Part II-B.
- Section 501(c)(3) organizations that have NOT filed Form 5768 (election under section 501(h)): Complete Part II-B. Do not complete Part II-A.

**If the organization answered "Yes" on Form 990, Part IV, Line 5 (Proxy Tax) (see separate instructions) or Form 990-EZ, Part V, line 35c (Proxy Tax) (see separate instructions), then**

- Section 501(c)(4), (5), or (6) organizations: Complete Part III.

| Name of the organization | **Employer identification number** |
|---|---|
| OLE HEALTH | 23-7221695 |

## Part I-A Complete if the organization is exempt under section 501(c) or is a section 527 organization.

1 Provide a description of the organization's direct and indirect political campaign activities in Part IV. See instructions for definition of "political campaign activities."

2 Political campaign activity expenditures. See instructions ▶ $

3 Volunteer hours for political campaign activities. See instructions

## Part I-B Complete if the organization is exempt under section 501(c)(3).

1 Enter the amount of any excise tax incurred by the organization under section 4955 ▶ $

2 Enter the amount of any excise tax incurred by organization managers under section 4955 ▶ $

3 If the organization incurred a section 4955 tax, did it file Form 4720 for this year? ☐ Yes ☐ No

4a Was a correction made? ☐ Yes ☐ No

b If "Yes," describe in Part IV.

## Part I-C Complete if the organization is exempt under section 501(c), except section 501(c)(3).

1 Enter the amount directly expended by the filing organization for section 527 exempt function activities ▶ $

2 Enter the amount of the filing organization's funds contributed to other organizations for section 527 exempt function activities ▶ $

3 Total exempt function expenditures. Add lines 1 and 2. Enter here and on Form 1120-POL, line 17b ▶ $

4 Did the filing organization file **Form 1120-POL** for this year? ☐ Yes ☐ No

5 Enter the names, addresses and employer identification number (EIN) of all section 527 political organizations to which the filing organization made payments. For each organization listed, enter the amount paid from the filing organization's funds. Also enter the amount of political contributions received that were promptly and directly delivered to a separate political organization, such as a separate segregated fund or a political action committee (PAC). If additional space is needed, provide information in Part IV.

| | **(a)** Name | **(b)** Address | **(c)** EIN | **(d)** Amount paid from filing organization's funds. If none, enter -0-. | **(e)** Amount of political contributions received and promptly and directly delivered to a separate political organization. If none, enter -0-. |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |

**Part II-A** **Complete if the organization is exempt under section 501(c)(3) and filed Form 5768 (election under section 501(h)).**

**A** Check ▶ ☐ if the filing organization belongs to an affiliated group (and list in Part IV each affiliated group member's name, address, EIN, expenses, and share of excess lobbying expenditures).

**B** Check ▶ ☐ if the filing organization checked box A and "limited control" provisions apply.

| **Limits on Lobbying Expenditures** (The term "expenditures" means amounts paid or incurred.) | **(a)** Filing organization's totals | **(b)** Affiliated group totals |
|---|---|---|
| **1a** Total lobbying expenditures to influence public opinion (grass roots lobbying) | | |
| **b** Total lobbying expenditures to influence a legislative body (direct lobbying) | | |
| **c** Total lobbying expenditures (add lines 1a and 1b) | | |
| **d** Other exempt purpose expenditures | | |
| **e** Total exempt purpose expenditures (add lines 1c and 1d) | | |
| **f** Lobbying nontaxable amount. Enter the amount from the following table in both columns. | | |

| **If the amount on line 1e, column (a) or (b) is:** | **The lobbying nontaxable amount is:** |
|---|---|
| Not over $500,000 | 20% of the amount on line 1e. |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000. |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000. |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000. |
| Over $17,000,000 | $1,000,000. |

| | (a) | (b) |
|---|---|---|
| **g** Grassroots nontaxable amount (enter 25% of line 1f) | | |
| **h** Subtract line 1g from line 1a. If zero or less, enter -0-. | | |
| **i** Subtract line 1f from line 1c. If zero or less, enter -0-. | | |

**j** If there is an amount other than zero on either line 1h or line 1i, did the organization file Form 4720 reporting section 4911 tax for this year? ☐ **Yes** ☐ **No**

**4-Year Averaging Period Under Section 501(h)**
**(Some organizations that made a section 501(h) election do not have to complete all of the five columns below. See the separate instructions for lines 2a through 2f.)**

**Lobbying Expenditures During 4-Year Averaging Period**

| Calendar year (or fiscal year beginning in) | **(a)** 2018 | **(b)** 2019 | **(c)** 2020 | **(d)** 2021 | **(e)** Total |
|---|---|---|---|---|---|
| **2a** Lobbying nontaxable amount | | | | | |
| **b** Lobbying ceiling amount (150% of line 2a, column(e)) | | | | | |
| **c** Total lobbying expenditures | | | | | |
| **d** Grassroots nontaxable amount | | | | | |
| **e** Grassroots ceiling amount (150% of line 2d, column (e)) | | | | | |
| **f** Grassroots lobbying expenditures | | | | | |

**Part II-B Complete if the organization is exempt under section 501(c)(3) and has NOT filed Form 5768 (election under section 501(h)).**

| *For each "Yes" response on lines 1a through 1i below, provide in Part IV a detailed description of the lobbying activity.* | (a) Yes | (a) No | (b) Amount |
|---|---|---|---|
| **1** During the year, did the filing organization attempt to influence foreign, national, state or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of: | | | |
| **a** Volunteers? | | No | |
| **b** Paid staff or management (include compensation in expenses reported on lines 1c through 1i)? | | No | |
| **c** Media advertisements? | | No | |
| **d** Mailings to members, legislators, or the public? | | No | |
| **e** Publications, or published or broadcast statements? | | No | |
| **f** Grants to other organizations for lobbying purposes? | | No | |
| **g** Direct contact with legislators, their staffs, government officials, or a legislative body? | | No | |
| **h** Rallies, demonstrations, seminars, conventions, speeches, lectures, or any similar means? | | No | |
| **i** Other activities? | Yes | | 7,125 |
| **j** Total. Add lines 1c through 1i | | | 7,125 |
| **2a** Did the activities in line 1 cause the organization to be not described in section 501(c)(3)? | | No | |
| **b** If "Yes," enter the amount of any tax incurred under section 4912 | | | |
| **c** If "Yes," enter the amount of any tax incurred by organization managers under section 4912 | | | |
| **d** If the filing organization incurred a section 4912 tax, did it file Form 4720 for this year? | | | |

**Part III-A Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6).**

| | | Yes | No |
|---|---|---|---|
| **1** Were substantially all (90% or more) dues received nondeductible by members? | 1 | | |
| **2** Did the organization make only in-house lobbying expenditures of $2,000 or less? | 2 | | |
| **3** Did the organization agree to carry over lobbying and political expenditures from the prior year? | 3 | | |

**Part III-B Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6) and if either (a) BOTH Part III-A, lines 1 and 2, are answered "No" OR (b) Part III-A, line 3, is answered "Yes."**

| | | |
|---|---|---|
| **1** Dues, assessments and similar amounts from members | 1 | |
| **2** Section 162(e) nondeductible lobbying and political expenditures **(do not include amounts of political expenses for which the section 527(f) tax was paid).** | | |
| **a** Current year | 2a | |
| **b** Carryover from last year | 2b | |
| **c** Total | 2c | |
| **3** Aggregate amount reported in section 6033(e)(1)(A) notices of nondeductible section 162(e) dues | 3 | |
| **4** If notices were sent and the amount on line 2c exceeds the amount on line 3, what portion of the excess does the organization agree to carryover to the reasonable estimate of nondeductible lobbying and political expenditure next year? | 4 | |
| **5** Taxable amount of lobbying and political expenditures. See Instructions | 5 | |

**Part IV Supplemental Information**

Provide the descriptions required for Part I-A, line 1; Part I-B, line 4; Part I-C, line 5; Part II-A (affiliated group list); Part II-A, lines 1 and 2 (see instructions), and Part II-B, line 1. Also, complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| PART II-B, LINE 1: | DURING THE JUNE 30, 2022 TAX YEAR, THE ORGANIZATION PAID INDIRECT LOBBYING EXPENSES IN RELATION TO DUES PAID TO THE CALIFORNIA PRIMARY CARE ASSOCIATION ($28,500); 25% OF THOSE DUES ($7,125) WERE INDICATED AS UTILIZED FOR LOBBYING ACTIVITIES ASSOCIATED WITH HEALTH CARE RELATED LEGISLATION. |

| efile GRAPHIC print | Submission Date - 2023-05-12 | DLN: 93493132070903 |
|---|---|---|

**SCHEDULE D (Form 990)**

Department of the Treasury Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

**Name of the organization**
OLE HEALTH

**Employer identification number**
23-7221695

## Part I Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.

Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

## Part II Conservation Easements.

Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)
☐ Preservation of an historically important land area
☐ Protection of natural habitat
☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ ____________

4 Number of states where property subject to conservation easement is located ▶ ____________

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ ____________

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $ ____________

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

## Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.

Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 ▶ $ ____________

(ii) Assets included in Form 990, Part X ▶ $ ____________

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 ▶ $ ____________

b Assets included in Form 990, Part X ▶ $ ____________

**Part III** **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

3 Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a ☐ Public exhibition
b ☐ Scholarly research
c ☐ Preservation for future generations
d ☐ Loan or exchange programs
e ☐ Other ....................

4 Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

5 During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . . . ☐ Yes ☐ No

**Part IV** **Escrow and Custodial Arrangements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

1a Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | | Amount |
|---|---|---|---|
| c | Beginning balance | 1c | |
| d | Additions during the year | 1d | |
| e | Distributions during the year | 1e | |
| f | Ending balance | 1f | |

2a Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V** **Endowment Funds.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|---|
| 1a | Beginning of year balance | | | | | |
| b | Contributions | | | | | |
| c | Net investment earnings, gains, and losses | | | | | |
| d | Grants or scholarships | | | | | |
| e | Other expenditures for facilities and programs | | | | | |
| f | Administrative expenses | | | | | |
| g | End of year balance | | | | | |

2 Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

a Board designated or quasi-endowment ▶ ..........

b Permanent endowment ▶ ..........

c Term endowment ▶ ..........

The percentages on lines 2a, 2b, and 2c should equal 100%.

3a Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | | Yes | No |
|---|---|---|---|---|
| | **(i)** Unrelated organizations | 3a(i) | | |
| | **(ii)** Related organizations | 3a(ii) | | |
| b | If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? | 3b | | |

4 Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI** **Land, Buildings, and Equipment.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| 1a Land | 1,540,000 | | | 1,540,000 |
| b Buildings | | 4,860,856 | 80,885 | 4,779,971 |
| c Leasehold improvements | | 4,146,786 | 3,585,062 | 561,724 |
| d Equipment | | 3,465,303 | 2,468,685 | 996,618 |
| e Other | | 1,372,752 | 692,042 | 680,710 |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* ▶ | | | | 8,559,023 |

**Part VII Investments - Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b.See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives . . . . . . . . . | | |
| (2) Closely-held equity interests . . . . . . . . | | |
| (3)Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col. (B) line 12.)* ▶ | | |

**Part VIII Investments - Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 13.)* ▶ | | |

**Part IX Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| **(1)**DUE FROM RELATED ORGANIZATIONS | 1,678,523 |
| **(2)**QUALITY IMPROVEMENT PROGRAM RECEIVABLE | 500,288 |
| **(3)**DEPOSITS | 20,011 |
| **(4)**340B PROGRAM RECEIVABLE | 790,101 |
| **(5)**AMOUNTS DUE FROM THIRD-PARTY PAYORS | 22,063 |
| **(6)**OTHER ASSETS | 332,296 |
| **(6)** | |
| **(7)** | |
| **(8)** | |
| **(9)** | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* . . . . . . . . . . . ▶ | 3,343,282 |

**Part X Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| 1. (a) Description of liability | (b) Book value |
|---|---|
| **(1)** Federal income taxes | |
| DEFERRED RENT | 3,937,985 |
| DUE TO RELATED ORGANIZATIONS | 339,582 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 25.)* ▶ | 4,277,567 |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☑

## Part XI Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.

Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains (losses) on investments | 2a | | | |
| b | Donated services and use of facilities | 2b | | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | |
| 3 | Subtract line **2e** from line **1** | | | 3 | |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | |
| 5 | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) | | | 5 | |

## Part XII Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.

Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | 1 | |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | 2a | | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | |
| 3 | Subtract line **2e** from line **1** | | | 3 | |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | |
| 5 | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) | | | 5 | |

## Part XIII Supplemental Information

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| PART X, LINE 2: | THE ORGANIZATION IS A NONPROFIT CORPORATION UNDER INTERNAL REVENUE CODE SECTION 501(C)(3) AND HAS BEEN GRANTED TAX-EXEMPT STATUS BY THE INTERNAL REVENUE SERVICE AND THE CALIFORNIA REVENUE AND TAXATION CODE. AS OF JUNE 30, 2022 AND 2021, THE ORGANIZATION HAD NO UNRECOGNIZED TAX POSITIONS OR UNCERTAIN TAX POSITIONS REQUIRING ACCRUAL. THEREFORE, NO PROVISION FOR INCOME TAXES HAS BEEN PROVIDED IN THE CONSOLIDATED FINANCIAL STATEMENTS. |

efile GRAPHIC print | Submission Date - 2023-05-12 | DLN: 93493132070903

**Schedule J (Form 990)**

Department of the Treasury Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**▶ Attach to Form 990.**
**▶ Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Name of the organization
OLE HEALTH

**Employer identification number**
23-7221695

## Part I Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| 1a | Check the appropiate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel<br>☐ Travel for companions<br>☐ Tax idemnification and gross-up payments<br>☐ Discretionary spending account<br>☑ Housing allowance or residence for personal use<br>☐ Payments for business use of personal residence<br>☐ Health or social club dues or initiation fees<br>☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| b | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | 1b | Yes | |
| 2 | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? | 2 | Yes | |
| 3 | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☐ Compensation committee<br>☐ Independent compensation consultant<br>☐ Form 990 of other organizations<br>☐ Written employment contract<br>☑ Compensation survey or study<br>☑ Approval by the board or compensation committee | | | |
| 4 | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| a | Receive a severance payment or change-of-control payment? | 4a | | No |
| b | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | 4b | | No |
| c | Participate in, or receive payment from, an equity-based compensation arrangement? | 4c | | No |
| | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| 5 | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| a | The organization? | 5a | | No |
| b | Any related organization? | 5b | | No |
| | If "Yes," on line 5a or 5b, describe in Part III. | | | |
| 6 | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| a | The organization? | 6a | | No |
| b | Any related organization? | 6b | | No |
| | If "Yes," on line 6a or 6b, describe in Part III. | | | |
| 7 | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III | 7 | | No |
| 8 | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III | 8 | | No |
| 9 | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? | 9 | | |

**Part II Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2, 1099-MISC compensation, and/or 1099-NEC | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| 1 ALICIA HARDY<br>CHIEF EXECUTIVE OFFICER | (i) | 319,390 | 1,088 | 12,500 | 11,169 | 13,002 | 357,149 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 2 TERESA L SHINDER DO FAAP<br>CHIEF MEDICAL OFFICER | (i) | 304,425 | 6,088 | 0 | 11,481 | 6,611 | 328,605 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 3 GABRIELA BERMUDEZ MD<br>MEDICAL DIRECTOR, UP VALLEY SITES | (i) | 265,833 | 31,921 | 0 | 10,442 | 10,519 | 318,715 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 4 ROSE MACISAAC<br>CFO/COO THROUGH 2/2022 | (i) | 274,570 | 1,088 | 0 | 9,604 | 12,769 | 298,031 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 5 JENNIFER ANN WILSON MD<br>FAMILY MEDICINE PHYSICIAN | (i) | 255,191 | 7,082 | 0 | 7,996 | 10,651 | 280,920 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 6 HAMED ZAMANI MD<br>FAMILY MEDICINE PHYSICIAN | (i) | 256,437 | 1,088 | 0 | 8,602 | 10,084 | 276,211 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7 ALLISON CRISP DO MPH<br>PEDIATRICIAN | (i) | 254,595 | 7,221 | 0 | 10,528 | 2,837 | 275,181 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 8 LYNETTE LEIGHTON MD<br>FAMILY MEDICINE PHYSICIAN | (i) | 255,906 | 7,282 | 0 | 10,490 | 323 | 274,001 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 9 ANDREW TORGE<br>CHIEF HUMAN RESOURCES OFFICER | (i) | 261,331 | 1,088 | 8,594 | 1,154 | 104 | 272,271 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 10 VINCENT FILANOVA DDS<br>CHIEF DENTAL OFFICER THROUGH 3/2022 | (i) | 219,154 | 1,088 | 33,000 | 8,993 | 5,249 | 267,484 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 11 GARY FEDLER<br>CHIEF INFORMATION OFFICER | (i) | 216,776 | 6,088 | 0 | 8,834 | 13,251 | 244,949 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 12 SONIA TOLBERT<br>CHIEF DEVELOPMENT OFFICER | (i) | 178,150 | 5,000 | 0 | 5,231 | 323 | 188,704 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## Part III Supplemental Information

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
| --- | --- |
| PART I, LINE 1A | VINCENT FILANOVA, DDS (CHIEF DENTAL OFFICER), RECEIVED A TAXABLE HOUSING ALLOWANCE DURING THE 2021 CALENDAR YEAR, WHICH WAS REPORTED AS TAXABLE INCOME ON HIS 2021 FORM W-2. |

efile GRAPHIC print | Submission Date - 2023-05-12 | DLN: 93493132070903

**SCHEDULE O (Form 990)**

Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**▶ Attach to Form 990 or 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for the latest information.**

OMB No. 1545-0047
**2021**
**Open to Public Inspection**

Name of the organization
OLE HEALTH

**Employer identification number**
23-7221695

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 11B | TO PREPARE THE FORM 990, THE ORGANIZATION UTILIZED A PROFESSIONAL ACCOUNTING FIRM WHO WORKED IN CONJUNCTION WITH THE ORGANIZATION'S FINANCE AND ACCOUNTING TEAM TO GATHER THE REQUIRED INFORMATION. UPON REVIEW OF THE FORM 990 AMONGST THE ORGANIZATION'S MANAGEMENT TEAM, THE FORM 990 WAS THEN SENT TO THE AUDIT & BENEFITS COMMITTEE OF THE BOARD OF DIRECTORS FOR REVIEW AND APPROVAL. THE AUDIT & BENEFITS COMMITTEE ALSO PRESENTS THE RESULTS OF ITS REVIEW PROCESS TO THE BOARD OF DIRECTORS, WHO RECEIVES A COPY OF THE FORM 990 PRIOR TO FILING WITH THE INTERNAL REVENUE SERVICE. |
| FORM 990, PART VI, SECTION B, LINE 12C | ALL EMPLOYEES AND BOARD MEMBERS MUST COMPLETE AND SIGN A CONFLICT OF INTEREST DISCLOSURE STATEMENT ANNUALLY. IT IS ALSO THE CONTINUING RESPONSIBILITY OF THE BOARD, OFFICERS, AND MANAGEMENT EMPLOYEES TO SCRUTINIZE THEIR TRANSACTIONS, OUTSIDE BUSINESS INTERESTS, AND RELATIONSHIPS FOR POTENTIAL CONFLICTS AND TO IMMEDIATELY MAKE SUCH DISCLOSURES. TRANSACTIONS WITH PARTIES WITH WHOM A CONFLICTING INTEREST EXISTS MAY BE UNDERTAKEN ONLY IF ALL OF THE FOLLOWING ARE OBSERVED: (1) THE CONFLICTING INTEREST IS FULLY DISCLOSED; (2) THE PERSON WITH THE CONFLICT OF INTEREST IS EXCLUDED FROM THE DISCUSSION AND APPROVAL OF SUCH TRANSACTION; (3) A COMPETITIVE BID OR COMPARABLE VALUATION EXISTS; AND (4) THE BOARD HAS DETERMINED THAT THE TRANSACTION IS IN THE BEST INTEREST OF THE ORGANIZATION. DISCLOSURE FROM EMPLOYEES OF THE ORGANIZATION SHOULD BE MADE TO THE CHIEF EXECUTIVE OFFICER (OR IF HE/SHE IS THE ONE WITH THE CONFLICT, THEN TO THE BOARD CHAIR); DISCLOSURES INVOLVING DIRECTORS SHOULD BE MADE TO THE BOARD CHAIR (OR IF HE/SHE IS THE ONE WITH THE CONFLICT, THEN TO THE BOARD VICE CHAIR). CONFLICTED INDIVIDUALS ARE NOT ALLOWED TO PARTICIPATE IN THE DELIBERATION AND VOTE ON ANY MATTER. |
| FORM 990, PART VI, SECTION B, LINE 15 | THE CEO AND CFO SALARIES ARE APPROVED BY THE BOARD OF DIRECTORS AFTER PERFORMANCE REVIEWS AND COMPENSATION STUDIES. THE OTHER KEY LEADERSHIP POSITIONS ARE BASED ON A COMPENSATION STUDY DONE BY AN INDEPENDENT FIRM EVERY TWO TO THREE YEARS. IF NECESSARY TO EVALUATE OUTSIDE OF THAT TIME PERIOD, THE HUMAN RESOURCES DEPARTMENT WILL EVALUATE BY SOLICITING EXTERNAL COMPENSATION DATA AND PLACE THE POSITION APPROPRIATELY WITHIN THE ORGANIZATIONAL STRUCTURE. |
| FORM 990, PART VI, SECTION C, LINE 19 | THE AUDITED FINANCIAL STATEMENTS, CONFLICT OF INTEREST POLICY, AND GOVERNING DOCUMENTS ARE AVAILABLE UPON REQUEST. |

efile GRAPHIC print | Submission Date - 2023-05-12 | DLN: 93493132070903

# SCHEDULE R (Form 990)

Department of the Treasury
Internal Revenue Service

## Related Organizations and Unrelated Partnerships

▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047
**2021**
**Open to Public Inspection**

Name of the organization
OLE HEALTH

**Employer identification number**
23-7221695

**Part I** **Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II** **Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)**OLE HEALTH FOUNDATION<br>1141 PEAR TREE LANE SUITE 100<br><br>NAPA, CA 94558<br>68-0149424 | FUNDRAISING | CA | 501(C)(3) | LINE 7 | OLE HEALTH | Yes | |
| **(2)**OLE HEALTH NMTC<br>1141 PEAR TREE LANE SUITE 100<br><br>NAPA, CA 94558<br>81-5395044 | NMTC FINANCING FOR EXEMPT ACTIVITIES | CA | 501(C)(3) | LINE 12A, I | OLE HEALTH | Yes | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Part III** **Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV** **Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**Part V Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

**Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule.

| | | | Yes | No |
|---|---|---|---|---|
| **1** | During the tax year, did the orgranization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** | Receipt of **(i)** interest, **(ii)**annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | **1a** | | **No** |
| **b** | Gift, grant, or capital contribution to related organization(s) | **1b** | | **No** |
| **c** | Gift, grant, or capital contribution from related organization(s) | **1c** | **Yes** | |
| **d** | Loans or loan guarantees to or for related organization(s) | **1d** | **Yes** | |
| **e** | Loans or loan guarantees by related organization(s) | **1e** | | **No** |
| **f** | Dividends from related organization(s) | **1f** | | **No** |
| **g** | Sale of assets to related organization(s) | **1g** | | **No** |
| **h** | Purchase of assets from related organization(s) | **1h** | | **No** |
| **i** | Exchange of assets with related organization(s) | **1i** | | **No** |
| **j** | Lease of facilities, equipment, or other assets to related organization(s) | **1j** | | **No** |
| **k** | Lease of facilities, equipment, or other assets from related organization(s) | **1k** | **Yes** | |
| **l** | Performance of services or membership or fundraising solicitations for related organization(s) | **1l** | **Yes** | |
| **m** | Performance of services or membership or fundraising solicitations by related organization(s) | **1m** | **Yes** | |
| **n** | Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | **1n** | **Yes** | |
| **o** | Sharing of paid employees with related organization(s) | **1o** | **Yes** | |
| **p** | Reimbursement paid to related organization(s) for expenses | **1p** | | **No** |
| **q** | Reimbursement paid by related organization(s) for expenses | **1q** | **Yes** | |
| **r** | Other transfer of cash or property to related organization(s) | **1r** | | **No** |
| **s** | Other transfer of cash or property from related organization(s) | **1s** | | **No** |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| **(a)** Name of related organization | **(b)** Transaction type (a-s) | **(c)** Amount involved | **(d)** Method of determining amount involved |
|---|---|---|---|
| **(1)**OLE HEALTH FOUNDATION | C | 2,298,619 | BOOK VALUE |
| **(2)**OLE HEALTH NMTC | D | 29,651,000 | LOAN GUARANTEE AMOUNT |
| **(3)**OLE HEALTH NMTC | K | 534,408 | BOOK VALUE |
| | | | |
| | | | |
| | | | |

**Part VI** **Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| (a) Name, address, and EIN of entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (e) Are all partners section 501(c)(3) organizations? | | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Yes | No | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Schedule R (Form 990) 2021 Page 5

## Part VII Supplemental Information

Provide additional information for responses to questions on Schedule R. See instructions.

| Return Reference | Explanation |
|---|---|

Schedule R (Form 990) 2021

TAB 4

efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135183743

Form **990**

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

▶ Do not enter social security numbers on this form as it may be made public.

▶ **Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Department of the Treasury
Internal Revenue Service

**A For the 2021 calendar year, or tax year beginning 07-01-2021 , and ending 06-30-2022**

**B** Check if applicable:
☐ Address change
☐ Name change
☐ Initial return
☐ Final return/terminated
☐ Amended return
☐ Application pending

**C** Name of organization
MADERA COMMUNITY HOSPITAL

Doing business as

Number and street (or P.O. box if mail is not delivered to street address) 1250 E Almond Avenue | Room/suite

City or town, state or province, country, and ZIP or foreign postal code
Madera, CA 93637

**D Employer identification number**
23-7429117

E Telephone number
(559) 675-5555

**G** Gross receipts $ 104,389,786

**F** Name and address of principal officer:
Karen Paolinelli
1250 E Almond Avenue
Madera, CA 93637

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No
**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.
**H(c)** Group exemption number ▶

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** ▶ www.maderahospital.org

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other ▶

**L** Year of formation: 1971 | **M** State of legal domicile: CA

## Part I Summary

**Activities & Governance**

**1** Briefly describe the organization's mission or most significant activities:
Madera Community Hospital is dedicated to actively promoting and maintaining the health and well being of residents throughout the Central Valley of California.

**2** Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 15 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 11 |
| 5 | Total number of individuals employed in calendar year 2021 (Part V, line 2a) | 5 | 1,094 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 0 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7b | 0 |

| | | | Prior Year | Current Year |
|---|---|---|---|---|
| Revenue | 8 | Contributions and grants (Part VIII, line 1h) | 1,062,884 | 62,247 |
| | 9 | Program service revenue (Part VIII, line 2g) | 96,455,308 | 95,758,518 |
| | 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 163,961 | 49,591 |
| | 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 4,209,715 | 8,519,430 |
| | 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 101,891,868 | 104,389,786 |
| Expenses | 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 0 | 0 |
| | 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| | 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 49,644,937 | 51,005,430 |
| | 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| | b | Total fundraising expenses (Part IX, column (D), line 25) ▶0 | | |
| | 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 54,752,875 | 65,242,653 |
| | 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 104,397,812 | 116,248,083 |
| | 19 | Revenue less expenses. Subtract line 18 from line 12 | -2,505,944 | -11,858,297 |

| | | | Beginning of Current Year | End of Year |
|---|---|---|---|---|
| Net Assets or Fund Balances | 20 | Total assets (Part X, line 16) | 91,019,873 | 81,559,320 |
| | 21 | Total liabilities (Part X, line 26) | 26,588,596 | 28,986,340 |
| | 22 | Net assets or fund balances. Subtract line 21 from line 20 | 64,431,277 | 52,572,980 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

**Sign Here**

▶ Signature of officer | 2023-05-15 Date

▶ Alexcia Guerrero Staff Accountant
Type or print name and title

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| Firm's name ▶ | | | Firm's EIN ▶ | |
| Firm's address ▶ | | | Phone no. | |

May the IRS discuss this return with the preparer shown above? (see instructions) ☐ Yes ☐ No

## Part III Statement of Program Service Accomplishments

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . ☐

**1** Briefly describe the organization's mission:

Madera Community Hospital provides Inpatient and Outpatient healthcare services to the citizens of Madera and its surrounding communities.

**2** Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code: ) (Expenses $ 81,663,303 including grants of $ ) (Revenue $ 102,560,344 )

Delivery and Management of General Inpatient and Outpatient Healthcare Services were provided to the citizens of Madera and its surrounding communities.

**4b** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4c** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4d** Other program services (Describe in Schedule O.)

(Expenses $ 0 including grants of $ 0 ) (Revenue $ 0 )

**4e** **Total program service expenses** ▶ 81,663,303

**Part IV Checklist of Required Schedules**

| | | Line | Yes | No |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | **1** | Yes | |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors*? See instructions. | **2** | Yes | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | **3** | | No |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | **4** | | No |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19? *If "Yes," complete Schedule C, Part III* | **5** | | No |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,* Part I | **6** | | No |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | **7** | | No |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III | **8** | | No |
| **9** | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | **9** | | No |
| **10** | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | **10** | | No |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. | **11a** | Yes | |
| **b** | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | **11b** | | No |
| **c** | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | **11c** | | No |
| **d** | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | **11d** | | No |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | Yes | |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | **11f** | | No |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | **12a** | Yes | |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | | No |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | No |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? | **14a** | | No |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | **14b** | | No |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | **15** | | No |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | **16** | | No |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I.* See instructions. | **17** | | No |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | **18** | | No |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | **19** | | No |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | **20a** | Yes | |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | Yes | |
| **21** | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | **21** | | No |

**Part IV Checklist of Required Schedules** *(continued)*

| | | Line | Yes | No |
|---|---|---|---|---|
| **22** | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | | No |
| **23** | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | Yes | |
| **24a** | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | 24a | | No |
| **b** | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| **c** | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| **d** | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| **25a** | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L,* Part I | 25a | | No |
| **b** | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L,* Part I | 25b | | No |
| **26** | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | 26 | | No |
| **27** | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L,*Part III | 27 | | No |
| **28** | Was the organization a party to a business transaction with one of the following parties (see the Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| **a** | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | 28a | Yes | |
| **b** | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | 28b | | No |
| **c** | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* | 28c | Yes | |
| **29** | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | No |
| **30** | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | No |
| **31** | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | No |
| **32** | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | No |
| **33** | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | No |
| **34** | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | Yes | |
| **35a** | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | No |
| **b** | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | | |
| **36** | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | No |
| **37** | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | No |
| **38** | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. | 38 | Yes | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response or note to any line in this Part V ☐

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| **1a** | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable | 1a | 181 | | | |
| **b** | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable | 1b | 0 | | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | | 1c | Yes | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance** *(continued)*

| Line | Question | Ref | Amount | Line | Yes | No |
|---|---|---|---|---|---|---|
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | 2a | 1,094 | | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file. See instructions. | | | 2b | Yes | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | | | 3a | | No |
| b | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation in Schedule O* | | | 3b | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | | 4a | | No |
| b | If "Yes," enter the name of the foreign country: ▶ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | | 5a | | No |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | 5b | | No |
| c | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | | | 5c | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | | 6a | | No |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | | 6b | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | | 7a | | |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | | 7b | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | | 7c | | |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | 7d | | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | | 7e | | |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | | 7f | | |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | | 7g | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | | 7h | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | | 8 | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? | | | 9a | | |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | | 9b | | |
| 10 | **Section 501(c)(7) organizations.** Enter: | | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | 10a | | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | 10b | | | | |
| 11 | **Section 501(c)(12) organizations.** Enter: | | | | | |
| a | Gross income from members or shareholders | 11a | | | | |
| b | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) | 11b | | | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | | 12a | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | 12b | | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O. | | | 13a | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | 13b | | | | |
| c | Enter the amount of reserves on hand | 13c | | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | | | 14a | | No |
| b | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | | 14b | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see the instructions and file Form 4720, Schedule N. | | | 15 | | No |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | | 16 | | No |
| 17 | **Section 501(c)(21) organizations.** Did the trust, any disqualified person, or mine operator engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? If "Yes," complete Form 6069. | | | 17 | | |

**Part VI** **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI . . . ☑

**Section A. Governing Body and Management**

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year **1a** 15 | | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | |
| **b** | Enter the number of voting members included in line 1a, above, who are independent **1b** 11 | | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | **2** | | No |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | **3** | | No |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | **4** | | No |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? | **5** | | No |
| **6** | Did the organization have members or stockholders? | **6** | | No |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | **7a** | | No |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | **7b** | | No |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | |
| **a** | The governing body? | **8a** | Yes | |
| **b** | Each committee with authority to act on behalf of the governing body? | **8b** | Yes | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | **9** | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? | **10a** | | No |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | **11a** | | No |
| **b** | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | **12a** | Yes | |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | **12b** | Yes | |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | **12c** | Yes | |
| **13** | Did the organization have a written whistleblower policy? | **13** | Yes | |
| **14** | Did the organization have a written document retention and destruction policy? | **14** | Yes | |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** | The organization's CEO, Executive Director, or top management official | **15a** | Yes | |
| **b** | Other officers or key employees of the organization | **15b** | Yes | |
| | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. | | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | **16a** | | No |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | **16b** | | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed ▶ CA

**18** Section 6104 requires an organization to make its Form 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
▶Karen Paolinelli 1250 E Almond Avenue Madera, CA 93637 (559) 675-5504

**Part VII** **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (box 5 of Form W-2, Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position: Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (1) Karen Paolinelli<br>Exec Director/CEO | 40<br>0.00 | | | X | | | | 359,668 | 0 | 2,900 |
| (2) Mark J Foote<br>Vice President - Finance | 40<br>0 | | | X | | | | 233,650 | 0 | 2,368 |
| (3) Eva A Singsing<br>Clinical Coordinator, Med/Surg | 40 | | | | | X | | 181,836 | 0 | 1,862 |
| (4) Colton Lee Pfister<br>Director of Pharmacy | 40<br>0 | | | | | X | | 176,986 | 0 | 1,787 |
| (5) Nicole Chan<br>Pharmacist II | 40 | | | | | X | | 175,560 | 0 | 1,841 |
| (6) Sophie H Tang<br>Family Nurse Practitioner | 40 | | | | | X | | 174,648 | 0 | 1,731 |
| (7) Alma Mendoza<br>Pharmacist II | 40 | | | | | X | | 174,537 | 0 | 1,782 |
| (8) Mark J Brown<br>Chief Nursing Officer | 40<br>0 | | | | X | | | 158,127 | 0 | 0 |
| (9) Mohammad Arain<br>Board Member | 0.5 | X | | | | | | 0 | 0 | 0 |
| (10) Jon Basila<br>Board Member | 0.5<br>0 | X | | | | | | 0 | 0 | 0 |
| (11) Mike Diebert<br>Board Member | 0 | X | | | | | | 0 | 0 | 0 |
| (12) Deirdre daSilva<br>Chairman | 1.00 | X | | | | | | 0 | 0 | 0 |
| (13) Anita Eden<br>Board Member | 0.5<br>0 | X | | | | | | 0 | 0 | 0 |
| (14) Stell Manfredi<br>Board Member | 1.00<br>0 | X | | | | | | 0 | 0 | 0 |
| (15) Jay Mahil<br>Board Member | 0.5<br>0 | X | | | | | | 0 | 0 | 0 |
| (16) Aftab Naz<br>Board Member | 0.5<br>0 | X | | | | | | 0 | 0 | 0 |
| (17) Wally Nishimoto<br>Board Member | 0.5<br>0 | X | | | | | | 0 | 0 | 0 |

**Part VII** **Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (18) Bruce Norten<br>Board Member | 0.5<br>0 | X | | | | | | 0 | 0 | 0 |
| (19) Monte Pistoresi<br>Secretary | 1.00<br>0 | X | | | | | | 0 | 0 | 0 |
| (20) Robert Poythress<br>Board Member | 0.5<br>0 | X | | | | | | 0 | 0 | 0 |
| (21) kanwal Singh<br>Board Member | 0.5<br>0 | X | | | | | | 0 | 0 | 0 |
| (22) Don Warnock<br>Board Member | 0.5<br>0 | X | | | | | | 0 | 0 | 0 |
| (23) Jan Zitek<br>Board Member | 0.5<br>0 | X | | | | | | 0 | 0 | 0 |

| | (D) | (E) | (F) |
|---|---|---|---|
| **1b Sub-Total** ▶ | | | |
| **c Total from continuation sheets to Part VII, Section A** ▶ | | | |
| **d Total (add lines 1b and 1c)** ▶ | 1,635,012 | 0 | 14,271 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 88

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* | 3 | | No |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* | 4 | Yes | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization?*If "Yes," complete Schedule J for such person* | 5 | | No |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| ARYA Medican Group<br><br>1660 E Herndon Ave Suite 101<br>Fresno, CA 93720 | Hospital Physician Services | 3,509,790 |
| CCAS<br>Central California Anesthesiology Services<br>2276 Ashcroft Avenue<br>Clovis, CA 93611 | Hospital Physician Services | 2,853,539 |
| New England Sheet Metal<br><br>PO Box 27409<br>Fresno, CA 93729 | Engineering | 1,833,511 |
| Zaks Enterprises LLC<br><br>1906 Howard Road<br>Madera, CA 93637 | Securtiy Services | 1,060,597 |
| State of California Emergency<br><br>10901 Gold Center Drive Suite 400<br>Rancho Cordova, CA 95670 | Medical Services | 960,429 |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ 5

**Part VIII Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . . ☐

| | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| **Contributions, gifts, grants, and other similar amounts** | | | | | | |
| 1a Federated campaigns | 1a | 0 | | | | |
| b Membership dues | 1b | 0 | | | | |
| c Fundraising events | 1c | 0 | | | | |
| d Related organizations | 1d | 60,547 | | | | |
| e Government grants (contributions) | 1e | 0 | | | | |
| f All other contributions, gifts, grants, and similar amounts not included above | 1f | 1,700 | | | | |
| g Noncash contributions included in lines 1a - 1f:$ | 1g | 0 | | | | |
| h **Total.** Add lines 1a-1f . . . . . . . ▶ | | | 62,247 | | | |
| **Program Service Revenue** | | Business Code | | | | |
| 2a Medicare | | 622000 | 24,999,781 | 24,999,781 | 0 | 0 |
| b Medi-Cal | | 622000 | 53,378,126 | 53,378,126 | 0 | 0 |
| c Other 3rd party payors | | 622000 | 16,893,426 | 16,893,426 | 0 | 0 |
| d Other Payors | | 622000 | 487,185 | 487,185 | 0 | 0 |
| e | | | | | | |
| f All other program service revenue. | | | | | | |
| g **Total.** Add lines 2a–2f. . . . . ▶ | | | 95,758,518 | | | |
| **Other Revenue** | | | | | | |
| 3 Investment income (including dividends, interest, and other similar amounts) . . . . . . ▶ | | | 49,591 | 49,591 | 0 | 0 |
| 4 Income from investment of tax-exempt bond proceeds ▶ | | | 0 | 0 | 0 | 0 |
| 5 Royalties . . . . . . . . . . . ▶ | | | 0 | 0 | 0 | 0 |
| | (i) Real | (ii) Personal | | | | |
| 6a Gross rents | 6a 0 | 0 | | | | |
| b Less: rental expenses | 6b 0 | 0 | | | | |
| c Rental income or (loss) | 6c 0 | 0 | | | | |
| d Net rental income or (loss) . . . . . . . . ▶ | | | 0 | 0 | 0 | 0 |
| | (i) Securities | (ii) Other | | | | |
| 7a Gross amount from sales of assets other than inventory | 7a 0 | 0 | | | | |
| b Less: cost or other basis and sales expenses | 7b 0 | 0 | | | | |
| c Gain or (loss) | 7c 0 | 0 | | | | |
| d Net gain or (loss) . . . . . . . . . . ▶ | | | 0 | 0 | 0 | 0 |
| 8a Gross income from fundraising events (not including $ 0 of contributions reported on line 1c). See Part IV, line 18 . . . . | 8a | 0 | | | | |
| b Less: direct expenses . . . | 8b | 0 | | | | |
| c Net income or (loss) from fundraising events . . ▶ | | | 0 | | 0 | 0 |
| 9a Gross income from gaming activities. See Part IV, line 19 . . . | 9a | 0 | | | | |
| b Less: direct expenses . . . | 9b | 0 | | | | |
| c Net income or (loss) from gaming activities . . ▶ | | | 0 | 0 | 0 | 0 |
| 10a Gross sales of inventory, less returns and allowances . . | 10a | 0 | | | | |
| b Less: cost of goods sold . . | 10b | 0 | | | | |
| c Net income or (loss) from sales of inventory . . ▶ | | | 0 | 0 | 0 | 0 |
| Miscellaneous Revenue | | Business Code | | | | |
| 11a Covid 19 Relief Fund | | 622000 | 6,752,235 | 6,752,235 | 0 | 0 |
| b Non Patient food sales | | 722212 | 509,287 | 0 | 0 | 509,287 |
| c Rebates and Refunds | | 622000 | 628,599 | 0 | 0 | 628,599 |
| d All other revenue . . . . . | | | 629,309 | 0 | 0 | 629,309 |
| e **Total.** Add lines 11a–11d . . . . . . ▶ | | | 8,519,430 | | | |
| 12 **Total revenue.** See instructions . . . . . ▶ | | | 104,389,786 | 102,560,344 | 0 | 1,767,195 |

## Part IX Statement of Functional Expenses

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . ☑

| **Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.** | **(A)** Total expenses | **(B)** Program service expenses | **(C)** Management and general expenses | **(D)** Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | 0 | 0 | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 | 0 | 0 | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. | 0 | 0 | | |
| **4** Benefits paid to or for members | 0 | 0 | | |
| **5** Compensation of current officers, directors, trustees, and key employees | 751,446 | 158,127 | 593,319 | 0 |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | 0 | 0 | 0 | 0 |
| **7** Other salaries and wages | 36,231,690 | 28,951,288 | 7,280,402 | 0 |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | 311,782 | 236,823 | 74,959 | 0 |
| **9** Other employee benefits | 10,534,191 | 7,777,471 | 2,756,720 | 0 |
| **10** Payroll taxes | 3,176,321 | 2,491,964 | 684,357 | 0 |
| **11** Fees for services (non-employees): | | | | |
| **a** Management | 0 | 0 | 0 | 0 |
| **b** Legal | 1,528,728 | 0 | 1,528,728 | 0 |
| **c** Accounting | 39,500 | 0 | 39,500 | 0 |
| **d** Lobbying | 0 | 0 | 0 | 0 |
| **e** Professional fundraising services. See Part IV, line 17 | 0 | | | 0 |
| **f** Investment management fees | 0 | 0 | 0 | 0 |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 15,501,840 | 15,501,120 | 720 | 0 |
| **12** Advertising and promotion | 6,280 | 0 | 6,280 | 0 |
| **13** Office expenses | 584,319 | 125,652 | 458,667 | 0 |
| **14** Information technology | 1,689,243 | 0 | 1,689,243 | 0 |
| **15** Royalties | 0 | 0 | 0 | 0 |
| **16** Occupancy | 291,675 | 252,375 | 39,300 | 0 |
| **17** Travel | 7,816 | 3,137 | 4,679 | 0 |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials | 0 | 0 | 0 | 0 |
| **19** Conferences, conventions, and meetings | 35,560 | 34,736 | 824 | 0 |
| **20** Interest | 324,393 | 0 | 324,393 | 0 |
| **21** Payments to affiliates | 0 | 0 | 0 | 0 |
| **22** Depreciation, depletion, and amortization | 2,357,108 | 469,404 | 1,887,704 | 0 |
| **23** Insurance | 2,212,134 | 0 | 2,212,134 | 0 |
| **24** Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** Supplies | 13,511,796 | 11,483,688 | 2,028,108 | 0 |
| **b** Quality Assurance Provider Fees | 5,496,411 | 0 | 5,496,411 | 0 |
| **c** Other Purchased Services | 6,053,015 | 2,791,504 | 3,261,511 | 0 |
| **d** Physician Professional Fees | 9,133,599 | 9,092,799 | 40,800 | 0 |
| **e** All other expenses | 6,469,236 | 2,293,215 | 4,176,021 | 0 |
| **25 Total functional expenses.** Add lines 1 through 24e | 116,248,083 | 81,663,303 | 34,584,780 | 0 |
| **26 Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

**Part X Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . . . . ☐

| Section | Line | Description | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|---|---|
| Assets | 1 | Cash–non-interest-bearing | | | 5,080,082 | 1 | 7,706,097 |
| | 2 | Savings and temporary cash investments | | | 19,269,501 | 2 | 583,335 |
| | 3 | Pledges and grants receivable, net | | | 0 | 3 | 0 |
| | 4 | Accounts receivable, net | | | 8,309,002 | 4 | 10,202,619 |
| | 5 | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | 0 | 5 | 0 |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | | 0 | 6 | 0 |
| | 7 | Notes and loans receivable, net | | | 27,606,631 | 7 | 29,136,998 |
| | 8 | Inventories for sale or use | | | 2,305,897 | 8 | 3,539,098 |
| | 9 | Prepaid expenses and deferred charges | | | 739,385 | 9 | 973,321 |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | 10a | 98,893,659 | | | |
| | b | Less: accumulated depreciation | 10b | 69,583,308 | 27,601,874 | 10c | 29,310,351 |
| | 11 | Investments—publicly traded securities | | | 0 | 11 | 0 |
| | 12 | Investments—other securities. See Part IV, line 11 | | | 0 | 12 | 0 |
| | 13 | Investments—program-related. See Part IV, line 11 | | | 0 | 13 | 0 |
| | 14 | Intangible assets | | | 0 | 14 | 0 |
| | 15 | Other assets. See Part IV, line 11 | | | 107,501 | 15 | 107,501 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) | | | 91,019,873 | 16 | 81,559,320 |
| Liabilities | 17 | Accounts payable and accrued expenses | | | 5,670,995 | 17 | 7,264,653 |
| | 18 | Grants payable | | | 0 | 18 | 0 |
| | 19 | Deferred revenue | | | 0 | 19 | 0 |
| | 20 | Tax-exempt bond liabilities | | | 0 | 20 | 0 |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | | 0 | 21 | 0 |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | 0 | 22 | 0 |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | | 7,631,250 | 23 | 7,303,719 |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | | 0 | 24 | 0 |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | | | 13,286,351 | 25 | 14,417,968 |
| | 26 | **Total liabilities.** Add lines 17 through 25 | | | 26,588,596 | 26 | 28,986,340 |
| Net Assets or Fund Balances | | **Organizations that follow FASB ASC 958, check here ▶ ☑ and complete lines 27, 28, 32, and 33.** | | | | | |
| | 27 | Net assets without donor restrictions | | | 64,431,277 | 27 | 52,572,980 |
| | 28 | Net assets with donor restrictions | | | 0 | 28 | 0 |
| | | **Organizations that do not follow FASB ASC 958, check here ▶ ☐ and complete lines 29 through 33.** | | | | | |
| | 29 | Capital stock or trust principal, or current funds | | | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund | | | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds | | | | 31 | |
| | 32 | Total net assets or fund balances | | | 64,431,277 | 32 | 52,572,980 |
| | 33 | Total liabilities and net assets/fund balances | | | 91,019,873 | 33 | 81,559,320 |

## Part XI Reconcilliation of Net Assets

Check if Schedule O contains a response or note to any line in this Part XI . . . ☐

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 104,389,786 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | 2 | 116,248,083 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | 3 | -11,858,297 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) | 4 | 64,431,277 |
| 5 | Net unrealized gains (losses) on investments | 5 | 0 |
| 6 | Donated services and use of facilities | 6 | 0 |
| 7 | Investment expenses | 7 | 0 |
| 8 | Prior period adjustments | 8 | 0 |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | 0 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | 10 | 52,572,980 |

## Part XII Financial Statements and Reporting

Check if Schedule O contains a response or note to any line in this Part XII . . . ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash ☑ Accrual ☐ Other ______<br>If the organization changed its method of accounting from a prior year or checked "Other," explain on Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | 2a | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? | 2b | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| c | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | 2c | | No |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | 3a | | No |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | 3b | | |

| efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135183743 |
|---|---|---|

**SCHEDULE A (Form 990)**

Department of the Treasury Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**
**▶ Attach to Form 990 or Form 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| MADERA COMMUNITY HOSPITAL | 23-7429117 |

## Part I Reason for Public Charity Status (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☑ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)**. (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

g Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 10 above (see instructions)) | (iv) Is the organization listed in your governing document? Yes | No | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| Total | | | | | | |

**Part II** **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2017 | (b) 2018 | (c) 2019 | (d) 2020 | (e) 2021 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") | | | | | | |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| 4 **Total.** Add lines 1 through 3 | | | | | | |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | |
| 6 **Public support.** Subtract line 5 from line 4. | | | | | | |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2017 | (b) 2018 | (c) 2019 | (d) 2020 | (e) 2021 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4 | | | | | | |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | | | | | | |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | |
| 11 **Total support.** Add lines 7 through 10 | | | | | | |

12 Gross receipts from related activities, etc. (see instructions) . . . 12

13 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

14 Public support percentage for 2021 (line 6, column (f) divided by line 11, column (f)) . . . 14

15 Public support percentage for 2020 Schedule A, Part II, line 14 . . . 15

16a **33 1/3% support test—2021.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . ▶ ☐

b **33 1/3% support test—2020.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . ▶ ☐

17a **10%-facts-and-circumstances test—2021.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . ▶ ☐

b **10%-facts-and-circumstances test—2020.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . ▶ ☐

**Part III** **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2017 | (b) 2018 | (c) 2019 | (d) 2020 | (e) 2021 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . | | | | | | |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . . | | | | | | |
| 4 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | |
| 5 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 6 **Total.** Add lines 1 through 5 | | | | | | |
| 7a Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| b Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| c Add lines 7a and 7b. . | | | | | | |
| 8 **Public support.** (Subtract line 7c from line 6.) | | | | | | |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2017 | (b) 2018 | (c) 2019 | (d) 2020 | (e) 2021 | (f) Total |
|---|---|---|---|---|---|---|
| 9 Amounts from line 6. . . | | | | | | |
| 10a Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| b Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| c Add lines 10a and 10b. | | | | | | |
| 11 Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on. | | | | | | |
| 12 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| 13 **Total support.** (Add lines 9, 10c, 11, and 12.). . | | | | | | |

14 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. . . . . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

| | | | |
|---|---|---|---|
| 15 | Public support percentage for 2021 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . | 15 | |
| 16 | Public support percentage from 2020 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . . | 16 | |

**Section D. Computation of Investment Income Percentage**

| | | | |
|---|---|---|---|
| 17 | Investment income percentage for **2021** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | 17 | |
| 18 | Investment income percentage from **2020** Schedule A, Part III, line 17 . . . . . . . . . . . . . . | 18 | |

19a **33 1/3% support tests-2021.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . ▶ ☐

b **33 1/3% support tests—2020.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

20 **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐

**Part IV** **Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in* ***Part VI*** *how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in* ***Part VI*** *how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in* ***Part VI*** *when and how the organization made the determination.* | **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in* ***Part VI*** *what controls the organization put in place to ensure such use.* | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in* ***Part VI*** *how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in* ***Part VI*** *what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in* ***Part VI,*** *including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in* ***Part VI.*** | **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990) .* | **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in* ***Part VI.*** | **9a** | | |
| **b** | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in* ***Part VI.*** | **9b** | | |
| **c** | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in* ***Part VI.*** | **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | **10b** | | |

**Part IV** **Supporting Organizations** (continued)

| | | | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | **11a** | | |
| **b** | A family member of a person described on 11a above? | **11b** | | |
| **c** | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in **Part VI**.* | **11c** | | |

**Section B. Type I Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in **Part VI** how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | **2** | | |

**Section C. Type II Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in **Part VI** how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** | | |

**Section D. All Type III Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in **Part VI** how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** | | |
| **3** | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in **Part VI** the role the organization's supported organizations played in this regard.* | **3** | | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

**1** Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

- **a** ☐ The organization satisfied the Activities Test. Complete **line 2** below.
- **b** ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.
- **c** ☐ The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

| | | | Yes | No |
|---|---|---|---|---|
| **2** | Activities Test. **Answer lines 2a and 2b below.** | | | |
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in **Part VI identify those supported organizations and explain** how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** | | |
| **b** | Did the activities described on line 2a, above constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in **Part VI** the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** | | |
| **3** | Parent of Supported Organizations. **Answer lines 3a and 3b below.** | | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations?*If "Yes" or "No", provide details in **Part VI.*** | **3a** | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in **Part VI.** the role played by the organization in this regard.* | **3b** | | |

**Part V Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations**

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 (*explain in* ***Part VI***). **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| | **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | 1 | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| e | **Discount** claimed for blockage or other factors (*explain in detail in* ***Part VI***): | | | |
| 2 | Acquisition indebtedness applicable to non-exempt use assets | 2 | | |
| 3 | Subtract line 2 from line 1d | 3 | | |
| 4 | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | 4 | | |
| 5 | Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| 6 | Multiply line 5 by 0.035 | 6 | | |
| 7 | Recoveries of prior-year distributions | 7 | | |
| 8 | **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |

| | **Section C - Distributable Amount** | | | Current Year |
|---|---|---|---|---|
| 1 | Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | | |
| 2 | Enter 85% of line 1 | 2 | | |
| 3 | Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | | |
| 4 | Enter greater of line 2 or line 3 | 4 | | |
| 5 | Income tax imposed in prior year | 5 | | |
| 6 | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | | |

7 ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Part V** **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** (continued)

| **Section D - Distributions** | | **Current Year** |
|---|---|---|
| **1** Amounts paid to supported organizations to accomplish exempt purposes | **1** | |
| **2** Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | **2** | |
| **3** Administrative expenses paid to accomplish exempt purposes of supported organizations | **3** | |
| **4** Amounts paid to acquire exempt-use assets | **4** | |
| **5** Qualified set-aside amounts (*prior IRS approval required - provide details in **Part VI***) | **5** | |
| **6** Other distributions (*describe in **Part VI***). See instructions | **6** | |
| **7** **Total annual distributions.** Add lines 1 through 6. | **7** | |
| **8** Distributions to attentive supported organizations to which the organization is responsive (*provide details in **Part VI***). See instructions | **8** | |
| **9** Distributable amount for 2021 from Section C, line 6 | **9** | |
| **10** Line 8 amount divided by Line 9 amount | **10** | |

| **Section E - Distribution Allocations** (see instructions) | **(i) Excess Distributions** | **(ii) Underdistributions Pre-2021** | **(iii) Distributable Amount for 2021** |
|---|---|---|---|
| **1** Distributable amount for 2021 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2021 (reasonable cause required-- *explain in **Part VI***). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2021: | | | |
| **a** From 2016. . . . . . . . | | | |
| **b** From 2017. . . . . . . . | | | |
| **c** From 2018. . . . . . . . | | | |
| **d** From 2019. . . . . . . . | | | |
| **e** From 2020. . . . . . . . | | | |
| **f** **Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2021 distributable amount | | | |
| **i** Carryover from 2016 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** Distributions for 2021 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2021 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2021, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in **Part VI***. See instructions. | | | |
| **6** Remaining underdistributions for 2021. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in **Part VI***. See instructions. | | | |
| **7** **Excess distributions carryover to 2022.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2017. . . . . | | | |
| **b** Excess from 2018. . . . . | | | |
| **c** Excess from 2019. . . . . | | | |
| **d** Excess from 2020. . . . . | | | |
| **e** Excess from 2021. . . . . | | | |

**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions).

**Facts And Circumstances Test**

| Return Reference | Explanation |
|---|---|

| efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135183743 |
|---|---|---|

**SCHEDULE D (Form 990)**

Department of the Treasury Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

**Name of the organization**
MADERA COMMUNITY HOSPITAL

**Employer identification number**
23-7429117

## Part I Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.

Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

## Part II Conservation Easements.

Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)
☐ Preservation of an historically important land area
☐ Protection of natural habitat
☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ ________

4 Number of states where property subject to conservation easement is located ▶ ________

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ ________

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $ ________

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

## Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.

Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 ▶ $ ________

(ii) Assets included in Form 990, Part X ▶ $ ________

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 ▶ $ ________

b Assets included in Form 990, Part X ▶ $ ________

**Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

3 Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a ☐ Public exhibition
b ☐ Scholarly research
c ☐ Preservation for future generations
d ☐ Loan or exchange programs
e ☐ Other

4 Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

5 During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . . . ☐ Yes ☐ No

**Part IV Escrow and Custodial Arrangements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

1a Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | | Amount |
|---|---|---|---|
| c | Beginning balance | 1c | |
| d | Additions during the year | 1d | |
| e | Distributions during the year | 1e | |
| f | Ending balance | 1f | |

2a Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V Endowment Funds.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|
| 1a Beginning of year balance | | | | | |
| b Contributions | | | | | |
| c Net investment earnings, gains, and losses | | | | | |
| d Grants or scholarships | | | | | |
| e Other expenditures for facilities and programs | | | | | |
| f Administrative expenses | | | | | |
| g End of year balance | | | | | |

2 Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

a Board designated or quasi-endowment ▶

b Permanent endowment ▶

c Term endowment ▶

The percentages on lines 2a, 2b, and 2c should equal 100%.

3a Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| **(i)** Unrelated organizations | 3a(i) | | |
| **(ii)** Related organizations | 3a(ii) | | |
| b If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? | 3b | | |

4 Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI Land, Buildings, and Equipment.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| 1a Land | 130,000 | 84,936 | | 214,936 |
| b Buildings | 0 | 52,534,492 | 30,257,498 | 22,276,994 |
| c Leasehold improvements | 0 | 265,048 | 53,699 | 211,349 |
| d Equipment | 0 | 40,571,431 | 37,817,703 | 2,753,728 |
| e Other | 0 | 5,307,752 | 1,454,408 | 3,853,344 |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* ▶ | | | | 29,310,351 |

**Part VII** **Investments - Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b.See Form 990, Part X, line 12.

| **(a)** Description of security or category (including name of security) | **(b)** Book value | **(c)** Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives | | |
| **(2)** Closely-held equity interests | | |
| **(3)** Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col. (B) line 12.)* ▶ | | |

**Part VIII** **Investments - Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| **(a)** Description of investment | **(b)** Book value | **(c)** Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** | | |
| **(2)** | | |
| **(3)** | | |
| **(4)** | | |
| **(5)** | | |
| **(6)** | | |
| **(7)** | | |
| **(8)** | | |
| **(9)** | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 13.)* ▶ | | |

**Part IX** **Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| **(a)** Description | **(b)** Book value |
|---|---|
| **(1)** | |
| **(2)** | |
| **(3)** | |
| **(4)** | |
| **(5)** | |
| **(6)** | |
| **(7)** | |
| **(8)** | |
| **(9)** | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* ▶ | |

**Part X** **Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| **1.** **(a)** Description of liability | **(b)** Book value |
|---|---|
| **(1)** Federal income taxes | 0 |
| Accrued Payroll and Related Liabilities | 6,751,046 |
| Due to third party payor | 2,135,514 |
| Quality Assurance Fees Payable | 5,531,408 |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 25.)* ▶ | 14,417,968 |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☐

**Part XI Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | 104,389,786 |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains (losses) on investments | 2a | 0 | | |
| b | Donated services and use of facilities | 2b | 0 | | |
| c | Recoveries of prior year grants | 2c | 0 | | |
| d | Other (Describe in Part XIII.) | 2d | 0 | | |
| e | Add lines **2a** through **2d** | | | 2e | 0 |
| 3 | Subtract line **2e** from line **1** | | | 3 | 104,389,786 |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | 0 | | |
| b | Other (Describe in Part XIII.) | 4b | 0 | | |
| c | Add lines **4a** and **4b** | | | 4c | 0 |
| 5 | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) | | | 5 | 104,389,786 |

**Part XII Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | 1 | 116,248,083 |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | 2a | 0 | | |
| b | Prior year adjustments | 2b | 0 | | |
| c | Other losses | 2c | 0 | | |
| d | Other (Describe in Part XIII.) | 2d | 0 | | |
| e | Add lines **2a** through **2d** | | | 2e | 0 |
| 3 | Subtract line **2e** from line **1** | | | 3 | 116,248,083 |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | 0 | | |
| b | Other (Describe in Part XIII.) | 4b | 0 | | |
| c | Add lines **4a** and **4b** | | | 4c | 0 |
| 5 | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) | | | 5 | 116,248,083 |

**Part XIII Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|

efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135183743

**SCHEDULE H (Form 990)**

Department of the Treasury Internal Revenue Service

# Hospitals

▶ Complete if the organization answered "Yes" on Form 990, Part IV, question 20.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990EZ* for instructions and the latest information.

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

**Name of the organization**
MADERA COMMUNITY HOSPITAL

**Employer identification number**
23-7429117

## Part I Financial Assistance and Certain Other Community Benefits at Cost

| | | | Yes | No |
|---|---|---|---|---|
| 1a | Did the organization have a financial assistance policy during the tax year? If "No," skip to question 6a | 1a | Yes | |
| b | If "Yes," was it a written policy? | 1b | Yes | |
| 2 | If the organization had multiple hospital facilities, indicate which of the following best describes application of the financial assistance policy to its various hospital facilities during the tax year.<br>☑ Applied uniformly to all hospital facilities ☐ Applied uniformly to most hospital facilities<br>☐ Generally tailored to individual hospital facilities | | | |
| 3 | Answer the following based on the financial assistance eligibility criteria that applied to the largest number of the organization's patients during the tax year. | | | |
| a | Did the organization use Federal Poverty Guidelines (FPG) as a factor in determining eligibility for providing *free* care? If "Yes," indicate which of the following was the FPG family income limit for eligibility for free care: | 3a | Yes | |
| | ☐ 100% ☐ 150% ☑ 200% ☐ Other _______ % | | | |
| b | Did the organization use FPG as a factor in determining eligibility for providing *discounted* care? If "Yes," indicate which of the following was the family income limit for eligibility for discounted care: | 3b | Yes | |
| | ☐ 200% ☐ 250% ☐ 300% ☑ 350% ☐ 400% ☐ Other _______ % | | | |
| c | If the organization used factors other than FPG in determining eligibility, describe in Part VI the criteria used for determining eligibility for free or discounted care. Include in the description whether the organization used an asset test or other threshold, regardless of income, as a factor in determining eligibility for free or discounted care. | | | |
| 4 | Did the organization's financial assistance policy that applied to the largest number of its patients during the tax year provide for free or discounted care to the "medically indigent"? | 4 | | No |
| 5a | Did the organization budget amounts for free or discounted care provided under its financial assistance policy during the tax year? | 5a | Yes | |
| b | If "Yes," did the organization's financial assistance expenses exceed the budgeted amount? | 5b | | No |
| c | If "Yes" to line 5b, as a result of budget considerations, was the organization unable to provide free or discounted care to a patient who was eligibile for free or discounted care? | 5c | | |
| 6a | Did the organization prepare a community benefit report during the tax year? | 6a | Yes | |
| b | If "Yes," did the organization make it available to the public? | 6b | Yes | |
| | Complete the following table using the worksheets provided in the Schedule H instructions. Do not submit these worksheets with the Schedule H. | | | |

7 Financial Assistance and Certain Other Community Benefits at Cost

| Financial Assistance and Means-Tested Government Programs | (a) Number of activities or programs (optional) | (b) Persons served (optional) | (c) Total community benefit expense | (d) Direct offsetting revenue | (e) Net community benefit expense | (f) Percent of total expense |
|---|---|---|---|---|---|---|
| a Financial Assistance at cost (from Worksheet 1) | 0 | 835 | 859,489 | 0 | 859,489 | 0 % |
| b Medicaid (from Worksheet 3, column a) | 0 | 0 | 49,666,650 | 23,128,160 | 26,538,490 | 0 % |
| c Costs of other means-tested government programs (from Worksheet 3, column b) | 0 | 0 | 39,034,159 | 27,902,137 | 14,132,023 | 0 % |
| d **Total** Financial Assistance and Means-Tested Government Programs | 0 | 835 | 89,560,298 | 51,030,297 | 41,530,002 | 0 % |
| **Other Benefits** | | | | | | |
| e Community health improvement services and community benefit operations (from Worksheet 4). | 0 | 0 | 976,958 | 0 | 976,958 | 0 % |
| f Health professions education (from Worksheet 5) | 0 | 0 | 91,450 | 0 | 91,450 | 0 % |
| g Subsidized health services (from Worksheet 6) | 0 | 0 | 0 | 0 | 0 | 0 % |
| h Research (from Worksheet 7) | 0 | 0 | 0 | 0 | 0 | 0 % |
| i Cash and in-kind contributions for community benefit (from Worksheet 8) | 0 | 0 | 77,228 | 0 | 77,228 | 0 % |
| j **Total.** Other Benefits | 0 | 0 | 1,145,636 | 0 | 1,145,636 | 0 % |
| k **Total.** Add lines 7d and 7j | 0 | 835 | 90,705,934 | 51,030,297 | 42,675,638 | 0 % |

**Part II Community Building Activities** Complete this table if the organization conducted any community building activities during the tax year, and describe in Part VI how its community building activities promoted the health of the communities it serves.

| | (a) Number of activities or programs (optional) | (b) Persons served (optional) | (c) Total community building expense | (d) Direct offsetting revenue | (e) Net community building expense | (f) Percent of total expense |
|---|---|---|---|---|---|---|
| 1 Physical improvements and housing | 0 | 0 | 0 | 0 | 0 | 0 % |
| 2 Economic development | 0 | 0 | 0 | 0 | 0 | 0 % |
| 3 Community support | 0 | 0 | 73,908 | 0 | 73,908 | 0 % |
| 4 Environmental improvements | 0 | 0 | 0 | 0 | 0 | 0 % |
| 5 Leadership development and training for community members | 0 | 0 | 0 | 0 | 0 | 0 % |
| 6 Coalition building | 0 | 0 | 0 | 0 | 0 | 0 % |
| 7 Community health improvement advocacy | 0 | 0 | 2,833 | 0 | 2,833 | 0 % |
| 8 Workforce development | 0 | 0 | 0 | 0 | 0 | 0 % |
| 9 Other | 0 | 0 | 0 | 0 | 0 | 0 % |
| 10 **Total** | 0 | 0 | 76,741 | 0 | 76,741 | 0 % |

**Part III Bad Debt, Medicare, & Collection Practices**

**Section A. Bad Debt Expense**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Did the organization report bad debt expense in accordance with Healthcare Financial Management Association Statement No. 15? | 1 | Yes | |

2 Enter the amount of the organization's bad debt expense. Explain in Part VI the methodology used by the organization to estimate this amount. — **2** 2,809,442

3 Enter the estimated amount of the organization's bad debt expense attributable to patients eligible under the organization's financial assistance policy. Explain in Part VI the methodology used by the organization to estimate this amount and the rationale, if any, for including this portion of bad debt as community benefit. — **3** 0

4 Provide in Part VI the text of the footnote to the organization's financial statements that describes bad debt expense or the page number on which this footnote is contained in the attached financial statements.

**Section B. Medicare**

| | | | |
|---|---|---|---|
| 5 | Enter total revenue received from Medicare (including DSH and IME) | 5 | 23,459,768 |
| 6 | Enter Medicare allowable costs of care relating to payments on line 5 | 6 | 33,883,255 |
| 7 | Subtract line 6 from line 5. This is the surplus (or shortfall) | 7 | -10,423,487 |

8 Describe in Part VI the extent to which any shortfall reported in line 7 should be treated as community benefit. Also describe in Part VI the costing methodology or source used to determine the amount reported on line 6. Check the box that describes the method used:

☐ Cost accounting system ☑ Cost to charge ratio ☐ Other

**Section C. Collection Practices**

| | | | Yes | No |
|---|---|---|---|---|
| 9a | Did the organization have a written debt collection policy during the tax year? | 9a | Yes | |
| b | If "Yes," did the organization's collection policy that applied to the largest number of its patients during the tax year contain provisions on the collection practices to be followed for patients who are known to qualify for financial assistance? Describe in Part VI | 9b | Yes | |

**Part IV Management Companies and Joint Ventures** (owned 10% or more by officers, directors, trustees, key employees, and physicians—see instructions)

| | (a) Name of entity | (b) Description of primary activity of entity | (c) Organization's profit % or stock ownership % | (d) Officers, directors, trustees, or key employees' profit % or stock ownership % | (e) Physicians' profit % or stock ownership % |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |

Case 23-10787-JKS Doc 303-1 Filed 02/29/24 Page 151 of 327

**Part V** **Facility Information**

**Section A. Hospital Facilities**

(list in order of size from largest to smallest—see instructions)

How many hospital facilities did the organization operate during the tax year? **1**

| | Name, address, primary website address, and state license number (and if a group return, the name and EIN of the subordinate hospital organization that operates the hospital facility) | Licensed hospital | General medical & surgical | Children's hospital | Teaching hospital | Critical access hospital | Research facility | ER–24 hours | ER–other | Other (describe) | Facility reporting group |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Madera Community Hospital<br>1250 E Almond Avenue<br>Madera, CA 93637<br>www.maderahospital.org | X | X | | | | | X | | | A |
| 2 | Madera Community Hospital Family Health Services<br>1210 E Almond Avenue<br>Madera, CA 93637<br>www.maderahospital.org | | | | | | | | | Provider-Based Rural Health Clinic | A |
| 3 | Chowchilla Medical Center Clinic<br>285 Hospital Drive<br>Chowchilla, CA 93610<br>www.maderahospital.org | | | | | | | | | Provider-Based Rural Health Clinic | A |
| 4 | Madera Community Hospital Outpatient Center<br>1270 E Almond Avenue<br>Madera, CA 93637<br>www.maderahospital.org | | | | | | | | | Provider-Based Outpatient Laboratory and Radiology Services | A |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

**Part V Facility Information** *(continued)*

**Section B. Facility Policies and Practices**

(Complete a separate Section B for each of the hospital facilities or facility reporting groups listed in Part V, Section A)

**Name of hospital facility or letter of facility reporting group** A

**Line number of hospital facility, or line numbers of hospital facilities in a facility reporting group (from Part V, Section A):**

| | | | Yes | No |
|---|---|---|---|---|
| **Community Health Needs Assessment** | | | | |
| **1** | Was the hospital facility first licensed, registered, or similarly recognized by a state as a hospital facility in the current tax year or the immediately preceding tax year? | **1** | | No |
| **2** | Was the hospital facility acquired or placed into service as a tax-exempt hospital in the current tax year or the immediately preceding tax year? If "Yes," provide details of the acquisition in Section C. | **2** | | No |
| **3** | During the tax year or either of the two immediately preceding tax years, did the hospital facility conduct a community health needs assessment (CHNA)? If "No," skip to line 12. | **3** | Yes | |
| | If "Yes," indicate what the CHNA report describes (check all that apply): | | | |
| **a** | ☑ A definition of the community served by the hospital facility | | | |
| **b** | ☑ Demographics of the community | | | |
| **c** | ☑ Existing health care facilities and resources within the community that are available to respond to the health needs of the community | | | |
| **d** | ☑ How data was obtained | | | |
| **e** | ☑ The significant health needs of the community | | | |
| **f** | ☑ Primary and chronic disease needs and other health issues of uninsured persons, low-income persons, and minority groups | | | |
| **g** | ☑ The process for identifying and prioritizing community health needs and services to meet the community health needs | | | |
| **h** | ☑ The process for consulting with persons representing the community's interests | | | |
| **i** | ☑ The impact of any actions taken to address the significant health needs identified in the hospital facility's prior CHNA(s) | | | |
| **j** | ☐ Other (describe in Section C) | | | |
| **4** | Indicate the tax year the hospital facility last conducted a CHNA: 20 19 | | | |
| **5** | In conducting its most recent CHNA, did the hospital facility take into account input from persons who represent the broad interests of the community served by the hospital facility, including those with special knowledge of or expertise in public health? If "Yes," describe in Section C how the hospital facility took into account input from persons who represent the community, and identify the persons the hospital facility consulted | **5** | Yes | |
| **6 a** | Was the hospital facility's CHNA conducted with one or more other hospital facilities? If "Yes," list the other hospital facilities in Section C | **6a** | Yes | |
| **b** | Was the hospital facility's CHNA conducted with one or more organizations other than hospital facilities?" If "Yes," list the other organizations in Section C. | **6b** | | No |
| **7** | Did the hospital facility make its CHNA report widely available to the public? | **7** | Yes | |
| | If "Yes," indicate how the CHNA report was made widely available (check all that apply): | | | |
| **a** | ☑ Hospital facility's website (list url): www.maderahospital.org | | | |
| **b** | ☑ Other website (list url): www.hospitalcouncil.org | | | |
| **c** | ☐ Made a paper copy available for public inspection without charge at the hospital facility | | | |
| **d** | ☐ Other (describe in Section C) | | | |
| **8** | Did the hospital facility adopt an implementation strategy to meet the significant community health needs identified through its most recently conducted CHNA? If "No," skip to line 11. | **8** | Yes | |
| **9** | Indicate the tax year the hospital facility last adopted an implementation strategy: 20 19 | | | |
| **10** | Is the hospital facility's most recently adopted implementation strategy posted on a website? | **10** | Yes | |
| **a** | If "Yes" (list url): www.maderahospital.org | | | |
| **b** | If "No," is the hospital facility's most recently adopted implementation strategy attached to this return? | **10b** | | No |
| **11** | Describe in Section C how the hospital facility is addressing the significant needs identified in its most recently conducted CHNA and any such needs that are not being addressed together with the reasons why such needs are not being addressed. | | | |
| **12a** | Did the organization incur an excise tax under section 4959 for the hospital facility's failure to conduct a CHNA as required by section 501(r)(3)? | **12a** | | No |
| **b** | If "Yes" on line 12a, did the organization file Form 4720 to report the section 4959 excise tax? | **12b** | | |
| **c** | If "Yes" on line 12b, what is the total amount of section 4959 excise tax the organization reported on Form 4720 for all of its hospital facilities? $ | | | |

**Part V** **Facility Information** *(continued)*

**Financial Assistance Policy (FAP)**

**Name of hospital facility or letter of facility reporting group** A

| | | | Yes | No |
|---|---|---|---|---|
| | Did the hospital facility have in place during the tax year a written financial assistance policy that: | | | |
| 13 | Explained eligibility criteria for financial assistance, and whether such assistance included free or discounted care? | 13 | Yes | |
| | If "Yes," indicate the eligibility criteria explained in the FAP: | | | |
| a | ☑ Federal poverty guidelines (FPG), with FPG family income limit for eligibility for free care of 200 % and FPG family income limit for eligibility for discounted care of 350 % | | | |
| b | ☐ Income level other than FPG (describe in Section C) | | | |
| c | ☐ Asset level | | | |
| d | ☐ Medical indigency | | | |
| e | ☐ Insurance status | | | |
| f | ☐ Underinsurance discount | | | |
| g | ☐ Residency | | | |
| h | ☐ Other (describe in Section C) | | | |
| 14 | Explained the basis for calculating amounts charged to patients? | 14 | Yes | |
| 15 | Explained the method for applying for financial assistance? | 15 | Yes | |
| | If "Yes," indicate how the hospital facility's FAP or FAP application form (including accompanying instructions) explained the method for applying for financial assistance (check all that apply): | | | |
| a | ☑ Described the information the hospital facility may require an individual to provide as part of his or her application | | | |
| b | ☑ Described the supporting documentation the hospital facility may require an individual to submit as part of his or her application | | | |
| c | ☑ Provided the contact information of hospital facility staff who can provide an individual with information about the FAP and FAP application process | | | |
| d | ☐ Provided the contact information of nonprofit organizations or government agencies that may be sources of assistance with FAP applications | | | |
| e | ☐ Other (describe in Section C) | | | |
| 16 | Was widely publicized within the community served by the hospital facility? | 16 | Yes | |
| | If "Yes," indicate how the hospital facility publicized the policy (check all that apply): | | | |
| a | ☑ The FAP was widely available on a website (list url): www.maderahospital.org | | | |
| b | ☑ The FAP application form was widely available on a website (list url): www.maderahospital.org | | | |
| c | ☐ A plain language summary of the FAP was widely available on a website (list url): | | | |
| d | ☑ The FAP was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| e | ☑ The FAP application form was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| f | ☐ A plain language summary of the FAP was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| g | ☑ Individuals were notified about the FAP by being offered a paper copy of the plain language summary of the FAP, by receiving a conspicuous written notice about the FAP on their billing statements, and via conspicuous public displays or other measures reasonably calculated to attract patients' attention | | | |
| h | ☐ Notified members of the community who are most likely to require financial assistance about availability of the FAP | | | |
| i | ☑ The FAP, FAP application form, and plain language summary of the FAP were translated into the primary language(s) spoken by LEP populations | | | |
| j | ☐ Other (describe in Section C) | | | |

**Part V Facility Information** *(continued)*

**Billing and Collections**

**Name of hospital facility or letter of facility reporting group** A

| | | Yes | No |
|---|---|---|---|
| **17** Did the hospital facility have in place during the tax year a separate billing and collections policy, or a written financial assistance policy (FAP) that explained all of the actions the hospital facility or other authorized party may take upon nonpayment? | **17** | Yes | |
| **18** Check all of the following actions against an individual that were permitted under the hospital facility's policies during the tax year before making reasonable efforts to determine the individual's eligibility under the facility's FAP: | | | |
| **a** ☐ Reporting to credit agency(ies) | | | |
| **b** ☐ Selling an individual's debt to another party | | | |
| **c** ☐ Deferring, denying, or requiring a payment before providing medically necessary care due to nonpayment of a previous bill for care covered under the hospital facility's FAP | | | |
| **d** ☐ Actions that require a legal or judicial process | | | |
| **e** ☐ Other similar actions (describe in Section C) | | | |
| **f** ☑ None of these actions or other similar actions were permitted | | | |
| **19** Did the hospital facility or other authorized party perform any of the following actions during the tax year before making reasonable efforts to determine the individual's eligibility under the facility's FAP? | **19** | | No |
| If "Yes," check all actions in which the hospital facility or a third party engaged: | | | |
| **a** ☐ Reporting to credit agency(ies) | | | |
| **b** ☐ Selling an individual's debt to another party | | | |
| **c** ☐ Deferring , denying, or requiring a payment before providing medically necessary care due to nonpayment of a previous bill for care covered under the hospital facility's FAP | | | |
| **d** ☐ Actions that require a legal or judicial process | | | |
| **e** ☐ Other similar actions (describe in Section C) | | | |
| **20** Indicate which efforts the hospital facility or other authorized party made before initiating any of the actions listed (whether or not checked) in line 19. (check all that apply): | | | |
| **a** ☑ Provided a written notice about upcoming ECAs (Extraordinary Collection Action) and a plain language summary of the FAP at least 30 days before initiating those ECAs (if not, describe in Section C) | | | |
| **b** ☑ Made a reasonable effort to orally notify individuals about the FAP and FAP application process (if not, describe in Section C) | | | |
| **c** ☑ Processed incomplete and complete FAP applications (if not, describe in Section C) | | | |
| **d** ☑ Made presumptive eligibility determinations (if not, describe in Section C) | | | |
| **e** ☐ Other (describe in Section C) | | | |
| **f** ☐ None of these efforts were made | | | |

**Policy Relating to Emergency Medical Care**

| | | Yes | No |
|---|---|---|---|
| **21** Did the hospital facility have in place during the tax year a written policy relating to emergency medical care that required the hospital facility to provide, without discrimination, care for emergency medical conditions to individuals regardless of their eligibility under the hospital facility's financial assistance policy? | **21** | Yes | |
| If "No," indicate why: | | | |
| **a** ☐ The hospital facility did not provide care for any emergency medical conditions | | | |
| **b** ☐ The hospital facility's policy was not in writing | | | |
| **c** ☐ The hospital facility limited who was eligible to receive care for emergency medical conditions (describe in Section C) | | | |
| **d** ☐ Other (describe in Section C) | | | |

**Part V** **Facility Information** *(continued)*

**Charges to Individuals Eligible for Assistance Under the FAP (FAP-Eligible Individuals)**

**Name of hospital facility or letter of facility reporting group** A

| | | Yes | No |
|---|---|---|---|
| **22** Indicate how the hospital facility determined, during the tax year, the maximum amounts that can be charged to FAP-eligible individuals for emergency or other medically necessary care. | | | |
| **a** ☑ The hospital facility used a look-back method based on claims allowed by Medicare fee-for-service during a prior 12-month period | | | |
| **b** ☐ The hospital facility used a look-back method based on claims allowed by Medicare fee-for-service and all private health insurers that pay claims to the hospital facility during a prior 12-month period | | | |
| **c** ☐ The hospital facility used a look-back method based on claims allowed by Medicaid, either alone or in combination with Medicare fee-for-service and all private health insurers that pay claims to the hospital facility during a prior 12-month period | | | |
| **d** ☐ The hospital facility used a prospective Medicare or Medicaid method | | | |
| **23** During the tax year, did the hospital facility charge any FAP-eligible individual to whom the hospital facility provided emergency or other medically necessary services more than the amounts generally billed to individuals who had insurance covering such care? | **23** | | No |
| If "Yes," explain in Section C. | | | |
| **24** During the tax year, did the hospital facility charge any FAP-eligible individual an amount equal to the gross charge for any service provided to that individual? | **24** | | No |
| If "Yes," explain in Section C. | | | |

**Part V** **Facility Information** *(continued)*

**Section C. Supplemental Information for Part V, Section B.** Provide descriptions required for Part V, Section B, lines 2, 3j, 5, 6a, 6b, 7d, 11, 13b, 13h, 15e, 16j, 18e, 19e, 20a, 20b, 20c, 20d, 20e, 21c, 21d, 23, and 24. If applicable, provide separate descriptions for each hospital facility in a facility reporting group, designated by facility reporting group letter and hospital facility line number from Part V, Section A ("A, 1," "A, 4," "B, 2," "B, 3," etc.) and name of hospital facility.

| Form and Line Reference | Explanation |
|---|---|
| Schedule H, Part V, Section B, Line 5-Group A | Madera Community Hospital participated in the 4-County Community Health Needs Assessment that was completed in March, 2019. There were many local focus groups convened within the 4-county area. Participants in the interviews in Madera County included the Madera County Public Health Director, the Executive Director of First 5 of Madera County, Madera Community Hospital CEO and management, Valley Children's Hospital CEO and management and various other local stakeholders. More information about how the Community Health Needs Assessment can be found on the hospital website at www.maderahospital.org. |
| Schedule H, Part V, Section B, Line 6a-Group A | Adventist Health Central Valley Network, Kaweah Delta Medical Center, Sierra View District Hospital, Coalinga Regional Medical Center, San Joaquin Valley Rehabilitation Hospital, Tulare Regional Medical Center, Community Medical Centers, Valley Children's Hospital, Kaiser Permanente, Saint Agnes Medical Center, Madera Community Hospital. |
| Schedule H, Part V, Section B, Line 11-Group A | Madera Community Hospital has designs and implemented programs to meet the health needs of the community as identified in the most recent and previous Community Health Needs Assessment. The hospital has created and implemented an Implementation Plan to address the top five health needs identified in Madera County. The Implementation Plan can be found on the hospital website www.maderahospital.org. |

**Part V Facility Information** *(continued)*

**Section D. Other Health Care Facilities That Are Not Licensed, Registered, or Similarly Recognized as a Hospital Facility**

(list in order of size, from largest to smallest)

How many non-hospital health care facilities did the organization operate during the tax year? ____________

| Name and address | Type of Facility (describe) |
|---|---|
| **1** | |
| **2** | |
| **3** | |
| **4** | |
| **5** | |
| **6** | |
| **7** | |
| **8** | |
| **9** | |
| **10** | |

**Part VI Supplemental Information**

Provide the following information.

1 **Required descriptions.** Provide the descriptions required for Part I, lines 3c, 6a, and 7; Part II and Part III, lines 2, 3, 4, 8 and 9b.

2 **Needs assessment.** Describe how the organization assesses the health care needs of the communities it serves, in addition to any CHNAs reported in Part V, Section B.

3 **Patient education of eligibility for assistance.** Describe how the organization informs and educates patients and persons who may be billed for patient care about their eligibility for assistance under federal, state, or local government programs or under the organization's financial assistance policy.

4 **Community information.** Describe the community the organization serves, taking into account the geographic area and demographic constituents it serves.

5 **Promotion of community health.** Provide any other information important to describing how the organization's hospital facilities or other health care facilities further its exempt purpose by promoting the health of the community (e.g., open medical staff, community board, use of surplus funds, etc.).

6 **Affiliated health care system.** If the organization is part of an affiliated health care system, describe the respective roles of the organization and its affiliates in promoting the health of the communities served.

7 **State filing of community benefit report.** If applicable, identify all states with which the organization, or a related organization, files a community benefit report.

| Form and Line Reference | Explanation |
|---|---|
| Schedule H, Part I, Line 7 | The amounts included in the table for Line 7 are based on amounts taken from the hospital's Medicare Cost Report and the Annual Community Benefits Report. |
| Schedule H, Part II | Madera Community Hospital's community building activities mainly consist of training local residents in careers in healthcare. As a result, this activity promotes health in the community by raising the awareness of local residents in our training programs about healthcare topics and these people also help promote good healthcare practices with the people they interact with. |
| Schedule H, Part III, Section A, Line 4 | Bad Debt Expense is recorded in the financial statements as the amount of charges written off for each account determined to be uncollectable. The amount on Line 2 is determined by the bad debt expense reported in the financial statements times a cost-to-charge ratio from this year's Medicare Cost Report. |
| Schedule H, Part III, Section B, Line 8 | All of the shortfall reported on Line 7 is treated as a community benefit cost as they are the unreimbursed costs of providing services to Medicare patients residing in our community. The costs were calculated in the Medicare Cost Report for this period. The revenue was derived from actual and estimated collections on Medicare accounts. |
| Schedule H, Part III, Section C, Line 9b | The Bad Debt Collection policy contains procedures for contracted debt collection agencies to return accounts to the hospital if the debtor qualifies for the hospital's Financial Assistance program. |
| Schedule H, Part VI, Line 2 | Madera Community Hospital participated in a 4-county Community Health Needs Assessment that was published in March 2019. Various focus groups were formed from members of the local communities to discuss the health needs. Data from a variety of sources was also used to identify certain health needs that need to be address in the hospital's service area. |
| Schedule H, Part VI, Line 3 | There are notices on each billing statement that goes to the patient regarding information about the Hospital's Financial Assistance policy. All self-pay patients are given a pamphlet about the availability of the financial assistance program and their access to public benefit programs. There is information also displayed in all public registration areas. |
| Schedule H, Part VI, Line 4 | The direct service area of the hospital contains about 160,256 residents, mostly made up of western Madera County. The population is about 60.2% Hispanic, 31.7% White/Caucasian, with a mix of other ethnicities. The population has a high number of Medicaid and Medicare patients, many low income families and is generally an agriculture-based economy. Most of the County is part of a Health Professional Shortage Area (HPSA). |
| Schedule H, Part VI, Line 5 | Madera Community Hospital is the only local hospital serving all ages in a wide geographic area. It is governed by a community-based, volunteer Board of Trustees. The Medical Staff is open to any qualified practitioner that meets credentialing criteria. The hospital is one of the largest employers in the area, tries to hire employees locally and sponsors programs for high school students and others to enter nursing and other medical fields. The hospital promotes a wide number of programs to support the better health of the residents it serves. All of the various community health and educational programs done by or sponsored by Madera Community Hospital are fully discussed in the Community Benefit Report for this year. |
| Schedule H, Part VI, Line 6 | The hospital is a free-standing, community-based, 501(c)(3) organization and is not affiliated with any health system. |
| Schedule H, Part VI, Line 7 | California |

efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135183743

**Schedule J (Form 990)**

Department of the Treasury Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**▶ Attach to Form 990.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Name of the organization
MADERA COMMUNITY HOSPITAL

**Employer identification number**
23-7429117

## Part I Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropiate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel ☐ Housing allowance or residence for personal use<br>☐ Travel for companions ☐ Payments for business use of personal residence<br>☐ Tax idemnification and gross-up payments ☐ Health or social club dues or initiation fees<br>☐ Discretionary spending account ☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☐ Compensation committee ☐ Written employment contract<br>☐ Independent compensation consultant ☐ Compensation survey or study<br>☐ Form 990 of other organizations ☐ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? | **4a** | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | **4b** | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? | **4c** | | No |
| | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? | **5a** | | No |
| **b** | Any related organization? | **5b** | | No |
| | If "Yes," on line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? | **6a** | | No |
| **b** | Any related organization? | **6b** | | No |
| | If "Yes," on line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III | **7** | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III | **8** | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? | **9** | | |

**Part II** **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| **(A)** Name and Title | | **(B)** Breakdown of W-2, 1099-MISC compensation, and/or 1099-NEC | | | **(C)** Retirement and other deferred compensation | **(D)** Nontaxable benefits | **(E)** Total of columns (B)(i)-(D) | **(F)** Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | **(i)** Base compensation | **(ii)** Bonus & incentive compensation | **(iii)** Other reportable compensation | | | | |
| **1** Karen Paolinelli<br>Exec Director/CEO | (i) | 334,673 | 20,127 | 4,868 | 2,900 | 3,536 | 366,104 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **2** Mark J Foote<br>Vice President - Finance | (i) | 217,303 | 13,251 | 3,097 | 2,368 | 3,133 | 239,152 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **3** Mark J Brown<br>Chief Nursing Officer | (i) | 157,457 | 0 | 670 | 0 | 914 | 159,041 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **4** Eva A Singsing<br>Clinical Coordinator, Med/Surg | (i) | 180,898 | 0 | 938 | 1,862 | 4,351 | 188,049 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **5** Colton Lee Pfister<br>Director of Pharmacy | (i) | 175,377 | 1,350 | 259 | 1,787 | 1,721 | 180,494 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **6** Nicole Chan<br>Pharmacist II | (i) | 175,560 | 0 | 0 | 1,841 | 8,492 | 185,893 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **7** Alma Mendoza<br>Pharmacist II | (i) | 174,537 | 0 | 0 | 1,782 | 3,645 | 179,964 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **8** Sophie H Tang<br>Family Nurse Practitioner | (i) | 171,648 | 0 | 0 | 1,731 | 1,413 | 174,792 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## Part III Supplemental Information

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| Schedule J, Part I, Line 3 | The Board of Trustees reviews and approves the salary for the CEO on an annual basis. The Board uses the California Hospital Association Executive Salary Survey when determining the salary for the CEO. |

efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135183743

**Schedule L (Form 990)**

Department of the Treasury Internal Revenue Service

# Transactions with Interested Persons

▶ **Complete if the organization answered "Yes" on Form 990, Part IV, lines 25a, 25b, 26, 27, 28a, 28b, or 28c, or Form 990-EZ, Part V, line 38a or 40b.**
▶ **Attach to Form 990 or Form 990-EZ.**
▶ **Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Name of the organization
MADERA COMMUNITY HOSPITAL

**Employer identification number**
23-7429117

**Part I** **Excess Benefit Transactions** (section 501(c)(3), section 501(c)(4), and section 501(c)(29) organizations only).
Complete if the organization answered "Yes" on Form 990, Part IV, line 25a or 25b, or Form 990-EZ, Part V, line 40b.

| 1 (a) Name of disqualified person | (b) Relationship between disqualified person and organization | (c) Description of transaction | (d) Corrected? Yes | No |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

2 Enter the amount of tax incurred by the organization managers or disqualified persons during the year under section 4958. . . . ▶ $

3 Enter the amount of tax, if any, on line 2, above, reimbursed by the organization . . . ▶ $

**Part II** **Loans to and/or From Interested Persons.**
Complete if the organization answered "Yes" on Form 990-EZ, Part V, line 38a, or Form 990, Part IV, line 26; or if the organization reported an amount on Form 990, Part X, line 5, 6, or 22

| (a) Name of interested person | (b) Relationship with organization | (c) Purpose of loan | (d) Loan to or from the organization? | | (e) Original principal amount | (f) Balance due | (g) In default? | | (h) Approved by board or committee? | | (i) Written agreement? | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | To | From | | | Yes | No | Yes | No | Yes | No |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **Total** | | | | ▶ $ | | | | | | | | |

**Part III** **Grants or Assistance Benefiting Interested Persons.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 27.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of assistance | (d) Type of assistance | (e) Purpose of assistance |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## Part IV Business Transactions Involving Interested Persons.

Complete if the organization answered "Yes" on Form 990, Part IV, line 28a, 28b, or 28c.

| **(a)** Name of interested person | **(b)** Relationship between interested person and the organization | **(c)** Amount of transaction | **(d)** Description of transaction | **(e)** Sharing of organization's revenues? | |
|---|---|---|---|---|---|
| | | | | **Yes** | **No** |
| (1) Creative Copy | Family Member of Owner | 31,695 | Printing Services | | No |
| (2) Pistoresi Ambulance | Owner, Board Member | 74,273 | Ambulance Services | | No |
| (3) Aftab Naz | Board Member | 17,700 | Physican Services | | No |
| (4) Kanwal Singh | Board Member | 201,653 | Physician Services | | No |
| | | | | | |
| | | | | | |

## Part V Supplemental Information

Provide additional information for responses to questions on Schedule L (see instructions).

| Return Reference | Explanation |
|---|---|

efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135183743

**SCHEDULE O (Form 990)**

Department of the Treasury Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**

**▶ Attach to Form 990 or 990-EZ.**

**▶ Go to *www.irs.gov/Form990* for the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Name of the organization
MADERA COMMUNITY HOSPITAL

**Employer identification number**
23-7429117

| Return Reference | Explanation |
|---|---|
| Form 990, Part VI, Section B, Line 11b | The Staff Accountant prepares the draft of the Form 990 and Related Schedules and submits them to the Accounting Manager for review. The Chief Financial Officer completes Schedule H and assists in answering the questions related to the governance of the organization. All financial information is tied back to the Audited Financial Statements. The Accounting Manager submits the final draft of the Form 990 and Related Schedules to the Chief Financial Officer for review. The Chief Financial Officer reviews the final draft of the Form 990 and Related Schedules before it is filed. |
| Form 990, Part VI, Section B, Line 12c | For any conflicts of interest or complaints of such, an investigation is conducted by the Human Resources Department, Compliance Officer or the Board of Trustees. Depending upon the outcome of the investigation, re-education, training and counseling are conducted as necessary. |
| Form 990, Part VI, Section B, Line 15 | Each officer or key employee receives a written performance evaluation on an annual basis. All rate changes are made in accordance with the hospital's wage and salary plan. The hospital uses the California Hospital Association Executive Salary Survey in setting the annual compensation rates. The CEO is reviewed by a Board of Trustees Committee annually. The VP-Finance/CFO, Chief Operating Officer and Chief Nursing Officer are reviewed annually by the CEO. |
| Form 990, Part VI, Section C, Line 19 | The Audited Financial Statements and the Form 990 are available upon request in the Hospital's Administration office during normal business hours. They are also part of the information that is available to the public on the California Office of Statewide Health and Planning Department website. The Conflict of Interest policy and the Governing documents are currently not available for public inspection. |
| Form 990, Part IX, Line 11g | 1 |

efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135183743

**SCHEDULE R (Form 990)**

Department of the Treasury
Internal Revenue Service

# Related Organizations and Unrelated Partnerships

**▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.**
**▶ Attach to Form 990.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Name of the organization
MADERA COMMUNITY HOSPITAL

**Employer identification number**
23-7429117

**Part I** **Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II** **Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)**Madera Community Hospital Foundation<br>1250 E Almond Avenue<br><br>Madera, CA 93637<br>94-2514197 | Fundraising | CA | 501(c)(3) | 7 | N/A | | No |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Part III** **Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV** **Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

## Part V Transactions With Related Organizations.

Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

**Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule.

| | | Line | Yes | No |
|---|---|---|---|---|
| **1** | During the tax year, did the orgranization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** | Receipt of **(i)** interest, **(ii)** annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | 1a | | No |
| **b** | Gift, grant, or capital contribution to related organization(s) | 1b | | No |
| **c** | Gift, grant, or capital contribution from related organization(s) | 1c | Yes | |
| **d** | Loans or loan guarantees to or for related organization(s) | 1d | | No |
| **e** | Loans or loan guarantees by related organization(s) | 1e | | No |
| **f** | Dividends from related organization(s) | 1f | | No |
| **g** | Sale of assets to related organization(s) | 1g | | No |
| **h** | Purchase of assets from related organization(s) | 1h | | No |
| **i** | Exchange of assets with related organization(s) | 1i | | No |
| **j** | Lease of facilities, equipment, or other assets to related organization(s) | 1j | | No |
| **k** | Lease of facilities, equipment, or other assets from related organization(s) | 1k | | No |
| **l** | Performance of services or membership or fundraising solicitations for related organization(s) | 1l | | No |
| **m** | Performance of services or membership or fundraising solicitations by related organization(s) | 1m | | No |
| **n** | Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | 1n | | No |
| **o** | Sharing of paid employees with related organization(s) | 1o | Yes | |
| **p** | Reimbursement paid to related organization(s) for expenses | 1p | | No |
| **q** | Reimbursement paid by related organization(s) for expenses | 1q | | No |
| **r** | Other transfer of cash or property to related organization(s) | 1r | | No |
| **s** | Other transfer of cash or property from related organization(s) | 1s | | No |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| (a) Name of related organization | (b) Transaction type (a-s) | (c) Amount involved | (d) Method of determining amount involved |
|---|---|---|---|
| **(1)** Madera Community Hospital Foundation | c | 60,547 | cash |
| **(2)** Madera Community Hospital Foundation | o | 29,407 | Payroll Record |
| | | | |
| | | | |
| | | | |
| | | | |

**Part VI** **Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| (a) Name, address, and EIN of entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (e) Are all partners section 501(c)(3) organizations? | | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Yes | No | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Schedule R (Form 990) 2021 Page 5

## Part VII Supplemental Information

Provide additional information for responses to questions on Schedule R. See instructions.

| Return Reference | Explanation |
| --- | --- |

Schedule R (Form 990) 2021

| efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135183743 |
|---|---|---|

**Name:** MADERA COMMUNITY HOSPITAL

**EIN:** 23-7429117

**Software ID:** 21013178

**Software Version:** v1.00

**Explanation:** We received an approved Extension of Time to File an Exempt Organization Return on Notice Number CP211A dated October 31, 2022.

TAB 5

Form **990**

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

▶ Do not enter social security numbers on this form as it may be made public.

▶ **Go to www.irs.gov/Form990 for instructions and the latest information.**

Department of the Treasury Internal Revenue Service

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

**A For the 2021 calendar year, or tax year beginning 01-01-2022 , and ending 12-31-2022**

B Check if applicable:
- ☐ Address change
- ☐ Name change
- ☐ Initial return
- ☐ Final return/terminated
- ☐ Amended return
- ☐ Application pending

C Name of organization
COMMUNITY HEALTH SYSTEMS INC

Doing business as

Number and street (or P.O. box if mail is not delivered to street address) 21801 ALESSANDRO BLVD | Room/suite

City or town, state or province, country, and ZIP or foreign postal code
MORENO VALLEY, CA 925538551

**D Employer identification number**
33-0056551

E Telephone number
(951) 571-2300

G Gross receipts $ 32,270,645

F Name and address of principal officer:
LORI HOLEMAN
21801 ALESSANDRO BLVD
MORENO VALLEY, CA 925538551

H(a) Is this a group return for subordinates? ☐ Yes ☑ No
H(b) Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.
H(c) Group exemption number ▶

I Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

J **Website:** ▶ WWW.CHSICA.ORG

K Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other ▶

L Year of formation: 1984 | M State of legal domicile: CA

## Part I Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities:
TO IMPROVE AND STRENGTHEN THE HEALTH OF OUR DIVERSE COMMUNITIES BY PROVIDING COMPASSIONATE AND COMPREHENSIVE HEALTH SERVICES.

2 Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | Line | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 9 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 9 |
| 5 | Total number of individuals employed in calendar year 2021 (Part V, line 2a) | 5 | 439 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 9 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7b | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| **Revenue** | | | |
| 8 | Contributions and grants (Part VIII, line 1h) | 17,507,114 | 6,308,263 |
| 9 | Program service revenue (Part VIII, line 2g) | 22,669,171 | 25,950,476 |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 373 | 1,700 |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 227,128 | 10,206 |
| 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 40,403,786 | 32,270,645 |
| **Expenses** | | | |
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 0 | 0 |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 22,878,369 | 26,103,010 |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| b | Total fundraising expenses (Part IX, column (D), line 25) ▶0 | | |
| 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 8,423,758 | 8,790,966 |
| 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 31,302,127 | 34,893,976 |
| 19 | Revenue less expenses. Subtract line 18 from line 12 | 9,101,659 | -2,623,331 |

| **Net Assets or Fund Balances** | | Beginning of Current Year | End of Year |
|---|---|---|---|
| 20 | Total assets (Part X, line 16) | 24,146,972 | 34,129,628 |
| 21 | Total liabilities (Part X, line 26) | 9,847,014 | 22,453,001 |
| 22 | Net assets or fund balances. Subtract line 21 from line 20 | 14,299,958 | 11,676,627 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

**Sign Here**

Signature of officer | Date 2023-09-01

LORI HOLEMAN CEO
Type or print name and title

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| | | 2023-09-01 | | P00748170 |

Firm's name ▶ SINGERLEWAK LLP | Firm's EIN ▶ 95-2302617

Firm's address ▶ 2010 MAIN ST STE 300 IRVINE, CA 92614 | Phone no. (949) 261-8600

May the IRS discuss this return with the preparer shown above? (see instructions) ☑ **Yes** ☐ **No**

**Part III** **Statement of Program Service Accomplishments**

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . ☐

**1** Briefly describe the organization's mission:

TO IMPROVE AND STRENGTHEN THE HEALTH OF OUR DIVERSE COMMUNITIES BY PROVIDING COMPASSIONATE AND COMPREHENSIVE HEALTH SERVICES.

**2** Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code: ) (Expenses $ 26,460,817 including grants of $ ) (Revenue $ 25,960,682 )

COMMUNITY HEALTH SYSTEMS PROVIDED 124,273 MEDICAL, DENTAL, VISION, MENTAL HEALTH, AND OTHER PRIMARY CARE SERVICES, INCLUDING VIRTUAL VISITS, TO INDIVIDUALS IN THE TRI-COUNTY AREA OF SOUTHERN CALIFORNIA. APPROXIMATELY 24,556 PATIENTS WERE SERVED. A MAJORITY OF THOSE PATIENTS WERE LOW-INCOME AND UNDERINSURED WITH LIMITED MEANS FOR PAYMENT.

**4b** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4c** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4d** Other program services (Describe in Schedule O.)

(Expenses $ including grants of $ ) (Revenue $ )

**4e** **Total program service expenses** ▶ 26,460,817

**Part IV Checklist of Required Schedules**

| | | Line | Yes | No |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | **1** | Yes | |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors*? See instructions. | **2** | Yes | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | **3** | | No |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | **4** | | No |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19? *If "Yes," complete Schedule C, Part III* | **5** | | No |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,*Part I | **6** | | No |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | **7** | | No |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III | **8** | | No |
| **9** | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | **9** | | No |
| **10** | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | **10** | | No |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. | **11a** | Yes | |
| **b** | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | **11b** | | No |
| **c** | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | **11c** | | No |
| **d** | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | **11d** | Yes | |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | Yes | |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | **11f** | Yes | |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | **12a** | | No |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | Yes | |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | No |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? | **14a** | | No |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | **14b** | | No |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | **15** | | No |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | **16** | | No |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I.* See instructions. | **17** | | No |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | **18** | | No |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | **19** | | No |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | **20a** | | No |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |
| **21** | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | **21** | | No |

**Part IV Checklist of Required Schedules** *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| **22** | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | **22** | | No |
| **23** | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | **23** | Yes | |
| **24a** | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | **24a** | | No |
| **b** | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | **24b** | | |
| **c** | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | **24c** | | |
| **d** | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | **24d** | | |
| **25a** | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L,* Part I | **25a** | | No |
| **b** | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L,* Part I | **25b** | | No |
| **26** | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | **26** | | No |
| **27** | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L,*Part III | **27** | | No |
| **28** | Was the organization a party to a business transaction with one of the following parties (see the Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| **a** | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | **28a** | | No |
| **b** | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | **28b** | | No |
| **c** | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* | **28c** | | No |
| **29** | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | **29** | | No |
| **30** | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | **30** | | No |
| **31** | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | **31** | | No |
| **32** | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | **32** | | No |
| **33** | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | **33** | | No |
| **34** | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | **34** | | No |
| **35a** | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | **35a** | | No |
| **b** | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | **35b** | | |
| **36** | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | **36** | | No |
| **37** | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | **37** | | No |
| **38** | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. | **38** | Yes | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response or note to any line in this Part V ☐

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| **1a** | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable | **1a** | 16 | | | |
| **b** | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable | **1b** | 0 | | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | | **1c** | Yes | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance** *(continued)*

| Line | Question | Box | Amount | Line | Yes | No |
|---|---|---|---|---|---|---|
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | 2a | 439 | | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file. See instructions. | | | 2b | Yes | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | | | 3a | | No |
| b | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation in Schedule O* | | | 3b | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | | 4a | | No |
| b | If "Yes," enter the name of the foreign country: ▶ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | | 5a | | No |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | 5b | | No |
| c | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | | | 5c | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | | 6a | | No |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | | 6b | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | | 7a | | No |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | | 7b | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | | 7c | | No |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | 7d | | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | | 7e | | |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | | 7f | | |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | | 7g | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | | 7h | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | | 8 | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? | | | 9a | | |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | | 9b | | |
| 10 | **Section 501(c)(7) organizations.** Enter: | | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | 10a | | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | 10b | | | | |
| 11 | **Section 501(c)(12) organizations.** Enter: | | | | | |
| a | Gross income from members or shareholders | 11a | | | | |
| b | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) | 11b | | | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | | 12a | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | 12b | | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O. | | | 13a | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | 13b | | | | |
| c | Enter the amount of reserves on hand | 13c | | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | | | 14a | | No |
| b | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | | 14b | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see the instructions and file Form 4720, Schedule N. | | | 15 | | No |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | | 16 | | No |
| 17 | **Section 501(c)(21) organizations.** Did the trust, any disqualified person, or mine operator engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? If "Yes," complete Form 6069. | | | 17 | | |

Form 990 (2021) Page **6**

**Part VI** **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI . . . . . ☑

**Section A. Governing Body and Management**

| | | Line | Value | Yes | No |
|---|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year | 1a | 9 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent | 1b | 9 | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | 2 | | | No |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | 3 | | | No |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | 4 | | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? | 5 | | | No |
| 6 | Did the organization have members or stockholders? | 6 | | | No |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | 7a | | | No |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | 7b | | | No |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | |
| a | The governing body? | 8a | | Yes | |
| b | Each committee with authority to act on behalf of the governing body? | 8b | | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | 9 | | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | Line | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? | 10a | | No |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | 11a | Yes | |
| b | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | 12a | Yes | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | 12b | Yes | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | 12c | Yes | |
| 13 | Did the organization have a written whistleblower policy? | 13 | Yes | |
| 14 | Did the organization have a written document retention and destruction policy? | 14 | Yes | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official | 15a | Yes | |
| b | Other officers or key employees of the organization | 15b | Yes | |
| | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | 16a | | No |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | 16b | | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed ▶ CA

**18** Section 6104 requires an organization to make its Form 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☑ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
▶ANNIE NGUYEN 21801 ALESSANDRO BLVD MORENO VALLEY, CA 92553 (951) 571-2300

**Part VII Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (box 5 of Form W-2, Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position: Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (1) DR SANJEEV PURI FROM 822<br>CMO (FROM 8/22) | 40.00 | | | X | | | | 306,858 | 0 | 2,188 |
| (2) LORI HOLEMAN<br>CEO | 40.00 | | | X | | | | 261,382 | 0 | 31,098 |
| (3) ANNIE NGUYEN<br>CFO | 40.00 | | | X | | | | 207,308 | 0 | 30,047 |
| (4) DENIS VEGA TAPIA<br>COO | 40.00 | | | X | | | | 192,750 | 0 | 28,940 |
| (5) MAHDI HEMATIAN-ASHRAFIAN<br>CMO (UNTIL 8/22) | 40.00 | | | X | | | | 176,373 | 0 | 20,028 |
| (6) DR GEORGE SOLIMAN<br>FAMILY PRACTICE PHYSICIAN | 40.00 | | | | | X | | 295,658 | 0 | 28,009 |
| (7) DR CALVIN LAMBERT HALL<br>FAMILY PRACTICE PHYSICIAN | 40.00 | | | | | X | | 289,000 | 0 | 27,903 |
| (8) DR GORAN CVIJANOVIC<br>PHYSICIAN | 40.00 | | | | | X | | 292,053 | 0 | 16,475 |
| (9) DR SHEILA LOHARUKA<br>INTERNAL MEDICINE PHYSICIA | 40.00 | | | | | X | | 243,379 | 0 | 13,928 |
| (10) STANLEY YU<br>PEDIATRICIAN | 40.00 | | | | | X | | 229,885 | 0 | 9,519 |
| (11) JONNATHAN BARAJAS<br>CHAIR | 1.50 | X | | X | | | | 0 | 0 | 0 |
| (12) KIMBERLY JIMENEZ<br>VICE CHAIR | 1.00 | X | | X | | | | 0 | 0 | 0 |
| (13) OSCAR ULRIC JONES<br>TREASURER | 1.00 | X | | X | | | | 0 | 0 | 0 |
| (14) JENNIFER DOBROWOLSKY<br>SECRETARY | 1.00 | X | | X | | | | 0 | 0 | 0 |
| (15) DRAYMOND CRAWFORD<br>BOARD MEMBER | 0.75 | X | | | | | | 0 | 0 | 0 |
| (16) DENISE CULBERSON<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| (17) AMIR SADEGHIAN<br>BOARD MEMBER | 0.75 | X | | | | | | 0 | 0 | 0 |

**Part VII** **Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position: Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (18) ALLISON MONTERROSA<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| (19) VERONICA HERNANDEZ<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| | (D) | (E) | (F) |
|---|---|---|---|
| **1b Sub-Total** ▶ | | | |
| **c Total from continuation sheets to Part VII, Section A** ▶ | | | |
| **d Total (add lines 1b and 1c)** ▶ | 2,494,646 | 0 | 208,135 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 24

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* | 3 | | No |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* | 4 | Yes | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization?*If "Yes," complete Schedule J for such person* | 5 | | No |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ 0

**Part VIII** **Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII . . . ☐

| | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| **Contributions, gifts, grants, and other similar amounts** | | | | | | |
| 1a Federated campaigns | 1a | | | | | |
| b Membership dues | 1b | | | | | |
| c Fundraising events | 1c | | | | | |
| d Related organizations | 1d | | | | | |
| e Government grants (contributions) | 1e | 5,288,328 | | | | |
| f All other contributions, gifts, grants, and similar amounts not included above | 1f | 1,019,935 | | | | |
| g Noncash contributions included in lines 1a - 1f:$ | 1g | | | | | |
| h **Total.** Add lines 1a-1f ▶ | | | 6,308,263 | | | |
| **Program Service Revenue** | | Business Code | | | | |
| 2a PATIENT SERVICE REVENU | | 621990 | 25,950,476 | 25,950,476 | | |
| b | | | | | | |
| c | | | | | | |
| d | | | | | | |
| e | | | | | | |
| f All other program service revenue. | | | | | | |
| g **Total.** Add lines 2a–2f. ▶ | | | 25,950,476 | | | |
| **Other Revenue** | | | | | | |
| 3 Investment income (including dividends, interest, and other similar amounts) ▶ | | | 1,700 | | | 1,700 |
| 4 Income from investment of tax-exempt bond proceeds ▶ | | | | | | |
| 5 Royalties ▶ | | | | | | |
| | | (i) Real | (ii) Personal | | | |
| 6a Gross rents | 6a | | | | | |
| b Less: rental expenses | 6b | | | | | |
| c Rental income or (loss) | 6c | | | | | |
| d Net rental income or (loss) ▶ | | | | | | |
| | | (i) Securities | (ii) Other | | | |
| 7a Gross amount from sales of assets other than inventory | 7a | | | | | |
| b Less: cost or other basis and sales expenses | 7b | | | | | |
| c Gain or (loss) | 7c | | | | | |
| d Net gain or (loss) ▶ | | | | | | |
| 8a Gross income from fundraising events (not including $ ____ of contributions reported on line 1c). See Part IV, line 18 | 8a | | | | | |
| b Less: direct expenses | 8b | | | | | |
| c Net income or (loss) from fundraising events ▶ | | | | | | |
| 9a Gross income from gaming activities. See Part IV, line 19 | 9a | | | | | |
| b Less: direct expenses | 9b | | | | | |
| c Net income or (loss) from gaming activities ▶ | | | | | | |
| 10a Gross sales of inventory, less returns and allowances | 10a | | | | | |
| b Less: cost of goods sold | 10b | | | | | |
| c Net income or (loss) from sales of inventory ▶ | | | | | | |
| Miscellaneous Revenue | | Business Code | | | | |
| 11a OTHER INCOME | | 621990 | 10,206 | 10,206 | | |
| b | | | | | | |
| c | | | | | | |
| d All other revenue | | | | | | |
| e **Total.** Add lines 11a–11d ▶ | | | 10,206 | | | |
| 12 **Total revenue.** See instructions ▶ | | | 32,270,645 | 25,960,682 | 0 | 1,700 |

**Part IX Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . ☐

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| 1 Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | | | | |
| 2 Grants and other assistance to domestic individuals. See Part IV, line 22 | | | | |
| 3 Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. | | | | |
| 4 Benefits paid to or for members | | | | |
| 5 Compensation of current officers, directors, trustees, and key employees | 1,256,971 | 505,446 | 751,525 | |
| 6 Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| 7 Other salaries and wages | 20,652,484 | 16,553,782 | 4,098,702 | |
| 8 Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | | | | |
| 9 Other employee benefits | 2,489,374 | 1,774,500 | 714,874 | |
| 10 Payroll taxes | 1,704,181 | 1,332,774 | 371,407 | |
| 11 Fees for services (non-employees): | | | | |
| a Management | | | | |
| b Legal | 9,339 | | 9,339 | |
| c Accounting | 72,910 | | 72,910 | |
| d Lobbying | | | | |
| e Professional fundraising services. See Part IV, line 17 | | | | |
| f Investment management fees | | | | |
| g Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 1,979,980 | 1,748,279 | 231,701 | |
| 12 Advertising and promotion | | | | |
| 13 Office expenses | 1,139,167 | 663,325 | 475,842 | |
| 14 Information technology | 706,843 | 19,784 | 687,059 | |
| 15 Royalties | | | | |
| 16 Occupancy | 2,134,495 | 1,655,596 | 478,899 | |
| 17 Travel | 92,646 | 25,870 | 66,776 | |
| 18 Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| 19 Conferences, conventions, and meetings | 102,560 | 18,422 | 84,138 | |
| 20 Interest | 286,265 | 286,265 | | |
| 21 Payments to affiliates | | | | |
| 22 Depreciation, depletion, and amortization | 635,612 | 452,627 | 182,985 | |
| 23 Insurance | 386,398 | 264,082 | 122,316 | |
| 24 Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| a MEDICAL SUPPLIES | 1,078,940 | 1,078,702 | 238 | |
| b DUES AND SUBSCRIPTIONS | 138,328 | 54,073 | 84,255 | |
| c REPAIRS AND MAINTENANCE | 27,483 | 27,290 | 193 | |
| d | | | | |
| e All other expenses | | | | |
| 25 **Total functional expenses.** Add lines 1 through 24e | 34,893,976 | 26,460,817 | 8,433,159 | 0 |
| 26 **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

**Part X Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . . . . ☐

| | | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|---|
| Assets | 1 | Cash–non-interest-bearing | | 4,137,361 | 1 | 1,928,864 |
| | 2 | Savings and temporary cash investments | | | 2 | |
| | 3 | Pledges and grants receivable, net | | 6,657,295 | 3 | 3,565,324 |
| | 4 | Accounts receivable, net | | 2,379,110 | 4 | 1,426,091 |
| | 5 | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | 5 | |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | | 6 | |
| | 7 | Notes and loans receivable, net | | | 7 | |
| | 8 | Inventories for sale or use | | | 8 | |
| | 9 | Prepaid expenses and deferred charges | | 324,693 | 9 | 893,680 |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | 10a 19,186,032 | | | |
| | b | Less: accumulated depreciation | 10b 8,756,930 | 10,528,801 | 10c | 10,429,102 |
| | 11 | Investments—publicly traded securities | | | 11 | |
| | 12 | Investments—other securities. See Part IV, line 11 | | | 12 | 1,201,536 |
| | 13 | Investments—program-related. See Part IV, line 11 | | | 13 | |
| | 14 | Intangible assets | | | 14 | |
| | 15 | Other assets. See Part IV, line 11 | | 119,712 | 15 | 14,685,031 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) | | 24,146,972 | 16 | 34,129,628 |
| Liabilities | 17 | Accounts payable and accrued expenses | | 3,909,235 | 17 | 2,578,349 |
| | 18 | Grants payable | | | 18 | |
| | 19 | Deferred revenue | | | 19 | |
| | 20 | Tax-exempt bond liabilities | | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | 5,865,773 | 23 | 5,446,912 |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | | 72,006 | 25 | 14,427,740 |
| | 26 | **Total liabilities.** Add lines 17 through 25 | | 9,847,014 | 26 | 22,453,001 |
| Net Assets or Fund Balances | | **Organizations that follow FASB ASC 958, check here ▶ ☑ and complete lines 27, 28, 32, and 33.** | | | | |
| | 27 | Net assets without donor restrictions | | 8,148,130 | 27 | 8,692,875 |
| | 28 | Net assets with donor restrictions | | 6,151,828 | 28 | 2,983,752 |
| | | **Organizations that do not follow FASB ASC 958, check here ▶ ☐ and complete lines 29 through 33.** | | | | |
| | 29 | Capital stock or trust principal, or current funds | | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund | | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds | | | 31 | |
| | 32 | Total net assets or fund balances | | 14,299,958 | 32 | 11,676,627 |
| | 33 | Total liabilities and net assets/fund balances | | 24,146,972 | 33 | 34,129,628 |

## Part XI Reconcilliation of Net Assets

Check if Schedule O contains a response or note to any line in this Part XI ☐

| Line | Description | Line | Amount |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 32,270,645 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | 2 | 34,893,976 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | 3 | -2,623,331 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) | 4 | 14,299,958 |
| 5 | Net unrealized gains (losses) on investments | 5 | |
| 6 | Donated services and use of facilities | 6 | |
| 7 | Investment expenses | 7 | |
| 8 | Prior period adjustments | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | 0 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | 10 | 11,676,627 |

## Part XII Financial Statements and Reporting

Check if Schedule O contains a response or note to any line in this Part XII ☑

| | Question | Line | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash ☑ Accrual ☐ Other ______<br>If the organization changed its method of accounting from a prior year or checked "Other," explain on Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | 2a | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? | 2b | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☑ Consolidated basis ☐ Both consolidated and separate basis | | | |
| c | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | 2c | Yes | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | 3a | Yes | |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | 3b | Yes | |

efile GRAPHIC print | Submission Date - 2023-10-05 | DLN: 93493278008493

**SCHEDULE A (Form 990)**

Department of the Treasury Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**
**▶ Attach to Form 990 or Form 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2022**

**Open to Public Inspection**

**Name of the organization**
COMMUNITY HEALTH SYSTEMS INC

**Employer identification number**
33-0056551

## Part I Reason for Public Charity Status (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☐ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☑ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)**. (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

g Provide the following information about the supported organization(s).

| **(i)** Name of supported organization | **(ii)** EIN | **(iii)** Type of organization (described on lines 1- 10 above (see instructions)) | **(iv)** Is the organization listed in your governing document? | | **(v)** Amount of monetary support (see instructions) | **(vi)** Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | **Yes** | **No** | | |
| | | | | | | |
| | | | | | | |
| **Total** | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 11285F **Schedule A (Form 990) 2022**

**Part II** **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2018 | (b) 2019 | (c) 2020 | (d) 2021 | (e) 2022 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") | 6,701,325 | 6,828,716 | 9,002,113 | 17,507,114 | 6,308,263 | 46,347,531 |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| 4 **Total.** Add lines 1 through 3 | 6,701,325 | 6,828,716 | 9,002,113 | 17,507,114 | 6,308,263 | 46,347,531 |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) | | | | | | |
| 6 **Public support.** Subtract line 5 from line 4. | | | | | | 46,347,531 |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2018 | (b) 2019 | (c) 2020 | (d) 2021 | (e) 2022 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4 | 6,701,325 | 6,828,716 | 9,002,113 | 17,507,114 | 6,308,263 | 46,347,531 |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources | 32,323 | 4,819 | 107 | 373 | 1,700 | 39,322 |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on | | | | | | |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | 16,894 | 39,464 | 73,253 | 227,128 | 10,206 | 366,945 |
| 11 **Total support.** Add lines 7 through 10 | | | | | | 46,753,798 |

12 Gross receipts from related activities, etc. (see instructions) . . . 12 | 100,979,454

13 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

14 Public support percentage for 2022 (line 6, column (f) divided by line 11, column (f)) . . . 14 | 99.130 %

15 Public support percentage for 2020 Schedule A, Part II, line 14 . . . 15 | 97.840 %

16a **33 1/3% support test—2022.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . ▶ ☑

b **33 1/3% support test—2021.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . ▶ ☐

17a **10%-facts-and-circumstances test—2022.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . ▶ ☐

b **10%-facts-and-circumstances test—2021.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . ▶ ☐

**Part III** **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2018 | **(b)** 2019 | **(c)** 2020 | **(d)** 2021 | **(e)** 2022 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| **c** Add lines 7a and 7b. | | | | | | |
| **8** **Public support.** (Subtract line 7c from line 6.) | | | | | | |

**Section B. Total Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2018 | **(b)** 2019 | **(c)** 2020 | **(d)** 2021 | **(e)** 2022 | **(f)** Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6. | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| **c** Add lines 10a and 10b. | | | | | | |
| **11** Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on. | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12.). | | | | | | |

**14** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

| | | | |
|---|---|---|---|
| **15** | Public support percentage for 2022 (line 8, column (f) divided by line 13, column (f)) | **15** | |
| **16** | Public support percentage from 2021 Schedule A, Part III, line 15 | **16** | |

**Section D. Computation of Investment Income Percentage**

| | | | |
|---|---|---|---|
| **17** | Investment income percentage for **2022** (line 10c, column (f) divided by line 13, column (f)) | **17** | |
| **18** | Investment income percentage from **2021** Schedule A, Part III, line 17 | **18** | |

**19a** **33 1/3% support tests-2022.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . ▶ ☐

**b** **33 1/3% support tests—2021.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . ▶ ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . ▶ ☐

**Part IV** **Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | Line | Yes | No |
|---|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in* ***Part VI*** *how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in* ***Part VI*** *how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in* ***Part VI*** *when and how the organization made the determination.* | **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in* ***Part VI*** *what controls the organization put in place to ensure such use.* | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in* ***Part VI*** *how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in* ***Part VI*** *what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in* ***Part VI,*** *including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in* ***Part VI.*** | **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990) .* | **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in* ***Part VI.*** | **9a** | | |
| **b** | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in* ***Part VI.*** | **9b** | | |
| **c** | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in* ***Part VI.*** | **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | **10b** | | |

**Part IV Supporting Organizations** (continued)

| | | | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | **11a** | | |
| **b** | A family member of a person described on 11a above? | **11b** | | |
| **c** | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in* ***Part VI****.* | **11c** | | |

**Section B. Type I Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in* ***Part VI*** *how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in* ***Part VI*** *how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | **2** | | |

**Section C. Type II Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in* ***Part VI*** *how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** | | |

**Section D. All Type III Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in* ***Part VI*** *how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** | | |
| **3** | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in* ***Part VI*** *the role the organization's supported organizations played in this regard.* | **3** | | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

**1** Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

- **a** ☐ The organization satisfied the Activities Test. Complete **line 2** below.
- **b** ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.
- **c** ☐ The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

**2** Activities Test. **Answer lines 2a and 2b below.**

| | | | Yes | No |
|---|---|---|---|---|
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in* ***Part VI identify those supported organizations and explain*** *how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** | | |
| **b** | Did the activities described on line 2a, above constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in* ***Part VI*** *the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** | | |
| **3** | Parent of Supported Organizations. **Answer lines 3a and 3b below.** | | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations?*If "Yes" or "No", provide details in* ***Part VI.*** | **3a** | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in* ***Part VI.*** *the role played by the organization in this regard.* | **3b** | | |

**Part V Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations**

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 (*explain in* ***Part VI***). **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| | **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | 1 | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| e | **Discount** claimed for blockage or other factors (*explain in detail in* ***Part VI***): | | | |
| 2 | Acquisition indebtedness applicable to non-exempt use assets | 2 | | |
| 3 | Subtract line 2 from line 1d | 3 | | |
| 4 | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | 4 | | |
| 5 | Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| 6 | Multiply line 5 by 0.035 | 6 | | |
| 7 | Recoveries of prior-year distributions | 7 | | |
| 8 | **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |

| | **Section C - Distributable Amount** | | | Current Year |
|---|---|---|---|---|
| 1 | Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | | |
| 2 | Enter 85% of line 1 | 2 | | |
| 3 | Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | | |
| 4 | Enter greater of line 2 or line 3 | 4 | | |
| 5 | Income tax imposed in prior year | 5 | | |
| 6 | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | | |

7 ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Part V** **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** (continued)

| **Section D - Distributions** | | **Current Year** |
|---|---|---|
| **1** Amounts paid to supported organizations to accomplish exempt purposes | **1** | |
| **2** Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | **2** | |
| **3** Administrative expenses paid to accomplish exempt purposes of supported organizations | **3** | |
| **4** Amounts paid to acquire exempt-use assets | **4** | |
| **5** Qualified set-aside amounts (*prior IRS approval required - provide details in* ***Part VI***) | **5** | |
| **6** Other distributions (*describe in* ***Part VI***). See instructions | **6** | |
| **7** **Total annual distributions.** Add lines 1 through 6. | **7** | |
| **8** Distributions to attentive supported organizations to which the organization is responsive (*provide details in* ***Part VI***). See instructions | **8** | |
| **9** Distributable amount for 2022 from Section C, line 6 | **9** | |
| **10** Line 8 amount divided by Line 9 amount | **10** | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** **Excess Distributions** | **(ii)** **Underdistributions Pre-2022** | **(iii)** **Distributable Amount for 2022** |
|---|---|---|---|
| **1** Distributable amount for 2022 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2022 (reasonable cause required-- *explain in* ***Part VI***). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2022: | | | |
| **a** From 2017. . . . . . . . | | | |
| **b** From 2018. . . . . . . . | | | |
| **c** From 2019. . . . . . . . | | | |
| **d** From 2020. . . . . . . . | | | |
| **e** From 2021. . . . . . . . | | | |
| **f** **Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2022 distributable amount | | | |
| **i** Carryover from 2017 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** Distributions for 2022 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2022 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2022, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **6** Remaining underdistributions for 2022. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **7** **Excess distributions carryover to 2023.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2018. . . . . . | | | |
| **b** Excess from 2019. . . . . . | | | |
| **c** Excess from 2020. . . . . . | | | |
| **d** Excess from 2021. . . . . . | | | |
| **e** Excess from 2022. . . . . . | | | |

**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions).

**Facts And Circumstances Test**

| Return Reference | Explanation |
|---|---|
| PART II, LINE 10: | OTHER INCOME INCLUDES: INSURANCE REFUND, TAX REFUND, AND PRIOR PAID INVOICE CANCELLATION BY VENDOR. |

| efile GRAPHIC print | Submission Date - 2023-10-05 | DLN: 93493278008493 |
|---|---|---|

**SCHEDULE D (Form 990)**

Department of the Treasury Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

**Name of the organization**
COMMUNITY HEALTH SYSTEMS INC

**Employer identification number**
33-0056551

## Part I Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.
Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

## Part II Conservation Easements.
Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)
☐ Preservation of an historically important land area
☐ Protection of natural habitat
☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ ______

4 Number of states where property subject to conservation easement is located ▶ ______

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ ______

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $ ______

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

## Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 ▶ $ ______

(ii) Assets included in Form 990, Part X ▶ $ ______

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 ▶ $ ______

b Assets included in Form 990, Part X ▶ $ ______

**Part III** **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

**3** Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

**a** ☐ Public exhibition
**b** ☐ Scholarly research
**c** ☐ Preservation for future generations
**d** ☐ Loan or exchange programs
**e** ☐ Other ..........

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?. . . ☐ **Yes** ☐ **No**

**Part IV** **Escrow and Custodial Arrangements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| **c** Beginning balance | **1c** | |
| **d** Additions during the year | **1d** | |
| **e** Distributions during the year | **1e** | |
| **f** Ending balance | **1f** | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V** **Endowment Funds.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance | | | | | |
| **b** Contributions | | | | | |
| **c** Net investment earnings, gains, and losses | | | | | |
| **d** Grants or scholarships | | | | | |
| **e** Other expenditures for facilities and programs | | | | | |
| **f** Administrative expenses | | | | | |
| **g** End of year balance | | | | | |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a** Board designated or quasi-endowment ▶ ..........

**b** Permanent endowment ▶ ..........

**c** Term endowment ▶ ..........

The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| **(i)** Unrelated organizations | **3a(i)** | | |
| **(ii)** Related organizations | **3a(ii)** | | |
| **b** If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? | **3b** | | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI** **Land, Buildings, and Equipment.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land | | 230,000 | | 230,000 |
| **b** Buildings | | 4,549,720 | 1,479,820 | 3,069,900 |
| **c** Leasehold improvements | | 9,979,659 | 3,893,117 | 6,086,542 |
| **d** Equipment | | 2,474,624 | 2,015,025 | 459,599 |
| **e** Other | | 1,952,029 | 1,368,968 | 583,061 |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* ▶ | | | | 10,429,102 |

**Part VII Investments - Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b.See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives | | |
| (2) Closely-held equity interests | | |
| (3)Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| Total. *(Column (b) must equal Form 990, Part X, col. (B) line 12.)* ▶ | | |

**Part VIII Investments - Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| Total. *(Column (b) must equal Form 990, Part X, col.(B) line 13.)* ▶ | | |

**Part IX Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1)SECURITY DEPOSITS | 365,712 |
| (2)RIGHT-OF-USE ASSETS | 14,319,319 |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| Total. *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* ▶ | 14,685,031 |

**Part X Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| 1. (a) Description of liability | (b) Book value |
|---|---|
| (1) Federal income taxes | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| Total. *(Column (b) must equal Form 990, Part X, col.(B) line 25.)* ▶ | 14,427,740 |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☑

**Part XI** **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | 35,426,815 |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains (losses) on investments | 2a | | | |
| b | Donated services and use of facilities | 2b | | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | 3,168,076 | | |
| e | Add lines **2a** through **2d** | | | 2e | 3,168,076 |
| 3 | Subtract line **2e** from line **1** | | | 3 | 32,258,739 |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | 11,906 | | |
| c | Add lines **4a** and **4b** | | | 4c | 11,906 |
| 5 | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) | | | 5 | 32,270,645 |

**Part XII** **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | 1 | 34,607,711 |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | 2a | | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | 0 |
| 3 | Subtract line **2e** from line **1** | | | 3 | 34,607,711 |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | 286,265 | | |
| c | Add lines **4a** and **4b** | | | 4c | 286,265 |
| 5 | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) | | | 5 | 34,893,976 |

**Part XIII** **Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| PART X, LINE 2: | THE ORGANIZATION HAS BEEN DESIGNATED AS TAX-EXEMPT UNDER INTERNAL REVENUE CODE SECTION 501(C)(3) AND IS ALSO EXEMPT FROM STATE FRANCHISE TAXES UNDER SECTION 23701(D) OF THE CALIFORNIA REVENUE AND TAXATION CODE AND IS NOT GENERALLY SUBJECT TO FEDERAL OR STATE INCOME TAXES. HOWEVER, THE ORGANIZATION IS SUBJECT TO INCOME TAXES ON ANY NET INCOME THAT IS DERIVED FROM A TRADE OR BUSINESS, REGULARLY CARRIED ON, AND NOT IN FURTHERANCE OF THE PURPOSES FOR WHICH IT WAS GRANTED EXEMPTION. NO INCOME TAX PROVISION HAS BEEN RECORDED AS THE NET INCOME, IF ANY, FROM ANY UNRELATED TRADE OR BUSINESS, IN THE OPINION OF MANAGEMENT, IS NOT MATERIAL TO THE BASIC FINANCIAL STATEMENTS TAKEN AS A WHOLE. DEFERRED TAXES ARE PROVIDED ON A LIABILITY METHOD WHEREBY DEFERRED TAX ASSETS ARE RECOGNIZED FOR DEDUCTIBLE TEMPORARY DIFFERENCES AND DEFERRED TAX LIABILITIES ARE RECOGNIZED FOR TAXABLE TEMPORARY DIFFERENCES. TEMPORARY DIFFERENCES ARE THE DIFFERENCES BETWEEN THE REPORTED AMOUNTS OF ASSETS AND LIABILITIES AND THEIR TAX BASES. DEFERRED TAX ASSETS ARE REDUCED BY A VALUATION ALLOWANCE WHEN, IN THE OPINION OF MANAGEMENT, IT IS MORE LIKELY THAN NOT THAT SOME PORTION OF ALL OF THE DEFERRED TAX ASSETS WILL NOT BE REALIZED. DEFERRED TAX ASSETS AND LIABILITIES ARE ADJUSTED FOR THE EFFECTS OF CHANGES IN TAX LAWS AND RATES ON THE DATE OF ENACTMENT. THERE ARE NO DEFERRED TAX ASSETS OR LIABILITIES AS OF DECEMBER 31, 2022. THE ORGANIZATION WILL RECOGNIZE THE IMPACT OF TAX POSITIONS IN THE FINANCIAL STATEMENTS IF THAT POSITION IS MORE LIKELY THAN NOT OF BEING SUSTAINED ON AUDIT, BASED ON THE TECHNICAL MERITS OF THE POSITION. TO DATE, THE ORGANIZATION HAS NOT RECORDED ANY UNCERTAIN TAX POSITIONS. THE ORGANIZATION RECOGNIZES POTENTIAL ACCRUED INTEREST AND PENALTIES RELATED TO UNCERTAIN TAX POSITIONS IN INCOME TAX EXPENSE. DURING THE YEAR ENDED DECEMBER 31, 2022, THE ORGANIZATION DID NOT RECOGNIZE ANY AMOUNT IN POTENTIAL INTEREST AND PENALTIES ASSOCIATED WITH UNCERTAIN TAX POSITIONS. THE FOLLOWING TABLE SUMMARIZES THE OPEN TAX YEARS FOR EACH MAJOR JURISDICTION: JURISDICTION OPEN TAX YEAR FEDERAL 2019 - 2022 STATE 2018 - 2022 |
| PART XI, LINE 2D - OTHER ADJUSTMENTS: | CHANGES IN TEMPORARILY RESTRICTED NET ASSETS 3,168,076. |
| PART XI, LINE 4B - OTHER ADJUSTMENTS: | OTHER INCOME 10,206. RENTAL INCOME INTEREST INCOME 164. INVESTMENT INCOME 1,536. |
| PART XII, LINE 4B - OTHER ADJUSTMENTS: | INTEREST EXPENSE 286,265. |

efile GRAPHIC print | Submission Date - 2023-10-05 | DLN: 93493278008493

**Schedule J (Form 990)**

Department of the Treasury Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**▶ Attach to Form 990.**
**▶ Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2022**

**Open to Public Inspection**

Name of the organization
COMMUNITY HEALTH SYSTEMS INC

**Employer identification number**
33-0056551

## Part I Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropiate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel ☐ Housing allowance or residence for personal use<br>☐ Travel for companions ☐ Payments for business use of personal residence<br>☐ Tax idemnification and gross-up payments ☐ Health or social club dues or initiation fees<br>☐ Discretionary spending account ☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain . . . . . . | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? . . . . . | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☑ Compensation committee ☑ Written employment contract<br>☐ Independent compensation consultant ☑ Compensation survey or study<br>☐ Form 990 of other organizations ☑ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? . . . . . . . . . . . . . . . . | **4a** | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? . . . . . . . . . . | **4b** | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? . . . . . . . . . . | **4c** | | No |
| | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . . . . . . . | **5a** | | No |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . . . . . . . | **5b** | | No |
| | If "Yes," on line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . . . . . | **6a** | | No |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . . . . . . | **6b** | | No |
| | If "Yes," on line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III . . . . . . . . . . . . | **7** | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III . . . . . . . . . . . . . . . . . . . . . . . . . . | **8** | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? . . . . . . . . . . . . . . . . . . . . . . . . . . | **9** | | |

**Part II** **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| **(A)** Name and Title | | **(B)** Breakdown of W-2, 1099-MISC compensation, and/or 1099-NEC | | | **(C)** Retirement and other deferred compensation | **(D)** Nontaxable benefits | **(E)** Total of columns (B)(i)-(D) | **(F)** Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | **(i)** Base compensation | **(ii)** Bonus & incentive compensation | **(iii)** Other reportable compensation | | | | |
| **1**DR SANJEEV PURI FROM 822<br>CMO (FROM 8/22) | (i) | 306,858 | 0 | 0 | 0 | 2,188 | 309,046 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **2**LORI HOLEMAN<br>CEO | (i) | 261,382 | 0 | 0 | 0 | 31,098 | 292,480 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **3**ANNIE NGUYEN<br>CFO | (i) | 207,308 | 0 | 0 | 0 | 30,047 | 237,355 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **4**DENIS VEGA TAPIA<br>COO | (i) | 192,750 | 0 | 0 | 0 | 28,940 | 221,690 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **5**MAHDI HEMATIAN-ASHRAFIAN<br>CMO (UNTIL 8/22) | (i) | 176,373 | 0 | 0 | 0 | 20,028 | 196,401 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **6**DR GEORGE SOLIMAN<br>FAMILY PRACTICE PHYSICIAN | (i) | 295,658 | 0 | 0 | 0 | 28,009 | 323,667 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **7**DR CALVIN LAMBERT HALL<br>FAMILY PRACTICE PHYSICIAN | (i) | 289,000 | 0 | 0 | 0 | 27,903 | 316,903 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **8**DR GORAN CVIJANOVIC<br>PHYSICIAN | (i) | 292,053 | 0 | 0 | 0 | 16,475 | 308,528 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **9**DR SHEILA LOHARUKA<br>INTERNAL MEDICINE PHYSICIA | (i) | 243,379 | 0 | 0 | 0 | 13,928 | 257,307 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **10**STANLEY YU<br>PEDIATRICIAN | (i) | 229,885 | 0 | 0 | 0 | 9,519 | 239,404 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

Schedule J (Form 990) 2022 Page 3

## Part III Supplemental Information

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
| --- | --- |

Schedule J (Form 990) 2022

efile GRAPHIC print | Submission Date - 2023-10-05 | DLN: 93493278008493

**SCHEDULE O (Form 990)**

Department of the Treasury Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**▶ Attach to Form 990 or 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Name of the organization
COMMUNITY HEALTH SYSTEMS INC

**Employer identification number**
33-0056551

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION B, LINE 11B | A DRAFT COPY OF FORM 990 (INCLUDING ALL PERTINENT SCHEDULES) WAS PROVIDED TO THE ORGANIZATION'S FINANCE COMMITTEE TO REVIEW AND APPROVE BEFORE IT WAS FILED WITH THE INTERNAL REVENUE SERVICE. A COPY WAS ALSO PROVIDED TO THE BOARD OF DIRECTORS. |
| FORM 990, PART VI, SECTION B, LINE 12C | THE ORGANIZATION HAS A REPORTING CHAIN FOR ADMINISTRATION AND CLINICAL POLICIES. POLICIES ARE ADDRESSED AT THE LOWEST LEVEL POSSIBLE AND ISSUES ARE RAISED UP THROUGH THE REPORTING CHAIN AS NEEDED. |
| FORM 990, PART VI, SECTION B, LINE 15 | TO DETERMINE THE COMPENSATION OF THE ORGANIZATION'S CHIEF EXECUTIVE OFFICER, THE HUMAN RESOURCES DEPARTMENT RESEARCHES COMPARABILITY DATA FOR THE SALARY ANALYSIS; THE HUMAN RESOURCES DIRECTOR MAKES A RECOMMENDATION TO THE BOARD OF DIRECTORS AND THE BOARD VOTES ON THAT RECOMMENDATION. THIS PROCESS IS DOCUMENTED IN THE MEETING MINUTES. |
| FORM 990, PART VI, SECTION C, LINE 18 | THE ORGANIZATION MAKES ITS FORM 1023 AND 990 AVAILABLE TO THE PUBLIC UPON REQUEST IN THE CORPORATE OFFICE IN MORENO VALLEY AND ON GUIDESTAR.ORG. |
| FORM 990, PART VI, SECTION C, LINE 19 | THE ORGANIZATION MAKES THE GOVERNING DOCUMENTS, CONFLICT OF INTEREST POLICY, AND FINANCIAL STATEMENTS AVAILABLE TO THE PUBLIC UPON REQUEST FOR VIEWING IN THE CORPORATE OFFICE IN MORENO VALLEY. IN ADDITION, UPON REQUEST, THE FINANCIAL STATEMENTS ARE PROVIDED TO VARIOUS FUNDING AGENCIES AS REQUIRED. |
| FORM 990, PART XI, LINE 2C: | THE ORGANIZATION HAS A FINANCE COMMITTEE THAT ASSUMES RESPONSIBILTY FOR OVERSIGHT OF THE AUDIT OF ITS FINANCIAL STATEMENTS AND SELECTION OF AN INDEPENDENT ACCOUNTANT. THIS PROCESS HAS NOT CHANGED FROM PRIOR YEAR. |
| FORM 990, PART I, LINE 8: | THE LARGE REDUCTION IN THE CONTRIBUTIONS/GRANTS BETWEEN PRIOR YEAR AND CURRENT YEAR IS DUE IN GREAT PART TO THE SBA PPP LOAN AMOUNT OF $3,500,000 IN 2021. |

TAB 6

Form **990**

Department of the Treasury Internal Revenue Service

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

▶ Do not enter social security numbers on this form as it may be made public.

▶ **Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**A For the 2020 calendar year, or tax year beginning 07-01-2020 , and ending 06-30-2021**

B Check if applicable:
☐ Address change
☐ Name change
☐ Initial return
☐ Final return/terminated
☐ Amended return
☐ Application pending

C Name of organization
SAN GORGONIO MEMORIAL HOSPITAL

Doing business as

Number and street (or P.O. box if mail is not delivered to street address) 600 NORTH HIGHLAND SPRINGS AVENUE | Room/suite

City or town, state or province, country, and ZIP or foreign postal code
BANNING, CA 92220

**D Employer identification number**
33-0420041

E Telephone number
(951) 845-1121

G Gross receipts $ 71,265,024

F Name and address of principal officer:
STEVE BARRON
600 NORTH HIGHLAND SPRINGS AVENUE
BANNING, CA 92220

H(a) Is this a group return for subordinates? ☐ Yes ☑ No
H(b) Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. (see instructions)
H(c) Group exemption number ▶

I Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

J **Website:** ▶ WWW.SGMH.ORG

K Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other ▶

L Year of formation: 1991 | M State of legal domicile: CA

## Part I Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities:
SAN GORGONIO MEMORIAL HOSPITAL IS A NONPROFIT PUBLIC BENEFIT CORPORATION FORMED FOR THE PURPOSE OF OPERATING THE SAN GORGONIO ACUTE CARE FACILITY.

2 Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 12 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 12 |
| 5 | Total number of individuals employed in calendar year 2020 (Part V, line 2a) | 5 | 794 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 30 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, line 39 | 7b | 0 |

| | | Prior Year | Current Year |
|---|---|---|---|
| **Revenue** | | | |
| 8 | Contributions and grants (Part VIII, line 1h) | 7,551,296 | 3,875,065 |
| 9 | Program service revenue (Part VIII, line 2g) | 59,200,817 | 66,337,763 |
| 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 0 | 0 |
| 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 1,416,472 | 1,052,196 |
| 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 68,168,585 | 71,265,024 |
| **Expenses** | | | |
| 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 0 | 0 |
| 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 46,283,180 | 48,143,759 |
| 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 0 | 0 |
| b | Total fundraising expenses (Part IX, column (D), line 25) ▶107,930 | | |
| 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 27,934,847 | 43,785,608 |
| 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 74,218,027 | 91,929,367 |
| 19 | Revenue less expenses. Subtract line 18 from line 12 | -6,049,442 | -20,664,343 |
| **Net Assets or Fund Balances** | | **Beginning of Current Year** | **End of Year** |
| 20 | Total assets (Part X, line 16) | 31,092,395 | 13,082,135 |
| 21 | Total liabilities (Part X, line 26) | 32,964,888 | 35,618,971 |
| 22 | Net assets or fund balances. Subtract line 21 from line 20 | -1,872,493 | -22,536,836 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

**Sign Here**

▶ Signature of officer — Date 2022-05-06

▶ STEVE BARRON CEO
Type or print name and title

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| | | 2022-05-06 | | P00096513 |

Firm's name ▶ WIPFLI LLP — Firm's EIN ▶ 39-0758449

Firm's address ▶ PO BOX 12237, GREEN BAY, WI 543072237 — Phone no. (920) 662-0016

May the IRS discuss this return with the preparer shown above? (see instructions) ☑ Yes ☐ No

**Part III** **Statement of Program Service Accomplishments**

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . ☐

**1** Briefly describe the organization's mission:

SAN GORGONIO MEMORIAL HOSPITAL IS A NONPROFIT PUBLIC BENEFIT CORPORATION FORMED FOR THE PURPOSE OF OPERATING THE SAN GORGONIO ACUTE CARE FACILITY.

**2** Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code: ) (Expenses $ 74,215,485 including grants of $ ) (Revenue $ 66,337,763 )

THE HOSPITAL IS COMPRISED OF AN ACUTE CARE FACILITY WHICH PROVIDES HEALTHCARE SERVICES. THE HOSPITAL PROVIDED 39,678 VISITS AND PROVIDED 11,008 DAYS OF CARE DURING THE FISCAL YEAR. THE HOSPITAL PROVIDES CARE TO PERSONS COVERED BY GOVERNMENTAL PROGRAMS AT AN AMOUNT BELOW COST, AND PROVIDES CARE TO INDIVIDUALS WHO ARE UNABLE TO PAY. THE UNREIMBURSED VALUE OF PROVIDING CHARITY $496,340 AND UNCOMPENSATED CARE $618,402 TOTALED $1,114,742. UNPAID MEDICAL PROGRAM CHARGES WERE $35,601,331. UNPAID MEDICARE PROGRAM CHARGES FOR THE FISCAL YEAR WERE $84,842,724. TOTAL QUANTIFIABLE COMMUNITY BENEFITS WERE $120,444,055.

**4b** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4c** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4d** Other program services (Describe in Schedule O.)
(Expenses $ including grants of $ ) (Revenue $ )

**4e** **Total program service expenses** ▶ 74,215,485

## Part IV Checklist of Required Schedules

| | | Line | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | 1 | Yes | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? | 2 | Yes | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | 3 | | No |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | 4 | | No |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* | 5 | | No |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,* Part I | 6 | | No |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | 7 | | No |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III | 8 | | No |
| 9 | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | 9 | | No |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | 10 | | No |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. | 11a | | No |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | 11b | | No |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | 11c | | No |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | 11d | | No |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | 11e | Yes | |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | 11f | | No |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | 12a | | No |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | 12b | Yes | |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | 13 | | No |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | 14a | | No |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | 14b | | No |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | 15 | | No |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | 16 | | No |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I*(see instructions) | 17 | | No |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | 18 | | No |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | 19 | | No |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | 20a | Yes | |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | 20b | Yes | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | 21 | | No |

**Part IV Checklist of Required Schedules** *(continued)*

| | | Line | Yes | No |
|---|---|---|---|---|
| **22** | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | | No |
| **23** | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | Yes | |
| **24a** | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | 24a | | No |
| **b** | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| **c** | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| **d** | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| **25a** | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L,* Part I | 25a | | No |
| **b** | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L,* Part I | 25b | | No |
| **26** | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | 26 | | No |
| **27** | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L,*Part III | 27 | | No |
| **28** | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| **a** | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | 28a | | No |
| **b** | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | 28b | | No |
| **c** | A 35% controlled entity of one or more individuals and/or organizations described in lines 28a or 28b? *If "Yes," complete Schedule L, Part IV* | 28c | | No |
| **29** | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | No |
| **30** | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | No |
| **31** | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | No |
| **32** | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | No |
| **33** | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | No |
| **34** | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | Yes | |
| **35a** | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | No |
| **b** | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | | |
| **36** | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | No |
| **37** | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | No |
| **38** | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. | 38 | Yes | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response or note to any line in this Part V ☐

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable | 1a | 196 | | |
| **b** | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable | 1b | 0 | | |
| **c** | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | 1c | | | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance** *(continued)*

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | 2a | 794 | | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | | | 2b | Yes | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | | | 3a | | No |
| b | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation in Schedule O* | | | 3b | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | | 4a | | No |
| b | If "Yes," enter the name of the foreign country: ▶ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | | 5a | | No |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | 5b | | No |
| c | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | | | 5c | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | | 6a | | No |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | | 6b | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | | 7a | | No |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | | 7b | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | | 7c | | No |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | 7d | | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | | 7e | | No |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | | 7f | | No |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | | 7g | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | | 7h | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | | 8 | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? | | | 9a | | |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | | 9b | | |
| 10 | **Section 501(c)(7) organizations.** Enter: | | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | 10a | | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | 10b | | | | |
| 11 | **Section 501(c)(12) organizations.** Enter: | | | | | |
| a | Gross income from members or shareholders | 11a | | | | |
| b | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) | 11b | | | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | | 12a | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | 12b | | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O. | | | 13a | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | 13b | | | | |
| c | Enter the amount of reserves on hand | 13c | | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | | | 14a | | No |
| b | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | | 14b | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see instructions and file Form 4720, Schedule N. | | | 15 | | No |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | | 16 | | No |

**Part VI Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . . . ☑

**Section A. Governing Body and Management**

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year | **1a** 12 | | |
| | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | |
| **b** | Enter the number of voting members included in line 1a, above, who are independent | **1b** 12 | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | **2** | | No |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | **3** | | No |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | **4** | Yes | |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? | **5** | | No |
| **6** | Did the organization have members or stockholders? | **6** | | No |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | **7a** | | No |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | **7b** | | No |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | |
| **a** | The governing body? | **8a** | Yes | |
| **b** | Each committee with authority to act on behalf of the governing body? | **8b** | Yes | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | **9** | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? | **10a** | | No |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | **11a** | | No |
| **b** | Describe in Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | **12a** | Yes | |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | **12b** | Yes | |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* | **12c** | Yes | |
| **13** | Did the organization have a written whistleblower policy? | **13** | Yes | |
| **14** | Did the organization have a written document retention and destruction policy? | **14** | Yes | |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** | The organization's CEO, Executive Director, or top management official | **15a** | Yes | |
| **b** | Other officers or key employees of the organization | **15b** | Yes | |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | **16a** | | No |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | **16b** | | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed ▶ CA

**18** Section 6104 requires an organization to make its Form 1023 (or 1024-A if applicable), 990, and 990-T (501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☑ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
▶MARGARET KAMMER CONTROLLER 600 NORTH HIGHLAND SPRINGS AVE BANNING, CA 92220 (951) 769-2118

**Part VII** **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position: Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (1) SUSAN DIBIASI<br>CHAIRPERSON | 5.00 | X | | X | | | | 2,900 | 0 | 0 |
| (2) EHREN NGO<br>TREASURER | 5.00 | X | | X | | | | 1,100 | 0 | 0 |
| (3) RON RADER<br>SECRETARY | 5.00 | X | | X | | | | 2,500 | 0 | 0 |
| (4) STEVEN RUTLEDGE<br>VICE CHAIR | 5.00 | X | | X | | | | 2,000 | 0 | 0 |
| (5) ESTELLE LEWIS<br>BOARD MEMBER THRU 12/5/20 | 3.00 | X | | | | | | 0 | 0 | 0 |
| (6) LYNN BALDI<br>BOARD MEMBER THRU 8/1/20 | 3.00 | X | | | | | | 100 | 0 | 0 |
| (7) DENNIS TANKERSLEY<br>BOARD MEMBER | 3.00 | X | | | | | | 0 | 0 | 0 |
| (8) PHILIP CAPOBIANCO III<br>BOARD MEMBER | 3.00 | X | | | | | | 0 | 0 | 0 |
| (9) ANDREW GARDNER<br>BOARD MEMBER THRU 6/30/21 | 3.00 | X | | | | | | 0 | 0 | 0 |
| (10) LANNY SWERDLOW<br>BOARD MEMBER THRU 9/22/20 | 3.00 | X | | | | | | 600 | 0 | 0 |
| (11) HOWARD KATZ<br>BOARD MEMBER | 3.00 | X | | | | | | 0 | 0 | 0 |
| (12) JOEL LABAH<br>BOARD MEMBER | 3.00 | X | | | | | | 0 | 0 | 0 |
| (13) STEVE BARRON<br>CHIEF EXECUTIVE OFFICER | 40.00 | | | X | | | | 524,133 | 0 | 26,202 |
| (14) DAVID RECCUPERO<br>CHIEF FINANCIAL OFFICER THRU 7/1/20 | 40.00 | | | X | | | | 285,013 | 0 | 14,251 |
| (15) PATRICIA BROWN<br>CHIEF OPERATING OFFICER | 40.00 | | | X | | | | 254,571 | 0 | 12,724 |
| (16) ANNAH KARAM<br>CHIEF OF HUMAN RESOURCES | 40.00 | | | | | X | | 199,018 | 0 | 9,946 |
| (17) HOLLY YONEMOTO<br>CHIEF FINANCIAL OFFICER THRU 3/11/2021 | 40.00 | | | | | X | | 236,554 | 0 | 11,823 |

**Part VII Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position: Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (18) ANNA KAMPANARTSANYAKORN<br>REGISTERED NURSE | 40.00 | | | | | X | | 214,082 | 0 | 10,687 |
| (19) JOSE LOPEZ<br>DIRECTOR OF PHARMACY | 40.00 | | | | | X | | 197,960 | 0 | 9,893 |
| (20) JOSE RUIZ<br>PHARMACIST | 40.00 | | | | | X | | 198,937 | 0 | 9,929 |

| | (D) | (E) | (F) |
|---|---|---|---|
| **1b Sub-Total** ▶ | | | |
| **c Total from continuation sheets to Part VII, Section A** ▶ | | | |
| **d Total (add lines 1b and 1c)** ▶ | 2,119,468 | 0 | 105,455 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 97

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* | 3 | | No |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* | 4 | Yes | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* | 5 | | No |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| ALLSCRIPTS HEALTHCARE LLC<br><br>24630 NETWORK PL<br>CHICAGO, IL 606731246 | EHR SUPPORT AND REVENUE MANAGEMENT | 1,401,796 |
| CARDINAL HEALTH PHARMACY<br><br>PO BOX 56412<br>LOS ANGELES, CA 90074 | PHARMACUTICAL SUPPLIES | 1,340,833 |
| OWENS AND MINOR<br><br>9120 LOCKWOOD BLVD<br>MECHANICSVILLE, VA 23116 | MEDICAL AND SMALL SUPPLIES | 689,671 |
| MCKESSON MEDICAL-SURGICAL<br><br>PO BOX 51020<br>LOS ANGELES, CA 90005 | MEDICAL SUPPLIES | 498,096 |
| JACKSON & COKER HOLDINGS LLC<br><br>PO BOX 277638<br>ATLANTA, GA 303847638 | ANESHTESIAL LOCUM-TENENS | 429,228 |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ 44

Case 23-10787-JKS Doc 303-1 Filed 02/29/24 Page 209 of 327

**Part VIII Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII . . . ☐

| Line | Description | Business Code / Sub-line | Amount | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | | | | | | | |
| 1a | Federated campaigns | 1a | | | | | |
| b | Membership dues | 1b | | | | | |
| c | Fundraising events | 1c | | | | | |
| d | Related organizations | 1d | 8,667 | | | | |
| e | Government grants (contributions) | 1e | 2,800,425 | | | | |
| f | All other contributions, gifts, grants, and similar amounts not included above | 1f | 1,065,973 | | | | |
| g | Noncash contributions included in lines 1a - 1f:$ | 1g | | | | | |
| h | **Total.** Add lines 1a-1f ▶ | | | 3,875,065 | | | |
| **Program Service Revenue** | | Business Code | | | | | |
| 2a | NET PATIENT SERVICE REVENUE | 621110 | | 66,337,763 | 66,337,763 | | |
| b | | | | | | | |
| c | | | | | | | |
| d | | | | | | | |
| e | | | | | | | |
| f | All other program service revenue. | | | | | | |
| g | **Total.** Add lines 2a–2f. ▶ | | | 66,337,763 | | | |
| **Other Revenue** | | | | | | | |
| 3 | Investment income (including dividends, interest, and other similar amounts) ▶ | | | | | | |
| 4 | Income from investment of tax-exempt bond proceeds ▶ | | | | | | |
| 5 | Royalties ▶ | | | | | | |
| | | | (i) Real / (ii) Personal | | | | |
| 6a | Gross rents | 6a | | | | | |
| b | Less: rental expenses | 6b | | | | | |
| c | Rental income or (loss) | 6c | | | | | |
| d | Net rental income or (loss) ▶ | | | | | | |
| | | | (i) Securities / (ii) Other | | | | |
| 7a | Gross amount from sales of assets other than inventory | 7a | | | | | |
| b | Less: cost or other basis and sales expenses | 7b | | | | | |
| c | Gain or (loss) | 7c | | | | | |
| d | Net gain or (loss) ▶ | | | | | | |
| 8a | Gross income from fundraising events (not including $ ____ of contributions reported on line 1c). See Part IV, line 18 | 8a | | | | | |
| b | Less: direct expenses | 8b | | | | | |
| c | Net income or (loss) from fundraising events ▶ | | | | | | |
| 9a | Gross income from gaming activities. See Part IV, line 19 | 9a | | | | | |
| b | Less: direct expenses | 9b | | | | | |
| c | Net income or (loss) from gaming activities ▶ | | | | | | |
| 10a | Gross sales of inventory, less returns and allowances | 10a | | | | | |
| b | Less: cost of goods sold | 10b | | | | | |
| c | Net income or (loss) from sales of inventory ▶ | | | | | | |
| | Miscellaneous Revenue | Business Code | | | | | |
| 11a | CAFETERIA SALES | 722514 | | 1,052,196 | | | 1,052,196 |
| b | | | | | | | |
| c | | | | | | | |
| d | All other revenue | | | | | | |
| e | **Total.** Add lines 11a–11d ▶ | | | 1,052,196 | | | |
| 12 | **Total revenue.** See instructions ▶ | | | 71,265,024 | 66,337,763 | 0 | 1,052,196 |

**Part IX Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . ☑

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| 1 Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | | | | |
| 2 Grants and other assistance to domestic individuals. See Part IV, line 22 | | | | |
| 3 Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. | | | | |
| 4 Benefits paid to or for members | | | | |
| 5 Compensation of current officers, directors, trustees, and key employees | 1,126,094 | | 1,126,094 | |
| 6 Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| 7 Other salaries and wages | 36,676,293 | 28,427,795 | 8,178,813 | 69,685 |
| 8 Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | | | | |
| 9 Other employee benefits | 7,520,842 | 5,829,405 | 1,677,147 | 14,290 |
| 10 Payroll taxes | 2,820,530 | 2,119,421 | 695,914 | 5,195 |
| 11 Fees for services (non-employees): | | | | |
| a Management | 3,000 | | 3,000 | |
| b Legal | 767,567 | | 767,567 | |
| c Accounting | 98,599 | | 98,599 | |
| d Lobbying | | | | |
| e Professional fundraising services. See Part IV, line 17 | | | | |
| f Investment management fees | | | | |
| g Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 9,873,716 | 7,653,117 | 2,201,839 | 18,760 |
| 12 Advertising and promotion | 27,278 | | 27,278 | |
| 13 Office expenses | 1,440,744 | 1,224,632 | 216,112 | |
| 14 Information technology | 2,812,281 | 2,390,439 | 421,842 | |
| 15 Royalties | | | | |
| 16 Occupancy | 2,203,761 | 1,873,197 | 330,564 | |
| 17 Travel | 231,198 | 92,479 | 138,719 | |
| 18 Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| 19 Conferences, conventions, and meetings | 154,169 | 46,251 | 107,918 | |
| 20 Interest | 314,009 | | 314,009 | |
| 21 Payments to affiliates | | | | |
| 22 Depreciation, depletion, and amortization | | | | |
| 23 Insurance | 1,328,202 | 1,248,510 | 79,692 | |
| 24 Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| a BAD DEBT | 9,892,737 | 9,892,737 | | |
| b MEDICAL SUPPLIES | 8,392,663 | 8,392,663 | | |
| c ALL OTHER EXPENSES | 3,027,725 | 2,573,566 | 454,159 | |
| d REPAIRS & MAINTENANCE | 1,583,952 | 1,346,359 | 237,593 | |
| e All other expenses | 1,634,007 | 1,104,914 | 529,093 | |
| 25 **Total functional expenses.** Add lines 1 through 24e | 91,929,367 | 74,215,485 | 17,605,952 | 107,930 |
| 26 **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

**Part X Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . . . . ☐

| | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|
| Assets | 1 | Cash–non-interest-bearing | 9,384,115 | 1 | 1,628,250 |
| | 2 | Savings and temporary cash investments | 9,663 | 2 | 11,801 |
| | 3 | Pledges and grants receivable, net | 1,231,918 | 3 | 957,337 |
| | 4 | Accounts receivable, net | 7,088,594 | 4 | 8,135,514 |
| | 5 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | 5 | |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | 6 | |
| | 7 | Notes and loans receivable, net | | 7 | |
| | 8 | Inventories for sale or use | 1,789,075 | 8 | 1,776,554 |
| | 9 | Prepaid expenses and deferred charges | 215,763 | 9 | 21,485 |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D — 10a | | | |
| | b | Less: accumulated depreciation — 10b | | 10c | |
| | 11 | Investments—publicly traded securities | | 11 | |
| | 12 | Investments—other securities. See Part IV, line 11 | | 12 | |
| | 13 | Investments—program-related. See Part IV, line 11 | | 13 | |
| | 14 | Intangible assets | | 14 | |
| | 15 | Other assets. See Part IV, line 11 | 11,373,267 | 15 | 551,194 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) | 31,092,395 | 16 | 13,082,135 |
| Liabilities | 17 | Accounts payable and accrued expenses | 21,636,576 | 17 | 33,498,394 |
| | 18 | Grants payable | | 18 | |
| | 19 | Deferred revenue | 2,577,690 | 19 | 1,718,319 |
| | 20 | Tax-exempt bond liabilities | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | 6,000,000 | 23 | 0 |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | 2,750,622 | 25 | 402,258 |
| | 26 | **Total liabilities.** Add lines 17 through 25 | 32,964,888 | 26 | 35,618,971 |
| Net Assets or Fund Balances | | **Organizations that follow FASB ASC 958, check here ▶ ☑ and complete lines 27, 28, 32, and 33.** | | | |
| | 27 | Net assets without donor restrictions | -1,872,493 | 27 | -22,536,836 |
| | 28 | Net assets with donor restrictions | | 28 | |
| | | **Organizations that do not follow FASB ASC 958, check here ▶ ☐ and complete lines 29 through 33.** | | | |
| | 29 | Capital stock or trust principal, or current funds | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds | | 31 | |
| | 32 | Total net assets or fund balances | -1,872,493 | 32 | -22,536,836 |
| | 33 | Total liabilities and net assets/fund balances | 31,092,395 | 33 | 13,082,135 |

## Part XI Reconcilliation of Net Assets

Check if Schedule O contains a response or note to any line in this Part XI . . . ☐

| | | Line | Amount |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 71,265,024 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | 2 | 91,929,367 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | 3 | -20,664,343 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) | 4 | -1,872,493 |
| 5 | Net unrealized gains (losses) on investments | 5 | |
| 6 | Donated services and use of facilities | 6 | |
| 7 | Investment expenses | 7 | |
| 8 | Prior period adjustments | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | 0 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | 10 | -22,536,836 |

## Part XII Financial Statements and Reporting

Check if Schedule O contains a response or note to any line in this Part XII . . . ☑

| | | Line | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash ☑ Accrual ☐ Other ______<br>If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | 2a | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? | 2b | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☑ Consolidated basis ☐ Both consolidated and separate basis | | | |
| c | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | 2c | Yes | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | 3a | | No |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | 3b | | |

| efile GRAPHIC print | Submission Date - 2022-05-11 | DLN: 93493131027352 |
|---|---|---|

**SCHEDULE A (Form 990 or 990EZ)**

Department of the Treasury Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**

**▶ Attach to Form 990 or Form 990-EZ.**

**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**Name of the organization**
SAN GORGONIO MEMORIAL HOSPITAL

**Employer identification number**
33-0420041

**Part I Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990 or 990-EZ).)

3 ☑ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)**. (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box in lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

g Provide the following information about the supported organization(s).

| (i) Name of supported organization | (ii) EIN | (iii) Type of organization (described on lines 1- 10 above (see instructions)) | (iv) Is the organization listed in your governing document? | | (v) Amount of monetary support (see instructions) | (vi) Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | Yes | No | | |
| | | | | | | |
| | | | | | | |
| Total | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 11285F **Schedule A (Form 990 or 990-EZ) 2020**

**Part II** **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** 2020 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") | | | | | | |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| **4** **Total.** Add lines 1 through 3 | | | | | | |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f). | | | | | | |
| **6** **Public support.** Subtract line 5 from line 4. | | | | | | |

**Section B. Total Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** 2020 | **(f)** Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4. | | | | | | |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on. | | | | | | |
| **10** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). | | | | | | |
| **11** **Total support.** Add lines 7 through 10 | | | | | | |

**12** Gross receipts from related activities, etc. (see instructions) . . . . . **12**

**13** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

**14** Public support percentage for 2020 (line 6, column (f) divided by line 11, column (f)) . . . . . **14**

**15** Public support percentage for 2019 Schedule A, Part II, line 14 . . . . . **15**

**16a** **33 1/3% support test—2020.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**b** **33 1/3% support test—2019.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**17a** **10%-facts-and-circumstances test—2020.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**b** **10%-facts-and-circumstances test—2019.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**18** **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . . ▶ ☐

**Part III** **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

## Section A. Public Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2016 | (b) 2017 | (c) 2018 | (d) 2019 | (e) 2020 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . | | | | | | |
| 2 Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| 3 Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . . | | | | | | |
| 4 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | |
| 5 The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| 6 **Total.** Add lines 1 through 5 | | | | | | |
| 7a Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| b Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| c Add lines 7a and 7b. . | | | | | | |
| 8 **Public support.** (Subtract line 7c from line 6.) | | | | | | |

## Section B. Total Support

| Calendar year (or fiscal year beginning in) ▶ | (a) 2016 | (b) 2017 | (c) 2018 | (d) 2019 | (e) 2020 | (f) Total |
|---|---|---|---|---|---|---|
| 9 Amounts from line 6. . . | | | | | | |
| 10a Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| b Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| c Add lines 10a and 10b. | | | | | | |
| 11 Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on. | | | | | | |
| 12 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| 13 **Total support.** (Add lines 9, 10c, 11, and 12.). . | | | | | | |

14 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

## Section C. Computation of Public Support Percentage

15 Public support percentage for 2020 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . | 15 |

16 Public support percentage from 2019 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . . | 16 |

## Section D. Computation of Investment Income Percentage

17 Investment income percentage for **2020** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | 17 |

18 Investment income percentage from **2019** Schedule A, Part III, line 17 . . . . . . . . . . . . . . | 18 |

19a **33 1/3% support tests—2020.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . ▶ ☐

b **33 1/3% support tests—2019.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☐

20 **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐

**Part IV** **Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination.* | **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use.* | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in **Part VI,** including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI.*** | **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ)* . | **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ).* | **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI.*** | **9a** | | |
| **b** | Did one or more disqualified persons (as defined in line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI.*** | **9b** | | |
| **c** | Did a disqualified person (as defined in line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI.*** | **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | **10b** | | |

**Part IV** **Supporting Organizations** (continued)

| | | | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described in lines 11b and 11c below, the governing body of a supported organization? | **11a** | | |
| **b** | A family member of a person described in 11a above? | **11b** | | |
| **c** | A 35% controlled entity of a person described in line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in **Part VI**.* | **11c** | | |

**Section B. Type I Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in **Part VI** how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | **2** | | |

**Section C. Type II Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in **Part VI** how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** | | |

**Section D. All Type III Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in **Part VI** how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** | | |
| **3** | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in **Part VI** the role the organization's supported organizations played in this regard.* | **3** | | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

**1** Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

**a** ☐ The organization satisfied the Activities Test. Complete **line 2** below.

**b** ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.

**c** ☐ The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

**2** Activities Test. **Answer lines 2a and 2b below.**

| | | | Yes | No |
|---|---|---|---|---|
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in **Part VI identify those supported organizations and explain** how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** | | |
| **b** | Did the activities described in line 2a constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in **Part VI** the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** | | |
| **3** | Parent of Supported Organizations. **Answer lines 3a and 3b below.** | | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations?*If "Yes" or "No" provide details in **Part VI.*** | **3a** | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in **Part VI.** the role played by the organization in this regard.* | **3b** | | |

## Part V Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations

**1** ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 *(explain in **Part VI**)*. **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| | **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| **1** | Net short-term capital gain | **1** | | |
| **2** | Recoveries of prior-year distributions | **2** | | |
| **3** | Other gross income (see instructions) | **3** | | |
| **4** | Add lines 1 through 3 | **4** | | |
| **5** | Depreciation and depletion | **5** | | |
| **6** | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | **6** | | |
| **7** | Other expenses (see instructions) | **7** | | |
| **8** | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | **8** | | |

| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| **1** | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | **1** | | |
| **a** | Average monthly value of securities | **1a** | | |
| **b** | Average monthly cash balances | **1b** | | |
| **c** | Fair market value of other non-exempt-use assets | **1c** | | |
| **d** | **Total** (add lines 1a, 1b, and 1c) | **1d** | | |
| **e** | **Discount** claimed for blockage or other factors (*explain in detail in **Part VI***): | | | |
| **2** | Acquisition indebtedness applicable to non-exempt use assets | **2** | | |
| **3** | Subtract line 2 from line 1d | **3** | | |
| **4** | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | **4** | | |
| **5** | Net value of non-exempt-use assets (subtract line 4 from line 3) | **5** | | |
| **6** | Multiply line 5 by 0.035 | **6** | | |
| **7** | Recoveries of prior-year distributions | **7** | | |
| **8** | **Minimum Asset Amount** (add line 7 to line 6) | **8** | | |

| | **Section C - Distributable Amount** | | | Current Year |
|---|---|---|---|---|
| **1** | Adjusted net income for prior year (from Section A, line 8, Column A) | **1** | | |
| **2** | Enter 85% of line 1 | **2** | | |
| **3** | Minimum asset amount for prior year (from Section B, line 8, Column A) | **3** | | |
| **4** | Enter greater of line 2 or line 3 | **4** | | |
| **5** | Income tax imposed in prior year | **5** | | |
| **6** | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | **6** | | |

**7** ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Part V** **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** (continued)

| **Section D - Distributions** | | **Current Year** |
|---|---|---|
| **1** Amounts paid to supported organizations to accomplish exempt purposes | **1** | |
| **2** Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | **2** | |
| **3** Administrative expenses paid to accomplish exempt purposes of supported organizations | **3** | |
| **4** Amounts paid to acquire exempt-use assets | **4** | |
| **5** Qualified set-aside amounts (*prior IRS approval required - provide details in* ***Part VI***) | **5** | |
| **6** Other distributions (*describe in* ***Part VI***). See instructions | **6** | |
| **7** **Total annual distributions.** Add lines 1 through 6. | **7** | |
| **8** Distributions to attentive supported organizations to which the organization is responsive (*provide details in* ***Part VI***). See instructions | **8** | |
| **9** Distributable amount for 2020 from Section C, line 6 | **9** | |
| **10** Line 8 amount divided by Line 9 amount | **10** | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** **Excess Distributions** | **(ii)** **Underdistributions Pre-2020** | **(iii)** **Distributable Amount for 2020** |
|---|---|---|---|
| **1** Distributable amount for 2020 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2020 (reasonable cause required-- *explain in* ***Part VI***). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2020: | | | |
| **a** From 2015. . . . . . . . | | | |
| **b** From 2016. . . . . . . . | | | |
| **c** From 2017. . . . . . . . | | | |
| **d** From 2018. . . . . . . . | | | |
| **e** From 2019. . . . . . . . | | | |
| **f** **Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2020 distributable amount | | | |
| **i** Carryover from 2015 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** Distributions for 2020 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2020 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2020, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **6** Remaining underdistributions for 2020. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **7** **Excess distributions carryover to 2021.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2016. . . . . | | | |
| **b** Excess from 2017. . . . . | | | |
| **c** Excess from 2018. . . . . | | | |
| **d** Excess from 2019. . . . . | | | |
| **e** Excess from 2020. . . . . | | | |

**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions).

| **Facts And Circumstances Test** |
| --- |
| |

| Return Reference | Explanation |
| --- | --- |

| efile GRAPHIC print | Submission Date - 2022-05-11 | DLN: 93493131027352 |
|---|---|---|

**SCHEDULE D (Form 990)**

Department of the Treasury Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**Name of the organization**
SAN GORGONIO MEMORIAL HOSPITAL

**Employer identification number**
33-0420041

**Part I Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

**Part II Conservation Easements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)
☐ Preservation of an historically important land area
☐ Protection of natural habitat
☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ ____________

4 Number of states where property subject to conservation easement is located ▶ ____________

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ ____________

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $ ____________

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

**Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 ▶ $ ____________

(ii) Assets included in Form 990, Part X ▶ $ ____________

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 ▶ $ ____________

b Assets included in Form 990, Part X ▶ $ ____________

**Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

3 Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a ☐ Public exhibition
b ☐ Scholarly research
c ☐ Preservation for future generations
d ☐ Loan or exchange programs
e ☐ Other ..........

4 Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

5 During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . . . ☐ Yes ☐ No

**Part IV Escrow and Custodial Arrangements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

1a Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | | Amount |
|---|---|---|---|
| c | Beginning balance | 1c | |
| d | Additions during the year | 1d | |
| e | Distributions during the year | 1e | |
| f | Ending balance | 1f | |

2a Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V Endowment Funds.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|
| **1a** Beginning of year balance | | | | | |
| **b** Contributions | | | | | |
| **c** Net investment earnings, gains, and losses | | | | | |
| **d** Grants or scholarships | | | | | |
| **e** Other expenditures for facilities and programs | | | | | |
| **f** Administrative expenses | | | | | |
| **g** End of year balance | | | | | |

2 Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

a Board designated or quasi-endowment ▶ ..........

b Permanent endowment ▶ ..........

c Term endowment ▶ ..........

The percentages on lines 2a, 2b, and 2c should equal 100%.

3a Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| **(i)** Unrelated organizations | 3a(i) | | |
| **(ii)** Related organizations | 3a(ii) | | |
| b If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? | 3b | | |

4 Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI Land, Buildings, and Equipment.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land | | | | |
| **b** Buildings | | | | |
| **c** Leasehold improvements | | | | |
| **d** Equipment | | | | |
| **e** Other | | | | |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* ▶ | | | | 0 |

**Part VII Investments—Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b.See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives | | |
| (2) Closely-held equity interests | | |
| (3)Other | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| (I) | | |
| Total. (Column (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | | |

**Part VIII Investments—Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| (10) | | |
| Total. (Column (b) must equal Form 990, Part X, col.(B) line 13.) ▶ | | |

**Part IX Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| (10) | |
| Total. (Column (b) must equal Form 990, Part X, col.(B) line 15.) ▶ | |

**Part X Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| 1. (a) Description of liability | (b) Book value |
|---|---|
| (1) Federal income taxes | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| Total. (Column (b) must equal Form 990, Part X, col.(B) line 25.) ▶ | 402,258 |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☐

**Part XI** **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | 61,372,287 |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains (losses) on investments | 2a | | | |
| b | Donated services and use of facilities | 2b | | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | -9,892,737 | | |
| e | Add lines **2a** through **2d** | | | 2e | -9,892,737 |
| 3 | Subtract line **2e** from line **1** | | | 3 | 71,265,024 |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | 0 |
| 5 | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) | | | 5 | 71,265,024 |

**Part XII** **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | 1 | 82,036,630 |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | 2a | | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | -9,892,737 | | |
| e | Add lines **2a** through **2d** | | | 2e | -9,892,737 |
| 3 | Subtract line **2e** from line **1** | | | 3 | 91,929,367 |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | 0 |
| 5 | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) | | | 5 | 91,929,367 |

**Part XIII** **Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| PART XI, LINE 2D - OTHER ADJUSTMENTS: | BAD DEBTS -9,892,737. |
| PART XII, LINE 2D - OTHER ADJUSTMENTS: | BAD DEBTS -9,892,737. |

efile GRAPHIC print | Submission Date - 2022-05-11 | DLN: 93493131027352

**SCHEDULE H (Form 990)**

Department of the Treasury Internal Revenue Service

# Hospitals

▶ Complete if the organization answered "Yes" on Form 990, Part IV, question 20.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990EZ* for instructions and the latest information.

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**Name of the organization**
SAN GORGONIO MEMORIAL HOSPITAL

**Employer identification number**
33-0420041

## Part I Financial Assistance and Certain Other Community Benefits at Cost

| | | | Yes | No |
|---|---|---|---|---|
| 1a | Did the organization have a financial assistance policy during the tax year? If "No," skip to question 6a | 1a | Yes | |
| b | If "Yes," was it a written policy? | 1b | Yes | |
| 2 | If the organization had multiple hospital facilities, indicate which of the following best describes application of the financial assistance policy to its various hospital facilities during the tax year.<br>☑ Applied uniformly to all hospital facilities ☐ Applied uniformly to most hospital facilities<br>☐ Generally tailored to individual hospital facilities | | | |
| 3 | Answer the following based on the financial assistance eligibility criteria that applied to the largest number of the organization's patients during the tax year. | | | |
| a | Did the organization use Federal Poverty Guidelines (FPG) as a factor in determining eligibility for providing *free* care? If "Yes," indicate which of the following was the FPG family income limit for eligibility for free care:<br>☐ 100% ☐ 150% ☑ 200% ☐ Other ____ % | 3a | Yes | |
| b | Did the organization use FPG as a factor in determining eligibility for providing *discounted* care? If "Yes," indicate which of the following was the family income limit for eligibility for discounted care:<br>☐ 200% ☐ 250% ☐ 300% ☐ 350% ☑ 400% ☐ Other ____ % | 3b | Yes | |
| c | If the organization used factors other than FPG in determining eligibility, describe in Part VI the criteria used for determining eligibility for free or discounted care. Include in the description whether the organization used an asset test or other threshold, regardless of income, as a factor in determining eligibility for free or discounted care. | | | |
| 4 | Did the organization's financial assistance policy that applied to the largest number of its patients during the tax year provide for free or discounted care to the "medically indigent"? | 4 | Yes | |
| 5a | Did the organization budget amounts for free or discounted care provided under its financial assistance policy during the tax year? | 5a | Yes | |
| b | If "Yes," did the organization's financial assistance expenses exceed the budgeted amount? | 5b | | No |
| c | If "Yes" to line 5b, as a result of budget considerations, was the organization unable to provide free or discounted care to a patient who was eligibile for free or discounted care? | 5c | | |
| 6a | Did the organization prepare a community benefit report during the tax year? | 6a | Yes | |
| b | If "Yes," did the organization make it available to the public? | 6b | Yes | |
| | Complete the following table using the worksheets provided in the Schedule H instructions. Do not submit these worksheets with the Schedule H. | | | |

**7** Financial Assistance and Certain Other Community Benefits at Cost

| Financial Assistance and Means-Tested Government Programs | (a) Number of activities or programs (optional) | (b) Persons served (optional) | (c) Total community benefit expense | (d) Direct offsetting revenue | (e) Net community benefit expense | (f) Percent of total expense |
|---|---|---|---|---|---|---|
| a Financial Assistance at cost (from Worksheet 1) | | | 10,581,689 | 2,800,424 | 7,781,265 | 9.490 % |
| b Medicaid (from Worksheet 3, column a) | | | 3,381,481 | 2,800,424 | 581,057 | 0.710 % |
| c Costs of other means-tested government programs (from Worksheet 3, column b) | | | 61,953,698 | 24,675,560 | 37,278,138 | 45.440 % |
| d **Total** Financial Assistance and Means-Tested Government Programs | | | 75,916,868 | 30,276,408 | 45,640,460 | 55.640 % |
| **Other Benefits** | | | | | | |
| e Community health improvement services and community benefit operations (from Worksheet 4). | | | 43,520 | | 43,520 | 0.050 % |
| f Health professions education (from Worksheet 5) | | | 49,147 | | 49,147 | 0.060 % |
| g Subsidized health services (from Worksheet 6) | | | | | | |
| h Research (from Worksheet 7) | | | | | | |
| i Cash and in-kind contributions for community benefit (from Worksheet 8) | | | | | | |
| j **Total.** Other Benefits | | | 92,667 | | 92,667 | 0.110 % |
| k **Total.** Add lines 7d and 7j | | | 76,009,535 | 30,276,408 | 45,733,127 | 55.750 % |

**Part II** **Community Building Activities** Complete this table if the organization conducted any community building activities during the tax year, and describe in Part VI how its community building activities promoted the health of the communities it serves.

| | (a) Number of activities or programs (optional) | (b) Persons served (optional) | (c) Total community building expense | (d) Direct offsetting revenue | (e) Net community building expense | (f) Percent of total expense |
|---|---|---|---|---|---|---|
| 1 Physical improvements and housing | | | | | | |
| 2 Economic development | | | | | | |
| 3 Community support | | | | | | |
| 4 Environmental improvements | | | | | | |
| 5 Leadership development and training for community members | | | | | | |
| 6 Coalition building | | | | | | |
| 7 Community health improvement advocacy | | | | | | |
| 8 Workforce development | | | | | | |
| 9 Other | | | | | | |
| 10 **Total** | | | | | | |

**Part III** **Bad Debt, Medicare, & Collection Practices**

**Section A. Bad Debt Expense**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Did the organization report bad debt expense in accordance with Healthcare Financial Management Association Statement No. 15? | 1 | Yes | |
| 2 | Enter the amount of the organization's bad debt expense. Explain in Part VI the methodology used by the organization to estimate this amount. | 2 | 9,892,737 | |
| 3 | Enter the estimated amount of the organization's bad debt expense attributable to patients eligible under the organization's financial assistance policy. Explain in Part VI the methodology used by the organization to estimate this amount and the rationale, if any, for including this portion of bad debt as community benefit. | 3 | | |
| 4 | Provide in Part VI the text of the footnote to the organization's financial statements that describes bad debt expense or the page number on which this footnote is contained in the attached financial statements. | | | |

**Section B. Medicare**

| | | | |
|---|---|---|---|
| 5 | Enter total revenue received from Medicare (including DSH and IME) | 5 | 9,665,879 |
| 6 | Enter Medicare allowable costs of care relating to payments on line 5 | 6 | 15,949,035 |
| 7 | Subtract line 6 from line 5. This is the surplus (or shortfall) | 7 | -6,283,156 |

8 Describe in Part VI the extent to which any shortfall reported in line 7 should be treated as community benefit. Also describe in Part VI the costing methodology or source used to determine the amount reported on line 6. Check the box that describes the method used:

☐ Cost accounting system ☑ Cost to charge ratio ☐ Other

**Section C. Collection Practices**

| | | | Yes | No |
|---|---|---|---|---|
| 9a | Did the organization have a written debt collection policy during the tax year? | 9a | Yes | |
| b | If "Yes," did the organization's collection policy that applied to the largest number of its patients during the tax year contain provisions on the collection practices to be followed for patients who are known to qualify for financial assistance? Describe in Part VI | 9b | Yes | |

**Part IV** **Management Companies and Joint Ventures** (owned 10% or more by officers, directors, trustees, key employees, and physicians—see instructions)

| | (a) Name of entity | (b) Description of primary activity of entity | (c) Organization's profit % or stock ownership % | (d) Officers, directors, trustees, or key employees' profit % or stock ownership % | (e) Physicians' profit % or stock ownership % |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |

**Part V Facility Information**

**Section A. Hospital Facilities**

(list in order of size from largest to smallest—see instructions)

How many hospital facilities did the organization operate during the tax year? **1**

| | Name, address, primary website address, and state license number (and if a group return, the name and EIN of the subordinate hospital organization that operates the hospital facility) | Licensed hospital | General medical & surgical | Children's hospital | Teaching hospital | Critical access hospital | Research facility | ER–24 hours | ER–other | Other (describe) | Facility reporting group |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | SAN GORGONIO MEMORIAL HOSPITAL<br>600 NORTH HIGHLAND SPRINGS AVE<br>BANNING, CA 92220<br>WWW.SGMH.ORG<br>1568469997<br>330420041 | X | X | | | | | X | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

**Part V Facility Information** *(continued)*

**Section B. Facility Policies and Practices**

(Complete a separate Section B for each of the hospital facilities or facility reporting groups listed in Part V, Section A)

**Name of hospital facility or letter of facility reporting group** SAN GORGONIO MEMORIAL HOSPITAL

**Line number of hospital facility, or line numbers of hospital facilities in a facility reporting group (from Part V, Section A):** 1

| | | Yes | No |
|---|---|---|---|
| **Community Health Needs Assessment** | | | |
| **1** Was the hospital facility first licensed, registered, or similarly recognized by a state as a hospital facility in the current tax year or the immediately preceding tax year? | **1** | | No |
| **2** Was the hospital facility acquired or placed into service as a tax-exempt hospital in the current tax year or the immediately preceding tax year? If "Yes," provide details of the acquisition in Section C. | **2** | | No |
| **3** During the tax year or either of the two immediately preceding tax years, did the hospital facility conduct a community health needs assessment (CHNA)? If "No," skip to line 12. | **3** | Yes | |
| If "Yes," indicate what the CHNA report describes (check all that apply): | | | |
| **a** ☑ A definition of the community served by the hospital facility | | | |
| **b** ☑ Demographics of the community | | | |
| **c** ☑ Existing health care facilities and resources within the community that are available to respond to the health needs of the community | | | |
| **d** ☑ How data was obtained | | | |
| **e** ☑ The significant health needs of the community | | | |
| **f** ☑ Primary and chronic disease needs and other health issues of uninsured persons, low-income persons, and minority groups | | | |
| **g** ☑ The process for identifying and prioritizing community health needs and services to meet the community health needs | | | |
| **h** ☑ The process for consulting with persons representing the community's interests | | | |
| **i** ☐ The impact of any actions taken to address the significant health needs identified in the hospital facility's prior CHNA(s) | | | |
| **j** ☐ Other (describe in Section C) | | | |
| **4** Indicate the tax year the hospital facility last conducted a CHNA: 20 19 | | | |
| **5** In conducting its most recent CHNA, did the hospital facility take into account input from persons who represent the broad interests of the community served by the hospital facility, including those with special knowledge of or expertise in public health? If "Yes," describe in Section C how the hospital facility took into account input from persons who represent the community, and identify the persons the hospital facility consulted | **5** | Yes | |
| **6 a** Was the hospital facility's CHNA conducted with one or more other hospital facilities? If "Yes," list the other hospital facilities in Section C | **6a** | Yes | |
| **b** Was the hospital facility's CHNA conducted with one or more organizations other than hospital facilities?" If "Yes," list the other organizations in Section C. | **6b** | | No |
| **7** Did the hospital facility make its CHNA report widely available to the public? | **7** | Yes | |
| If "Yes," indicate how the CHNA report was made widely available (check all that apply): | | | |
| **a** ☐ Hospital facility's website (list url): SGMH.ORG | | | |
| **b** ☐ Other website (list url): | | | |
| **c** ☑ Made a paper copy available for public inspection without charge at the hospital facility | | | |
| **d** ☐ Other (describe in Section C) | | | |
| **8** Did the hospital facility adopt an implementation strategy to meet the significant community health needs identified through its most recently conducted CHNA? If "No," skip to line 11. | **8** | Yes | |
| **9** Indicate the tax year the hospital facility last adopted an implementation strategy: 20 19 | | | |
| **10** Is the hospital facility's most recently adopted implementation strategy posted on a website? | **10** | Yes | |
| **a** If "Yes" (list url): SGMH.ORG | | | |
| **b** If "No," is the hospital facility's most recently adopted implementation strategy attached to this return? | **10b** | | |
| **11** Describe in Section C how the hospital facility is addressing the significant needs identified in its most recently conducted CHNA and any such needs that are not being addressed together with the reasons why such needs are not being addressed. | | | |
| **12a** Did the organization incur an excise tax under section 4959 for the hospital facility's failure to conduct a CHNA as required by section 501(r)(3)? | **12a** | | No |
| **b** If "Yes" on line 12a, did the organization file Form 4720 to report the section 4959 excise tax? | **12b** | | |
| **c** If "Yes" on line 12b, what is the total amount of section 4959 excise tax the organization reported on Form 4720 for all of its hospital facilities? $ | | | |

**Part V Facility Information** *(continued)*

**Financial Assistance Policy (FAP)**

**Name of hospital facility or letter of facility reporting group** SAN GORGONIO MEMORIAL HOSPITAL

| | | | Yes | No |
|---|---|---|---|---|
| | Did the hospital facility have in place during the tax year a written financial assistance policy that: | | | |
| 13 | Explained eligibility criteria for financial assistance, and whether such assistance included free or discounted care? | 13 | Yes | |
| | If "Yes," indicate the eligibility criteria explained in the FAP: | | | |
| | a ☑ Federal poverty guidelines (FPG), with FPG family income limit for eligibility for free care of 200.000000000000 % and FPG family income limit for eligibility for discounted care of 400.000000000000 % | | | |
| | b ☐ Income level other than FPG (describe in Section C) | | | |
| | c ☑ Asset level | | | |
| | d ☑ Medical indigency | | | |
| | e ☑ Insurance status | | | |
| | f ☑ Underinsurance discount | | | |
| | g ☐ Residency | | | |
| | h ☐ Other (describe in Section C) | | | |
| 14 | Explained the basis for calculating amounts charged to patients? | 14 | Yes | |
| 15 | Explained the method for applying for financial assistance? | 15 | Yes | |
| | If "Yes," indicate how the hospital facility's FAP or FAP application form (including accompanying instructions) explained the method for applying for financial assistance (check all that apply): | | | |
| | a ☑ Described the information the hospital facility may require an individual to provide as part of his or her application | | | |
| | b ☑ Described the supporting documentation the hospital facility may require an individual to submit as part of his or her application | | | |
| | c ☑ Provided the contact information of hospital facility staff who can provide an individual with information about the FAP and FAP application process | | | |
| | d ☐ Provided the contact information of nonprofit organizations or government agencies that may be sources of assistance with FAP applications | | | |
| | e ☐ Other (describe in Section C) | | | |
| 16 | Was widely publicized within the community served by the hospital facility? | 16 | Yes | |
| | If "Yes," indicate how the hospital facility publicized the policy (check all that apply): | | | |
| | a ☐ The FAP was widely available on a website (list url): | | | |
| | b ☐ The FAP application form was widely available on a website (list url): | | | |
| | c ☐ A plain language summary of the FAP was widely available on a website (list url): | | | |
| | d ☑ The FAP was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| | e ☑ The FAP application form was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| | f ☐ A plain language summary of the FAP was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| | g ☐ Individuals were notified about the FAP by being offered a paper copy of the plain language summary of the FAP, by receiving a conspicuous written notice about the FAP on their billing statements, and via conspicuous public displays or other measures reasonably calculated to attract patients' attention | | | |
| | h ☐ Notified members of the community who are most likely to require financial assistance about availability of the FAP | | | |
| | i ☐ The FAP, FAP application form, and plain language summary of the FAP were translated into the primary language(s) spoken by LEP populations | | | |
| | j ☐ Other (describe in Section C) | | | |

**Part V Facility Information** *(continued)*

**Billing and Collections**

**Name of hospital facility or letter of facility reporting group** SAN GORGONIO MEMORIAL HOSPITAL

| | | Line | Yes | No |
|---|---|---|---|---|
| **17** | Did the hospital facility have in place during the tax year a separate billing and collections policy, or a written financial assistance policy (FAP) that explained all of the actions the hospital facility or other authorized party may take upon nonpayment? | **17** | Yes | |
| **18** | Check all of the following actions against an individual that were permitted under the hospital facility's policies during the tax year before making reasonable efforts to determine the individual's eligibility under the facility's FAP: | | | |
| **a** | ☐ Reporting to credit agency(ies) | | | |
| **b** | ☐ Selling an individual's debt to another party | | | |
| **c** | ☐ Deferring, denying, or requiring a payment before providing medically necessary care due to nonpayment of a previous bill for care covered under the hospital facility's FAP | | | |
| **d** | ☐ Actions that require a legal or judicial process | | | |
| **e** | ☐ Other similar actions (describe in Section C) | | | |
| **f** | ☑ None of these actions or other similar actions were permitted | | | |
| **19** | Did the hospital facility or other authorized party perform any of the following actions during the tax year before making reasonable efforts to determine the individual's eligibility under the facility's FAP? | **19** | | No |
| | If "Yes," check all actions in which the hospital facility or a third party engaged: | | | |
| **a** | ☐ Reporting to credit agency(ies) | | | |
| **b** | ☐ Selling an individual's debt to another party | | | |
| **c** | ☐ Deferring , denying, or requiring a payment before providing medically necessary care due to nonpayment of a previous bill for care covered under the hospital facility's FAP | | | |
| **d** | ☐ Actions that require a legal or judicial process | | | |
| **e** | ☐ Other similar actions (describe in Section C) | | | |
| **20** | Indicate which efforts the hospital facility or other authorized party made before initiating any of the actions listed (whether or not checked) in line 19. (check all that apply): | | | |
| **a** | ☐ Provided a written notice about upcoming ECAs (Extraordinary Collection Action) and a plain language summary of the FAP at least 30 days before initiating those ECAs (if not, describe in Section C) | | | |
| **b** | ☑ Made a reasonable effort to orally notify individuals about the FAP and FAP application process (if not, describe in Section C) | | | |
| **c** | ☑ Processed incomplete and complete FAP applications (if not, describe in Section C) | | | |
| **d** | ☑ Made presumptive eligibility determinations (if not, describe in Section C) | | | |
| **e** | ☐ Other (describe in Section C) | | | |
| **f** | ☐ None of these efforts were made | | | |

**Policy Relating to Emergency Medical Care**

| | | Line | Yes | No |
|---|---|---|---|---|
| **21** | Did the hospital facility have in place during the tax year a written policy relating to emergency medical care that required the hospital facility to provide, without discrimination, care for emergency medical conditions to individuals regardless of their eligibility under the hospital facility's financial assistance policy? | **21** | Yes | |
| | If "No," indicate why: | | | |
| **a** | ☐ The hospital facility did not provide care for any emergency medical conditions | | | |
| **b** | ☐ The hospital facility's policy was not in writing | | | |
| **c** | ☐ The hospital facility limited who was eligible to receive care for emergency medical conditions (describe in Section C) | | | |
| **d** | ☐ Other (describe in Section C) | | | |

**Part V Facility Information** *(continued)*

**Charges to Individuals Eligible for Assistance Under the FAP (FAP-Eligible Individuals)**

**Name of hospital facility or letter of facility reporting group** SAN GORGONIO MEMORIAL HOSPITAL

| | | | Yes | No |
|---|---|---|---|---|
| **22** | Indicate how the hospital facility determined, during the tax year, the maximum amounts that can be charged to FAP-eligible individuals for emergency or other medically necessary care. | | | |
| **a** | ☐ The hospital facility used a look-back method based on claims allowed by Medicare fee-for-service during a prior 12-month period | | | |
| **b** | ☐ The hospital facility used a look-back method based on claims allowed by Medicare fee-for-service and all private health insurers that pay claims to the hospital facility during a prior 12-month period | | | |
| **c** | ☑ The hospital facility used a look-back method based on claims allowed by Medicaid, either alone or in combination with Medicare fee-for-service and all private health insurers that pay claims to the hospital facility during a prior 12-month period | | | |
| **d** | ☐ The hospital facility used a prospective Medicare or Medicaid method | | | |
| **23** | During the tax year, did the hospital facility charge any FAP-eligible individual to whom the hospital facility provided emergency or other medically necessary services more than the amounts generally billed to individuals who had insurance covering such care? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <br>If "Yes," explain in Section C. | **23** | | No |
| **24** | During the tax year, did the hospital facility charge any FAP-eligible individual an amount equal to the gross charge for any service provided to that individual? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <br>If "Yes," explain in Section C. | **24** | | No |

**Part V Facility Information** *(continued)*

**Section C. Supplemental Information for Part V, Section B.** Provide descriptions required for Part V, Section B, lines 2, 3j, 5, 6a, 6b, 7d, 11, 13b, 13h, 15e, 16j, 18e, 19e, 20a, 20b, 20c, 20d, 20e, 21c, 21d, 23, and 24. If applicable, provide separate descriptions for each hospital facility in a facility reporting group, designated by facility reporting group letter and hospital facility line number from Part V, Section A ("A, 1," "A, 4," "B, 2," "B, 3," etc.) and name of hospital facility.

| Form and Line Reference | Explanation |
|---|---|
| SAN GORGONIO MEMORIAL HOSPITAL | PART V, SECTION B, LINE 5: DISTRICT BOARD AND COMMUNITY LEADERS WERE CONTACTED FOR INFORMATION AND THE NEEDS ASSESSMENT WAS PRODUCED BY AND WITH OTHER HOSPITALS IN THE AREA. |
| SAN GORGONIO MEMORIAL HOSPITAL | PART V, SECTION B, LINE 6A: THE ASSESSMENT WAS CONDUCTED IN COLLABORATION WITH LOMA LINDA UNIVERSITY HOSPITAL. |
| SAN GORGONIO MEMORIAL HOSPITAL | PART V, SECTION B, LINE 11: IT WOULD BE FISCALLY IMPOSSIBLE FOR THE HOSPITAL TO ADDRESS ALL OF THE HEALTH NEEDS OF THE COMMUNITY, BUT THROUGH CONTINUED COLLABORATION WITH OTHER COMMUNITY AGENCIES THE HOSPITAL HOPES TO CONTINUE TO IDENTIFY PRIORITY AREAS WHERE THEY CAN MAKE THE MOST IMPACT. THE HOSPITAL HAS IDENTIFIED ACCESS TO HEALTH CARE, BEHAVIORAL HEALTH, AND CHRONIC DISEASE WITH A SPECIAL EMPHASIS ON HEART DISEASE AS THEIR PRIORITY AREAS. THESE WERE CHOSEN AS BROAD PRIORITIES TO ADDRESS A WIDE SPECTRUM OF INTERVENTIONS IN PARTNERSHIP WITH THE COMMUNITY. A FOCUS WILL ALLOW TRUE IMPACT VERSUS BEING FRAGMENTED AND INEFFECTIVE. A DETAILED COMMUNITY HEALTH PLAN HAS BEEN DEVELOPED WITH KEY METRICS FOR EACH OF THE PRIORITY AREAS. |

**Part V Facility Information** *(continued)*

**Section D. Other Health Care Facilities That Are Not Licensed, Registered, or Similarly Recognized as a Hospital Facility**

(list in order of size, from largest to smallest)

How many non-hospital health care facilities did the organization operate during the tax year? ____________

| | Name and address | Type of Facility (describe) |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |

**Part VI Supplemental Information**

Provide the following information.

1 **Required descriptions.** Provide the descriptions required for Part I, lines 3c, 6a, and 7; Part II and Part III, lines 2, 3, 4, 8 and 9b.

2 **Needs assessment.** Describe how the organization assesses the health care needs of the communities it serves, in addition to any CHNAs reported in Part V, Section B.

3 **Patient education of eligibility for assistance.** Describe how the organization informs and educates patients and persons who may be billed for patient care about their eligibility for assistance under federal, state, or local government programs or under the organization's financial assistance policy.

4 **Community information.** Describe the community the organization serves, taking into account the geographic area and demographic constituents it serves.

5 **Promotion of community health.** Provide any other information important to describing how the organization's hospital facilities or other health care facilities further its exempt purpose by promoting the health of the community (e.g., open medical staff, community board, use of surplus funds, etc.).

6 **Affiliated health care system.** If the organization is part of an affiliated health care system, describe the respective roles of the organization and its affiliates in promoting the health of the communities served.

7 **State filing of community benefit report.** If applicable, identify all states with which the organization, or a related organization, files a community benefit report.

| Form and Line Reference | Explanation |
|---|---|
| PART I, LINE 7, COLUMN (F): | THE BAD DEBT EXPENSE INCLUDED ON FORM 990, PART IX, LINE 25, COLUMN (A), BUT SUBTRACTED FOR PURPOSES OF CALCULATING THE PERCENTAGE IN THIS COLUMN IS $ 9,892,737. |
| PART III, LINE 2: | THE COSTING METHODOLOGY USED TO DETERMINE THE AMOUNTS REPORTED INCLUDES THE COST TO CHARGE RATIO OF PATIENT CARE |
| PART III, LINE 3: | BAD DEBT EXPENSE ATTRIBUTABLE TO CHARITY CARE POLICY CANNOT BE DETERMINED. THE HOSPITAL DID NOT TRACK THE AMOUNT OF BAD DEBT EXPENSE THAT COULD REASONABLY BE ATTRIBUTABLE TO PATIENTS WHO LIKELY WOULD QUALIFY FOR FINANCIAL ASSISTANCE UNDER THE HOSPITAL'S CHARITY CARE POLICY, AND FURTHERMORE SUFFICIENT INFORMATION WAS NOT OBTAINED FROM ALL PATIENTS THAT MIGHT BE ELIGIBLE TO MAKE THIS DETERMINATION AND CALCULATION. |
| PART III, LINE 4: | THE FINANCIAL STATEMENTS DO NOT CONTAIN A FOOTNOTE DESCRIBING BAD DEBT EXPENSE. HOWEVER, THERE IS A FOOTNOTE THAT DISCUSSES CHARITY CARE AND COMMUNITY BENEFIT EXPENSE. |
| PART III, LINE 8: | ANY SHORTFALL IS DEEMED A COMMUNITY BENEFIT IN ITS ENTIRETY. |
| PART III, LINE 9B: | IT IS THE POLICY OF SAN GORGONIO MEMORIAL HOSPITAL THAT ALL PATIENTS WILL BE TREATED FAIRLY IN PRICING AND COLLECTION PRACTICES. THE HOSPITAL'S REGISTRATION AND PATIENT FINANCIAL SERVICES STAFF WILL MAKE A REASONABLE ATTEMPT TO ESTIMATE EACH PATIENT'S LIABILITY. THE HOSPITAL'S PFS STAFF, IN CONJUNCTION WITH CONTRACTED EARLY OUT AGENCIES WILL MAKE A SUBSEQUENTLY ATTEMPT TO COLLECT EACH PATIENT'S LIABILITY AND TO OFFER DISCOUNT AND CHARITY CARE APPLICATIONS. THIS IS OFFERED IN COMPLIANCE WITH CALIFORNIA ASSEMBLY BILL 774 (STATUTES OF 2006) AND SB 1276 (CHAPTER 758, STATUES OF 2014). THIS POLICY DOES NOT APPLY TO ANY PHYSICIAN SERVICES RENDERED AT SGMH. |
| PART VI, LINE 2: | THE MANAGEMENT TEAM, HOSPITAL DEPARTMENT STAFF AND MANAGERS, AND THE BOARD OF DIRECTORS ARE COMPRISED OF COMMUNITY MEMBERS. THEY ARE ABLE TO GATHER AND COMMUNICATE THE HEALTH CARE NEEDS OF THE COMMUNITY THE HOSPITAL SERVES AND CONTINUALLY ADDRESS THEM AT STAFF AND BOARD MEETINGS. THE MOST RECENTLY ADOPTED IMPLEMENTATION STRATEGY IS PUBLICLY AVAILABLE ON THE INTERNET AT: HTTP://WWW.SGMH.ORG. THE HOSPITAL CONDUCTED A CHNA/IMPLEMENTATION STRATEGY IN 2019 THAT IS ALSO POSTED ON THE ORGANIZATION'S WEBSITE, AND WILL BE APPLICABLE TO THE COMING FEW YEARS' FORM 990S. |
| PART VI, LINE 3: | IT IS THE HOSPITAL'S POLICY THAT WHEN IT BECOMES APPARENT THAT A PATIENT MAY HAVE DIFFICULTY IN MEETING HIS/HER FINANCIAL RESPONSIBILITY TO THE HOSPITAL, THE PATIENT WILL BE REQUESTED TO COMPLETE THE APPLICATION PROCESS FOR CALIFORNIA MEDI-CAL AND/OR OTHER AVAILABLE PROGRAMS. HOSPITAL STAFF ASSIST IN THE APPLICATION PROCESS. PATIENTS WHO DO NOT QUALIFY FOR CALFORNIA MEDI-CAL OR OTHER ASSISTANCE MAY APPLY FOR THE HOSPITAL'S ASSISTANCE PROGRAM. |
| PART VI, LINE 4: | THE HOSPITAL IS A RURAL HOSPITAL LOCATED IN THE PASS AREA OF RIVERSIDE COUNTY. IT PRIMARILY SERVES THE CITIES OF BANNING, BEAUMONT, CABAZON, AND CALIMESA, CALIFORNIA. THE POPULATION SERVED IS HIGH-RISK DUE TO POVERTY LEVEL INCOMES, LOW EDUCATION LEVELS, AND HIGH DRUG USE. THE COUNTY HAS AN UNEMPLOYMENT RATE OF 8.7%. THE HOSPITAL'S PAYOR MIX INCLUDES APPROXIMATELY 31% MEDI-CAL RECIPIENTS AND 5% UNINSURED. |
| PART VI, LINE 5: | THE HOSPITAL CONTINUES TO STRIVE TO MEET THE HEALTH NEEDS OF ITS COMMUNITY AS THESE NEEDS EVOLVE. |
| PART VI, LINE 7, REPORTS FILED WITH STATES | CA |

efile GRAPHIC print | Submission Date - 2022-05-11 | DLN: 93493131027352

**Schedule J (Form 990)**

Department of the Treasury
Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**▶ Attach to Form 990.**
**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047
**2020**
**Open to Public Inspection**

Name of the organization
SAN GORGONIO MEMORIAL HOSPITAL

**Employer identification number**
33-0420041

## Part I Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropiate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel<br>☐ Travel for companions<br>☐ Tax idemnification and gross-up payments<br>☐ Discretionary spending account<br>☐ Housing allowance or residence for personal use<br>☐ Payments for business use of personal residence<br>☐ Health or social club dues or initiation fees<br>☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | 1b | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? | 2 | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☐ Compensation committee<br>☐ Independent compensation consultant<br>☑ Form 990 of other organizations<br>☑ Written employment contract<br>☑ Compensation survey or study<br>☑ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? | 4a | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | 4b | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? | 4c | | No |
| | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? | 5a | | No |
| **b** | Any related organization? | 5b | | No |
| | If "Yes," on line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? | 6a | | No |
| **b** | Any related organization? | 6b | | No |
| | If "Yes," on line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III | 7 | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III | 8 | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? | 9 | | |

**Part II** **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| **(A)** Name and Title | | **(B)** Breakdown of W-2 and/or 1099-MISC compensation | | | **(C)** Retirement and other deferred compensation | **(D)** Nontaxable benefits | **(E)** Total of columns (B)(i)-(D) | **(F)** Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | **(i)** Base compensation | **(ii)** Bonus & incentive compensation | **(iii)** Other reportable compensation | | | | |
| **1** STEVE BARRON<br>CHIEF EXECUTIVE OFFICER | (i) | 524,033 | 100 | 0 | 26,202 | 0 | 550,335 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **2** DAVID RECCUPERO<br>CHIEF FINANCIAL OFFICER THRU 7/1/20 | (i) | 285,013 | 0 | 0 | 14,251 | 0 | 299,264 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **3** PATRICIA BROWN<br>CHIEF OPERATING OFFICER | (i) | 254,471 | 100 | 0 | 12,724 | 0 | 267,295 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **4** HOLLY YONEMOTO<br>CHIEF FINANCIAL OFFICER THRU 3/11/20 | (i) | 236,454 | 100 | 0 | 11,823 | 0 | 248,377 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **5** ANNA KAMPANARTSANYAKORN<br>REGISTERED NURSE | (i) | 213,732 | 350 | 0 | 10,687 | 0 | 224,769 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **6** ANNAH KARAM<br>CHIEF OF HUMAN RESOURCES | (i) | 198,918 | 100 | 0 | 9,946 | 0 | 208,964 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **7** JOSE RUIZ<br>PHARMACIST | (i) | 198,587 | 350 | 0 | 9,929 | 0 | 208,866 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **8** JOSE LOPEZ<br>DIRECTOR OF PHARMACY | (i) | 197,860 | 100 | 0 | 9,893 | 0 | 207,853 | 0 |
| | (ii) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |



Schedule J (Form 990) 2020 Page 3

## Part III Supplemental Information

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
| --- | --- |

Schedule J (Form 990) 2020

efile GRAPHIC print | Submission Date - 2022-05-11 | DLN: 93493131027352

**SCHEDULE O (Form 990 or 990-EZ)**

Department of the Treasury Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**▶ Attach to Form 990 or 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

Name of the organization
SAN GORGONIO MEMORIAL HOSPITAL

**Employer identification number**
33-0420041

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION A, LINE 4 | THE BYLAWS OF SAN GORGONION MEMORIAL HOSPITAL WERE CHANGED EFFECTIVE JANUARY 6, 2021. THE NUMBER OF DIRECTORS WAS REDUCED FROM THRITEEN TO NINE. |
| FORM 990, PART VI, SECTION B, LINE 11B | THE FORM 990 IS PROVIDED TO THE FINANCE COMMITTEE AND FULL BOARD AT A MONTHLY BOARD MEETING, BUT MAY BE PRESENTED AT A DATE SUBSEQUENT TO FILING. |
| FORM 990, PART VI, SECTION B, LINE 12C | EXECUTIVE ASSISTANT MONITORS AND DOCUMENTS CONFLICTS. |
| FORM 990, PART VI, SECTION B, LINE 15 | THE BOARD OF DIRECTORS REVIEW AND APPROVE MANAGEMENT WAGES EACH YEAR DURING THE BUDGET PROCESS. SOURCES UTILIZED BY THE BOARD WHEN REVIEWING FAIR MARKET VALUE IN COMPENSATION INCLUDE MARKET SURVEYS AND SALARY RANGES PROVIDED BY THE HR DEPARTMENT. |
| FORM 990, PART VI, SECTION C, LINE 19 | PUBLISHED ON WEBSITE WWW.SCGH.ORG OR AVAILABLE BY REQUEST FROM THE CEO, CFO, CONTROLLER, OR EXECUTIVE ASSISTANT. |
| FORM 990, PART IX, LINE 11G | CONTRACTED SERVICES: PROGRAM SERVICE EXPENSES 7,653,117. MANAGEMENT AND GENERAL EXPENSES 2,201,839. FUNDRAISING EXPENSES 18,760. TOTAL EXPENSES 9,873,716. |
| PART XII, LINE 2C | THIS PROCESS HAS NOT CHANGED FROM PRIOR YEAR. |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 51056K **Schedule O (Form 990 or 990-EZ) 2020**

efile GRAPHIC print | Submission Date - 2022-05-11 | DLN: 93493131027352

# SCHEDULE R (Form 990)

Department of the Treasury
Internal Revenue Service

## Related Organizations and Unrelated Partnerships

▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047
**2020**
**Open to Public Inspection**

Name of the organization
SAN GORGONIO MEMORIAL HOSPITAL

**Employer identification number**
33-0420041

**Part I** **Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II** **Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)**SAN GORGONIO HEALTH CARE DISTRICT<br>600 N HIGHLAND SPRINGS AVE<br><br>BANNING, CA 92220<br>95-6004149 | HEALTHCARE | CA | GOVT | | N/A | | No |
| **(2)**SAN GORGONIO MEMORIAL HOSPITAL FOUNDATION<br>600 N HIGHLAND SPRINGS AVE<br><br>BANNING, CA 92220<br>95-3863230 | SUPPORT SAN GORGONIO MEMORIAL HOSPITAL | CA | 501(C)(3) | LINE 7 | N/A | | No |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Part III Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

## Part V Transactions With Related Organizations.

Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

**Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule.

| | | Line | Yes | No |
|---|---|---|---|---|
| **1** | During the tax year, did the orgranization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** | Receipt of **(i)** interest, **(ii)**annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | 1a | | No |
| **b** | Gift, grant, or capital contribution to related organization(s) | 1b | | No |
| **c** | Gift, grant, or capital contribution from related organization(s) | 1c | Yes | |
| **d** | Loans or loan guarantees to or for related organization(s) | 1d | | No |
| **e** | Loans or loan guarantees by related organization(s) | 1e | | No |
| **f** | Dividends from related organization(s) | 1f | | No |
| **g** | Sale of assets to related organization(s) | 1g | | No |
| **h** | Purchase of assets from related organization(s) | 1h | | No |
| **i** | Exchange of assets with related organization(s) | 1i | | No |
| **j** | Lease of facilities, equipment, or other assets to related organization(s) | 1j | | No |
| **k** | Lease of facilities, equipment, or other assets from related organization(s) | 1k | | No |
| **l** | Performance of services or membership or fundraising solicitations for related organization(s) | 1l | | No |
| **m** | Performance of services or membership or fundraising solicitations by related organization(s) | 1m | | No |
| **n** | Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | 1n | | No |
| **o** | Sharing of paid employees with related organization(s) | 1o | Yes | |
| **p** | Reimbursement paid to related organization(s) for expenses | 1p | | No |
| **q** | Reimbursement paid by related organization(s) for expenses | 1q | | No |
| **r** | Other transfer of cash or property to related organization(s) | 1r | | No |
| **s** | Other transfer of cash or property from related organization(s) | 1s | | No |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| **(a)** Name of related organization | **(b)** Transaction type (a-s) | **(c)** Amount involved | **(d)** Method of determining amount involved |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Part VI** **Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| **(a)** Name, address, and EIN of entity | **(b)** Primary activity | **(c)** Legal domicile (state or foreign country) | **(d)** Predominant income (related, unrelated, excluded from tax under sections 512-514) | **(e)** Are all partners section 501(c)(3) organizations? | | **(f)** Share of total income | **(g)** Share of end-of-year assets | **(h)** Disproprtionate allocations? | | **(i)** Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | **(j)** General or managing partner? | | **(k)** Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Yes** | **No** | | | **Yes** | **No** | | **Yes** | **No** | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Schedule R (Form 990) 2020 Page 5

**Part VII Supplemental Information**

Provide additional information for responses to questions on Schedule R. (see instructions).

| Return Reference | Explanation |
| --- | --- |

Schedule R (Form 990) 2020

TAB 7

Form **990**

Department of the Treasury Internal Revenue Service

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

▶ Do not enter social security numbers on this form as it may be made public.

▶ **Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

**A For the 2021 calendar year, or tax year beginning 07-01-2021 , and ending 06-30-2022**

**B** Check if applicable:
- ☐ Address change
- ☐ Name change
- ☐ Initial return
- ☐ Final return/terminated
- ☐ Amended return
- ☐ Application pending

**C** Name of organization
SAC HEALTH SYSTEM

Doing business as

Number and street (or P.O. box if mail is not delivered to street address)
250 S G STREET

Room/suite

City or town, state or province, country, and ZIP or foreign postal code
SAN BERNARDINO, CA 92410

**D Employer identification number**
33-0664371

E Telephone number
(909) 259-9113

**G** Gross receipts $ 102,072,340

**F** Name and address of principal officer:
JASON LOHR
250 S G STREET
SAN BERNARDINO, CA 92410

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No

**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. See instructions.

**H(c)** Group exemption number ▶

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** ▶ WWW.SACHEALTH.ORG

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other ▶

**L** Year of formation: 1995

**M** State of legal domicile: CA

## Part I Summary

*Activities & Governance*

1 Briefly describe the organization's mission or most significant activities:
PROVIDE COMMUNITIES WITH PRIMARY HEALTH CARE SERVICES, DENTAL CARE & BEHAVIORAL HEALTH SERVICES.

2 Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 13 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 13 |
| 5 | Total number of individuals employed in calendar year 2021 (Part V, line 2a) | 5 | 580 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 15 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, Part I, line 11 | 7b | 0 |

| | | | Prior Year | Current Year |
|---|---|---|---|---|
| Revenue | 8 | Contributions and grants (Part VIII, line 1h) | 19,016,024 | 20,791,990 |
| | 9 | Program service revenue (Part VIII, line 2g) | 48,099,571 | 79,413,975 |
| | 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | 5,045 | 8,040 |
| | 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 2,822,568 | 1,858,335 |
| | 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 69,943,208 | 102,072,340 |
| Expenses | 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | 5,250 | 61,362 |
| | 14 | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| | 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 34,566,036 | 39,391,126 |
| | 16a | Professional fundraising fees (Part IX, column (A), line 11e) | 104,160 | 153,135 |
| | b | Total fundraising expenses (Part IX, column (D), line 25) ▶153,135 | | |
| | 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 34,227,327 | 43,121,420 |
| | 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 68,902,773 | 82,727,043 |
| | 19 | Revenue less expenses. Subtract line 18 from line 12 | 1,040,435 | 19,345,297 |

| | | | Beginning of Current Year | End of Year |
|---|---|---|---|---|
| Net Assets or Fund Balances | 20 | Total assets (Part X, line 16) | 20,750,511 | 39,362,176 |
| | 21 | Total liabilities (Part X, line 26) | 13,566,135 | 12,326,631 |
| | 22 | Net assets or fund balances. Subtract line 21 from line 20 | 7,184,376 | 27,035,545 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

**Sign Here**

▶ Signature of officer — Date: 2023-05-15

▶ JORDAN URBAN CFO
Type or print name and title

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| | | 2023-05-15 | | P01469618 |

Firm's name ▶ CLIFTONLARSONALLEN LLP — Firm's EIN ▶ 41-0746749

Firm's address ▶ 10700 NORTHUP WAY SUITE 200, BELLEVUE, WA 98004 — Phone no. (425) 250-6100

May the IRS discuss this return with the preparer shown above? (see instructions) ☑ Yes ☐ No

## Part III Statement of Program Service Accomplishments

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . . ☑

**1** Briefly describe the organization's mission:

TO REFLECT THE HEALING MINISTRY AND LOVE OF JESUS CHRIST THROUGH HEALTHCARE, EDUCATION, AND PARTNERSHIPS THAT EMPOWER OUR COMMUNITIES TO FLOURISH.

**2** Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code: ) (Expenses $ 62,084,974 including grants of $ 61,362 ) (Revenue $ 71,372,865 )

SACHS IS COMMITTED TO PROVIDING ACCESSIBLE INTEGRATED HEALTHCARE (I.E. MEDICAL, DENTAL & BEHAVIORAL HEALTH) TO ALL THOSE IN NEED IN THE SAN BERNARDINO COUNTY. SACHS EMPOWERS FAMILIES TO LIVE VIBRANT AND HEALTHY LIVES THROUGH THE DELIVERY OF CULTURALLY SENSITIVE AND HIGH QUALITY, COMPREHENSIVE SERVICES.

**4b** (Code: ) (Expenses $ 4,105,152 including grants of $ 0 ) (Revenue $ 0 )

TEACHING HEALTH CENTER GRADUATE MEDICAL EDUCATION - HRSA FUNDED PRIMARY CARE RESIDENCY PROGRAMS WHICH INCLUDE FAMILY MEDICINE, INTERNAL MEDICINE, OB & GYN, PSYCHIATRY. IT HELPS BUILD HEALTHY COMMUNITIES BY SUPPORTING QUALIFIED HEALTHCARE PROVIDERS DEDICATED TO WORKING IN EDUCATION EXPENSES FOR TRAINING RESIDENTS IN NEW OR EXPANDING COMMUNITY BASED PRIMARY CARE RESIDENCY PROGRAMS.

**4c** (Code: ) (Expenses $ 2,313,962 including grants of $ 0 ) (Revenue $ 8,041,110 )

IEHP'S BEHAVIORAL HEALTH INTEGRATION & COMPLEX CARE INITIATIVE GRANT - THE GRANT'S OBJECTIVE IS TO TRANSFORM PROVIDER'S CLINICAL PRACTICES IN 5 KEY AREAS WHICH INCLUDES ASSESSMENT PROCESSES, CARE PLANNING, SERVICE DELIVERY PRACTICES, POPULATION HEALTH CARE MANAGEMENT & HEALTH PROMOTION/PATIENT EXPERIENCE. IT SUPPORTS PRIMARY & BEHAVIORAL HEALTH CARE INTEGRATION (I.E. TEAM BASED CARE). THE GRANT PAYS FOR PERSONNEL INVOLVED IN THE OPERATION OF THE GRANT, AS WELL AS INDIRECT EXPENSES SUCH AS OFFICE SUPPLIES.

(Code: ) (Expenses $ 2,878,251 including grants of $ 0 ) (Revenue $ 0 )

HRSA FULL 330 HEALTH CENTER PROGRAM GRANT. SACHS IS A FEDERALLY QUALIFIED HEALTH CENTER (FQHC) RECEIVING A GRANT UNDER SECTION 330 OF THE PUBLIC HEALTH SERVICE (PHS) ACT (42 UNITED STATES CODE SECTION 254A). FQHCS ARE PAID BASED ON THE FQHC PROSPECTIVE PAYMENT SYSTEM (PPS) FOR MEDICALLY-NECESSARY PRIMARY HEALTH SERVICES AND QUALIFIED PREVENTIVE HEALTH SERVICES FURNISHED BY AN FQHC PRACTITIONER.

**4d** Other program services (Describe in Schedule O.)
(Expenses $ 2,878,251 including grants of $ 0 ) (Revenue $ 0 )

**4e** **Total program service expenses** ▶ 71,382,339

**Part IV Checklist of Required Schedules**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | 1 | Yes | |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors*? See instructions. | 2 | Yes | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | 3 | | No |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | 4 | | No |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Rev. Proc. 98-19? *If "Yes," complete Schedule C, Part III* | 5 | | No |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,* Part I | 6 | | No |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | 7 | | No |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III | 8 | | No |
| 9 | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | 9 | | No |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | 10 | Yes | |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X, as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. | 11a | Yes | |
| b | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | 11b | | No |
| c | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | 11c | | No |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | 11d | Yes | |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | 11e | | No |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | 11f | Yes | |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | 12a | Yes | |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | 12b | | No |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | 13 | | No |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | 14a | | No |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | 14b | | No |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | 15 | | No |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | 16 | | No |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I.* See instructions. | 17 | Yes | |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | 18 | | No |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | 19 | | No |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | 20a | | No |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | 20b | | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | 21 | Yes | |

**Part IV Checklist of Required Schedules** *(continued)*

| | | Line | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | | No |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5, about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | Yes | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | 24a | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L,* Part I | 25a | | No |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L,* Part I | 25b | | No |
| 26 | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | 26 | | No |
| 27 | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L,*Part III | 27 | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see the Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | 28a | | No |
| b | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | 28b | | No |
| c | A 35% controlled entity of one or more individuals and/or organizations described in line 28a or 28b? *If "Yes," complete Schedule L, Part IV* | 28c | | No |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | Yes | |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | No |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | No |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | | No |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | No |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | No |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | No |
| 38 | Did the organization complete Schedule O and provide explanations on Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. | 38 | Yes | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response or note to any line in this Part V ☐

| | | | | Line | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number reported in box 3 of Form 1096. Enter -0- if not applicable | 1a | 13 | | | |
| b | Enter the number of Forms W-2G included on line 1a. Enter -0- if not applicable | 1b | 0 | | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | | | 1c | | |

## Part V Statements Regarding Other IRS Filings and Tax Compliance *(continued)*

| Line | Question | Box | Amount | Line | Yes | No |
|---|---|---|---|---|---|---|
| 2a | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | 2a | 580 | | | |
| b | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file. See instructions. | | | 2b | Yes | |
| 3a | Did the organization have unrelated business gross income of $1,000 or more during the year? | | | 3a | | No |
| b | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation in Schedule O* | | | 3b | | |
| 4a | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | | 4a | | No |
| b | If "Yes," enter the name of the foreign country: ▶ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | | |
| 5a | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | | 5a | | No |
| b | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | | 5b | | No |
| c | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | | | 5c | | |
| 6a | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | | 6a | | No |
| b | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | | 6b | | |
| 7 | **Organizations that may receive deductible contributions under section 170(c).** | | | | | |
| a | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | | 7a | | No |
| b | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | | 7b | | |
| c | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | | 7c | | No |
| d | If "Yes," indicate the number of Forms 8282 filed during the year | 7d | | | | |
| e | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | | 7e | | No |
| f | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | | 7f | | No |
| g | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | | 7g | | |
| h | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | | 7h | | |
| 8 | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | | 8 | | |
| 9 | **Sponsoring organizations maintaining donor advised funds.** | | | | | |
| a | Did the sponsoring organization make any taxable distributions under section 4966? | | | 9a | | |
| b | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | | 9b | | |
| 10 | **Section 501(c)(7) organizations.** Enter: | | | | | |
| a | Initiation fees and capital contributions included on Part VIII, line 12 | 10a | | | | |
| b | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | 10b | | | | |
| 11 | **Section 501(c)(12) organizations.** Enter: | | | | | |
| a | Gross income from members or shareholders | 11a | | | | |
| b | Gross income from other sources. (Do not net amounts due or paid to other sources against amounts due or received from them.) | 11b | | | | |
| 12a | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | | 12a | | |
| b | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | 12b | | | | |
| 13 | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | | |
| a | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O. | | | 13a | | |
| b | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | 13b | | | | |
| c | Enter the amount of reserves on hand | 13c | | | | |
| 14a | Did the organization receive any payments for indoor tanning services during the tax year? | | | 14a | | No |
| b | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | | 14b | | |
| 15 | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see the instructions and file Form 4720, Schedule N. | | | 15 | | No |
| 16 | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | | 16 | | No |
| 17 | **Section 501(c)(21) organizations.** Did the trust, any disqualified person, or mine operator engage in any activities that would result in the imposition of an excise tax under section 4951, 4952, or 4953? If "Yes," complete Form 6069. | | | 17 | | |

**Part VI** **Governance, Management, and Disclosure.** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*
Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . . . . ☑

**Section A. Governing Body and Management**

| | | Line | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year — 1a: 13<br>If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent — 1b: 13 | | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | 2 | | No |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | 3 | Yes | |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | 4 | | No |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? | 5 | | No |
| 6 | Did the organization have members or stockholders? | 6 | | No |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | 7a | | No |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | 7b | | No |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | |
| a | The governing body? | 8a | Yes | |
| b | Each committee with authority to act on behalf of the governing body? | 8b | Yes | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | 9 | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | Line | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? | 10a | | No |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | 10b | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | 11a | | No |
| b | Describe on Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | 12a | Yes | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | 12b | Yes | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe on Schedule O how this was done* | 12c | Yes | |
| 13 | Did the organization have a written whistleblower policy? | 13 | Yes | |
| 14 | Did the organization have a written document retention and destruction policy? | 14 | Yes | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| a | The organization's CEO, Executive Director, or top management official | 15a | Yes | |
| b | Other officers or key employees of the organization | 15b | Yes | |
| | If "Yes" to line 15a or 15b, describe the process on Schedule O. See instructions. | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | 16a | | No |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | 16b | | |

**Section C. Disclosure**

17 List the states with which a copy of this Form 990 is required to be filed ▶ CA

18 Section 6104 requires an organization to make its Form 1023 (1024 or 1024-A, if applicable), 990, and 990-T (section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

19 Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

20 State the name, address, and telephone number of the person who possesses the organization's books and records:
▶DEL DENISE MORENO 250 S G STREET SAN BERNARDINO, CA 92410 (909) 259-9113

**Part VII Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . . . ☐

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See the instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (box 5 of Form W-2, Form 1099-MISC, and/or box 1 of Form 1099-NEC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See the instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position: Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (1) DR JASON LOHR<br>PRESIDENT & CEO | 40.00 | | | X | | | | 379,475 | 0 | 67,966 |
| (2) JUNE SULLIVAN<br>CHIEF PEOPLE OFFICER (THROUGH SEP 2021) | 40.00 | | | | X | | | 348,958 | 0 | 39,168 |
| (3) GERRARD GIER<br>CIO | 40.00 | | | X | | | | 235,199 | 0 | 40,205 |
| (4) LEE PODOLL<br>CHIEF BUSINESS STRATEGY OFFICER | 40.00 | | | | X | | | 202,738 | 0 | 59,637 |
| (5) DR MARYELLEN WESTERBERG<br>COO | 40.00 | | | X | | | | 226,800 | 0 | 34,326 |
| (6) JOHN SKELTON<br>CFO | 40.00 | | | X | | | | 211,419 | 0 | 34,129 |
| (7) YVETTE FELIPE<br>DENTIST | 40.00 | | | | | X | | 174,348 | 0 | 42,407 |
| (8) JOEL UMALI<br>DIRECTOR DENTAL CLINIC | 40.00 | | | | | X | | 157,133 | 0 | 52,056 |
| (9) MICHAEL CONRAD<br>NURSE PRACTITIONER | 40.00 | | | | | X | | 152,376 | 0 | 37,319 |
| (10) OSCAR LOPEZ<br>DENTIST | 40.00 | | | | | X | | 147,850 | 0 | 33,633 |
| (11) LADONNA OELSCHLAEGER<br>CI PHARM CQ PRGRM MGR | 40.00 | | | | | X | | 151,842 | 0 | 14,357 |
| (12) RODNEY NEAL<br>BOARD CHAIR | 0.80 | X | | X | | | | 0 | 0 | 0 |
| (13) RAUL CASTILLO<br>BOARD CO-CHAIR | 0.80 | X | | X | | | | 0 | 0 | 0 |
| (14) OLU TOMI DANIEL<br>BOARD SECRETARY | 0.80 | X | | X | | | | 0 | 0 | 0 |
| (15) ANN ATKINSON<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| (16) PETER BAKER<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| (17) JESSICA GARCIA<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |

**Part VII Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC/1099-NEC) | (E) Reportable compensation from related organizations (W-2/1099-MISC/1099-NEC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| (18) DR RICHARD HART<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| (19) DR MARILYN HERRMANN<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| (20) MATT LIST<br>BOARD MEMBER (THROUGH OCTOBER 2021) | 0.50 | X | | | | | | 0 | 0 | 0 |
| (21) LUISA LOUBRIEL<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| (22) PAT MORRIS<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| (23) DR ERIC NGO<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| (24) KEN RAMIREZ<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| (25) MAGDALENA WIESNER<br>BOARD MEMBER | 0.50 | X | | | | | | 0 | 0 | 0 |
| (26) ELAINE ZUCCO<br>BOARD MEMBER (THROUGH JULY 2021) | 0.50 | X | | | | | | 0 | 0 | 0 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| | (D) | (E) | (F) |
|---|---|---|---|
| **1b Sub-Total** ▶ | | | |
| **c Total from continuation sheets to Part VII, Section A** ▶ | | | |
| **d Total (add lines 1b and 1c)** ▶ | 2,388,138 | 0 | 455,203 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 39

| | | | Yes | No |
|---|---|---|---|---|
| **3** | Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* | 3 | | No |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* | 4 | Yes | |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization?*If "Yes," complete Schedule J for such person* | 5 | | No |

## Section B. Independent Contractors

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| FACULTY PHYSICIANS & SURGEONS OF LLUSM<br>350 E COMMERCIAL RD 101<br>SAN BERNARDINO, CA 92408 | PHYSICIAN SERVICES | 13,958,616 |
| LLU HEALTH EDUCATION CONSORTIUM<br>11165 MOUNTAIN VIEW AVE<br>LOMA LINDA, CA 92350 | RESIDENTS CONTRACTOR | 3,718,751 |
| 518 MEDICAL PROFESSIONALS<br>PO BOX 910569<br>SAN DIEGO, CA 921910569 | PROFESSIONAL STAFFING SERVICES | 1,058,119 |
| 7 LAYER IT SOLUTIONS INC<br>8921 FULLBRIGHT AVE<br>CHATSWORTH, CA 91311 | TECH SUPPORT SERVICES | 1,039,123 |
| ALLIED UNIVERSAL SECURITY SERVICES<br>PO BOX 31001-2374<br>PASADENA, CA 911102374 | SECURITY SERVICES | 606,165 |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ 23

**Part VIII Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII ☐

| | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| **Contributions, gifts, grants, and other similar amounts** | | | | | | |
| 1a Federated campaigns | 1a | | | | | |
| b Membership dues | 1b | | | | | |
| c Fundraising events | 1c | | | | | |
| d Related organizations | 1d | | | | | |
| e Government grants (contributions) | 1e | 15,766,408 | | | | |
| f All other contributions, gifts, grants, and similar amounts not included above | 1f | 5,025,582 | | | | |
| g Noncash contributions included in lines 1a - 1f:$ | 1g | 3,148,422 | | | | |
| h **Total.** Add lines 1a-1f ▶ | | | 20,791,990 | | | |
| **Program Service Revenue** | Business Code | | | | | |
| 2a PATIENT CARE REVENUE | 621400 | | 71,076,846 | 71,076,846 | | |
| b CAPITATION REVENUE | 621400 | | 8,337,129 | 8,337,129 | | |
| c | | | | | | |
| d | | | | | | |
| e | | | | | | |
| f All other program service revenue. | | | | | | |
| g **Total.** Add lines 2a–2f. ▶ | | | 79,413,975 | | | |
| **Other Revenue** | | | | | | |
| 3 Investment income (including dividends, interest, and other similar amounts) ▶ | | | 8,040 | | | 8,040 |
| 4 Income from investment of tax-exempt bond proceeds ▶ | | | | | | |
| 5 Royalties ▶ | | | | | | |
| | (i) Real | (ii) Personal | | | | |
| 6a Gross rents (6a) | | | | | | |
| b Less: rental expenses (6b) | | | | | | |
| c Rental income or (loss) (6c) | | | | | | |
| d Net rental income or (loss) ▶ | | | | | | |
| | (i) Securities | (ii) Other | | | | |
| 7a Gross amount from sales of assets other than inventory (7a) | | | | | | |
| b Less: cost or other basis and sales expenses (7b) | | | | | | |
| c Gain or (loss) (7c) | | | | | | |
| d Net gain or (loss) ▶ | | | | | | |
| 8a Gross income from fundraising events (not including $ of contributions reported on line 1c). See Part IV, line 18 | 8a | | | | | |
| b Less: direct expenses | 8b | | | | | |
| c Net income or (loss) from fundraising events ▶ | | | | | | |
| 9a Gross income from gaming activities. See Part IV, line 19 | 9a | | | | | |
| b Less: direct expenses | 9b | | | | | |
| c Net income or (loss) from gaming activities ▶ | | | | | | |
| 10a Gross sales of inventory, less returns and allowances | 10a | | | | | |
| b Less: cost of goods sold | 10b | | | | | |
| c Net income or (loss) from sales of inventory ▶ | | | | | | |
| Miscellaneous Revenue | Business Code | | | | | |
| 11a OTHER INCOME | 900099 | | 1,858,335 | | | 1,858,335 |
| b | | | | | | |
| c | | | | | | |
| d All other revenue | | | | | | |
| e **Total.** Add lines 11a–11d ▶ | | | 1,858,335 | | | |
| 12 **Total revenue.** See instructions ▶ | | | 102,072,340 | 79,413,975 | 0 | 1,866,375 |

**Part IX Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . . . ☑

| **Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII.** | **(A)** Total expenses | **(B)** Program service expenses | **(C)** Management and general expenses | **(D)** Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 . . . . | 61,362 | 61,362 | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 . . . . . . . . . . . . | | | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. . . . . . . . . . . . . . | | | | |
| **4** Benefits paid to or for members . . . . . . . | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees . . . . . . . . . . . | 2,328,814 | | 2,328,814 | |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . . . . . . . . | | | | |
| **7** Other salaries and wages . . . . . . . . . | 27,110,069 | 14,252,877 | 12,857,192 | |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) . . . . | 1,653,005 | 956,557 | 696,448 | |
| **9** Other employee benefits . . . . . . . | 6,070,072 | 3,149,518 | 2,920,554 | |
| **10** Payroll taxes . . . . . . . . . . . . | 2,229,166 | 1,120,567 | 1,108,599 | |
| **11** Fees for services (non-employees): | | | | |
| **a** Management . . . . . . . | | | | |
| **b** Legal . . . . . . . . . . | 482,204 | 13,500 | 468,704 | |
| **c** Accounting . . . . . . . . . . . . . | 37,660 | | 37,660 | |
| **d** Lobbying . . . . . . . . . . . . . | | | | |
| **e** Professional fundraising services. See Part IV, line 17 | 153,135 | | | 153,135 |
| **f** Investment management fees . . . . . . | | | | |
| **g** Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 26,324,011 | 20,743,808 | 5,580,203 | |
| **12** Advertising and promotion . . . . | | | | |
| **13** Office expenses . . . . . . . . | 1,128,931 | 327,294 | 801,637 | |
| **14** Information technology . . . . . . | 1,263,413 | 92,693 | 1,170,720 | |
| **15** Royalties . . | | | | |
| **16** Occupancy . . . . . . . . . . . . . | 6,176,407 | 4,771,338 | 1,405,069 | |
| **17** Travel . . . . . . . . . . . . . . | 93,001 | 49,567 | 43,434 | |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials . | | | | |
| **19** Conferences, conventions, and meetings . . . . | | | | |
| **20** Interest . . . . . . . . . . . . . | 270,997 | 14,294 | 256,703 | |
| **21** Payments to affiliates . . . . . . . . | | | | |
| **22** Depreciation, depletion, and amortization . . | 692,622 | 355,531 | 337,091 | |
| **23** Insurance . . . | 370,132 | 4,194 | 365,938 | |
| **24** Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** MEDICAL SUPPLIES | 5,084,614 | 4,970,784 | 113,830 | |
| **b** EQUIPMENT | 475,157 | 124,345 | 350,812 | |
| **c** OTHER EXPENSES | 349,932 | 13,123 | 336,809 | |
| **d** DUES & SUBSCRIPTIONS | 132,468 | 27,755 | 104,713 | |
| **e** All other expenses | 239,871 | 20,333,232 | -20,093,361 | |
| **25** **Total functional expenses.** Add lines 1 through 24e | 82,727,043 | 71,382,339 | 11,191,569 | 153,135 |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

**Part X Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . ☐

| Section | Line | Description | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|---|---|
| Assets | 1 | Cash–non-interest-bearing | | | 5,971,827 | 1 | 12,281,309 |
| | 2 | Savings and temporary cash investments | | | 642,159 | 2 | 819,500 |
| | 3 | Pledges and grants receivable, net | | | 4,774,699 | 3 | 3,423,943 |
| | 4 | Accounts receivable, net | | | 4,544,094 | 4 | 6,387,354 |
| | 5 | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | | 5 | |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | | | 6 | |
| | 7 | Notes and loans receivable, net | | | 514,653 | 7 | 586,930 |
| | 8 | Inventories for sale or use | | | 58,366 | 8 | 65,729 |
| | 9 | Prepaid expenses and deferred charges | | | 339,307 | 9 | 617,837 |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | 10a | 10,755,370 | | | |
| | b | Less: accumulated depreciation | 10b | 4,893,680 | 3,315,318 | 10c | 5,861,690 |
| | 11 | Investments—publicly traded securities | | | | 11 | |
| | 12 | Investments—other securities. See Part IV, line 11 | | | | 12 | |
| | 13 | Investments—program-related. See Part IV, line 11 | | | | 13 | |
| | 14 | Intangible assets | | | | 14 | |
| | 15 | Other assets. See Part IV, line 11 | | | 590,088 | 15 | 9,317,884 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) | | | 20,750,511 | 16 | 39,362,176 |
| Liabilities | 17 | Accounts payable and accrued expenses | | | 8,191,519 | 17 | 5,335,713 |
| | 18 | Grants payable | | | | 18 | |
| | 19 | Deferred revenue | | | 2,132,080 | 19 | 1,225,324 |
| | 20 | Tax-exempt bond liabilities | | | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | | 338,268 | 23 | 211,760 |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | | 2,903,668 | 24 | 5,553,834 |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | | | 600 | 25 | 0 |
| | 26 | **Total liabilities.** Add lines 17 through 25 | | | 13,566,135 | 26 | 12,326,631 |
| Net Assets or Fund Balances | | **Organizations that follow FASB ASC 958, check here ▶ ☑ and complete lines 27, 28, 32, and 33.** | | | | | |
| | 27 | Net assets without donor restrictions | | | 6,786,674 | 27 | 26,204,273 |
| | 28 | Net assets with donor restrictions | | | 397,702 | 28 | 831,272 |
| | | **Organizations that do not follow FASB ASC 958, check here ▶ ☐ and complete lines 29 through 33.** | | | | | |
| | 29 | Capital stock or trust principal, or current funds | | | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund | | | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds | | | | 31 | |
| | 32 | Total net assets or fund balances | | | 7,184,376 | 32 | 27,035,545 |
| | 33 | Total liabilities and net assets/fund balances | | | 20,750,511 | 33 | 39,362,176 |

## Part XI Reconcilliation of Net Assets

Check if Schedule O contains a response or note to any line in this Part XI ☐

| | | Line | Amount |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 102,072,340 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | 2 | 82,727,043 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | 3 | 19,345,297 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) | 4 | 7,184,376 |
| 5 | Net unrealized gains (losses) on investments | 5 | 58,130 |
| 6 | Donated services and use of facilities | 6 | |
| 7 | Investment expenses | 7 | |
| 8 | Prior period adjustments | 8 | 447,742 |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | 0 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | 10 | 27,035,545 |

## Part XII Financial Statements and Reporting

Check if Schedule O contains a response or note to any line in this Part XII ☐

| | | Line | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash ☑ Accrual ☐ Other ____<br>If the organization changed its method of accounting from a prior year or checked "Other," explain on Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | 2a | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? | 2b | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both:<br>☑ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| c | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | 2c | Yes | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | 3a | Yes | |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | 3b | Yes | |

| efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135188613 |
|---|---|---|

**SCHEDULE A (Form 990)**

Department of the Treasury Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**

▶ **Attach to Form 990 or Form 990-EZ.**

▶ **Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

**Name of the organization**
SAC HEALTH SYSTEM

**Employer identification number**
33-0664371

**Part I Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990).)

3 ☑ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)**. (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box on lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 

g Provide the following information about the supported organization(s).

| **(i)** Name of supported organization | **(ii)** EIN | **(iii)** Type of organization (described on lines 1- 10 above (see instructions)) | **(iv)** Is the organization listed in your governing document? | | **(v)** Amount of monetary support (see instructions) | **(vi)** Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | **Yes** | **No** | | |
| | | | | | | |
| | | | | | | |
| **Total** | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 11285F **Schedule A (Form 990) 2021**

**Part II** **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2017 | **(b)** 2018 | **(c)** 2019 | **(d)** 2020 | **(e)** 2021 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") . . | | | | | | |
| **2** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . . | | | | | | |
| **3** The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| **4** **Total.** Add lines 1 through 3 | | | | | | |
| **5** The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f) . . | | | | | | |
| **6** **Public support.** Subtract line 5 from line 4. | | | | | | |

**Section B. Total Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2017 | **(b)** 2018 | **(c)** 2019 | **(d)** 2020 | **(e)** 2021 | **(f)** Total |
|---|---|---|---|---|---|---|
| **7** Amounts from line 4. . | | | | | | |
| **8** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . . | | | | | | |
| **9** Net income from unrelated business activities, whether or not the business is regularly carried on. . | | | | | | |
| **10** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). . | | | | | | |
| **11** **Total support.** Add lines 7 through 10 | | | | | | |

**12** Gross receipts from related activities, etc. (see instructions) . . . . . . . . . . . . . . . . . . . . **12**

**13** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

**14** Public support percentage for 2021 (line 6, column (f) divided by line 11, column (f)) . . . . . . . . . **14**

**15** Public support percentage for 2020 Schedule A, Part II, line 14 . . . . . . . . . . . . . . . **15**

**16a** **33 1/3% support test—2021.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . ▶ ☐

**b** **33 1/3% support test—2020.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . ▶ ☐

**17a** **10%-facts-and-circumstances test—2021.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . . ▶ ☐

**b** **10%-facts-and-circumstances test—2020.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . . ▶ ☐

**18** **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . . . . . ▶ ☐

**Part III** **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

**Section A. Public Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2017 | **(b)** 2018 | **(c)** 2019 | **(d)** 2020 | **(e)** 2021 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . . | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| **c** Add lines 7a and 7b. . | | | | | | |
| **8** **Public support.** (Subtract line 7c from line 6.) | | | | | | |

**Section B. Total Support**

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2017 | **(b)** 2018 | **(c)** 2019 | **(d)** 2020 | **(e)** 2021 | **(f)** Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6. . . | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| **c** Add lines 10a and 10b. | | | | | | |
| **11** Net income from unrelated business activities not included on line 10b, whether or not the business is regularly carried on. | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12.). . | | | | | | |

**14** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. . . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

| | | | |
|---|---|---|---|
| **15** | Public support percentage for 2021 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . | **15** | |
| **16** | Public support percentage from 2020 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . . | **16** | |

**Section D. Computation of Investment Income Percentage**

| | | | |
|---|---|---|---|
| **17** | Investment income percentage for **2021** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | **17** | |
| **18** | Investment income percentage from **2020** Schedule A, Part III, line 17 . . . . . . . . . . . . . . | **18** | |

**19a** **33 1/3% support tests-2021.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . ▶ ☐

**b** **33 1/3% support tests—2020.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐

**Part IV** **Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | Line | Yes | No |
|---|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in* ***Part VI*** *how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | 1 | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in* ***Part VI*** *how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | 2 | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | 3a | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in* ***Part VI*** *when and how the organization made the determination.* | 3b | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in* ***Part VI*** *what controls the organization put in place to ensure such use.* | 3c | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | 4a | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in* ***Part VI*** *how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | 4b | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in* ***Part VI*** *what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | 4c | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in* ***Part VI,*** *including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | 5a | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | 5b | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | 5c | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in* ***Part VI.*** | 6 | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990) .* | 7 | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described on line 7? *If "Yes," complete Part I of Schedule L (Form 990).* | 8 | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in* ***Part VI.*** | 9a | | |
| **b** | Did one or more disqualified persons (as defined on line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in* ***Part VI.*** | 9b | | |
| **c** | Did a disqualified person (as defined on line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in* ***Part VI.*** | 9c | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | 10a | | |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | 10b | | |

**Part IV Supporting Organizations** (continued)

| | | | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described on lines 11b and 11c below, the governing body of a supported organization? | **11a** | | |
| **b** | A family member of a person described on 11a above? | **11b** | | |
| **c** | A 35% controlled entity of a person described on line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in* ***Part VI***. | **11c** | | |

**Section B. Type I Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in* ***Part VI*** *how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in* ***Part VI*** *how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | **2** | | |

**Section C. Type II Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in* ***Part VI*** *how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** | | |

**Section D. All Type III Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in* ***Part VI*** *how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** | | |
| **3** | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in* ***Part VI*** *the role the organization's supported organizations played in this regard.* | **3** | | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

**1** Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

- **a** ☐ The organization satisfied the Activities Test. Complete **line 2** below.
- **b** ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.
- **c** ☐ The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

| | | | Yes | No |
|---|---|---|---|---|
| **2** | Activities Test. **Answer lines 2a and 2b below.** | | | |
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in* ***Part VI identify those supported organizations and explain*** *how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** | | |
| **b** | Did the activities described on line 2a, above constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in* ***Part VI*** *the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** | | |
| **3** | Parent of Supported Organizations. **Answer lines 3a and 3b below.** | | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations?*If "Yes" or "No", provide details in* ***Part VI.*** | **3a** | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in* ***Part VI.*** *the role played by the organization in this regard.* | **3b** | | |

**Part V** **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations**

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 *(explain in **Part VI**)*. **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| | **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | 1 | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| e | **Discount** claimed for blockage or other factors (*explain in detail in **Part VI***): | | | |
| 2 | Acquisition indebtedness applicable to non-exempt use assets | 2 | | |
| 3 | Subtract line 2 from line 1d | 3 | | |
| 4 | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | 4 | | |
| 5 | Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| 6 | Multiply line 5 by 0.035 | 6 | | |
| 7 | Recoveries of prior-year distributions | 7 | | |
| 8 | **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |

| | **Section C - Distributable Amount** | | | Current Year |
|---|---|---|---|---|
| 1 | Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | | |
| 2 | Enter 85% of line 1 | 2 | | |
| 3 | Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | | |
| 4 | Enter greater of line 2 or line 3 | 4 | | |
| 5 | Income tax imposed in prior year | 5 | | |
| 6 | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | | |

7 ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Part V** **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** (continued)

| **Section D - Distributions** | | **Current Year** |
|---|---|---|
| **1** Amounts paid to supported organizations to accomplish exempt purposes | **1** | |
| **2** Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | **2** | |
| **3** Administrative expenses paid to accomplish exempt purposes of supported organizations | **3** | |
| **4** Amounts paid to acquire exempt-use assets | **4** | |
| **5** Qualified set-aside amounts (*prior IRS approval required - provide details in* ***Part VI***) | **5** | |
| **6** Other distributions (*describe in* ***Part VI***). See instructions | **6** | |
| **7** **Total annual distributions.** Add lines 1 through 6. | **7** | |
| **8** Distributions to attentive supported organizations to which the organization is responsive (*provide details in* ***Part VI***). See instructions | **8** | |
| **9** Distributable amount for 2021 from Section C, line 6 | **9** | |
| **10** Line 8 amount divided by Line 9 amount | **10** | |

| **Section E - Distribution Allocations** (see instructions) | **(i) Excess Distributions** | **(ii) Underdistributions Pre-2021** | **(iii) Distributable Amount for 2021** |
|---|---|---|---|
| **1** Distributable amount for 2021 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2021 (reasonable cause required-- *explain in* ***Part VI***). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2021: | | | |
| **a** From 2016. . . . . . . . | | | |
| **b** From 2017. . . . . . . . | | | |
| **c** From 2018. . . . . . . . | | | |
| **d** From 2019. . . . . . . . | | | |
| **e** From 2020. . . . . . . . | | | |
| **f** **Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2021 distributable amount | | | |
| **i** Carryover from 2016 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** Distributions for 2021 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2021 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2021, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **6** Remaining underdistributions for 2021. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **7** **Excess distributions carryover to 2022.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2017. . . . . | | | |
| **b** Excess from 2018. . . . . | | | |
| **c** Excess from 2019. . . . . | | | |
| **d** Excess from 2020. . . . . | | | |
| **e** Excess from 2021. . . . . | | | |

**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions).

**Facts And Circumstances Test**

| Return Reference | Explanation |
| --- | --- |

| efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135188613 |
|---|---|---|

**SCHEDULE D (Form 990)**

Department of the Treasury Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990* for instructions and the latest information.

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

**Name of the organization**
SAC HEALTH SYSTEM

**Employer identification number**
33-0664371

## Part I Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.

Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

## Part II Conservation Easements.

Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

☐ Preservation of land for public use (e.g., recreation or education)
☐ Preservation of an historically important land area
☐ Protection of natural habitat
☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶

4 Number of states where property subject to conservation easement is located ▶

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

## Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.

Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 ▶ $

(ii) Assets included in Form 990, Part X ▶ $

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 ▶ $

b Assets included in Form 990, Part X ▶ $

**Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

3 Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a ☐ Public exhibition

b ☐ Scholarly research

c ☐ Preservation for future generations

d ☐ Loan or exchange programs

e ☐ Other

4 Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

5 During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection?. . . ☐ Yes ☐ No

**Part IV Escrow and Custodial Arrangements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

1a Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? ☐ Yes ☐ No

| | | | Amount |
|---|---|---|---|
| b | If "Yes," explain the arrangement in Part XIII and complete the following table: | | |
| c | Beginning balance | 1c | |
| d | Additions during the year | 1d | |
| e | Distributions during the year | 1e | |
| f | Ending balance | 1f | |

2a Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V Endowment Funds.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|
| 1a Beginning of year balance | 134,372 | 127,906 | 122,643 | 74,782 | 70,216 |
| b Contributions | | | | 43,615 | |
| c Net investment earnings, gains, and losses | 12,620 | 6,466 | 5,263 | 4,246 | 4,566 |
| d Grants or scholarships | | | | | |
| e Other expenditures for facilities and programs | | | | | |
| f Administrative expenses | | | | | |
| g End of year balance | 146,992 | 134,372 | 127,906 | 122,643 | 74,782 |

2 Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

a Board designated or quasi-endowment ▶ 0 %

b Permanent endowment ▶ 10.000 %

c Term endowment ▶ 90.000 %

The percentages on lines 2a, 2b, and 2c should equal 100%.

3a Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | | Yes | No |
|---|---|---|---|---|
| | (i) Unrelated organizations | 3a(i) | | No |
| | (ii) Related organizations | 3a(ii) | | No |
| b | If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? | 3b | | |

4 Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI Land, Buildings, and Equipment.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| 1a Land | | 399,311 | | 399,311 |
| b Buildings | | 5,386,062 | 2,456,912 | 2,929,150 |
| c Leasehold improvements | | 10,700 | 10,700 | 0 |
| d Equipment | | 3,997,584 | 2,426,068 | 1,571,516 |
| e Other | | 961,713 | | 961,713 |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* ▶ | | | | 5,861,690 |

**Part VII** **Investments - Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b.See Form 990, Part X, line 12.

| **(a)** Description of security or category (including name of security) | **(b)** Book value | **(c)** Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives | | |
| **(2)** Closely-held equity interests | | |
| **(3)**Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col. (B) line 12.)* ▶ | | |

**Part VIII** **Investments - Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| **(a)** Description of investment | **(b)** Book value | **(c)** Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** | | |
| **(2)** | | |
| **(3)** | | |
| **(4)** | | |
| **(5)** | | |
| **(6)** | | |
| **(7)** | | |
| **(8)** | | |
| **(9)** | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 13.)* ▶ | | |

**Part IX** **Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| **(a)** Description | **(b)** Book value |
|---|---|
| **(1)**ESTIMATED THIRD PARTY SETTLEMENT | 9,262,797 |
| **(2)**DEPOSITS | 55,087 |
| **(2)** | |
| **(3)** | |
| **(4)** | |
| **(5)** | |
| **(6)** | |
| **(7)** | |
| **(8)** | |
| **(9)** | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* ▶ | 9,317,884 |

**Part X** **Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f.See Form 990, Part X, line 25.

| **1.** **(a)** Description of liability | **(b)** Book value |
|---|---|
| **(1)** Federal income taxes | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 25.)* ▶ | |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☑

**Part XI** **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | 102,976,901 |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains (losses) on investments | 2a | | | |
| b | Donated services and use of facilities | 2b | 900,000 | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | 17,281 | | |
| e | Add lines **2a** through **2d** | | | 2e | 917,281 |
| 3 | Subtract line **2e** from line **1** | | | 3 | 102,059,620 |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | 12,720 | | |
| c | Add lines **4a** and **4b** | | | 4c | 12,720 |
| 5 | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) | | | 5 | 102,072,340 |

**Part XII** **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | 1 | 83,627,043 |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | 2a | 900,000 | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | | | |
| e | Add lines **2a** through **2d** | | | 2e | 900,000 |
| 3 | Subtract line **2e** from line **1** | | | 3 | 82,727,043 |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | | | |
| c | Add lines **4a** and **4b** | | | 4c | 0 |
| 5 | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) | | | 5 | 82,727,043 |

**Part XIII** **Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| PART V, LINE 4: | THE ENDOWMENT'S PRINCIPAL MAY NOT BE SPENT, BUT THE INCOME CAN BE EXPENDED AS OPERATING FUNDS FOR THE SACHS CLINICS. |
| PART X, LINE 2: | THE ORGANIZATION IS A PRIVATE NONPROFIT CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF CALIFORNIA. THE ORGANIZATION HAS BEEN DETERMINED TO BE EXEMPT FROM INCOME TAXES UNDER SECTION 501(C) (3) OF THE INTERNAL REVENUE CODE AND SECTION 23701(D) OF THE STATE OF CALIFORNIA REVENUE AND TAXATION CODE BY THE IRS AND FRANCHISE TAX BOARD, RESPECTIVELY. ACCORDINGLY, NO PROVISION FOR INCOME TAXES IS INCLUDED IN THE ACCOMPANYING FINANCIAL STATEMENTS. THE ORGANIZATION FOLLOWS THE PROVISIONS OF FASB ASC 74010, INCOME TAXES, RELATING TO ACCOUNTING FOR UNCERTAIN TAX POSITIONS, WHICH HAS NO FINANCIAL STATEMENT IMPACT TO THE ORGANIZATION. THE ORGANIZATION RECOGNIZES THE TAX BENEFIT FROM UNCERTAIN TAX POSITIONS ONLY IF IT IS MORE LIKELY THAN NOT THAT THE TAX POSITIONS WILL BE SUSTAINED ON EXAMINATION BY THE TAX AUTHORITIES, BASED ON THE TECHNICAL MERITS OF THE POSITION. THE TAX BENEFIT IS MEASURED BASED ON THE LARGEST BENEFIT THAT HAS A GREATER THAN 50% LIKELIHOOD OF BEING REALIZED UPON ULTIMATE SETTLEMENT. THERE WERE NO UNCERTAIN TAX POSITIONS AS OF JUNE 30, 2022 OR 2021. |
| PART XI, LINE 2D - OTHER ADJUSTMENTS: | NET ASSETS RELEASED FROM RESTRICTIONS 17,281. |
| PART XI, LINE 4B - OTHER ADJUSTMENTS: | CONTRIBUTIONS WITH DONOR RESTRICTIONS 12,720. |

efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135188613

**SCHEDULE G (Form 990)**

Department of the Treasury Internal Revenue Service

# Supplemental Information Regarding Fundraising or Gaming Activities

**Complete if the organization answered "Yes" on Form 990, Part IV, lines 17, 18, or 19, or if the organization entered more than $15,000 on Form 990-EZ, line 6a.**

**▶Attach to Form 990 or Form 990-EZ.**

**▶Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Name of the organization
SAC HEALTH SYSTEM

**Employer identification number**
33-0664371

**Part I** **Fundraising Activities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 17. Form 990-EZ filers are not required to complete this part.

**1** Indicate whether the organization raised funds through any of the following activities. Check all that apply.

- **a** ☐ Mail solicitations
- **b** ☐ Internet and email solicitations
- **c** ☐ Phone solicitations
- **d** ☐ In-person solicitations
- **e** ☑ Solicitation of non-government grants
- **f** ☑ Solicitation of government grants
- **g** ☐ Special fundraising events

**2a** Did the organization have a written or oral agreement with any individual (including officers, directors, trustees or key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services? ☑ **Yes** ☐ **No**

**b** If "Yes," list the 10 highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is to be compensated at least $5,000 by the organization.

| | **(i)** Name and address of individual or entity (fundraiser) | **(ii)** Activity | **(iii)** Did fundraiser have custody or control of contributions? Yes | No | **(iv)** Gross receipts from activity | **(v)** Amount paid to (or retained by) fundraiser listed in col. **(i)** | **(vi)** Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|---|
| 1 | AM DEVELOPMENT GROUP<br>10250 FARMINGTON STREET<br>OAK HILLS, CA 92344 | CONSULTANT & GRANT WRITER | | No | 12,242,994 | 153,135 | 12,089,859 |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| **Total** ▶ | | | | | 12,242,994 | 153,135 | 12,089,859 |

**3** List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from registration or licensing.

CA, MD

**Part II Fundraising Events.** Complete if the organization answered "Yes" on Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b. List events with gross receipts greater than $5,000.

| | | (a) Event #1<br>(event type) | (b) Event #2<br>(event type) | (c) Other events<br>(total number) | (d) Total events (add col. (a) through col. (c)) |
|---|---|---|---|---|---|
| Revenue | 1 Gross receipts | | | | |
| | 2 Less: Contributions | | | | |
| | 3 Gross income (line 1 minus line 2) | | | | |
| Direct Expenses | 4 Cash prizes | | | | |
| | 5 Noncash prizes | | | | |
| | 6 Rent/facility costs | | | | |
| | 7 Food and beverages | | | | |
| | 8 Entertainment | | | | |
| | 9 Other direct expenses | | | | |
| | 10 Direct expense summary. Add lines 4 through 9 in column (d) ▶ | | | | |
| | 11 Net income summary. Subtract line 10 from line 3, column (d) ▶ | | | | |

**Part III Gaming.** Complete if the organization answered "Yes" on Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a.

| | | (a) Bingo | (b) Pull tabs/Instant bingo/progressive bingo | (c) Other gaming | (d) Total gaming (add col. (a) through col. (c)) |
|---|---|---|---|---|---|
| Revenue | 1 Gross revenue | | | | |
| Direct Expenses | 2 Cash prizes | | | | |
| | 3 Noncash prizes | | | | |
| | 4 Rent/facility costs | | | | |
| | 5 Other direct expenses | | | | |
| | 6 Volunteer labor | ☐ Yes ____ %<br>☐ No | ☐ Yes ____ %<br>☐ No | ☐ Yes ____ %<br>☐ No | |
| | 7 Direct expense summary. Add lines 2 through 5 in column (d) ▶ | | | | |
| | 8 Net gaming income summary. Subtract line 7 from line 1, column (d) ▶ | | | | |

9 Enter the state(s) in which the organization conducts gaming activities: ____________________

a Is the organization licensed to conduct gaming activities in each of these states? ☐ Yes ☐ No

b If "No," explain: ____________________

10a Were any of the organization's gaming licenses revoked, suspended or terminated during the tax year? ☐ Yes ☐ No

b If "Yes," explain: ____________________

**11** Does the organization conduct gaming activities with nonmembers? ☐ **Yes** ☐ **No**

**12** Is the organization a grantor, beneficiary or trustee of a trust or a member of a partnership or other entity formed to administer charitable gaming? ☐ **Yes** ☐ **No**

**13** Indicate the percentage of gaming activity conducted in:

| | | | |
|---|---|---|---|
| **a** | The organization's facility | **13a** | % |
| **b** | An outside facility | **13b** | % |

**14** Enter the name and address of the person who prepares the organization's gaming/special events books and records:

Name ▶

Address ▶

**15a** Does the organization have a contract with a third party from whom the organization receives gaming revenue? ☐ **Yes** ☐ **No**

**b** If "Yes," enter the amount of gaming revenue received by the organization ▶ $ ____________ and the amount of gaming revenue retained by the third party ▶ $ ____________.

**c** If "Yes," enter name and address of the third party:

Name ▶

Address ▶

**16** Gaming manager information:

Name ▶

Gaming manager compensation ▶ $

Description of services provided ▶

☐ Director/officer ☐ Employee ☐ Independent contractor

**17** Mandatory distributions:

**a** Is the organization required under state law to make charitable distributions from the gaming proceeds to retain the state gaming license? ☐ Yes ☐ No

**b** Enter the amount of distributions required under state law distributed to other exempt organizations or spent in the organization's own exempt activities during the tax year ▶ $

**Part IV** **Supplemental Information.** Provide the explanations required by Part I, line 2b, columns (iii) and (v); and Part III, lines 9, 9b, 10b, 15b, 15c, 16, and 17b, as applicable. Also provide any additional information. See instructions.

| Return Reference | Explanation |
|---|---|

efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135188613

**Note: To capture the full content of this document, please select landscape mode (11" x 8.5") when printing.**

**Schedule I (Form 990)**

Department of the Treasury
Internal Revenue Service

# Grants and Other Assistance to Organizations, Governments and Individuals in the United States

**Complete if the organization answered "Yes," on Form 990, Part IV, line 21 or 22.**
**▶ Attach to Form 990.**
**▶ Go to *www.irs.gov/Form990* for the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Name of the organization
SAC HEALTH SYSTEM

**Employer identification number**
33-0664371

## Part I General Information on Grants and Assistance

1 Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . ☑ **Yes** ☐ **No**

2 Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

## Part II Grants and Other Assistance to Domestic Organizations and Domestic Governments.

Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| **(a)** Name and address of organization or government | **(b)** EIN | **(c)** IRC section (if applicable) | **(d)** Amount of cash grant | **(e)** Amount of non-cash assistance | **(f)** Method of valuation (book, FMV, appraisal, other) | **(g)** Description of noncash assistance | **(h)** Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| (1) LOMA LINDA CHILDREN'S HOSPITAL FOUNDATION 11234 ANDERSON STREET LOMA LINDA, CA 92354 | 33-0565591 | 501(C)(3) | 10,000 | 0 | | | DONATION TO 29TH ANNUAL FOUNDATION GALA |
| (2) COACHELLA VALLEY RESCUE MISSION 47470 VAN BUREN INDIO, CA 92201 | 95-2684844 | 501(C)(3) | 33,962 | 0 | | | GENERAL OPERATING SUPPORT |

2 Enter total number of section 501(c)(3) and government organizations listed in the line 1 table . . . . . . . . ▶

3 Enter total number of other organizations listed in the line 1 table . . . . . . . . ▶

**Part III** **Grants and Other Assistance to Domestic Individuals.** Complete if the organization answered "Yes" on Form 990, Part IV, line 22. Part III can be duplicated if additional space is needed.

| **(a)** Type of grant or assistance | **(b)** Number of recipients | **(c)** Amount of cash grant | **(d)** Amount of noncash assistance | **(e)** Method of valuation (book, FMV, appraisal, other) | **(f)** Description of noncash assistance |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| (5) | | | | | |
| (6) | | | | | |
| (7) | | | | | |

**Part IV** **Supplemental Information.** Provide the information required in Part I, line 2; Part III, column (b); and any other additional information.

| **Return Reference** | **Explanation** |
|---|---|
| PART I, LINE 2: | PRIOR TO SPONSORING A LOCAL CHARITY, SAC HEALTH SYSTEM CONFIRMS THAT THE RECIPIENT IS A QUALIFIED CHARITABLE ORGANIZATION OR GOVERNMENTAL AGENCY. ALL SPONSORSHIPS ARE GIVEN FOR GENERAL OPERATING SUPPORT, SO NO FOLLOW-UP IS CONDUCTED. |

| efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135188613 |
|---|---|---|

**Schedule J (Form 990)**

Department of the Treasury Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**▶ Attach to Form 990.**
**▶ Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Name of the organization
SAC HEALTH SYSTEM

**Employer identification number**
33-0664371

## Part I Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropiate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel<br>☐ Travel for companions<br>☑ Tax idemnification and gross-up payments<br>☐ Discretionary spending account<br>☐ Housing allowance or residence for personal use<br>☐ Payments for business use of personal residence<br>☐ Health or social club dues or initiation fees<br>☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | 1b | Yes | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? | 2 | | No |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☑ Compensation committee<br>☑ Independent compensation consultant<br>☐ Form 990 of other organizations<br>☐ Written employment contract<br>☑ Compensation survey or study<br>☑ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? | 4a | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | 4b | | No |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? | 4c | | No |
| | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? | 5a | | No |
| **b** | Any related organization? | 5b | | No |
| | If "Yes," on line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? | 6a | | No |
| **b** | Any related organization? | 6b | | No |
| | If "Yes," on line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III | 7 | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III | 8 | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? | 9 | | |

**Part II** **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| **(A)** Name and Title | | **(B)** Breakdown of W-2, 1099-MISC compensation, and/or 1099-NEC | | | **(C)** Retirement and other deferred compensation | **(D)** Nontaxable benefits | **(E)** Total of columns (B)(i)-(D) | **(F)** Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | **(i)** Base compensation | **(ii)** Bonus & incentive compensation | **(iii)** Other reportable compensation | | | | |
| **1** DR JASON LOHR<br>PRESIDENT & CEO | **(i)** | 377,875 | 1,600 | 0 | 30,698 | 37,268 | 447,441 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **2** JUNE SULLIVAN<br>CHIEF PEOPLE OFFICER (THROUGH SEP 20 | **(i)** | 347,558 | 1,400 | 0 | 13,830 | 25,338 | 388,126 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **3** GERRARD GIER<br>CIO | **(i)** | 233,799 | 1,400 | 0 | 18,054 | 22,151 | 275,404 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **4** LEE PODOLL<br>CHIEF BUSINESS STRATEGY OFFICER | **(i)** | 201,138 | 1,600 | 0 | 16,493 | 43,144 | 262,375 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **5** DR MARYELLEN WESTERBERG<br>COO | **(i)** | 225,200 | 1,600 | 0 | 18,263 | 16,063 | 261,126 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **6** JOHN SKELTON<br>CFO | **(i)** | 209,819 | 1,600 | 0 | 17,083 | 17,046 | 245,548 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **7** YVETTE FELIPE<br>DENTIST | **(i)** | 172,948 | 1,400 | 0 | 14,337 | 28,070 | 216,755 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **8** JOEL UMALI<br>DIRECTOR DENTAL CLINIC | **(i)** | 155,733 | 1,400 | 0 | 11,409 | 40,647 | 209,189 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **9** MICHAEL CONRAD<br>NURSE PRACTITIONER | **(i)** | 151,176 | 1,200 | 0 | 9,566 | 27,753 | 189,695 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **10** OSCAR LOPEZ<br>DENTIST | **(i)** | 146,250 | 1,600 | 0 | 11,950 | 21,683 | 181,483 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **11** LADONNA OELSCHLAEGER<br>CI PHARM CQ PRGRM MGR | **(i)** | 150,692 | 1,150 | 0 | 12,153 | 2,204 | 166,199 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## Part III Supplemental Information

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
| --- | --- |
| PART I, LINE 1A | DURING 2021, THE ORGANIZATION GAVE HOLIDAY BONUSES OF $200 TO ALL EMPLOYEES AND THOSE BONUSES WERE GROSSED UP TO COVER TAXES. |

| efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135188613 |
|---|---|---|

**SCHEDULE M (Form 990)**

Department of the Treasury Internal Revenue Service

# Noncash Contributions

▶Complete if the organizations answered "Yes" on Form 990, Part IV, lines 29 or 30.
▶ Attach to Form 990.
▶Go to www.irs.gov/Form990 for the latest information.

OMB No. 1545-0047

**2021**

**Open to Public Inspection**

Name of the organization
SAC HEALTH SYSTEM

**Employer identification number**
33-0664371

**Part I** **Types of Property**

| | (a) Check if applicable | (b) Number of contributions or items contributed | (c) Noncash contribution amounts reported on Form 990, Part VIII, line 1g | (d) Method of determining noncash contribution amounts |
|---|---|---|---|---|
| 1 Art—Works of art | | | | |
| 2 Art—Historical treasures | | | | |
| 3 Art—Fractional interests | | | | |
| 4 Books and publications | | | | |
| 5 Clothing and household goods | | | | |
| 6 Cars and other vehicles | | | | |
| 7 Boats and planes | | | | |
| 8 Intellectual property | | | | |
| 9 Securities—Publicly traded | | | | |
| 10 Securities—Closely held stock | | | | |
| 11 Securities—Partnership, LLC, or trust interests | | | | |
| 12 Securities—Miscellaneous | | | | |
| 13 Qualified conservation contribution—Historic structures | | | | |
| 14 Qualified conservation contribution—Other | | | | |
| 15 Real estate—Residential | | | | |
| 16 Real estate—Commercial | | | | |
| 17 Real estate—Other | | | | |
| 18 Collectibles | | | | |
| 19 Food inventory | | | | |
| 20 Drugs and medical supplies | X | 52,156 | 3,148,422 | INVOICE PRICE |
| 21 Taxidermy | | | | |
| 22 Historical artifacts | | | | |
| 23 Scientific specimens | | | | |
| 24 Archeological artifacts | | | | |
| 25 Other ▶ ( ) | | | | |
| 26 Other ▶ ( ) | | | | |
| 27 Other ▶ ( ) | | | | |
| 28 Other ▶ ( ) | | | | |

29 Number of Forms 8283 received by the organization during the tax year for contributions for which the organization completed Form 8283, Part IV, Donee Acknowledgement | 29 | 0

| | | Yes | No |
|---|---|---|---|
| 30a During the year, did the organization receive by contribution any property reported in Part I, lines 1 through 28, that it must hold for at least three years from the date of the initial contribution, and which isn't required to be used for exempt purposes for the entire holding period? | 30a | | No |
| b If "Yes," describe the arrangement in Part II. | | | |
| 31 Does the organization have a gift acceptance policy that requires the review of any nonstandard contributions? | 31 | | No |
| 32a Does the organization hire or use third parties or related organizations to solicit, process, or sell noncash contributions? | 32a | | No |
| b If "Yes," describe in Part II. | | | |
| 33 If the organization didn't report an amount in column (c) for a type of property for which column (a) is checked, describe in Part II. | | | |

**Part II** **Supplemental Information.** Provide the information required by Part I, lines 30b, 32b, and 33, and whether the organization is reporting in Part I, column (b), the number of contributions, the number of items received, or a combination of both. Also complete this part for any additional information.

| Return Reference | Explanation |
| --- | --- |
| PART I, COLUMN (B): | THE NUMBER OF DONATED ITEMS RECEIVED DURING THE FISCAL YEAR IS REPORTED IN PART I, COLUMN B. |

| efile GRAPHIC print | Submission Date - 2023-05-15 | DLN: 93493135188613 |
|---|---|---|

**SCHEDULE O (Form 990)**

Department of the Treasury
Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**▶ Attach to Form 990 or 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for the latest information.**

OMB No. 1545-0047
**2021**
**Open to Public Inspection**

Name of the organization
SAC HEALTH SYSTEM

**Employer identification number**
33-0664371

| Return Reference | Explanation |
|---|---|
| FORM 990, PART VI, SECTION A, LINE 1A | THE BOARD OF DIRECTORS HAS AN EXECUTIVE COMMITTEE CONSISTING OF THE BOARD'S CHAIR AND SECRETARY, AS WELL AS THE CHAIRS OF ALL STANDING COMMITTEES. THE AFFAIRS AND MANAGEMENT OF THE ORGANIZATION ARE SUPERVISED BY THE EXECUTIVE COMMITTEE, WHICH HAS POWER TO TRANSACT ALL REGULAR BUSINESS OF THE ORGANIZATION AND HAS THE FULL AUTHORITY OF THE BOARD DURING THE PERIOD BETWEEN MEETINGS OF THE BOARD, SUBJECT TO ANY PRIOR LIMITATIONS IMPOSED BY THE BOARD AND SUBJECT TO THE LIMITATIONS OF THE CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORATION LAW. ADDITIONALLY, EVERY TWO YEARS, THE EXECUTIVE COMMITTEE REVIEWS THE BYLAWS AND RECOMMENDS REVISIONS AS NECESSARY TO ENSURE COMPLIANCE WITH APPLICABLE STATUTES, REGULATIONS, LICENSING AND ACCREDITATION REQUIREMENTS. THE EXECUTIVE COMMITTEE ALSO RECOMMENDS TO THE BOARD NOMINEES FOR DIRECTORS AND MAY RECOMMEND NOMINEES FOR THE OFFICERS OF THE ORGANIZATION. THE ACTIONS OF THE EXECUTIVE COMMITTEE MUST NOT SUPERSEDE THE FULL HEALTH CENTER GOVERNING BOARD'S AUTHORITIES, FUNCTIONS AND RESPONSIBILITIES. |
| FORM 990, PART VI, SECTION A, LINE 3 | THE CHIEF OF ACADEMICS, CMO, AND ASSISTANT CMO ARE PROVIDED THROUGH A SERVICE AGREEMENT WITH FACULTY AND PHYSICIAN SERVICES OF LOMA LINDA UNIVERSITY, A SUBSIDIARY OF LOMA LINDA UNIVERSITY HEALTH. |
| FORM 990, PART VI, SECTION B, LINE 11B | PRIOR TO FILING THE IRS, THE FORM 990 WAS REVIEWED BY MANAGEMENT. A COPY WILL BE PROVIDED TO ANY BOARD MEMBER WHO REQUESTS IT. |
| FORM 990, PART VI, SECTION B, LINE 12C | THE CHIEF PEOPLE OFFICER ANNUALLY OBTAINS STATEMENTS OF DISCLOSURE FROM BOARD MEMBERS, OFFICERS, ADMINISTRATORS, KEY EMPLOYEES AND OTHERS WHO MAKE OR AFFECT SIGNIFICANT DECISIONS AND REVIEWS THE FINDINGS WITH APPROPRIATE BOARDS AND COMMITTEES. THE BOARD MEMBERS MAKE THE DECISIONS REGARDING QUESTIONS WHICH HAVE NOT BEEN SATISFACTORILY ANSWERED AFTER ADMINISTRATIVE CONSIDERATION. AN INDIVIDUAL WITH A CONFLICT WOULD RECUSE THEM SELF FROM DISCUSSIONS, DECISION AND VOTE, ON ANY ISSUE FOR WHICH THE CONFLICT EXISTS. |
| FORM 990, PART VI, SECTION B, LINE 15 | SACHS HR DOES A COMPENSATION SURVEY FOR CEO, CFO, COO AND CIO PAY, AND BOARD APPROVES SALARY. DURING 2021, AN INDEPENDENT COMPENSATION CONSULTANT PROVIDED A COMPENSATION REVIEW FOR THE ORGANIZATION. THEY PROVIDED A MARKET RATE ANALYSIS OF EXECUTIVE PAY USING REGIONAL COMPARATIVE DATE AND RATES WERE RECOMMENDED FOR APPROVAL BY THE BOARD. |
| FORM 990, PART VI, SECTION C, LINE 19 | SAC HEALTH SYSTEM MAKES ITS GOVERNING DOCUMENTS AND CONFLICT OF INTEREST POLICY AVAILABLE TO THE PUBLIC UPON REQUEST AND IN ACCORDANCE WITH IRS GUIDELINES. THE CONFLICT OF INTEREST POLICY IS POSTED ON THE ORGANIZATION'S INTERNAL WEBSITE FOR EMPLOYEES. THE FINANCIAL INFORMATION IS INCLUDED IN THE IRS FORM 990 WHICH IS AVAILABLE TO THE PUBLIC ON THE GUIDESTAR WEBSITE. |
| FORM 990, PART IX, LINE 11G | OTHER SERVICES: PROGRAM SERVICE EXPENSES 20,743,808. MANAGEMENT AND GENERAL EXPENSES 5,580,203. FUNDRAISING EXPENSES 0. TOTAL EXPENSES 26,324,011. |

TAB 8

efile GRAPHIC print | Submission Date - 2021-11-10 | DLN: 93493314069561

Form **990**

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

▶ Do not enter social security numbers on this form as it may be made public.

▶ **Go to www.irs.gov/Form990 for instructions and the latest information.**

Department of the Treasury
Internal Revenue Service

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**A For the 2020 calendar year, or tax year beginning 03-17-2020 , and ending 12-31-2020**

**B** Check if applicable:
- ☐ Address change
- ☐ Name change
- ☑ Initial return
- ☐ Final return/terminated
- ☐ Amended return
- ☐ Application pending

**C** Name of organization
Adventist Health Mendocino Coast

Doing business as

Number and street (or P.O. box if mail is not delivered to street address)
700 River Drive

Room/suite

City or town, state or province, country, and ZIP or foreign postal code
Fort Bragg, CA 95437

**D Employer identification number**
84-5174585

E Telephone number
(916) 406-0000

**G** Gross receipts $ 28,140,651

**F** Name and address of principal officer:
Judson Howe
700 River Drive
Fort Bragg, CA 95437

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No

**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. (see instructions)

**H(c)** Group exemption number ▶

**I** Tax-exempt status: ☑ 501(c)(3) ☐ 501(c) ( ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** ▶ https://www.adventisthealth.org/mendocino

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other ▶

**L** Year of formation: 2020

**M** State of legal domicile: CA

## Part I Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities:
Living God's love by inspiring health, wholeness and hope.

2 Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 3 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 2 |
| 5 | Total number of individuals employed in calendar year 2020 (Part V, line 2a) | 5 | 336 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 7 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, line 39 | 7b | 0 |

| | | | Prior Year | Current Year |
|---|---|---|---|---|
| **Revenue** | 8 | Contributions and grants (Part VIII, line 1h) | | 8,820 |
| | 9 | Program service revenue (Part VIII, line 2g) | | 28,131,784 |
| | 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | | 47 |
| | 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | | 0 |
| | 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | | 28,140,651 |
| **Expenses** | 13 | Grants and similar amounts paid (Part IX, column (A), lines 1–3 ) | | 5,543 |
| | 14 | Benefits paid to or for members (Part IX, column (A), line 4) | | 0 |
| | 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | | 12,338,199 |
| | 16a | Professional fundraising fees (Part IX, column (A), line 11e) | | 0 |
| | b | Total fundraising expenses (Part IX, column (D), line 25) ▶0 | | |
| | 17 | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | | 16,517,724 |
| | 18 | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | | 28,861,466 |
| | 19 | Revenue less expenses. Subtract line 18 from line 12 | | -720,815 |

| | | | Beginning of Current Year | End of Year |
|---|---|---|---|---|
| **Net Assets or Fund Balances** | 20 | Total assets (Part X, line 16) | | 37,569,132 |
| | 21 | Total liabilities (Part X, line 26) | | 38,289,947 |
| | 22 | Net assets or fund balances. Subtract line 21 from line 20 | | -720,815 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

**Sign Here**

▶ Signature of officer — Date: 2021-10-22

▶ Warrent Tetz Treasurer
Type or print name and title

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| | | 2021-10-22 | | P00366884 |

Firm's name ▶ Moss Adams LLP — Firm's EIN ▶ 91-0189318

Firm's address ▶ 3121 W March Ln Ste 200, Stockton, CA 952192367 — Phone no. (209) 955-6100

May the IRS discuss this return with the preparer shown above? (see instructions) ☑ Yes ☐ No

**Part III** **Statement of Program Service Accomplishments**

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . . . ☑

**1** Briefly describe the organization's mission:

Living God's love by inspiring health, wholeness and hope.

**2** Did the organization undertake any significant program services during the year which were not listed on the prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**

If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and revenue, if any, for each program service reported.

**4a** (Code: ) (Expenses $ 19,401,816 including grants of $ 5,543 ) (Revenue $ 28,131,784 )

See Schedule O

**4b** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4c** (Code: ) (Expenses $ including grants of $ ) (Revenue $ )

**4d** Other program services (Describe in Schedule O.)

(Expenses $ including grants of $ ) (Revenue $ )

**4e** **Total program service expenses** ▶ 19,401,816

**Part IV Checklist of Required Schedules**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | **1** | Yes | |
| **2** | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? | **2** | Yes | |
| **3** | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | **3** | | No |
| **4** | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | **4** | Yes | |
| **5** | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* | **5** | | No |
| **6** | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D,* Part I | **6** | | No |
| **7** | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | **7** | | No |
| **8** | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D,* Part III | **8** | | No |
| **9** | Did the organization report an amount in Part X, line 21 for escrow or custodial account liability; serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | **9** | | No |
| **10** | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi endowments? *If "Yes," complete Schedule D, Part V* | **10** | | No |
| **11** | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| **a** | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D,* Part VI. | **11a** | Yes | |
| **b** | Did the organization report an amount for investments—other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | **11b** | | No |
| **c** | Did the organization report an amount for investments—program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | **11c** | | No |
| **d** | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | **11d** | Yes | |
| **e** | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | Yes | |
| **f** | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | **11f** | Yes | |
| **12a** | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | **12a** | | No |
| **b** | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | Yes | |
| **13** | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | No |
| **14a** | Did the organization maintain an office, employees, or agents outside of the United States? | **14a** | | No |
| **b** | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | **14b** | | No |
| **15** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | **15** | | No |
| **16** | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | **16** | | No |
| **17** | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I*(see instructions) | **17** | | No |
| **18** | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | **18** | | No |
| **19** | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | **19** | | No |
| **20a** | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | **20a** | Yes | |
| **b** | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | Yes | |
| **21** | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | **21** | | No |

**Part IV Checklist of Required Schedules** *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | | No |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | Yes | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | 24a | | No |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L,* Part I | 25a | | No |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L,* Part I | 25b | | No |
| 26 | Did the organization report any amount on Part X, line 5 or 22 for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | 26 | | No |
| 27 | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L,*Part III | 27 | | No |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* | 28a | | No |
| b | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* | 28b | | No |
| c | A 35% controlled entity of one or more individuals and/or organizations described in lines 28a or 28b? *If "Yes," complete Schedule L, Part IV* | 28c | | No |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | | No |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | No |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | No |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | No |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | No |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | Yes | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | | No |
| b | If 'Yes' to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | No |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | No |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O. | 38 | Yes | |

**Part V Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response or note to any line in this Part V ☐

| | | | | Yes | No |
|---|---|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable | 1a | 92 | | |
| b | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable | 1b | 0 | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | 1c | | Yes | |

Form 990 (2020) Page **5**

## Part V Statements Regarding Other IRS Filings and Tax Compliance *(continued)*

| | | | | Yes | No |
|---|---|---|---|---|---|
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return | **2a** 336 | | | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to e-file (see instructions) | | **2b** | Yes | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? | | **3a** | | No |
| **b** | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation in Schedule O* | | **3b** | | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | | **4a** | | No |
| **b** | If "Yes," enter the name of the foreign country: ▶ See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | | **5a** | | No |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | | **5b** | | No |
| **c** | If "Yes," to line 5a or 5b, did the organization file Form 8886-T? | | **5c** | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | | **6a** | | No |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | | **6b** | | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | | **7a** | | No |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? | | **7b** | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | | **7c** | | No |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year | **7d** | | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | | **7e** | | No |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | | **7f** | | No |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | | **7g** | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | | **7h** | | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | | **8** | | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | | |
| **a** | Did the sponsoring organization make any taxable distributions under section 4966? | | **9a** | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | | **9b** | | |
| **10** | **Section 501(c)(7) organizations.** Enter: | | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 | **10a** | | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | **10b** | | | |
| **11** | **Section 501(c)(12) organizations.** Enter: | | | | |
| **a** | Gross income from members or shareholders | **11a** | | | |
| **b** | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) | **11b** | | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | | **12a** | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year. | **12b** | | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? **Note.** See the instructions for additional information the organization must report on Schedule O. | | **13a** | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | **13b** | | | |
| **c** | Enter the amount of reserves on hand | **13c** | | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? | | **14a** | | No |
| **b** | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | | **14b** | | |
| **15** | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? If "Yes," see instructions and file Form 4720, Schedule N. | | **15** | | No |
| **16** | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? If "Yes," complete Form 4720, Schedule O. | | **16** | | No |

Form 990 (2020) Page **6**

**Part VI** **Governance, Management, and Disclosure** *For each "Yes" response to lines 2 through 7b below, and for a "No" response to lines 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.*
Check if Schedule O contains a response or note to any line in this Part VI . . . ☑

**Section A. Governing Body and Management**

| | | | | Yes | No |
|---|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year. If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | **1a** 3 | | | |
| **b** | Enter the number of voting members included in line 1a, above, who are independent | **1b** 2 | | | |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | | **2** | | No |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors or trustees, or key employees to a management company or other person? | | **3** | | No |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | | **4** | | No |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? | | **5** | | No |
| **6** | Did the organization have members or stockholders? | | **6** | Yes | |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? | | **7a** | Yes | |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? | | **7b** | Yes | |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | |
| **a** | The governing body? | | **8a** | Yes | |
| **b** | Each committee with authority to act on behalf of the governing body? | | **8b** | Yes | |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* | | **9** | | No |

**Section B. Policies** (*This Section B requests information about policies not required by the Internal Revenue Code.*)

| | | | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? | **10a** | | No |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** | | |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | **11a** | Yes | |
| **b** | Describe in Schedule O the process, if any, used by the organization to review this Form 990. | | | |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* | **12a** | Yes | |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | **12b** | Yes | |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* | **12c** | Yes | |
| **13** | Did the organization have a written whistleblower policy? | **13** | Yes | |
| **14** | Did the organization have a written document retention and destruction policy? | **14** | Yes | |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | |
| **a** | The organization's CEO, Executive Director, or top management official | **15a** | Yes | |
| **b** | Other officers or key employees of the organization | **15b** | Yes | |
| | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? | **16a** | | No |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? | **16b** | | |

**Section C. Disclosure**

**17** List the states with which a copy of this Form 990 is required to be filed ▶ CA

**18** Section 6104 requires an organization to make its Form 1023 (or 1024-A if applicable), 990, and 990-T (501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.

☐ Own website ☐ Another's website ☑ Upon request ☐ Other (explain in Schedule O)

**19** Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.

**20** State the name, address, and telephone number of the person who possesses the organization's books and records:
▶Todd Hofheins CFO PO Box 619135 Roseville, CA 95661 (916) 406-0000

**Part VII** **Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . . . . ☑

## Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

- List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.
- List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."
- List the organization's five **current** highest compensated employees (other than an officer, director, trustee or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.
- List all of the organization's **former** officers, key employees, or highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.
- List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) Reiner Scott<br>Vice Chair | 0.00<br>50.00 | | | X | | | | 0 | 2,358,378 | 54,819 |
| (2) Wing Bill<br>Director/Chair | 0.00<br>50.00 | X | | X | | | | 0 | 1,760,327 | 59,054 |
| (3) Jobe Meredith<br>Secretary | 0.00<br>50.00 | | | X | | | | 0 | 769,985 | 43,868 |
| (4) Parker Bessant<br>Medical Officer | 15.00<br>35.00 | | | | X | | | 0 | 467,110 | 23,740 |
| (5) Howe Judson - Finance<br>Officer/President as of 12/20 | 0.00<br>50.00 | | | X | | | | 0 | 384,707 | 58,172 |
| (6) Leach Judy<br>President thru 12/20 | 50.00<br>0.00 | | | X | | | | 0 | 358,886 | 39,489 |
| (7) Spencer Lindsey<br>Operations Executive | 0.00<br>50.00 | | | | X | | | 0 | 324,872 | 56,876 |
| (8) Givens Linda<br>Chief Nursing Officer | 0.00<br>50.00 | | | | X | | | 0 | 318,042 | 42,720 |
| (9) Miller William<br>Medical Director-Hospitalist | 20.00<br>0.00 | | | | | X | | 257,462 | 0 | 30,819 |
| (10) Leister Lois F<br>Pharmacy Director | 40.00<br>0.00 | | | | | X | | 198,329 | 0 | 27,862 |
| (11) Thompson Stephanie<br>Housei Supervisor | 40.00<br>0.00 | | | | | X | | 171,621 | 0 | 25,031 |
| (12) Ra Jean<br>Pharmacist | 40.00<br>0.00 | | | | | X | | 179,416 | 0 | 8,971 |
| (13) Louis Michael<br>Pharmacist | 40.00<br>0.00 | | | | | X | | 169,242 | 0 | 17,724 |
| (14) Reiner Richard<br>Director | 0.00<br>4.00 | X | | | | | | 0 | 26,764 | 0 |
| (15) Innocent Larry<br>Director | 0.00<br>4.00 | X | | | | | | 0 | 25,608 | 0 |
| | | | | | | | | | | |
| | | | | | | | | | | |

**Part VII** **Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees** *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

| | (D) | (E) | (F) |
|---|---|---|---|
| **1b Sub-Total** ▶ | | | |
| **c Total from continuation sheets to Part VII, Section A** ▶ | | | |
| **d Total (add lines 1b and 1c)** ▶ | 976,070 | 6,794,679 | 489,145 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 54

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* | 3 | | No |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* | 4 | Yes | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization?*If "Yes," complete Schedule J for such person* | 5 | | No |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A) Name and business address | (B) Description of services | (C) Compensation |
|---|---|---|
| Weatherby Locums Inc<br><br>PO Box 972633<br>Dallas, TX 75397 | Locum Ortho/Oncology | 404,201 |
| Atlas Medstaff LLC<br><br>PO Box 735860<br>Dallas, TX 75373 | RN Registry | 323,725 |
| Kermen John,<br>45241 Mar Vista Drive<br>Mendocino, CA 95460 | Anesthesiology Coverage | 291,199 |
| Premier Emergency Physicians<br><br>7032 Collection Center Drive<br>Chicago, IL 60693 | ED Physician Coverage | 288,661 |
| Comphealth Medical Staffing<br><br>PO Box 972651<br>Dallas, TX 75397 | Locum Clinic PA | 260,116 |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ 9

**Part VIII Statement of Revenue**

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . . ☐

| | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | | | | | | |
| 1a Federated campaigns | 1a | | | | | |
| b Membership dues | 1b | | | | | |
| c Fundraising events | 1c | | | | | |
| d Related organizations | 1d | | | | | |
| e Government grants (contributions) | 1e | | | | | |
| f All other contributions, gifts, grants, and similar amounts not included above | 1f | 8,820 | | | | |
| g Noncash contributions included in lines 1a - 1f:$ | 1g | 8,820 | | | | |
| h **Total.** Add lines 1a-1f ▶ | | | 8,820 | | | |
| **Program Service Revenue** | Business Code | | | | | |
| 2a Patient service revenue | 621110 | | 27,055,809 | 27,055,809 | | |
| b Other program services | 900099 | | 1,017,775 | 1,017,775 | | |
| c Premium revenue | 900099 | | 58,200 | 58,200 | | |
| d | | | | | | |
| e | | | | | | |
| f All other program service revenue. | | | | | | |
| g **Total.** Add lines 2a–2f. ▶ | | | 28,131,784 | | | |

| **Other Revenue** | | (A) | (B) | (C) | (D) |
|---|---|---|---|---|---|
| 3 Investment income (including dividends, interest, and other similar amounts) ▶ | | 47 | | | 47 |
| 4 Income from investment of tax-exempt bond proceeds ▶ | | | | | |
| 5 Royalties ▶ | | | | | |

| | | (i) Real | (ii) Personal |
|---|---|---|---|
| 6a Gross rents | 6a | | |
| b Less: rental expenses | 6b | | |
| c Rental income or (loss) | 6c | | |
| d Net rental income or (loss) ▶ | | | |

| | | (i) Securities | (ii) Other |
|---|---|---|---|
| 7a Gross amount from sales of assets other than inventory | 7a | | |
| b Less: cost or other basis and sales expenses | 7b | | |
| c Gain or (loss) | 7c | | |
| d Net gain or (loss) ▶ | | | |

| | | | (A) | (B) | (C) | (D) |
|---|---|---|---|---|---|---|
| 8a Gross income from fundraising events (not including $ ______ of contributions reported on line 1c). See Part IV, line 18 | 8a | | | | | |
| b Less: direct expenses | 8b | | | | | |
| c Net income or (loss) from fundraising events ▶ | | | | | | |
| 9a Gross income from gaming activities. See Part IV, line 19 | 9a | | | | | |
| b Less: direct expenses | 9b | | | | | |
| c Net income or (loss) from gaming activities ▶ | | | | | | |
| 10a Gross sales of inventory, less returns and allowances | 10a | | | | | |
| b Less: cost of goods sold | 10b | | | | | |
| c Net income or (loss) from sales of inventory ▶ | | | | | | |
| Miscellaneous Revenue | Business Code | | | | | |
| 11a | | | | | | |
| b | | | | | | |
| c | | | | | | |
| d All other revenue | | | | | | |
| e **Total.** Add lines 11a–11d ▶ | | | | | | |
| 12 **Total revenue.** See instructions ▶ | | | 28,140,651 | 28,131,784 | 0 | 47 |

**Part IX Statement of Functional Expenses**

Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).

Check if Schedule O contains a response or note to any line in this Part IX . . . ☑

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A) Total expenses | (B) Program service expenses | (C) Management and general expenses | (D) Fundraising expenses |
|---|---|---|---|---|
| 1 Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 | 5,543 | 5,543 | | |
| 2 Grants and other assistance to domestic individuals. See Part IV, line 22 | | | | |
| 3 Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16. | | | | |
| 4 Benefits paid to or for members | | | | |
| 5 Compensation of current officers, directors, trustees, and key employees | | | | |
| 6 Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) | | | | |
| 7 Other salaries and wages | 9,533,746 | 5,719,379 | 3,814,367 | |
| 8 Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | 360,036 | 237,088 | 122,948 | |
| 9 Other employee benefits | 1,751,919 | 1,487,389 | 264,530 | |
| 10 Payroll taxes | 692,498 | 434,681 | 257,817 | |
| 11 Fees for services (non-employees): | | | | |
| a Management | 586 | 471 | 115 | |
| b Legal | 107,938 | | 107,938 | |
| c Accounting | 24 | | 24 | |
| d Lobbying | 386 | 386 | | |
| e Professional fundraising services. See Part IV, line 17 | | | | |
| f Investment management fees | | | | |
| g Other (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O) | 7,971,895 | 5,751,427 | 2,220,468 | |
| 12 Advertising and promotion | 198,160 | | 198,160 | |
| 13 Office expenses | 190,384 | 136,106 | 54,278 | |
| 14 Information technology | 1,018,291 | 865,502 | 152,789 | |
| 15 Royalties | | | | |
| 16 Occupancy | 1,546,295 | 426,563 | 1,119,732 | |
| 17 Travel | 19,648 | 3,190 | 16,458 | |
| 18 Payments of travel or entertainment expenses for any federal, state, or local public officials | | | | |
| 19 Conferences, conventions, and meetings | 40,739 | 22,915 | 17,824 | |
| 20 Interest | 213,890 | 213,890 | | |
| 21 Payments to affiliates | | | | |
| 22 Depreciation, depletion, and amortization | | | | |
| 23 Insurance | 282,634 | 276,429 | 6,205 | |
| 24 Other expenses. Itemize expenses not covered above (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| a Patient care supplies | 3,741,463 | 3,601,047 | 140,416 | |
| b Rent/lease cost equipme | 226,919 | 219,810 | 7,109 | |
| c | | | | |
| d | | | | |
| e All other expenses | 958,472 | | 958,472 | |
| 25 **Total functional expenses.** Add lines 1 through 24e | 28,861,466 | 19,401,816 | 9,459,650 | 0 |
| 26 **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720). | | | | |

**Part X Balance Sheet**

Check if Schedule O contains a response or note to any line in this Part IX . . . ☐

| | | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|---|
| Assets | 1 | Cash–non-interest-bearing | | | 1 | |
| | 2 | Savings and temporary cash investments | | | 2 | |
| | 3 | Pledges and grants receivable, net | | | 3 | |
| | 4 | Accounts receivable, net | | 0 | 4 | 14,217,442 |
| | 5 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | 5 | |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) | | | 6 | |
| | 7 | Notes and loans receivable, net | | | 7 | |
| | 8 | Inventories for sale or use | | 0 | 8 | 1,106,705 |
| | 9 | Prepaid expenses and deferred charges | | 0 | 9 | 196,489 |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D | 10a 8,572,188 | | | |
| | b | Less: accumulated depreciation | 10b 813,180 | 0 | 10c | 7,759,008 |
| | 11 | Investments—publicly traded securities | | | 11 | |
| | 12 | Investments—other securities. See Part IV, line 11 | | | 12 | |
| | 13 | Investments—program-related. See Part IV, line 11 | | | 13 | |
| | 14 | Intangible assets | | | 14 | |
| | 15 | Other assets. See Part IV, line 11 | | 0 | 15 | 14,289,488 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) | | 0 | 16 | 37,569,132 |
| Liabilities | 17 | Accounts payable and accrued expenses | | 0 | 17 | 6,165,592 |
| | 18 | Grants payable | | | 18 | |
| | 19 | Deferred revenue | | 0 | 19 | 5,000 |
| | 20 | Tax-exempt bond liabilities | | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D | | | 21 | |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons | | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties | | | 23 | |
| | 24 | Unsecured notes and loans payable to unrelated third parties | | 0 | 24 | 25,109,152 |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17 - 24). Complete Part X of Schedule D | | 0 | 25 | 7,010,203 |
| | 26 | **Total liabilities.** Add lines 17 through 25 | | 0 | 26 | 38,289,947 |
| Net Assets or Fund Balances | | **Organizations that follow FASB ASC 958, check here ▶ ☑ and complete lines 27, 28, 32, and 33.** | | | | |
| | 27 | Net assets without donor restrictions | | 0 | 27 | -720,815 |
| | 28 | Net assets with donor restrictions | | | 28 | |
| | | **Organizations that do not follow FASB ASC 958, check here ▶ ☐ and complete lines 29 through 33.** | | | | |
| | 29 | Capital stock or trust principal, or current funds | | | 29 | |
| | 30 | Paid-in or capital surplus, or land, building or equipment fund | | | 30 | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds | | | 31 | |
| | 32 | Total net assets or fund balances | | 0 | 32 | -720,815 |
| | 33 | Total liabilities and net assets/fund balances | | 0 | 33 | 37,569,132 |

## Part XI Reconciliation of Net Assets

Check if Schedule O contains a response or note to any line in this Part XI ☐

| | | Line | Amount |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) | 1 | 28,140,651 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) | 2 | 28,861,466 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 | 3 | -720,815 |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) | 4 | 0 |
| 5 | Net unrealized gains (losses) on investments | 5 | |
| 6 | Donated services and use of facilities | 6 | |
| 7 | Investment expenses | 7 | |
| 8 | Prior period adjustments | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) | 9 | 0 |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) | 10 | -720,815 |

## Part XII Financial Statements and Reporting

Check if Schedule O contains a response or note to any line in this Part XII ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash ☑ Accrual ☐ Other ______<br>If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? | 2a | | No |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☐ Consolidated basis ☐ Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? | 2b | Yes | |
| | If 'Yes,' check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both:<br>☐ Separate basis ☑ Consolidated basis ☐ Both consolidated and separate basis | | | |
| c | If "Yes," to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? | 2c | Yes | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? | 3a | | No |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits. | 3b | | |

| efile GRAPHIC print | Submission Date - 2021-11-10 | DLN: 93493314069561 |
|---|---|---|

**SCHEDULE A (Form 990 or 990EZ)**

Department of the Treasury Internal Revenue Service

# Public Charity Status and Public Support

**Complete if the organization is a section 501(c)(3) organization or a section 4947(a)(1) nonexempt charitable trust.**

**▶ Attach to Form 990 or Form 990-EZ.**

**▶ Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**Name of the organization**
Adventist Health Mendocino Coast

**Employer identification number**
84-5174585

**Part I Reason for Public Charity Status** (All organizations must complete this part.) See instructions.

The organization is not a private foundation because it is: (For lines 1 through 12, check only one box.)

1 ☐ A church, convention of churches, or association of churches described in **section 170(b)(1)(A)(i).**

2 ☐ A school described in **section 170(b)(1)(A)(ii).** (Attach Schedule E (Form 990 or 990-EZ).)

3 ☑ A hospital or a cooperative hospital service organization described in **section 170(b)(1)(A)(iii).**

4 ☐ A medical research organization operated in conjunction with a hospital described in **section 170(b)(1)(A)(iii).** Enter the hospital's name, city, and state:

5 ☐ An organization operated for the benefit of a college or university owned or operated by a governmental unit described in **section 170(b)(1)(A)(iv).** (Complete Part II.)

6 ☐ A federal, state, or local government or governmental unit described in **section 170(b)(1)(A)(v).**

7 ☐ An organization that normally receives a substantial part of its support from a governmental unit or from the general public described in **section 170(b)(1)(A)(vi).** (Complete Part II.)

8 ☐ A community trust described in **section 170(b)(1)(A)(vi)**. (Complete Part II.)

9 ☐ An agricultural research organization described in **170(b)(1)(A)(ix)** operated in conjunction with a land-grant college or university or a non-land grant college of agriculture. See instructions. Enter the name, city, and state of the college or university:

10 ☐ An organization that normally receives: (1) more than 33 1/3% of its support from contributions, membership fees, and gross receipts from activities related to its exempt functions—subject to certain exceptions, and (2) no more than 33 1/3% of its support from gross investment income and unrelated business taxable income (less section 511 tax) from businesses acquired by the organization after June 30, 1975. See **section 509(a)(2).** (Complete Part III.)

11 ☐ An organization organized and operated exclusively to test for public safety. See **section 509(a)(4).**

12 ☐ An organization organized and operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more publicly supported organizations described in **section 509(a)(1)** or **section 509(a)(2).** See **section 509(a)(3).** Check the box in lines 12a through 12d that describes the type of supporting organization and complete lines 12e, 12f, and 12g.

a ☐ **Type I.** A supporting organization operated, supervised, or controlled by its supported organization(s), typically by giving the supported organization(s) the power to regularly appoint or elect a majority of the directors or trustees of the supporting organization. **You must complete Part IV, Sections A and B.**

b ☐ **Type II.** A supporting organization supervised or controlled in connection with its supported organization(s), by having control or management of the supporting organization vested in the same persons that control or manage the supported organization(s). **You must complete Part IV, Sections A and C.**

c ☐ **Type III functionally integrated.** A supporting organization operated in connection with, and functionally integrated with, its supported organization(s) (see instructions). **You must complete Part IV, Sections A, D, and E.**

d ☐ **Type III non-functionally integrated.** A supporting organization operated in connection with its supported organization(s) that is not functionally integrated. The organization generally must satisfy a distribution requirement and an attentiveness requirement (see instructions). **You must complete Part IV, Sections A and D, and Part V.**

e ☐ Check this box if the organization received a written determination from the IRS that it is a Type I, Type II, Type III functionally integrated, or Type III non-functionally integrated supporting organization.

f Enter the number of supported organizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ______

g Provide the following information about the supported organization(s).

| **(i)** Name of supported organization | **(ii)** EIN | **(iii)** Type of organization (described on lines 1- 10 above (see instructions)) | **(iv)** Is the organization listed in your governing document? | | **(v)** Amount of monetary support (see instructions) | **(vi)** Amount of other support (see instructions) |
|---|---|---|---|---|---|---|
| | | | **Yes** | **No** | | |
| | | | | | | |
| | | | | | | |
| **Total** | | | | | | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Cat. No. 11285F **Schedule A (Form 990 or 990-EZ) 2020**

**Part II** **Support Schedule for Organizations Described in Sections 170(b)(1)(A)(iv) and 170(b)(1)(A)(vi)**
(Complete only if you checked the box on line 5, 7, or 8 of Part I or if the organization failed to qualify under Part III. If the organization failed to qualify under the tests listed below, please complete Part III.)

**Section A. Public Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2016 | (b) 2017 | (c) 2018 | (d) 2019 | (e) 2020 | (f) Total |
|---|---|---|---|---|---|---|
| 1 Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grant.") | | | | | | |
| 2 Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. | | | | | | |
| 3 The value of services or facilities furnished by a governmental unit to the organization without charge.. | | | | | | |
| 4 **Total.** Add lines 1 through 3 | | | | | | |
| 5 The portion of total contributions by each person (other than a governmental unit or publicly supported organization) included on line 1 that exceeds 2% of the amount shown on line 11, column (f). | | | | | | |
| 6 **Public support.** Subtract line 5 from line 4. | | | | | | |

**Section B. Total Support**

| Calendar year (or fiscal year beginning in) ▶ | (a) 2016 | (b) 2017 | (c) 2018 | (d) 2019 | (e) 2020 | (f) Total |
|---|---|---|---|---|---|---|
| 7 Amounts from line 4. | | | | | | |
| 8 Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. | | | | | | |
| 9 Net income from unrelated business activities, whether or not the business is regularly carried on. | | | | | | |
| 10 Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.). | | | | | | |
| 11 **Total support.** Add lines 7 through 10 | | | | | | |

12 Gross receipts from related activities, etc. (see instructions) . . . . . 12

13 **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here** . . . . . ▶ ☐

**Section C. Computation of Public Support Percentage**

14 Public support percentage for 2020 (line 6, column (f) divided by line 11, column (f)) . . . . . 14

15 Public support percentage for 2019 Schedule A, Part II, line 14 . . . . . 15

16a **33 1/3% support test—2020.** If the organization did not check the box on line 13, and line 14 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

b **33 1/3% support test—2019.** If the organization did not check a box on line 13 or 16a, and line 15 is 33 1/3% or more, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . ▶ ☐

17a **10%-facts-and-circumstances test—2020.** If the organization did not check a box on line 13, 16a, or 16b, and line 14 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . ▶ ☐

b **10%-facts-and-circumstances test—2019.** If the organization did not check a box on line 13, 16a, 16b, or 17a, and line 15 is 10% or more, and if the organization meets the "facts-and-circumstances" test, check this box and **stop here.** Explain in Part VI how the organization meets the "facts-and-circumstances" test. The organization qualifies as a publicly supported organization . . . . . ▶ ☐

18 **Private foundation.** If the organization did not check a box on line 13, 16a, 16b, 17a, or 17b, check this box and see instructions . . . . . ▶ ☐

**Part III** **Support Schedule for Organizations Described in Section 509(a)(2)**
(Complete only if you checked the box on line 10 of Part I or if the organization failed to qualify under Part II. If the organization fails to qualify under the tests listed below, please complete Part II.)

## Section A. Public Support

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** 2020 | **(f)** Total |
|---|---|---|---|---|---|---|
| **1** Gifts, grants, contributions, and membership fees received. (Do not include any "unusual grants.") . | | | | | | |
| **2** Gross receipts from admissions, merchandise sold or services performed, or facilities furnished in any activity that is related to the organization's tax-exempt purpose | | | | | | |
| **3** Gross receipts from activities that are not an unrelated trade or business under section 513 . . . . . | | | | | | |
| **4** Tax revenues levied for the organization's benefit and either paid to or expended on its behalf. . . | | | | | | |
| **5** The value of services or facilities furnished by a governmental unit to the organization without charge | | | | | | |
| **6** **Total.** Add lines 1 through 5 | | | | | | |
| **7a** Amounts included on lines 1, 2, and 3 received from disqualified persons | | | | | | |
| **b** Amounts included on lines 2 and 3 received from other than disqualified persons that exceed the greater of $5,000 or 1% of the amount on line 13 for the year. | | | | | | |
| **c** Add lines 7a and 7b. . | | | | | | |
| **8** **Public support.** (Subtract line 7c from line 6.) | | | | | | |

## Section B. Total Support

| **Calendar year (or fiscal year beginning in)** ▶ | **(a)** 2016 | **(b)** 2017 | **(c)** 2018 | **(d)** 2019 | **(e)** 2020 | **(f)** Total |
|---|---|---|---|---|---|---|
| **9** Amounts from line 6. . . | | | | | | |
| **10a** Gross income from interest, dividends, payments received on securities loans, rents, royalties and income from similar sources. . | | | | | | |
| **b** Unrelated business taxable income (less section 511 taxes) from businesses acquired after June 30, 1975. | | | | | | |
| **c** Add lines 10a and 10b. | | | | | | |
| **11** Net income from unrelated business activities not included in line 10b, whether or not the business is regularly carried on. | | | | | | |
| **12** Other income. Do not include gain or loss from the sale of capital assets (Explain in Part VI.) . . | | | | | | |
| **13** **Total support.** (Add lines 9, 10c, 11, and 12.). . | | | | | | |

**14** **First 5 years.** If the Form 990 is for the organization's first, second, third, fourth, or fifth tax year as a section 501(c)(3) organization, check this box and **stop here**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

## Section C. Computation of Public Support Percentage

| | | | |
|---|---|---|---|
| **15** | Public support percentage for 2020 (line 8, column (f) divided by line 13, column (f)) . . . . . . . . . | **15** | |
| **16** | Public support percentage from 2019 Schedule A, Part III, line 15 . . . . . . . . . . . . . . . . | **16** | |

## Section D. Computation of Investment Income Percentage

| | | | |
|---|---|---|---|
| **17** | Investment income percentage for **2020** (line 10c, column (f) divided by line 13, column (f)) . . . . . . | **17** | |
| **18** | Investment income percentage from **2019** Schedule A, Part III, line 17 . . . . . . . . . . . . . . | **18** | |

**19a** **33 1/3% support tests—2020.** If the organization did not check the box on line 14, and line 15 is more than 33 1/3%, and line 17 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . . . . . ▶ ☐

**b** **33 1/3% support tests—2019.** If the organization did not check a box on line 14 or line 19a, and line 16 is more than 33 1/3% and line 18 is not more than 33 1/3%, check this box and **stop here.** The organization qualifies as a publicly supported organization . . . . ▶ ☐

**20** **Private foundation.** If the organization did not check a box on line 14, 19a, or 19b, check this box and see instructions . . . . ▶ ☐

**Part IV** **Supporting Organizations**

(Complete only if you checked a box on line 12 of Part I. If you checked box 12a, of Part I, complete Sections A and B. If you checked box 12b, of Part I, complete Sections A and C. If you checked box 12c, of Part I, complete Sections A, D, and E. If you checked box 12d, of Part I, complete Sections A and D, and complete Part V.)

**Section A. All Supporting Organizations**

| | | Line | Yes | No |
|---|---|---|---|---|
| **1** | Are all of the organization's supported organizations listed by name in the organization's governing documents? *If "No," describe in **Part VI** how the supported organizations are designated. If designated by class or purpose, describe the designation. If historic and continuing relationship, explain.* | **1** | | |
| **2** | Did the organization have any supported organization that does not have an IRS determination of status under section 509(a)(1) or (2)? *If "Yes," explain in **Part VI** how the organization determined that the supported organization was described in section 509(a)(1) or (2).* | **2** | | |
| **3a** | Did the organization have a supported organization described in section 501(c)(4), (5), or (6)? *If "Yes," answer lines 3b and 3c below.* | **3a** | | |
| **b** | Did the organization confirm that each supported organization qualified under section 501(c)(4), (5), or (6) and satisfied the public support tests under section 509(a)(2)? *If "Yes," describe in **Part VI** when and how the organization made the determination.* | **3b** | | |
| **c** | Did the organization ensure that all support to such organizations was used exclusively for section 170(c)(2)(B) purposes? *If "Yes," explain in **Part VI** what controls the organization put in place to ensure such use.* | **3c** | | |
| **4a** | Was any supported organization not organized in the United States ("foreign supported organization")? *If "Yes" and if you checked box 12a or 12b in Part I, answer lines 4b and 4c below.* | **4a** | | |
| **b** | Did the organization have ultimate control and discretion in deciding whether to make grants to the foreign supported organization? *If "Yes," describe in **Part VI** how the organization had such control and discretion despite being controlled or supervised by or in connection with its supported organizations.* | **4b** | | |
| **c** | Did the organization support any foreign supported organization that does not have an IRS determination under sections 501(c)(3) and 509(a)(1) or (2)? *If "Yes," explain in **Part VI** what controls the organization used to ensure that all support to the foreign supported organization was used exclusively for section 170(c)(2)(B) purposes.* | **4c** | | |
| **5a** | Did the organization add, substitute, or remove any supported organizations during the tax year? *If "Yes," answer lines 5b and 5c below (if applicable). Also, provide detail in **Part VI,** including (i) the names and EIN numbers of the supported organizations added, substituted, or removed; (ii) the reasons for each such action; (iii) the authority under the organization's organizing document authorizing such action; and (iv) how the action was accomplished (such as by amendment to the organizing document).* | **5a** | | |
| **b** | **Type I or Type II only.** Was any added or substituted supported organization part of a class already designated in the organization's organizing document? | **5b** | | |
| **c** | **Substitutions only.** Was the substitution the result of an event beyond the organization's control? | **5c** | | |
| **6** | Did the organization provide support (whether in the form of grants or the provision of services or facilities) to anyone other than (i) its supported organizations, (ii) individuals that are part of the charitable class benefited by one or more of its supported organizations, or (iii) other supporting organizations that also support or benefit one or more of the filing organization's supported organizations? *If "Yes," provide detail in **Part VI.*** | **6** | | |
| **7** | Did the organization provide a grant, loan, compensation, or other similar payment to a substantial contributor (defined in section 4958(c)(3)(C)), a family member of a substantial contributor, or a 35% controlled entity with regard to a substantial contributor? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ) .* | **7** | | |
| **8** | Did the organization make a loan to a disqualified person (as defined in section 4958) not described in line 7? *If "Yes," complete Part I of Schedule L (Form 990 or 990-EZ).* | **8** | | |
| **9a** | Was the organization controlled directly or indirectly at any time during the tax year by one or more disqualified persons, as defined in section 4946 (other than foundation managers and organizations described in section 509(a)(1) or (2))? *If "Yes," provide detail in **Part VI.*** | **9a** | | |
| **b** | Did one or more disqualified persons (as defined in line 9a) hold a controlling interest in any entity in which the supporting organization had an interest? *If "Yes," provide detail in **Part VI.*** | **9b** | | |
| **c** | Did a disqualified person (as defined in line 9a) have an ownership interest in, or derive any personal benefit from, assets in which the supporting organization also had an interest? *If "Yes," provide detail in **Part VI.*** | **9c** | | |
| **10a** | Was the organization subject to the excess business holdings rules of section 4943 because of section 4943(f) (regarding certain Type II supporting organizations, and all Type III non-functionally integrated supporting organizations)? *If "Yes," answer line 10b below.* | **10a** | | |
| **b** | Did the organization have any excess business holdings in the tax year? *(Use Schedule C, Form 4720, to determine whether the organization had excess business holdings).* | **10b** | | |

**Part IV** **Supporting Organizations** (continued)

| | | | Yes | No |
|---|---|---|---|---|
| **11** | Has the organization accepted a gift or contribution from any of the following persons? | | | |
| **a** | A person who directly or indirectly controls, either alone or together with persons described in lines 11b and 11c below, the governing body of a supported organization? | **11a** | | |
| **b** | A family member of a person described in 11a above? | **11b** | | |
| **c** | A 35% controlled entity of a person described in line 11a or 11b above? *If "Yes" to 11a, 11b, or 11c, provide detail in **Part VI**.* | **11c** | | |

**Section B. Type I Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the officers, directors, trustees, or membership of one or more supported organizations have the power to regularly appoint or elect at least a majority of the organization's directors or trustees at all times during the tax year? *If "No," describe in **Part VI** how the supported organization(s) effectively operated, supervised, or controlled the organization's activities. If the organization had more than one supported organization, describe how the powers to appoint and/or remove directors or trustees were allocated among the supported organizations and what conditions or restrictions, if any, applied to such powers during the tax year.* | **1** | | |
| **2** | Did the organization operate for the benefit of any supported organization other than the supported organization(s) that operated, supervised, or controlled the supporting organization? *If "Yes," explain in **Part VI** how providing such benefit carried out the purposes of the supported organization(s) that operated, supervised or controlled the supporting organization.* | **2** | | |

**Section C. Type II Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were a majority of the organization's directors or trustees during the tax year also a majority of the directors or trustees of each of the organization's supported organization(s)? *If "No," describe in **Part VI** how control or management of the supporting organization was vested in the same persons that controlled or managed the supported organization(s).* | **1** | | |

**Section D. All Type III Supporting Organizations**

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Did the organization provide to each of its supported organizations, by the last day of the fifth month of the organization's tax year, (i) a written notice describing the type and amount of support provided during the prior tax year, (ii) a copy of the Form 990 that was most recently filed as of the date of notification, and (iii) copies of the organization's governing documents in effect on the date of notification, to the extent not previously provided? | **1** | | |
| **2** | Were any of the organization's officers, directors, or trustees either (i) appointed or elected by the supported organization(s) or (ii) serving on the governing body of a supported organization? *If "No," explain in **Part VI** how the organization maintained a close and continuous working relationship with the supported organization(s).* | **2** | | |
| **3** | By reason of the relationship described in line 2 above, did the organization's supported organizations have a significant voice in the organization's investment policies and in directing the use of the organization's income or assets at all times during the tax year? *If "Yes," describe in **Part VI** the role the organization's supported organizations played in this regard.* | **3** | | |

**Section E. Type III Functionally-Integrated Supporting Organizations**

**1** Check the box next to the method that the organization used to satisfy the Integral Part Test during the year **(see instructions)**:

- **a** ☐ The organization satisfied the Activities Test. Complete **line 2** below.
- **b** ☐ The organization is the parent of each of its supported organizations. Complete **line 3** below.
- **c** ☐ The organization supported a governmental entity. Describe in **Part VI** how you supported a government entity (see instructions)

| | | | Yes | No |
|---|---|---|---|---|
| **2** | Activities Test. **Answer lines 2a and 2b below.** | | | |
| **a** | Did substantially all of the organization's activities during the tax year directly further the exempt purposes of the supported organization(s) to which the organization was responsive? *If "Yes," then in **Part VI identify those supported organizations and explain** how these activities directly furthered their exempt purposes, how the organization was responsive to those supported organizations, and how the organization determined that these activities constituted substantially all of its activities.* | **2a** | | |
| **b** | Did the activities described in line 2a constitute activities that, but for the organization's involvement, one or more of the organization's supported organization(s) would have been engaged in? *If "Yes," explain in **Part VI** the reasons for the organization's position that its supported organization(s) would have engaged in these activities but for the organization's involvement.* | **2b** | | |
| **3** | Parent of Supported Organizations. **Answer lines 3a and 3b below.** | | | |
| **a** | Did the organization have the power to regularly appoint or elect a majority of the officers, directors, or trustees of each of the supported organizations? *If "Yes" or "No" provide details in **Part VI.*** | **3a** | | |
| **b** | Did the organization exercise a substantial degree of direction over the policies, programs and activities of each of its supported organizations? *If "Yes," describe in **Part VI.** the role played by the organization in this regard.* | **3b** | | |

## Part V Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations

1 ☐ Check here if the organization satisfied the Integral Part Test as a qualifying trust on Nov. 20, 1970 (*explain in **Part VI***). **See instructions.** All other Type III non-functionally integrated supporting organizations must complete Sections A through E.

| | **Section A - Adjusted Net Income** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Net short-term capital gain | 1 | | |
| 2 | Recoveries of prior-year distributions | 2 | | |
| 3 | Other gross income (see instructions) | 3 | | |
| 4 | Add lines 1 through 3 | 4 | | |
| 5 | Depreciation and depletion | 5 | | |
| 6 | Portion of operating expenses paid or incurred for production or collection of gross income or for management, conservation, or maintenance of property held for production of income (see instructions) | 6 | | |
| 7 | Other expenses (see instructions) | 7 | | |
| 8 | **Adjusted Net Income** (subtract lines 5, 6 and 7 from line 4) | 8 | | |

| | **Section B - Minimum Asset Amount** | | (A) Prior Year | (B) Current Year (optional) |
|---|---|---|---|---|
| 1 | Aggregate fair market value of all non-exempt-use assets (see instructions for short tax year or assets held for part of year): | 1 | | |
| a | Average monthly value of securities | 1a | | |
| b | Average monthly cash balances | 1b | | |
| c | Fair market value of other non-exempt-use assets | 1c | | |
| d | **Total** (add lines 1a, 1b, and 1c) | 1d | | |
| e | **Discount** claimed for blockage or other factors (*explain in detail in **Part VI***): | | | |
| 2 | Acquisition indebtedness applicable to non-exempt use assets | 2 | | |
| 3 | Subtract line 2 from line 1d | 3 | | |
| 4 | Cash deemed held for exempt use. Enter 0.015 of line 3 (for greater amount, see instructions). | 4 | | |
| 5 | Net value of non-exempt-use assets (subtract line 4 from line 3) | 5 | | |
| 6 | Multiply line 5 by 0.035 | 6 | | |
| 7 | Recoveries of prior-year distributions | 7 | | |
| 8 | **Minimum Asset Amount** (add line 7 to line 6) | 8 | | |

| | **Section C - Distributable Amount** | | | Current Year |
|---|---|---|---|---|
| 1 | Adjusted net income for prior year (from Section A, line 8, Column A) | 1 | | |
| 2 | Enter 85% of line 1 | 2 | | |
| 3 | Minimum asset amount for prior year (from Section B, line 8, Column A) | 3 | | |
| 4 | Enter greater of line 2 or line 3 | 4 | | |
| 5 | Income tax imposed in prior year | 5 | | |
| 6 | **Distributable Amount.** Subtract line 5 from line 4, unless subject to emergency temporary reduction (see instructions) | 6 | | |

7 ☐ Check here if the current year is the organization's first as a non-functionally-integrated Type III supporting organization (see instructions)

**Part V** **Type III Non-Functionally Integrated 509(a)(3) Supporting Organizations** (continued)

| **Section D - Distributions** | | **Current Year** |
|---|---|---|
| **1** Amounts paid to supported organizations to accomplish exempt purposes | **1** | |
| **2** Amounts paid to perform activity that directly furthers exempt purposes of supported organizations, in excess of income from activity | **2** | |
| **3** Administrative expenses paid to accomplish exempt purposes of supported organizations | **3** | |
| **4** Amounts paid to acquire exempt-use assets | **4** | |
| **5** Qualified set-aside amounts (*prior IRS approval required - provide details in* ***Part VI***) | **5** | |
| **6** Other distributions (*describe in* ***Part VI***). See instructions | **6** | |
| **7** **Total annual distributions.** Add lines 1 through 6. | **7** | |
| **8** Distributions to attentive supported organizations to which the organization is responsive (*provide details in* ***Part VI***). See instructions | **8** | |
| **9** Distributable amount for 2020 from Section C, line 6 | **9** | |
| **10** Line 8 amount divided by Line 9 amount | **10** | |

| **Section E - Distribution Allocations** (see instructions) | **(i)** **Excess Distributions** | **(ii)** **Underdistributions Pre-2020** | **(iii)** **Distributable Amount for 2020** |
|---|---|---|---|
| **1** Distributable amount for 2020 from Section C, line 6 | | | |
| **2** Underdistributions, if any, for years prior to 2020 (reasonable cause required-- *explain in* ***Part VI***). See instructions. | | | |
| **3** Excess distributions carryover, if any, to 2020: | | | |
| **a** From 2015. . . . . . . . | | | |
| **b** From 2016. . . . . . . . | | | |
| **c** From 2017. . . . . . . . | | | |
| **d** From 2018. . . . . . . . | | | |
| **e** From 2019. . . . . . . . | | | |
| **f** **Total** of lines 3a through e | | | |
| **g** Applied to underdistributions of prior years | | | |
| **h** Applied to 2020 distributable amount | | | |
| **i** Carryover from 2015 not applied (see instructions) | | | |
| **j** Remainder. Subtract lines 3g, 3h, and 3i from line 3f. | | | |
| **4** Distributions for 2020 from Section D, line 7: $ | | | |
| **a** Applied to underdistributions of prior years | | | |
| **b** Applied to 2020 distributable amount | | | |
| **c** Remainder. Subtract lines 4a and 4b from line 4. | | | |
| **5** Remaining underdistributions for years prior to 2020, if any. Subtract lines 3g and 4a from line 2. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **6** Remaining underdistributions for 2020. Subtract lines 3h and 4b from line 1. If the amount is greater than zero, *explain in* ***Part VI***. See instructions. | | | |
| **7** **Excess distributions carryover to 2021.** Add lines 3j and 4c. | | | |
| **8** Breakdown of line 7: | | | |
| **a** Excess from 2016. . . . . | | | |
| **b** Excess from 2017. . . . . | | | |
| **c** Excess from 2018. . . . . | | | |
| **d** Excess from 2019. . . . . | | | |
| **e** Excess from 2020. . . . . | | | |

**Part VI** **Supplemental Information.** Provide the explanations required by Part II, line 10; Part II, line 17a or 17b; Part III, line 12; Part IV, Section A, lines 1, 2, 3b, 3c, 4b, 4c, 5a, 6, 9a, 9b, 9c, 11a, 11b, and 11c; Part IV, Section B, lines 1 and 2; Part IV, Section C, line 1; Part IV, Section D, lines 2 and 3; Part IV, Section E, lines 1c, 2a, 2b, 3a and 3b; Part V, line 1; Part V, Section B, line 1e; Part V Section D, lines 5, 6, and 8; and Part V, Section E, lines 2, 5, and 6. Also complete this part for any additional information. (See instructions).

**Facts And Circumstances Test**

| Return Reference | Explanation |
| --- | --- |

efile GRAPHIC print | Submission Date - 2021-11-10 | DLN: 93493314069561

**SCHEDULE C (Form 990 or 990-EZ)**

Department of the Treasury Internal Revenue Service

# Political Campaign and Lobbying Activities

**For Organizations Exempt From Income Tax Under section 501(c) and section 527**

**▶Complete if the organization is described below. ▶Attach to Form 990 or Form 990-EZ.**
**▶Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**If the organization answered "Yes" on Form 990, Part IV, Line 3, or Form 990-EZ, Part V, line 46 (Political Campaign Activities), then**

- Section 501(c)(3) organizations: Complete Parts I-A and B. Do not complete Part I-C.
- Section 501(c) (other than section 501(c)(3)) organizations: Complete Parts I-A and C below. Do not complete Part I-B.
- Section 527 organizations: Complete Part I-A only.

**If the organization answered "Yes" on Form 990, Part IV, Line 4, or Form 990-EZ, Part VI, line 47 (Lobbying Activities), then**

- Section 501(c)(3) organizations that have filed Form 5768 (election under section 501(h)): Complete Part II-A. Do not complete Part II-B.
- Section 501(c)(3) organizations that have NOT filed Form 5768 (election under section 501(h)): Complete Part II-B. Do not complete Part II-A.

**If the organization answered "Yes" on Form 990, Part IV, Line 5 (Proxy Tax) (see separate instructions) or Form 990-EZ, Part V, line 35c (Proxy Tax) (see separate instructions), then**

- Section 501(c)(4), (5), or (6) organizations: Complete Part III.

Name of the organization: Adventist Health Mendocino Coast

**Employer identification number:** 84-5174585

**Part I-A Complete if the organization is exempt under section 501(c) or is a section 527 organization.**

1 Provide a description of the organization's direct and indirect political campaign activities in Part IV (see instructions for definition of "political campaign activities")

2 Political campaign activity expenditures (see instructions) ▶ $

3 Volunteer hours for political campaign activities (see instructions)

**Part I-B Complete if the organization is exempt under section 501(c)(3).**

1 Enter the amount of any excise tax incurred by the organization under section 4955 ▶ $

2 Enter the amount of any excise tax incurred by organization managers under section 4955 ▶ $

3 If the organization incurred a section 4955 tax, did it file Form 4720 for this year? ☐ Yes ☐ No

4a Was a correction made? ☐ Yes ☐ No

b If "Yes," describe in Part IV.

**Part I-C Complete if the organization is exempt under section 501(c), except section 501(c)(3).**

1 Enter the amount directly expended by the filing organization for section 527 exempt function activities ▶ $

2 Enter the amount of the filing organization's funds contributed to other organizations for section 527 exempt function activities ▶ $

3 Total exempt function expenditures. Add lines 1 and 2. Enter here and on Form 1120-POL, line 17b ▶ $

4 Did the filing organization file **Form 1120-POL** for this year? ☐ Yes ☐ No

5 Enter the names, addresses and employer identification number (EIN) of all section 527 political organizations to which the filing organization made payments. For each organization listed, enter the amount paid from the filing organization's funds. Also enter the amount of political contributions received that were promptly and directly delivered to a separate political organization, such as a separate segregated fund or a political action committee (PAC). If additional space is needed, provide information in Part IV.

| | **(a)** Name | **(b)** Address | **(c)** EIN | **(d)** Amount paid from filing organization's funds. If none, enter -0-. | **(e)** Amount of political contributions received and promptly and directly delivered to a separate political organization. If none, enter -0-. |
|---|---|---|---|---|---|
| **1** | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |

**For Paperwork Reduction Act Notice, see the instructions for Form 990 or 990-EZ.** Cat. No. 50084S **Schedule C (Form 990 or 990-EZ) 2020**

**Part II-A** **Complete if the organization is exempt under section 501(c)(3) and filed Form 5768 (election under section 501(h)).**

**A** Check ▶ ☐ if the filing organization belongs to an affiliated group (and list in Part IV each affiliated group member's name, address, EIN, expenses, and share of excess lobbying expenditures).

**B** Check ▶ ☐ if the filing organization checked box A and "limited control" provisions apply.

| **Limits on Lobbying Expenditures** (The term "expenditures" means amounts paid or incurred.) | **(a)** Filing organization's totals | **(b)** Affiliated group totals |
|---|---|---|
| **1a** Total lobbying expenditures to influence public opinion (grass roots lobbying) | | |
| **b** Total lobbying expenditures to influence a legislative body (direct lobbying) | | |
| **c** Total lobbying expenditures (add lines 1a and 1b) | | |
| **d** Other exempt purpose expenditures | | |
| **e** Total exempt purpose expenditures (add lines 1c and 1d) | | |
| **f** Lobbying nontaxable amount. Enter the amount from the following table in both columns. | | |

| If the amount on line 1e, column (a) or (b) is: | The lobbying nontaxable amount is: |
|---|---|
| Not over $500,000 | 20% of the amount on line 1e. |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000. |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000. |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000. |
| Over $17,000,000 | $1,000,000. |

| | (a) | (b) |
|---|---|---|
| **g** Grassroots nontaxable amount (enter 25% of line 1f) | | |
| **h** Subtract line 1g from line 1a. If zero or less, enter -0-. | | |
| **i** Subtract line 1f from line 1c. If zero or less, enter -0-. | | |

**j** If there is an amount other than zero on either line 1h or line 1i, did the organization file Form 4720 reporting section 4911 tax for this year? ☐ **Yes** ☐ **No**

**4-Year Averaging Period Under Section 501(h)**
**(Some organizations that made a section 501(h) election do not have to complete all of the five columns below. See the separate instructions for lines 2a through 2f.)**

**Lobbying Expenditures During 4-Year Averaging Period**

| Calendar year (or fiscal year beginning in) | **(a)** 2017 | **(b)** 2018 | **(c)** 2019 | **(d)** 2020 | **(e)** Total |
|---|---|---|---|---|---|
| **2a** Lobbying nontaxable amount | | | | | |
| **b** Lobbying ceiling amount (150% of line 2a, column(e)) | | | | | |
| **c** Total lobbying expenditures | | | | | |
| **d** Grassroots nontaxable amount | | | | | |
| **e** Grassroots ceiling amount (150% of line 2d, column (e)) | | | | | |
| **f** Grassroots lobbying expenditures | | | | | |

**Part II-B** **Complete if the organization is exempt under section 501(c)(3) and has NOT filed Form 5768 (election under section 501(h)).**

| *For each "Yes" response on lines 1a through 1i below, provide in Part IV a detailed description of the lobbying activity.* | | (a) Yes | (a) No | (b) Amount |
|---|---|---|---|---|
| 1 | During the year, did the filing organization attempt to influence foreign, national, state or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of: | | | |
| a | Volunteers? | | No | |
| b | Paid staff or management (include compensation in expenses reported on lines 1c through 1i)? | | No | |
| c | Media advertisements? | | No | |
| d | Mailings to members, legislators, or the public? | | No | |
| e | Publications, or published or broadcast statements? | | No | |
| f | Grants to other organizations for lobbying purposes? | | No | |
| g | Direct contact with legislators, their staffs, government officials, or a legislative body? | | No | |
| h | Rallies, demonstrations, seminars, conventions, speeches, lectures, or any similar means? | | No | |
| i | Other activities? | Yes | | 386 |
| j | Total. Add lines 1c through 1i | | | 386 |
| 2a | Did the activities in line 1 cause the organization to be not described in section 501(c)(3)? | | No | |
| b | If "Yes," enter the amount of any tax incurred under section 4912 | | | |
| c | If "Yes," enter the amount of any tax incurred by organization managers under section 4912 | | | |
| d | If the filing organization incurred a section 4912 tax, did it file Form 4720 for this year? | | | |

**Part III-A** **Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6).**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Were substantially all (90% or more) dues received nondeductible by members? | 1 | | |
| 2 | Did the organization make only in-house lobbying expenditures of $2,000 or less? | 2 | | |
| 3 | Did the organization agree to carry over lobbying and political expenditures from the prior year? | 3 | | |

**Part III-B** **Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6) and if either (a) BOTH Part III-A, lines 1 and 2, are answered "No" OR (b) Part III-A, line 3, is answered "Yes."**

| | | | |
|---|---|---|---|
| 1 | Dues, assessments and similar amounts from members | 1 | |
| 2 | Section 162(e) nondeductible lobbying and political expenditures **(do not include amounts of political expenses for which the section 527(f) tax was paid).** | | |
| a | Current year | 2a | |
| b | Carryover from last year | 2b | |
| c | Total | 2c | |
| 3 | Aggregate amount reported in section 6033(e)(1)(A) notices of nondeductible section 162(e) dues . | 3 | |
| 4 | If notices were sent and the amount on line 2c exceeds the amount on line 3, what portion of the excess does the organization agree to carryover to the reasonable estimate of nondeductible lobbying and political expenditure next year? | 4 | |
| 5 | Taxable amount of lobbying and political expenditures (see instructions) | 5 | |

**Part IV** **Supplemental Information**

Provide the descriptions required for Part I-A, line 1; Part I-B, line 4; Part I-C, line 5; Part II-A (affiliated group list); Part II-A, lines 1 and 2 (see instructions), and Part II-B, line 1. Also, complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| Part II-B, Line 1: | The Hospital belongs to industry and professional associations for which a portion of the membership dues is used for lobbying activities. |

| efile GRAPHIC print | Submission Date - 2021-11-10 | DLN: 93493314069561 |
|---|---|---|

**SCHEDULE D (Form 990)**

Department of the Treasury Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes," on Form 990, Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**Name of the organization**
Adventist Health Mendocino Coast

**Employer identification number**
84-5174585

## Part I Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.

Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year | | |
| 2 | Aggregate value of contributions to (during year) | | |
| 3 | Aggregate value of grants from (during year) | | |
| 4 | Aggregate value at end of year | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? ☐ Yes ☐ No

## Part II Conservation Easements.

Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).

- ☐ Preservation of land for public use (e.g., recreation or education)
- ☐ Preservation of an historically important land area
- ☐ Protection of natural habitat
- ☐ Preservation of a certified historic structure
- ☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Year |
|---|---|---|---|
| a | Total number of conservation easements | 2a | |
| b | Total acreage restricted by conservation easements | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) | 2c | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register | 2d | |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ ____________

4 Number of states where property subject to conservation easement is located ▶ ____________

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ ____________

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $ ____________

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

## Part III Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.

Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII, the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 ▶ $ ____________

(ii) Assets included in Form 990, Part X ▶ $ ____________

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

a Revenue included on Form 990, Part VIII, line 1 ▶ $ ____________

b Assets included in Form 990, Part X ▶ $ ____________

**Part III** **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)*

3 Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a ☐ Public exhibition
b ☐ Scholarly research
c ☐ Preservation for future generations
d ☐ Loan or exchange programs
e ☐ Other ..........

4 Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

5 During the year, did the organization solicit or receive donations of art, historical treasures or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . . . ☐ Yes ☐ No

**Part IV** **Escrow and Custodial Arrangements.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

1a Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | | Amount |
|---|---|---|---|
| c | Beginning balance | 1c | |
| d | Additions during the year | 1d | |
| e | Distributions during the year | 1e | |
| f | Ending balance | 1f | |

2a Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? . . . ☐ Yes ☐ No

b If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided in Part XIII . . . . ☐

**Part V** **Endowment Funds.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|---|
| 1a | Beginning of year balance | | | | | |
| b | Contributions | | | | | |
| c | Net investment earnings, gains, and losses | | | | | |
| d | Grants or scholarships | | | | | |
| e | Other expenditures for facilities and programs | | | | | |
| f | Administrative expenses | | | | | |
| g | End of year balance | | | | | |

2 Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

a Board designated or quasi-endowment ▶ ..........

b Permanent endowment ▶ ..........

c Term endowment ▶ ..........

The percentages on lines 2a, 2b, and 2c should equal 100%.

3a Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | | Yes | No |
|---|---|---|---|---|
| | (i) Unrelated organizations | 3a(i) | | |
| | (ii) Related organizations | 3a(ii) | | |
| b | If "Yes" on 3a(ii), are the related organizations listed as required on Schedule R? | 3b | | |

4 Describe in Part XIII the intended uses of the organization's endowment funds.

**Part VI** **Land, Buildings, and Equipment.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| | Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|---|
| 1a | Land | | | | |
| b | Buildings | | | | |
| c | Leasehold improvements | | 59,211 | | 59,211 |
| d | Equipment | | 8,512,977 | 813,180 | 7,699,797 |
| e | Other | | | | |
| **Total.** | Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10(c).)* ▶ | | | | 7,759,008 |

**Part VII Investments—Other Securities.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) Financial derivatives | | |
| (2) Closely-held equity interests | | |
| (3) Other | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| (I) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col. (B) line 12.)* ▶ | | |

**Part VIII Investments—Program Related.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| (10) | | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 13.)* ▶ | | |

**Part IX Other Assets.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) Other receivables | 13,687,101 |
| (2) Receivables from related organizations | 602,387 |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| (10) | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 15.)* ▶ | 14,289,488 |

**Part X Other Liabilities.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| 1. (a) Description of liability | (b) Book value |
|---|---|
| (1) Federal income taxes | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** *(Column (b) must equal Form 990, Part X, col.(B) line 25.)* ▶ | 7,010,203 |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII ☑

**Part XI Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| **1** | Total revenue, gains, and other support per audited financial statements | | | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| **a** | Net unrealized gains (losses) on investments | **2a** | | | |
| **b** | Donated services and use of facilities | **2b** | | | |
| **c** | Recoveries of prior year grants | **2c** | | | |
| **d** | Other (Describe in Part XIII.) | **2d** | | | |
| **e** | Add lines **2a** through **2d** | | | **2e** | |
| **3** | Subtract line **2e** from line **1** | | | **3** | |
| **4** | Amounts included on Form 990, Part VIII, line 12, but not on line **1**: | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** | | | |
| **b** | Other (Describe in Part XIII.) | **4b** | | | |
| **c** | Add lines **4a** and **4b** | | | **4c** | |
| **5** | Total revenue. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 12.) | | | **5** | |

**Part XII Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.**
Complete if the organization answered 'Yes' on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| **1** | Total expenses and losses per audited financial statements | | | **1** | |
| **2** | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| **a** | Donated services and use of facilities | **2a** | | | |
| **b** | Prior year adjustments | **2b** | | | |
| **c** | Other losses | **2c** | | | |
| **d** | Other (Describe in Part XIII.) | **2d** | | | |
| **e** | Add lines **2a** through **2d** | | | **2e** | |
| **3** | Subtract line **2e** from line **1** | | | **3** | |
| **4** | Amounts included on Form 990, Part IX, line 25, but not on line **1:** | | | | |
| **a** | Investment expenses not included on Form 990, Part VIII, line 7b | **4a** | | | |
| **b** | Other (Describe in Part XIII.) | **4b** | | | |
| **c** | Add lines **4a** and **4b** | | | **4c** | |
| **5** | Total expenses. Add lines **3** and **4c.** (This must equal Form 990, Part I, line 18.) | | | **5** | |

**Part XIII Supplemental Information**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

| Return Reference | Explanation |
|---|---|
| Part X, Line 2: | The principal operations of the System are exempt from taxation pursuant to Internal Revenue Code Section 501(c)(3) and related state provisions. The System recognizes tax benefits from any uncertain tax positions only if it is more-likely-than-not the tax position will be sustained, based solely on its technical merits, with the taxing authority having full knowledge of all relevant information. The System records a liability for unrecognized tax benefits from uncertain tax positions as discrete tax adjustments in the first interim period the more-likely-than-not threshold is not met. The System recognizes deferred tax assets and liabilities for temporary differences between the financial reporting basis and the tax basis of its assets and liabilities, along with net operating loss and tax credit carryovers only for tax positions that meet the more-likely-than-not recognition criteria. At December 31, 2020 and 2019, no such assets or liabilities were recorded. The System currently files Form 990 (informational return of organizations exempt from income taxes) and Form 990-T (business income tax return for an exempt organization) in the U.S. federal jurisdiction and the state of California. The System is not subject to income tax examinations prior to 2016 in major tax jurisdictions. |

| efile GRAPHIC print | Submission Date - 2021-11-10 | DLN: 93493314069561 |
|---|---|---|

**SCHEDULE H (Form 990)**

Department of the Treasury Internal Revenue Service

# Hospitals

▶ Complete if the organization answered "Yes" on Form 990, Part IV, question 20.
▶ Attach to Form 990.
▶ Go to *www.irs.gov/Form990EZ* for instructions and the latest information.

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**Name of the organization**
Adventist Health Mendocino Coast

**Employer identification number**
84-5174585

## Part I Financial Assistance and Certain Other Community Benefits at Cost

| | | | Yes | No |
|---|---|---|---|---|
| 1a | Did the organization have a financial assistance policy during the tax year? If "No," skip to question 6a | 1a | Yes | |
| b | If "Yes," was it a written policy? | 1b | Yes | |
| 2 | If the organization had multiple hospital facilities, indicate which of the following best describes application of the financial assistance policy to its various hospital facilities during the tax year.<br>☑ Applied uniformly to all hospital facilities ☐ Applied uniformly to most hospital facilities<br>☐ Generally tailored to individual hospital facilities | | | |
| 3 | Answer the following based on the financial assistance eligibility criteria that applied to the largest number of the organization's patients during the tax year. | | | |
| a | Did the organization use Federal Poverty Guidelines (FPG) as a factor in determining eligibility for providing *free* care? If "Yes," indicate which of the following was the FPG family income limit for eligibility for free care: | 3a | Yes | |
| | ☐ 100% ☐ 150% ☑ 200% ☐ Other ______ % | | | |
| b | Did the organization use FPG as a factor in determining eligibility for providing *discounted* care? If "Yes," indicate which of the following was the family income limit for eligibility for discounted care: | 3b | Yes | |
| | ☐ 200% ☐ 250% ☐ 300% ☐ 350% ☑ 400% ☐ Other ______ % | | | |
| c | If the organization used factors other than FPG in determining eligibility, describe in Part VI the criteria used for determining eligibility for free or discounted care. Include in the description whether the organization used an asset test or other threshold, regardless of income, as a factor in determining eligibility for free or discounted care. | | | |
| 4 | Did the organization's financial assistance policy that applied to the largest number of its patients during the tax year provide for free or discounted care to the "medically indigent"? | 4 | Yes | |
| 5a | Did the organization budget amounts for free or discounted care provided under its financial assistance policy during the tax year? | 5a | Yes | |
| b | If "Yes," did the organization's financial assistance expenses exceed the budgeted amount? | 5b | Yes | |
| c | If "Yes" to line 5b, as a result of budget considerations, was the organization unable to provide free or discounted care to a patient who was eligibile for free or discounted care? | 5c | | No |
| 6a | Did the organization prepare a community benefit report during the tax year? | 6a | Yes | |
| b | If "Yes," did the organization make it available to the public? | 6b | Yes | |

Complete the following table using the worksheets provided in the Schedule H instructions. Do not submit these worksheets with the Schedule H.

**7** Financial Assistance and Certain Other Community Benefits at Cost

| Financial Assistance and Means-Tested Government Programs | (a) Number of activities or programs (optional) | (b) Persons served (optional) | (c) Total community benefit expense | (d) Direct offsetting revenue | (e) Net community benefit expense | (f) Percent of total expense |
|---|---|---|---|---|---|---|
| a Financial Assistance at cost (from Worksheet 1) | | | 462 | | 462 | 0 % |
| b Medicaid (from Worksheet 3, column a) | | | 4,727,032 | 4,375,976 | 351,056 | 1.220 % |
| c Costs of other means-tested government programs (from Worksheet 3, column b) | | | | | | |
| d **Total** Financial Assistance and Means-Tested Government Programs | | | 4,727,494 | 4,375,976 | 351,518 | 1.220 % |
| **Other Benefits** | | | | | | |
| e Community health improvement services and community benefit operations (from Worksheet 4). | | | 12,794 | | 12,794 | 0.040 % |
| f Health professions education (from Worksheet 5) | | | | | | |
| g Subsidized health services (from Worksheet 6) | | | | | | |
| h Research (from Worksheet 7) | | | | | | |
| i Cash and in-kind contributions for community benefit (from Worksheet 8) | | | | | | |
| j **Total.** Other Benefits | | | 12,794 | | 12,794 | 0.040 % |
| k **Total.** Add lines 7d and 7j | | | 4,740,288 | 4,375,976 | 364,312 | 1.260 % |

**Part II** **Community Building Activities** Complete this table if the organization conducted any community building activities during the tax year, and describe in Part VI how its community building activities promoted the health of the communities it serves.

| | (a) Number of activities or programs (optional) | (b) Persons served (optional) | (c) Total community building expense | (d) Direct offsetting revenue | (e) Net community building expense | (f) Percent of total expense |
|---|---|---|---|---|---|---|
| 1 Physical improvements and housing | | | | | | |
| 2 Economic development | | | | | | |
| 3 Community support | | | | | | |
| 4 Environmental improvements | | | | | | |
| 5 Leadership development and training for community members | | | | | | |
| 6 Coalition building | | | | | | |
| 7 Community health improvement advocacy | | | | | | |
| 8 Workforce development | | | 685,842 | | 685,842 | 2.380 % |
| 9 Other | | | | | | |
| 10 **Total** | | | 685,842 | | 685,842 | 2.380 % |

**Part III** **Bad Debt, Medicare, & Collection Practices**

**Section A. Bad Debt Expense**

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Did the organization report bad debt expense in accordance with Healthcare Financial Management Association Statement No. 15? | 1 | Yes | |

2 Enter the amount of the organization's bad debt expense. Explain in Part VI the methodology used by the organization to estimate this amount. . . . . . . . **2** 39,768

3 Enter the estimated amount of the organization's bad debt expense attributable to patients eligible under the organization's financial assistance policy. Explain in Part VI the methodology used by the organization to estimate this amount and the rationale, if any, for including this portion of bad debt as community benefit. . . . . . . **3** 11,885

4 Provide in Part VI the text of the footnote to the organization’s financial statements that describes bad debt expense or the page number on which this footnote is contained in the attached financial statements.

**Section B. Medicare**

| | | | |
|---|---|---|---|
| 5 | Enter total revenue received from Medicare (including DSH and IME) . . . . . | 5 | 17,184,031 |
| 6 | Enter Medicare allowable costs of care relating to payments on line 5 . . . . . | 6 | 16,788,450 |
| 7 | Subtract line 6 from line 5. This is the surplus (or shortfall) . . . . . . . . . | 7 | 395,581 |

8 Describe in Part VI the extent to which any shortfall reported in line 7 should be treated as community benefit. Also describe in Part VI the costing methodology or source used to determine the amount reported on line 6. Check the box that describes the method used:

☐ Cost accounting system ☑ Cost to charge ratio ☐ Other

**Section C. Collection Practices**

| | | | Yes | No |
|---|---|---|---|---|
| 9a | Did the organization have a written debt collection policy during the tax year? . . . . . . . . . . | 9a | Yes | |
| b | If "Yes," did the organization’s collection policy that applied to the largest number of its patients during the tax year contain provisions on the collection practices to be followed for patients who are known to qualify for financial assistance? Describe in Part VI . . . . . . . . . . . . . . . . . . . . . . . . | 9b | Yes | |

**Part IV** **Management Companies and Joint Ventures** (owned 10% or more by officers, directors, trustees, key employees, and physicians—see instructions)

| | (a) Name of entity | (b) Description of primary activity of entity | (c) Organization's profit % or stock ownership % | (d) Officers, directors, trustees, or key employees' profit % or stock ownership % | (e) Physicians' profit % or stock ownership % |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |

**Part V Facility Information**

**Section A. Hospital Facilities**

(list in order of size from largest to smallest—see instructions)

How many hospital facilities did the organization operate during the tax year? **1**

| | Name, address, primary website address, and state license number (and if a group return, the name and EIN of the subordinate hospital organization that operates the hospital facility) | Licensed hospital | General medical & surgical | Children's hospital | Teaching hospital | Critical access hospital | Research facility | ER–24 hours | ER–other | Other (describe) | Facility reporting group |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Adventist Health Mendocino Coast<br>700 River Drive<br>Fort Bragg, CA 95437<br>adventisthealth.org/mendocino<br>110000040 | X | X | | | | | X | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

**Part V Facility Information** *(continued)*

## Section B. Facility Policies and Practices

(Complete a separate Section B for each of the hospital facilities or facility reporting groups listed in Part V, Section A)

**Name of hospital facility or letter of facility reporting group** Adventist Health Mendocino Coast

**Line number of hospital facility, or line numbers of hospital facilities in a facility reporting group (from Part V, Section A):** 1

| | | | Yes | No |
|---|---|---|---|---|
| **Community Health Needs Assessment** | | | | |
| 1 | Was the hospital facility first licensed, registered, or similarly recognized by a state as a hospital facility in the current tax year or the immediately preceding tax year? | 1 | | No |
| 2 | Was the hospital facility acquired or placed into service as a tax-exempt hospital in the current tax year or the immediately preceding tax year? If "Yes," provide details of the acquisition in Section C. | 2 | Yes | |
| 3 | During the tax year or either of the two immediately preceding tax years, did the hospital facility conduct a community health needs assessment (CHNA)? If "No," skip to line 12. | 3 | Yes | |
| | If "Yes," indicate what the CHNA report describes (check all that apply): | | | |
| a | ☑ A definition of the community served by the hospital facility | | | |
| b | ☑ Demographics of the community | | | |
| c | ☑ Existing health care facilities and resources within the community that are available to respond to the health needs of the community | | | |
| d | ☑ How data was obtained | | | |
| e | ☑ The significant health needs of the community | | | |
| f | ☑ Primary and chronic disease needs and other health issues of uninsured persons, low-income persons, and minority groups | | | |
| g | ☑ The process for identifying and prioritizing community health needs and services to meet the community health needs | | | |
| h | ☑ The process for consulting with persons representing the community's interests | | | |
| i | ☑ The impact of any actions taken to address the significant health needs identified in the hospital facility's prior CHNA(s) | | | |
| j | ☐ Other (describe in Section C) | | | |
| 4 | Indicate the tax year the hospital facility last conducted a CHNA: 20 19 | | | |
| 5 | In conducting its most recent CHNA, did the hospital facility take into account input from persons who represent the broad interests of the community served by the hospital facility, including those with special knowledge of or expertise in public health? If "Yes," describe in Section C how the hospital facility took into account input from persons who represent the community, and identify the persons the hospital facility consulted | 5 | Yes | |
| 6 a | Was the hospital facility's CHNA conducted with one or more other hospital facilities? If "Yes," list the other hospital facilities in Section C | 6a | Yes | |
| b | Was the hospital facility's CHNA conducted with one or more organizations other than hospital facilities?" If "Yes," list the other organizations in Section C. | 6b | Yes | |
| 7 | Did the hospital facility make its CHNA report widely available to the public? | 7 | Yes | |
| | If "Yes," indicate how the CHNA report was made widely available (check all that apply): | | | |
| a | ☑ Hospital facility's website (list url): See Sch H, Part VI - Needs Assessment | | | |
| b | ☑ Other website (list url): See Sch H, Part VI - Needs Assessment | | | |
| c | ☑ Made a paper copy available for public inspection without charge at the hospital facility | | | |
| d | ☐ Other (describe in Section C) | | | |
| 8 | Did the hospital facility adopt an implementation strategy to meet the significant community health needs identified through its most recently conducted CHNA? If "No," skip to line 11. | 8 | Yes | |
| 9 | Indicate the tax year the hospital facility last adopted an implementation strategy: 20 19 | | | |
| 10 | Is the hospital facility's most recently adopted implementation strategy posted on a website? | 10 | Yes | |
| a | If "Yes" (list url): See Sch H, Part VI - Needs Assessment | | | |
| b | If "No," is the hospital facility's most recently adopted implementation strategy attached to this return? | 10b | | |
| 11 | Describe in Section C how the hospital facility is addressing the significant needs identified in its most recently conducted CHNA and any such needs that are not being addressed together with the reasons why such needs are not being addressed. | | | |
| 12a | Did the organization incur an excise tax under section 4959 for the hospital facility's failure to conduct a CHNA as required by section 501(r)(3)? | 12a | | No |
| b | If "Yes" on line 12a, did the organization file Form 4720 to report the section 4959 excise tax? | 12b | | |
| c | If "Yes" on line 12b, what is the total amount of section 4959 excise tax the organization reported on Form 4720 for all of its hospital facilities? $ | | | |

**Part V** **Facility Information** *(continued)*

**Financial Assistance Policy (FAP)**

**Name of hospital facility or letter of facility reporting group** Adventist Health Mendocino Coast

| | | | Yes | No |
|---|---|---|---|---|
| | Did the hospital facility have in place during the tax year a written financial assistance policy that: | | | |
| **13** | Explained eligibility criteria for financial assistance, and whether such assistance included free or discounted care? | **13** | Yes | |
| | If "Yes," indicate the eligibility criteria explained in the FAP: | | | |
| **a** | ☑ Federal poverty guidelines (FPG), with FPG family income limit for eligibility for free care of 200.000000000000 % and FPG family income limit for eligibility for discounted care of 400.000000000000 % | | | |
| **b** | ☐ Income level other than FPG (describe in Section C) | | | |
| **c** | ☑ Asset level | | | |
| **d** | ☑ Medical indigency | | | |
| **e** | ☑ Insurance status | | | |
| **f** | ☑ Underinsurance discount | | | |
| **g** | ☐ Residency | | | |
| **h** | ☐ Other (describe in Section C) | | | |
| **14** | Explained the basis for calculating amounts charged to patients? . . . . . . . . . . . . . . . . . | **14** | Yes | |
| **15** | Explained the method for applying for financial assistance? . . . . . . . . . . . . . . . . . . . | **15** | Yes | |
| | If "Yes," indicate how the hospital facility's FAP or FAP application form (including accompanying instructions) explained the method for applying for financial assistance (check all that apply): | | | |
| **a** | ☑ Described the information the hospital facility may require an individual to provide as part of his or her application | | | |
| **b** | ☑ Described the supporting documentation the hospital facility may require an individual to submit as part of his or her application | | | |
| **c** | ☑ Provided the contact information of hospital facility staff who can provide an individual with information about the FAP and FAP application process | | | |
| **d** | ☑ Provided the contact information of nonprofit organizations or government agencies that may be sources of assistance with FAP applications | | | |
| **e** | ☐ Other (describe in Section C) | | | |
| **16** | Was widely publicized within the community served by the hospital facility? . . . . . . . . | **16** | Yes | |
| | If "Yes," indicate how the hospital facility publicized the policy (check all that apply): | | | |
| **a** | ☑ The FAP was widely available on a website (list url): Sch H, Part VI-Patient Educ | | | |
| **b** | ☑ The FAP application form was widely available on a website (list url): Sch H, Part VI-Patient Educ | | | |
| **c** | ☑ A plain language summary of the FAP was widely available on a website (list url): Sch H, Part VI-Patient Educ | | | |
| **d** | ☑ The FAP was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| **e** | ☑ The FAP application form was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| **f** | ☑ A plain language summary of the FAP was available upon request and without charge (in public locations in the hospital facility and by mail) | | | |
| **g** | ☑ Individuals were notified about the FAP by being offered a paper copy of the plain language summary of the FAP, by receiving a conspicuous written notice about the FAP on their billing statements, and via conspicuous public displays or other measures reasonably calculated to attract patients' attention | | | |
| **h** | ☑ Notified members of the community who are most likely to require financial assistance about availability of the FAP | | | |
| **i** | ☑ The FAP, FAP application form, and plain language summary of the FAP were translated into the primary language(s) spoken by LEP populations | | | |
| **j** | ☐ Other (describe in Section C) | | | |

**Part V Facility Information** *(continued)*

**Billing and Collections**

**Name of hospital facility or letter of facility reporting group** Adventist Health Mendocino Coast

| | | Yes | No |
|---|---|---|---|
| **17** Did the hospital facility have in place during the tax year a separate billing and collections policy, or a written financial assistance policy (FAP) that explained all of the actions the hospital facility or other authorized party may take upon nonpayment? | **17** | Yes | |

**18** Check all of the following actions against an individual that were permitted under the hospital facility's policies during the tax year before making reasonable efforts to determine the individual's eligibility under the facility's FAP:

- **a** ☐ Reporting to credit agency(ies)
- **b** ☐ Selling an individual's debt to another party
- **c** ☐ Deferring, denying, or requiring a payment before providing medically necessary care due to nonpayment of a previous bill for care covered under the hospital facility's FAP
- **d** ☐ Actions that require a legal or judicial process
- **e** ☐ Other similar actions (describe in Section C)
- **f** ☑ None of these actions or other similar actions were permitted

| | | Yes | No |
|---|---|---|---|
| **19** Did the hospital facility or other authorized party perform any of the following actions during the tax year before making reasonable efforts to determine the individual's eligibility under the facility's FAP? | **19** | | No |

If "Yes," check all actions in which the hospital facility or a third party engaged:

- **a** ☐ Reporting to credit agency(ies)
- **b** ☐ Selling an individual's debt to another party
- **c** ☐ Deferring , denying, or requiring a payment before providing medically necessary care due to nonpayment of a previous bill for care covered under the hospital facility's FAP
- **d** ☐ Actions that require a legal or judicial process
- **e** ☐ Other similar actions (describe in Section C)

**20** Indicate which efforts the hospital facility or other authorized party made before initiating any of the actions listed (whether or not checked) in line 19. (check all that apply):

- **a** ☑ Provided a written notice about upcoming ECAs (Extraordinary Collection Action) and a plain language summary of the FAP at least 30 days before initiating those ECAs (if not, describe in Section C)
- **b** ☑ Made a reasonable effort to orally notify individuals about the FAP and FAP application process (if not, describe in Section C)
- **c** ☑ Processed incomplete and complete FAP applications (if not, describe in Section C)
- **d** ☑ Made presumptive eligibility determinations (if not, describe in Section C)
- **e** ☐ Other (describe in Section C)
- **f** ☐ None of these efforts were made

**Policy Relating to Emergency Medical Care**

| | | Yes | No |
|---|---|---|---|
| **21** Did the hospital facility have in place during the tax year a written policy relating to emergency medical care that required the hospital facility to provide, without discrimination, care for emergency medical conditions to individuals regardless of their eligibility under the hospital facility's financial assistance policy? | **21** | Yes | |

If "No," indicate why:

- **a** ☐ The hospital facility did not provide care for any emergency medical conditions
- **b** ☐ The hospital facility's policy was not in writing
- **c** ☐ The hospital facility limited who was eligible to receive care for emergency medical conditions (describe in Section C)
- **d** ☐ Other (describe in Section C)

**Part V Facility Information** *(continued)*

**Charges to Individuals Eligible for Assistance Under the FAP (FAP-Eligible Individuals)**

**Name of hospital facility or letter of facility reporting group** Adventist Health Mendocino Coast

| | | | Yes | No |
|---|---|---|---|---|
| **22** | Indicate how the hospital facility determined, during the tax year, the maximum amounts that can be charged to FAP-eligible individuals for emergency or other medically necessary care. | | | |
| **a** | ☑ The hospital facility used a look-back method based on claims allowed by Medicare fee-for-service during a prior 12-month period | | | |
| **b** | ☐ The hospital facility used a look-back method based on claims allowed by Medicare fee-for-service and all private health insurers that pay claims to the hospital facility during a prior 12-month period | | | |
| **c** | ☐ The hospital facility used a look-back method based on claims allowed by Medicaid, either alone or in combination with Medicare fee-for-service and all private health insurers that pay claims to the hospital facility during a prior 12-month period | | | |
| **d** | ☐ The hospital facility used a prospective Medicare or Medicaid method | | | |
| **23** | During the tax year, did the hospital facility charge any FAP-eligible individual to whom the hospital facility provided emergency or other medically necessary services more than the amounts generally billed to individuals who had insurance covering such care? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . <br>If "Yes," explain in Section C. | **23** | | No |
| **24** | During the tax year, did the hospital facility charge any FAP-eligible individual an amount equal to the gross charge for any service provided to that individual? . . . . . . . . . . . . . . . . . . . . . . . . . . <br>If "Yes," explain in Section C. | **24** | | No |

**Part V Facility Information** *(continued)*

**Section C. Supplemental Information for Part V, Section B.** Provide descriptions required for Part V, Section B, lines 2, 3j, 5, 6a, 6b, 7d, 11, 13b, 13h, 15e, 16j, 18e, 19e, 20a, 20b, 20c, 20d, 20e, 21c, 21d, 23, and 24. If applicable, provide separate descriptions for each hospital facility in a facility reporting group, designated by facility reporting group letter and hospital facility line number from Part V, Section A ("A, 1," "A, 4," "B, 2," "B, 3," etc.) and name of hospital facility.

| Form and Line Reference | Explanation |
|---|---|
| Adventist Health Mendocino Coast | Part V, Section B, Line 2: Adventist Health System/West entered into a lease agreement with Adventist Health Mendocino Coast, located in Fort Bragg, California. Stone Point Health, an affiliate of Adventist Health System/West became the sole member of Adventist Health Mendocino Coast. This agreement was effective July 1, 2020. This lease agreement allowed Adventist Health System/West the ability to provide expanded healthcare services in the Fort Bragg, California, market. |
| Adventist Health Mendocino Coast | Part V, Section B, Line 5: Due to Adventist Health Mendocino Coast being a district hospital prior to the affiliation with Adventist Health System/West, community information is being reported from Adventist Health Ukiah Valley's CHNA. The 2019 CHNA data collection process can be summarized as follows: 1. Review of prior CHNA reporting efforts; 2. Collection of most recently available demographic, socioeconomic and health indicator data. 3. Data gathering accomplished by using a widely-distributed community health survey and conducting key informant interviews and written surveys. Community Health Survey: Community Health Survey was provided to Mendocino County residents online as well as in hardcopy format. A total of 1,324 residents completed the Community Health Survey; 1,276 were completed in English and 48 in Spanish; 94 were completed by Native Americans, mostly from the Round Valley area.Key Informant Interviews and written surveys: 34 key stakeholders in the community, including representatives of county and city government, private businesses, health and human services, hospitals and clinics, community-based organizations and nonprofits, law enforcement, children and youth services, education, media, geography, and racial/ethnic groups, among others. Interviews were conducted in person or by phone. Some questions were also provided in hardcopy format for written response. While an effort was made to have diverse representation, the opinions provided by the key informants are not necessarily representative of the county as a whole. Key Leader Survey of 56 formal and informal leaders in the community that was provided online. Together with the Key Informant Interviews, a total of 90 key informants/leaders in Mendocino County participated.These key stakeholders were selected by the workgroup because they would provide a unique perspective on the health of the community, health care delivery systems in place and overall conditions that influence health behaviors. Secondary data sources included publicly available state and nationally recognized data sources. Data on key health indicators, morbidity, mortality, and various social determinants of health were collected from the US Government Accountability office, California Department of Social Services, California Department of Public Health, US department of Health and Human Services, HealthyPeople2020, Centers for Disease Control and Prevention, and the American Heart Association. |
| Adventist Health Mendocino Coast | Part V, Section B, Line 6a: Due to Adventist Health Mendocino Coast being a district hospital prior to the lease agreement with Adventist Health System/West, community information is being reported from Adventist Health Ukiah Valley's CHNA. Adventist Health Ukiah Valley partnered with Adventist Health Howard Memorial Hospital to produce the 2019 CHNA. |
| Adventist Health Mendocino Coast | Part V, Section B, Line 6b: Due to Adventist Health Mendocino Coast being a district hospital prior to the lease agreement with Adventist Health System/West, community information is being reported from Adventist Health Ukiah Valley's CHNA. Ukiah Valley Medical Center collaborated with the Mendocino County Health and Human Services Agency Public Health Branch, Healthy Mendocino, Redwood Community Services, Mendocino Coast Clinics, Mendocino Community Health Clinics, Alliance for Rural Community Health and North Coast Opportunities to prepare the 2019 Community Health Needs Assessment. |
| Adventist Health Mendocino Coast | Part V, Section B, Line 11: The COVID-19 global pandemic has caused extraordinary challenges for Adventist Health hospitals and health care systems across the world including keeping front line workers safe, shortages of protective equipment, limited ICU bed space and developing testing protocols. They have also focused on helping patients and families deal with the isolation needed to stop the spread of the virus, and more recently vaccine roll out efforts. Adventist Health, like other health care systems, had to pivot its focus to meet the most urgent healthcare needs of its community during the pandemic, as well as reassess the ability to continue with some community health strategies due to public health guidelines for social distancing. Adjustments have been made to continue community health improvement efforts as possible, while ensuring the health and safety of those participating.Prior to 2020, Adventist Health Mendocino Coast was a district hospital therefore did not participate in a formal Community Health Needs Assessment (CHNA). In the absence of a CHNA, hospital leadership mimicked the priority health needs of Adventist Health Ukiah Valley. This includes addressing mental health, substance abuse, and workforce development. In addition, there are currently no reporting metrics at this time. With the approved lease agreement to Adventist Health Mendocino Coast, the hospital facility continued to mimic Adventist Health Ukiah Valley's priority health needs. However, there are no metrics to report at this time. |

**Part V Facility Information** *(continued)*

**Section D. Other Health Care Facilities That Are Not Licensed, Registered, or Similarly Recognized as a Hospital Facility**

(list in order of size, from largest to smallest)

How many non-hospital health care facilities did the organization operate during the tax year? **3**

| | Name and address | Type of Facility (describe) |
|---|---|---|
| **1** | 1 - AJ Gray Building<br>775 River Drive<br>Fort Bragg, CA 95437 | Home health, Foundation, and IT offices |
| **2** | 2 - North Coast Family Health Center<br>721 River Drive<br>Fort Bragg, CA 95437 | Clinic |
| **3** | 3 - Ophthalmologist Clinic<br>721 River Drive<br>Fort Bragg, CA 95437 | Ophthalmology Clinic |
| **4** | | |
| **5** | | |
| **6** | | |
| **7** | | |
| **8** | | |
| **9** | | |
| **10** | | |

**Part VI Supplemental Information**

Provide the following information.

1 **Required descriptions.** Provide the descriptions required for Part I, lines 3c, 6a, and 7; Part II and Part III, lines 2, 3, 4, 8 and 9b.

2 **Needs assessment.** Describe how the organization assesses the health care needs of the communities it serves, in addition to any CHNAs reported in Part V, Section B.

3 **Patient education of eligibility for assistance.** Describe how the organization informs and educates patients and persons who may be billed for patient care about their eligibility for assistance under federal, state, or local government programs or under the organization's financial assistance policy.

4 **Community information.** Describe the community the organization serves, taking into account the geographic area and demographic constituents it serves.

5 **Promotion of community health.** Provide any other information important to describing how the organization's hospital facilities or other health care facilities further its exempt purpose by promoting the health of the community (e.g., open medical staff, community board, use of surplus funds, etc.).

6 **Affiliated health care system.** If the organization is part of an affiliated health care system, describe the respective roles of the organization and its affiliates in promoting the health of the communities served.

7 **State filing of community benefit report.** If applicable, identify all states with which the organization, or a related organization, files a community benefit report.

| Form and Line Reference | Explanation |
|---|---|
| Part I, Line 7: | The costs were determined by using a cost-to-charge ratio. The cost-to-charge computation is based on hospital specific data included in the system-wide combined audited financial statements. The formula used for computation equals financial statement data as follows:Total expenses - (Provision for bad debts + Other revenue + Interest income)/Gross patient chargesThe Hospital is located in a medically underserved area and participates in quality assurance fee program with the State of California to fund certain Medi-Cal coverage expansions. The state redistributes funds to hospitals that provide patient care to a higher proportion of indigent and medically underprivileged patients, who otherwise would most likely not have access to physicians and other medical services. The community benefit analysis includes receipts from this redistribution that are used to assist in partially offsetting the significant costs associated with providing patient care to this population group. The program may or may not continue in the future based on the State of California's regulations and policies and the approval of the federal government. |
| Part II, Community Building Activities: | The Hospital is involved in numerous community building activities which promote the health of the community. Overwhelmingly, we see diseases of despair including suicide, substance abuse, mental health and chronic illnesses plaguing the communities that we have a significant presence in. These community concerns are addressed through health improvement, education, poverty, workforce development and access to care. This is why we have focused our work around addressing behavior and the systems keeping the most vulnerable people in cycles of poverty and high utilization. In an effort to heal these communities, we have strategically invested in our communities by partnering with national leaders in community well-being. We believe the power of community transformation lies in the hands of the community. Our solution for transformation is to create a sustainable model of well-being that measurably impacts the well-being of people, well-being of place and equity. In 2020, Adventist Health completed the acquisition of Blue Zones as the first step toward reaching this goal. By partnering with Blue Zones, we are able to gain ground in shifting the balance from healthcare - treating people once they are ill - to transformative well-being - changing the way communities live, work and play. Blue Zones widens our impact from only reaching our hospitals' communities in four states to a global mission practice. We also encourage our employees to serve on community collaboration boards, health advocacy programs, and physical improvement projects to promote the health of the communities we serve. In addition, we work with neighborhood programs, including schools, work sites and safety net providers to promote health and wellness and prevent disease. These activities are not included elsewhere on Schedule H. |
| Part III, Line 2: | Uncollected patient accounts are analyzed using written patient financial services policies that apply standard procedures for all patient accounts. The result of the analysis is what is recognized as bad debt expense. For example, all self-pay patients receive a discount. If the discounted account is unpaid after collection efforts, the unpaid balance is classified as bad debt. The cost-to-charge ratio described for Part I, Line 7 is multiplied times the Hospital's bad debt expense. The resulting figure has been reported as bad debts at cost on Part III, Line 2. |
| Part III, Line 3: | The portion of the bad debts attributed to charity care as reported on Part III, Line 3 was calculated by an independent third-party consulting firm. A statistically valid sampling of patient accounts written-off was evaluated. The evaluation used various factors to determine which patients would have been eligible for charity care. Had the Hospital obtained sufficient information, those accounts would have been reclassified from bad debt expense to charity care. |
| Part III, Line 4: | The system-wide audited combined financial statements do not contain a footnote describing bad debt expense. |
| Part III, Line 8: | The Medicare cost report apportions the Hospital's costs on the basis of inpatient days and ancillary and outpatient charges to establish the costing methodology.Healthcare delivery by hospitals is a complex, highly regulated business in the United States. Healthcare unit cost inflation is driven by compliance with ever-expanding regulatory requirements, shortages of highly skilled labor and evolving medical and information technology. The health care "market basket" is unrelated to that of the average individual consumer.Since the 1997 Balanced Budget Act, Medicare annual payment updates have fallen behind actual healthcare cost inflation to the point that Medicare payments to many U.S. hospitals are well below the cost of providing care. These unreimbursed costs are a community benefit for seniors and others in the community as these individuals are continuing to receive care without which many would become dependent on other governmental resources such as Medicaid. The benefit to the community for healthier Medicare recipients is no different than those benefits the community realizes for uninsured and underinsured patients who are eligible for partial and full charity care. Medicare is a safety net for seniors and others. Without Medicare coverage, many individuals would undoubtedly qualify for charity care.In addition to the mismatch between Medicare payment increases and healthcare cost inflation, the highly complex Medicare payment systems and formulas produce disparate payment levels from one hospital to another for the same service. These disparate payment levels create disparate results within groups of hospitals.Reconciliation of Medicare Revenue from the Hospital's Medicare Cost Report to GL:*Medicare Cost Report Revenue 17,184,031Prior Year Settlements 2,940Cost Report Reimbursable Bad Debts 223,554Non-cost report revenue 0Estimates and Accrual Variances (2,087,011)Other 653,905Total Medicare Revenue 15,977,419*Note: The Medicare Cost Report revenue does not include the bad debt reimbursement. The Cost Report revenue does include the patient co-pay and deductible amounts. Adding the bad debt reimbursement would have duplicated the revenue already accounted for in the co-pay and deductible amounts. |
| Part III, Line 9b: | When a patient has requested screening for charity care, the hospital must immediately cease collection activity and place the account in a charity pending status. If 100% charity is approved, the entire account balance is written off to charity care. If the patient has a sliding scale liability based on the federal poverty guidelines, they are billed only for that liability. If the patient fails to pay their after-charity liability, they are assigned to a collection agency with an identifier that indicates to the agency that the patient is "low income and the following criteria must be followed by the agency:1. They may not report the patient to a credit bureau2. They may not file a lawsuit to recover the outstanding liability3. They may not charge interest |
| Part VI, Line 2: | The Hospital's 2021 Community Health Plan (CHP) Update for fiscal year 2020 are posted on the Hospital's website at:https://www.adventisthealth.org/about-us/community-benefit/Prior to 2020, Adventist Health Mendocino Coast was classified as a district hospital therefore did not participate in a Community Health Needs Assessment cycle. |
| Part VI, Line 3: | The plain language summary of the Financial Assistance Policy (FAP) is posted along with the complete FAP policy and FAP Application on the Hospital's website at:https://www.adventisthealth.org/documents/financial-assistance/ENG_PFS-112_Financial-Assistance-Policy.pdf. These documents are available in multiple languages.At the time of registration, patients who are uninsured and underinsured are provided information about government healthcare programs. Patients are also orally informed of their right to request charity assistance. Signs are displayed in the patient business office, patient registration areas and the emergency room in multiple languages informing patients of this right as well. The hospital also provides a brochure during the registration process that explains the hospital billing and collection procedures, and how to request financial assistance. In addition, every billing statement sent to patients contains information on how to request financial assistance. |
| Part VI, Line 4: | Due to Adventist Health Mendocino Coast being a district hospital prior to the lease agreement with Adventist Health System/West, community information is being reported from Adventist Health Ukiah Valley's CHNA. The Hospital's primary service area, however, consists of nearly the entire rural county, which spans over 3,500 square miles. Small, geographically isolated communities make up a large part of the county's nearly 88,000 residents. According to 2018, data from the U.S. Census Bureau, Mendocino County has an estimated population of 87,580, slightly lower than the 87,869 reported in the 2014 U.S. census data. More than one-half (55%) of the population live in urban areas, while 45% live in rural communities, on farms or ranches. The proportion of residents who are ages 65 years and over make up 21.7% of the county population, higher than the proportion in the state with 14.5%.In 2018, the county's population was 76% White, 22% Hispanic, 4% Native American, 1% Asian, 0.7% African American, 0.6% Pacific Islander, and 15.4% two or more races. Between 2010 and 2060, the Hispanic/Latino population is expected to increase from 19,802 to 37,293 or to 37% of the county population, while Whites will decrease from 60,449 to 48,450 (to 48% of the county population). In the most recent data, nearly one-quarter of adults in Mendocino County ages 25 and older (22%) had a bachelor's degree or higher, and 7% had less than a high school diploma (compared to 31% and 10%, respectively, for California as a whole). Also in 2017, the median household income in Mendocino County, at $47,656, was 36% lower than that of the state ($74,605), compared to 2014 when the median household income in Mendocino County was 29% lower than the state. |
| Part VI, Line 5: | Our Hospital's mission is, "Living God's love by inspiring health, wholeness and hope." Our community benefit work is rooted deep within our mission and merely an extension of our mission and service. We have also incorporated our community benefit work to be an integral component of improving the "triple aim." The "Triple Aim" concept broadly known and accepted within health care includes:1. Improve the experience of care for our residents.2. Improve the health of populations.3. Reduce the per capita costs of health care.Our strategic investments in our community are focused on a more planned, proactive approach to community health. The basic issue of good stewardship is making optimal use of limited charitable funds. Defaulting to charity care in our emergency rooms for the most vulnerable is not consistent with our mission. An upstream and more proactive and strategic allocation of resources enables us to help low income populations avoid preventable pain and suffering; in turn allowing the reallocation of funds to serve an increasing number of people experiencing health disparities.Hospitals and health systems are facing continuous challenges during this historic shift in our health system. Given today's state of health, where cost and heartache are soaring, now more than ever, we believe we can do something to change this. These challenges include a paradigm shift in how hospitals and health systems are positioning themselves and their strategies for success in a new payment environment. This will impact everyone in a community and will require shared responsibility among all stakeholders. As hospitals move toward population health management, community health interventions are a key element in achieving the overall goals of reducing the overall cost of health care, improving the health of the population, and improving access to affordable health services for the community both in outpatient and community settings. The key factor in improving quality and efficiency of the care hospitals provide is to include the larger community they serve as a part of their overall strategy. Population health is not just the overall health of a population, but also includes the distribution of health. Overall health could be quite high if the majority of the population is relatively healthy even though a minority of the population is much less healthy. Ideally such differences would be eliminated or at least substantially reduced.Community health can serve as a strategic platform to improve the health outcomes of a defined group of people, concentrating on three correlated stages:1. The distribution of specific health statuses and outcomes within a population; 2. Factors that cause the present outcomes distribution; and 3. Interventions that may modify the factors to improve health outcomes.Improving population health requires effective initiatives to: 1. Increase the prevalence of evidence-based preventive health services and preventive health behaviors, 2. Improve care quality and patient safety, and 3. Advance care coordination across the health care continuum. We will work together with our community to ensure the community health improvements are identified and then targeted for programs to influence behaviors to obtain improved health within the whole community. |
| Part VI, Line 6: | The Hospital is a member of Adventist Health, a health care system which provides healthcare services in diverse markets within the Western United States. A member hospital may share some services with other member hospitals in its geographic area, such as clinical, management and support services. Using today's technology, hospitals outside the geographic area are able to provide support through remote services such as telepharmacy and robotics surgery. The Corporate Office provides important shared administrative support for member hospitals' rural health clinics and home care agencies, quality of care, other clinical needs, financing and risk management, and shared clinical and financial information technology. As many experienced and new physicians search for alternatives to independent practice, there is also corporate administrative support for hospital affiliated medical groups that engage physicians through employment or other contracts. This provides stability and growth of qualified physicians across many specialties, which is very important to make healthcare services available and to maintain and improve health within the |

| Form and Line Reference | Explanation |
| --- | --- |
| Part VI, Line 7, Reports Filed With States | CA |
| Part VI, Other Information: | In 2020, Adventist Health as a system took the following actions in response to the needs created or exacerbated by COVID-19: Adventist Health as a system directed "Community Strength Fund grants" to each hospital to support community partners' immediate response to COVID-19; Adventist Health as a system directed "Community Integration Catalyst" funds to each hospital to support internal new or expanded community well-being programming and innovation as an immediate response to COVID-19; began offering more virtual health care visits to keep community members safe and healthy; developed an online symptom tracker to help community members determine if they may have COVID-19 or some other flu type illness and what steps to take; partnered with MaskUp, a collaboration of 100 leading health systems representing thousands of hospitals across the U.S. joining to create messages for the betterment of the communities they serve.Locally, Adventist Health Mendocino Coast took these additional actions: Funded the Coastal Street Medicine Program Coordinator Position. The program served 262 homeless patients in 2020. The program coordinator secured grant funding from the Arlene & Michael Rosen Foundation to expand Coastal Street Medicine capacity by on boarding a case manager in partnership with Hospitality Center. Coastal Street Medicine organized and provided surveillance testing for COVID-19. The program procured and distributed PPE to homeless individuals, those living in shelter or transitional housing and front-line workers. Distributed face masks to Mendocino County Youth Project, Project Sanctuary, Redwood Community Services, Action Network Family Resource Center and Manchester Point Arena Rancheria. Provided $10,000 to the Fort Bragg Food Bank to meet food insecurity needs during the pandemic. Partnered with Mendocino County Health & Human Services Advocacy & Collaboration Team, Project Sanctuary, Redwood Community Services and First 5 Mendocino to create a bilingual informational flyer to be distributed to community members which included tips and resources numbers for mental health, substance use, domestic and child abuse. Flyers were distributed at grocery stores, food distribution sites, schools and other public locations. Facilitated the creation of the COVID-19 Work Group to provide health equity advocacy for the Latino population in Mendocino County which led to Mendocino County funding the Promotores de Salud six-month pilot. This program, operated by Nuestra Alianza de Willits, provided Spanish-speaking community health workers to provide linguistically and culturally appropriate COVID-19 information to Latinos. |

| efile GRAPHIC print | Submission Date - 2021-11-10 | DLN: 93493314069561 |
|---|---|---|

**Schedule J (Form 990)**

Department of the Treasury
Internal Revenue Service

# Compensation Information

**For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**
**▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23.**
**▶ Attach to Form 990.**
**▶ Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

Name of the organization
Adventist Health Mendocino Coast

**Employer identification number**
84-5174585

## Part I Questions Regarding Compensation

| | | | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropiate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items.<br>☐ First-class or charter travel ☐ Housing allowance or residence for personal use<br>☐ Travel for companions ☐ Payments for business use of personal residence<br>☐ Tax idemnification and gross-up payments ☐ Health or social club dues or initiation fees<br>☐ Discretionary spending account ☐ Personal services (e.g., maid, chauffeur, chef) | | | |
| **b** | If any of the boxes on Line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain . . . . . . . . . . | **1b** | | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, officers, including the CEO/Executive Director, regarding the items checked on Line 1a? . . | **2** | | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III.<br>☑ Compensation committee ☐ Written employment contract<br>☑ Independent compensation consultant ☑ Compensation survey or study<br>☐ Form 990 of other organizations ☑ Approval by the board or compensation committee | | | |
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? . . . . . . . . . . . . . . . . | **4a** | | No |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? . . . . . . . . . . | **4b** | Yes | |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? . . . . . . . . . . | **4c** | | No |
| | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
| | **Only 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . . . | **5a** | | No |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . . . | **5b** | | No |
| | If "Yes," on line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? . . . . . . . . . . . . . . . . . . . | **6a** | | No |
| **b** | Any related organization? . . . . . . . . . . . . . . . . . . . . . . | **6b** | | No |
| | If "Yes," on line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described in lines 5 and 6? If "Yes," describe in Part III . . . . . . . . . . . . . | **7** | | No |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accured pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III . . . . . . . . . . . . . . . . . . . . . . . . | **8** | | No |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? . . . . . . . . . . . . . . . . . . . . . . . . | **9** | | |

**Part II** **Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees.** Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii). Do not list any individuals that are not listed on Form 990, Part VII.

**Note.** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| **(A)** Name and Title | | **(B)** Breakdown of W-2 and/or 1099-MISC compensation | | | **(C)** Retirement and other deferred compensation | **(D)** Nontaxable benefits | **(E)** Total of columns (B)(i)-(D) | **(F)** Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | **(i)** Base compensation | **(ii)** Bonus & incentive compensation | **(iii)** Other reportable compensation | | | | |
| **1**Reiner Scott<br>Vice Chair | **(i)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | **(ii)** | 1,631,895 | 352,059 | 374,424 | 17,042 | 37,777 | 2,413,197 | 349,200 |
| **2**Wing Bill<br>Director/Chair | **(i)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | **(ii)** | 1,458,328 | 279,883 | 22,116 | 17,042 | 42,012 | 1,819,381 | 0 |
| **3**Jobe Meredith<br>Secretary | **(i)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | **(ii)** | 575,127 | 81,637 | 113,221 | 13,010 | 30,858 | 813,853 | 0 |
| **4**Parker Bessant<br>Medical Officer | **(i)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | **(ii)** | 362,465 | 42,502 | 62,143 | 1,171 | 22,569 | 490,850 | 0 |
| **5**Howe Judson - Finance<br>Officer/President as of 12/20 | **(i)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | **(ii)** | 315,645 | 45,538 | 23,524 | 16,116 | 42,056 | 442,879 | 0 |
| **6**Leach Judy<br>President thru 12/20 | **(i)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | **(ii)** | 289,448 | 34,453 | 34,985 | 17,042 | 22,447 | 398,375 | 0 |
| **7**Spencer Lindsey<br>Operations Executive | **(i)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | **(ii)** | 267,913 | 33,748 | 23,211 | 15,023 | 41,853 | 381,748 | 0 |
| **8**Givens Linda<br>Chief Nursing Officer | **(i)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| | **(ii)** | 252,658 | 38,715 | 26,669 | 13,528 | 29,192 | 360,762 | 0 |
| **9**Miller William<br>Medical Director-Hospitalist | **(i)** | 239,779 | 100 | 17,583 | 12,873 | 17,946 | 288,281 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **10**Leister Lois F<br>Pharmacy Director | **(i)** | 189,094 | 150 | 9,085 | 9,916 | 17,946 | 226,191 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **11**Thompson Stephanie<br>Housei Supervisor | **(i)** | 117,219 | 150 | 54,252 | 4,949 | 20,082 | 196,652 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **12**Ra Jean<br>Pharmacist | **(i)** | 155,571 | 1,150 | 22,695 | 8,971 | 0 | 188,387 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **13**Louis Michael<br>Pharmacist | **(i)** | 157,082 | 150 | 12,010 | 8,462 | 9,262 | 186,966 | 0 |
| | **(ii)** | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

## Part III   Supplemental Information

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

| Return Reference | Explanation |
|---|---|
| Part I, Line 4b | Select executives agreed to participate in CAP-EX in place of a traditional insurance SERP. See Schedule L, Part V of Adventist Health System/West, for a broader description. Split-Dollar life participants are Scott Reiner and Bill Wing. A flexible benefits plan (CAA) is offered to groups of highly-compensated employees meeting certain criteria. The participants are provided with an amount equivalent to 41 percent of their base compensation, less the value of their corporate provided benefits. The balance is set aside for non-vested deferred compensation that is subject to substantial risk of forfeiture and is at risk to the creditors of Adventist Health. Payouts occur according to the participants' payment elections after all substantial risks of forfeiture have lapsed. The plan was frozen for new non-vested contributions in 2016. Reiner, Scott - $349,200 |

**SCHEDULE O (Form 990 or 990-EZ)**

Department of the Treasury Internal Revenue Service

# Supplemental Information to Form 990 or 990-EZ

**Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information.**
**▶ Attach to Form 990 or 990-EZ.**
**▶ Go to *www.irs.gov/Form990* for the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

Name of the organization
Adventist Health Mendocino Coast

**Employer identification number**
84-5174585

| Return Reference | Explanation |
|---|---|
| Form 990, Part III, Line 4a | Adventist Health Mendocino Coast (AHMC) provides quality medical health care regardless of race, creed, sex, national origin, handicap, age, or ability to pay. Although reimbursement for services rendered is critical to the operation and stability of AHMC, the organization recognizes that not all individuals possess the ability to pay for essential medical services. Adventist Health's vision is to enhance the health of the communities where we live and serve by engaging our communities and our patients in a new definition of and partnership for personal community health. In keeping with this commitment to serve all members of the community, the following will be considered when individuals who need health care cannot afford to pay: - providing free care and/or subsidized care - providing care to persons covered by governmental programs at below cost - providing health/wellness activities and community education programs Not only does AHMC provide low cost care to individuals covered by government-programs and those unable to afford healthcare, it also helps patients find and access private and governmental resources for healthcare benefits. AHMC recognizes below-cost reimbursement as charity and uncompensated care in meeting its mission to the entire community. The unreimbursed cost of providing care to these patients in 2020 was $351,518. The following Inpatient services were provided to all our patients. These services included: - 34 Surgeries performed - 2,174 Patient days The following Outpatient services were provided to all our patients. These services included: - 4,182 Emergency department visits - 442 Outpatient Surgeries performed - 20,732 Outpatient visits - 13,343 Clinic visits AHMC recognizes it has an obligation to provide human services above and beyond its role as a healing facility. The following community benefits demonstrate the tangible ways in which the organization is fulfilling its mission. The total unreimbursed cost of these community benefits in 2020 was $12,794. Adventist Health's mission statement of Living God's love by inspiring health, wholeness and hope is coupled with a vision to transform the health experience of our communities through collaborative programs, community investments and community outreach. We are inspired by the healing ministry as represented by the life of Jesus Christ and believe we are called to live out our mission intentionally in the communities we serve. In the small towns, suburbs and inner cities we serve, we continue our journey to provide quality healthcare until every person made in God's image has experienced the best health today, hope for tomorrow, and God's love that endures forever. Websites for our community benefit information: https://www.adventisthealth.org/about-us/community-benefit/ |
| Form 990, Part VI, Section A, line 6 | The sole member of the Hospital is Stone Point Health, a California nonprofit public benefit corporation. |
| Form 990, Part VI, Section A, line 7a | Each individual who is a director of the board of Stone Point Health shall automatically be a director of Adventist Health Mendocino Coast, and shall serve as a director of Adventist Health Mendocino Coast until such time as that person is no longer a director of Stone Point Health. |
| Form 990, Part VI, Section A, line 7b | The sole corporate member, Stone Point Health, must approve all changes to the Articles of Incorporation and Bylaws. |
| Form 990, Part VI, Section B, line 11b | This Form 990 including all supporting schedules was prepared by a public accounting firm, reviewed by the System Controller and market Finance Officer, and shared by electronic communication with the corporation's Board of Directors prior to filing. |
| Form 990, Part VI, Section B, line 12c | During the first quarter of each year, the annual conflict of interest questionnaire is sent to board members, hospital officers, key employees and department directors for completion and signature. The questionnaire is accompanied by a letter of explanation to illustrate examples of a conflict and to remind the recipient that if any perceived conflict should arise before the next annual questionnaire, he/she is to notify the market president immediately. The System General Counsel distributes, collects, and reviews for signatures the COIs for all applicable Corporate employees, stakeholders and the board. In addition, the hospital's administration is responsible for keeping record to ensure all hospital-based individuals with director and above positions have submitted their COIs. The System General Counsel reviews all the disclosures on the board and Corporate employees' COIs. System General Counsel retains the COIs for all individuals. Copies for the officers and key employees' COIs are kept in their personnel files. Further inquiries on any potential significant conflicts are made as needed. Conflicts are documented and reviewed with the Board. |
| Form 990, Part VI, Section B, line 15 | The Hospital's Board of Directors has established a Compensation Committee to oversee the executive compensation program. This committee is composed of independent directors with no conflicts of interest. The committee performs the following functions: recommends a total compensation philosophy to the board; assures compliance with the board-approved philosophy; meets annually to review comparability data from outside consultants; recommends any adjustments to current executive compensation, including salary ranges for hospital Presidents and Finance Officers, that would be indicated by the data; evaluates executive performance against annual goals; recommends appropriate incentive awards to the board for approval; follows a diligent process that meets regulatory requirements for a rebuttable presumption of reasonableness; records committee deliberations and decisions in timely minutes; selects, engages and supervises any consultant hired to advise and provide comparability data. The board-approved executive compensation philosophy specifies that salary ranges will be established for hospital Presidents and executives, with midpoints aligned with the 50th percentile of comparable system hospital data, and having a 50 percent spread from minimum to maximum. A hospital President has a maximum potential incentive of 30 or 35 percent of base salary based upon size and scope of hospital (incentive potential is industry norm). Other hospital executives have a maximum potential incentive of 25 to 30 percent of base salary. |
| Form 990, Part VI, Section C, line 19 | The Hospital does not make its governing documents publicly available, beyond required filings of Articles of Incorporation with the Secretary of State. The Hospital does not make its Conflict of Interest Policy available upon request, but does file monthly/quarterly summary financial reports with the state health-planning agency. |
| Form 990, Part VII: | In recognition of the time commitment directors make to serve on the Adventist Health System/West boards and committees, directors have the option to receive compensation when their employment agreements with their employers allow such payments. In addition, amounts paid for taxable benefits are also reported. |
| Form 990, Part IX, line 11g | Physician professional fees: Program service expenses 1,605,801. Management and general expenses 1,684,761. Fundraising expenses 0. Total expenses 3,290,562. Consulting and other management fees: Program service expenses 10,846. Management and general expenses 62,546. Fundraising expenses 0. Total expenses 73,392. Contract labor: Program service expenses 2,532,481. Management and general expenses 264,311. Fundraising expenses 0. Total expenses 2,796,792. Purchased medical services: Program service expenses 332,063. Management and general expenses 0. Fundraising expenses 0. Total expenses 332,063. Repairs and maintenance: Program service expenses 393,998. Management and general expenses 3,241. Fundraising expenses 0. Total expenses 397,239. All other purchased services: Program service expenses 876,238. Management and general expenses 205,609. Fundraising expenses 0. Total expenses 1,081,847. |

**SCHEDULE R (Form 990)**

# Related Organizations and Unrelated Partnerships

▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047
**2020**
**Open to Public Inspection**

Department of the Treasury
Internal Revenue Service

Name of the organization
Adventist Health Mendocino Coast

Employer identification number
84-5174585

**Part I Identification of Disregarded Entities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a) Name, address, and EIN (if applicable) of disregarded entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Total income | (e) End-of-year assets | (f) Direct controlling entity |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II Identification of Related Tax-Exempt Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related tax-exempt organizations during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled entity? Yes | No |
|---|---|---|---|---|---|---|---|
| **(1)**Adventist Health Clearlake Hospital Inc<br>15630 18th Avenue<br>Clearlake, CA 95422<br>68-0395149 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(2)**Adventist Health Delano<br>1401 Garces Highway<br>Delano, CA 93215<br>77-0258013 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(3)**Adventist Health Medical Center Tehachapi<br>1100 Magellan Drive<br>Tehachapi, CA 93561<br>81-2240617 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(4)**Adventist Health Physicians Network<br>PO Box 619135<br>Roseville, CA 95661<br>68-0357690 | Medical foundation | CA | 501(c)(3) | Line 12b, II | Adventist Health SystemWest | | No |
| **(5)**Adventist Health SystemWest<br>PO Box 619135<br>Roseville, CA 95661<br>95-3484589 | Integrated health system | CA | 501(c)(3) | Line 10 | N/A | | No |
| **(6)**Adventist Health Tulare<br>869 North Cherry Street<br>Tulare, CA 93274<br>83-2351753 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(7)**Castle Medical Center<br>640 Ulukahiki Street<br>Kailua, HI 96734<br>99-0107330 | Hospital | HI | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(8)**Feather River Hospital<br>PO Box 619135<br>Roseville, CA 95661<br>94-1101228 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(9)**Fremont-Rideout Health Group<br>989 Plumas Street<br>Yuba City, CA 95991<br>94-2917251 | Acute care hospital | CA | 501(c)(3) | Line 12b, II | Stone Point Health | | No |
| **(10)**Glendale Adventist Medical Center<br>1509 Wilson Terrace<br>Glendale, CA 91206<br>95-1816017 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(11)**Hanford Community Hospital<br>115 Mall Drive<br>Hanford, CA 93230<br>94-0535360 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(12)**Lodi Memorial Hospital Association Inc<br>975 S Fairmont Avenue<br>Lodi, CA 95240<br>94-1044474 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(13)**Northwest Medical Foundation of Tillamook<br>1000 Third Street<br>Tillamook, OR 97141<br>93-0622075 | Hospital | OR | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(14)**Paradise Valley Hospital<br>PO Box 619135<br>Roseville, CA 95661<br>95-1816034 | Discontinued Operations | CA | 501(c)(3) | Line 1 | Adventist Health SystemWest | | No |
| **(15)**Portland Adventist Medical Center<br>10123 SE Market Street<br>Portland, OR 97216<br>93-0429015 | Hospital | OR | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(16)**Reedley Community Hospital<br>372 Cypress Avenue<br>Reedley, CA 93654<br>45-3220509 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(17)**Rideout Memorial Hospital<br>989 Plumas Street<br>Yuba City, CA 95991<br>94-1387866 | Acute care hospital | CA | 501(c)(3) | Line 3 | Stone Point Health | | No |
| **(18)**St Helena Hospital<br>10 Woodland Road<br>St Helena, CA 94574<br>94-1279779 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(19)**San Joaquin Community Hospital<br>2615 Chester Avenue<br>Bakersfield, CA 93301<br>95-2294234 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(20)**Simi Valley Hospital and Health Care Services<br>2975 N Sycamore Drive<br>Simi Valley, CA 93065<br>95-6064971 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(21)**Sonora Community Hospital<br>1000 Greenley Road<br>Sonora, CA 95370<br>94-1415069 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(22)**Stone Point Health<br>PO Box 619135<br>Roseville, CA 95661<br>82-3763347 | Supporting organization | CA | 501(c)(3) | Line 12b, II | Adventist Health SystemWest | | No |
| **(23)**Ukiah Adventist Hospital<br>275 Hospital Drive<br>Ukiah, CA 95482<br>94-1639901 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(24)**United Com-Serve<br>989 Plumas Street<br>Yuba City, CA 95991<br>94-3015356 | Skilled nursing/assisted living/home health | CA | 501(c)(3) | Line 12b, II | Stone Point Health | | No |
| **(25)**Walla Walla General Hospital<br>PO Box 619135<br>Roseville, CA 95661<br>91-0617726 | Hospital - closed July 2017 | WA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(26)**Western Health Resources<br>PO Box 619135<br>Roseville, CA 95661<br>95-3867863 | Home care | CA | 501(c)(3) | Line 10 | Adventist Health SystemWest | | No |
| **(27)**White Memorial Medical Center<br>1720 Cesar E Chavez Avenue<br>Los Angeles, CA 90033<br>95-2282647 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |
| **(28)**Willits Hospital Inc<br>1 Marcela Drive<br>Willits, CA 95490<br>68-0108919 | Hospital | CA | 501(c)(3) | Line 3 | Adventist Health SystemWest | | No |

**Part III Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Predominant income(related, unrelated, excluded from tax under sections 512-514) | (f) Share of total income | (g) Share of end-of-year assets | (h) Disproprtionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Yes | No | | Yes | No | |
| **(1)** Blue Zones LLC<br><br>323 N Washington Avenue 2nd Floor<br>Minneapolis, MN 55401<br>27-1603327 | Education | MN | N/A | | | | | No | | | No | |
| **(2)** PVHR LLC dba Paradise Village<br><br>8440 SE Sunnybrook Blvd Suite 100<br>Clackmas, OR 97015<br>26-0622555 | Real property rental | OR | N/A | | | | | No | | | No | |
| **(3)** PVHR2 LLC dba Parkview at Paradise Village<br><br>8440 SE Sunnybrook Blvd Suite 100<br>Clackmas, OR 97015<br>47-3300170 | Real property rental | OR | N/A | | | | | No | | | No | |
| **(4)** WWGHR LLC<br><br>8440 SE Sunnybrook Blvd Suite 100<br>Clackmas, OR 97015<br>81-0591221 | Rental | OR | N/A | | | | | No | | | No | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

**Part IV Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34 because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Direct controlling entity | (e) Type of entity (C corp, S corp, or trust) | (f) Share of total income | (g) Share of end-of-year assets | (h) Percentage ownership | (i) Section 512(b)(13) controlled entity? | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Yes | No |
| **(1)**AdHealth Limited<br><br>PO Box HM 2062<br>Hamilton HM HX<br>BD | Pure captive insurance | BD | N/A | C | | | | | No |
| **(2)**Adventist Health Plan Inc<br><br>1 Adventist Health Way<br>Roseville, CA 95661<br>46-3833261 | Health insurance | CA | N/A | C | | | | | No |
| **(3)**South Coast Medical Center<br><br>PO Box 619135<br>Roseville, CA 95661<br>95-2037297 | Wind down after sale of hospital | CA | N/A | C | | | | | No |
| **(4)**Thrive Productions Inc<br><br>323 N Washington Avenue<br>Minneapolis, CA 55401<br>45-3369049 | Production company | MN | N/A | C | | | | | No |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**Part V Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

**Note.** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule.

| | | | Yes | No |
|---|---|---|---|---|
| **1** | During the tax year, did the orgranization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | |
| **a** | Receipt of **(i)** interest, **(ii)**annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | **1a** | | **No** |
| **b** | Gift, grant, or capital contribution to related organization(s) | **1b** | | **No** |
| **c** | Gift, grant, or capital contribution from related organization(s) | **1c** | | **No** |
| **d** | Loans or loan guarantees to or for related organization(s) | **1d** | | **No** |
| **e** | Loans or loan guarantees by related organization(s) | **1e** | | **No** |
| **f** | Dividends from related organization(s) | **1f** | | **No** |
| **g** | Sale of assets to related organization(s) | **1g** | | **No** |
| **h** | Purchase of assets from related organization(s) | **1h** | | **No** |
| **i** | Exchange of assets with related organization(s) | **1i** | | **No** |
| **j** | Lease of facilities, equipment, or other assets to related organization(s) | **1j** | | **No** |
| **k** | Lease of facilities, equipment, or other assets from related organization(s) | **1k** | | **No** |
| **l** | Performance of services or membership or fundraising solicitations for related organization(s) | **1l** | | **No** |
| **m** | Performance of services or membership or fundraising solicitations by related organization(s) | **1m** | **Yes** | |
| **n** | Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | **1n** | | **No** |
| **o** | Sharing of paid employees with related organization(s) | **1o** | **Yes** | |
| **p** | Reimbursement paid to related organization(s) for expenses | **1p** | **Yes** | |
| **q** | Reimbursement paid by related organization(s) for expenses | **1q** | **Yes** | |
| **r** | Other transfer of cash or property to related organization(s) | **1r** | **Yes** | |
| **s** | Other transfer of cash or property from related organization(s) | **1s** | **Yes** | |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| **(a)** Name of related organization | **(b)** Transaction type (a-s) | **(c)** Amount involved | **(d)** Method of determining amount involved |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## Part VI **Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| **(a)** Name, address, and EIN of entity | **(b)** Primary activity | **(c)** Legal domicile (state or foreign country) | **(d)** Predominant income (related, unrelated, excluded from tax under sections 512-514) | **(e)** Are all partners section 501(c)(3) organizations? | | **(f)** Share of total income | **(g)** Share of end-of-year assets | **(h)** Disproprtionate allocations? | | **(i)** Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | **(j)** General or managing partner? | | **(k)** Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Yes** | **No** | | | **Yes** | **No** | | **Yes** | **No** | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

**Part VII** **Supplemental Information**

Provide additional information for responses to questions on Schedule R. (see instructions).

| Return Reference | Explanation |
| --- | --- |