**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 (Subchapter V) |
| | ) | |
| Alecto Healthcare Services LLC, [1] | ) | Case No. 23-10787 (JKS) |
| | ) | |
| Debtors | ) | **Related Docket No. 261** |

**SUPPLEMENT TO THE OBJECTION OF THE REED ACTION JUDGMENT CREDITORS TO CONFIRMATION OF THE SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION PROPOSED BY THE DEBTOR**

The Reed Action Judgment Creditors (the "Reed Creditors"), by and through undersigned counsel, hereby Supplemental Objection to confirmation of the *Small Business Debtor's Plan of Reorganization Proposed by f the Debtor* [Docket No. 261] (the "Plan") and respectfully state as follows:

1. As set forth fully in *the Objection of the Reed Action Judgment Creditors to Confirmation* of the *Small Business Debtor's Plan of Reorganization Proposed by the Debtor* (the "Objection"),[2] the Reed Creditors identified a colorable fraudulent transfer claim arising from the Sunrise REH Transaction pursuant to Section 544(b) and applicable state law.[3] Specifically, by the Sunrise REH Transaction, and as confirmed by the GCS Report, Alecto transferred its 100% membership interest in Sunrise REH to the Alecto Members and received consideration in the amount of $28,416,827.18 consisting of (i) the payoff of an existing loan in the amount of

[1] The last four digits of the Debtor's federal tax identification number is 9723. The Debtor's address is 101 N Brand Boulevard, Suite 1920, Glendale, CA 91203.

[2] Capitalized terms not defined herein shall have the meanings given to those terms in the Objection.

[3] In its *Memorandum of Law in Support of Confirmation* of the *Small Business Debtor's Plan of Reorganization Proposed by off the Debtor and Omnibus Reply to Objections to Confirmation* [Docket No. 310] (the "MOL"), the Debtor appears to assume that the applicable state law is California's Uniform Voidable Transactions Act. (the "UVTA"). *See* MOL, ¶¶ 98 – 100. For purposes of confirmation, the Reed Creditors do not dispute that the UVTA is the applicable law.

$19,472,350[4] and an equity contributions from the Alecto Members totaling $8,944,477.81.[5] At the time of the transfer, Plaza Medical Office Building, LLC ("Plaza MOB"), a wholly owned subsidiary of Sunrise REH, was appraised at $50,700,000.[6] The GCS Report acknowledges that Alecto did not receive reasonably equivalent value in the transaction.[7] The deficiency in value is $22,283,173.

2. Section 3439.04(a) of the UVTA provides that:

> **(a)** A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> **(1)** With actual intent to hinder, delay, or defraud any creditor of the debtor.
>
> **(2)** Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
>
> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Cal. Civ. C. § 3439.04(a). Section 3439.05(a) of the UVTA provides that:

> (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Cal. Civ. C. § 3439.05(a). Insolvency is defined in section 3439.02, in relevant part, as follows:

> (a) A debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets.

---

[4] GCS Report, Summary of Observations Section A (p. 3).

[5] *Id.*, Discussion Section A. 6 (p. 6).

[6] *Id.*, Discussion Section A. 4, FN 12 (p. 6).

[7] *See id.,* Findings and Observations Section A (p. 2).

> (b) A debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent. The presumption imposes on the party against which the presumption is directed the ,burden of proving that the nonexistence of insolvency is more probable than its existence.
>
> (c) Assets under this section do not include property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this chapter.

Cal. Civ. C. § 3439.02.

3. In the Confirmation Objection, the Debtor does not argue (i) that the transfer of the Sunrise REH membership interests was not a transfer of Alecto's property or (ii) that Alecto received reasonably equivalent value in exchange for the Sunrise REH membership interests. Rather the only argument the Debtor actually raises is that the Sunrise REH Transaction was not a fraudulent transfer because Alecto was solvent at the time of the transaction. Confirmation Objection ¶¶ 101 -105. The primary bases for this argument are that (i) Alecto's Balance Statement shows that, during 2019, Alecto never had equity with a value of less that $9.4 million, (ii) in June 2019, the total equity in the Debtor was $9,500,557, and (iii) Alecto's 2019 tax return shows that Alecto's assets were valued at $16,708,684 in the beginning of 2019 and increased to $26,796,334 by the end of 2019. Confirmation Objection ¶ 103. The Debtor also states, without documentary evidence, that "common sense" evidences that the Debtor was on sound financial footing" because

- approximately one month after the Sunrise Transfer, Alecto was able to refinance its line of credit at a lower interest rate;
- Alecto paying its obligations as they became due from June 2019 through at least the end of 2022; and
- From mid-April 2020 through the Debtor maintained cash in its bank accounts of over $12,000,000.

Confirmation Objection ¶¶ 104 -105.

4. This "evidence" is woefully insufficient to establish that Alecto was solvent following the closing of the Sunrose REH Transaction on June 19, 2019. As set forth above, Section 3439.02(a) provides that "[a] debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets." UVTA § 3439.02(a). The Debtor's reliance on raw and unsupported numbers on a balance sheet and a tax return and statements without documentary evidence do not in any way establish fair valuations of the Debtor's assets and liabilities as of July 19, 2019.

5. A debtor's assets and liabilities must be calculated at fair valuation to determine whether its debts exceed its assets. *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 648 (1991) "[A] fair valuation of assets contemplates a conversion of assets into cash during a reasonable period of time." *In re Trans World Airlines, Inc.*, 134 F.3d 188, 194 (3d Cir. 1998). If assets are not susceptible to liquidation, and thus cannot be made available for payment of debts, within a reasonable period of time, a reduction in the face value of those assets may be appropriate. *Constructora Maza, Inc. v. Banco de Ponce*, 616 F.2d 573, 577 (1st Cir. 1980). Courts should consider contingent liabilities when evaluating the solvency of a debtor. *Trans World Airlines*, 134 F.3d. at 197.

6. Moreover, "[r]eduction in the face value of assets may be appropriate if those assets are not susceptible to liquidation, and thus cannot be made available for payment of debts, within a reasonable period of time." *Constructora Maza*, 616 F.2d at 557.

> Thus, for example, accounts receivable need not be taken at face value if circumstances cast doubt on their collectability. The prospects of collection of such assets are evaluated in light of the past record of payment of the obligors, the obligors' current solvency, and the presence or absence of any dispute over the validity of the accounts or debts owed. [] Because the value of such assets may, in certain circumstances, be discounted, it is appropriate for the trier of fact to hear qualified opinion testimony on their fairly realizable value.

*Id.*

7. The Debtor's simplistic solvency analysis relies primarily on raw and unsupported numbers on the 2019 balance sheet and tax return. These numbers in a vacuum do nothing to establish the fair value of Alecto's assets and liabilities and the Debtor makes no attempt to otherwise establish the fair valuation of Alecto's assets and liabilities as of June 19, 2019. As a result, the Debtor's limited solvency analysis does not come anywhere close to establishing that Alecto was solvent at the time of the Sunrise REH Transaction consistent with applicable Third Circuit precedent.

8. Moreover, the Debtor's assertion of a solvency defense at the eleventh hour is procedurally improper. The GCS Report analyzed multiple transactions between Alecto and its insiders to determine whether Alecto may have avoidance claims against its insiders. GSC did not provide any solvency analysis with respect to any transaction. The GCS Report concludes that Alecto did not receive reasonably equivalent value in the Sunrise REH Transaction.[8] Nonetheless, Mr. Balasiano "determined that the estate does not have any valid claims against the Insiders for avoidable transfers."[9]

9. Mr. Balasiano's appointment as an independent director was expanded on August 19, 2023, for the specific purpose of investigating and evaluating whether the debtor had valid causes of action to bring against its insiders or fiduciaries. Following his receipt of the Gould Report on September 28, 2023, Mr. Balasiano's conclusion that there were no valid causes of action against the Debtor's insiders and fiduciaries was incorporated into the Debtor's original plan filed on October 9, 2023 [D.I. 170, p. 17]. In reaching his conclusions, Mr. Balasiano testified at deposition that he relied on a (i) the transaction analyses set forth in the Gould Report and (ii) a

---

[8] *See* GCS Report., Findings and Observations Section A (p. 2).

[9] Plan, Art. III, § 9 at p. 17.

legal memorandum provided by Debtor's counsel analyzing potential causes of action. [Balasiano Transcript, pp. 36-37; Transcript lodged at D.I. 313].

10. With respect to the memorandum prepared by Debtor's counsel, Mr. Balasiano refused to identify any of the bases on which he relied for his determination that causes of action did not exist, based on attorney client privilege objections lodged by his counsel. [Balasiano Transcript, pp. 55-59]. He further testified that he did not have an opinion on whether the Debtor was solvent when the Reed Creditors obtained their judgment, that he had not done a solvency analysis, and that no one had done a solvency analysis for him. [Balasiano Transcript, pp. 47-48]. He also refused to provide an opinion on the Debtor's solvency when he was asked to review one of the Debtor's balance sheets. [Balasiano Transcript, pp. 59-62].

11. With no articulated basis to support the proposed release of the Debtor's causes of action for a payment of $25,000 provided by Mr. Balasiano, the Debtor pivoted in a matter of 24 hours to having Michael Sarrao provide evidence and testimony of the Debtor's solvency to defeat the fraudulent transfer claims.[10] In addition to being the Debtor's Executive Vice President and General Counsel, Mr. Sarrao's family trust is one of the Alecto members who received the benefit of the June 2019 Sunrise REH transaction. The appointment of Mr. Balasiano as an independent director was supposed to eliminate this inherent conflict but has now utterly failed in that regard.

12. More importantly, having apparently not considered solvency when the determination was made that there are no causes of action against insiders or affiliates in the fall of 2023, the Debtor now wants to present solvency at the time of the Sunrise REH transaction as

---

[10] *Declaration of Michael Sarro, Executive Vice President, General Counsel, and Secretary of Alecto Healthcare Services LLC in Support of Confirmation of the Small Business Debtor's Plan of Reorganization Proposed by the Debtor* [Docket No. 307] (the "Sarrao Decl.")

the only basis the Court needs to consider with respect to whether there is a viable fraudulent transfer claim as a result of it.

13. Mr. Balasiano, for his part, submitted a declaration the day following his deposition testimony that he determined that "there are no valid claims against insiders for avoidance of fraudulent conveyances" because, among other reasons, "the claims of alleged fraudulent conveyances relate to a transfer that occurred when the Debtor was solvent."[11] While Mr. Balasiano did not state when he reached this conclusion, it apparently relies on Mr. Sarrao's incompetent and conflicted testimony given that the solvency issued had not been raised prior to the filing of the Sarrao Declaration. Under these circumstances, the Court should not give any weight to Mr. Sarrao's solvency analysis.

## CONCLUSION

WHEREFORE, for the foregoing reasons, as well as for the reasons set forth in the Objection, the Reed Creditors respectfully request that this Honorable Court enter an order denying confirmation of the Plan and granting such other and further relief as is just and proper.

Date: March 4, 2024
Wilmington, DE

**SULLIVAN • HAZELTINE • ALLINSON LLC**

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: bsullivan@sha-llc.com
whazeltine@sha-llc.com

-and-

[11] *Declaration of Steven Balasiano, Independent Director/Manager in Support of Confirmation of the Small Business Debtor's Plan of Reorganization Proposed by the Debtor* [Docket No. 308], ¶ 19.

Colten L. Fleu, Esq.
Mountain State Justice, Inc.
1217 Quarrier St.
Charleston, WV 25301
Tel: (304) 326-0188
Email: colten@msjlaw.org

-and-

John Stember, Esq.
Maureen Davidson-Welling, Esq.
Stember Cohn & Davidson-Welling, LLC
The Harley Rose Building
425 First Avenue, 7th Floor
Pittsburgh, PA 15219
Tel: 412-338-1445
Email: jstember@stembercohn.com
mdavidsonwelling@stembercohn.com

*Attorneys for the Reed Action Judgment Creditors*